UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>ALL CASES | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:     Hon. Maxine M. Chesney<br>Date:      February 21, 2020<br>Time:      10:30 a.m.<br>Courtroom: 7, 19th Floor |

Pursuant to the Stipulation and Order Continuing Further Case Management Conference entered in the above-captioned MDL matter (ECF No. 134), and the Standing Order for All Judges of the Northern District of California ("Standing Order"), End-User and Reseller Plaintiffs and Defendants hereby submit this Joint Case Management Statement.

**1.     JURISDICTION AND SERVICE**

   **a.     Subject Matter Jurisdiction**

Plaintiffs contend that this Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 and §1337 (federal question jurisdiction over Plaintiffs' Sherman Act and Clayton Act claims); 28 U.S.C. §1367 (supplemental jurisdiction over Plaintiffs' state law claims); and 28 U.S.C. § 1332(d) (Plaintiffs assert class action claims that meet the requirements of the Class

Action Fairness Act of 2005).

Defendants do not anticipate challenges to the Court's subject matter jurisdiction to consider Plaintiffs' claims under federal and state laws, although Defendants do anticipate challenging the applicability of those laws to the conduct and claims at issue in this case.

### b. Personal Jurisdiction

Plaintiffs contend that this Court has personal jurisdiction over Defendants because Defendants, either directly or through the ownership or control of their United States subsidiaries, conduct substantial business throughout the United States, and they have purposefully availed themselves of the laws of the United States. Plaintiffs further allege that Defendants' conspiracy to fix the prices of Hard Disk Drive ("HDD") Suspension Assemblies substantially affected commerce throughout the United States and in the various states, because Defendants, directly or through their agents, engaged in activities affecting those states and have purposefully availed themselves of the laws of those states in connection with their activities relating to the production, marketing, sale and/or distribution of HDD Suspension Assemblies.

Defendants contend that several of the Defendants are foreign entities with no or limited jurisdictionally relevant contacts with the United States, California or this District.  Several of those Defendants may challenge personal jurisdiction.

### c. Venue

The Parties acknowledge that this Court is a legally appropriate venue for this Multi-District Litigation.

### d. Service

Domestic Defendants Headway Technologies, Inc., Hutchinson Technology, Inc. and NHK International Corporation have been served.  The remaining defendants are located outside of the United States (the "Foreign Defendants"), and have stipulated to accept service of any Consolidated Amended Complaint ("CAC") that is filed in this Action in satisfaction of the requirements of Fed. R. Civ. P. 4.  The Domestic Defendants and Foreign Defendants have thus

stipulated to a waiver of the defenses of insufficiency of service of process and insufficient process with respect to any CAC filed in this Action.

**2.    FACTS**

    **a.    Plaintiffs' Statement**

These actions arise from an alleged price-fixing conspiracy and other anticompetitive conduct in the market for HDD Suspension Assemblies ("Suspension Assemblies"). Suspension Assemblies are a critical component of HDDs. HDDs are used to store information electronically and may be incorporated into finished products such as desktop or laptop computers, network servers, and enterprise storage systems or sold as stand-alone electronic storage devices.[1] Suspension Assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

End-User and Reseller Plaintiffs will file their respective consolidated amended complaints prior to the February 21, 2019 case management conference. Plaintiffs' complaints to date allege that Defendants' price-fixing conspiracy began at least as early as May 2008 and continued to at least April 2016. At least one government regulator is investigating conduct occurring between 2003 and May 2016.[2] Plaintiffs allege that, to carry out their conspiracy, Defendants (a) engaged in discussions, and attended meetings, in which they reached and refined agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for Suspension Assemblies to be sold in the United States and elsewhere; (b) exchanged Suspension Assembly pricing information, including anticipated pricing quotes, in the

---

[1] *See* Information, *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 29, 2019), *available at* https://www.justice.gov/opa/press-release/file/1188586/download; *see also* Rule 11 Plea Agreement ("Plea Agreement"), *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 26, 2019), ECF No. 15.

