1   Aaron M. Sheanin (SBN 214472)
    **ROBINS KAPLAN LLP**
2   2440 W El Camino Real, Suite 100
    Mountain View, CA 94040
3   Telephone: (650) 784-4040
    Facsimile: (650) 784-4041
4   asheanin@robinskaplan.com

5   Christopher T. Micheletti (SBN 136446)
    **ZELLE LLP**
6   44 Montgomery Street, Suite 3400
    San Francisco, CA 94104
7   Telephone: (415) 693-0700
    Facsimile: (415) 693-0770
8   cmicheletti@zelle.com

9   *Interim Co-Lead Class Counsel for End-User*
    *Plaintiffs*
10
    (Additional Counsel on Signature Page)
11

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15   IN RE: HARD DISK DRIVE SUSPENSION        | Case No. 19-md-02918-MMC
     ASSEMBLIES ANTITRUST LITIGATION
16                                            | MDL No. 2918

17   _____

18   This Document Relates to:               | **END-USER PLAINTIFFS'**
     ALL END-USER ACTIONS                     | **CONSOLIDATED CLASS ACTION**
                                              | **COMPLAINT**
19
                                             | **JURY TRIAL DEMANDED**
20
                                             | Hon. Maxine M. Chesney
21

22

23

24   | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

25

26

27

28

1
2

# TABLE OF CONTENTS

I.      NATURE OF THE ACTION ............................................................... 1

II.     JURISDICTION AND VENUE ............................................................. 3

III.    THE PARTIES ................................................................................... 6

    A.    Plaintiffs ................................................................................... 6

    B.    TDK Defendants ..................................................................... 12

    C.    NHK Defendants .................................................................... 14

IV.     AGENTS AND CO-CONSPIRATORS ............................................ 15

V.      INTERSTATE TRADE AND COMMERCE .................................... 17

VI.     FACTUAL ALLEGATIONS ............................................................ 18

    A.    The HDD Suspension Assembly Industry .............................. 18

    B.    The Nature of the Conspiracy ................................................ 21

    C.    NHK Spring Pled Guilty to Conspiring to Fix Prices and Allocate Market Shares for HDD Suspension Assemblies ................................... 25

    D.    Additional Government Investigations .................................. 27

    E.    HDD Suspension Assembly Market Characteristics Are Ripe for a Conspiracy ....................................................... 30

        1.    The HDD Suspension Assemblies Market Has High Barriers to Entry ........................................................... 30

        2.    The HDD Suspension Assemblies Market is Highly Concentrated ......................................................... 31

        3.    Market Concentration on the "Buy" Side ...................... 33

        4.    Homogeneity of Products and Inelasticity of Demand ............. 34

        5.    Market Maturity and Declining Demand ...................... 35

        6.    Defendants Maintained Close Business Relationships ............. 37

    F.    Chain of Distribution/Sale ..................................................... 38

VII.    CLASS ACTION ALLEGATIONS .................................................. 40

VIII.   PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ................................................................................... 43

IX.     PLAINTIFFS' CLAIMS ARE TIMELY ........................................... 47

    A.    Defendants Have Engaged in a Continuing Violation. ......................................................... 47

    B.    The Discovery Rule Tolled the Statute of Limitations. ......................................................... 47

    D.    The DOJ's Criminal Proceedings Suspended the Statute of Limitations. ................................................ 50

X.      VIOLATIONS ALLEGED ................................................................ 50

    FIRST CLAIM FOR RELIEF Violation of Section 1 of the Sherman Act (on behalf of All Plaintiffs and the Nationwide Injunctive Relief Class) ...................................................... 50

SECOND CLAIM FOR RELIEF Violation of Section 1 of the Sherman Act (on behalf of the Nationwide Damages Class)................................. 52

THIRD CLAIM FOR RELIEF Violation of State Antitrust Statutes (on behalf of Plaintiffs and the State Damages Classes)........................... 54

FOURTH CLAIM FOR RELIEF ............................................................... 74

FIFTH CLAIM FOR RELIEF Unjust Enrichment (on behalf of Plaintiffs and members of the Damages Classes)............................................ 102

XI.   PRAYER FOR RELIEF...................................................................... 103

XII.  DEMAND FOR JURY TRIAL............................................................. 104

Plaintiffs, on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief based on the investigation of counsel as to all other matters, bring suit against TDK Corporation ("TDK"), Magnecomp Precision Technology Public Co. Ltd. ("MPT"), Magnecomp Corporation ("Magnecomp"), SAE Magnetics (H.K.) Ltd. ("SAE"), Hutchinson Technology Inc. ("HTI"), NHK Spring Co., Ltd. ("NHK Spring"), NHK International Corporation ("NHK International"), NHK Spring (Thailand) Co., Ltd. ("NHK Thailand"), NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan"), and NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") for damages, injunctive relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, and consumer protection laws, and the laws of unjust enrichment, demand a trial by jury, and allege as follows:

## I.       NATURE OF THE ACTION

1.       This lawsuit arises out of a global conspiracy among Defendants and their co-conspirators to fix prices of, and allocate market shares for, hard disk drive ("HDD") suspension assemblies. HDD suspension assemblies are indispensable components of HDDs, which use magnetism to store information electronically. HDDs containing HDD suspension assemblies are sold both as stand-alone devices and incorporated into a variety of electronics. This Consolidated Class Action Complaint ("Complaint") refers to portable and external hard drives, desktop and laptop computers, game consoles, set-top boxes/DVRs, network servers, and enterprise storage arrays that incorporate HDDs containing HDD suspension assemblies as "Finished Products."

2.       The fact of the price-fixing conspiracy is not in doubt. On July 29, 2019, the U.S. Department of Justice ("DOJ") announced that NHK Spring agreed to plead guilty and pay a $28.5 million fine for its role in the conspiracy.[1] On September 23, 2019, NHK Spring pled guilty.[2]

---

[1] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019), *available at* https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk; Information at 2-3, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019).

[2] Rule 11 Plea Agreement, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019); Notice of Criminal Monetary Imposition, *United States v. NHK Spring Co., Ltd.*,

3.      According to the plea agreement, Defendants "engaged in discussions and attended meetings with each other. During these discussions, [Defendants] reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD suspension assemblies to be sold in the United States and elsewhere. To effectuate these agreements, employees and officers of [Defendants] exchanged HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere. The [Defendants] relied on their agreements not to compete and used the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD suspension assemblies and produced hard disk drives for sale, or delivery to, the United States and elsewhere."[3]

4.      As a result of Defendants' conspiracy, American consumers have been substantially harmed. In announcing the guilty plea, Assistant Attorney General of the DOJ Antitrust Division Makan Delrahim stated that the "impact on American consumers and business is direct and substantial."[4]

5.      On February 13, 2020, the DOJ indicted Hitoshi Hashimoto and Hiroyuki Tamura for their roles in the "conspiracy to suppress and eliminate competition by agreeing to stabilize, maintain, and fix prices for HDD suspension assemblies sold in the United States and elsewhere."[5] Both were general managers of NHK Spring's disk drive suspension and component sales department, who were involved in the sale and pricing of NHK Spring's HDD suspension assemblies.

6.      Defendants' conspiracy has also drawn the attention of antitrust regulators abroad. On February 9, 2018, the Japanese Fair Trade Commission ("JFTC") issued a cease and desist order

No. 2:19-cr-20503 (E.D. Mich. Dec. 18, 2019).

[3] Rule 11 Plea Agreement, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019).

[4] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019), *available at* https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

[5] Indictment at ¶ 6, *United States v. Hitoshi Hashimoto and Hiroyuki Tamura*, No. 3:20-cr-00070-JD (N.D. Cal. Feb. 13, 2020).

1    to Defendants NHK Spring and NAT H.K., found that they substantially restrained competition in

2    the HDD suspension assemblies market by agreeing to maintain sales prices, and imposed fines of

3    ¥1076.16 million yen.[6] The JFTC's cease and desist order identified cartel activity by Defendants

4    NHK Spring, NAT HK, TDK, MPT, and SAE.

5        7.      In April 2018, Brazilian antitrust authorities launched an investigation into

6    allegations that TDK, HTI, MPT, SAE, and NHK Spring colluded from 2003 to May 2016 to fix

7    prices of HDD suspension assemblies.

8        8.      Plaintiffs seek to represent all persons and entities who, during the period from

9    January 2005 through at least May 2016 (the "Class Period"),[7] indirectly purchased an HDD or a

10   Finished Product, not for resale, which included as a component part one or more HDD suspension

11   assemblies that were manufactured or sold by Defendants, any current or former subsidiary of

12   Defendants, or any co-conspirator of Defendants.

13       9.      Through the conspiracy, Defendants and their co-conspirators unreasonably

14   restrained interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15

15   U.S.C. § 1, state antitrust, unfair competition, and consumer protection laws, and the common law

16   of unjust enrichment. As a direct and proximate result of Defendants' anticompetitive and unlawful

17   conduct, Plaintiffs and the Classes paid more during the Class Period for HDD suspension

18   assemblies and/or Finished Products than they otherwise would have paid in a competitive market,

19   and have thereby suffered antitrust injury to their business or property.

20                    **II.    JURISDICTION AND VENUE**

21       10.     Plaintiffs bring this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§

22   15, 26, to secure equitable, injunctive, and monetary relief against Defendants for violating Section

23   1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Plaintiffs also assert claims for actual and exemplary

24   damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment

---

25/26   [6] Japan Fair Trading Commission, *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufactures of Suspension for Hard Disk Drives* (Feb. 9. 2019), *available at* https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html

27/28   [7] Plaintiffs reserve the right to extend the Class Period consistent with discovery including to the date when the effects of the conspiracy ceased to impact the Classes.

1  laws, and seek to obtain restitution, recover damages and secure other relief against Defendants for

2  violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other

3  expenses under federal and state law.

4      11.     This Court has jurisdiction over the subject matter of this action pursuant to Sections

5  4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, Section 1 of the Sherman Antitrust Act, 15 U.S.C.

6  § 1, and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law

7  claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter

8  or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some

9  members of the proposed Classes are citizens of a state different from some Defendants.

10     12.     Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C.

11 § 22, and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to

12 Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and

13 commerce discussed below has been carried out in this District, and one or more Defendants reside,

14 are licensed to do business in, are doing business in, had agents in, or are found or transact business

15 in this District.

16     13.     On October 8, 2019, the Judicial Panel on Multidistrict Litigation ("JPML")

17 centralized several related actions pertaining to the conspiracy alleged herein in this District before

18 the Honorable Maxine M. Chesney as *In re Hard Disk Drive Suspension Assemblies Antitrust*

19 *Litigation*, MDL. No. 2918.

20     14.     This Court has *in personam* jurisdiction over Defendants because each, either

21 directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted

22 business in the United States, including in this District; (b) directly or indirectly sold or marketed

23 substantial quantities of HDD suspension assemblies throughout the United States as a whole,

24 including in this District; (c) had substantial aggregate contacts with the United States, including

25 in this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had a

26 direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or

27 property of persons and entities residing in, located in, or doing business throughout the United

28 States, including in this District. Defendants also conduct business throughout the United States,

1  including in this District, and they have purposefully availed themselves of the laws of the United

2  States.

3       15.     Defendants' collusive conduct was intended to, and did, cause injury to Plaintiffs

4  and the Classes, who purchased HDDs and Finished Products containing HDD suspension

5  assemblies manufactured and sold by Defendants, any current or former subsidiary of Defendants,

6  or any co-conspirator of Defendants. Defendants expressly aimed their conspiracy at the U.S.

7  marketplace and their collusive conduct has resulted in an adverse effect on purchasers of HDDs

8  and Finished Products in each state identified in this Complaint.

9       16.     In addition, NHK Spring, NHK International, NHK Thailand, NAT Dong Guan, and

10  NAT H.K. have subjected themselves to this Court's jurisdiction through the cooperation

11  provisions of NHK Spring's plea agreement in its criminal case. Those provisions require NHK

12  Spring and "its subsidiaries that are engaged in the production or sale of HDD suspension

13  assemblies" to cooperate fully, truthfully, and continuously by, among other things, producing

14  documents, witnesses, and testimony in the United States, in exchange for limitations on further

15  criminal prosecutions of those companies."[8]

16       17.     ████████████████████████████████████████

17  ███████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ████████████████████████  Under ACPERA, an antitrust leniency applicant must provide

21  cooperation to plaintiffs in any civil action alleging a violation of Section 1 of the Sherman Act or

22  any similar State law, including, among other things, providing a full account of all relevant facts

23  known to the applicant, producing all relevant documents or other items wherever they are located,

24  and using best efforts to secure and facilitate complete and truthful interviews, depositions, or

25  testimony at trial or other court proceedings from covered cooperating individuals.[9] The Court has

26  _____

27  [8] Rule 11 Plea Agreement at ¶¶ 12-15, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503
   (E.D. Mich. Sept. 23, 2019).

28  [9] Public Law 108-237, § 213(a)–(b).

1    the authority to determine whether an antitrust leniency applicant has provided timely, satisfactory

2    cooperation with respect to this litigation.[10]

3                                      **III.    THE PARTIES**

4           **A.    Plaintiffs**

5           18.    Plaintiff Jonathan Rizzo is a citizen of Arizona. During the Class Period, he

6    purchased in Arizona at least one Finished Product containing HDD suspension assemblies

7    manufactured or sold by at least one Defendant, and was injured in his business or property as a

8    result of Defendants' unlawful conduct alleged herein.

9           19.    Plaintiff Dustin Lancaster is a citizen of Arkansas. During the Class Period, he

10   purchased in Arkansas at least one Finished Product containing HDD suspension assemblies

11   manufactured or sold by at least one Defendant, and was injured in his business or property as a

12   result of Defendants' unlawful conduct alleged herein.

13          20.    Plaintiff Joanna Katcher is a citizen of California. During the Class Period, she

14   purchased in California at least one Finished Product containing HDD suspension assemblies

15   manufactured or sold by at least one Defendant, and was injured in her business or property as a

16   result of Defendants' unlawful conduct alleged herein.

17          21.    Plaintiff Rhonda Glover is a citizen of California. During the Class Period, she

18   purchased in California at least one Finished Product containing HDD suspension assemblies

19   manufactured or sold by at least one Defendant, and was injured in her business or property as a

20   result of Defendants' unlawful conduct alleged herein.

21          22.    Plaintiff James Walnum is a citizen of California. During the Class Period, he

22   purchased in California at least one Finished Product containing HDD suspension assemblies

23   manufactured or sold by at least one Defendant, and was injured in his business or property as a

24   result of Defendants' unlawful conduct alleged herein.

25          23.    Plaintiff Timothy A. St. Cyr is a citizen of Minnesota. During the Class Period and

26   while residing in California, he purchased in California at least one Finished Product containing

27

28   [10] *Id.* § 213(b)

1    HDD suspension assemblies manufactured or sold by at least one Defendant, and was injured in
2    his business or property as a result of Defendants' unlawful conduct alleged herein.

3        24.    Plaintiff David Lietz is a citizen of the District of Columbia. During the Class Period,
4    he purchased in the District of Columbia at least one Finished Product containing HDD suspension
5    assemblies manufactured or sold by at least one Defendant, and was injured in his business or
6    property as a result of Defendants' unlawful conduct alleged herein.

7        25.    Plaintiff Jeffrey Greenfield is a citizen of Florida. During the Class Period, he
8    purchased in Florida at least one Finished Product containing HDD suspension assemblies
9    manufactured or sold by at least one Defendant, and was injured in his business or property as a
10   result of Defendants' unlawful conduct alleged herein.

11       26.    Plaintiff Ted Ingber is a citizen of Florida. During the Class Period, he purchased in
12   Florida at least one Finished Product containing HDD suspension assemblies manufactured or sold
13   by at least one Defendant, and was injured in his business or property as a result of Defendants'
14   unlawful conduct alleged herein.

15       27.    Plaintiff Harley Oda is a citizen of Hawaii. During the Class Period, he purchased in
16   Hawaii at least one Finished Product containing HDD suspension assemblies manufactured or sold
17   by at least one Defendant, and was injured in his business or property as a result of Defendants'
18   unlawful conduct alleged herein.

19       28.    Plaintiff Benjamin Allen is a citizen of Iowa. During the Class Period, he purchased
20   in Iowa at least one Finished Product containing HDD suspension assemblies manufactured or sold
21   by at least one Defendant, and was injured in his business or property as a result of Defendants'
22   unlawful conduct alleged herein.

23       29.    Plaintiff John R. Shannon III is a citizen of Kansas. During the Class Period, he
24   purchased in Kansas at least one Finished Product containing HDD suspension assemblies
25   manufactured or sold by at least one Defendant, and was injured in his business or property as a
26   result of Defendants' unlawful conduct alleged herein.

27       30.    Plaintiff James Marean is a citizen of Maine. During the Class Period, he purchased
28   in Maine at least one Finished Product containing HDD suspension assemblies manufactured or

1  sold by at least one Defendant, and was injured in his business or property as a result of Defendants'
2  unlawful conduct alleged herein.

3      31.    Plaintiff Sascha Nelson is a citizen of Maryland. During the Class Period, she
4  purchased in Maryland at least one Finished Product containing HDD suspension assemblies
5  manufactured or sold by at least one Defendant, and was injured in her business or property as a
6  result of Defendants' unlawful conduct alleged herein.

7      32.    Plaintiff Stacey Silver is a citizen of Maryland. During the Class Period, she
8  purchased in Maryland at least one Finished Product containing HDD suspension assemblies
9  manufactured or sold by at least one Defendant, and was injured in her business or property as a
10  result of Defendants' unlawful conduct alleged herein.

11      33.    Plaintiff Brian Fahey is a citizen of Massachusetts. During the Class Period, he
12  purchased in Massachusetts at least one Finished Product containing HDD suspension assemblies
13  manufactured or sold by at least one Defendant, and was injured in his business or property as a
14  result of Defendants' unlawful conduct alleged herein.

15      34.    Plaintiff Jordan Leff is a citizen of Michigan. During the Class Period, he purchased
16  in Michigan at least one Finished Product containing HDD suspension assemblies manufactured or
17  sold by at least one Defendant, and was injured in his business or property as a result of Defendants'
18  unlawful conduct alleged herein.

19      35.    Plaintiff Chad Klebs is a citizen of Minnesota. During the Class Period, he purchased
20  in Minnesota at least one Finished Product containing HDD suspension assemblies manufactured
21  or sold by at least one Defendant, and was injured in his business or property as a result of
22  Defendants' unlawful conduct alleged herein.

23      36.    Plaintiff Pamela Uglem is a citizen of Minnesota. During the Class Period, she
24  purchased in Minnesota at least one Finished Product containing HDD suspension assemblies
25  manufactured or sold by at least one Defendant, and was injured in her business or property as a
26  result of Defendants' unlawful conduct alleged herein.

27      37.    Plaintiff Andrew Syverson is a citizen of Minnesota. During the Class Period, he
28  purchased in Minnesota at least one Finished Product containing HDD suspension assemblies

1    manufactured or sold by at least one Defendant, and was injured in his business or property as a
2    result of Defendants' unlawful conduct alleged herein.

3        38.    Plaintiff Kimberly Benjamin is a citizen of Missouri. During the Class Period, she
4    purchased in Missouri at least one Finished Product containing HDD suspension assemblies
5    manufactured or sold by at least one Defendant, and was injured in her business or property as a
6    result of Defendants' unlawful conduct alleged herein.

7        39.    Plaintiff Brandy Newsome is a citizen of Mississippi. During the Class Period, she
8    purchased in Mississippi at least one Finished Product containing HDD suspension assemblies
9    manufactured or sold by at least one Defendant, and was injured in her business or property as a
10   result of Defendants' unlawful conduct alleged herein.

11       40.    Plaintiff Ethel Cain Carson is a citizen of Mississippi. During the Class Period, she
12   purchased in Mississippi at least one Finished Product containing HDD suspension assemblies
13   manufactured or sold by at least one Defendant, and was injured in her business or property as a
14   result of Defendants' unlawful conduct alleged herein.

15       41.    Plaintiff Joseph Mattingly is a citizen of Montana. During the Class Period, he
16   purchased in Montana at least one Finished Product containing HDD suspension assemblies
17   manufactured or sold by at least one Defendant, and was injured in his business or property as a
18   result of Defendants' unlawful conduct alleged herein.

19       42.    Plaintiff Richard Jones is a citizen of Montana. During the Class Period, he
20   purchased in Montana at least one Finished Product containing HDD suspension assemblies
21   manufactured or sold by at least one Defendant, and was injured in his business or property as a
22   result of Defendants' unlawful conduct alleged herein.

23       43.    Plaintiff Leslie Working is a citizen of Nebraska. During the Class Period, she
24   purchased in Nebraska at least one Finished Product containing HDD suspension assemblies
25   manufactured or sold by at least one Defendant, and was injured in her business or property as a
26   result of Defendants' unlawful conduct alleged herein.

27       44.    Plaintiff Gregory Painter is a citizen of Nevada. During the Class Period, he
28   purchased in Nevada at least one Finished Product containing HDD suspension assemblies

1    manufactured or sold by at least one Defendant, and was injured in his business or property as a
2    result of Defendants' unlawful conduct alleged herein.

