Victoria Sims
(*pro hac vice*)
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>ALL CASES | **RESELLER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |

Plaintiffs, on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to itself and upon information and belief as to all other matters, based on the investigation of counsel, brings this class action against Defendants Hutchinson Technology Inc., Magnecomp Precision Technology Public Co. Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., SAE Magnetics (H.K.) Ltd., and TDK Corporation for damages, injunctive

relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, consumer protection laws, and the laws of unjust enrichment, demands a trial by jury, and allege as follows:

## NATURE OF THE ACTION

1.     This lawsuit arises out of a global conspiracy among Defendants and their co-conspirators to fix prices of and allocate market shares for hard disk drive ("HDD") suspension assemblies. As Assistant Attorney General of the Department of Justice ("DOJ") Antitrust Division Makan Delrahim described, HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."

2.     HDD suspension assemblies are a component of hard disk drives, which use magnetism to store information electronically. HDDs use recording heads, attached to sliders, to read from and write onto rapidly spinning disks. HDD suspension assemblies hold the recording heads close to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry. HDDs containing HDD suspension assemblies are sold both as stand-alone devices and incorporated into a variety of ubiquitous electronics such as computers, gaming systems, printers, and copy machines.

3.     At all relevant times, Defendants manufactured and sold HDD suspension assemblies throughout and into the United States. As of 2016,

CLASS ACTION COMPLAINT

Defendants TDK and NHK, along with their subsidiaries, were the leading manufacturers of HDD suspension assemblies, with a combined worldwide market share of approximately 90%.

4.  Starting in approximately 2003, Defendants and their co-conspirators contracted, combined, or conspired to fix, raise, maintain, and/or stabilize prices of and allocate market shares for HDD suspension assemblies in the United States.

5.  Defendants fixed prices and coordinated bids to two U.S. companies, Western Digital, headquartered in San Jose, California, and Seagate, which has its operational headquarters in Cupertino, California.

6.  United States and foreign governments have investigated potential price-fixing of HDD suspension assemblies; and in 2019, Defendant NHK (as defined below) admitted guilt. On July 29, 2019, the DOJ announced that Defendant NHK agreed to plead guilty and pay a $28.5 million fine for its role in a conspiracy to suppress and eliminate competition by fixing prices of HDD suspension assemblies sold in the United States and elsewhere. On February 13, 2020, the Justice Department indicted two NHK executives, Hitoshi Hashimoto and Hiroyuki Tamura, for their participation in the HDD Suspension Assemblies conspiracy.

7.  Previously, in July 2016, the Japanese Fair Trade Commission ("JFTC") raided both Defendants TDK (as defined below) and NHK (or certain

of their subsidiaries) based on suspicion that the two companies fixed prices for HDD suspension components. Ultimately, on February 9, 2018, the JFTC issued a cease and desist order to both Defendants TDK and NHK and found that they substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices.

8.     Concurrently with the JFTC investigation, the DOJ opened an investigation regarding HDD suspension assemblies. Pursuant to that investigation, on July 26, 2016 Defendant Hutchinson Technology, Inc. received a letter from the DOJ requesting documents relating to the investigation.

9.     Subsequently, in April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies. The international cartel allegedly shared information and allocated customers to maintain artificially high prices on HDD suspension assemblies used in hard disks.

10.     The Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition for HDD suspension assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD suspension assemblies sold in the United States and elsewhere. The combination and conspiracy engaged in by the Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade

CLASS ACTION COMPLAINT

and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment.

11.    As a direct and proximate result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid more during the Class Period for HDD suspension assemblies than they otherwise would have paid in a competitive market, and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

12.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state

law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

14.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

15.     This Court has *in personam* jurisdiction over Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*:

(a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD suspension assemblies throughout the United States as a whole, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in,

located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

16.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

17.     The activities of Defendants and their co-conspirators were within the flow of, and were intended to and did have a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

18.     HDD suspension assemblies manufactured abroad by Defendants and sold for use in products in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any HDD suspension assemblies are purchased in the United States, and such HDD suspension assemblies do not constitute import commerce, Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United

States commerce described herein, proximately caused antitrust injury in the United States.

19.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for HDD suspension assemblies, which conspiracy unreasonably restrained trade and adversely affected the market for HDD suspension assemblies.

20.     NHK's Plea Agreement states that the NHK Defendants and their co-conspirators "manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States. During the relevant period, [NHK Spring] and its co-conspirators sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into products—namely, hard disk drives—that were sold in, or for delivery to, the United States. During the relevant period, HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies traveled in, and substantially affected, interstate and import trade and commerce. During the relevant period, the conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce,

including in HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies." The plea further states that some of Defendants' "conspiratorial meetings and discussions" "took place in the United States" and that [c]ommunications made in furtherance of the conspiracy and memorializing the conspiratorial meetings and discussions were transmitted through and stored on servers located" in the U.S.

21.    Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased a product in the United States which included an HDD suspension assembly.

## THE PARTIES

22.    Plaintiff Now Micro, Inc. is incorporated in and has its principal place of business in Minnesota. During the Class Period, Plaintiff Now Micro purchased at least one HDD suspension assembly indirectly from at least one Defendant, in Minnesota, and was injured in its business or property as a result of Defendants' unlawful conduct alleged herein.

23.    Plaintiff Voyager Technology Solutions, LLC is incorporated in and has its principal place of business in Southfield, Michigan. During the Class Period, Plaintiff Voyager Technology Solutions, LLC purchased at least one HDD suspension assembly indirectly from at least one Defendant, in Michigan, and was injured in its business or property as a result of Defendants' unlawful conduct alleged herein.

24.     Plaintiff  IT Worx, Inc. is  a North Carolina Corporation, located in Greensboro, North Carolina. During the Class Period, Plaintiff IT Worx purchased at least one HDD suspension assembly indirectly from at least one Defendant, in North Carolina and was injured in its business or property as a result of Defendants' unlawful conduct alleged herein.

25.     Plaintiff Willow Bay Computer Solutions LLC is a New York company, located in Jamestown, New York. During the Class Period, Plaintiff Willow Bay purchased at least one HDD suspension assembly indirectly from at least one Defendant, in New York, and was injured in its business or property as a result of Defendants' unlawful conduct alleged herein.

26.     Plaintiff Michael Medeiros is a resident of and does business in Atwater, California. During the Class Period, Plaintiff Medeiros purchased at least one HDD suspension assembly indirectly from at least one Defendant, in California, and was injured in his business or property as a result of Defendants' unlawful conduct alleged herein.

**TDK Defendants**

27.   Defendant TDK Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. TDK Corporation – directly and/or through its affiliates, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

28.   Defendant Magnecomp Precision Technology Public Co. Ltd. is a Thai corporation with its principal place of business in Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Magnecomp Precision – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

29.   Defendant Magnecomp Corporation is a U.S. corporation with its principal place of business in Murrieta, California. Defendant Magnecomp Corporation is the U.S. location and, according to the Magnecomp website, the "technology center" of Magnecomp, consistent with Magnecomp's stated policy of being "strategically positioned close to its customers' design and manufacturing centers,"[1] including in the U.S. Magnecomp Corporation is a subsidiary of Magnecomp Precision Technology and TDK. Defendant Magnecomp Corporation – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period. Magnecomp Precision and Magnecomp Corporation will collectively be referred to as "Defendant Magnecomp."