[2] *See* http://en.cade.gov.br/cades-general-superintendence-probes-cartel-in-the-global-market-for-hard-disk-components-1.

United States and elsewhere; (c) relied on the agreements identified above and used the exchange of pricing information to inform their negotiations with U.S.-based and foreign customers that purchased Suspension Assemblies and produced HDDs for sale in, or for delivery to, the United States and elsewhere; (d) sold price-fixed Suspension Assemblies in, or for delivery to, the United States; and (e) accepted payment for price-fixed Suspension Assemblies sold in, or for delivery to, the United States and elsewhere at artificially inflated prices.  *See* Information.

Plaintiffs are (1) indirect purchaser resellers (i.e., plaintiffs who purchased Suspension Assemblies for resale), and (2) indirect purchaser end-users (i.e., plaintiffs who purchased Suspension Assemblies for their own use).  Plaintiffs allege that, as a result of Defendants' unlawful conduct, they and other indirect purchasers have been harmed by paying inflated, supra-competitive prices for Suspension Assemblies.  Plaintiffs bring claims for damages and injunctive relief under Sections 4 and 16 of the Clayton Act for violations of Section 1 of the Sherman Act, and for damages under the antitrust, unfair competition, consumer protection and unjust enrichment laws of various states.  As explained in their complaints, Plaintiffs intend to show, through the use of regression analyses recognized by numerous courts, that the overcharge attributable to Defendants' collusive conduct flowed to them, through the chain of distribution.

The United States Department of Justice ("DOJ") filed a one-count charge against NHK Spring Co., Ltd. ("NHK Spring") for alleged violation of the Sherman Act, to which NHK Spring pleaded guilty, and agreed to pay $28.5 million in criminal fines and cooperate in the DOJ's ongoing investigation of the HDD Suspension Assemblies industry.  *See* Plea Agreement.  NHK Spring and the DOJ also "agree[d] that, in light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information."[3]  In noting the parties' agreement regarding no restitution order, the DOJ expressly referenced the

---

[3] United States' Sentencing Memorandum, filed December 5, 2019 (ECF No. 21), in *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich.), p. 8.

4                    Case No. 19-md-02918-MMC
JOINT CASE MANAGEMENT STATEMENT

pendency of these indirect purchaser actions. *Id.* Similarly, as Assistant Attorney General of the DOJ Antitrust Division Makan Delrahim described, HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."[4]

The NHK Plea Agreement states that "[d]uring the relevant period, the defendant and its co-conspirators manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States. During the relevant period, the defendant and its co-conspirators sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into products—namely, hard disk drives—that were sold in, or for delivery to, the United States. During the relevant period, HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies traveled in, and substantially affected, interstate and import trade and commerce. During the Relevant Period, the conspiracy involved and had a direct, substantial and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies." Plea Agreement at 5.

### b. Defendants' Statement

HDD Suspension Assemblies are tiny components used to guide heads designed to read data stored on hard disk drives. Defendants' sales of those products during the periods at issue in the Complaints were almost completely made outside the United States.

None of the Plaintiffs, moreover, allege that they purchased HDD Suspension Assemblies from Defendants; and most (if not all) did not purchase HDD Suspension Assemblies as stand-alone products. Plaintiffs, instead, generally allege that they purchased (a) other products, that (b) incorporated HDDS, which (c) incorporated some HDD Assemblies manufactured by Defendants. There is a long and complex distribution chain between the Defendants' sales of

---

[4] https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

HDD Suspension Assemblies and the purchases on which Plaintiffs' claims are premised, with most of that distribution chain outside the United States.

Defendants reserve all rights to challenge any claims as currently pled, or as pled in any CAC.