3          45.     Plaintiff Matthew Landry is a citizen of New Hampshire. During the Class Period,
4    he purchased in New Hampshire at least one Finished Product containing HDD suspension
5    assemblies manufactured or sold by at least one Defendant, and was injured in his business or
6    property as a result of Defendants' unlawful conduct alleged herein.

7          46.     Plaintiff Sue McKelvey is a citizen of New Mexico. During the Class Period, she
8    purchased in New Mexico at least one Finished Product containing HDD suspension assemblies
9    manufactured or sold by at least one Defendant, and was injured in her business or property as a
10    result of Defendants' unlawful conduct alleged herein.

11          47.     Plaintiff Vincent Cimino is a citizen of New York. During the Class Period, he
12    purchased in New York at least one Finished Product containing HDD suspension assemblies
13    manufactured or sold by at least one Defendant, and was injured in his business or property as a
14    result of Defendants' unlawful conduct alleged herein.

15          48.     Plaintiff Anthony Cimino is a citizen of New York. During the Class Period, he
16    purchased in New York at least one Finished Product containing HDD suspension assemblies
17    manufactured or sold by at least one Defendant, and was injured in his business or property as a
18    result of Defendants' unlawful conduct alleged herein.

19          49.     Plaintiff Randy Maccaferri is a citizen of North Carolina. During the Class Period,
20    he purchased in North Carolina at least one Finished Product containing HDD suspension
21    assemblies manufactured or sold by at least one Defendant, and was injured in his business or
22    property as a result of Defendants' unlawful conduct alleged herein.

23          50.     Plaintiff Ashely Boswell is a citizen of North Dakota. During the Class Period, she
24    purchased in North Dakota at least one Finished Product containing HDD suspension assemblies
25    manufactured or sold by at least one Defendant, and was injured in her business or property as a
26    result of Defendants' unlawful conduct alleged herein.

27          51.     Plaintiff David Anderson is a citizen of Oregon. During the Class Period, he
28    purchased in Oregon at least one Finished Product containing HDD suspension assemblies

1    manufactured or sold by at least one Defendant, and was injured in his business or property as a
2    result of Defendants' unlawful conduct alleged herein.

3        52.    Plaintiff Angela Gardner is a citizen of Rhode Island. During the Class Period, she
4    purchased in Rhode Island at least one Finished Product containing HDD suspension assemblies
5    manufactured or sold by at least one Defendant, and was injured in her business or property as a
6    result of Defendants' unlawful conduct alleged herein.

7        53.    Plaintiff Tracy Nurzynski is a citizen of California. During the Class Period, and
8    while residing in South Carolina, she purchased in South Carolina at least one Finished Product
9    containing HDD suspension assemblies manufactured or sold by at least one Defendant, and was
10   injured in her business or property as a result of Defendants' unlawful conduct alleged herein.

11       54.    Plaintiff Ann Marie Putzier is a citizen of South Dakota. During the Class Period,
12   she purchased in South Dakota at least one Finished Product containing HDD suspension
13   assemblies manufactured or sold by at least one Defendant, and was injured in her business or
14   property as a result of Defendants' unlawful conduct alleged herein.

15       55.    Plaintiff Alex Nicholson is a citizen of Tennessee. During the Class Period, he
16   purchased in Tennessee at least one Finished Product containing HDD suspension assemblies
17   manufactured or sold by at least one Defendant, and was injured in his business or property as a
18   result of Defendants' unlawful conduct alleged herein.

19       56.    Plaintiff Yvonne Peychal is a citizen of Tennessee. During the Class Period, she
20   purchased in Tennessee at least one Finished Product containing HDD suspension assemblies
21   manufactured or sold by at least one Defendant, and was injured in her business or property as a
22   result of Defendants' unlawful conduct alleged herein.

23       57.    Plaintiff Nicole Laird is a citizen of Utah. During the Class Period, she purchased in
24   Utah at least one Finished Product containing HDD suspension assemblies manufactured or sold
25   by at least one Defendant, and was injured in her business or property as a result of Defendants'
26   unlawful conduct alleged herein.

27       58.    Plaintiff Samuel Bringhurst is a citizen of Utah. During the Class Period, he
28   purchased in Utah at least one Finished Product containing HDD suspension assemblies

1    manufactured or sold by at least one Defendant, and was injured in his business or property as a

2    result of Defendants' unlawful conduct alleged herein.

3        59.    Plaintiff Eric Klotz is a citizen of Virginia. During the Class Period, he purchased in

4    Virginia at least one Finished Product containing HDD suspension assemblies manufactured or

5    sold by at least one Defendant, and was injured in his business or property as a result of Defendants'

6    unlawful conduct alleged herein.

7        60.    Plaintiff Lauren Huyck is a citizen of Virginia. During the Class Period, she

8    purchased in Virginia at least one Finished Product containing HDD suspension assemblies

9    manufactured or sold by at least one Defendant, and was injured in her business or property as a

10   result of Defendants' unlawful conduct alleged herein.

11       61.    Plaintiff Kenny Lai Cheong is a citizen of Virginia. During the Class Period, he

12   purchased in Virginia at least one Finished Product containing HDD suspension assemblies

13   manufactured or sold by at least one Defendant, and was injured in his business or property as a

14   result of Defendants' unlawful conduct alleged herein.

15       62.    Plaintiff Jonathan Lewis is a citizen of Florida. During the Class Period and while

16   residing in Vermont, he purchased in Vermont at least one Finished Product containing HDD

17   suspension assemblies manufactured or sold by at least one Defendant, and was injured in his

18   business or property as a result of Defendants' unlawful conduct alleged herein.

19       63.    Plaintiff Larry Steele is a citizen of West Virginia. During the Class Period, he

20   purchased in West Virginia at least one Finished Product containing HDD suspension assemblies

21   manufactured or sold by at least one Defendant, and was injured in his business or property as a

22   result of Defendants' unlawful conduct alleged herein.

23       64.    Plaintiff Seth Swanson is a citizen of Wisconsin. During the Class Period, he

24   purchased in Wisconsin at least one Finished Product containing HDD suspension assemblies

25   manufactured or sold by at least one Defendant, and was injured in his business or property as a

26   result of Defendants' unlawful conduct alleged herein.

27   **B.    TDK Defendants**

28       65.    Defendant TDK Corporation is a Japanese corporation with its principal place of

1   business located at 2-5-1 Nihonbashi 2-chome, Chuo-ku, Tokyo, 103-8272, Japan. TDK has a

2   California-based branch located at 1745 Technology Drive, Suite 200, San Jose, CA 95110. TDK—

3   directly and/or through its affiliates, which it wholly owned and/or controlled—manufactured,

4   marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered

5   throughout the United States, including in this District, during the Class Period.

6          66.    Defendant Magnecomp Precision Technology Public Co. Ltd. is a Thai corporation

7   with its principal place of business located at 162 M.5 Phaholyothin Road, T.Lamsai A. Wangnoi,

8   Ayutthaya 13170, Thailand. It is an affiliate of and wholly controlled by TDK. Defendant MPT—

9   directly and/or through its affiliates—manufactured, marketed and/or sold HDD suspension

10  assemblies that were sold, purchased, and/or delivered throughout the United States, including in

11  this District, during the Class Period.

12         67.    Defendant Magnecomp Corporation is a California corporation with its principal

13  place of business located at 38975 Sky Canyon Drive, Suite 111, Murrieta, CA 92563. It is an

14  affiliate of and wholly controlled by TDK. Defendant Magnecomp—directly and/or through its

15  affiliates—manufactured, marketed, and/or sold HDD suspension assemblies that were sold,

16  purchased, and/or delivered throughout the United States, including in this District, during the Class

17  Period.

18         68.    Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with its principal

19  place of business located at 6 Science Park East Avenue, Hong Kong Science Park, Hong Kong,

20  Shatin, N.T., Hong Kong, China. It is an affiliate of and wholly controlled by TDK. Defendant

21  SAE—directly and/or through its affiliates—manufactured, marketed and/or sold HDD suspension

22  assemblies that were sold, purchased, and/or delivered throughout the United States, including in

23  this District, during the Class Period.

24         69.    Defendant Hutchinson Technology, Inc. is a Minnesota corporation with its principal

25  place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota 55350. HTI

26  was an independent company until it was acquired by TDK on October 6, 2016.[11] It is an affiliate

27  [11] *TDK Corporation Announces Completion of Hutchinson Acquisition*, TDK Global (Oct. 6,

28  2016).

1  of and wholly controlled by TDK. HTI—directly and/or through its affiliates—manufactured,

2  marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered

3  throughout the United States, including in this District, during the Class Period.

4      **C.**    **NHK Defendants**

5      70.    Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place

6  of business located at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004, Japan. NHK Spring—

7  directly and/or through its affiliates, which it wholly owned and/or controlled—manufactured,

8  marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered

9  throughout the United States, including in this District, during the Class Period.

10      71.    Defendant NHK International Corporation is a Michigan corporation and U.S.

11  subsidiary established by NHK Spring in 1976, with its principal place of business located at 46855

12  Magellan Drive, Novi, Michigan. NHK International maintains offices in this District at 2350

13  Mission College Boulevard, Suite 1090, Santa Clara, California. It is an affiliate of and wholly

14  controlled by NHK Spring. NHK International—directly and/or through its affiliates—

15  manufactured, marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or

16  delivered throughout the United States, including in this District, during the Class Period.

17      72.    Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal

18  place of business located at Bangna Tower A, 6th-7th floor, 2/3 Moo 14, Bangna-Trad Rd., (km.

19  6.5), Bangkaew, Bangplee, Samutprakarn, 10540 Thailand. It is an affiliate of and wholly

20  controlled by NHK Spring. NHK Thailand—directly and/or through its affiliates—manufactured,

21  marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered

22  throughout the United States, including in this District, during the Class Period.

23      73.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. is a Chinese corporation with its

24  principal place of business located at Conrad Hi-Tech Park, Shangsha, ZhenAn Road, ChangAn

25  Town, Dongguan, Guangdong, 523830 China. It is an affiliate of and wholly controlled by NHK

26  Spring. Defendant NAT Dong Guan—directly and/or through its affiliates—manufactured,

27  marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered

28  throughout the United States, including in this District, during the Class Period.

74.     Defendant NAT Peripheral (H.K.) Co., Ltd. is a Chinese corporation with its principal place of business located at Suite 15b-17, 9/F, Tower 3, China Hong Kong City, 33 Canton Rd., T.S.T., Kowloon, Hong Kong, China. It was formed as a joint venture between SAE and NHK Spring in 2003, and operated as such until March 31, 2015. During this period, SAE had one seat on NAT H.K.'s board of directors and owned 19% of the joint venture, while NHK Spring owned the remainder. On April 10, 2015, SAE transferred 100% of its voting rights in NAT H.K. to NHK Spring, at which time NAT H.K. become a wholly-owned subsidiary of NHK Spring. Defendant NAT H.K.—directly and/or through its affiliates—manufactured, marketed and/or sold HDD suspension assemblies that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.[12] NAT H.K. and NAT Dong Guan are referred to herein collectively as "NAT."

## IV.   AGENTS AND CO-CONSPIRATORS

75.     The acts alleged against Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' business or affairs. Defendants' officers, directors, agents, employees, or representatives engaged in the conduct alleged in the usual management, direction, or control of Defendants' business affairs. Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers or acquisitions.

76.     When Plaintiffs refer to a corporate family or companies by a single name in this Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. Customers often did not recognize these distinctions either, because Defendants marketed themselves as corporate families.

---

[12] TDK Press Release, *TDK Subsidiary dissolve Joint Venture of HDD Suspension Manufacturing Company* (Apr. 1, 2014), *available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm.

77.     Defendants obscured the differences between members of their corporate families by using networks and/or domain names associated with their affiliates for email communications. For example, during the Class Period email addresses for both MPT and Magnecomp employees used the @magnecomp.com domain name. Personnel at MPT based in Asia used U.S.-based email servers, conveying to recipients that they held dual roles or dual responsibilities at both MPT and Magnecomp.

78.     Personnel often shifted back and forth between different entities within the same Defendant corporate family, further blurring the distinctions between the entities. A number of Defendants' employees engaged in collusive conduct during the Class Period and then brought their knowledge with them when they moved between members of their corporate families. For example, in 2009, NHK Thailand's Vice President and General Manager of the Disk Drive Suspension Division, returned to NHK Spring in Japan after four years in Thailand.

79.     The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

80.     Various persons and/or firms not named as Defendants participated as co-conspirators in the violations alleged and performed acts and made statements in furtherance of the conspiracy. Plaintiffs reserve the right to name some or all of these persons as defendants at a later date.

81.     Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

82.     Each Defendant or co-conspirator acted as the principal, agent, or joint venture of, or for, other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged by Plaintiffs. Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for HDD suspension assemblies made by its parent company.

## V.   INTERSTATE TRADE AND COMMERCE

83.      The conduct of Defendants and their co-conspirators has taken place in, and affected the continuous flow of interstate trade and commerce of the United States in that, among other things, during the Class Period:

a.      Defendants and their co-conspirators sold HDD suspension assemblies in, or for delivery to, the United States;

b.      Defendants and their co-conspirators sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into HDDs and Finished Products that were sold in, or for delivery to, the United States;

c.      HDD suspension assemblies, HDDs, and Finished Products traveled in, and substantially affected, interstate and import trade and commerce;

d.      The conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies, HDDs, and Finished Products; and

c.      The conspiracy alleged herein affected billions of dollars of commerce. Defendants collectively controlled 97% of the global HDD suspension parts market. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiffs and other entities who are themselves engaged in commerce.

84.      According to NHK Spring's plea agreement, "[d]uring the relevant period, [NHK Spring] and its co-conspirators manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States. During the relevant period, [NHK Spring] and its co-conspirators sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into products—namely, hard disk drives—that were sold in, or for delivery to, the United States. During the relevant period, HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies traveled in, and substantially affected, interstate and import trade and commerce. During the relevant period, the conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies and certain hard disk drives incorporating

1    affected HDD suspension assemblies."[13]

2        85.    Defendants' unlawful activities substantially affected commerce throughout the

3    United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and

4    through their agents, engaged in activities affecting all states, including activities to fix, raise,

5    maintain and/or stabilize prices, and to allocate the market and customers for HDD suspension

6    assemblies, and which conspiracy unreasonably restrained trade and adversely affected the market

7    for HDD suspension assemblies.

8        86.    Defendants' conspiracy and wrongdoing described herein harmed persons in the

9    United States who purchased HDDs or Finished Products in the United States not for resale.

10              **VI.    FACTUAL ALLEGATIONS**

11        **A.    The HDD Suspension Assembly Industry**

12        87.    HDD suspension assemblies are indispensable components of HDDs.[14] HDDs use

13   magnetism to write, retrieve and store vast amounts of information electronically.[15] HDDs are

14   installed in a variety of electronic products including portable and external hard drives, desktop and

15   laptop computers, game consoles, set-top boxes/DVRs, network servers and enterprise storage

16   arrays.

24   [13] Rule 11 Plea Agreement at ¶ 4(d), *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503
     (E.D. Mich. Sept. 23, 2019).

25   [14] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, THESTREET (Jan. 5,
26   2016), *available at* https://www.thestreet.com/story/13412469/1/hutchinson-shares-keep-falling-
     on-extended-ftc-antitrust-review.html.

27   [15] *Hard Drives*, EXPLAINTHATSTUFF, *available at* https://www.explainthatstuff.com/
28   harddrive.html (last visited Jul. 30, 2015).

88.     HDDs are comprised of, among other things, spinning magnetic disks and magnetic heads that fly over the disks, reading and writing the information contained on the disks (*see* Figures 1 & 2).[16] HDD suspension assemblies hold the magnetic heads in position over the disks.[17] Thus, HDD suspension assemblies are essential to the functioning of HDDs.

(Figure 1)[18]



[16] *Id.*; *Hard Disk Drives*, TEXAS A&M UNIVERSITY, *available at* https://microtribodynamics.engr.tamu.edu/hard-disk-drives/ (last visited Jul. 30, 2019).

[17] *Hard Drives*, EXPLAINTHATSTUFF.

[18] *Hard Disk Drives*, TEXAS A&M UNIVERSITY.

(Figure 2)[19]



89.     Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension assemblies into HDDs. Consumers then purchase HDDs as either stand-alone products, or as part of larger systems, such as computers.

90.     From 2005 through 2016, over six billion units of HDDs were shipped worldwide.[20]

---

[19] *Suspension Assembly for Hard Disk Drive*, Encyclopedia of Tribology, *available at* https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140 (last visited Jul. 30, 2019).

[20] *See Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022*, *available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/; *Market Views: Hard Drive Shipments Drop by Nearly 17% in 2015*, AnandTech (Mar. 2, 2016), *available at* https://www.anandtech.com/show/10098/market-views-2015-hard-drive-shipments; *Seagate and Western Digital Led the HDD Market Last Year*, Market Realist (Jun. 29, 2017),

1   On information and belief, of those six billion units, approximately 30%-35% were sold in the
2   United States as HDDs or in Finished Products. In 2018, global unit shipments of HDDs were
3   nearly 400 million.[21]

4       **B.    The Nature of the Conspiracy**

5       ███        During the Class Period, Defendants reached agreements to refrain from competing
6   on prices, fix prices, and allocate market shares for HDD suspension assemblies. To effectuate
7   these agreements, Defendants' high-level executives and managers exchanged competitively-
8   sensitive information and coordinated the manufacturing and sale of HDD suspension assemblies.

25  ─────────────────
    *available at* https://marketrealist.com/2017/06/seagate-and-western-digital-led-the-hdd-market-
26  last-year/.
27  [21] *Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022 (in millions),*
    STATISTA, *available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-
28  hard-disk-drives/ (last visited Jul. 30, 2019).



In August 2007, TDK acquired MPT and its subsidiary, Magnecomp.





1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  

**C.    NHK Spring Pled Guilty to Conspiring to Fix Prices and Allocate Market Shares for HDD Suspension Assemblies**

105.    On July 29, 2019, Defendant NHK Spring agreed to plead guilty and pay a $28.5 million fine for its role in the global conspiracy.[22] On September 23, 2019, NHK Spring entered into a Rule 11 plea agreement, and the fine was imposed on December 18, 2019.[23] Judgment was entered against NHK Spring on December 23, 2019.[24]

106.    According to the plea agreement, from May 2008 to April 2016, NHK Spring engaged in a conspiracy in which Defendants "engaged in discussions and attended meetings with

[22] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019), *available at* https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

[23] Rule 11 Plea Agreement, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019); Notice of Criminal Monetary Imposition, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Dec. 18, 2019).

[24] Judgment in a Criminal Case, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019).

each other. During these discussions, [Defendants] reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD suspension assemblies to be sold in the United States and elsewhere. To effectuate these agreements, employees and officers of [Defendants] exchanged HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere. The [Defendants] relied on their agreements not to compete and used the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD suspension assemblies and produced hard disk drives for sale, or delivery to, the United States and elsewhere."[25]

107.    NHK Spring and the DOJ also "agree[d] that, in light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information," and in this regard, the DOJ expressly referenced the pendency of these indirect purchaser actions.[26]

108.    The cooperation provisions of NHK Spring's plea agreement apply to "[t]he defendant and its subsidiaries that are engaged in the production or sale of HDD suspension assemblies, including but not limited to NHK International Corporation (collectively 'related entities')[.]"[27] The "related entities" subject to these cooperation provisions therefore include all of the NHK Defendants in this action—NHK Spring, NHK International, NHK Thailand, NAT H.K., and NAT Dong Guan—as each of those Defendants was engaged in the production or sale of HDD suspension assemblies.

109.    The cooperation provisions require "[t]he full, truthful, and continuing cooperation of the current directors, officers, and employees of the *defendant and its related entities*," including,

---

[25] Rule 11 Plea Agreement, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019).

[26] United States' Sentencing Memorandum at 8, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Dec. 5, 2019).

[27] Rule 11 Plea Agreement at ¶ 12, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Sept. 23, 2019).

among other things, "*producing in the United States* and at other mutually agreed-upon locations all documents, including [non-privileged] claimed personal documents, and other materials, wherever located," "making himself or herself available for interview *in the United States* and at other mutually agreed-upon locations," and "testifying in grand jury, trial, and other judicial proceedings *in the United States* fully, truthfully, and under oath, subject to the penalties of perjury[.]"[28]

110.    In exchange for cooperation under the plea agreement and the court's acceptance of NHK Spring's guilty plea and imposition of the recommended sentence, the DOJ "agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the sale of HDD suspension assemblies."[29]

111.    According to the sentencing hearing transcript, NHK Spring "fully and timely cooperated with the government in connection with this criminal episode."[30]

112.    As a result of the conspiracy and subsequent guilty plea, NHK Spring stated that it "overhauled its antitrust compliance program. It appointed high-level individuals to oversee compliance in all major geographic regions. It's utilizing technology to monitor possible misconduct and it's taken remedial measures to discipline individuals involved in the offense."[31]

**D.    Additional Government Investigations**

113.    In July 2016, the JFTC raided Defendants TDK and NHK Spring based on suspicion that the two companies and/or their subsidiaries fixed prices for HDD suspension components. On February 9, 2018, the JFTC issued a cease and desist order to NHK Spring and NAT H.K., found that they substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices, and imposed penalties of ¥714,220,000 on NHK Spring and

---

[28] *Id.* ¶ 13(a), (b) and (f) (emphasis added).