30.   Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with its principal place of business in Hong Kong, China. Defendant SAE Magnetics

---

[1] https://www.magnecomp.tdk.com/Home/About

– directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period. At times, TDK dealt with certain hard drive manufacturers, such as Toshiba and Western Digital through SAE. NHK Defendants also sold HDD Suspension Assemblies to SAE as part of their contracts with certain hard drive manufacturers.

31.   Defendant Hutchinson Technology Inc. is a Minnesota corporation with its principal place of business in Hutchinson, Minnesota. TDK Corporation acquired Hutchinson Technology Inc. on October 6, 2016. It is an affiliate of and wholly controlled by TDK Corporation. Hutchinson Technology Inc. – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

**NHK Defendants**

32.   Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. NHK Spring Co., Ltd. – directly and/or through its affiliates, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

33.   Defendant NHK International Corporation is a Michigan corporation with its principal place of business in Novi, Michigan. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

34.   Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal place of business in Samutprakarn, Thailand. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

35.   Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") is a Chinese corporation with its principal place of business in Guangdong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant Nat Dong Guan directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

36.   Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a Chinese corporation with its principal place of business in Hong Kong, China. It is

CLASS ACTION COMPLAINT

an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant NAT H.K. directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period. Defendants NAT H.K. and NAT Dong Guan will be collectively referred to as NAT. From 2004 until 2015, NAT was a joint venture between Defendants SAE and NHK, that manufactured and sold HDD Suspension Assemblies. In 2015, NHK purchased acquired all of SAE's shares and NAT became a wholly-owned subsidiary of NHK. NAT served to facilitate the collusion between TDK and NHK, including as a conduit for information and as a continuous opportunity to engage in competitor contacts.

## **AGENTS AND CO-CONSPIRATORS**

37.  The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' business or affairs.

38.  Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as defendants at a later date.

39.   Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

40.   Each Defendant or co-conspirator acted as the principal, agent, or joint venture of, or for, other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged by Plaintiffs. Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for HDD suspension assemblies made by its parent company.

41.   Individuals alleged to have engaged in conspiratorial conduct are alleged to have done so on behalf of all members of their corporate family, i.e. the TDK Defendants or the NHK Defendants. Individuals within the companies and customers did not know or did not distinguish between the corporate affiliations of different individuals. TDK and NHK Defendants each affirmatively represent themselves as one corporate global family, rather than separate subsidiaries and parents. For instance, TDK's website states "As a global company, ensuring business moves forward smoothly requires a governance structure that is also compatible with the standards of countries in Europe and the Americas."

**INTERSTATE TRADE AND COMMERCE**

42.  The conduct of Defendants and their co-conspirators has taken place in, and affected the continuous flow of interstate trade and commerce of the United States in that, *inter alia*:

a.    During the Class Period, Defendants and their co-conspirators sold and distributed HDD suspension assemblies throughout the United States;

b.    Defendants and their co-conspirators have each used instrumentalities of interstate commerce to manufacture, sell, distribute, and/or market HDD suspension assemblies throughout the United States;

c.    Defendants and their co-conspirators manufactured, sold, and shipped substantial quantities of HDD suspension assemblies in a continuous and uninterrupted flow of interstate commerce to customers; and

d.    The conspiracy alleged herein affected billions of dollars of commerce. During the Class Period, Defendants collectively controlled approximately 97% of the global HDD suspension parts market. Plaintiffs collectively purchased thousands of HDD Suspension Assemblies during the Class Period. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiffs and other entities who are themselves engaged in commerce.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL ALLEGATIONS

**A.    The HDD Suspension Assembly Industry.**

43.    HDD suspension assemblies are a critical component of HDDs. HDDs use magnetism to write, retrieve and store vast amounts of information electronically. HDDs are installed in a variety of electronic products including computers, copy machines, and gaming systems.

44.    HDDs are comprised of, among other things, spinning magnetic disks and magnetic heads that fly over the disks, reading and writing the information contained on the disks (*see* Figure 1). HDD suspension assemblies hold the magnetic heads in position over the disks. Thus, HDD suspension assemblies are essential to the functioning of HDDs.

(Figure 1)



//

CLASS ACTION COMPLAINT

1  //
2  //
3  //
4  //
5  //
6  //
7  //
8  //
9  //
10  //
11  //
12  //
13  (Figure 2: HDD Suspension Assembly)



45.   The Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension

assemblies into HDDs. Businesses purchase HDDs as either stand-alone products, or as part of larger systems, such as computers from manufacturers of hard drives and finished products (i.e. Dell, Lenovo) or distributors. Sometimes, HDD manufacturers purchase suspension assemblies outside the United States through their foreign subsidiaries or affiliates and incorporate suspension assemblies into HDDs for import into the United States. At times, manufacturers of products containing HDDs purchase HDDs through their foreign subsidiaries or affiliates and incorporate those HDDs into other products, outside the United States. Those manufacturers then sell their products, i.e. computers, in the U.S. and outside the U.S., including to foreign subsidiaries or affiliates, who at times sell those products to the U.S. entities of those manufacturers.

46.   Sometimes businesses purchase HDDs or products containing them, that are shipped from abroad and contain HDD Suspension Assemblies sold abroad; and whose first sale in the U.S. is to said businesses.

47.   In 2018, global unit shipments of HDDs were nearly 400 million.

**B.    NHK Defendants Plead Guilty and Agree to Pay a Criminal Fine for Conspiring to Fix Prices and Allocate Market Shares for HDD Suspension Assemblies.**

48.   On July 29, 2019, Defendant NHK Spring Co., Ltd., on behalf of itself and its "subsidiaries engaged in the production or sale of HDD Suspension Assemblies, including but not limited to NHK International Corporation" agreed to plead guilty and pay a $28.5 million fine for its role in the global conspiracy

CLASS ACTION COMPLAINT

alleged herein. According to the criminal Information, NHK Spring Co., Ltd. and its subsidiaries engaged in a conspiracy consisting of a continuing agreement, understanding, and concert of action among Defendant NHK and its co-conspirators to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere.[17]

49.   According to the Information, Defendant NHK and its co- conspirators effectuated their conspiracy by, among other things:

a.   engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies;

b.   exchanging HDD suspension assemblies pricing information;

c.   relying on their agreements not to compete and using the exchange pricing information to inform their negotiations with U.S. and foreign customers;

d.   selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices;

e.   accepting payment for HDD suspension assemblies sold in, or for delivery to the United States and elsewhere at collusive and noncompetitive prices.

CLASS ACTION COMPLAINT

50.     NHK's plea agreement states that the NHK Defendants and

their co-conspirators including high-level personnel, participated in a conspiracy

"the primary purpose of which was to fix the prices of HDD suspension

assemblies sold in the United States and elsewhere." The agreement states that

they "engaged in discussions and attended meetings with each other, and that

during these discussions, they "reached agreements to refrain from competing on

prices for, fix the prices of, and allocate their respective market shares for, HDD

suspension assemblies to be sold in the United States and elsewhere." It further

states that to effectuate these agreements, employees and officers "exchanged

HDD suspension assemblies pricing information, including anticipated pricing

quotes, in the United States and elsewhere" and they relied on their agreements

not to compete and used the exchanged pricing information to inform their

negotiations with U.S. and foreign customers that purchased HDD suspension

assemblies and produced hard disk drives for sale, or delivery to, the United

States and elsewhere."