### 3. LEGAL ISSUES

The following issues of law are likely to require adjudication:

**Plaintiffs' Statement:**

a. Whether the requirements of Fed. R. Civ. P. 23(a) have been met, and whether there are common factual and legal issues that predominate over individualized issues sufficient to certify classes of indirect purchasers under Fed. R. Civ. P. 23(b)(2) and (b)(3) and, if so, the definitions of the classes.

b. The timing and scope of Defendants' agreements or understandings to fix, raise or stabilize the prices of Suspension Assemblies purchased indirectly by Plaintiffs in violation of Section 1 of the Sherman Act, or state antitrust, consumer protection and unjust enrichment laws.

c. Whether a permanent injunction should issue to the extent Defendants' alleged conduct has not concluded.

d. Whether Plaintiffs or other members of the respective classes have suffered damages, and if so, the appropriate class-wide measure of damages.

e. Whether Defendants state or can prove cognizable affirmative defenses.

**Defendants' Statement:**

f. Whether the laws on which Plaintiffs' claims are premised apply to the claims Plaintiffs are asserting.

g. Whether Plaintiffs' claims are time-barred.

h. Whether the Court has personal jurisdiction over certain Defendants.

i. Whether all Plaintiffs have standing to assert claims under all statutes alleged.

j.  Whether the Plaintiffs have sustained an antitrust injury proximately caused by Defendants' actions as required by Section 4 of the Clayton Act.

**4.     MOTIONS**

*Pending Motions*.  None at this time.

*Motions to Dismiss*.  The Domestic Defendants have stipulated to responding to any CAC within 60 days of filing (unless the Court sets a different schedule).  The Foreign Defendants will respond to any CAC on the same schedule and with the same deadlines as responses to the CAC by the Domestic Defendants.  Defendants have indicated that they are likely to file motions to dismiss the Complaints, and certain Defendants may file personal jurisdiction motions.  The parties have discussed a briefing schedule and the number, format and length of briefs, but Defendants have requested that the parties defer agreements regarding same until after the filing of Plaintiffs' CACs.  Defendants have indicated a willingness to file consolidated briefs on common issues between them.

In light of the above, following the filing of CACs, the parties will meet and confer on a briefing schedule and on the number and length of briefs and work to submit a stipulation regarding same to the Court within 14 days from filing of the CAC.

i.  Plaintiffs' Additional Statement

Plaintiffs also anticipate filing motion(s) for class certification, and may file motions for summary judgment after taking discovery and other pretrial motions as necessary.

ii.  Defendants' Additional Statement

Defendants may file motions for summary judgment if the cases are not dismissed on the pleadings and other pretrial motions as necessary.

**5.     AMENDMENT OF PLEADINGS**

End-User and Reseller Plaintiffs will file their respective consolidated amended complaints prior to the February 21, 2019 case management conference.

**6.   EVIDENCE PRESERVATION**

On January 23 and 30, 2020, the parties engaged in further Rule 26(f) conferences, during which they met and conferred regarding evidence preservation, including discussion of the Northern District of California's Checklist for Rule 26(f) Meet and Confer Regarding ESI, and the Court's Guidelines for the Discovery of ESI.  The parties are in the process of exchanging information related to custodians, non-custodial sources of ESI and documents, structured data and non-structured data information systems, and other potential sources of ESI, so as to inform their decisions and positions related to timing and scope of preservation of ESI and other evidence.

Until the parties reach an agreement on a preservation plan for all cases or the Court orders otherwise, each party will continue to take reasonable steps to preserve all evidence that may be relevant to this litigation.

**7.   DISCLOSURES**

The parties have agreed to exchange initial disclosures within 30 days from the date Plaintiffs file their CACs.  In addition to providing the information identified in Rule 26(a)(1), the parties have agreed to exchange any organizational charts pertaining to the named parties in the CAC related to the relevant time period alleged in the CACs.

**8.   DISCOVERY**

No formal discovery has taken place.

   a.   **Plaintiffs' Statement**

As noted above, the parties had two additional Rule 26(f) conferences in January.  During those conferences, in addition to discussing initial disclosures and evidence preservation, the parties discussed production of documents produced to government authorities; production of structured data (*e.g.*, transactional sales, purchase and cost data, etc.), non-structured data (*e.g.*, emails, presentations, memoranda, etc.) and hard copy documents; changes in limitations on discovery; the location of depositions of foreign witnesses; among other discovery topics.  These

discussions are ongoing.