[29] *Id.* ¶ 14.

[30] Sentencing Hearing Transcript at 8:22-23, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Dec. 18, 2019).

[31] Sentencing Hearing Transcript at 8:24-9:4, *United States v. NHK Spring Co., Ltd.*, No. 2:19-cr-20503 (E.D. Mich. Dec. 18, 2019).

1   ¥361,940,000 on NAT H.K. The JFTC did not impose any penalties on TDK, SAE, and MPT,

2   which had jointly filed for a penalty reduction under the JFTC's leniency policy.

3         114.     The JFTC determined that NAT H.K. manufactured and sold HDD suspension

4   assemblies according to NHK Spring's business policies, and that SAE and MPT manufactured and

5   sold suspension assemblies according to TDK's business policies. According to the JFTC's

6   findings, NHK, NAT H.K., TDK, SAE, and MPT coordinated with each other to maintain market

7   share and profit, and agreed to maintain sales prices of HDD suspension assemblies sold to HDD

8   manufacturers and sellers. The JFTC found that these five companies confirmed with each other

9   price quotes and sales prices to be submitted in response to requests for quotations from Japanese

10   HDD manufactures and sellers. According to the JFTC, these same companies exchanged

11   information with each other about demand forecast, sales price, and price quotes to be submitted in

12   response to requests for quotations from HDD manufacturers and sellers outside of Japan.

13         115.     Concurrently with the JFTC investigation, the DOJ opened an investigation

14   regarding HDD suspension assemblies. On July 26, 2016, Defendant HTI received a letter from the

15   DOJ requesting documents relating to the investigation and expressed its intent to cooperate. At the

16   time HTI received the DOJ's letter, TDK's pending acquisition of HTI was under review by the

17   U.S. Federal Trade Commission. That same day, the JFTC and DOJ performed an on-site inspection

18   of an NHK company.[32]

19         116.     In April 2018, Brazil's antitrust authority, the Administrative Counsel for Economic

20   Defense ("CADE"), launched an investigation into allegations that TDK, HTI, SAE, NHK Spring,

21   and MPT colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies. The

22   international cartel allegedly shared data and allocated customers to maintain artificially high prices

23   on HDD suspension assemblies used in hard disks.

24         117.     According to the CADE, "there is strong evidence that the cartel agreed [upon] prices

25   in response to client quotations, divided markets, shared commercially and competition sensitive

26   information mainly in respect of current and proposed prices for suspension assemblies, private

---

[32] NHK Spring 2018 Consolidated Financial Statements at 20, *available at*
https://www.nhkspg.co.jp/eng/ir/pdf/Annual%20Report%202018.pdf.

bids of clients, allocation of client demand, production capacity of each company and a usage fee structure with the purpose of stabilizing prices and reducing competition in the sale of suspension assemblies."[33] CADE indicated that anticompetitive practices were conducted by at least 38 of Defendants' present and former directors, senior executives, senior managers, sales managers, including individuals with pricing authority. The individuals identified by CADE include NHK Spring's Hiroyuki Tamura and Hitoshi Hashimoto, NHK International's Skipp Harvey, Magnecomp's Todd Drahos, Ken Martini and Rick McHone, and HTI's Keith Johnson.

118.     On February 13, 2020, the DOJ indicted two NHK Spring senior executives, Hitoshi Hashimoto and Hiroyuki Tamura, for their roles in the HDD suspension assembly price-fixing conspiracy. According to the indictment, Hashimoto, Tamura, and their co-conspirators engaged in the following conduct for the purpose of forming and carrying out the conspiracy:

a.      attended meetings and engaged in other communications concerning their sales of, pricing of, and market shares for HDD suspension assemblies to be sold in the United States and elsewhere;

b.      agreed during those meetings and communications to refrain from competing on prices for and stabilize, maintain, and fix the prices of HDD suspension assemblies to be sold in the United States and elsewhere;

c.      agreed during those meetings and communications to allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere;

d.      discussed and exchanged HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

e.      communicated with sales employees in the United States and elsewhere and directed those employees to exchange HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

f.      relied on their agreements not to compete and used the exchanged pricing information to inform their negotiations with the U.S. and foreign customers that purchased HDD suspension

[33] CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No. 0459666), *available at* http://en.cade.gov.br/.

assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere;

g.     sold HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

h.     accepted payment for HDD suspension assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices. [34]

### E.     HDD Suspension Assembly Market Characteristics Are Ripe for a Conspiracy

119.     Like other electronic product markets that have been the subject of antitrust investigations (cathode ray tubes, lithium ion batteries, and capacitors), the HDD suspension assemblies market has characteristics that make it susceptible to collusion, including high barriers to entry and high market concentration. Together, these characteristics increase the probability and feasibility of anticompetitive conduct in the HDD suspension assemblies market.

### 1.     The HDD Suspension Assemblies Market Has High Barriers to Entry

120.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants to the market seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are much less likely to enter the market. Thus, barriers to entry help facilitate the formation and maintenance of cartels.

121.     This is particularly true here where manufacturing HDD suspension assemblies requires the ability to produce precision assemblies in sufficient volume. As Defendant HTI conceded, "We believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[35]

---

[34] Indictment at ¶ 8, *United States v. Hitoshi Hashimoto and Hiroyuki Tamura*, No. 3:20-cr-00070-JD (N.D. Cal. Feb. 13, 2020).

[35] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, THESTREET (Jan. 5, 2016), *available at* https://www.thestreet.com/story/13412469/1/hustchinson-shares-keep-falling-on-extended-ftc-antitrust-review.html.

122.     Moreover, increased demand for other types of data storage technology, such as those that utilize flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which caters to hard disk drives.[36]

123.     In addition, heavy capital investments are required in order to enter the market. For example, HTI noted that it spent nearly $50 million between 2012 and 2014 on research and development.[37]

█████     Defendants also own the majority of the patents for HDD suspension assemblies. These patents place a significant and costly burden on potential new entrants, which must avoid infringing on the patents when entering the market with a new product. ████████████████

██████████████████████████████████████████████████████

██████████████████████████

## 2.     The HDD Suspension Assemblies Market is Highly Concentrated

125.     Price fixing is when participants in a market band together to artificially set the price of some good or service. When a price-fixing conspiracy is successful, the consumer has no choice but to accept the higher prices or lower quality goods. The more concentrated the market, the easier it is for the market participants to come together to set prices.

126.     A process of market consolidation of the HDD suspension assembly market began in the 1990s. By the mid-1990s, the market had already become concentrated with HTI becoming the main producer of HDD suspension assemblies, holding at least a 65% market share and generating approximately $450 million per year in revenue.[38]

127.     Over the past two decades, this trend has been further aggravated by two factors: (a) further consolidation among HDD suspension assembly manufacturers, and (b) the vertical integration of companies like TDK that formerly depended on independent component suppliers in

---

[36] *Id.*

[37] See HTI Form 10-K for fiscal year ending September 28, 2014, *available at* http://www.annualreports.com/HostedData/AnnualReportArchive/h/NASDAQ_HTCH_2014.pdf.

[38] Hutchinson Technology Incorporated, 5th Annual Technology Conference PowerPoint, *available at* http://media.corporate-ir.net/media_files/irol/61/61195/presentations/htch_51403.pdf (last visited Oct. 10, 2019).

1   their manufacturing of HDD suspension assemblies.

2   128.    In recent years, market consolidation has continued to the point where globally, there

3   are now only two major suppliers of HDD suspension assemblies: TDK and NHK Spring.



8   130.    In 2004, HTI held a 63% share of the HDD suspension assembly market and MPT

9   held 18%.[39]

10  131.    In 2005, three companies—HTI, NHK Spring, and MPT—collectively controlled

11  approximately 97% of the global HDD suspension assembly market. HTI held a 55% market share,

12  NHK Spring held a 22% market share, and MPT, created through the merger 2005 merger between

13  the Data Storage Division of Magnecomp International Ltd. and KR Precision Public Company,[40]

14  held a 20% market share.[41]

15  132.    In 2007, TDK announced its acquisition of a majority share of MPT. TDK acquired

16  a formerly independent HDD suspension assembly manufacturer in 2007 and had fully integrated

17  that acquisition by 2009.

18  133.    By 2012, TDK, NHK Spring, and HTI collectively controlled 96% of the global

19  market.[42]

20  134.    In November 2015, TDK announced its acquisition of HTI. The acquisition was

21  completed in October 2016. Following the acquisition, TDK's market share grew to 55-60%, and

22  TDK noted that NHK Spring was its only competitor in the global market for HDD suspension

---

[39] Chris Prystay, *Why Disk-Drive Parts Makers in Singapore Look Attractive*, Wall Street Journal, Jan. 6, 2004, *available at* https://www.wsj.com/articles/SB107332640744760100.

[40] News Release, KR Precision PCL, *KR Precision Implements New Management Structure and Appoints New Director, available at* http://www.idema.org/wp-content/downloads/1171.doc.

[41] MPT, Form 56-1, Part 3, *Business Operation of MPT and its Subsidiaries*, at 10.

[42] Dr. R. Castellano, The Dynamics of the HDD Industry and Its Impact on CMP, at 9, *available at* https://pdfs.semanticscholar.org/c293/573aec70fec1d3abcd79f1e86bcdc005c044.pdf

assemblies.[43] Prior to the acquisition, HTI had gone through its own process of consolidation and was a principal supplier of HDD suspension assemblies to Western Digital (headquartered in San Jose, CA); Seagate (Cupertino, CA); and SAE/TDK (Tokyo, Japan). That HTI business is now contained within the TDK family.

### 3.   Market Concentration on the "Buy" Side

135.   In the 1980s, the HDD market was quite competitive with more than 20 suppliers. But by 2005, there were only five major producers left in the market: Western Digital Corporation ("Western Digital"), Seagate Technology, LLC ("Seagate"), Toshiba Electronics & Device Storage Corporation ("Toshiba"), Hitachi Global Storage Technologies ("Hitachi"), and Samsung Electronics Co. ("Samsung").[44] By 2012, that number dwindled to three, as Seagate acquired Samsung's HDD business in 2011 and Western Digital acquired Hitachi's HDD business in 2012. As of 2017, estimated market shares for Seagate, Western Digital, and Toshiba were approximately 40%, 37%, and 23% respectively.[45]

(Figure 3)[46]



---

[43] TDK Annual Report 2017, at 45.

[44] My Data Recovery Lab, *Consolidation of Hard Disk Drive Makers (Part 5) – Into The Future*, (March 3, 2015), *available at* https://mydatarecoverylab.com/consolidation-of-hard-disk-drive-makers-part-5-into-the-future/.

[45] *HDD Growth in Nearline Markets*, Forbes (Feb. 5, 2018), *available at* https://www.forbes.com/sites/tomcoughlin/2018/02/05/hdd-growth-in-nearline-markets/#6c4e88292997.

[46] Tom Coughlin, *2018 Hard Disk Drive Results*, Forbes (Feb. 4, 2019), *available at* https://www.forbes.com/sites/tomcoughlin/2019/02/04/2018-hard-disk-drive-results/#d1ba69045a76.

136.     All else equal, large buyers possess market power to negotiate lower prices from sellers. Price-fixing conspiracies limit that market power. The existence of a small number of large buyers made it easier for Defendants to exchange pricing information and otherwise create, facilitate, and enforce market-allocation agreements.

#### 4.     Homogeneity of Products and Inelasticity of Demand

140.     HDD suspension assemblies are commodity-like products that are interchangeable at the design stage among products of the same type and across manufacturers. One Defendant's

1   product for a particular application is substitutable for another Defendant's during the design stage.

2   Forming and sustaining a cartel when the product in question is commodity-like makes it easier to

3   agree on prices to charge and to monitor those prices once an agreement is formed.

4        141.    "Elasticity" describes the sensitivity of supply and demand to changes in one or the

5   other such that demand is "inelastic" if an increase in the price of a product results in only a small

6   decline in the quantity sold of that product, if any, such that customers have nowhere to turn for

7   alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

8        142.    For a cartel to profit from raising prices above competitive levels, demand must be

9   relatively inelastic at competitive prices. Otherwise, increased prices would result in declining

10  sales, revenues and profits, as customers purchased substitute products or declined to buy

11  altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers

12  to raise their prices without triggering customer substitution and lost sales revenue.

13       143.    Demand for HDD suspension assemblies is highly inelastic because there are no

14  close substitutes for these products. In addition, customers must purchase HDD suspension

15  assemblies as an essential part of an HDD, or a product containing an HDD, even if the prices are

16  at supra-competitive level.

17               **5.    Market Maturity and Declining Demand**

18       144.    There is declining demand in the HDD suspension assembly market, characterized

19  by slim profit margins, which creates a motivation to collude. Demand for HDDs and therefore for

20  suspension assemblies experienced a general downward trend during the Class Period.[47] This

21  makes the formation of an effective collusive arrangement more likely because it provides a greater

22  incentive for firms to avoid price competition.

23

24

25

26

---

27  [47] *Global shipments of hard disk drives (HDD) from 4th quarter 2010 to 3rd quarter 2019 (in millions)*, STATISTA, *available at* https:// https://www.statista.com/statistics/275336/global-
28  shipment-figures-for-hard-disk-drives-from-4th-quarter-2010/ (last visited Dec. 27, 2019).

(Figure 4)[48]



Global shipments of hard disk drives (HDD) from Q4 '10 to Q3 '19

Source: Statista

145.     In addition, increased demand for other types of data storage technology, such as those that utilize solid state storage or flash memory, has limited growth opportunities for HDD-based storage.

---

[48] *Global shipments of hard disk drives (HDD) from 4th quarter 2010 to 3rd quarter 2019 (in millions)*, STATISTA, *available at* https:// https://www.statista.com/statistics/275336/global-shipment-figures-for-hard-disk-drives-from-4th-quarter-2010/ (last visited Dec. 27, 2019).

1   (Figure 5)[49]



6.   **Defendants Maintained Close Business Relationships**

███         For example, until March 2015, TDK and NHK Spring—two of the only three major competitors in the suspension assembly market—maintained a joint venture to manufacture suspension assemblies.[50] Specifically, TDK's wholly owned subsidiary SAE and NHK Spring operated a joint venture, NAT, to manufacture HDD suspension assemblies.[51] ███████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

---

[49] *Shipments of hard and solid (HDD/SSD) drives worldwide from 2015 to 2021 (in millions)*, STATISTA, *available at* https://www.statista.com/statistics/285474/hdds-and-ssds-in-pcs-global-shipments-2012-2017/ (last visited Jan. 7, 2020).

[50] TDK Press Release, *TDK Subsidiary dissolve Joint Venture of HDD Suspension Manufacturing Company* (Apr. 1, 2014), *available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm.

[51] *See TDK Subsidiary Dissolve Joint Venture of HDD Suspension Manufacturing Company*, *available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm; Hutchinson 2012 Form 10-K, at 4 ("Our principal competitors for suspension assemblies are Nihon Hatsujo Kabusikigaisha ('NHK'), Magnecomp Precision Technology Public Company Limited ('MPT'), a subsidiary of TDK Corporation, and NAT Peripheral (H.K.) Co., Ltd. (a joint venture of NHK and TDK Corporation).").

147.     Throughout the Class Period, SAE was also one of HTI's top three customers.[52] In addition, Defendants also cross-licensed each other's products, including HDD suspension assemblies.[53]

148.     Opportunities to effectuate the conspiracy also took place at meetings of IDEMA, the International Disk Drive Equipment & Materials Association, to which NHK Spring, SAE, and TDK all belong. IDEMA has two operating subsidiaries, one in Japan and another in the United States. Among other things, IDEMA sponsors Diskcon industry conferences, such as the one held in Japan in July, 2010 and those held or to be held in the United States in October, 2011 and October of this year. One of the asserted benefits to belonging to IDEMA is that it offers "unique networking opportunities for all industry participants."

### F.     Chain of Distribution/Sale

149.     Defendants manufacture and sell suspension assemblies to HDD manufacturers, which in turn manufacture HDDs and then sell HDDs as stand-alone devices through distributors and retailers (approximately 30% of sales) and as inputs in Finished Products to original equipment manufacturers ("OEMs") (approximately 70% of sales).[54]

(Figure 6)



150.     HDD manufacturers operated, and purchased suspension assemblies, overseas during the Class Period.[55] For example, in 2015 HTI reported some $250 million in revenues, all

---

[52] *See, e.g.,* Hutchinson 2008 Form 10-K, at 5, 2012 Form 10-K, at 4, and 2015 Form 10-K, at 4. In 2015, Hutchinson's three largest customers were Western Digital, Seagate, and SAE Magnetics, representing 52%, 27%, and 16% of net sales, respectively.

[53] *See Hutchinson, Magnecomp Drop Lawsuits, Cooperate,* Minneapolis/St. Paul Business Journal (Dec. 3, 2001), *available at* https://www.bizjournals.com/twincities/stories/2001/12/03/daily8.html.

[54] For example, from 2013-15, Seagate sold approximately 70% of its HDDs to Original Equipment Manufacturers ("OEMs"), 17-21% to distributors, and the remainder to retailers, Seagate 2015 Annual Report, at 11.

[55] On its website, Western Digital states that it "only manufactures internal and external hard drives in Malaysia and Thailand." *See* WD Safe Buying Guide for Brand Protection, *available at*

but $12 million of which was based on HTI's sale of suspension assemblies. Of those $250 million in sales, $40 million were made to "foreign-based enterprises" and $202 million were made to foreign subsidiaries of U.S. corporations that used suspension assemblies in their offshore manufacturing sites. In other words, virtually all of HTI's sales were overseas. The remaining Defendants similarly sold suspension assemblies almost entirely overseas.

151.    HDD manufacturers sold HDDs as stand-alone products[56] and to OEMs of Finished Products. OEMs included, *inter alia*, Dell, Hewlett-Packard ("HP"),[57] Lenovo, IBM, and Apple. Dell, IBM, and HP were also among the dominant manufacturers and sellers of enterprise and "hyperscale" storage systems. During the Class Period, HDD manufacturers competed for a limited number of major HDD customers (the OEMs).

152.    HDD manufacturers sold HDDs in the United States and elsewhere. On information and belief, HDD manufacturers purchased suspension assemblies outside the United States through their foreign subsidiaries/affiliates and incorporated suspension assemblies into HDDs for import into the United States.[58] On information and belief, U.S.-based OEMs purchased HDDs through

---

https://support-en.wd.com/app/answers/detail/a_id/28313. Seagate manufactured hard drives in China and Thailand. *See* Anton Shilov, *Seagate to Shut Down One of Its Largest HDD Assembly Plants, AnandTech* (Jan. 13, 2017), *available at* https://www.anandtech.com/show/11037/seagate-to-shut-down-one-of-its-largest-hdd-assembly-plants. Toshiba manufactured HDDs in Philippines and China. *See* Tom Coughlin, *Western Digital and Toshiba Sign Agreement to Swap HDD Equipment and Facilities*, Forbes (Feb. 28, 2012), *available at* https://tinyurl.com/y3ddo5gr; *Toshiba to churn out world-leading hard drive in Philippines*, Nikkei Asian Rev. (Feb. 17, 2018), *available at* https://tinyurl.com/y6jcsjrm.

[56] The HDD manufacturers sold stand-alone products to consumers directly and through distributors and resellers.

[57] Dell and HP were among the largest purchasers of HDDs. For example, in its 2015 Annual Report, Seagate stated that Dell and HP accounted for approximately 14% and 12%, respectively, of its consolidated revenue. Seagate 2015 Annual Report, at 11. Seagate further stated that HDD makers competed for a limited number of major HDD customers. *Id.*

[58] For example, in its 2015 Annual Report, Western Digital stated that nearly 80% of its revenue was generated from international sales, including sales to foreign subsidiaries of U.S. companies. Western Digital 2015 Annual Report, at 12, *available at* http://investor.wdc.com/financialinformation/annual-reports. In its 2009 Annual Report Hutchinson stated that approximately 93% of its suspension assemblies were to customers in Thailand, Hong Kong and the People's Republic of China. Hutchinson 2009 Form 10-K, at 6, *available at* https://www.sec.gov/Archives/edgar/data/772897/000119312509249392/d10k.htm.

1  foreign subsidiaries/affiliates and incorporated those HDDs into Finished Products outside the

2  United States.

3       153.    OEMs sold their Finished Products in the United States and elsewhere. On

4  information and belief, the foreign affiliates/subsidiaries of OEMs shipped Finished Products to

5  their U.S.-based sales arms pursuant to intercompany transfer policies (in which the U.S.-based

6  companies determined the transfer prices they paid to their foreign affiliates). United States

7  companies and individuals, like Plaintiffs, then purchased the Finished Products in the United

8  States from the OEM's U.S.-based sales affiliates, such as Western Digital, or from resellers that

9  purchased the Finished Products from the OEM's U.S.-based sales affiliates. Such resellers include

10  Dell, Apple, BestBuy, Newegg, Tigerdirect, Costco, Wal-Mart, Staples, Office Depot, MacMall,

11  GameStop, and Amazon. As such, for most U.S.-based OEMs, their overcharges arise, in whole or

12  in part, from overseas purchases of suspension assemblies, in whole or in part.