51.     As part of their plea agreement, the NHK Defendants, including

NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand)

Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and  NAT Peripheral (H.K.)

Co., Ltd. are required to provide cooperation in the United States, including

producing "documents, witnesses, and testimony in the United States, in

exchange for limitations on further criminal prosecutions of those companies."

Case No. 19-md-02918-MMC

52.     The competitor with whom NHK's Criminal Information and Guilty Plea describe it conspiring is the TDK defendant family. The TDK Defendants, including TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) LTD.  and Hutchinson Technology, Inc. are applicants in the DOJ's Leniency Program, under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Public Law 108-237. An applicant may participate in the program by advising the Department of Justice of, and admitting, its and its co-conspirators' criminal conduct, and providing satisfactory and timely cooperation to civil plaintiffs.

**C.     Indictments of Hashimoto and Tamura, of NHK**

53.     On February 13, 2020, the DOJ indicted senior executives, Hitoshi Hashimoto and Hiroyuki Tamura, from NHK. The indictment states that they engaged in the following conduct, in, among other places, the Northern District of California:

a.     attended meetings and engaged in other communications concerning their sales of, pricing of, and market shares for HDD suspension assemblies to be sold in the United States and elsewhere;

b.     agreed during those meetings and communications to refrain from competing on prices for and stabilize, maintain, and fix the prices of HDD suspension assemblies to be sold in the United States and elsewhere;

c.     agreed during those meetings and communications to allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere;

CLASS ACTION COMPLAINT

d.    discussed and exchanged HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

e.    communicated with sales employees in the United States and elsewhere and directed those employees to exchange HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

f.    relied on their agreements not to compete and used the exchanged pricing information to inform their negotiations with the U.S. and foreign customers that purchased HDD suspension assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere;

g.    sold HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

h.    accepted payment for HDD suspension assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.

### D.    Additional Government Investigations

54.    In July 2016, the Japanese Fair Trade Commission ("JFTC") raided both Defendants TDK and NHK based on suspicion that the two companies and or their subsidiaries fixed prices for HDD suspension components. Ultimately, on February 9, 2018, the JFTC issued a cease and desist order to both Defendants TDK and NHK and found that they substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices.

55.    According to the JFTC, NHK Spring and NAT shared pricing and market share information with TDK and SAE. The JFTC also found that NHK and NAT agreed with TDK, SAE and Magnecomp to maintain sales prices for

Hard Disk Drive Suspension Assemblies. TDK told MPT and SAE to coordinate pricing with NAT and NHK. The companies coordinated bids to hard drive manufacturers, and exchanged pricing information, as well as information about demand. The companies coordinated on market share, profit, and price quotes and worked together to maintain prices for HDD Suspension Assemblies. As part of the collusion, SAE invested in NAT, the joint venture between NHK and SAE, and purchased HDD Suspension Assemblies from NHK.

56. Concurrently with the JFTC investigation, the DOJ opened an investigation regarding HDD suspension assemblies. On July 26, 2016, Defendant Hutchinson Technology Inc. received a letter from the DOJ requesting documents relating to the investigation and expressed its intent to cooperate. At the time Hutchinson received the DOJ's letter, TDK Corporation's pending acquisition of Hutchinson Technology Inc. was under review by the U.S. Federal Trade Commission.

57. Subsequently, in April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies. The international cartel allegedly shared information and allocated customers to maintain artificially high prices on HDD suspension assemblies used in hard disks.

CLASS ACTION COMPLAINT

58.  The technical note published by the Brazilian antitrust authorities states that "Such anti-competitive conduct would have occurred, at least, since 2003, and would have lasted until at least 2016. In total, 5 (five) companies and their subsidiaries present some degree of participation, in addition to dozens of individuals employees or former employees of the companies." The note listed TDK, Hutchinson, SAE, NHK Spring, and Magnecomp Precision, as the companies being investigated and 38 individuals whose involvement it was investigating, including now-indicted executives Hiroyuki Tamura and Hitoshi Hashimoto, from NHK Spring, Skipp Harvey from NHK International, the U.S. NHK entity, Todd Drahos, Ken Martini and Rick McHone, from Magnecomp Corporation, Arun Dhawan, from Magnecomp Precision Technology and Keith Johnson from Hutchinson Technology.

59.  The Note states that "[t]here are strong indications of the practice of anticompetitive conduct consistent in (i) combination of prices in response to requests for quotations from customers ; (ii) market division and (iii) sharing of commercial information and competitively sensitive. The sharing of business information and competitively sensitive information included, but was not limited to, information on (iii.1) current, potential and proposed prices, for suspension assemblies, (iii.2) tenders private customers, (iii.3) allocation of customer volumes, (iii.4) productive capacity each company; and (iii.5) user fees

for each company, with the objective of stabilize prices and reduce competition in sales of suspension assemblies."

60.   The Note states that "[t]here is strong evidence that this exchange of information commercially sensitive areas enabled the establishment of a long-term strategic relationship between competitors, based on the elimination or smoothing of the price war or the price competition, which meant avoiding aggressive price competition in private bids and quotations, and the division of the world suspension market assemblies."

## E.   The Characteristics of the HDD Suspension Assembly Market Render the Conspiracy More Plausible.

61.   Like other electronic product markets that have been the subject of antitrust investigations (cathode ray tubes, lithium ion batteries, and capacitors), the HDD suspension assemblies market has characteristics that make it susceptible to collusion, including high barriers to entry and high market concentration. Together, these characteristics increase the probability and feasibility of anticompetitive conduct in the HDD suspension assemblies market.

### 1. The HDD Suspension Assemblies Market Has High Barriers to Entry

62.   A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants to the market seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are much less likely to enter the

CLASS ACTION COMPLAINT

market. Thus, barriers to entry help facilitate the formation and maintenance of cartels.

63.   This is particularly true here where manufacturing HDD suspension assemblies requires the ability to produce precision assemblies in sufficient volume. As Defendant Hutchinson Technology Inc. conceded, "We believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."

64.   Moreover, increased demand for other types of data storage technology, such as those that utilize flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which caters to hard disk drives.

65.   In addition, heavy capital investments are required in order to enter the market. For example, HTI noted that it spent nearly $50 million between 2012 and 2014 on research and development.

66.   Defendants also own the majority of the patents for HDD suspension assemblies. These patents place a significant and costly burden on potential new entrants, which must avoid infringing on the patents when entering the market with a new product. In connection with the conspiracy, Defendants discussed using their joint intellectual property to preclude entry by at least one competitor.

**2. The HDD suspension assemblies Market and the Hard Drive Market are Highly Concentrated.**

67.  When a price-fixing conspiracy is successful, the consumer has no choice but to accept the higher prices or lower quality goods. The more concentrated the market, the easier it is for the market participants to come together to set prices.