Plaintiffs have requested that Defendants agree to the following limited discovery during the pendency of any motions to dismiss: (1) Defendants' production of all documents and English-language translations thereof, as well as any data that Defendants have previously selected, collected, and prepared for production or produced, that are related to any allegations of anticompetitive conduct or illegal conduct by Defendants involving HDD Suspension Assemblies; and (2) written discovery related to structured data, non-structured data and documents, including third party discovery regarding same.

On item (1), Plaintiffs previously requested that Defendants informally produce documents produced to any regulators. Plaintiffs thereafter provided Defendants with a provisional request for production of documents that considered and attempted to accommodate certain objections and other concerns raised by Defendants. Defendants have agreed to respond to that request, review documents subject to it, and produce documents, subject to any objections, during the pendency of any motions to dismiss.

On item (2), production of structured data can be a time-consuming task that requires significant back-and-forth between the parties on the interpretation, completeness and supplementation of datasets. Plaintiffs desire to commence this process sooner rather than later to facilitate case progress during the pendency of any motions to dismiss. Given the presence of an amnesty applicant in the case and a guilty plea by the parent corporation of one of the defendant groups in the case, Plaintiffs also expect that all or most of the Defendants named in any CACs will not seek dismissal on the grounds of a failure to state claim for a conspiracy in violation of federal and state law. Plaintiffs' complaints assert standard federal and state law claims of the kind that have survived motions to dismiss in many cases of this type, in this District. Thus, there would appear to be no reason to delay the commencement of, at the very least, written document discovery. Plaintiffs have advised Defendants that they are willing to defer deposition discovery until after resolution of motions to dismiss.

Defendants' offer to discuss the technical details and scope of structured data production is already mandated by Rule 26(f), preservation obligations and this Court's ESI guidelines, and should be substantially completed expeditiously. Lifting of the discovery stay pertaining to written discovery is warranted under all of the facts and circumstances of this case.

### b. Defendants' Statement

The scope of any discovery in this case is bounded by the claims asserted, and the allegations that the Court finds sufficient to state a claim. *See* Federal Rules of Civil Procedure 26(b)(1). Plaintiffs have yet to file a CAC, and it is not yet clear what they will allege. Defendants may seek dismissal of some or all of the claims asserted. Plaintiffs' contention that one group of defendants in this case has pled guilty to violations of the Sherman Act and that the other has been accepted into the Department of Justice's leniency program does not properly imply that (a) the plaintiffs here have valid claims under the laws they may seek to invoke, (b) all of the Defendants are properly before the Court, or (c) that the CACs will properly state claims for all that they allege. The scope of the claims in this case have yet to be determined, and until they are determined, it is not possible to determine the proper scope of discovery (if any) in this case. Defendants therefore oppose fully opening discovery prior to resolution of any Rule 12 motions as Plaintiffs suggest, and believe it is premature to undertake the high cost and burden of discovery, including any third-party discovery.

However, Defendants propose to proceed with two threshold discovery items during the pendency of motions to dismiss:

    a. Defendants will provide written responses and objections to Plaintiffs' initial draft request for production (Plaintiffs' item (1) above) and will produce documents, subject to those objections, from review the set of documents previously collected and produced to or seized by the DOJ and or the JFTC after reviewing such documents for privilege, confidentiality, and relevance to that request for production.

    b. Defendants are willing to engage with Plaintiffs regarding structured data of Plaintiffs

and Defendants which may be relevant to the allegations in the CAC and begin a dialogue regarding the technical details and scope of that data.

Both items will take time and will position the parties to initiate discovery promptly following a ruling on the motions, as needed.

## 9. CLASS ACTIONS

Plaintiffs brought their claims as class actions. Plaintiffs anticipate filing motions for class certification. Defendants expect to oppose any motions for class certification.

## 10. RELATED CASES

One related action, *Lancaster, et al. v. Headway Technologies, Inc., et al.*, No. 5:19-cv-08122-BLF (filed December 12, 2019), is assigned to Judge Beth Labson Freeman in the San Jose Division. Counsel in that action filed a motion to relate case on February 5, 2020 (MDL ECF No. 138). The parties are unaware of any other related actions that have not been transferred to this Court.