13                     **VII.  CLASS ACTION ALLEGATIONS**

14       154.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule

15  23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on

16  behalf of the following class (the "Nationwide Injunctive Relief Class"):

17              All persons and entities who, during the Class Period, indirectly
                purchased an HDD or a Finished Product not for resale which
18              included as a component part one or more HDD suspension
                assemblies that were manufactured or sold by Defendants, any
19              current or former subsidiary of Defendants, or any co-conspirator of
                Defendants.
20

21       155.    Plaintiffs also bring this action on behalf of themselves and as a class action under

22  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to Section

23  4 of the Clayton Act on behalf of the following class (the "Nationwide Damages Class"):

24              All persons and entities who, during the Class Period, directly
                purchased in the United States, (a) from a seller located outside the
25              United States, or (b) from a seller in the United States that acquired
                the relevant product outside the United States from that seller's
26              foreign affiliate, an HDD or a Finished Product not for resale which
                included as a component part one or more HDD suspension
27              assemblies that were manufactured or sold by Defendants, any
                current or former subsidiary of Defendants, or any co-conspirator of
28

1    Defendants ("First-Level U.S. Purchases").

2    156.    Plaintiffs also bring this action on behalf of themselves and as a class action under

3    Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state

4    antitrust, unfair competition, and consumer protection laws as well as common law unjust

5    enrichment on behalf of the following classes (the "State Damages Classes"):

6         All persons and entities who, during the Class Period, in the Indirect
          Purchaser States[59] purchased an HDD or a Finished Product not for
7         resale which included as a component part one or more HDD
          suspension assemblies that were manufactured or sold by
8         Defendants, any current or former subsidiary of Defendants, or any
          co-conspirator of Defendants.
9

10   157.    The Nationwide Injunctive Relief Class, the Nationwide Damages Class, and the

     State Damages Classes are referred to as the "Classes." Excluded from the Classes are Defendants,
11
     their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental
12
     entities and instrumentalities of the federal government, states and their subdivisions, agencies and
13
     instrumentalities, and persons who purchased HDD suspension assemblies directly or for resale.
14
     158.    While Plaintiffs do not know the exact number of members of the Classes, Plaintiffs
15
     believe there are (at least) thousands of members in each Class.
16
     159.    Common questions of law and fact exist as to all members of the Classes. This is
17
     particularly true given the nature of Defendants' conspiracy, which was generally applicable to all
18
     members of the Classes, thereby making appropriate relief with respect to the Classes as a whole.
19
     Such questions of law and fact common to the Classes include, but are not limited to:
20
         a.    Whether Defendants and their co-conspirators engaged in a combination and
21
     conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD suspension
22
     assemblies sold in the United States;
23
         b.    The identity of the participants of the alleged conspiracy;
24
         c.    The duration of the alleged conspiracy and the acts carried out by Defendants and
25
     their co-conspirators in furtherance of the conspiracy;
26
         d.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First and
27

28   _____

[59] The Indirect Purchaser States are the states listed in the Third and Fourth Claims for Relief.

1    Second Claims for Relief;

2          c.    Whether the alleged conspiracy violated state antitrust, unfair competition, and/or

3    consumer protection laws, as alleged in the Third and Fourth Claims for Relief;

4          f.    Whether Defendants unjustly enriched themselves to the detriment of Plaintiffs and

5    members of the Classes, thereby entitling Plaintiffs and members of the Classes to disgorgement

6    of all benefits derived by Defendants, as alleged in the Fifth Claim for Relief;

7          g.    Whether the conduct of Defendants and their co-conspirators, as alleged in this

8    Complaint, caused injury to the business or property of Plaintiffs and members of the Classes;

9          h.    The effect of the alleged conspiracy on the prices of HDD suspension assemblies

10   sold in the United States during the Class Period;

11         i.    Whether Plaintiffs and members of the Classes had any reason to know or suspect

12   the conspiracy, or any means to discover the conspiracy;

13         j.    Whether Defendants and their co-conspirators fraudulently concealed the

14   conspiracy's existence from Plaintiffs and members of the Classes;

15         k.    The appropriate injunctive and related equitable relief for the Nationwide Injunctive

16   Relief Class;

17         l.    The appropriate class-wide measure of damages for the Nationwide Damages Class;

18   and

19         m.    The appropriate class-wide measure of damages for the State Damages Classes.

20   160.    Plaintiffs' claims are typical of the claims of members of the Classes, and Plaintiffs

21   will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the

22   Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated

23   prices for HDD suspension assemblies purchased indirectly from Defendants and/or their co-

24   conspirators.

25   161.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the

26   claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not

27   antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel

28   who are competent and experienced in the prosecution of antitrust and class action litigation.

162.     The questions of law and fact common to members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

163.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

164.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**VIII. PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

165.     Defendants' price-fixing conspiracy had the following effects, among others:

a.     Price competition has been restrained or eliminated with respect to HDD suspension assemblies;

b.     The prices of HDD suspension assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

c.     Plaintiffs and members of the Classes have been deprived of free and open competition; and

d.     Plaintiffs and members of the Classes paid artificially inflated prices for HDD suspension assemblies.

166.     During the Class Period, Plaintiffs and members of the Classes paid supra-competitive prices for HDD suspension assemblies, HDDs, and Finished Products. HDD manufacturers and other purchasers of HDD suspension assemblies passed on inflated prices to Plaintiffs and members of the Classes. Those overcharges have unjustly enriched Defendants.

167. The markets for HDDs and HDD suspension assemblies are inextricably linked and intertwined because the market for HDD suspension assemblies exists to serve the HDD market. Without the HDDs, the HDD suspension assemblies have little to no value because they have no independent utility. Similarly, HDDs cannot function without HDD suspension assemblies. For this reason, Defendants monitored and forecast the demand for HDDs for use in various Finished Product applications such as desktop and laptop computers, DVRs, game consoles, and network servers.

168. HDD suspension assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD. As a result, HDD suspension assemblies follow a traceable physical chain of distribution from Defendants to Plaintiffs and members of the Classes, and costs attributable to HDD suspension assemblies can be traced through the chain of distribution to Plaintiffs and members of the Classes.

169. Just as HDD suspension assemblies can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of HDD suspension assemblies affect prices paid by Plaintiffs and members of the Class for HDDs and Finished Products.

170. While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.

171. The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars—Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust)—have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[60]

---

[60] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

172.     As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers . . . . Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[61]

173.     The purpose of the conspiracy was to raise, fix, rig or stabilize the price of HDD suspension assemblies and, as a direct and foreseeable result, the price of HDDs and Finished Products.

174.     First, it is well established that producers of a product will pass through variable cost increases (as opposed to increases in fixed costs) to avoid lost profits.[62] Here, HDD suspension assemblies were important variable costs for HDD producers.[63] Second, it is well established that producers of a product will pass through cost increases in inelastic markets.[64] Here, the markets for HDDs and Finished Products were inelastic. Demand in the market for HDDs was derived from consumer demand for HDDs and Finished Products. Sellers of HDDs could therefore pass through

[61] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

[62] *See, e.g.*, European Commission, Guidelines for national courts on how to estimate the share of overcharge which was passed on to the indirect purchaser (July 1, 2019) ("Guidelines"), at 17-18, *available at* https://ec.europa.eu/competition/antitrust/actionsdamages/quantification_en.html. Variable costs are those that change with the level of output, e.g. raw materials. Fixed costs are those that stay constant whatever the quantity of goods or services produced, e.g. rent. Economic theory recognizes that sellers ordinarily take variable costs into account in making price-setting decisions. *Id.* at 45.

[63] *See, e.g.*, Seagate 2015 Annual Report, at 24 (identifying suspension assemblies as among handful of "particularly important" cost components for HDDs).

[64] Guidelines at 17-18. An inelastic market is one in which prices do not significantly affect consumer demand for a product.

cost increases without fear of losing sales. Similarly, makers of Finished Products could pass through cost increases without fear of losing sales. Third, it is well established that where there is an industry-wide overcharge, competing purchasers will generally pass through overcharges.[65] Here, the markets for HDDs and Finished Products were highly competitive. In addition, Defendants' conduct was not directed at just one HDD purchaser. Defendants sought to, and did, extract an industrywide overcharge. As a result, HDD manufacturers passed through the market-wide overcharges they paid for HDD suspension assemblies, and Finished Product manufacturers passed the market-wide overcharges they paid for HDDs through to their customers. Finally, it is established that firms are more likely to pass through non-transitory price increases. Here, the alleged conspiracy increased prices for HDD suspension assemblies over at least a thirteen-year period. These were not transitory increases.

175.     Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis—called regression analysis—is commonly used in the business world, academia, and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD suspension assemblies on prices for products containing HDD suspension assemblies even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD suspension assemblies affects changes in the price of

---

[65] Guidelines at 17-18. In a hypothetical scenario in which a cartel targets just one purchaser, that purchaser would have to decide whether consumers would switch to its competitors in response to a price increase passed on by that purchaser. By contrast, when the overcharge is imposed on all purchasers, they all bear similar cost increases which makes it more attractive for each of those purchasers to pass-through those increased costs. *Id.; see also* George Kosicki and Miles B. Cahill, *Economics of cost pass through and damages in indirect purchaser antitrust cases*, The Antitrust Bulletin, Vol. 51, No.3/Fall 2006 at 623 ("When all firms in an industry experience a cost increase and start to increase prices, the reduction in quantity suffered by any particular firm will be less than if it had to raise price in an environment where all other competitor prices are constant.").

1    assembled products, such as computers. In such models, the price of HDD suspension assemblies
2    would be treated as an independent or explanatory variable. The model can isolate how changes in
3    the price of HDD suspension assemblies impact the price of products containing HDD suspension
4    assemblies while controlling for the impact of other price-determining factors.

5        176.    The precise amount of the overcharge impacting the prices of products containing
6    HDD suspension assemblies can be measured and quantified. Commonly used and well-accepted
7    economic models can be used to measure both the extent and the amount of the supra-competitive
8    charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and class
9    members can be quantified.

10       177.    By reason of the violations of the antitrust law alleged herein, Plaintiffs and members
11   of the Classes have sustained injury to their businesses or property, having paid higher prices for
12   HDD suspension assemblies than they would have paid in the absence of Defendants' illegal
13   contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently
14   undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish
15   and prevent.

16                   **IX.   PLAINTIFFS' CLAIMS ARE TIMELY**

17       **A.    Defendants Have Engaged in a Continuing Violation.**

18       178.    This Complaint alleges a continuing course of unlawful conduct by which
19   Defendants have inflicted continuing and accumulating harm within the applicable statutes of
20   limitations.

21       179.    Each time Defendants engaged in an unlawful act complained of here, Defendants
22   undertook an overt act that has inflicted harm on Plaintiffs and other members of the Classes.

23       180.    For these reasons, the statutes of limitations have been tolled with respect to the
24   claims of Plaintiffs and members of the Classes asserted in this Complaint.

25       **B.    The Discovery Rule Tolled the Statute of Limitations.**

26       181.    The discovery rule tolled any statute of limitations otherwise applicable to any claims
27   asserted in this Complaint.

28       182.    Plaintiffs and members of the Classes did not discover, and could not have

1    discovered through the exercise of reasonable diligence, that Defendants entered into a combination

2    and conspiracy to fix prices of, and allocate markets for, HDD suspension assemblies, until July

3    29, 2019, when the DOJ filed criminal charges against NHK Spring for violating Section 1 of the

4    Sherman Act.

5            183.    Plaintiffs and members of the Classes had no knowledge of the combination or

6    conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set

7    forth herein.

8            184.    Plaintiffs and members of the Classes are consumers who purchased HDDs and

9    Finished Products for their own use and not for resale. Defendants' conspiracy was elaborate and

10   well-concealed. No information concerning the conspiracy was in the public domain or available

11   to Plaintiffs and members of the Classes. Moreover, Plaintiffs and members of the Classes had no

12   direct contact or interaction with Defendants and had no means from which they could have

13   discovered that Defendants were engaged in the conspiracy combination and conspiracy alleged

14   herein.

15           **C.      Fraudulent Concealment Tolled the Statute of Limitations.**

16           185.    In the alternative, Defendants' fraudulent concealment tolled the statute of

17   limitations on the claims asserted by Plaintiffs and the Classes.

18           186.    Under the fraudulent concealment doctrine, the claims of Plaintiffs and members of

19   the Classes alleged in this Complaint did or will only accrue upon discovery of the Defendants'

20   conspiracy to fix prices of, and allocate markets for, HDD suspension assemblies, as a result of

21   Defendants' concealment of the material facts.

22           187.    Plaintiffs and members of the Classes were kept ignorant by Defendants of crucial

23   information required for the prosecution of their claims, without any fault or lack of diligence on

24   their part. Plaintiffs and members of the Classes did not discover, and could not discover through

25   the exercise of reasonable diligence, the existence of the alleged conspiracy alleged.

26           188.    Plaintiffs and members of the Classes were unaware of Defendants' unlawful

27   conduct, and did not know that they were paying supra-competitive prices for HDD suspension

28   assemblies throughout the United States during the Class Period. No information, actual or

constructive, was ever made available to Plaintiffs and members of the Classes that they were being injured by Defendants' unlawful conduct.

189.     To the contrary, during the Class Period, Defendants fraudulently concealed their anticompetitive conduct by publicly touting policies to comply with international fair competition laws. For example, in a set of guidelines published on NHK Spring's website, the company stated:

> Compliance with competition law
>
> We shall comply with competition laws of respective country or region (Anti-Monopoly Act, Act against Delay in Payment of Subcontract Proceeds, Etc. to Subcontractors, etc. in Japan), and shall not commit any act such as private monopolization, restriction of transactions (cartel, bid rigging, etc.), unfair transaction method and abuse of superior bargaining position.

190.     Similarly TDK's Code of Conduct provides:

> Maintenance and promotion of fair, transparent and free competition
>
> It is the TDK Group's basic policy to participate in fair, transparent, and free competition and to carry out appropriate activities in compliance with the competition laws in each country. These laws are intended to preserve fair and vigorous competition and to prohibit business practices that interfere with competition. For example, the TDK Group shall not engage in cartel acts such as agreeing with competitors on prices, production volumes (production plans), sales areas, and the like, which are illegal acts and behavior that damages the reputation of the company. The TDK Group and TDK members shall at all times comply with the letter and spirit of these laws. In addition, in pursuing profits in the course of carrying out corporate activities, TDK members shall always seek to conduct themselves with integrity and corporate ethics in mind.

191.     By its very nature, Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. HDD suspension assemblies are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the HDD suspension assemblies industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' prices for HDD suspension assemblies.

192.     Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until July 29, 2019, when the DOJ filed criminal charges against NHK Spring for violating Section 1 of the Sherman Act.

193.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run.

**D.      The DOJ's Criminal Proceedings Suspended the Statute of Limitations.**

194.     Criminal proceedings instituted by the DOJ against NHK Spring and against Hitoshi Hashimoto and Hiroyuki Tamura also have suspended the running of the statute of limitations pursuant to Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i). Each of those actions is a "criminal proceeding … instituted by the United States to prevent, restrain, or punish violations of" the Sherman Act. Plaintiffs' claims are "based in whole or in part on [the] matter complained of" in the criminal proceedings. Under Section 5(i), the statute of limitations is "suspended during the pendency" of the criminal proceedings "and for one year thereafter[.]"

## X.     VIOLATIONS ALLEGED

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of All Plaintiffs and the Nationwide Injunctive Relief Class)**

195.     Plaintiffs assert this claim pursuant to Section 16 of the Clayton Act on behalf of the Nationwide Injunctive Relief Class.

196.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

197.     Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

198.     The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

199.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

200.     The anticompetitive acts were intentionally directed at the U.S. market for HDD suspension assemblies.

201.     Defendants and their co-conspirators manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States. Defendants and their co-conspirators also sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into HDDs and Finished Products that were sold in, or for delivery to, the United States. HDD suspension assemblies, HDDs, and Finished Products traveled in, and substantially affected, interstate and import trade and commerce. The conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies, HDDs, and Finished Products.

202.     The conspiratorial acts and combinations caused unreasonable restraints in the markets for HDD suspension assemblies.

203.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Nationwide Injunctive Relief Class have been harmed by being forced to pay inflated, supra-competitive prices for HDD suspension assemblies contained in HDDs and Finished Products.

204.     In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

205.     Defendants conspiracy had the following effects, among others:

a.     Price competition in the market for HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the United States;

b.     Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

c.      Plaintiffs and members of the Nationwide Injunctive Relief Class have been deprived of the benefits of free and open competition.

206.    Plaintiffs and members of the Nationwide Injunctive Relief Class were injured and will continue to be injured in their business and property by paying more for HDD suspension assemblies purchased than they would have paid and will pay in the absence of the conspiracy.

207.    The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

208.    Plaintiffs and members of the Nationwide Injunctive Relief Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of the Nationwide Damages Class)

209.    Plaintiffs Jeffrey Greenfield, Timothy A. St. Cyr and Sascha Nelson assert this claim pursuant to Section 4 of the Clayton Act on behalf of the Nationwide Damages Class.

210.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

211.    Plaintiffs Greenfield, St. Cyr, and Nelson made First-Level U.S. Purchases by buying directly from OEMs' U.S.-based sales affiliates Finished Products that were manufactured overseas and delivered to the U.S. by the OEMs' foreign affiliates/subsidiaries.

212.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

213.    The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

214.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

215.    The anticompetitive acts were intentionally directed at the United States market for HDD suspension assemblies.

216.    Defendants and their co-conspirators manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States. Defendants and their co-conspirators also sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into HDDs and Finished Products that were sold in, or for delivery to, the United States. HDD suspension assemblies, HDDs, and Finished Products traveled in, and substantially affected, interstate and import trade and commerce. The conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies, HDDs, and Finished Products.

217.    The conspiratorial acts and combinations caused unreasonable restraints in the markets for HDD suspension assemblies.

218.    As a result of Defendants' unlawful conduct, Plaintiffs Greenfield, St. Cyr, and Nelson and members of the Nationwide Damages Class have been harmed by being forced to pay inflated, supra-competitive prices for HDD suspension assemblies contained in HDDs and Finished Products.

219.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

220.    Defendants' conspiracy had the following effects, among others:

    a.    Price competition in the market for HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the United States;

    b.    Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.    Plaintiffs Greenfield, St. Cyr, and Nelson and members of the Nationwide Damages Class have been deprived of the benefits of free and open competition.

221.    Plaintiffs Greenfield, St. Cyr, and Nelson and members of the Nationwide Damages

Class were injured and will continue to be injured in their business and property by paying more for HDD suspension assemblies than they would have paid and will pay in the absence of the conspiracy.

222.     Plaintiffs Greenfield, St. Cyr, and Nelson and members of the Nationwide Damages Class have standing to seek damages pursuant to Section 4 of the Nationwide because they were the first United States victims to pay overcharges arising from the domestic effects of the conspiracy.

223.     Plaintiffs Greenfield, St. Cyr, and Nelson and members of the Nationwide Damages Class are entitled to damages in an amount to be trebled to the extent federal antitrust laws permit.

### THIRD CLAIM FOR RELIEF
#### Violation of State Antitrust Statutes
#### (on behalf of Plaintiffs and the State Damages Classes)

224.     Plaintiffs assert these state law claims on behalf of the State Damages Classes.[66]

225.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

226.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD suspension assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

227.     The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for HDD suspension assemblies and to allocate customers for these products in the United States.

228.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: participating in meetings and conversations among themselves in the United States and elsewhere during which

---

[66] Plaintiffs Jeffrey Greenfield, Timothy A. St. Cyr, and Sascha Nelson plead these state-law claims in the alternative to their First-Level U.S. Purchases claims pursuant to Section 4 of the Clayton Act, in the event that the Court disagrees that they are entitled to recover damages under Section 4 of the Clayton Act for their First-Level U.S. purchases.

1  they exchanged pricing information and agreed to price HDD suspension assemblies at certain

2  levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs

3  and members of the Damages Class with respect to HDD suspension assemblies sold in the United

4  States; allocating customers and markets for HDD suspension assemblies sold in, or for delivery

5  to, the United States in furtherance of their agreements; and participating in meetings and

6  conversations among themselves in the United States and elsewhere to implement, adhere to, and

7  police the unlawful agreements they reached.

8       229.   Defendants and their co-conspirators engaged in the actions described above for the

9  purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and

10  to allocate customers with respect to HDD suspension assemblies.

11       230.   Defendants' anticompetitive acts described above were knowing and willful and

12  constitute violations or flagrant violations of the following state antitrust statutes.

13       231.   Plaintiff Jonathan Rizzo ("**Arizona Plaintiff**") incorporates and realleges each and

14  every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

15  follows:

16       a.   Defendants entered into an unlawful agreement in restraint of trade in violation of

17  the **Arizona** Revised Statutes, §§ 44-1401, *et seq.*

18       b.   Defendants' combinations or conspiracies had the following effects: (1) HDD

19  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

20  Arizona; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

21  artificially high levels throughout Arizona; (3) Arizona Plaintiff and members of the Arizona

22  Damages Class were deprived of free and open competition; and (4) Arizona Plaintiffs and

23  members of the Arizona Damages Class paid supra-competitive, artificially inflated prices for HDD

24  suspension assemblies.