68.  A process of market consolidation of the HDD suspension assembly market began in the 1990s. By the mid-1990s, the market had already become concentrated with Hutchinson becoming the main producer of HDD suspension assemblies, holding at least a 65% market share and generating approximately $450 million per year in revenue.

69.  Over the past two decades, this trend has been further aggravated by two factors: (a) further consolidation among HDD suspension assembly manufacturers, and (b) the vertical integration of companies like TDK that formerly depended on independent component suppliers in their manufacturing of HDD suspension assemblies.

70.  In recent years, market consolidation has continued to the point where globally, there are now only two major suppliers of HDD suspension assemblies: TDK and NHK Spring.

71.  Defendants knew that this consolidation of the HDD suspension assembly market would enable them to increase prices rather than expand market

CLASS ACTION COMPLAINT

share. As one senior executive of MPT explained: "Once we are down to 2 suppliers, then we need to concentrate on margin more and less on volume."

72.  In 2004, HTI held a 63% share of the HDD suspension assembly market and MPT held 18%.

73.  In 2005, three companies—HTI, NHK Spring, and MPT—collectively controlled approximately 97% of the global HDD suspension assembly market. HTI held a 55% market share, NHK Spring held a 22% market share, and MPT, created through the merger 2005 merger between the Data Storage Division of Magnecomp International Ltd. and KR Precision Public Company,  held a 20% market share.

74.  In 2007, TDK announced its acquisition of a majority share of MPT. TDK acquired a formerly independent HDD suspension assembly manufacturer in 2007 and had fully integrated that acquisition by 2009.

75.  By 2012, TDK, NHK Spring, and HTI collectively controlled 96% of the global market.

76.  In November 2015, TDK announced its acquisition of Hutchinson. The acquisition was completed in October 2016. Following the acquisition, TDK's market share grew to 55-60%, and TDK noted that NHK Spring was its only competitor in the global market for HDD suspension assemblies.  Prior to the acquisition, Hutchison had gone through its own process of consolidation and was a principal supplier of HDD suspension assemblies to Western Digital

(headquartered in San Jose, CA); Seagate (Cupertino, CA); and SAE/TDK (Tokyo, Japan). That Hutchinson business is now contained within the TDK family.

77.   In the 1980s, the HDD market was quite competitive with more than 20 suppliers. But by 2005, there were only five major producers left in the market: Western Digital Corporation ("Western Digital"), Seagate Technology, LLC ("Seagate"), Toshiba Electronics & Device Storage Corporation ("Toshiba"), Hitachi Global Storage Technologies ("Hitachi"), and Samsung Electronics Co. ("Samsung").   By 2012, that number dwindled to three, as Seagate acquired Samsung's HDD business in 2011 and Western Digital acquired Hitachi's HDD business in 2012. As of 2017, estimated market shares for Seagate, Western Digital, and Toshiba were approximately 40%, 37%, and 23% respectively. The existence of a small number of large buyers made it easier for Defendants to exchange pricing information and otherwise create, facilitate, and enforce market-allocation agreements.

78.   The limited number of customers also facilitated Defendants' allocation agreements. As an example, in or about April 2008, MPT held strategy meetings with SAE to allocate customers. MPT agreed not to quote pricing for a particular HDD suspension assembly project directly to Samsung or Western Digital, instead allowing SAE to quote pricing for head gimbal assemblies that incorporated MPT's HDD suspension assemblies to those customers.

1
2
3

**3. Homogeneity of Product and Inelasticity of Demand**

4

79.     HDD suspension assemblies are commodity-like products that are

5

interchangeable at the design stage among products of the same type and across

6
7

manufacturers. One Defendant's product for a particular application is

8

substitutable for another Defendant's during the design stage. Forming and

9

sustaining a cartel when the product in question is commodity-like makes it easier

10
11

to agree on prices to charge and to monitor those prices once an agreement is

12

formed.

13

80.     "Elasticity" describes the sensitivity of supply and demand to

14
15

changes in one or the other such that demand is "inelastic" if an increase in the

16

price of a product results in only a small decline in the quantity sold of that

17

product, if any, such that customers have nowhere to turn for alternative, cheaper

18
19

products of similar quality and so continue to purchase despite a price increase.

20

81.     For a cartel to profit from raising prices above competitive levels,

21

demand must be relatively inelastic at competitive prices. Otherwise, increased

22
23

prices would result in declining sales, revenues and profits, as customers

24

purchased substitute products or declined to buy altogether. Inelastic demand is a

25

market characteristic that facilitates collusion, allowing producers to raise their

26
27

prices without triggering customer substitution and lost sales revenue.

28

82.     Demand for HDD suspension assemblies is highly inelastic because

there are no close substitutes for these products. In addition, customers must purchase HDD suspension assemblies as an essential part of an HDD, or a product containing an HDD, even if the prices are at supra-competitive level.

**C. Opportunities to Collude**

83.   Defendants had multiple opportunities to collude during the conspiracy period.

84.   Defendants SAE and NHK Spring were involved in a joint venture, NAT.

85.   Defendants often cross-licensed intellectual property with one another and had to meet to negotiate such cross-licensing agreements.

86.   Defendants belong to the same trade associations, such as IDEMA, the International Disk Drive Equipment & Materials Association, to which NHK Spring, SAE, and TDK all belong, and which has locations in the U.S. and in Japan.

## DEFENDANTS' CONSPIRATORIAL CONDUCT

87.     Beginning in 2003, Senior Executive A of Defendant Magnecomp, now owned by and part of TDK, began communicating regularly with indicted executive Hiroyuki Tamura, a Suspension Sales Deputy Manager at NHK.

88.     Employees at the Thai, Hong Kong and U.S. offices of Magnecomp Precision and Magnecomp Corporation participated in the collusion. For

instance, Magnecomp's Senior Executive A, in Thailand, and Customer Support and Sales Representative Arun Dhawan, in Hong Kong, as well as Rick McHone, VP of MTP's Sales in the U.S., were involved in communications with various offices of NHK. NHK's U.S., Thai, Hong Kong and Japanese offices were involved in the collusion as well. Specifically, Magnecomp Defendants' employees and executives communicated with Skipp Harvey at NHK International, which has offices in Santa Clara, California; indicted Executive Hiroyuki Tamura and Executive Vice President B, at NHK Spring, in Japan; and Sales Representative Masahiro Futakami, who handled sales at NHK Spring Thailand.  The conspirators communicated regarding pricing information, bids, shipments, capacity, market and customer allocation.

89.     The conspirators met in a variety of locations and a variety of offices of both Defendant groups. For instance, in April 2004, Senior Executive A and Sales Representative Arun Dhawan, from Defendant Magnecomp met with Tamura, and  Executive Vice President B, from Defendant NHK at the Nanakamado restaurant at the Shinagawa Prince Hotel.

90.     As a further example, in November 2007 Senior Executive A and Sales Representative Arun Dhawan, from Defendant Magnecomp, had dinner in Bangkok with NHK executives and employees Tamura, Senior Executive C, and Sales Representative Masahiro Futakami, who handled sales for NHK in Thailand, to discuss customer issues and commercially sensitive information

1    regarding forecasting, capacity and shipments.