## 11. RELIEF

Plaintiffs seek money damages, including treble damages, and equitable and injunctive relief against alleged continued illegal practices. Defendants deny that Plaintiffs are entitled to any relief at all, including the specific relief that they seek.

## 12. SETTLEMENT AND ADR

No settlement discussions have occurred. Upon filing a CAC, Plaintiffs will consider prospects for settlement and confer with Defendants regarding same, if appropriate.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to have a magistrate judge conduct all further proceedings including trial.

## 14. OTHER REFERENCES

The Parties are not currently aware of any claims or defenses that are subject to arbitration. The parties understand that the Court may refer discovery motions to a Magistrate

Judge.

### 15. NARROWING OF ISSUES

At this time, the parties have yet to identify issues that can be narrowed by agreement. The parties believe it is premature to consider the narrowing of issues at this time.

### 16. EXPEDITED SCHEDULE

The parties do not believe that this case can be handled on an expedited basis with streamlined procedures.

### 17. SCHEDULING AND TRIAL

The parties propose that the Court schedule another case management conference approximately 7 – 14 days following Defendants' filing of any motions to dismiss. At that conference, and if not already addressed by stipulation and proposed order, the parties will address with the Court the briefing schedule and related briefing details on Defendants' motion(s) to dismiss. The parties will also update the Court on the status of the parties' discussions and any agreements related to evidence preservation, an ESI production protocol, and the status of any discovery that the Court has permitted and any discovery that Plaintiffs contend is appropriate given the scope of any motions to dismiss filed by Defendants.

### 18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PARTIES

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Plaintiffs to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Defendants to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

### 19. PROFESSIONAL CONDUCT

All counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: February 14, 2020

Respectfully submitted,

| | |
|---|---|
| */s/ Victoria Sims*<br>Victoria Sims<br>**CUNEO GILBERT & LADUCA, LLP**<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>Telephone: (202) 789-3960<br>Facsimile: (202) 789-1813<br>vicky@cuneolaw.com | */s/ Christopher T. Micheletti*<br>Christopher T. Micheletti<br>**ZELLE LLP**<br>44 Montgomery St., Suite 3400<br>San Francisco, CA 94104<br>Telephone: (415) 693-0700<br>Facsimile: (415) 693-0770<br>cmicheletti@zelle.com |
| */s/ Shawn M. Raiter*<br>Shawn M. Raiter<br>**LARSON • KING, LLP**<br>30 East Seventh Street, Suite 2800<br>Saint Paul, MN 55101<br>Telephone: (651) 312-6518<br>Facsimile: (651) 789-4818<br>sraiter@larsonking.com | */s/ Aaron M. Sheanin*<br>Aaron M. Sheanin<br>**ROBINS KAPLAN LLP**<br>2440 West El Camino Real, Suite 100<br>Mountain View, CA 94040<br>Telephone: (650) 784-4040<br>Facsimile: (650) 784-4041<br>asheanin@robinskaplan.com |
| ***Interim Co-Lead Class Counsel for the Reseller Plaintiffs*** | ***Interim Co-Lead Class Counsel for the End-User Plaintiffs*** |
| By: */s/ Mark H. Hamer*<br>Mark H. Hamer<br>**BAKER MCKENZIE LLP**<br>815 Connecticut Ave., NW<br>Washington, DC 20006<br>Telephone: (202) 452-7077<br>mark.hamer@bakermckenzie.com | By: */s/ J. Clayton Everett, Jr.*<br>J. Clayton Everett, Jr.<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone: (202) 739-5860<br>Clay.everett@morganlewis.com |
| ***Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd. and NHK Spring Precision (Guangzhou) Co, Ltd.*** | ***Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*** |

**ATTORNEY ATTESTATION**

I, Christopher T. Micheletti, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Christopher T. Micheletti*
Christopher T. Micheletti

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

                                       */s/ Christopher T. Micheletti*
                                         Christopher T. Micheletti