25       b.   During the Class Period, Defendants' illegal conduct substantially affected Arizona

26  commerce.

27       c.   As a direct and proximate result of Defendants' unlawful conduct, Arizona Plaintiff

28  and members of the Arizona Damages Class were injured in their business and property and are

1     threatened with further injury.

2           d.      Accordingly, Arizona Plaintiff and members of the Arizona Damages Class seek all

3     forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

4           232.    Plaintiffs Joanna Katcher, Rhonda Glover, James Walnum, and Timothy A. St. Cyr.

5     ("**California Plaintiffs**") incorporate and reallege each and every allegation set forth in the

6     preceding paragraphs of this Complaint and further allege as follows:

7           a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

8     the **California Cartwright Act**, California Business and Professions Code, §§ 16700, *et seq.*

9           b.      During the Class Period, Defendants and their co-conspirators entered into and

10    engaged in a continuing unlawful trust in restraint of the trade and commerce described above in

11    violation of Section 16720, California Business and Professions Code. Each Defendant has acted

12    in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets

13    for, HDD suspension assemblies at supra-competitive levels.

14          b.      The aforesaid violations of Section 16720, California Business and Professions

15    Code, consisted, without limitation, of a continuing unlawful trust and concert of action among

16    Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain,

17    and stabilize the prices of, and to allocate markets for, HDD suspension assemblies.

18          c.      For the purpose of forming and effectuating the unlawful trust, Defendants and their

19    co-conspirators have done those things which they combined and conspired to do, including but

20    not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing,

21    raising, stabilizing, and pegging the price of HDD suspension assemblies; and (2) allocating among

22    themselves the production of HDD suspension assemblies.

23          d.      The combination and conspiracy alleged herein has had, *inter alia*, the following

24    effects: (1) price competition in the sale of HDD suspension assemblies has been restrained,

25    suppressed, and/or eliminated in the State of California; (2) prices for HDD suspension assemblies

26    sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at

27    artificially high, non-competitive levels in the State of California and throughout the United States;

28    and (3) those who purchased HDD suspension assemblies have been deprived of the benefit of free

1   and open competition.

2       e.    As a direct and proximate result of Defendants' unlawful conduct, California

3   Plaintiffs and members of the California Damages Class were injured in their business and property

4   in that they paid more for HDD suspension assemblies than they otherwise would have paid in the

5   absence of Defendants' unlawful conduct. As a result of Defendants' violation of the Cartwright

6   Act, California Plaintiffs and members of the California Damages Class seek treble damages and

7   their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the

8   California Business and Professions Code.

9       233.    Plaintiff Rebecca David Lietz ("**DC Plaintiff**") incorporates and realleges each and

10  every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

11  follows:

12      a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

13  the **District of Columbia** Code Annotated §§ 28-4501, *et seq.*

14      b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

15  suspension assemblies price competition was restrained, suppressed, and eliminated throughout the

16  District of Columbia; (2) HDD suspension assemblies prices were raised, fixed, maintained and

17  stabilized at artificially high levels throughout the District of Columbia; (3) DC Plaintiff and

18  members of the District of Columbia Damages Class were deprived of free and open competition;

19  and (4) DC Plaintiff and members of the District of Columbia Damages Class paid supra-

20  competitive, artificially inflated prices for HDD suspension assemblies.

21      c.    During the Class Period, Defendants' illegal conduct substantially affected District

22  of Columbia commerce.

23      d.    As a direct and proximate result of Defendants' unlawful conduct, DC Plaintiff and

24  members of the District of Columbia Damages Class were injured in their business and property

25  and are threatened with further injury.

26      c.    Accordingly, DC Plaintiff and members of the DC Damages Class seek all forms of

27  relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

28      234.    Plaintiff Harley Oda ("**Hawaii Plaintiff**") incorporates and realleges each and every

1   allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

2       a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

3   the **Hawaii** Antitrust Act, Haw. Rev. Stat. § 480-4.

4       b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

5   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

6   Hawaii; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

7   artificially high levels throughout Hawaii; (3) Hawaii Plaintiff and members of the Hawaii

8   Damages Class were deprived of free and open competition; and (4) Hawaii Plaintiff and members

9   of the Hawaii Damages Class paid supra-competitive, artificially inflated prices for HDD

10  suspension assemblies.

11      c.      During the Class Period, Defendants' illegal conduct substantially affected Hawaii

12  commerce.

13      d.      As a direct and proximate result of Defendants' unlawful conduct, Hawaii Plaintiff

14  and members of the Hawaii Damages Class were injured in their business and property and are

15  threatened with further injury.

16      c.      Accordingly, Hawaii Plaintiff and members of the Hawaii Damages Class seek all

17  forms of relief available under the Hawaii Antitrust Act.

18  235.    Plaintiff Benjamin Allen ("**Iowa Plaintiff**") incorporates and realleges each and

19  every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

20  follows:

21      a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

22  the **Iowa** Code §§ 553.1, *et seq.*

23      b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

24  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

25  Iowa; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

26  artificially high levels throughout Iowa; (3) Iowa Plaintiff and members of the Iowa Damages Class

27  were deprived of free and open competition; and (4) Iowa Plaintiff and members of the Iowa

28  Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

1        c.     During the Class Period, Defendants' illegal conduct substantially affected Iowa

2  commerce.

3        d.     As a direct and proximate result of Defendants' unlawful conduct, Iowa Plaintiff

4  and members of the Iowa Damages Class were injured in their business and property and are

5  threatened with further injury.

6        c.     Accordingly, Iowa Plaintiff and members of the Iowa Damages Class seek all forms

7  of relief available under Iowa Code §§ 553.1, *et seq.*

8        236.    Plaintiff John R. Shannon III ("**Kansas Plaintiff**") incorporates and realleges each

9  and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

10  follows:

11        a.     Defendants entered into an unlawful agreement in restraint of trade in violation of

12  the **Kansas** Statutes Annotated, §§ 50-101, *et seq.*

13        b.     Defendants' combinations or conspiracies had the following effects: (1) HDD

14  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

15  Kansas; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

16  artificially high levels throughout Kansas; (3) Kansas Plaintiff and members of the Kansas

17  Damages Class were deprived of free and open competition; and (4) Kansas Plaintiff and members

18  of the Kansas Damages Class paid supra-competitive, artificially inflated prices for HDD

19  suspension assemblies.

20        c.     During the Class Period, Defendants' illegal conduct substantially affected Kansas

21  commerce.

22        d.     As a direct and proximate result of Defendants' unlawful conduct, Kansas Plaintiff

23  and members of the Kansas Damages Class were injured in their business and property and are

24  threatened with further injury.

25        c.     Accordingly, Kansas Plaintiff and members of the Kansas Damages Class seek all

26  forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

27        237.    Plaintiff James Marean ("**Maine Plaintiff**") incorporates and realleges each and

28  every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

1  follows:

2      a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

3  the **Maine** Revised Statutes, Maine Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*

4      b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

5  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

6  Maine; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

7  artificially high levels throughout Maine; (3) Maine Plaintiff and members of the Maine Damages

8  Class were deprived of free and open competition; and (4) Maine Plaintiff and members of the

9  Maine Damages Class paid supra-competitive, artificially inflated prices for HDD suspension

10  assemblies.

11      b.    During the Class Period, Defendants' illegal conduct substantially affected Maine

12  commerce.

13      c.    As a direct and proximate result of Defendants' unlawful conduct, Maine Plaintiff

14  and members of the Maine Damages Class were injured in their business and property and are

15  threatened with further injury.

16      d.    Accordingly, Maine Plaintiff and members of the Maine Damages Class seek all

17  relief available under Maine Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*

18      238.    Plaintiffs Sascha Nelson and Stacey Silver ("**Maryland Plaintiffs**") incorporate and

19  reallege each and every allegation set forth in the preceding paragraphs of this Complaint and

20  further allege as follows:

21      a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

22  the **Maryland** Antitrust Act, Md. Code. Ann., Com. Law § 11-201, *et seq.*

23      b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

24  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

25  Maryland; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

26  artificially high levels throughout Maryland; (3) Maryland Plaintiffs and members of the Maryland

27  Damages Class were deprived of free and open competition; and (4) Maryland Plaintiffs and

28  members of the Maryland Damages Class paid supra-competitive, artificially inflated prices for

1    HDD suspension assemblies.

2            b.      During the Class Period, Defendants' illegal conduct substantially affected

3    Maryland commerce.

4            c.      As a direct and proximate result of Defendants' unlawful conduct, Maryland

5    Plaintiffs and members of the Maryland Damages Class were injured in their business and property

6    and are threatened with further injury.

7            d.      Accordingly, Maryland Plaintiffs and members of the Maryland Damages Class

8    seek all relief available under Md. Code Ann., Com. Law § 11-201, *et seq.*

9            239.    Plaintiff Jordan Leff ("**Michigan Plaintiff**") incorporates and realleges each and

10   every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

11   follows:

12           a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

13   the **Michigan** Compiled Laws Annotated §§ 445.771, *et seq.*

14           b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

15   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

16   Michigan; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

17   artificially high levels throughout Michigan; (3) Michigan Plaintiff and members of the Michigan

18   Damages Class were deprived of free and open competition; and (4) Michigan Plaintiff and

19   members of the Michigan Damages Class paid supra-competitive, artificially inflated prices for

20   HDD suspension assemblies.

21           c.      During the Class Period, Defendants' illegal conduct substantially affected

22   Michigan commerce.

23           d.      As a direct and proximate result of Defendants' unlawful conduct, Michigan

24   Plaintiff and members of the Michigan Damages Class were injured in their business and property

25   and are threatened with further injury.

26           c.      Accordingly, Michigan Plaintiff and members of the Michigan Damages Class seek

27   all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

28           240.    Plaintiffs Chad Klebs, Pamela Uglem, and Andrew Syverson ("**Minnesota**

1    **Plaintiffs**") incorporate and reallege each and every allegation set forth in the preceding paragraphs

2    of this Complaint and further allege as follows:

3       a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

4    the **Minnesota** Annotated Statutes §§ 325D.49, *et seq.*

5       b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

6    suspension assemblies price competition was restrained, suppressed, and eliminated throughout

7    Minnesota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

8    artificially high levels throughout Minnesota; (3) Minnesota Plaintiffs and members of the

9    Minnesota Damages Class were deprived of free and open competition; and (4) Minnesota

10    Plaintiffs and members of the Minnesota Damages Class paid supra-competitive, artificially

11    inflated prices for HDD suspension assemblies.

12       c.    During the Class Period, Defendants' illegal conduct substantially affected

13    Minnesota commerce.

14       d.    As a direct and proximate result of Defendants' unlawful conduct, Minnesota

15    Plaintiffs and members of the Minnesota Damages Class were injured in their business and property

16    and are threatened with further injury.

17       e.    Accordingly, Minnesota Plaintiffs and members of the Minnesota Damages Class

18    seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

19      241.    Plaintiffs Brandy Newsome and Ethel Cain Carson ("**Mississippi Plaintiffs**")

20    incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

21    Complaint and further allege as follows:

22       a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

23    the **Mississippi** Code Annotated §§ 75-21-1, *et seq.*

24       b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

25    suspension assemblies price competition was restrained, suppressed, and eliminated throughout

26    Mississippi; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

27    artificially high levels throughout Mississippi; (3) Mississippi Plaintiffs and members of the

28    Mississippi Damages Class were deprived of free and open competition; and (4) Mississippi

1    Plaintiffs and members of the Mississippi Damages Class paid supra-competitive, artificially
2    inflated prices for HDD suspension assemblies.

3           c.      During the Class Period, Defendants' illegal conduct substantially affected
4    Mississippi commerce.

5           d.      As a direct and proximate result of Defendants' unlawful conduct, Mississippi
6    Plaintiffs and members of the Mississippi Damages Class were injured in their business and
7    property and are threatened with further injury.

8           c.      Accordingly, Mississippi Plaintiffs and members of the Mississippi Damages Class
9    seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

10   242.    Plaintiff Leslie Working ("**Nebraska Plaintiff**") incorporates and realleges each and
11   every allegation set forth in the preceding paragraphs of this Complaint and further alleges as
12   follows:

13          a.      Defendants entered into an unlawful agreement in restraint of trade in violation of
14   the **Nebraska** Revised Statutes §§ 59-801, *et seq.*

15          b.      Defendants' combinations or conspiracies had the following effects: (1) HDD
16   suspension assemblies price competition was restrained, suppressed, and eliminated throughout
17   Nebraska; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at
18   artificially high levels throughout Nebraska; (3) Nebraska Plaintiff and members of the Nebraska
19   Damages Class were deprived of free and open competition; and (4) Nebraska Plaintiff and
20   members of the Nebraska Damages Class paid supra-competitive, artificially inflated prices for
21   HDD suspension assemblies.

22          c.      During the Class Period, Defendants' illegal conduct substantially affected
23   Nebraska commerce.

24          d.      As a direct and proximate result of Defendants' unlawful conduct, Nebraska
25   Plaintiff and members of the Nebraska Damages Class were injured in their business and property
26   and are threatened with further injury.

27          c.      Accordingly, Nebraska Plaintiff and members of the Nebraska Damages Class seek
28   all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

243. Plaintiff Gregory Painter ("**Nevada Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a. Defendants entered into an unlawful agreement in restraint of trade in violation of the **Nevada** Revised Statutes Annotated §§ 598A.010, *et seq.*

b. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Nevada Plaintiff and members of the Nevada Damages Class were deprived of free and open competition; and (4) Nevada Plaintiff and members of the Nevada Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Nevada Plaintiff and members of the Nevada Damages Class were injured in their business and property and are threatened with further injury.

c. Accordingly, Nevada Plaintiff and members of the Nevada Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

244. Plaintiff Matthew Landry ("**New Hampshire Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a. Defendants entered into an unlawful agreement in restraint of trade in violation of the **New Hampshire** Revised Statutes §§ 356:1, *et seq.*

b. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) New Hampshire Plaintiff and

1   members of the New Hampshire Damages Class were deprived of free and open competition; and

2   (4) New Hampshire Plaintiff and members of the New Hampshire Damages Class paid supra-

3   competitive, artificially inflated prices for HDD suspension assemblies.

4            c.      During the Class Period, Defendants' illegal conduct substantially affected New

5   Hampshire commerce.

6            d.      As a direct and proximate result of Defendants' unlawful conduct, New Hampshire

7   Plaintiff and members of the New Hampshire Damages Class were injured in their business and

8   property and are threatened with further injury.

9            c.      Accordingly, New Hampshire Plaintiff and members of the New Hampshire

10  Damages Class seek all relief available under New Hampshire Rev. Stat. Ann. §§ 356:1, *et seq.*

11          245.    Plaintiff Sue McKelvey ("**New Mexico Plaintiff**") incorporates and realleges each

12  and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

13  follows:

14           a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

15  the **New Mexico** Statutes Annotated §§ 57-1-1, et seq.

16           b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

17  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

18  New Mexico; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized

19  at artificially high levels throughout New Mexico; (3) New Mexico Plaintiff and members of the

20  New Mexico Damages Class were deprived of free and open competition; and (4) New Mexico

21  Plaintiff and members of the New Mexico Damages Class paid supra-competitive, artificially

22  inflated prices for HDD suspension assemblies.

23           c.      During the Class Period, Defendants' illegal conduct substantially affected New

24  Mexico commerce.

25           d.      As a direct and proximate result of Defendants' unlawful conduct, New Mexico

26  Plaintiff and members of the New Mexico Damages Class were injured in their business and

27  property and are threatened with further injury.

28           c.      Accordingly, New Mexico Plaintiff and members of the New Mexico Damages

1    Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

2            246.    Plaintiffs Vincent Cimino and Anthony Cimino ("**New York Plaintiffs**")

3    incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

4    Complaint and further allege as follows:

5            a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

6    the **New York** General Business Laws §§ 340, et seq.

7            b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

8    suspension assemblies price competition was restrained, suppressed, and eliminated throughout

9    New York; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

10   artificially high levels throughout New York; (3) New York Plaintiffs and members of the New

11   York Damages Class were deprived of free and open competition; and (4) New York Plaintiffs and

12   members of the New York Damages Class paid supra-competitive, artificially inflated prices for

13   HDD suspension assemblies when they purchased HDDs containing HDD suspension assemblies.

14           c.      During the Class Period, Defendants' illegal conduct substantially affected New

15   York commerce.

16           d.      As a direct and proximate result of Defendants' unlawful conduct, New York

17   Plaintiffs and members of the New York Damages Class were injured in their business and property

18   and are threatened with further injury.

19           c.      The conduct set forth above is a *per se* violation of the Act. Accordingly, New York

20   Plaintiffs and members of the New York Damages Class seek all relief available under New York

21   Gen. Bus. Law §§ 340, *et seq.*

22           247.    Plaintiff Randy Maccaferri ("**North Carolina Plaintiff**") incorporates and realleges

23   each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges

24   as follows:

25           a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

26   the **North Carolina** General Statutes §§ 75-1, *et seq.*

27           b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

28   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

1    North Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained and

2    stabilized at artificially high levels throughout North Carolina; (3) North Carolina Plaintiff and

3    members of the North Carolina Damages Class were deprived of free and open competition; and

4    (4) North Carolina Plaintiff and members of the North Carolina Damages Class paid supra-

5    competitive, artificially inflated prices for HDD suspension assemblies.

6         c.    During the Class Period, Defendants' illegal conduct substantially affected North

7    Carolina commerce.

8         d.    As a direct and proximate result of Defendants' unlawful conduct, North Carolina

9    Plaintiff and members of the North Carolina Damages Class were injured in their business and

10   property and are threatened with further injury.

11        c.    Accordingly, North Carolina Plaintiff and members of the North Carolina Damages

12   Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

13   248.    Plaintiff Ashely Boswell ("**North Dakota Plaintiff**") incorporates and realleges

14   each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges

15   as follows:

16        a.    Defendants entered into an unlawful agreement in restraint of trade in violation of

17   the **North Dakota** Century Code §§ 51-08.1-01, *et seq.*

18        b.    Defendants' combinations or conspiracies had the following effects: (1) HDD

19   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

20   North Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized

21   at artificially high levels throughout North Dakota; (3) North Dakota Plaintiff and members of the

22   North Dakota Damages Class were deprived of free and open competition; and (4) North Dakota

23   Plaintiff and members of the North Dakota Damages Class paid supra-competitive, artificially

24   inflated prices for HDD suspension assemblies.

25        c.    During the Class Period, Defendants' illegal conduct had a substantial effect on

26   North Dakota commerce.

27        d.    As a direct and proximate result of Defendants' unlawful conduct, North Dakota

28   Plaintiff and members of the North Dakota Damages Class were injured in their business and

1    property and are threatened with further injury.

2          c.      Accordingly, North Dakota Plaintiff and members of the North Dakota Damages

3    Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

4          249.    Plaintiff David Anderson ("**Oregon Plaintiff**") incorporates and realleges each and

5    every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

6    follows:

7          a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

8    the **Oregon** Revised Statutes §§ 646.705, *et seq.*

9          b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

10   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

11   Oregon; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

12   artificially high levels throughout Oregon; (3) Oregon Plaintiff and members of the Oregon

13   Damages Class were deprived of free and open competition; and (4) Oregon Plaintiff and members

14   of the Oregon Damages Class paid supra-competitive, artificially inflated prices for HDD

15   suspension assemblies.

16         c.      During the Class Period, Defendants' illegal conduct had a substantial effect on

17   Oregon commerce.

18         d.      As a direct and proximate result of Defendants' unlawful conduct, Oregon Plaintiff

19   and members of the Oregon Damages Class were injured in their business and property and are

20   threatened with further injury.

21         c.      Accordingly, Oregon Plaintiff and members of the Oregon Damages Class seek all

22   relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

23         250.    Plaintiff Angela Gardner ("**Rhode Island Plaintiff**") incorporates and realleges each

24   and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as

25   follows:

26         a.      Defendants entered into an unlawful agreement in restraint of trade in violation of

27   the **Rhode Island** Antitrust Act, R.I. Gen. Laws §§ 6-36-1, *et seq.*

28         b.      Defendants' combinations or conspiracies had the following effects: (1) HDD

suspension assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Rhode Island Plaintiff and members of the Rhode Island Damages Class were deprived of free and open competition; and (4) Rhode Island Plaintiff and members of the Rhode Island Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.      During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Rhode Island Plaintiff and members of the Rhode Island Damages Class were injured in their business and property and are threatened with further injury.

c.      Accordingly, Rhode Island Plaintiff and members of the Rhode Island Damages Class seek all relief available under R.I. Gen. Laws §§ 6-36-1, *et seq.*

251.     Plaintiff Ann Marie Putzier ("**South Dakota Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.      Defendants entered into an unlawful agreement in restraint of trade in violation of the **South Dakota** Codified Laws §§ 37-1-3.1, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) South Dakota Plaintiff and members of the South Dakota Damages Class were deprived of free and open competition; and (4) South Dakota Plaintiff and members of the South Dakota Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, South Dakota

1    Plaintiff and members of the South Dakota Damages Class were injured in their business and
2    property and are threatened with further injury.