2
3        91.    Executives from SAE were also involved in collusive

4    communications with NHK. For instance, an SAE executive spoke with indicted

5    NHK Executive Hashimoto, among others. For example, in March 2009 an SAE

6
7    employee reported to McHone, in the US, and to Customer Support and Sales

8    Representative Arun Dhawan, in Hong Kong, that he had spoken with

9    Hashimoto, of NHK, about Hitachi Global Storage Technologies business and

10
11   certain costs for Hitachi's projects involve HDD Suspension Assemblies.

12       92.    In December 2010, Senior Executive A stated that NHK had agreed

13   that, with respect to pricing for customers Samsung and Toshiba, "they will

14
15   discuss with and follow SAE."

16       93.    Collusive agreements, prices and other commercially sensitive

17   information exchanged between the conspirators was communicated back-and-

18
19   forth between the U.S. and foreign entities in each Defendant family and

20   between U.S. and foreign employees. Employees also often moved between

21   different jurisdictions and different offices.

22
23       94.    In January 2011, McHone, of Magnecomp emailed his supervisor to

24   advise that Harvey, of NHK, had provided him with Defendant Hutchinson's

25   offer to Toshiba, and that SAE was to meet with NHK to discuss the matter.

26
27       95.    Ken Martini, Hank Pselos and Todd Drahos, of Defendant

28   Magnecomp Corporation, in the U.S., also contacts with Skipp Harvey, of NHK

International, in the US.

96.     Senior Executive Ken Martini exchanged pricing information and discussed shipments and volumes for Western Digital with Skipp Harvey. In May 2008, Martini passed on to his superiors Hutchinson Technology's prices for HDD Suspension Assemblies, that he had obtained from NHK.

97.     Senior Executive Todd Drahos discussed information about prices, capacity, inputs for certain Seagate programs with Skipp Harvey.

98.     Senior Executive Todd Drahos was a former employee of Defendant Hutchinson, now part of TDK, and also discussed Seagate programs with employees at Hutchinson. For example, in December 2006, Senior Executive Drahos advised McHone, regarding Seagate's Argon and Cadmium programs that "I was told by HTI that they do not have any Argon pricing as low as $.65" and "I was told by the same source that their pricing on Cadmium is roughly $.75 to $.65 over 8 quarters . . . ." He also reported that "NHK was told by Eric [from Seagate] that they were $0.10 to *[sic]* high on Cadmium [.] NHK is $.84 to $.72 over 8 quarters."

99.     Drahos also maintained his contacts at Defendant Hutchinson and, in addition to facilitating exchanges of information between Hutchinson and Magnecomp, he also connected employees at the two companies. For instance, in early 2002, Drahos introduced Keith Johnson, currently a director at Hutchinson, to Skipp Harvey, of NHK, at a lunch in San Jose, organized by Drahos. Johnson

invited Harvey to join him at a hunting lodge in South Dakota. The two met at the hunting lodge from 2003 until at least 2012 and again in 2015, often bringing friends and associates. Johnson and Harvey also had discussions, at other times, regarding HDD Suspension Assemblies.

100.   TDK executives also attended meetings with NHK executives. For instance, in August 2007, NHK and TDK convened a meeting attended on NHK's behalf, by Tamura and at least two other NHK employees and senior executives, as well as two executives, including a senior executive from TDK. The meeting took place at NHK's headquarters in Yokohama, Japan and was preceded by lunch. TDK and NHK agreed to continue their positive relationship and avoid a price war. The attendees also discussed allocation of market share and customers.

101.   Executives and sales people from TDK and NHK continued meeting throughout the conspiracy period to discuss their long-term market allocation agreement, as well as customer allocation and coordinating on bids and pricing. These meetings occurred in the contexts of farewell and greetings meetings, New Year's celebrations, and other meetings that occurred on a regular basis.

102.   There were also quarterly meetings and dinners. The attendees discussed specific RFQs, shipments, capacity, utilization, customers, future expansion plans and future collaboration on components.

103.   In the U.S. McHone also had frequent contacts with Harvey. The two

CLASS ACTION COMPLAINT

spoke on the phone at least once a month, for at least eight years, more frequently when RFQs were issued, met for lunch and exchanged texts regarding pricing, bids, capacity and other commercially sensitive information.

104.   They both understood they needed to avoid letting prices get too low too quickly and sometimes traded market share for prices.

### CLASS ACTION ALLEGATIONS

105.   Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons or entities who, during the period from and including 2003 through such time as the anticompetitive effects of Defendants' conduct ceased, purchased a product for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants or indirectly purchased an HDD suspension assembly, for resale, that was manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

106.   Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages on behalf of the following class (the "Nationwide Damages Class"):

> All persons or entities who, during the period from and including 2003 through such time as the anticompetitive effects of Defendants' conduct ceased, during the Class Period, 1) directly purchased a product for resale

CLASS ACTION COMPLAINT

which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants, in the United States, from a seller located outside the United States, or a seller in the United States that acquired the product outside the United States from that seller's foreign affiliate;

Or 2) directly purchased an HDD suspension assembly, for resale, that was manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants, in the United States, from a seller located outside the United States, or a seller in the United States that acquired the HDD suspension assembly outside the United States from that seller's foreign affiliate.

107.   Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "State Damages Class"):

All persons or entities, in the Indirect Purchaser States[2] who, during the period from and including 2003 through such time as the anticompetitive effects of Defendants' conduct ceased, purchased a product for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants or indirectly purchased an HDD suspension assembly, for resale, that was manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

108.   The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Defendants, their parent

---

[2] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

CLASS ACTION COMPLAINT

companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, the Court and persons who purchased HDD suspension assemblies directly or for not resale.

109.   While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

110.   Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)   Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD suspension assemblies sold in the United States;

(b)   The identity of the participants of the alleged conspiracy;

(c)   The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)      Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)      Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f)      Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)      Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)      The effect of the alleged conspiracy on the prices of HDD suspension assemblies sold in the United States during the Class Period;

(i)      Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)      Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members

CLASS ACTION COMPLAINT

of the Classes;

(k)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     The appropriate class-wide measure of damages for the Damages

Class.

111.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for HDD suspension assemblies purchased indirectly from the Defendants and/or their co-conspirators.

112.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

113.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

114.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will

CLASS ACTION COMPLAINT

permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

115.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

**PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

116.   Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to HDD suspension assemblies;

(b)     The prices of HDD suspension assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)     Plaintiffs and the putative class members, who purchased HDD suspension assemblies have been deprived of free and open competition; and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d)  Plaintiffs and the putative class members, who purchased HDD suspension assemblies paid artificially inflated prices for HDD suspension assemblies.

117.  During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for HDD suspension assemblies. HDD manufacturers and other purchasers of HDD suspension assemblies passed on inflated prices to Plaintiffs and the members of the Classes. Those overcharges have unjustly enriched Defendants.

118.  The markets for HDDs and HDD suspension assemblies are inextricably linked and intertwined because the market for HDD suspension assemblies exists to serve the HDD market. Without the HDDs, the HDD suspension assemblies have little to no value because they have no independent utility.

119.  HDD suspension assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD. As a result, HDD suspension assemblies follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and costs attributable to HDD suspension assemblies can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

120.  Just as HDD suspension assemblies can be physically traced through the supply chain, so can their prices be traced to show that changes in the

CLASS ACTION COMPLAINT

prices paid by direct purchasers of HDD suspension assemblies affect prices paid by indirect purchasers for HDDs containing HDD suspension assemblies.