3          c.     Accordingly, South Dakota Plaintiff and members of the South Dakota Damages
4    Class seek all relief available under S.D. Codified Laws Ann. §§ 37-1, *et seq.*

5          252.   Plaintiffs Alex Nicholson and Yvonne Peychal ("**Tennessee Plaintiffs**") incorporate
6    and reallege each and every allegation set forth in the preceding paragraphs of this Complaint and
7    further allege as follows:

8          a.     Defendants entered into an unlawful agreement in restraint of trade in violation of
9    the **Tennessee** Code Annotated §§ 47-25-101, *et seq.*

10          b.     Defendants' combinations or conspiracies had the following effects: (1) HDD
11   suspension assemblies price competition was restrained, suppressed, and eliminated throughout
12   Tennessee; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at
13   artificially high levels throughout Tennessee; (3) Tennessee Plaintiffs and members of the
14   Tennessee Damages Class were deprived of free and open competition; and (4) Tennessee Plaintiffs
15   and members of the Tennessee Damages Class paid supra-competitive, artificially inflated prices
16   for HDD suspension assemblies.

17          c.     During the Class Period, Defendants' illegal conduct had a substantial effect on
18   Tennessee commerce.

19          d.     As a direct and proximate result of Defendants' unlawful conduct, Tennessee
20   Plaintiffs and members of the Tennessee Damages Class were injured in their business and property
21   and are threatened with further injury.

22          c.     Accordingly, Tennessee Plaintiffs and members of the Tennessee Damages Class
23   seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

24          253.   Plaintiffs Nicole Laird and Samuel Bringhurst ("**Utah Plaintiffs**") incorporate and
25   reallege each and every allegation set forth in the preceding paragraphs of this Complaint and
26   further allege as follows:

27          a.     Defendants entered into an unlawful agreement in restraint of trade in violation of
28   the **Utah** Code Annotated §§ 76-10-3101, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Utah Plaintiffs and members of the Utah Damages Class were deprived of free and open competition; and (4) Utah Plaintiffs and members of the Utah Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.      During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Utah Plaintiffs and members of the Utah Damages Class were injured in their business and property and are threatened with further injury.

e.      Accordingly, Utah Plaintiffs and members of the Utah Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

254.    Plaintiff Jonathan Lewis ("**Vermont Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.      Defendants entered into an unlawful agreement in restraint of trade in violation of the **Vermont** Stat. Ann. 9 §§ 2453, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Vermont Plaintiff and members of the Vermont Damages Class were deprived of free and open competition; and (4) Vermont Plaintiff and members of the Vermont Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.      During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Vermont Plaintiff

1    and members of the Vermont Damages Class were injured in their business and property and are
2    threatened with further injury.

3         c.    Accordingly, Vermont Plaintiff and members of the Vermont Damages Class seek
4    all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

5         255.   Plaintiff Larry Steele ("**West Virginia Plaintiff**") incorporates and realleges each
6    and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as
7    follows:

8         a.    Defendants entered into an unlawful agreement in restraint of trade in violation of
9    the **West Virginia** Code §§ 47-18-1, *et seq.*

10        b.    Defendants' combinations or conspiracies had the following effects: (1) HDD
11   suspension assemblies price competition was restrained, suppressed, and eliminated throughout
12   West Virginia; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized
13   at artificially high levels throughout West Virginia; (3) West Virginia Plaintiff and members of the
14   West Virginia Damages Class were deprived of free and open competition; and (4) West Virginia
15   Plaintiff and members of the West Virginia Damages Class paid supra-competitive, artificially
16   inflated prices for HDD suspension assemblies.

17        c.    During the Class Period, Defendants' illegal conduct had a substantial effect on
18   West Virginia commerce.

19        d.    As a direct and proximate result of Defendants' unlawful conduct, West Virginia
20   Plaintiff and members of the West Virginia Damages Class were injured in their business and
21   property and are threatened with further injury.

22        c.    Accordingly, West Virginia Plaintiff and members of the West Virginia Damages
23   Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

24        256.   Plaintiff Seth Swanson ("**Wisconsin Plaintiff**") incorporates and realleges each and
25   every allegation set forth in the preceding paragraphs of this Complaint and further alleges as
26   follows:

27        a.    Defendants entered into an unlawful agreement in restraint of trade in violation of
28   the **Wisconsin** Statutes §§ 133.01, *et seq.*

b.       Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin Plaintiff and members of the Wisconsin Damages Class were deprived of free and open competition; and (4) Wisconsin Plaintiff and members of the Wisconsin Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.       During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

d.       As a direct and proximate result of Defendants' unlawful conduct, Wisconsin Plaintiff and members of the Wisconsin Damages Class were injured in their business and property and are threatened with further injury.

c.       Accordingly, Wisconsin Plaintiff and members of the Wisconsin Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

257.     Plaintiffs and members of the Damages Class in each of the above states were injured in their business and property by Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

258.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiffs and members of the Damages Class.

259.     Accordingly, Plaintiffs and members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**FOURTH CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the State Damages Classes)**

260.    Plaintiffs assert these state law claims on behalf of the State Damages Classes.[67]

261.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

262.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

263.    Plaintiff Dustin Lancaster ("**Arkansas Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.    Defendants have engaged in deceptive and unconscionable acts or practices in violation of the **Arkansas** Code Annotated, § 4-88-101, *et seq.*

b.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Arkansas Plaintiff and members of the Arkansas Damages Class.

c.    The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

d.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Arkansas Plaintiff and members of the Arkansas Damages Class were deprived of free and open competition; and (4) Arkansas Plaintiff and members of the

_____

[67] Plaintiffs Jeffrey Greenfield, Timothy A. St. Cyr, and Sascha Nelson plead these state law claims in the alternative to their First-Level U.S. Purchases claims pursuant to Section 4 of the Clayton Act, in the event that the Court disagrees that they are entitled to recover damages under Section 4 of the Clayton Act for their First-Level U.S. Purchases.

1   Arkansas Damages Class paid supra-competitive, artificially inflated prices for HDD suspension

2   assemblies.

3           c.      During the Class Period, Defendants' illegal conduct substantially affected

4   Arkansas commerce and consumers.

5           f.      As a direct and proximate result of the unlawful conduct of Defendants, Arkansas

6   Plaintiff and members of the Arkansas Damages Class were injured in their business and property

7   and are threatened with further injury.

8           g.      Accordingly, Arkansas Plaintiff and members of the Arkansas Damages Class seek

9   all relief available under that statute.

10          264.    **California Plaintiffs** incorporate and reallege each and every allegation set forth in

11  the preceding paragraphs of this Complaint and further allege as follows:

12          a.      Defendants have engaged in unfair competition or unfair, unconscionable, deceptive

13  or fraudulent acts or practices in violation of **California** Business and Professions Code § 17200,

14  *et seq.*

15          b.      During the Class Period, Defendants marketed, sold, or distributed HDD suspension

16  assemblies in California, and committed and continue to commit acts of unfair competition, as

17  defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging

18  in the acts and practices specified above.

19          c.      This claim is instituted pursuant to Sections 17203 and 17204 of the California

20  Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged

21  herein, that violated Section 17200 of the California Business and Professions Code, commonly

22  known as the Unfair Competition Law (the "UCL").

23          d.      Defendants' conduct as alleged herein violates the UCL. The acts, omissions,

24  misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a

25  common, continuous, and continuing course of conduct of unfair competition by means of unfair,

26  unlawful, and/or fraudulent business acts or practices within the meaning of the UCL., including,

27  but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth

28  above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code,

1  set forth above.

2        c.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as

3  described above, whether or not in violation of Section 16720, *et seq.*, of the California Business

4  and Professions Code, and whether or not concerted or independent acts, are otherwise unfair,

5  unconscionable, unlawful or fraudulent.

6        f.    Defendants' acts or practices are unfair to consumers of HDD suspension assemblies

7  (or products containing them) in California within the meaning of Section 17200, California

8  Business and Professions Code.

9        g.    Defendants' acts and practices are fraudulent or deceptive within the meaning of

10  Section 17200 of the California Business and Professions Code.

11        h.    California Plaintiffs and members of the California Damages Class are entitled to

12  full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits

13  that were obtained by Defendants as a result of such business acts or practices.

14        i.    The illegal conduct alleged herein is continuing and there is no indication that

15  Defendants will not continue such activity into the future.

16        j.    The unlawful and unfair business practices of Defendants, each of them, have caused

17  and continue to cause California Plaintiffs and members of the California Damages Class to pay

18  supra-competitive and artificially-inflated prices for HDD suspension assemblies (or products

19  containing them). California Plaintiffs and members of the California Damages Class suffered

20  injury in fact and lost money or property as a result of such unfair competition.

21        k.    As alleged in this Complaint, Defendants and their co-conspirators have been

22  unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.

23  California Plaintiffs and members of the California Damages Class are accordingly entitled to

24  equitable relief including restitution and/or disgorgement of all revenues, earnings, profits,

25  compensation, and benefits that were obtained by Defendants as a result of such business practices,

26  pursuant to the California Business and Professions Code, Sections 17203 and 17204.

27      265.    **DC Plaintiff** incorporates and realleges each and every allegation set forth in the

28  preceding paragraphs of this Complaint and further alleges as follows:

a.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of **District of Columbia** Code § 28-3901, *et seq.*

b.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in the District of Columbia.

c.      The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. DC Plaintiff was not aware of Defendants' price-fixing conspiracy and was therefore unaware that she was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and DC Plaintiff had no power to negotiate a lower price. Moreover, DC Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which DC Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of DC Plaintiff and the public. Defendants took grossly unfair advantage of DC Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

d.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) DC Plaintiff and members of the District of Columbia Damages Class were deprived of free and open competition; and (4) DC Plaintiff and members of the District of Columbia Damages Class paid supra-competitive,

1    artificially inflated prices for HDD suspension assemblies.

2        c.    As a direct and proximate result of Defendants' unlawful conduct, DC Plaintiff and

3    members of the District of Columbia Damages Class were injured and are threatened with further

4    injury. Accordingly, DC Plaintiff and members of the District of Columbia Damages Class seek all

5    relief available under that statute.

6        266.   Plaintiffs Jeffrey Greenfield and Ted Ingber ("**Florida Plaintiffs**") incorporate and

7    reallege each and every allegation set forth in the preceding paragraphs of this Complaint and

8    further allege as follows:

9        267.   Defendants have engaged in unfair competition or unfair, unconscionable, or

10   deceptive acts or practices in violation of the **Florida** Deceptive and Unfair Trade Practices Act,

11   Fla. Stat. §§ 501.201, *et seq.*

12       a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by

13   affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

14   prices at which HDD suspension assemblies were sold, distributed or obtained in Florida.

15       b.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

16   assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2)

17   HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

18   levels throughout Florida; (3) Florida Plaintiffs and members of the Florida Damages Class were

19   deprived of free and open competition; and (4) Florida Plaintiffs and members of the Florida

20   Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

21       c.    During the Class Period, Defendants' illegal conduct substantially affected Florida

22   commerce and consumers.

23       d.    As a direct and proximate result of Defendants' unlawful conduct, Florida Plaintiffs

24   and members of the Florida Damages Class were injured and are threatened with further injury.

25   Accordingly, Florida Plaintiff and members of the Florida Damages Class seek all relief available

26   under that statute.

27       268.   **Hawaii Plaintiff** incorporates and realleges each and every allegation set forth in the

28   preceding paragraphs of this Complaint and further alleges as follows:

a.    Defendants have engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of **Hawaii** Rev. Stat. § 480-2. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in Hawaii.

b.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Hawaii Plaintiff and members of the Hawaii Damages Class were deprived of free and open competition; and (4) Hawaii Plaintiff and members of the Hawaii Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d.    As a direct and proximate result of Defendants' unlawful conduct, Hawaii Plaintiff and members of the Hawaii Damages Class were injured and are threatened with further injury. Accordingly, Hawaii Plaintiffs and members of the Hawaii Damages Class seek all relief available under the statute.

269.    Plaintiff Brian Fahey ("**Massachusetts Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of **Massachusetts** G.L. c. 93A, §2.

b.    Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

c.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Massachusetts Plaintiff and members of the Massachusetts Damages Class.

d.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Massachusetts Plaintiff and members of the Massachusetts Damages Class were deprived of free and open competition; and (4) Massachusetts Plaintiff and members of the Massachusetts Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

c.      As a direct and proximate result of Defendants' unlawful conduct, Massachusetts Plaintiff and members of the Massachusetts Damages Class were injured and are threatened with further injury.

f.      Certain of Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

g.      Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Massachusetts Plaintiff and members of the Massachusetts Damages Class to multiple damages.

270.    **Michigan Plaintiff** incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Michigan** Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

b.      Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Michigan.

c.      Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Michigan, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical,

1    oppressive and unscrupulous, and caused substantial injury to Michigan Plaintiff and members of

2    the Michigan Damages Class.

3         d.    Defendants concealed, suppressed, and omitted to disclose material facts to

4    Michigan Plaintiff and members of the Michigan Damages Class concerning Defendants' unlawful

5    activities and artificially inflated prices for HDD suspension assemblies. The concealed,

6    suppressed, and omitted facts would have been important to Michigan Plaintiff and members of the

7    Michigan Damages Class as they related to the cost of HDD suspension assemblies they purchased.

8         c.    Defendants misrepresented the real cause of price increases and/or the absence of

9    price reductions in HDD suspension assemblies by making public statements that were not in

10   accord with the facts.

11        f.    Defendants' statements and conduct concerning the price of HDD suspension

12   assemblies were deceptive as they had the tendency or capacity to mislead Michigan Plaintiff and

13   members of the Michigan Damages Class to believe that they were purchasing HDD suspension

14   assemblies at prices established by a free and fair market.

15        g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

16   assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2)

17   HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

18   levels throughout Michigan; (3) Michigan Plaintiff and members of the Michigan Damages Class

19   were deprived of free and open competition; and (4) Michigan Plaintiff and members of the

20   Michigan Damages Class paid supra-competitive, artificially inflated prices for HDD suspension

21   assemblies.

22        h.    As a direct and proximate result of the above-described unlawful practices,

23   Michigan Plaintiff and members of the Michigan Damages Class suffered ascertainable loss of

24   money or property. Accordingly, Michigan Plaintiff and members of the Michigan Damages Class

25   seek all relief available under the Michigan Consumer Protection Act.

26        271.   **Minnesota Plaintiffs** incorporate and reallege each and every allegation set forth in

27   the preceding paragraphs of this Complaint and further allege as follows:

28        a.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the **Minnesota** Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*

b.     Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Minnesota.

c.     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Minnesota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Minnesota Plaintiffs and members of the Minnesota Damages Class.

d.     Defendants concealed, suppressed, and omitted to disclose material facts to Minnesota Plaintiffs and members of the Minnesota Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to Minnesota Plaintiffs and members of the Minnesota Damages Class as they related to the cost of HDD suspension assemblies they purchased.

e.     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts.

f.     Defendants' statements and conduct concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead Minnesota Plaintiffs and members of the Minnesota Damages Class to believe that they were purchasing HDD suspension assemblies at prices established by a free and fair market.

g.     Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Minnesota Plaintiffs and members of the Minnesota Damages Class were deprived of free and open competition; and (4) Minnesota Plaintiffs and members of

1    the Minnesota Damages Class paid supra-competitive, artificially inflated prices for HDD
2    suspension assemblies.

3        h.    As a direct and proximate result of the above-described unlawful practices,
4    Minnesota Plaintiffs and members of the Minnesota Damages Class suffered ascertainable loss of
5    money or property. Accordingly, Minnesota Plaintiffs and members of the Minnesota Damages
6    Class seek all relief available under the Minnesota Consumer Fraud Act.

7        272.    Plaintiff Kimberly Benjamin ("**Missouri Plaintiff**") incorporates and realleges each
8    and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as
9    follows:

10       a.    Defendants have engaged in unfair competition or unfair, unconscionable, or
11   deceptive acts or practices in violation of the **Missouri** Merchandising Practices Act, Mo. Rev.
12   Stat. § 407.010, *et seq.*

13       b.    Missouri Plaintiff and members of the Missouri Damages Class purchased HDD
14   suspension assemblies for personal, family, or household purposes.

15       c.    Defendants engaged in the conduct described herein in connection with the sale of
16   HDD suspension assemblies in trade or commerce in a market that includes Missouri.

17       d.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,
18   and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension
19   assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair
20   practices in that it was unlawful under federal and state law, violated public policy, was unethical,
21   oppressive and unscrupulous, and caused substantial injury to Missouri Plaintiff and members of
22   the Missouri Damages Class.

23       e.    Defendants concealed, suppressed, and omitted to disclose material facts to
24   Missouri Plaintiff and members of the Missouri Damages Class concerning Defendants' unlawful
25   activities and artificially inflated prices for HDD suspension assemblies. The concealed,
26   suppressed, and omitted facts would have been important to Missouri Plaintiff and members of the
27   Missouri Damages Class as they related to the cost of HDD suspension assemblies they purchased.

28       f.    Defendants misrepresented the real cause of price increases and/or the absence of

1    price reductions in HDD suspension assemblies by making public statements that were not in

2    accord with the facts.

3            g.    Defendants' statements and conduct concerning the price of HDD suspension

4    assemblies were deceptive as they had the tendency or capacity to mislead Missouri Plaintiff and

5    members of the Missouri Damages Class to believe that they were purchasing HDD suspension

6    assemblies at prices established by a free and fair market.

7            h.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

8    assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2)

9    HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

10   levels throughout Missouri; (3) Missouri Plaintiff and members of the Missouri Damages Class

11   were deprived of free and open competition; and (4) Missouri Plaintiff and members of the Missouri

12   Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

13

14           i.    As a direct and proximate result of the above-described unlawful practices, Missouri

15   Plaintiff and members of the Missouri Damages Class suffered ascertainable loss of money or

16   property.

17           j.    Accordingly, Missouri Plaintiff and members of the Missouri Damages Class seek

18   all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. §

19   407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false

20   pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or

21   omission of any material fact in connection with the sale or advertisement of any merchandise in

22   trade or commerce . . . ," as further interpreted by the Missouri Code of State Regulations, 15 CSR

23   60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. §

24   407.025, which provides for the relief sought in this count.

25           273.  Plaintiffs Joseph Mattingly and Richard Jones ("**Montana Plaintiffs**") incorporate

26   and reallege each and every allegation set forth in the preceding paragraphs of this Complaint and

27   further allege as follows:

28           a.    Defendants have engaged in unfair competition or unfair, unconscionable, or

1    deceptive acts or practices in violation of the **Montana** Consumer Protection Act of 1973, Mont.
2    Code, §§ 30-14-101, *et seq.*

3          b.     Defendants' unlawful conduct had the following effects: (1) HDD suspension
4    assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2)
5    HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high
6    levels throughout Montana; (3) Montana Plaintiffs and members of the Montana Damages Class
7    were deprived of free and open competition; and (4) Montana Plaintiffs and members of the
8    Montana Damages Class paid supra-competitive, artificially inflated prices for HDD suspension
9    assemblies.

10         c.     During the Class Period, Defendants' illegal conduct substantially affected Montana
11   commerce and consumers.

12         d.     As a direct and proximate result of Defendants' unlawful conduct, Montana
13   Plaintiffs and members of the Montana Damages Class were injured and are threatened with further
14   injury. Accordingly, Montana Plaintiffs and members of the Montana Damages Class seek all relief
15   available under that statute.

16         274.    **Nebraska Plaintiff** incorporates and realleges each and every allegation set forth in
17   the preceding paragraphs of this Complaint and further alleges as follows:

18         a.     Defendants have engaged in unfair methods competition and unfair or deceptive acts
19   or practices in the conduct of trade or commerce in violation of the **Nebraska** Consumer Protection
20   Act, Neb. Rev. Stat. § 59-1602, *et seq.*

21         b.     Defendants' unlawful conduct had the following effects: (1) HDD suspension
22   assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2)
23   HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high
24   levels throughout Nebraska; (3) Nebraska Plaintiff and members of the Nebraska Damages Class
25   were deprived of free and open competition; and (4) Nebraska Plaintiff and members of the
26   Nebraska Damages Class paid supra-competitive, artificially inflated prices for HDD suspension
27   assemblies.

28         c.     During the Class Period, Defendants' illegal conduct substantially affected

1 | Nebraska commerce and consumers.

2 |   d. As a direct and proximate result of Defendants' unlawful conduct, Nebraska

3 | Plaintiff and members of the Nebraska Damages Class were injured and are threatened with further

4 | injury. Accordingly, Nebraska Plaintiff and members of the Nebraska Damages Class seek all relief

5 | available under that statute.

6 |   275. **Nevada Plaintiff** incorporates and realleges each and every allegation set forth in

7 | the preceding paragraphs of this Complaint and further alleges as follows:

8 |   a. Defendants have engaged in deceptive trade practices in violation of the **Nevada**

9 | Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*

10 |   b. Defendants engaged in the conduct described herein in connection with the sale of

11 | HDD suspension assemblies in trade or commerce in a market that includes Nevada.

12 |   c. Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,

13 | and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension

14 | assemblies were sold, distributed or obtained in Nevada, which conduct constituted unfair practices

15 | in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive

16 | and unscrupulous, and caused substantial injury to Nevada Plaintiff and members of the Nevada

17 | Damages Class.