121.   The purpose of the conspiratorial conduct of Defendants and their co- conspirators was to raise, fix, rig or stabilize the price of HDD suspension assemblies and, as a direct and foreseeable result, the price of products containing HDD suspension assemblies. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD suspension assemblies on prices for products containing HDD suspension assemblies even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD suspension assemblies affects changes in the price of assembled products, such as computers. In such models, the price of HDD suspension assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD suspension assemblies impact the price of products containing

CLASS ACTION COMPLAINT

HDD suspension assemblies while controlling for the impact of other price-determining factors.

122.   The precise amount of the overcharge impacting the prices of products containing HDD suspension assemblies can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and class members can be quantified.

123.   By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS
### A.   Defendants Have Engaged in a Continuing Violation

124.   This Complaint alleges a continuing course of unlawful conduct by which Defendants have inflicted continuing and accumulating harm within the applicable statutes of limitations.

125.   Each time Defendants engaged in an unlawful act complained of here,

Defendants undertook an overt act that has inflicted harm on Plaintiffs and other members of the Classes.

**B.** **Plaintiffs Could not Have Discovered and Did Not Discover Defendants' Collusion Earlier than the Date of the NHK Plea Agreement**

126. Plaintiffs repeat and re-allege the allegations set forth above.

127. Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein prior to July 29, 2019.

128. No information in the public domain was available to Plaintiffs and members of the Classes prior to July 29, 2019 sufficient to place them on inquiry notice of the claims set forth herein. Moreover, Plaintiffs and members of the Classes had no direct contact or interaction with the Defendants and had no means from which they could have discovered that the Defendants were engaged in the conspiracy alleged herein before July 29, 2019 sufficient to place them on inquiry notice of the claims.

**C.** **Fraudulent Concealment Tolled the Statute of Limitations**

129. In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 29, 2019, when NHK's agreement to

plead guilty to the conspiracy became public.

130.  Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for HDD suspension assemblies throughout the United States during the Class Period.

131.  By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. HDD suspension assemblies are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the HDD suspension assemblies industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD suspension assemblies prices before July 29, 2019.

132.  Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes did not have information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 29, 2019.

133.  For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until July 29, 2019.

**II. VIOLATIONS ALLEGED**
**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide**
**Class)**

134.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

135.   Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

136.   The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

137.   During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

138.   The anticompetitive acts were intentionally directed at the United States market for HDD suspension assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD suspension assemblies throughout the United States.

139.   The conspiratorial acts and combinations have caused unreasonable

restraints in the markets for HDD suspension assemblies.

140.   As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased HDD suspension assemblies have been harmed by being forced to pay inflated, supra- competitive prices for HDD suspension assemblies.

141.   In   formulating   and   carrying   out   the   alleged   agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

142.   Defendants conspiracy had the following effects, among others:

(a)   Price competition in the market for HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)   Prices for HDD suspension assemblies sold by Defendants and their   co-conspirators   have   been   fixed,   raised,   maintained,   and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)   Plaintiffs and members of the Nationwide Class who purchased HDD suspension assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

143.   Plaintiffs and members of the Nationwide Class have been injured

and will continue to be injured in their business and property by paying more for HDD suspension assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

144.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

145.   Plaintiffs and members of the Nationwide Class are entitled to  an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act (Nationwide Damages Class)

146.   Beginning at a time unknown to Plaintiffs, but at least as early as 2003, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

147.   The acts done by the Defendants as part of, and in furtherance of, their and their coconspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

148.   The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-

conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of HDD Suspension Assemblies they sold in the United States and elsewhere.

149.   The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and/or fixing prices for HDD Suspension Assemblies throughout the United States.

150.   The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD Suspension Assemblies.

151.   As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated purchasers in the Nationwide Damages Class who purchased HDD Suspension Assemblies have been harmed by being forced to pay inflated, supra-competitive prices for HDD Suspension Assemblies including through purchases of HDDs and products containing them.

152.   In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth in this Complaint.

153.   Defendants' conspiracy had the following effects, among others:

(a)     Price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)     Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiffs and members of the Nationwide Damages Class who purchased HDD Suspension Assemblies made or sold by Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

154.   Plaintiffs and members of the Nationwide Damages Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

155.   The alleged contract, combination, or conspiracy is a per se violation of Section 1 of the Sherman Act.

156.   Members of the Nationwide Damages Class have standing to seek damages pursuant to Section 4 of the Clayton Act because they were the first United States victims to pay overcharges arising from the domestic effects of the

CLASS ACTION COMPLAINT

1    conspiracy.

2    157.   Plaintiffs and members of the Nationwide Damages Class seek
3
4    damages under Section 4 of the Clayton Act and are entitled to damages in an
5
     amount to be trebled to the extent federal antitrust laws permit.
6
7               **THIRD CLAIM FOR RELIEF**
                **Violation of State Antitrust Statutes**
8            **(on behalf of Plaintiffs and the Damages Class)**

9    158.   Plaintiffs incorporate by reference the allegations in the preceding
10
11   paragraphs.

12   159.   From as early as 2003, Defendants and their co-conspirators engaged
13
14   in a continuing contract, combination, or conspiracy with respect to the sale of
15
     HDD Suspension Assemblies in unreasonable restraint of trade and commerce and
16
     in violation of the various state antitrust statutes set forth below.
17
18   160.   The contract, combination, or conspiracy consisted of an agreement
19
20   among the Defendants and their co-conspirators to fix, raise, inflate, stabilize
21
     and/or maintain artificially supracompetitive prices for HDD Suspension
22
23   Assemblies, to rig bids for the sale of HDD Suspension Assemblies and to allocate

     customers for HDD Suspension Assemblies in the United States.
24
25   161.   In formulating and effectuating this conspiracy, Defendants and their
26
     coconspirators performed acts in furtherance of the combination and conspiracy,
27
     including:
28
            (a)    participating in meetings and conversations among themselves

in the United States and elsewhere during which they agreed to price HDD Suspension Assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to HDD Suspension Assemblies sold in the United States;

(b)     allocating customers and markets for HDD Suspension Assemblies in the United States in furtherance of their agreements; and

(c)     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

162.   Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to HDD Suspension Assemblies.

163.   Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

164.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Alabama Code § 6-5-60, *et seq.*

(a)     Defendants have entered into an unlawful agreement in restraint of trade in violation of Alabama Code § 6-5-60, et seq.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' combinations and conspiracy had the following effects: (1) price competition for HDD Suspension Assemblies was restrained, suppressed, and eliminated throughout Alabama; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Alabama. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. By reason of the foregoing, Defendants entered into an agreement in restraint of trade in violation of Alabama Code § 6-5-60, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Alabama Code § 6-5-60, et seq.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Alabama Code § 6-5-60, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Alabama Code § 6-5-60, et seq.

165.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

166.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD Suspension Assemblies at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, HDD Suspension Assemblies.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of

HDD Suspension Assemblies; and (2) Allocating among themselves the production of HDD Suspension Assemblies.