18 |   d. Defendants concealed, suppressed, and omitted to disclose material facts to Nevada

19 | Plaintiff and members of the Nevada Damages Class concerning Defendants' unlawful activities

20 | and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and

21 | omitted facts would have been important to Nevada Plaintiff and members of the Nevada Damages

22 | Class as they related to the cost of HDD suspension assemblies they purchased.

23 |   e. Defendants misrepresented the real cause of price increases and/or the absence of

24 | price reductions in HDD suspension assemblies by making public statements that were not in

25 | accord with the facts.

26 |   f. Defendants' statements and conduct concerning the price of HDD suspension

27 | assemblies were deceptive as they had the tendency or capacity to mislead Nevada Plaintiff and

28 | members of the Nevada Damages Class to believe that they were purchasing HDD suspension

1    assemblies at prices established by a free and fair market.

2            g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

3    assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2)

4    HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

5    levels throughout Nevada; (3) Nevada Plaintiff and members of the Nevada Damages Class were

6    deprived of free and open competition; and (4) Nevada Plaintiff and members of the Nevada

7    Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

8    As a direct and proximate result of the above-described unlawful practices, Nevada Plaintiff and

9    members of the Nevada Damages Class suffered ascertainable loss of money or property.

10   Accordingly, Nevada Plaintiff and members of the Nevada Damages Class seek all relief available

11   under Nev. Rev. Stat. § 598.0993.

12           276.    **New Hampshire Plaintiff** incorporates and realleges each and every allegation set

13   forth in the preceding paragraphs of this Complaint and further alleges as follows:

14           a.    Defendants have engaged in unfair competition or unfair, unconscionable, or

15   deceptive acts or practices in violation of the **New Hampshire** Consumer Protection Act, N.H.

16   Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

17           b.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

18   assemblies price competition was restrained, suppressed, and eliminated throughout New

19   Hampshire; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized

20   at artificially high levels throughout New Hampshire; (3) New Hampshire Plaintiff and members

21   of the New Hampshire Damages Class were deprived of free and open competition; and (4) New

22   Hampshire Plaintiff and members of the New Hampshire Damages Class paid supra-competitive,

23   artificially inflated prices for HDD suspension assemblies.

24           c.    During the Class Period, Defendants' illegal conduct substantially affected New

25   Hampshire commerce and consumers.

26           d.    As a direct and proximate result of Defendants' unlawful conduct, New Hampshire

27   Plaintiff and members of the New Hampshire Damages Class were injured and are threatened with

28   further injury. Accordingly, New Hampshire Plaintiff and members of the New Hampshire

1   Damages Class seek all relief available under N.H. Rev. Stat. Ann. tit. XXXI § 358-A:10 and

2   358A:10-a.

3   277.   **New Mexico Plaintiff** incorporates and realleges each and every allegation set forth

4   in the preceding paragraphs of this Complaint and further alleges as follows:

5   a.   Defendants have engaged in unfair competition or unfair, unconscionable, or

6   deceptive acts or practices in violation of **New Mexico** Stat. § 57-12-1, *et seq.*

7   b.   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of

8   trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and

9   artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed

10  or obtained in New Mexico and took efforts to conceal their agreements from New Mexico Plaintiff

11  and members of the New Mexico Damages Class.

12  c.   The aforementioned conduct on the part of Defendants constituted "unconscionable

13  trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted

14  in a gross disparity between the value received by New Mexico Plaintiff and members of the New

15  Mexico Damages Class and the prices paid by them for HDD suspension assemblies as set forth in

16  N.M.S.A., § 57-12-2E. New Mexico Plaintiff was not aware of Defendants' price-fixing conspiracy

17  and were therefore unaware that she was being unfairly and illegally overcharged. There was a

18  gross disparity of bargaining power between the parties with respect to the price charged by

19  Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and

20  New Mexico Plaintiff had no power to negotiate a lower price. Moreover, New Mexico Plaintiff

21  lacked any meaningful choice in purchasing HDD suspension assemblies because they were

22  unaware of the unlawful overcharge and there was no alternative source of supply through which

23  New Mexico Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of

24  HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD

25  suspension assemblies at supra-competitive levels and overcharge consumers, was substantively

26  unconscionable because it was one-sided and unfairly benefited Defendants at the expense of New

27  Mexico Plaintiff and the public. Defendants took grossly unfair advantage of New Mexico Plaintiff.

28  The suppression of competition that has resulted from Defendants' conspiracy has ultimately

1 resulted in unconscionably higher prices for consumers so that there was a gross disparity between

2 the price paid and the value received for HDD suspension assemblies.

3        d.     Defendants' unlawful conduct had the following effects: (1) HDD suspension

4 assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico;

5 (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially

6 high levels throughout New Mexico; (3) New Mexico Plaintiff and members of the New Mexico

7 Damages Class were deprived of free and open competition; and (4) New Mexico Plaintiff and

8 members of the New Mexico Damages Class paid supra-competitive, artificially inflated prices for

9 HDD suspension assemblies.

10        c.     During the Class Period, Defendants' illegal conduct substantially affected New

11 Mexico commerce and consumers.

12        f.     As a direct and proximate result of the unlawful conduct of Defendants, New

13 Mexico Plaintiff and members of the New Mexico Damages Class were injured and are threatened

14 with further injury. Accordingly, New Mexico Plaintiff and members of the New Mexico Damages

15 Class seek all relief available under that statute.

16       278.     **New York Plaintiffs** incorporate and reallege each and every allegation set forth in

17 the preceding paragraphs of this Complaint and further allege as follows:

18        a.     Defendants have engaged in unfair competition or unfair, unconscionable, or

19 deceptive acts or practices in violation of **New York** Gen. Bus. Law § 349, *et seq.*

20        b.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by

21 affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices

22 at which HDD suspension assemblies were sold, distributed or obtained in New York and took

23 efforts to conceal their agreements from New York Plaintiffs and members of the New York

24 Damages Class.

25        c.     Defendants and their co-conspirators made public statements about the prices of

26 HDD suspension assemblies and products containing HDD suspension assemblies that Defendants

27 knew would be seen by New York consumers; such statements either omitted material information

28 that rendered the statements that they made materially misleading or affirmatively misrepresented

1   the real cause of price increases for HDD suspension assemblies and products containing HDD

2   suspension assemblies; and Defendants alone possessed material information that was relevant to

3   consumers, but failed to provide the information.

4          d.   Because of Defendants' unlawful trade practices in New York, New York Plaintiffs

5   and members of the New York Damages Class who indirectly purchased HDD suspension

6   assemblies were misled to believe that they were paying a fair price for HDD suspension assemblies

7   or the price increases for HDD suspension assemblies were for valid business reasons; and similarly

8   situated consumers were potentially affected by Defendants' conspiracy.

9          c.   Defendants knew that their unlawful trade practices with respect to pricing HDD

10  suspension assemblies would have an impact on New York consumers and not just Defendants'

11  direct customers.

12         f.   Defendants knew that their unlawful trade practices with respect to pricing HDD

13  suspension assemblies would have a broad impact, causing consumer class members who indirectly

14  purchased HDD suspension assemblies to be injured by paying more for HDD suspension

15  assemblies than they would have paid in the absence of Defendants' unlawful trade acts and

16  practices.

17         g.   The conduct of Defendants described herein constitutes consumer-oriented

18  deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in

19  consumer injury and broad adverse impact on the public at large, and harmed the public interest of

20  New York State in an honest marketplace in which economic activity is conducted in a competitive

21  manner.

22         h.   Defendants' unlawful conduct had the following effects: (1) HDD suspension

23  assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2)

24  HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

25  levels throughout New York; (3) New York Plaintiffs and members of the New York Damages

26  Class were deprived of free and open competition; and (4) New York Plaintiffs and members of

27  the New York Damages Class paid supra-competitive, artificially inflated prices for HDD

28  suspension assemblies.

1    i.    During the Class Period, Defendants marketed, sold, or distributed HDD suspension
2  assemblies in New York, and Defendants' illegal conduct substantially affected New York
3  commerce and consumers.

4    j.    During the Class Period, each Defendant, directly, or indirectly and through
5  affiliates, dominated and controlled, manufactured, sold and/or distributed HDD suspension
6  assemblies in New York.

7    k.    New York Plaintiffs and members of the New York Damages Class seek all relief
8  available pursuant to N.Y. Gen. Bus. Law § 349(h).

9    279.   **North Carolina Plaintiff** incorporates and realleges each and every allegation set
10  forth in the preceding paragraphs of this Complaint and further alleges as follows:

11    a.    Defendants have engaged in unfair competition or unfair, unconscionable, or
12  deceptive acts or practices in violation of **North Carolina** Gen. Stat. § 75-1.1, *et seq.*

13    b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by
14  affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices
15  at which HDD suspension assemblies were sold, distributed or obtained in North Carolina and took
16  efforts to conceal their agreements from North Carolina Plaintiff and members of the North
17  Carolina Damages Class.

18    c.    Defendants' price-fixing conspiracy could not have succeeded absent deceptive
19  conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation,
20  implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed
21  inherently deceptive and self-concealing actions, of which North Carolina Plaintiff could not
22  possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and
23  false justifications regarding their price increases. Defendants' public statements concerning the
24  price of HDD suspension assemblies created the illusion of competitive pricing controlled by
25  market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.
26  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to
27  divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in
28  secret, confining the plan to a small group of higher-level officials at each company and avoiding

1    the creation of documents which would reveal the antitrust violations.

2           d.    The conduct of Defendants described herein constitutes consumer-oriented

3    deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer

4    injury and broad adverse impact on the public at large, and harmed the public interest of North

5    Carolina consumers in an honest marketplace in which economic activity is conducted in a

6    competitive manner.

7           e.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

8    assemblies price competition was restrained, suppressed, and eliminated throughout North

9    Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at

10   artificially high levels throughout North Carolina; (3) North Carolina Plaintiff and members of the

11   North Carolina Damages Class were deprived of free and open competition; and (4) North Carolina

12   Plaintiff and members of the North Carolina Damages Class paid supra-competitive, artificially

13   inflated prices for HDD suspension assemblies.

14          f.    During the Class Period, Defendants' marketed, sold, or distributed HDD

15   suspension assemblies in North Carolina, and Defendants' illegal conduct substantially affected

16   North Carolina commerce and consumers.

17          g.    During the Class Period, each Defendant, directly, or indirectly and through

18   affiliates, dominated and controlled, manufactured, sold and/or distributed HDD suspension

19   assemblies in North Carolina.

20          h.    North Carolina Plaintiff and members of the North Carolina Damages Class seek

21   actual damages for their injuries caused by these violations in an amount to be determined at trial

22   and are threatened with further injury and seek all relief available under that statute.

23          280.  **North Dakota Plaintiff** incorporates and realleges each and every allegation set

24   forth in the preceding paragraphs of this Complaint and further alleges as follows:

25          a.    Defendants have engaged in unfair competition or unfair, unconscionable, or

26   deceptive acts or practices in violation of the **North Dakota** Unfair Trade Practices Law, N.D.

27   Cent. Code § 51-10, *et seq.*

28          b.    Defendants engaged in the conduct described in this Complaint in connection with

1   the sale of HDD suspension assemblies in trade or commerce in a market that includes North

2   Dakota.

3        c.   Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,

4   and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension

5   assemblies were sold, distributed, or obtained in North Dakota, which conduct constituted a

6   fraudulent or deceptive act or practice and caused substantial injury to North Dakota Plaintiff and

7   members of the North Dakota Damages Class.

8        d.   Defendants concealed, suppressed, and omitted to disclose materials facts to North

9   Dakota Plaintiff and members of the North Dakota Damages Class concerning Defendants'

10  unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed,

11  suppressed, and omitted facts would have been important to North Dakota Plaintiff and members

12  of the North Dakota Damages Class as they related to the cost of HDD suspension assemblies they

13  purchased.

14       e.   Defendants misrepresented the real cause of price increases and/or the absence of

15  price reductions in HDD suspension assemblies by making public statements that were not in

16  accord with the facts.

17       f.   Defendants' statements and conduct concerning the price of HDD suspension

18  assemblies were deceptive as they had the tendency or capacity to mislead North Dakota Plaintiff

19  and members of the North Dakota Damages Class to believe that they were purchasing HDD

20  suspension assemblies at prices established by a free and fair market.

21       g.   Defendants' unlawful conduct had the following effects: (1) HDD suspension

22  assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota;

23  (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially

24  high levels throughout North Dakota; (3) North Dakota Plaintiff and members of the North Dakota

25  Damages Class were deprived of free and open competition; and (4) North Dakota Plaintiff and

26  members of the North Dakota Damages Class paid supra-competitive, artificially inflated prices for

27  HDD suspension assemblies.

28       h.   As a direct and proximate result of the above-described unlawful practices, North

1    Dakota Plaintiff and members of the North Dakota Damages Class suffered ascertainable loss of
2    money or property. Accordingly, North Dakota Plaintiff and members of the North Dakota
3    Damages Class seek all relief available under N.D. Cent. Code § 51-10-06.

4          281.    **Oregon Plaintiff** incorporates and realleges each and every allegation set forth in
5    the preceding paragraphs of this Complaint and further alleges as follows:

6          a.    Defendants have engaged in unfair competition or unfair, unconscionable, or
7    deceptive acts or practices in violation of the **Oregon** Unlawful Trade Practices Act, Or. Rev. Stat.
8    § 646.605, *et seq.*

9          b.    Defendants engaged in the conduct described in this Complaint in connection with
10    the sale of HDD suspension assemblies in trade or commerce in a market that includes Oregon.

11          c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,
12    and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension
13    assemblies were sold, distributed, or obtained in Oregon, which conduct constituted unlawful trade
14    practices by employing unconscionable tactics in connection with the sale of HDD suspension
15    assemblies, and caused substantial injury to Oregon Plaintiff and members of the Oregon Damages
16    Class.

17          d.    Defendants concealed, suppressed, and omitted to disclose material facts to Oregon
18    Plaintiff and members of the Oregon Damages Class concerning Defendants unlawful activities
19    and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and
20    omitted facts would have been important to Oregon Plaintiff and members of the Oregon Damages
21    Class as they related to the cost of HDD suspension assemblies they purchased.

22          e.    Defendants misrepresented the real cause of price increased and/or the absence of
23    price reductions in HDD suspension assemblies by making public statements that were not in
24    accord with the facts.

25          f.    Defendants' statements and conduct concerning the price of HDD suspension
26    assemblies were deceptive as they had the tendency or capacity to mislead Oregon Plaintiff and
27    members of the Oregon Damages Class to believe that they were purchasing HDD suspension
28    assemblies at prices established by a free and fair market.

g.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Oregon Plaintiff and members of the Oregon Damages Class were deprived of free and open competition; and (4) Oregon Plaintiff and members of the Oregon Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

h.      As a direct and proximate result of the above-described unlawful practices, Oregon Plaintiff and members of the Oregon Damages Class suffered ascertainable loss of money or property. Accordingly, Oregon Plaintiff and members of the Oregon Damages Class seek all relief available under Or. Rev. Stat. § 646.638.

282.    **Rhode Island Plaintiff** incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Rhode Island** Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

b.      Members of this Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

c.      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Rhode Island.

d.      Defendants deliberately failed to disclose material facts to Rhode Island Plaintiff and members of the Rhode Island Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' prices for HDD suspension assemblies were competitive and fair.

c.      Defendants' unlawful conduct had the following effects: (1) HDD suspension

assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Rhode Island Plaintiff and members of the Rhode Island Damages Class were deprived of free and open competition; and (4) Rhode Island Plaintiff and members of the Rhode Island Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

f.     As a direct and proximate result of Defendants' violations of law, Rhode Island Plaintiff and members of the Rhode Island Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

g.     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD suspension assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Rhode Island Plaintiff and members of the Rhode Island Damages Class as they related to the cost of HDD suspension assemblies they purchased.

h.     Accordingly, Rhode Island Plaintiff and members of the Rhode Island Damages Class seek all relief available under that statute.

283.     Plaintiff Tracy Nurzynski ("**South Carolina Plaintiff**") incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of **South Carolina** Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

b.     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and

1    stabilized at artificially high levels throughout South Carolina; (3) South Carolina Plaintiff and

2    members of the South Carolina Damages Class were deprived of free and open competition; and

3    (4) South Carolina Plaintiff and members of the South Carolina Damages Class paid supra-

4    competitive, artificially inflated prices for HDD suspension assemblies.

5          c.      During the Class Period, Defendants' illegal conduct had a substantial effect on

6    South Carolina commerce.

7          d.      As a direct and proximate result of Defendants' unlawful conduct, South Carolina

8    Plaintiff and members of the South Carolina Damages Class were injured in their business and

9    property and are threatened with further injury. Accordingly, South Carolina Plaintiff and the

10   members of the South Carolina Damages Class seek all relief available under that statute.

11   284.   **South Dakota Plaintiff** incorporates and realleges each and every allegation set

12   forth in the preceding paragraphs of this Complaint and further alleges as follows:

13         a.      Defendants have engaged in unfair competition or unfair, unconscionable, or

14   deceptive acts or practices in violation of the **South Dakota** Deceptive Trade Practices and

15   Consumer Protection Law, S.D. Codified Laws § 37-24 *et seq.*

16         b.      Defendants engaged in the conduct described in this Complaint in connection with

17   the sale of HDD suspension assemblies in trade or commerce in a market that includes South

18   Dakota.

19         c.      Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,

20   and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension

21   assemblies were sold, distributed, or obtained in South Dakota, which conduct constituted a

22   deceptive act or practice, and caused substantial injury to South Dakota Plaintiff and members of

23   the South Dakota Damages Class.

24         d.      Defendants concealed, suppressed, and omitted to disclose material facts to South

25   Dakota Plaintiff and members of the South Dakota Damages Class concerning Defendants'

26   unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed,

27   suppressed, and omitted facts would have been important to South Dakota Plaintiff and members

28   of the South Dakota Damages Class as they related to the cost of HDD suspension assemblies they

END-USER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

1    purchased.

2           c.     Defendants misrepresented the real cause of price increases and/or the absence of

3    price reductions in HDD suspension assemblies by making public statements that were not in

4    accord with the facts.

5           f.     Defendants' statements and conduct concerning the price of HDD suspension

6    assemblies were deceptive as they had the tendency or capacity to mislead South Dakota Plaintiff

7    and members of the South Dakota Damages Class to believe that they were purchasing HDD

8    suspension assemblies at prices established by a free and fair market.

9           g.     Defendants' unlawful conduct had the following effects: (1) HDD suspension

10   assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota;

11   (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially

12   high levels throughout South Dakota; (3) South Dakota Plaintiff and members of the South Dakota

13   Damages Class were deprived of free and open competition; and (4) South Dakota Plaintiff and

14   members of the South Dakota Damages Class paid supra-competitive, artificially inflated prices for

15   HDD suspension assemblies.

16          h.     As a direct and proximate result of the above-described unlawful practices, South

17   Dakota Plaintiff and members of the South Dakota Damages Class suffered ascertainable loss of

18   money or property. Accordingly, South Dakota Plaintiff and members of the South Dakota

19   Damages Class seek all relief available under S.D. Codified Laws § 37-24-31.

20          285.   **Utah Plaintiffs** incorporate and reallege each and every allegation set forth in the

21   preceding paragraphs of this Complaint and further allege as follows:

22          a.     Defendants have engaged in unfair competition or unfair, unconscionable, or

23   deceptive acts or practices in violation of the **Utah** Consumer Sales Practices Act, Utah Code Ann.

24   § 13-11-1, *et seq.*

25          b.     Defendants engaged in the conduct described in this Complaint in connection with

26   the sale of HDD suspension assemblies in trade or commerce in a market that includes Utah.

27          c.     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control,

28   and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension

assemblies were sold, distributed, or obtained in Utah, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Utah Plaintiffs and members of the Utah Damages Class.

        d.    Defendants concealed, suppressed, and omitted to disclose material facts to Utah Plaintiffs and members of the Utah Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to Utah Plaintiffs and members of the Utah Damages Class as they related to the cost of HDD suspension assemblies they purchased.

        c.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts.

        f.    Defendants' statements and conduct concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead Utah Plaintiffs and members of the Utah Damages Class to believe that they were purchasing HDD suspension assemblies at prices established by a free and fair market.

        g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Utah Plaintiffs and members of the Utah Damages Class were deprived of free and open competition; and (4) Utah Plaintiffs and members of the Utah Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

        h.    As a direct and proximate result of the above-described unlawful practices, Utah Plaintiffs and members of the Utah Damages Class suffered ascertainable loss of money or property. Accordingly, Utah Plaintiffs and members of the Utah Damages Class seek all relief available under Utah Code Ann. § 13-11-19(5) and 13-11-20.

        286.    **Vermont Plaintiff** incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges as follows:

a. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Vermont** Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*:

b. Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Vermont.

c. Defendants deliberately failed to disclose material facts to Vermont Plaintiff and members of the Vermont Damages Class concerning their unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their prices for HDD suspension assemblies were competitive and fair.

d. Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Vermont Plaintiff and members of the Vermont Damages Class were deprived of free and open competition; and (4) Vermont Plaintiff and members of the Vermont Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

e. As a direct and proximate result of Defendants' violations of law, Vermont Plaintiff and members of the Vermont Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f. Defendants' deception, including their omissions concerning the price of HDD suspension assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair

competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Vermont Plaintiff and members of the Vermont Damages Class seek all relief available under that statute.