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects upon the commerce of California: (1) Price competition in the sale of HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased HDD Suspension Assemblies or vehicles containing HDD Suspension Assemblies manufactured by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee,

CLASS ACTION COMPLAINT

1  pursuant to Section 16750(a) of the California Business and Professions

2  Code.

3

4  167.  Defendants have entered into an unlawful agreement in restraint of

5  trade in violation of the Connecticut. General Statute § 35-26 and § 35-28.

6  (a)  Defendants have entered into an unlawful agreement in

7  restraint of trade in violation of Conn. Gen. Stat. § 35-26 and § 35-28.

8

9  Defendants' combination or conspiracy described above had the

10  following effects during the class period: (1) HDD Suspension

11

12  Assemblies price competition was restrained, suppressed, and

13  eliminated throughout Connecticut; (2) HDD Suspension Assemblies

14

15  prices were raised, fixed, maintained and stabilized at artificially high

16  levels throughout Connecticut. Accordingly, Plaintiffs and members of

17  the Damages Class seek all relief available under Conn. Gen. Stat. § 35-

18

19  34 and § 35-35. Plaintiffs have provided a copy of this complaint to the

20  Attorney General as required by Conn. Gen. Stat. § 35-37.

21  (b)  During the Class Period, Defendants' illegal conduct

22

23  substantially affected Connecticut commerce.

24  (c)  As a direct and proximate result of Defendants' unlawful

25  conduct, Plaintiffs and members of the Damages Class have been

26

27  injured in their business and property and are threatened with further

28  injury.

CLASS ACTION COMPLAINT

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. § 35-26 and § 35-28.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Conn. Gen. Stat. § 35-26 and § 35-28.

168.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Official Code §§ 28-4501, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased HDD Suspension Assemblies or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased HDD Suspension Assemblies or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for HDD

Suspension Assemblies and vehicles containing HDD Suspension Assemblies, including in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

169.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

170.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and

CLASS ACTION COMPLAINT

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

171.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

172.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD

CLASS ACTION COMPLAINT

Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

173.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maryland Code, Commercial Law§ 11-204(a)(1).

(a)     Maryland: Defendants have "unreasonably restrain[ed] trade" by "contract, combination or conspiracy" in violation of Md. Code,

CLASS ACTION COMPLAINT

Com. Law § 11-204(a)(1). During the class period, throughout Maryland, Defendants' combination or conspiracy restrained, suppressed, and eliminated price competition for HDD Suspension Assemblies and raised, fixed, maintained, and stabilized HDD Suspension Assemblies prices at artificially high levels. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Md. Code, Com. Law § 11-209(b).

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maryland Code, Commercial Law§ 11-204(a)(1). Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maryland Code, Commercial Law§ 11-204(a)(1).

174.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following

effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

175.   Defendants have entered into an unlawful agreement in unreasonable restraint of trade in violation of the Minnesota Statutes Annotated §§ 325D.49, *et*

*seq.*

    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

    (b)    During the Class Period Defendants' illegal conduct substantially affected Minnesota commerce.

    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

176.  Defendants have entered into an unlawful agreement in restraint of

trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased HDD Suspension Assemblies or vehicles in Mississippi were deprived of free and open competition, including in Mississippi: and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased HDD Suspension Assemblies or vehicles in Mississippi paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies, including in Mississippi.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into

agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

177.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

178.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants have entered into a Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased HDD Suspension Assemblies or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased HDD Suspension Assemblies or vehicles in Nevada, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies, including in Nevada.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

179.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)      During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

180.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and

open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

181.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs

and members of the Damages Class, including those who resided in New York and/or purchased HDD Suspension Assemblies or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies when they purchased, including in New York, HDD Suspension Assemblies or vehicles containing HDD Suspension Assemblies, or purchased, including in New York, HDD Suspension Assemblies or vehicles that were otherwise of lower quality, than would have been absent the conspirators' illegal acts, or were unable to purchase HDD Suspension Assemblies or vehicles that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly

Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

182.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HDD Suspension Assemblies or vehicles in North Carolina, were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HDD Suspension Assemblies or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles including in North Carolina.

(b)  During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

1
2
3

members of the Damages Class have been injured in their business and property and are threatened with further injury.

4
5
6
7
8
9

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

10
11
12

183.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

13
14
15
16
17
18
19
20
21
22
23
24

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

25
26
27

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

28

(c)     As a direct and proximate result of Defendants' unlawful

conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

184.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

185.   Defendants entered into an unlawful agreement in restraint of trade in violation of the Rhode Island General Laws § 6-36-1, *et seq.*

(a)     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Rhode Island Antitrust Act, Rhode Island General Laws § 6-36-1, et seq. Defendants' combination or conspiracy had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island. During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs

CLASS ACTION COMPLAINT

and members of the Damages Class have been injured in their business and property, and are threatened with further injury. By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of Rhode Island General Laws § 6-36-1, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Rhode Island General Laws § 6-36-1, et seq.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Rhode Island General Laws § 6-36-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available Rhode Island General Laws § 6-36-1, *et seq.*

186.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was

restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased HDD Suspension Assemblies or vehicles in South Dakota, were deprived of free and open competition including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased vehicles or HDD Suspension Assemblies in South Dakota, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies including in South Dakota.

(c)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(e)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the

Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

187.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased HDD Suspension Assemblies or vehicles in Tennessee, were deprived of free and open competition including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee, and/or purchased HDD Suspension Assemblies or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies including in Tennessee.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the

CLASS ACTION COMPLAINT

Damages Class have been injured in their business and property and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

188.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful

CLASS ACTION COMPLAINT

conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

189. Defendants have entered into an unlawful agreement in restraint of trade in violation of the 9 Vermont Stat. Ann. §§ 2451, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b) During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq.* Plaintiffs are entitled to relief pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2451, *et seq.*

190.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased HDD Suspension Assemblies or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and

members of the Damages Class, including those who resided in West Virginia and/or purchased vehicles or HDD Suspension Assemblies in West Virginia, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies including in West Virginia.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

191.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

CLASS ACTION COMPLAINT                                    Case No. 19-md-02918-MMC

stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

192.   Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the

CLASS ACTION COMPLAINT

type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

193.   In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

194.   Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**FOURTH CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**on behalf of Plaintiffs and the Damages Class**

195.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

196.   Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

197.   Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Alaska Statute, § 45.50.471, *et seq*.

(a)      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska

Statute § 45.50.471, et seq. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class. The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Alaska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska. During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and consumers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska Statute § 45.50.471, et seq.

CLASS ACTION COMPLAINT

Case No. 19-md-02918-MMC

(c)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Alaska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(d)      During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

198.   Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)      Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or

CLASS ACTION COMPLAINT

obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

199.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-

CLASS ACTION COMPLAINT

disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(e)       Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)       Defendants' acts or practices are unfair to purchasers of HDD Suspension Assemblies (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)       Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout California; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at

artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased HDD Suspension Assemblies or vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased HDD Suspension Assemblies or vehicles in California, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies, including in California.

(h)      Defendants' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)      The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)      The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for HDD Suspension Assemblies (or vehicles containing them).

Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)      As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

200.   Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Colorado Consumer Protection Act, Colorado Revised Statute § 6-1-101*, et seq*.