287.    Plaintiffs Eric Klotz, Lauren Huyck, and Kenny Lai Cheong ("**Virginia Plaintiffs**") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint and further allege as follows:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Virginia** Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

b.    Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Virginia.

c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Virginia Plaintiffs and members of the Virginia Damages Class.

d.    Defendants concealed, suppressed, and omitted to disclose material facts to Virginia Plaintiffs and members of the Virginia Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to Virginia Plaintiffs and members of the Virginia Damages Class as they related to the cost of HDD suspension assemblies they purchased.

c.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead Virginia Plaintiffs and members of the Virginia Damages Class to believe that they were purchasing HDD suspension

1   assemblies at prices established by a free and fair market.

2     g. Defendants' unlawful conduct had the following effects: (1) HDD suspension

3   assemblies price competition was restrained, suppressed, and eliminated throughout Virginia; (2)

4   HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

5   levels throughout Virginia; (3) Virginia Plaintiffs and members of the Virginia Damages Class

6   were deprived of free and open competition; and (4) Virginia Plaintiffs and members of the Virginia

7   Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

8     h. As a direct and proximate result of the above-described unlawful practices, Virginia

9   Plaintiffs and members of the Virginia Damages Class suffered ascertainable loss of money or

10   property. Accordingly, Virginia Plaintiffs and members of the Virginia Damages Class seek all

11   relief available under Va. Code Ann. § 59.1-204(A), *et seq.*

12   **FIFTH CLAIM FOR RELIEF**<br>**Unjust Enrichment**

13   **(on behalf of Plaintiffs and members of the Damages Classes)**

14     288. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

15     289. Plaintiffs bring this claim under the laws of all states listed in the Third and Fourth

16   Claims, *supra.*

17     290. As a result of their unlawful conduct described above, Defendants have and will

18   continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a

19   minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

20     291. Defendants have benefited from their unlawful acts and it would be inequitable for

21   Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments

22   made by Plaintiffs and members of the Damages Classes for HDD suspension assemblies.

23     292. Plaintiffs and members of the Damages Classes are entitled to the amount of

24   Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

25   Plaintiffs and members of the Damages Classes are entitled to the establishment of a constructive

26   trust consisting of all ill-gotten gains from which Plaintiffs and members of the Damages Classes

27   may make claims on a pro rata basis.

28     293. Pursuit of any remedies against the firms from which Plaintiffs and members of the

1  Damages Classes purchased HDDs containing HDD suspension assemblies subject to Defendants'
2  conspiracy would have been futile.

3  ## XI.   PRAYER FOR RELIEF

4  Accordingly, Plaintiffs respectfully request that:

5  294.   The Court determine that this action may be maintained as a class action under Rule
6  23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice
7  of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to
8  each and every member of the Classes;

9  295.   That the unlawful conduct, contract, conspiracy, or combination alleged herein be
10  adjudged and decreed:

11  a.   An unreasonable restraint of trade or commerce in violation of Section 1 of the
12  Sherman Act;

13  b.   A *per se* violation of Section 1 of the Sherman Act;

14  c.   An unlawful combination, trust, agreement, understanding and/or concert of action
15  in violation of the state antitrust and unfair competition and consumer protection laws as set forth
16  herein; and

17  d.   Acts of unjust enrichment by Defendants as set forth herein.

18  296.   Plaintiffs and members of the Nationwide Damages Class and the State Damages
19  Classes recover damages, to the maximum extent allowed under such laws, and that a joint and
20  several judgment in favor of Plaintiffs and members of the Nationwide Damages Class and the
21  State Damages Classes be entered against Defendants in an amount to be trebled to the extent such
22  laws permit;

23  297.   Plaintiffs and members of the Nationwide Damages Class and the State Damages
24  Classes recover damages, to the maximum extent allowed by such laws, in the form of restitution
25  and/or disgorgement of profits unlawfully gained from them;

26  298.   Defendants, their affiliates, successors, transferees, assignees and other officers,
27  directors, partners, agents and employees thereof, and all other persons acting or claiming to act on
28  their behalf or in concert with them, be permanently enjoined and restrained from in any manner

1  continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged

2  herein, or from entering into any other contract, conspiracy, or combination having a similar

3  purpose or effect, and from adopting or following any practice, plan, program, or device having a

4  similar purpose or effect;

5        299.    Plaintiffs and members of the Nationwide Damages Class and the State Damages

6  Classes be awarded restitution, including disgorgement of profits Defendants obtained as a result

7  of their acts of unfair competition and acts of unjust enrichment;

8        300.    Plaintiffs and members of the Classes be awarded pre- and post- judgment interest

9  as provided by law, and that such interest be awarded at the highest legal rate from and after the

10  date of service of this Complaint;

11        301.    Plaintiffs and members of the Classes recover their costs of suit, including reasonable

12  attorneys' fees, as provided by law; and

13        302.    Plaintiffs and members of the Classes have such other and further relief as the case

14  may require and the Court may deem just and proper.

15  **XII.  DEMAND FOR JURY TRIAL**

16        Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all

17  issues so triable.

18

19  Dated: February 19, 2020

     */s/ Aaron M. Sheanin*
     Aaron M. Sheanin (SBN 214472)
20       **ROBINS KAPLAN LLP**
     2440 W. El Camino Real, Suite 100
21       Mountain View, California 94040
     Telephone: (650) 784-4040
     Facsimile: (650) 784-4041
22       asheanin@robinskaplan.com

23       Kellie Lerner (*admitted pro hac vice*)
     Adam C. Mendel (*admitted pro hac vice*)
24       **ROBINS KAPLAN LLP**
     399 Park Avenue, Suite 3600
25       New York, NY 10022
     Telephone: (212) 980-7400
26       Facsimile: (212) 980-7499
     hsalzman@robinskaplan.com
27       klerner@robinskaplan.com
     amendel@robinskaplan.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Christopher T. Micheletti*
Christopher T. Micheletti (SBN 136446)
Judith A. Zahid (SBN 215418)
Qianwei Fu (SBN 242669)
**ZELLE LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zelle.com
jzahid@zelle.com
qfu@zelle.com

James R. Martin (SBN 173329)
Jennifer Duncan Hackett (*admitted pro hac vice*)
**ZELLE LLP**
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Telephone: (202) 899-4100
jmartin@zelle.com
jhackett@zelle.com

*Interim Co-Lead Counsel for End-User Plaintiffs*

Shpetim Ademi (admitted *pro hac vice*)
Mark Eldridge
**ADEMI & O'REILLY, LLP**
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Facsimile:  (414) 482-8001
sademi@ademilaw.com
meldridge@ademilaw.com

James P. Allen, Sr.
**ALLEN BROTHERS, PLLC**
400 Monroe, Suite 620
Detroit, MI 48226
Telephone: (313) 962-7777
jamesallen@allenbrotherspllc.com

Heather M. Sneddon
Jason E. Greene
**ANDERSON & KARRENBERG, P.C.**
50 West Broadway, Suite 700
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile:  (801) 364-7697
hsneddon@aklawfirm.com
jgreene@aklawfirm.com

Jennie Lee Anderson
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com

1   Shawn J. Wanta                          Nyran R. Rasche (admitted *pro hac vice*)
    Frances E. Baillon                      Christopher P.T. Tourek
2   **BAILLON THOME JOZWIAK &**             **CAFFERTY CLOBES MERIWETHER**
    **WANTA LLP**                           **& SPRENGEL LLP**
3   100 South Fifth St., Suite 1200         150 S. Wacker Dr., Suite 3000
    Minneapolis, MN 55402                   Chicago, IL 60606
4   Telephone: (612) 252-3570               Telephone: (312) 782-4880
    Facsimile:  (612) 252-3571              Facsimile:  (312) 782-4485
5   sjwanta@baillonthome.com                nrasche@caffertyclobes.com
    febaillon@baillonthome.com              ctourek@caffertyclobes.com
6
                                            Bryan L. Clobes
7                                           **CAFFERTY CLOBES MERIWETHER**
                                            **& SPRENGEL LLP**
8                                           205 N. Monroe St.
                                            Media, PA 19063
9                                           Telephone: (215) 864-2800
                                            Facsimile:  (215) 864-2810
10                                          bclobes@caffertyclobes.com

11                                          Patrick E. Cafferty
                                            **CAFFERTY CLOBES MERIWETHER**
12                                          **& SPRENGEL LLP**
                                            220 Collingwood, Suite 130
13                                          Ann Arbor, MI 48103
                                            Telephone: (734) 769-2144
14                                          Facsimile:  (215) 864-2810
                                            pcafferty@caffertyclobes.com
15
    M. Stephen Dampier                      Kevin F. Ruf
16  **THE DAMPIER LAW FIRM, P.C.**          **GLANCY PRONGAY & MURRAY LLP**
    55 North Section St.                    1925 Century Park East, Suite 2100
17  Fairhope, AL 36532                      Los Angeles, CA 90067
    Telephone: (251) 929-0900               Telephone: (310) 201-9150
18  Facsimile:  (251) 929-0800              Facsimile:  (310) 201-9160
    stevedampier@dampierlaw.com             kruf@glancylaw.com
19
    Lee Albert (admitted *pro hac vice*)    Brian D. Penny
20  Brian P. Murray                         Paul J. Scarlato
    Gregory Linkh                           **GOLDMAN SCARLATO & PENNY, P.C.**
21  **GLANCY PRONGAY & MURRAY LLP**         161 Washington St., Suite 1025
    230 Park Ave., Suite 530                Conshohocken, PA 19428
22  New York, NY 10169                      Telephone: (484) 342-0700
    Telephone: (212) 682-5340               penny@lawgsp.com
23  Facsimile:  (212) 884-0988              scarlato@lawgsp.com
    bmurray@glancylaw.com
24  lalbert@glancylaw.com
    glinkh@glancylaw.com
25

26

27

28

Catherine K. Smith (admitted *pro hac vice*)
Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth St., Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile:  (612) 339-6622
csmith@gustafsongluek.com
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Matthew K. Handley
**HANDLEY FARAH & ANDERSON PLLC**
777 6th St. NW
Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2411
Facsimile:  (804) 300-1952
mhandley@hfajustice.com

Michael E. Jacobs
**HINKLE SHANOR LLP**
218 Montezuma Ave.
Santa Fe, NM 87501
Telephone: (505) 982-4554
mjacobs@hinklelawfirm.com

Daniel R. Karon
**KARON LLC**
700 W. St. Clair Ave., St. 200
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile:  (216) 241-8175
dkaron@karonllc.com

George F. Farah
**HANDLEY FARAH & ANDERSON PLLC**
81 Prospect St.
Brooklyn, NY 11201
Telephone: (212) 477-8090
Facsimile:  (804) 300-1952
gfarah@hfajustice.com

Richard M. Hagstrom (admitted *pro hac vice*)
Michael R. Cashman
Nathan D. Prosser
Nicholas S. Kuhlmann
**HELLMUTH & JOHNSON PLLC**
8050 West 78th St.
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile:  (952) 941-2337
rhagstrom@hjlawfirm.com
mcashman@hjlawfirm.com
nprosser@hjlawfirm.com
nkuhlmann@hjlawfirm.com

Christopher D. Jennings
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, AR 72201
Telephone: (501) 372-1300
Facsimile:  (888) 505-0909
chris@yourattorney.com

Raymond J. Farrow (admitted *pro hac vice*)
Mark A. Griffin (admitted *pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
rfarrow@kellerrohrback.com
mgriffin@kellerrohrback.com

Sylvie K. Kern
**LAW OFFICES OF SYLVIE KULKIN KERN**
2532 Lake Street
San Francisco, CA 94121
Telephone: (415) 310-6098
kernantitrustglobal@gmail.com

Eli R. Greenstein
Stacey M. Kaplan
Jenny Paquette
**KESSLER TOPAZ MELTZER & CHECK, LLP**
One Sansome St., Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile:  (415) 400-3001
egreenstein@ktmc.com
skaplan@ktmc.com
jpaquette@ktmc.com

Joseph H. Meltzer (admitted *pro hac vice*)
Melissa L. Troutner (admitted *pro hac vice*)
Lisa M. Port (admitted *pro hac vice*)
Natalie Lesser (admitted *pro hac vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile:  (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
llambport@ktmc.com
nlesser@ktmc.com

Robert J. Gralewski, Jr.
Samantha Greenberg
**KIRBY McINERNEY LLP**
600 B Street, Suite 2110
San Diego, CA 92101
Telephone: (619) 784-1442
bgralewski@kmllp.com
sgreenberg@kmllp.com

David P. McLafferty
**MCLAFFERTY LAW FIRM, P.C.**
923 Fayette St.
Conshohocken, PA 19428
Telephone: (610) 940-4000
Facsimile:  (610) 940-4007
dmclafferty@mclaffertylaw.com

Daniel Hume
Sawa Nagano
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Facsimile:  (212) 751-2540
dhume@kmllp.com
snagano@kmllp.com

1   Peggy J. Wedgworth (admitted *pro hac vice*)    E. Powell Miller
    Elizabeth McKenna (*pro hac vice* pending)      Sharon S. Almonrode
2   **MILBERG PHILLIPS GROSSMAN LLP**               **THE MILLER LAW FIRM, P.C.**
    One Pennsylvania Plaza, Suite 1920              950 W. University Dr., Suite 300
3   New York, NY 10119-0165                         Rochester, MI 48307
    Telephone:  (212) 594-5300                      Telephone:  (248) 841-2200
4   Facsimile:  (212) 868-1229                      Facsimile:  (248) 652-2852
    pwedgworth@milberg.com                          epm@millerlawpc.com
5   emckenna@milberg.com                            ssa@millerlawpc.com

6   Adam Moskowitz                                  Lawrence G. Papale
    Howard M. Bushman                               **LAW OFFICES OF LAWRENCE G.**
7   Adam A. Schwartzbaum                            **PAPALE**
    Joseph M. Kaye                                  The Cornerstone Building
8   **THE MOSKOWITZ LAW FIRM, PLLC**                1308 Main Street, Suite 117
    2 Alhambra Plaza, Suite 601                     St. Helena, CA 94574
9   Coral Gables, FL 33134                          Telephone: (707) 963-1704
    Telephone: (305) 740-1423                       lgpapale@papalelaw.com
10  adam@moskowitz-law.com
    howard@moskowitz-law.com
11  adams@moskowitz-law.com
    joseph@moskowitz-law.com
12
    Garrett D. Blanchfield (admitted *pro hac vice*)   Brent J. LaPointe (admitted *pro hac vice*)
13  Mark Reinhardt (admitted *pro hac vice*)           Laurence M. Rosen
    Brant D. Penney (admitted *pro hac vice*)          Phillip Kim
14  **REINHARDT WENDORF &**                            **THE ROSEN LAW FIRM, P.A.**
    **BLANCHFIELD**                                    275 Madison Ave., 34th Floor
15  E-1250 First National Bank Building                New York, NY 10016
    332 Minnesota St.                                  Telephone: (212) 686-1060
16  St. Paul, MN 55101                                 Facsimile:  (212) 202-3827
    Telephone: (651) 287-2100                          blapointe@rosenlegal.com
17  g.blanchfield@rwblawfirm.com                       lrosen@rosenlegal.com
    m.reinhardt@rwblawfirm.com                         pkim@rosenlegal.com
18  b.penney@rwblawfirm.com

19  Ike Diel                                        J. Barton Goplerud
    **SHARP BARTON**                                Brandon M. Bohlman
20  6900 College Blvd, Suite 285                    **SHINDLER, ANDERSON, GOPLERUD &**
    Overland Park, KS 66211                         **WEESE P.C.**
21  Telephone: (913) 661-9931                       5015 Grand Ridge Drive, Suite 100
    ike@sharpbarton.com                             West Des Moines, IA 50265
22                                                  Telephone: (515) 223-4567
                                                    Facsimile:  (515) 223-8887
23                                                  goplerud@sagwlaw.com
                                                    bohlman@sagwlaw.com
24

25

26

27

28

END-USER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| 1 | William G. Caldes (admitted *pro hac vice*) | Timothy D. Battin |
| | Eugene A. Spector | Nathan M. Cihlar |
| 2 | **SPECTOR ROSEMAN & KODROFF PC** | Christopher V. Le |
| | 2001 Market St., Suite 3420 | Shinae Kim-Helms |
| 3 | Philadelphia, PA 19103 | **STRAUS & BOIES, LLP** |
| | Telephone: (215) 496-0300 | 4041 University Dr., Fifth Floor |
| 4 | Facsimile:  (215) 496-6611 | Fairfax, VA 22201 |
| | BCaldes@srkattorneys.com | Telephone: (703) 764-8700 |
| 5 | ESpector@srkattorneys.com | Facsimile:  (703) 764-8704 |
| | | tbattin@straus-boies.com |
| 6 | | ncihlar@straus-boies.com |
| | | cle@straus-boies.com |
| 7 | | skimhelms@straus-boies.com |
| | | |
| 8 | Melissa R. Emert (admitted *pro hac vice*) | Kevin Landau |
| | **STULL, STULL & BRODY** | Miles Greaves |
| 9 | 6 East 45th Street | **TAUS, CEBULASH & LANDAU, LLP** |
| | New York, NY 10017 | 80 Maiden Lane, Suite 1204 |
| 10 | Telephone: (212) 687-7230 | New York, NY 10038 |
| | Facsimile:  (212) 490-2022 | Telephone: (646) 873-7654 |
| 11 | memert@ssbny.com | Facsimile:  (212) 931-0703 |
| | | klandau@tcllaw.com |
| 12 | | mgreaves@tcllaw.com |
| | | |
| 13 | Patrice L. Bishop | |
| | **STULL, STULL & BRODY** | |
| 14 | 9430 West Olympic Blvd., Suite 400 | |
| | Beverly Hills, CA 90212 | |
| 15 | Telephone: (310) 209-2468 | |
| | Facsimile:  (310) 209-2087 | |
| 16 | service@ssbla.com | |
| | | |
| 17 | Vildan Teske | Mario N. Alioto |
| | Marisa C. Katz | Joseph M. Patane |
| 18 | **TESKE KATZ KITZER &** | Lauren C. Capurro |
| | **ROCHEL PLLP** | **TRUMP, ALIOTO, TRUMP &** |
| 19 | 222 South Ninth St., Suite 4050 | **PRESCOTT, LLP** |
| | Minneapolis, MN 55402 | 2280 Union Street |
| 20 | Telephone: (612) 746-1558 | San Francisco, CA 94123 |
| | Facsimile:  (651) 846-5339 | Telephone: (415) 563-7200 |
| 21 | teske@tkkrlaw.com | Facsimile:  (415) 346-0679 |
| | katz@tkkrlaw.com | malioto@tatp.com |
| 22 | | laurenrussell@tatp.com |
| | | |
| 23 | Samuel J. Strauss | John L. Walker |
| | **TURKE & STRAUSS LLP** | Kevin B. Bass |
| 24 | 613 Williamson Street #201 | **WALKER GROUP, P.C.** |
| | Madison, WI 53703 | P.O. Box 22849 |
| 25 | Telephone: (608) 237-1775 | Jackson, MS 39225-2849 |
| | Facsimile:  (608) 509-4423 | Telephone: (601) 948-4589 |
| 26 | sam@turkestrauss.com | Facsimile:  (601) 354-2507 |
| | | jwalker@walkergrouppc.com |
| 27 | | kbass@walkergrouppc.com |
| | | |
| 28 | | |

1  Paul F. Novak (admitted *pro hac vice*)        John H. Weston
   Diana Gjonaj (admitted *pro hac vice*)         Jerome H. Mooney
2  Gregory Stamatopoulos                          G. Randall Garrou
   Tiffany Ellis                                  **WESTON, GARROU & MOONEY**
3  **WEITZ LUXENBERG, P.C.**                      12121 Wilshire Boulevard, Suite 525
   3011 W. Grand Blvd., Suite 2150                Los Angeles, CA 90025
4  Detroit, MI 48202                              Telephone: (310) 442-0072
   Telephone: (313) 800-4170                      Facsimile: (310) 442-0899
5  pnovak@weitzlux.com                            johnhweston@wgdlaw.com
   dgjonaj@weitzlux.com                           jerrym@mooneylaw.com
6  gstamatopoulos@weitzlux.com                    randygarrou@wgdlaw.com
   tellis@weitzlux.com
7
8  *Counsel for End-User Plaintiffs*
9
10
11
12                        **ATTORNEY ATTESTATION**
13       I, Aaron M. Sheanin, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern
14  District of California, that the concurrence to the filing of this document has been obtained from
15  each signatory hereto.
16                                    /s/ Aaron M. Sheanin
17                                    Aaron M. Sheanin
18
19
20
21
22
23
24
25
26
27
28

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on February 19, 2020, I electronically filed the foregoing document

4   entitled **END-USER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** with

5   the Clerk of the Court for the United States District Court, Northern District of California using the

6   CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic

7   filing system.

8                                              */s/ Aaron M. Sheanin*
                                               Aaron M. Sheanin
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28