(a)      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, et seq. Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as actual or potential consumers of the Defendants' goods and which caused Plaintiffs to suffer injury. Defendants took efforts to

conceal their agreements from Plaintiffs. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Colorado; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6-1-101, et seq., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute and as equity demands.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Colorado Rev. Stat. § 6-1-101, et seq.

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Colorado; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class

paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(d)      During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

201.   Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the 6 Delaware Code § 2511, *et seq*.

(a)      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Delaware Consumer Fraud Act, 6 Del. Code § 2511, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Delaware, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Delaware. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD

CLASS ACTION COMPLAINT

Suspension Assemblies. Defendants misrepresented to all purchasers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Delaware; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware. During the Class Period, Defendants' illegal conduct had a substantial effect on Delaware commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of 6 Del. Code § 2511, et seq., and, accordingly,

CLASS ACTION COMPLAINT                                      Case No. 19-md-02918-MMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs and members of the Damages Class seek all relief available under that statute.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of 6 Del. Code § 2511, et seq.

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Delaware; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Delaware commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

202.   Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies; and (5) Reasonable purchasers in Florida were deceived into believing that they were paying competitive prices for their vehicles and HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

203. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Jersey Consumer Fraud Act, N.J. Statutes § 56:8-1, *et seq.*

(a)      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Jersey Consumer Fraud Act, N.J. Statutes § 56:8-1, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in New Jersey, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in New Jersey. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants misrepresented to all purchasers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was

restrained, suppressed, and eliminated throughout New Jersey; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Jersey. During the Class Period, Defendants' illegal conduct had a substantial effect on New Jersey commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of N.J. Statutes § 56:8-1, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in

CLASS ACTION COMPLAINT

violation of New Jersey Consumer Fraud Act, N.J. Statutes § 56:8-1, et
seq.

(c)      Defendants' unlawful conduct had the following effects: (1)
HDD   Suspension   Assemblies   price   competition   was   restrained,
suppressed,   and   eliminated   throughout   New   Jersey;   (2)   HDD
Suspension   Assemblies   prices   were   raised,   fixed,   maintained,   and
stabilized   at   artificially   high   levels   throughout   New   Jersey;   (3)
Plaintiffs and the members of the Damages Class were deprived of free
and   open   competition;   and   (4)   Plaintiffs   and   the   members   of   the
Damages   Class   paid   supracompetitive,   artificially   inflated   prices   for
HDD Suspension Assemblies and vehicles containing HDD Suspension
Assemblies.

(d)      During   the   Class   Period,   Defendants'   illegal   conduct
substantially affected New Jersey commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of the
Defendants,   Plaintiffs   and   the   members   of   the   Damages   Class   have
been   injured   in   their   business   and   property   and   are   threatened   with
further injury.

204. Defendants   have   engaged   in   unfair   competition   or   unfair,
unconscionable, or deceptive acts or practices in violation of the New Mexico Stat.
§ 57-12-1, *et seq.*

(a)      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and because they had to purchase HDD Suspension Assemblies in order to be able to operate their vehicles. Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided

1
2
3

and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

4
5
6
7
8
9
10
11
12
13

(c)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A.§ 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for HDD Suspension Assemblies as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and HDD Suspension Assemblies.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

(d)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

28

(e)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

205.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the HDD Suspension Assemblies they

CLASS ACTION COMPLAINT

had purchased as replacements and inside vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)      Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased HDD Suspension Assemblies were misled to believe that they were paying a fair price for HDD Suspension Assemblies or the price increases for HDD Suspension Assemblies were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and

CLASS ACTION COMPLAINT

members of the Damages Class, who resided in and/or made purchases of vehicles or HDD Suspension Assemblies in New York, were deprived of free and open competition and were subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of vehicles and HDD Suspension Assemblies in New York, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies, and were subjected to Defendants' deceptive practices.

(f)      Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g)      Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have a broad impact, causing class members who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(h)      During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in New York and their illegal

CLASS ACTION COMPLAINT

conduct substantially affected New York commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled manufactured, sold, and/or distributed HDD Suspension Assemblies in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

206.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injuries to purchasers of HDD Suspension Assemblies and vehicles, and broad adverse impact on the

public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      Defendants' unlawful conduct had the following effects upon purchasers of HDD Suspension Assemblies in North Carolina: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HDD Suspension Assemblies or vehicles in North Carolina, were deprived of free and open competition including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HDD Suspension Assemblies or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies including in North Carolina.

(d)      During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and purchasers of HDD Suspension Assemblies and vehicles. Defendants' price-fixing

CLASS ACTION COMPLAINT

conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Moreover, Defendants deceptively concealed their unlawful activities by conducting meetings and conversations in secret.

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed HDD Suspension Assemblies in North Carolina.

(f)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

207.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies and vehicles containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

208. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.   Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence.   Defendants misrepresented to all purchasers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members

CLASS ACTION COMPLAINT

1    of the Damages Class were deprived of free and open competition; and

2    (4) Plaintiffs and members of the Damages Class paid supra-

3    competitive, artificially inflated prices for HDD Suspension Assemblies

4    and vehicles containing HDD Suspension Assemblies.

(d)    As a direct and proximate result of the Defendants' violations

of law, Plaintiffs and members of the Damages Class suffered an

ascertainable loss of money or property as a result of Defendants' use

or employment of unconscionable and deceptive commercial practices

as set forth above.  That loss was caused by Defendants' willful and

deceptive conduct, as described herein.

(e)    Defendants' deception, including their affirmative

misrepresentations and omissions concerning the price of HDD

Suspension Assemblies, likely misled all purchasers acting reasonably

under the circumstances to believe that they were purchasing HDD

Suspension Assemblies at prices set by a free and fair market.

Defendants' misleading conduct and unconscionable activities

constitute unfair competition or unfair or deceptive acts or practices in

violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and

members of the Damages Class seek all relief available under that

statute.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment
### on behalf of Plaintiffs and the Damages Class

209.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

210.   Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims.

211.   As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD Suspension Assemblies.

212.   Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for HDD Suspension Assemblies.

213.   Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.  Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

214.   Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles containing HDD Suspension Assemblies and HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that:

215.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

216.   That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)   An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)   A *per se* violation of Section 1 of the Sherman Act;

(c)   An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)   Acts of unjust enrichment by Defendants as set forth herein.

CLASS ACTION COMPLAINT                                      Case No. 19-md-02918-MMC

217.    Plaintiffs and the members of the Damages Classes recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

218.    Plaintiffs and the members of the Damages Classes recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

219.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

220.    Plaintiffs and the members of the Damages Classes be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

221.    Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

222.    Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

223.    Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

//

//

//

Dated:  February 20, 2020          */s/Victoria Sims*
                                   Jonathan W. Cuneo
                                   Victoria Sims
                                   Joel Davidow
                                   Daniel Cohen
                                   **CUNEO GILBERT & LaDUCA, LLP**
                                   4725 Wisconsin Ave., NW, Suite 200
                                   Washington, DC 20016
                                   Telephone: (202) 789-3960
                                   jonc@cuneolaw.com
                                   joel@cuneolaw.com
                                   danielc@cuneolaw.com
                                   vicky@cuneolaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Shawn M. Raiter
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com

*Attorneys for Plaintiffs and the Proposed
Classes*