**BAKER & McKENZIE LLP**
Mark. H. Hamer (State Bar No. 156997)
mark.hamer@bakermckenzie.com
Mark G. Weiss (*Pro Hac Vice*)
mark.weiss@bakermckenzie.com
815 Connecticut Avenue, NW
Washington, D.C. 20006
Tel: (202) 452-7000
Fax: (202) 416-7177

**BAKER & McKENZIE LLP**
Christina M. Wong (State Bar No. 288171)
christina.wong@bakermckenzie.com
Two Embarcadero Center, Suite 1100
San Francisco, California 94111
Telephone: (415) 576-3000
Fax: (415) 576-3099

Attorneys for Defendants
*NHK Spring Co., Ltd., NHK International
Corporation, NHK Spring (Thailand) Co., Ltd.,
NAT Peripheral (Dong Guan) Co., Ltd. and
NAT Peripheral (H.K.) Co., Ltd.*

**MORGAN, LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr. (pro hac vice)
clay.everett@morganlewis.com
Scott A. Stempel (pro hac vice)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

**MORGAN, LEWIS & BOCKIUS LLP**
C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants TDK Corporation,
Magnecomp Precision Technology Public
Co. Ltd., Magnecomp Corporation, SAE
Magnetics (H.K.) Ltd., and Hutchinson
Technology Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: Hard Disk Drive Suspension Assemblies Antitrust Litigation | Case No. 3:19-md-02918-MMC |
| | MDL No. 2918 |
| THIS DOCUMENT RELATES TO RESELLER AND END-USER ACTIONS | **NOTICE OF MOTION AND MOTION TO DISMISS (1) END-USERS' CONSOLIDATED CLASS ACTION COMPLAINT AND (2) RESELLER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| | Date: July 17, 2020<br>Time: 9:00 a.m.<br>Crtrm: 7, 19th Floor<br>Before: The Hon. Maxine M. Chesney |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, pursuant to this Court's March 10, 2020 Order, on July 17, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7, located on the 19th Floor of this Court, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Maxine M. Chesney, Defendants NHK Spring Co., Ltd. ("NHK Spring"), NHK International Corporation ("NHKI"), NHK Spring (Thailand) Co., Ltd. ("NHK Thailand"), NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") and NAT Peripheral (H.K.) Co., Ltd. ("NAT HK," and collectively the "NHK Defendants") and TDK Corporation ("TDK"), Magnecomp Precision Technology Public Co. Ltd. ("MPT"), Magnecomp Corporation ("Magnecomp"), SAE Magnetics (H.K.) Ltd. ("SAE"), and Hutchinson Technology Inc. ("HTI," and collectively the "TDK Defendants"), will and hereby do move this Court for an Order, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the claims against them.

This motion is made on the grounds that the End-User Plaintiffs' Consolidated Complaint[1] (ECF No. 167), the Reseller Plaintiffs' Consolidated Amended Complaint[2] (ECF No. 166), and each purported cause of action therein, each fail to allege facts sufficient to constitute a cause of action upon which relief may be granted against the NHK and TDK Defendants. Further, the alleged harm is too attenuated from the alleged conduct of the Defendants. The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

---

[1] End-Users Plaintiffs ("End-Users") seek to represent a putative class of "all persons and entities who, during the period from January 2005 through at least May 2016 (the 'Class Period'), indirectly purchased an HDD or a Finished Product, not for resale, which included as a component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, [or related entities]." End-User Pls.' Consol. Class Action Compl. ¶ 8, ECF No. 167 ("End-User Compl.").

[2] Reseller Plaintiffs ("Resellers") seek to represent a class of "All persons or entities who, during the period from and including 2003 through such time as the anticompetitive effects of Defendants' conduct ceased, purchased a product for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants . . . [or] indirectly purchased an HDD suspension assembly, for resale[.]" Reseller Pls.' Consol. Amended Compl. ¶ 105, ECF No. 166 ("Reseller Compl.").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

## REQUESTED RELIEF

The NHK Defendants and the TDK Defendants seek an order from this Court dismissing all of the claims against them contained in the End-User Plaintiffs' Consolidated Class Action Complaint and the Reseller Plaintiffs' Consolidated Amended Complaint with prejudice. Both Complaints fail against the NHK and TDK Defendants because the End-Users and Resellers lack subject matter jurisdiction and have failed to state a claim as required by Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: April 17, 2020                                       Respectfully submitted,

**BAKER & McKENZIE LLP**
Mark H. Hamer
Christina M. Wong
Mark G. Weiss

By:  /s/ Mark H. Hamer
          Mark H. Hamer
*Attorneys for Defendants NHK Spring Co.,*
*Ltd., NHK International Corporation, NHK*
*Spring (Thailand) Co., Ltd., NAT Peripheral*
*(Dong Guan) Co., Ltd. and NAT Peripheral*
*(H.K.) Co., Ltd.*

**MORGAN, LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr.
Scott A. Stempel
C. Cecilia Wang

By:  /s/ J. Clayton Everett, Jr.
          J. Clayton Everett, Jr.
*Attorneys for Defendants TDK Corporation,*
*Magnecomp Precision Technology Public Co.*
*Ltd., Magnecomp Corporation, SAE Magnetics*
*(H.K.) Ltd., and Hutchinson Technology Inc.*

## ATTESTATION

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

Dated:  April 17, 2020                        By:  /s/ Mark H. Hamer

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

Page No.

STATEMENT OF ISSUES.................................................................................................. xvi

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.     SUMMARY OF RELEVANT ALLEGATIONS. .................................................. 3

II.    THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS FOR DAMAGES UNDER THE CLAYTON ACT SHOULD BE DISMISSED. ............................................... 5

III.   THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS FOR NATIONWIDE INJUNCTIVE RELIEF UNDER THE CLAYTON ACT SHOULD BE DISMISSED.......... 7

IV.    THE INDIRECT PURCHASER PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT ANY OF THEIR CLAIMS AGAINST DEFENDANTS BECAUSE THEIR ALLEGED INJURY IS INDIRECT, UNTRACEABLE, AND SPECULATIVE.................. 8

       A.     Any Harm from the Indirect Purchases is Multiple Levels Away from the Direct Purchases and Far Too Attenuated To Be Traceable......................................... 8

       B.     HDD Suspension Assemblies Do Not Constitute a Significant Percentage of the Price of Finished Products. ................................................................... 10

       C.     IPPs' Proposed End-Use Markets Are Indefinite and Nebulous. .............................. 11

V.     THE STATE-LAW CLAIMS ASSERTED BY NON-RESIDENT RESELLER PLAINTIFFS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING. .......................................................................................................... 13

VI.    THE *AGC* FACTORS SHOW THAT IPPS LACK ANTITRUST STANDING................. 14

       A.     The Complaints Should Be Dismissed for Lack of Antitrust Standing. .................... 14

              1.     *AGC* Factor 1, the Nature of Plaintiffs' Injury, Supports Dismissal. ........... 14

              2.     *AGC* Factor 2, the Directness of the Injury, Supports Dismissal. ................. 17

              3.     *AGC* Factor 3, the Speculative Measure of the Harm, Supports Dismissal.................................................................................. 17

              4.     *AGC* Factor 4, the Risk of Duplicative Recovery, Supports Dismissal......... 18

              5.     *AGC* Factor 5, the Complexity in Apportioning Damages, Supports Dismissal.................................................................................. 18

       B.     *AGC's* Antitrust Standing Requirements Apply to the State Claims........................ 19

              1.     Twenty-Two State-Law Claims Should be Dismissed Because These States Adopted (or Would Adopt) *AGC*. ....................................................... 19

i

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

2. Two State-Law Claims Should Be Dismissed Because These States Consider Factors Similar to *AGC* In Analyzing Standing. ........................... 20

3. Four State-Law Claims Should Be Dismissed Because Those States Lack Any *Illinois Brick* Repealer Statutes or the Equivalent. ...................... 21

4. Five State-Law Claims Should Be Dismissed Because Only the State Attorney General Has Standing to Assert Indirect Claims. ........................... 21

5. Five State-Law Claims Should Be Dismissed Because These States' Antitrust Laws Do Not Apply to The Interstate Sales Alleged Here ............. 21

6. Ten State-Law Claims Should be Dismissed Because Their Consumer Protection Statutes Also Apply *AGC* or Comparable Standing Requirements. ............................................... 22

VII. THE INDIRECT PURCHASER PLAINTIFFS' ANTITRUST STATE-LAW CLAIMS SUFFER NUMEROUS FATAL DEFICIENCIES UNDER STATE LAW. ........ 22

A. Oregon, New Hampshire, and Rhode Island Claims Should Be Dismissed Because Those States Have No Retroactive Application of Their Illinois Brick Repealer Statutes .............................................. 22

B. The Arizona, Hawaii, and Nevada Claims Should Be Dismissed Because IPPs Failed to Comply With State-Law Notice Requirements. ........................... 23

VIII. THE INDIRECT PURCHASER PLAINTIFFS' CONSUMER PROTECTION STATE-LAW CLAIMS SUFFER NUMEROUS FATAL STATE-LAW DEFICIENCIES .................................................. 24

A. The Arkansas and New Mexico Consumer-Protection Claims Should Be Dismissed Because No "Unconscionable Conduct" Is Alleged. .............................. 24

B. The Alaska, Arkansas, Colorado, Montana, South Carolina, and Virginia Consumer-Protection Claims Should Be Dismissed Because Class Actions are Barred or Limited by State Statute .............................................. 24

C. The D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont State-Law Consumer-Protection Claims Should Be Dismissed Because Some IPPs Lack Statutory Standing As "Consumers." ........................................ 25

D. The Colorado, Florida, Michigan and Minnesota Consumer Protection Claims Should Be Dismissed Because They Fail to Meet Rule 9(b)'s Requirements ........... 27

E. The Consumer Protection Claims for Delaware, North Carolina, New Hampshire, and Massachusetts Should Be Dismissed Because These Statutes do not reach the Interstate Sales Alleged Here. ........................................ 28

F. The Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah and Virginia Consumer Protection Claims Should Be Dismissed Because Price-Fixing Is Not An Enumerated Violation. .................... 28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Page

G.    The Arkansas, California, and North Carolina Consumer Protection Claims
      Should Be Dismissed Because Plaintiffs Do Not Allege Reliance On
      Deceptive Conduct.................................................................................................29

IX.    THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED. .............................30

CONCLUSION..................................................................................................................30

APPENDIX A...................................................................................................................31

APPENDIX B....................................................................................................................32

APPENDIX C....................................................................................................................33

APPENDIX D...................................................................................................................38

APPENDIX E....................................................................................................................39

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# TABLE OF AUTHORITIES

Page No.

### Cases

*Abbott Labs. v. Durrett*,
  746 So. 2d 316 (Ala. 1999)..................................................................................36

*Acacia Communs., Inc. v. ViaSat, Inc.*,
  35 Mass. L. Rep. 16 (2018)..................................................................................28

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  2009 U.S. Dist. LEXIS 133088 (C.D. Cal. 2009)..................................................32

*Aikens v. Debow*,
  208 W. Va. 486, 541 S.E.2d 576, 582 (2000)......................................................34

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435
  (S.D.N.Y. Aug. 29, 2014)...............................................................................15, 18

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 140765 (S.D.N.Y. Sep. 15, 2014).............30, 32

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016)..................................................................................14

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ....................................................................14, 17, 18

*Am. Airlines v. Christensen*,
  967 F.2d 410 (10th Cir. 1992) ..............................................................................35

*Anheuser-Busch, Inc. v. Abrams*,
  520 N.E.2d 535 (N.Y. 1988)..................................................................................38

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019)............................................................................................6

*Associated General Contractors v. California State Council of Carpenters*,
  459 U.S. 519 (1983) .................................................................................14, 17, 18

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) .......................................................................2, 6, 14

*In re Auto. Parts Antitrust Litig.*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014)..............................................................9, 22

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*In re Auto. Parts Antitrust Litig.*,
   No. 12-MD-02311, 2013 U.S. Dist. LEXIS 80338 (E.D. Mich. June 6, 2013)...........................26

*Beckler v. Visa U.S.A., Inc.*,
   No. 09-04-C-00030, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) ....................................35

*Bly-Magee v. Cal.*,
   236 F.3d 1014 (9th Cir. 2001) ...................................................................................................28

*Boisjoly v. Morton Thiokol, Inc.*,
   706 F. Supp. 795 (D. Utah 1988)...............................................................................................35

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) .........................................................................................32

*Bumpers v. Cmty. Bank*,
   747 S.E.2d 220 (N.C. 2013).......................................................................................................29

*Bunker's Glass Co. v. Pilkington PLC*,
   75 P.3d 99 (Ariz. 2003) .............................................................................................................33

*Callaghan v. BMW of N. Am., LLC*,
   No. 13-CV-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014).......................................30

*Cannon v. Wells Fargo Bank*,
   926 F. Supp. 2d 152 (D.D.C. 2013) ...........................................................................................25

*In re Capacitors Antitrust Litig.*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................9, 12, 30

*In re Capacitors Antitrust Litig.*,
   No. 14-cv-03264-JD (N.D. Cal. May 26, 2015) .........................................................................13

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................................................13

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,
   No. 1:14-MD-2508, 2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24, 2015).....................26

*In re Cathode Ray Tube Antitrust Litig.*,
   No. MDL No. 1917, 2013 U.S. Dist. LEXIS 118566 (N.D. Cal. May 2, 2013) ...................15, 32

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951 (N.D. Cal. Jan. 28, 2016) ........................7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 541 (Cal. 1999)......................................37

*Crouch v. Crompton Corp.*,
   No. 02-CVS-4375, 2004 NCBC LEXIS 6 ..................................................................................35

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

v

1    *In re Chocolate Confectionary Antitrust Litig.*,
2      749 F. Supp. 2d 224 (M.D. Pa. 2010)........................................................23

3    *Cieri v. Leticia Query Realty*,
     80 Haw. 54, 905 P.2d 29, 41 (1995)........................................................34
4

5    *City of Oakland v. Oakland Raiders*,
     No. 18-cv-07444-JCS, 2019 U.S. Dist. LEXIS 124465 (N.D. Cal. July 25, 2019)....................30

6    *Clayworth v. Pfizer, Inc.*,
     233 P.3d 1066 (Cal. 2010) ........................................................33
7

8    *Consiglio-Tseffos v. Visa USA Inc.*,
     No. CV 2003-020170, 2004 WL 3030043 (Ariz. Super. Ct. Dec. 8, 2004) ...............................33

9    *Cornelison v. Visa U.S.A., Inc.*,
10      Civ. No. 03-1350, at 54 (S.D. Cir. Ct. Sept. 29, 2004)........................................................35

11    *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
     2015 U.S. Dist. LEXIS 84152 (N.D. Ill. 2015) ........................................................32, 37
12

13    *Davis v. Four Seasons Hotel Ltd.*,
     228 P.3d 303 (Haw. 2010)........................................................34

14    *In re Dealer Mgmt. Sys. Antitrust Litig.*,
15      MDL 2817, 362 F. Supp. 3d 510 (N.D. Ill. 2019) ........................................................32

16    *In re Ditropan XL Antitrust Litigation*,
     529 F. Supp. 2d 1098 (N.D. Cal. 2007)........................................................13
17

18    *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*,
     2013 U.S. Dist. LEXIS 142466 (D.N.J. 2013) ........................................................32

19    *In re Dynamic Random Access Memories*,
20      536 F. Supp. 2d 1129 (N.D. Cal. 2008)........................................................9, 15, 17, 32, 37

21    *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
     516 F. Supp. 2d 1072 (N.D. Cal. 2007)........................................................ *passim*
22

23    *ERI Max Entertainment, Inc. v. Streisand*,
     690 A.2d 1351 (R.I. 1997)........................................................26

24    *Fisher v. Monster Beverage Corp.*,
25      656 F. App'x 819 (9th Cir. 2016) ........................................................29

26    *In re Flash Memory Antitrust Litig.*,
     643 F. Supp. 2d 1133 (N.D. Cal. 2009)........................................................23, 29, 32
27

28    *Florida v. LG Elec. Inc. (In Re Cathode Ray Tube (CRT) Antitrust Litig)*,
     No. 07-5944 SC, 2012 U.S. Dist. LEXIS 200089 (N.D. Cal. Nov. 16, 2012) ...............................8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*,
   2011 Ark. App. 347, 384 S.W.3d 540 (Ark. Ct. App. 2011);.......................................37

*Freeman Indus. LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005)..........................................................................36, 37

*Fucile v. Visa U.S.A., Inc.*,
   No. S1560-03 CNC, 2004 Vt. Super. LEXIS 42 (Vt. Super. Dec. 27, 2004)...........35, 37

*Ganim v. Smith & Wesson Corp.*,
   780 A.2d 98 (Conn. 2001) ...............................................................................33

*Gatt Communications, Inc. v. PMC Associates, L.L.C.*,
   711 F.3d 68 (2d Cir. 2013)...............................................................................34

*In re Glumetza Antitrust Litig.*,
   2020 WL 1066934 (N.D. Cal. Mar. 5, 2020)........................................................29

*Grams v. Boss*,
   294 N.W.2d 473 (Wis. 1980)............................................................................38

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................9, 13, 24, 29

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ....................................................16, 18, 32

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...............................................................30

*Hansen v. Auto-Owners Ins. Co.*,
   Civ. No. 09-2736, 2010 U.S. Dist. LEXIS 25431 (D. Colo. Mar. 4, 2010) ...............27

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*,
   113 Haw. 77, 114 n.32, 148 P.3d 1179, 1216 (2006) ..........................................34

*Hernandez v. Wells Fargo Bank New Mexico, N.A.*,
   2006-NMCA-018.............................................................................................24

*Ho v. Visa USA, Inc.*,
   16 A.D.3d 256, 793 N.Y.S. 2d 8 (N.Y. App. Div. 2005) ......................................34

*Ho v. Visa U.S.A., Inc.*,
   787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004). ............................................................37

*Hydro–Mfg., Inc. v. Kayser–Roth Corp.*,
   640 A.2d 950 (R.I. 1994) ................................................................................23

*Illinois Brick v. Illinois*,
   431 U.S. 720 (1977)................................................................................. *passim*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Independence Cnty. v. Pfizer, Inc.*,
    534 F. Supp. 2d 882 (E.D. Ark. 2008)........................................................................37

*In re Interior Molded Doors Antitrust Litig.*,
    2019 U.S. Dist. LEXIS 161045 (E.D. Va. 2019) ....................................................32

*Ireland v. Microsoft Corp.*,
    2001 WL 1868946 (Mo. Cir. Jan. 24, 2001)...........................................................36

*ITCO Corp. v. Michelin Tire Corp.*, Commercial Div.,
    722 F.2d 42 (4th Cir. 1983) ....................................................................................36

*Jones v. Micron Tech., Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................ *passim*

*Joseph v. Lowery*,
    495 P.2d 273 (Or. 1972) .........................................................................................22

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006) .................................................................................33

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019)..................................................................8, 36

*Knapp v. McCleary*,
    C. A. No. 83C-JN-87, 1987 Del. LEXIS 1198 (July 9, 1987)......................................37

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ............................................................................14, 20

*Knowles v. Visa U.S.A.*,
    No. CV-03-707, 2004 Me. Super. LEXIS 227 (Super. Ct. Me. Oct. 20, 2004)..........................34

*Lantec, Inc. v. Novell, Inc.*,
    146 F. Supp. 2d 1140 (D. Utah 2001).....................................................................35

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) .............................................................24, 29

*Little Caesar Enters. v. Smith*,
    895 F. Supp. 884 (D. Mich. 1995) ..........................................................................35

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014)....................................16, 17, 32

*In re Loestrin 24 FE Antitrust Litig.*,
    410 F. Supp. 3d 352 (D.R.I. 2019)...........................................................................36

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007)............................................................................35, 38

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*,
  Case No. 13-cv-01180-BLF, 2014 U.S. Dist. LEXIS 133540
  (N.D. Cal. Sep, 22, 2014)........................................................................13

*Los Gatos Mercantile v. E.I. Dupont De Nemours & Co.*,
  No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292
  (N.D. Cal. Aug. 11, 2015).................................................10, 11, 12, 32

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
  140 F.3d 1228 (9th Cir. 1998) ............................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..............................................................................8

*Luscher v. Bayer A.G.*,
  No. CV 2004-01485, 2005 WL 6959406 (Ariz. Super. Ct. Sept. 14, 2005)................................33

*In re Magnesium Oxide Antitrust Litig.*,
  No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) .......................10, 11

*McKinnon v. Honeywell Int'l, Inc.*,
  977 A.2d 420 (Me. 2009).....................................................................38

*McNulty v. Reddy Ice Holdings, Inc.*,
  No. 08-CV-13178, 2009 U.S. Dist. LEXIS 45298 (E.D. Mich. May 29, 2009).........................35

*Merck & Co., Inc. v. Lyon*,
  941 F. Supp. 1443 (M.D.N.C. 1996) ...................................................36

*In re Microsoft Corp. Antitrust Litig.*,
  No. MDL 1332, 2003 U.S. Dist. LEXIS 15612, 2003 WL 22070561,
  (D. Md. Aug. 22, 2003).......................................................................36

*Mothershed v. Justices of the Supreme Court*,
  410 F.3d 602 (9th Cir. 2005) ..............................................................20

*Nass-Romero v. Visa U.S.A., Inc.*,
  279 P.3d 772 (N.M. Ct. App. 2012) ....................................................34

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Me. 2004) .................................................29, 37

*In re Niaspan Antitrust Litig.*,
  42 F. Supp. 3d 735 (E.D. Pa. 2014) ....................................................23

*Olstad v. Microsoft Corp.*,
  2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139 (Wis. 2005) .....................37

*Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
  185 F.3d 957 (9th Cir. 1999) ..............................................................20

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Or. Laborers-Employers Health v. Morris*,
   17 F. Supp. 2d 1170 (D. Or. 1998) ..............................................................35

*Orr v. Beamon*,
   77 F. Supp. 2d 1208 (D. Kan. 1999) ............................................................34

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
   868 So. 2d 331 (Miss. 2004).....................................................................36, 38

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill) .....................................................................32

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.*,
   423 P.3d 605 (Nev. 2018) ............................................................................33

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)........................................................27

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017)....................................................26, 27

*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ........................................................13

*Partee v. San Diego Chargers Football Co.*,
   34 Cal. 3d 378 (Cal. 1983)............................................................................38

*Patterson Dental Co. v. McGaughey*,
   1985 WL 25732 (D. Or. Dec. 9, 1985) .........................................................35

*Peterson v. Visa. U.S.A., Inc.*,
   No. 03-8080, 2005 D.C. Super. LEXIS 17 (D.C. Super. Ct. 2005)...............34

*Precourt v. Fairbank Reconstruction Corp.*,
   856 F. Supp. 2d 327 (D.N.H. 2012)...............................................................28

*Princeton Ins. Agency v. Erie Ins. Co.*,
   2008 W.V. Cir. LEXIS 24 ............................................................................34

*Raines v. Byrd*,
   521 U.S. 811 (1997)........................................................................................8

*In re Refrigerant Compressors Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 50737 (E.D. Mich. 2013) ........................................32

*Roncari Dev. Co. v. Gmg Enters.*,
   45 Conn. Supp. 408, 718 A.2d 1025 (1997) .................................................33

*Rose v. Vulcan Materials Co.*,
   194 S.E.2d 521 (N.C. 1973)..........................................................................38

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*S.C. Cotton Growers' Co-op. Ass'n v. English,*
    133 S.E. 542 (S.C. 1926) ...........................................................................................38

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC,*
    No. 15 Civ. 6549, 2018 U.S. Dist. LEXIS 220574 (S.D.N.Y. Dec. 26, 2018)............................25

*Shaw v. Marriott Int'l, Inc.,*
    605 F.3d 1039 (D.C. Cir. 2010) ..................................................................................25

*Sickles v. Cabot Corp.,*
    379 N.J. Super. 100, 877 A.2d 267 (App. Div. 2005). ..............................................36

*Siena v. Microsoft Corp.,*
    796 A.2d 461 (R.I. 2002). ..........................................................................................38

*Smith v. Video Lottery Consultants,*
    858 P.2d 11 (Mont. 1993). .........................................................................................38

*Soto v. Bushmaster Firearms Int'l, LLC,*
    202 A.3d 262 (Conn. 2019) ........................................................................................33

*Southard v. Visa U.S.A. Inc.,*
    734 N.W.2d 192 (Iowa 2007) .....................................................................................33

*Staley v. Gilead Sciences., Inc.,*
    No. 19-CV-02573-EMC, 2020 U.S. Dist. LEXIS 36747 (N.D. Cal. Mar. 3, 2020)...............25, 26

*Stark v. Visa U.S.A. Inc.,*
    No. 03- 055030-CZ, 2004 WL 1879003 (Mich. Cir. July 23, 2004)...........................................35

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    580 F. Supp. 2d 896 (N.D. Cal. 2008) .......................................................................37

*Strang v. Visa,*
    No. Sl560-03, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005)....................................35

*State ex rel. Leech v. Levi Strauss & Co.,*
    No. 79-722-Ill, 1980 WL 4696 (Tenn. Ch. Ct. 1980) ................................................36

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.,*
    840 N.Y.S.2d 8 (N.Y.A.D. 1st Dept. 2007) ...............................................................37

*Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.,*
    No. W1999-01061-COA-R9-CV, 2000 Tenn. App. LEXIS 644
    (Ct. App. Sept. 26, 2000) ..........................................................................................36

*Strizver v. Wilsey,*
    150 P.3d 10 (Or. Ct. App. 2006)................................................................................22

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
  902 F.3d 735 (7th Cir. 2018) ...................................................................................10

*Supreme Auto Transp. LLC v. Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) .....................................................................32

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
  663 F. Supp. 494 (M.D.N.C. 1987)) .........................................................................36

*In re TFT–LCD Antitrust Litig.*,
  787 F. Supp. 2d 1036 (N.D. Cal. 2011) ...............................................................24, 29

*In re TFT-LCD Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................9, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009). ...................................................................36

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009) ...........................37

*United States v. Or. State Med. Soc'y*,
  343 U.S. 326 (1952) .................................................................................................7

*Vandenberg v. Aramark Educ. Servs., Inc.*,
  81 So. 3d 326 (Ala. 2011). .......................................................................................38

*Van Mourik v. Big Heart PetBrands, Inc.*,
  No. 17-cv-3889-JD, 2018 U.S. Dist. LEXIS 34796 (N.D. Cal. March 1, 2018)...........13

*Vinci v. Waste Mgmt., Inc.*,
  43 Cal. Rptr. 2d 337 (Cal. Ct. App. 1995) ................................................................33

*W.S. Carnes, Inc. v. Bd. of Supervisors*,
  252 Va. 377, 478 S.E.2d 295 (1996).........................................................................24

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  901 A.2d 106 (Del. 2006) .........................................................................................28

*Waterford Parkade v. Picardi*,
  No. CV 94 0539883S, 1996 Conn. Super. LEXIS 679 (Super. Ct. Mar. 8, 1996) ........33

*West v. Whitney-Fidalgo Seafoods*,
  628 P.2d 10 (Alaska 1981)........................................................................................38

*Westport Taxi Service, Inc. v. Westport Transit District*,
  235 Conn. 1, 664 A.2d 719 (1995) ...........................................................................33

*Wholesale Electricity Antitrust Cases I & II*,
  55 Cal. Rptr. 3d 253 (Cal. Ct. App. 2007) ................................................................33

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*Williams v. Citigroup, Inc.*,
    36 Misc. 3d 1201[A], 954 N.Y.S.2d 762, 2012 NY Slip Op 51145[U]
    (N.Y. Sup. Ct. 2012) ...................................................................................34

*Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*,
    No. 07-cv-2093-JDW-MSS, 2008 U.S. Dist. LEXIS 61428
    (M.D. Fla. Aug. 4, 2008) .............................................................................27

*Wrobel v. Avery Dennison Corp.*,
    No. 05-cv-1296, 2006 WL 7130617 (D. Kan. Feb. 1, 2006)......................34

*Wyatt Energy, Inc. v. Motiva Enters., LLC*,
    No. (X01) CV020174090S, 2002 Conn. Super. LEXIS 3995
    (Super. Ct. Dec. 12, 2002) ..........................................................................33

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*,
    951 F.2d 1158 (9th Cir. 1991) .....................................................................17

## Statutes

U.S. Const. art. III ............................................................................... *passim*

28 U.S.C. § 2072(b) ...................................................................................25

Fed. R. Civ. P. 9(b) ....................................................................................27

Fed. R. Civ. P. 12 .........................................................................................1

Fed. R. Civ. P. 23 .......................................................................................25

A.C.A. § 4-88-113 ......................................................................................24

Code of Ala. § 8-19-10 ...............................................................................24

Alaska Stat. § 45.50.577 (2019). ...............................................................36

Ariz. Rev. Stat. § 44-1412 (LexisNexis 2020)..........................................38

Ariz. Rev. Stat. § 44-1415(A) ....................................................................23

Ark. Code Ann. § 4-75-212(b) (2020) .......................................................36

Ark. Code Ann. § 4-75-315(b) (2020). ......................................................36

Ark. Code Ann. § 4-88-107(a) ..............................................................24, 28

Ark. Code § 4-88-113(f) .............................................................................29

Cal. Bus. & Prof. Code § 17204 ................................................................29

Colo. Rev. Stat § 6-1-105 ...........................................................................29

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Colo. Rev. Stat. § 6-4-119 (2019). ........................................................38

Colo. Rev. Stat. §§ 6-4-111(2)-(3)(b) (2019). ........................................36

Conn. Gen. Stat. § 35-44B (2020). .......................................................38

Del. C. § 2532 ..........................................................................................29

Del. Code. Ann. tit. 6, § 2113 (2020)......................................................38

D.C. Consumer Protection Procedures Act, § 28-3901-3913 ..................25

D.C. Code § 28-4515 (1981). ..................................................................38

Fla. Stat. Ann. § 542.32 (2020). .............................................................38

Haw. Rev. Stat. Ann. § 480-3 (2019).  ..................................................38

Haw. Rev. Stat. Ann. § 480–13.3(a)(1) ...................................................23

Iowa Code § 553.2 (2019). ......................................................................38

Kan. Stat. Ann. § 50-163(b) (2020). .......................................................38

Mass. Ann. Laws ch. 93, § 1 (2019). ......................................................38

Mass. Gen. Laws Ch. 93A, § 11 .............................................................28

Md. Com. Law Code Ann. §11-202(a)(2) (2020). ..................................38

Md. Com. Law Code Ann. § 11-209(b)(ii) (LEXIS 2020)......................36

Md. Health-Gen. Code Ann. § 21-1114 (LEXIS 2020).  .......................36

Mich. Comp. Laws. Serv. § 445.784(2) (2020). .....................................38

Mich. Comp. Laws § 445.903(1) .............................................................29

Mo. Rev. Stat. § 416.141 (2019). ............................................................38

Mo. Rev. Stat. § 407.010, et seq..............................................................26

Mont. Code Ann. § 30-14-102(1) ............................................................26

Mont. Code Ann. § 30-14-133(1) ............................................................24

Neb. Rev. Stat. Ann. § 59-829 (2020). ....................................................38

Nev. Rev. Stat. Ann. § 598A.050 (2019). ...............................................38

N.H. Rev. Stat. Ann. § 356:11.................................................................22

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

N. H. Rev. Stat. Ann Section 358-A:2 ....................................................................28

N.M. Stat. Ann. § 57-1-15 (2020). ........................................................................38

N.M. Stat. Ann. § 57-12-2(D) ...............................................................................24

Nev. Rev. Stat. Ann. § 598A.210(3) .....................................................................23

Nev. Rev. Stat. § 598.0915-925 ............................................................................29

N.J. Rev. Stat. § 56:9-18 (2020). ..........................................................................38

Or. Rev. Stat. § 646.605 ..................................................................................28, 29

Or. Rev. Stat. § 646.605-08 ..................................................................................29

Or. Rev. Stat. §§ 646.705, et seq. .........................................................................22

Or. Rev. Stat. § 646.715(2) (2020). ......................................................................38

R.I. Gen. Laws §§ 6-13.1-1(6)(i)-(xix) ................................................................29

R.I. Gen. Laws § 6-13.1-5.2(a) .............................................................................26

R.I. Gen. Laws § 6-36-12(g) (2020). ....................................................................36

R.I. Gen. Laws. § 6-36-2(b) (2020). .....................................................................38

S.C. Code Ann. §§ 37-23-50 .................................................................................24

S.D. Codified Laws § 37-1-22 (2020). ..................................................................38

S.D. Codified Laws § 37-24-6 ...............................................................................29

Utah Code Ann. § 13-11-1 *et seq.* ........................................................................29

Utah Code Ann. § 76-10-3118 (2020) ...................................................................38

Va. Code Ann. § 59.1-200 .....................................................................................29

Va. Code Ann. § 59.1-204 .....................................................................................24

Va. Code Ann. § 59.1-9.17 (2020). .......................................................................38

Vt. Stat. Ann. tit. 9 § 2453(a) ...............................................................................26

Vt. Stat. Ann. tit. 9, § 2453a(c) (2019). ................................................................38

W. Va. Code. Ann. § 47-18-16 (2020). .................................................................38

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

1. As indirect purchasers, do the End-Users Plaintiffs and Reseller Plaintiffs lack standing to assert damages claims under the Clayton Act?

2. Have End-User Plaintiffs and Reseller Plaintiffs alleged facts of ongoing or threatened future conduct sufficient to state a claim for injunctive relief under the Clayton Act?

3. Have End-User Plaintiffs and Reseller Plaintiffs alleged facts demonstrating that they have Article III standing for any claim?

4. Do Reseller Plaintiffs have standing to assert state-law claims for those states in which they do not reside and in which they have made no purchases?

5. Have End-User Plaintiffs and Reseller Plaintiffs alleged facts demonstrating that they have antitrust standing?

6. Do End-User Plaintiffs and Reseller Plaintiffs satisfy the test established by the Supreme Court's decision in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) (*AGC*) such that they can assert state law antitrust and consumer protection claims?

7. Do End-User Plaintiffs and Reseller Plaintiffs satisfy the state-law pleading requirements for each of their antitrust state-law claims?

8. Do End-User Plaintiffs and Reseller Plaintiffs satisfy the state-law pleading requirements for each of their consumer protection state-law claims?

9. Have End-User Plaintiffs and Reseller Plaintiffs stated a claim for "unjust enrichment"?

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The NHK Defendants and TDK Defendants manufacture suspension assemblies, which are tiny, inexpensive mechanical components within hard disk drives (HDDs). HDDs are themselves components within finished consumer electronic products ranging from laptop computers to DVRs and photocopiers. As Plaintiffs' allegations concede, Defendants' components are exchanged repeatedly through a long and complex chain of distribution transactions before they might end up in a finished product.

The two groups of Plaintiffs and putative classes here—Resellers and their customers, End-Users (collectively the "Indirect Purchaser Plaintiffs" or "IPPs")—are both distant downstream indirect purchasers of a diverse array of finished electronic products containing HDDs that may incorporate Defendants' small component parts. Resellers in turn purchased their products from other non-party indirect purchasers, such as Original Equipment Manufacturers (OEMs) like HP or Dell, or from non-party product distributors. Plaintiffs allege that they sit at least three or four transaction levels removed from the initial direct sale by the defendant-manufacturers. Indeed, their allegations concede the number of upstream transactions could be even higher.

Plaintiffs assert various antitrust and consumer protection claims on the theory that alleged price-fixing by Defendants caused "overcharges" in small component transactions far upstream in the chain of commerce that were passed down, again and again, to eventually cause an unspecified "overcharge" in the price of the finished products they purchased. Their pleading suffers from multiple defects that should be addressed now, on this Rule 12 motion.

First, Resellers and End-Users are barred from asserting damages claims under the Clayton Act. The Supreme Court's *Illinois Brick* decision bars all damages claims under the Clayton Act except those where the product was purchased directly from a defendant. As Resellers and End-Users have alleged only *indirect* purchases, these claims are barred.

Second, Resellers and End-Users bring claims for injunctive relief under the Clayton Act but fail to allege that the conduct is ongoing or future recurrence is likely. The latest alleged conduct was four years ago, and plaintiffs specifically allege Defendants have engaged in cooperation and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

compliance efforts since then. Injunctive relief is not available where no current conduct or threat of future conduct is alleged.

Third, the injury alleged by Resellers and End-Users is untraceable and far too indirect to satisfy Article III's standing requirements. Courts have found standing lacking for indirect purchasers for whom the injury is too indirect, speculative and untraceable. Here, both Resellers and End-Users fail to allege sufficient facts to trace their alleged injury. Indeed, the facts they allege suggest there is no plausible way to trace injury. They fail to allege which of the wide variety of end-use products— including the makes, model, or brands—were actually purchased by any plaintiff, or from whom; they fail to allege what percentage of the price of finished electronic products (or even of HDDs) a suspension assembly constitutes; and they fail to allege how the purported overcharge of this single tiny component could have caused higher prices of much more expensive electronic products many links down the distribution chain. These allegations fail to satisfy Article III standing requirements.

Fourth, Resellers also lack Article III standing for an additional reason: they cannot assert the majority of their state-law claims because there is no representative plaintiff residing in or making a purchase in a state where a state-law cause of action is asserted. This deficiency requires dismissal of claims under the laws of 30 states where none of the five Reseller Plaintiffs resides or allegedly made purchases.

Fifth, even if Article III standing were present here, the claims fall far short of the more demanding requirements for *antitrust* standing. Because IPPs are not participants in the allegedly restrained market and claim only very remote, speculative, and likely duplicative damages which will be nearly impossible to apportion across multiple levels of commerce, they fail to satisfy *any* of the five factors of the well-established antitrust standing test.

Sixth, both the antitrust and consumer protection state-law claims suffer numerous fatal state-specific deficiencies requiring dismissal.

Finally, Resellers' and End-Users' claims for unjust enrichment must also be dismissed, as "unjust enrichment" is not a recognized cause of action.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## ARGUMENT

## I.    SUMMARY OF RELEVANT ALLEGATIONS.

The five Resellers seek to represent a putative class of indirect purchasers of finished electronic products for resale.  Reseller Compl. ¶¶ 105-07.  End-Users seek to represent a putative class of purchasers of finished electronic products not for resale (i.e., for their own use).  End-User Compl. ¶¶ 154-56.  In other words, Resellers sit upstream from End-Users in the distribution chain and resold products to End-Users, who sit at the bottom of the distribution chain.

Both putative classes allege to have been injured by a price-fixing conspiracy among the NHK Defendants and the TDK Defendants to raise the price of suspension assemblies—a tiny component used in the manufacturing of hard disk drives (HDDs).  This conspiracy allegedly caused an overcharge in sales to HDD manufacturers (e.g. Seagate) which were then allegedly passed down through each subsequent level of commercial manufacturing and distribution.  In the end, they contend the alleged overcharge of the small component raised the price of all finished electronic products with HDDs far down this chain—injuring the putative classes.  Reseller Compl. ¶ 117; End-User Compl. ¶ 166.

Resellers and End-Users concede they are, at best, third- or fourth-level indirect purchasers.  End-Users rely on the following chart, which confirms how far removed these IPPs are from the alleged upstream antitrust violation.  *See* End-User Compl. ¶ 149; Fig. 6.



Yet even this multi-step graphic oversimplifies the complex distribution thicket.  IPPs' factual allegations illustrate a maze of distribution paths by which HDD suspension assemblies might work their way through international commerce before potentially reaching members of the putative classes:

| Link in the Chain | Allegations |
|---|---|
| **Step 1** | |
| IPPs allege that sometimes the first sale is not to HDD manufacturers, but between defendants, where for example, "SAE . . . <u>purchased HDD Suspension Assemblies from NHK.</u>" (emphasis added). | Reseller Compl. ¶¶ 55, 78 End-User Compl. ¶ 139 |
| This sale is between Defendants or to other manufacturers of another intermediate component part, the head gimbal assembly. | |
| "SAE [would] quote pricing for head gimbal assemblies that | |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

| | |
|---|---|
| incorporated MPT's HDD suspension assemblies to those customers." | |
| **Step 2** | |
| Once incorporated into head gimbal assemblies, the products are then sold "outside the United States through the[] foreign subsidiaries or affiliates" of HDD manufacturers like Seagate and Western Digital. | Reseller Compl. ¶ 45<br>End-User Compl. ¶ 149 |
| **Step 3** | |
| **AND/OR** the foreign subsidiaries or affiliates of HDD manufacturers "incorporate[] suspension assemblies into HDDs for import into the United States" purportedly through transfer to their US sales affiliates or through a sale described in Step 4. | Reseller Compl. ¶ 45<br>End-User Compl. ¶ 152 |
| **Step 4** | |
| HDD Manufacturers sell HDDs as "stand-alone devices" to the foreign affiliates/subsidiaries of original equipment manufacturers (OEMs) that manufacture finished electronic products such as "Dell, Hewlett-Packard ('HP'), Lenovo, IBM, and Apple, among others." | Reseller Compl. ¶ 45<br>End-User Compl. ¶ 151 |
| **AND/OR** HDD Manufacturers sell HDDs "as inputs in Finished Products to" OEMs. | Reseller Compl. ¶ 2<br>End-User Compl. ¶ 149 |
| **OR** HDD Manufacturers sell HDDs as "stand-alone devices through distributors." | Reseller Compl. ¶ 45<br>End-User Compl. ¶ 149 |
| **OR** HDD Manufacturers "sold stand-alone products to consumers directly[.]" | End-User Compl. ¶ 151, n.56 |
| **Step 5** | |
| The foreign subsidiaries or affiliates of OEMs "sell their products, i.e. computers, in the U.S. and outside the U.S." to "foreign subsidiaries or affiliates [of resellers], who at times sell those products to the U.S. entities of those manufacturers." | Reseller Compl. ¶ 45<br>End-User Compl. ¶ 153 |
| **AND/OR** the foreign subsidiaries or affiliates of OEMs "shipped Finished Products to their U.S.-based sales arms pursuant to intercompany transfer prices (in which the U.S.-based companies determined the transfer prices they paid to their foreign affiliates)." | End-User Compl. ¶ 153 |
| **Step 6** | |
| The OEM's U.S.-based sales affiliates sell to resellers including Dell, Apple, BestBuy, Newegg, Tigerdirect, Costco, Wal-Mart, Staples, Office Depot, MacMall, GameStop, and Amazon. | End-User Compl. ¶ 153 |
| **AND/OR** the foreign subsidiaries or affiliates of OEMs sell to directly to the US-based Resellers. | Reseller Compl. ¶ 46 |
| **Step 7** | |
| Then Resellers sell to the members of the putative End-User class. | End-User Compl. ¶ 153 |

Thus, the alleged chain of commerce involves the independent pricing decisions of at least four different companies (a defendant, an HDD manufacturer, an OEM, and a Reseller). The intervening "inter-company transfer" transactions and distributor transactions, which are sometimes alleged to be involved, push up the alleged number of distribution transactions to six or more.

The bottom of this long chain—the putative End-User class—allegedly contains every U.S. individual or business that has ever purchased any finished product containing an HDD. IPPs allege that suspension assemblies incorporated into HDDs are included in at least 13 different broad

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

categories of end-use finished products, each with different uses, distribution chains, and pricing. IPPs allege that suspensions are included in (1) desktop computers, (2) laptop computers, (3) gaming systems, (4) printers, (5) copy machines, (6) portable hard drives, (7) external hard drives, (8) game consoles, (9) set-top boxes, (10) DVRs, (11) network servers, (12) enterprise storage arrays; and (13) "hyperscale" storage systems. Reseller Complaint ¶ 2; End-User Compl. ¶¶ 1, 151.

Suspension assemblies are not alleged to be a substantial price component of the HDDs, let alone of any of the finished products downstream containing those HDDs. To the contrary, IPPs allege that suspension assemblies are inexpensive. For example, Resellers allege that the cost of—allegedly price-fixed—suspension assemblies sold to HDD manufacturer Seagate were "roughly $.75 to $.65 over 8 quarters." Reseller Compl. ¶ 98. Sales for another Seagate project were priced "$0.10 to *[sic]* high . . . [at] $.84 to $.72 over 8 quarters." *Id.* In other words, suspension assemblies (based on IPPs' allegations) sell for somewhere between $0.65 and $0.84 per unit, a tiny fraction of the cost of HDDs and an even smaller part of the cost of a finished consumer product incorporating an HDD (e.g., a laptop computer).

IPPs also allege that suspension assemblies make up only one of at least 17 components in HDDs. "[A]mong other things" HDDs are alleged to contain (1) magnetic heads that fly over the disks, (2) top magnetic disks, (3) E-Blocks, (4) Spindle Motors, (5) Voice Coil Motors, (6) suspensions, (7) Baseplates, (8) baseplate bosses, (9) a radius, (10) loadbases, (11) rails, (12) dimples, (13) traces, (14) flexure tails, (15) flexures, (16) bondpads, and (17) gimbals. Reseller Compl. ¶ 44; End-User Compl. ¶ 88.

Needless to say, there is no allegation that End-Users or Resellers base their decisions to buy finished products on the costs or features of suspension assemblies within them, or that these downstream buyers are even aware that suspension assemblies exist.

## II. THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS FOR DAMAGES UNDER THE CLAYTON ACT SHOULD BE DISMISSED.

Both Resellers and End-Users claim damages under the Clayton Act. Reseller Compl. ¶¶ 146-57 (Second Claim for Relief); End-User Compl. ¶¶ 209-23 (Second Claim for Relief). However, IPPs allege they are indirect purchasers. As a matter of law, indirect purchasers have no standing to claim

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

damages under the Clayton Act.

Only buyers who purchased products directly from the defendant manufacturer may pursue a claim for damages under the Clayton Act. *Illinois Brick v. Illinois*, 431 U.S. 720, 746-48 (1977); *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012) ("[I]ndirect purchasers may not use a pass-on theory to recover damages and thus have no standing to sue. . . . In sum, a bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations.") (internal citations and quotation marks omitted); *see also Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) (*Illinois Brick* bars damages claims by "consumers at the bottom of a vertical distribution chain who are attempting to sue manufacturers at the top of the chain.").

Both Resellers and End-Users allege that they represent classes of indirect purchasers. The five representative Reseller plaintiffs claim only to have "purchased at least one HDD suspension assembly *indirectly* from at least one Defendant," Reseller Compl. ¶¶ 22-26 (emphasis added), and allege that all members of their Reseller class "paid artificially inflated prices for HDD suspension assemblies purchased *indirectly* from the Defendants and/or their co-conspirators." Reseller Compl. ¶ 111 (emphasis added). Similarly, End-Users allege that they "seek to represent all persons and entities who . . . *indirectly* purchased an HDD or a Finished Product." End-User Compl. ¶ 8 (emphasis added).

While occasionally using the word "directly," the complaints describe only indirect purchases. *See, e.g.*, End-User Compl. ¶ 211 (claiming that plaintiffs made "First-Level U.S. Purchases by buying directly <u>from OEMs' U.S.-based sales affiliates</u>") (emphasis added); Reseller Compl. ¶ 106 (alleging class members "directly purchased a product for resale" or "directly purchased an HDD suspension assembly, for resale, that was manufactured or sold by the Defendants . . . <u>from a seller</u>.") (emphasis added). These factual allegations describe only indirect purchases from OEMs or distributors.

IPPs never allege that any plaintiff ever made a purchase directly from, or even directly dealt with, any Defendant. Accordingly, their Clayton Act damages claims must be dismissed.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

# III. THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS FOR NATIONWIDE INJUNCTIVE RELIEF UNDER THE CLAYTON ACT SHOULD BE DISMISSED.

Both Resellers and End-Users bring a claim for injunctive relief under the Clayton Act. Reseller Compl. ¶¶ 134-145 (First Claim for Relief); End-User Compl. ¶¶ 195-208 (First Claim for Relief). However, they allege no ongoing violation, mooting their injunctive relief claim.

For example, End-Users allege that "NHK Spring agreed to plead guilty" in a Plea Agreement with the Department of Justice (DOJ). End-User Compl. ¶ 105. They allege that the Plea Agreement includes statements that NHK will provide DOJ "[t]he full, truthful, and continuing cooperation" of NHK, that NHK "fully and timely cooperated with the government in connection with this criminal episode," and that NHK Spring "overhauled its antitrust compliance program," "appointed high-level individuals to oversee compliance in all major geographic regions," and "[i]t's utilizing technology to monitor possible misconduct and it's taken [sic] remedial measures to discipline individuals involved in the offense." End-User Compl. ¶¶ 109, 111-12. The Plea Agreement cooperation provisions are alleged to apply to "all of the NHK Defendants in this action." End-User Compl. ¶ 108; *see also* Reseller Compl. ¶¶ 48-52. They also allege that TDK similarly cooperated with the government investigations. End-User Compl. ¶ 17; Reseller Compl. ¶ 52. The latest alleged date of an act in furtherance of the alleged cartel was four years ago in April 2016. End-User Compl. ¶ 100. In short, IPPs allege no improper conduct within the last four years, let alone facts suggesting that the alleged violation is still ongoing today.

Where plaintiffs fail to allege an ongoing violation and, as here, they allege only historical rather than current conduct, courts routinely dismiss injunctive relief claims. *See, e.g.*, *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333-34 (1952) (affirming dismissal of injunctive relief and stating that "[t]he sole function of an action for injunction is to forestall future violations . . . [which requires] a real threat of future violation or a contemporary violation of a nature likely to continue or recur" where the court could not find "the slightest reason to doubt the genuineness, good faith or permanence of the changed attitude and strategy of these defendant[s]"); *accord In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951, at *239 (N.D. Cal. Jan. 28, 2016) (noting that "an antitrust injunction would have been difficult to obtain since IPPs could

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

not show a likelihood of future harm."); *Florida v. LG Elec. Inc. (In Re Cathode Ray Tube (CRT) Antitrust Litig)*, No. 07-5944 SC, 2012 U.S. Dist. LEXIS 200089, at *112 (N.D. Cal. Nov. 16, 2012) (dismissing claim for injunctive relief where the alleged conspiracy "allegedly occurred years ago, and that there is little or no danger of a reoccurring violation."). Because IPPs do not allege any ongoing conduct, their claims for injunctive relief should be dismissed.

## IV. THE INDIRECT PURCHASER PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT ANY OF THEIR CLAIMS AGAINST DEFENDANTS BECAUSE THEIR ALLEGED INJURY IS INDIRECT, UNTRACEABLE, AND SPECULATIVE.

Under Article III of the U.S. Constitution, a federal court may adjudicate an action only if it constitutes a justiciable "case" or "controversy" that has real consequences for the parties. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish constitutional standing under Article III, IPPs must show for each claim that (i) they suffered an injury-in-fact, (ii) the injury is fairly traceable to the challenged conduct, and (iii) a favorable ruling would redress the injury. *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 907 (N.D. Cal. 2019); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff may not "rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Jones*, 400 F. Supp. 3d at 907 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)). Article III standing is absent here because the alleged harm to these distant downstream purchasers is too indirect, untraceable, and speculative.

### A. Any Harm from the Indirect Purchases is Multiple Levels Away from the Direct Purchases and Far Too Attenuated To Be Traceable.

To sufficiently plead that their injury is traceable to Defendants' conduct, IPPs must allege that: (i) defendants overcharged direct purchasers and (ii) some or all of that overcharge was passed on to indirect purchasers through each of the various intermediate levels of the distribution chain. *Id.* (citing *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 997 (E.D. Mich. 2014); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 502 (N.D. Cal. 2008)).

Here, IPPs have not alleged any facts to support how they—as at least third- or fourth-level indirect purchasers—can plausibly trace any alleged overcharge for HDD suspension assemblies through to the distant downstream products IPPs claim to have purchased. *See, e.g. In re Keurig Green*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 223-24 (S.D.N.Y. 2019) (dismissing indirect purchasers for lack of standing where there were "'only one or two intermediaries' between IPPs and [defendants]" because there were "numerous questions unanswered. Who were the intermediaries? How often was there one intermediary versus two or more? How does one know to what extent, if at all, any of the intermediaries passed on the overcharges to the next link in the chain?"); *accord In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1113-14 (N.D. Cal. 2008) (Article III standing existed where the "distribution chain for LCD panels is short . . .").

In every other indirect-purchaser standing decision, the indirect purchasers alleged they were only one or two levels of commerce removed from the direct purchase. *See, e.g.*, *Jones*, 400 F. Supp. 3d at 904 (DRAM manufacturers sold to OEMs who sold to retailers and consumers); *In re Dynamic Random Access Memories*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*") (same); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) ("*Capacitors*") (IPPs "purchased capacitors as stand-alone products from one or more distributors, who in turn purchased the capacitors as stand-alone products from defendants"); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 992 (E.D. Mich. 2014) (OEMs purchased fuel senders from defendants and sold to plaintiffs); *TFT-LCD*, 586 F. Supp. 2d at 1123 ("from the defendants to the OEMs to the purchasers of the finished products"); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1013 (N.D. Cal. 2007) ("*GPU I*")(IPPs purchased either stand-alone graphics cards from intermediaries or computers containing those graphics cards). In contrast, here, the multiple levels separating IPPs from the initial sale makes any injury they may have suffered too remote to establish standing.

Indeed, absent from IPPs' Complaints are any factual allegations describing the distribution chain for their own purchases or explaining how any purported injury they suffered can be traced all the way back to Defendants. IPPs make only bare allegations that they suffered "artificially inflated prices" for HDD suspension assemblies based on "a traceable physical chain of distribution from Defendants to [IPPs]." End-User Compl. ¶¶ 165(d), 168; Reseller Compl. ¶¶ 116(d), 119. End-Users fail to identify any retailers that purportedly sold the finished products containing HDD suspension assemblies, and they do not even identify the retailers from whom the named Plaintiffs purchased such products. This does not even come close to meeting the pleading requirements of showing that "some

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

or all of the overcharge was passed on to indirect purchasers through **each of the various intermediate levels** of the distribution chain" for Article III Standing. *Jones*, 400 F. Supp. 3d at 907 (emphasis added); *see In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373, at *22 (D.N.J. Oct. 20, 2011) (it is "impossible" to know if the alleged price increases were passed through the distribution chain "without knowing which specific products IP Plaintiffs purchased"); *see also Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 744 (7th Cir. 2018) ("It is one thing to say that a state is willing to allow someone other than a direct purchaser to have the opportunity to shoulder the burden of showing proximate causation; it is quite another thing to say that the state has thrown both the direct-purchaser rule *and* proximate causation out the window.") (emphasis in original).

Further highlighting how untraceable the alleged harm is here, Resellers and End-Users claim the very same "overcharge" at two different distribution levels. *See Los Gatos Mercantile v. E.I. Dupont De Nemours & Co.,* No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292, at *49-50 (N.D. Cal. Aug. 11, 2015) ("*Los Gatos*") ("[E]ven assuming that Plaintiffs could trace an overcharge from the manufacturer to the Merchant Class . . . , Plaintiffs have not alleged facts showing how they could quantify the amount of the overcharge paid by the Merchant Class versus the amount, if any, paid by the Consumer Class," a defect which "implicates the more fundamental question of Article III traceability.") Each competing class here claims the same alleged overcharge for itself. IPPs' conflicting allegations on how to trace the alleged injury through the distribution chain shows that the alleged harm is not sufficiently traceable to establish standing.

### B. HDD Suspension Assemblies Do Not Constitute a Significant Percentage of the Price of Finished Products.

IPPs also do not (and cannot) allege that HDD suspension assemblies constitute a significant "quantum" or percentage of the price of the finished products in which they are used. In *Jones*, this court held that the plaintiffs failed to explain "how much a DRAM component [made] up of the final cost of each type of DRAM Product," which would be necessary to "illustrate[] the degree to which a DRAM Product's cost is dependent upon or tied to DRAM cost." *Jones*, 400 F. Supp. 3d at 908 n.2. This ratio of component cost to finished product cost "is important because it illustrates the degree to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

which [the finished product's] cost is dependent upon or tied to [the component] cost." *Id.* at 908 n. 2; *see also Magnesium Oxide*, 2011 U.S. Dist. LEXIS 121373, at *22 (dismissing for lack of standing a class of purchasers of products containing a mineral because it will "have a minimal foreseeable effect on the price of products containing trace amounts"); *cf. TFT-LCD.*, 586 F. Supp. 2d at 1113-14 (Article III standing existed where "LCD panels make up 60-70% of the cost of" those products). As *Jones* explained, "[i]f a DRAM Product contains three components, of which DRAM is one, it is more likely that an increase in DRAM price will affect the overall price of the DRAM Product than if the DRAM Product contained thirty components." *See Jones*, 400 F. Supp. 3d at 908 n. 2.

Here, suspension assemblies are alleged to be just one of 17 components of a HDD—and a HDD in turn is merely one component of numerous other unspecified components in many different finished products like laptop computers. End-User Compl. ¶ 88; Reseller Compl. ¶ 44. IPPs have made no allegations regarding the price of suspension assemblies as a quantum or percentage of each finished product price, or even of the HDD price. IPPs' purported damages are thus speculative and insufficient to establish Article III standing. *Id.* at 908; *see also See Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *48 (finding no Article III standing where plaintiffs alleged injuries for "products that may have only a trace of titanium dioxide" and the Court was "left to speculate what quantum of those raw materials is actually titanium dioxide as opposed to some other raw material").

### C.     IPPs' Proposed End-Use Markets Are Indefinite and Nebulous.

Additionally, the wide array of end-use products that IPPs sweep into the purchases they claim here further compound their standing deficiencies. Complaints that identify only a "nebulous" market comprising multiple different makes and models of end-use products should be dismissed. In *Jones*, the indirect purchasers identified six products they allegedly purchased containing a Dynamic Random Access Memory (DRAM) component, but did not identify all products that were purportedly resold in the alleged chain of commerce containing defendants' DRAM products or which specific products the named plaintiffs purchased and from whom. *Id.* at 908. The court held that, "[g]iven the nebulous parameters of this market" of end products potentially containing DRAM, it was not clear "from the face of the Complaint . . . that the supracompetitively-priced DRAM component and its supracompetitive price wended their way into the DRAM Products Plaintiffs purchased." *Id.* at 907.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

Thus, the court concluded that plaintiffs did not meet their burden of establishing traceability and lacked Article III standing for their antitrust claims. *Id.* at 907-08; *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 516 F. Supp. 2d 1072, 1091 (N.D. Cal. 2007) ("*DRAM I*") (dismissing indirect purchasers' claims where plaintiffs were "indirect purchasers and consumers who purchased DRAM as a component" in various "electronic products.").

As in *Jones*, IPPs' Complaints here fail to provide sufficient "detail concerning the varieties of types, makes, and models of the products implicated in the Complaint" and instead identify only a "nebulous" market comprising potentially thousands of different end-product makes and models. *See Jones*, 400 F. Supp. 3d at 907. IPPs allege that the conduct affected all products incorporating HDD suspension assemblies, including at least 13 broad categories of end-user products, significantly complicating the product distribution chain. The Reseller Plaintiffs claim the HDD suspension assemblies were in "a variety of ubiquitous electronics such as computers, gaming systems, printers, and copy machines." Reseller Compl. ¶ 2. End-Users allege that the products went into every type of "portable and external hard drives, desktop and laptop computers, game consoles, set-top boxes/DVRs, network servers, and enterprise storage arrays." End-User Compl. ¶ 1.

IPPs fail to identify the specific products that the Plaintiffs purchased, making it impossible to trace the path of any Defendant's suspension assemblies through the distribution chain to any Plaintiff. These are precisely the sorts of "antitrust claims based on sprawling indefinite markets [that] are readily dismissed by the courts for lack of Article III and antitrust standing." *Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *49-51. *Accord Capacitors*, 106 F. Supp. 3d at 1059 (only allowing a class of indirect purchasers of <u>stand-alone capacitors</u> purchased <u>directly from distributors</u> to proceed after Judge raised concerns that the Consumer class was too sprawling and contained "virtually every electronic device we use," prompting the indirect purchasers to voluntarily dismiss the end-user class). Even much more narrowly tailored classes than those asserted here have been rejected by courts. *See, e.g.*, *Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *58-59 ("Plaintiffs' alleged market of Architectural Coatings is so vast and ill-defined, and because Plaintiffs do not allege what specific products within that market they purchased, Plaintiffs have not alleged facts showing that the Architectural Coatings market plausibly can be considered to be inextricably linked to the titanium dioxide market").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

Accordingly, IPPs' claims should be dismissed.

## V. THE STATE-LAW CLAIMS ASSERTED BY NON-RESIDENT RESELLER PLAINTIFFS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING.

The five Resellers Plaintiffs are located in and made purchases in only five states: California, Michigan, Minnesota, New York, and North Carolina. Yet the Reseller Plaintiffs allege claims under the antitrust and consumer protection laws of 29 other states and the District of Columbia where no named Reseller Plaintiff is alleged to reside or have purchased any product with a HDD suspension assembly. Reseller Compl.¶¶ 22-26; 158-208. They lack Article III standing to assert these claims. *See infra* App. E (identifying the relevant states).

Courts in the Ninth Circuit have consistently rejected constitutional standing for claims asserted under the antitrust and consumer protection laws of states where no representative plaintiff is located or made a purchase. *See, e.g., In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, at 3-4 (N.D. Cal. May 26, 2015) ("[T]he strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims like the ones alleged in this case . . . ."); *Van Mourik v. Big Heart PetBrands, Inc.*, No. 17-cv-3889-JD, 2018 U.S. Dist. LEXIS 34796 at *1-2 (N.D. Cal. March 1, 2018); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *In re Ditropan XL Antitrust Litigation*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing for failure to demonstrate Article III standing antitrust claims under laws of twenty-four states in which "none of the named plaintiffs reside [] or are alleged to have personally purchased Ditropan XL"); *GPU I*, 527 F. Supp. 2d at 1026-27 (N.D. Cal. 2007); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, Case No. 13-cv-01180-BLF, 2014 U.S. Dist. LEXIS 133540, at *10 (N.D. Cal. Sep, 22, 2014) ("The trend in the Northern District of California is to consider Article III issues at the pleading stage in antitrust cases and to dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015).

Accordingly, the Court should dismiss Reseller Plaintiffs' state-law claims under the laws of all jurisdictions except those where they reside: California, Michigan, Minnesota, New York, and North Carolina.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# VI. THE *AGC* FACTORS SHOW THAT IPPs LACK ANTITRUST STANDING.

While the Court need not even reach antitrust standing given IPPs' failure to allege facts supporting Article III standing, dismissal is also warranted for lack of antitrust standing. "If the plaintiff meets the requirements for standing under Article III, the court must then determine whether the plaintiff also meets the more demanding standard for *antitrust* standing." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998) (internal citations and quotation marks omitted) (emphasis in original). Even where there is an allegation of "harm" to the plaintiff sufficient to satisfy the constitutional standing requirement, "the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016) (quoting *AGC*, 459 U.S. at 535); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999).

## A. The Complaints Should Be Dismissed for Lack of Antitrust Standing.

In *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 529-35 (1983) (*AGC*), the Supreme Court "has held that Congress did not intend to afford a remedy to everyone injured by an antitrust violation simply on a showing of causation. The plaintiff must have 'antitrust standing.' To determine whether that requirement is met, the court must 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them.'" *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *AGC*, 459 U.S. at 535). The factors to be analyzed include: (1) the nature of the injury, (2) the directness of the injury, (3) the speculative measure of the harm, (4) the risk of duplicative recovery, and (5) the complexity in apportioning damages. *Id.*; *AGC*, 459 U.S. at 535. Applied here, each of the *AGC* factors weigh heavily against antitrust standing and support dismissal of IPPs' claims.

### 1. *AGC* Factor 1, the Nature of Plaintiffs' Injury, Supports Dismissal.

Factor 1 is a two-part test requiring that: (1) "the plaintiff's injury must be the type of injury antitrust laws were intended to prevent" and (2) "plaintiff must also show that his injury occurred in the market where competition is being restrained or was at least inextricably intertwined" with the restrained market. *Jones*, 400 F. Supp. 3d at 911 (internal quotation marks omitted). IPPs do not meet this standard.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

First, IPPs are not participants in the allegedly restrained market for sale of suspension assemblies. End-Users and Resellers are purchasers of products that contain suspension assemblies, and this district has consistently distinguished between the sale of end-products **containing** a component as a market separate from the sale of the **actual** components themselves. *See In re Cathode Ray Tube Antitrust Litig.*, No. MDL No. 1917, 2013 U.S. Dist. LEXIS 118566, at *84-88 (N.D. Cal. May 2, 2013) ("There is a real <u>market</u> distinction, and hence a real <u>legal</u> distinction, between the finished products and just the CRT" where plaintiffs are "purchasers and retailers of <u>finished products</u> containing CRTs, and are <u>not</u> purchasers or sellers of the <u>CRTs</u> themselves. To meet the requirements of *AGC*, plaintiffs must be participants <u>in the same allegedly restrained market</u> in order to prove antitrust injury.") (emphasis in original); *see also DRAM I*, 516 F. Supp. 2d at 1091 (holding that "plaintiffs who are purchasing products in which DRAM is a component, rather than DRAM itself, are participating in a secondary market that is incidental to the primary price-fixed market (i.e., the market for DRAM modules themselves")).

Second, IPPs are also not purchasers in a market "inextricably intertwined" with the market for the sale of suspension assemblies. Where an indirect purchaser's theory of injury "depend[s] upon a complicated series of market interactions" and where plaintiffs allege an "attenuated economic causality" and there is a strong possibility that "other market variables intervened to affect the prices plaintiff paid," then plaintiffs are not in a market that is "inextricably intertwined" with the alleged restrained market. *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435, at *78-79 (S.D.N.Y. Aug. 29, 2014); *see also Jones*, 400 F. Supp. 3d at 912 (indirect purchasers of DRAM products failed to allege that downstream market was inextricably intertwined because "(1) IPPs never alleged that DRAM represents a certain portion of DRAM Product cost paid by consumers and (2) it is not evident from the Complaint that DRAM price increases are traceable to the costs of DRAM Products.") (internal quotation marks omitted); *see also DRAM II*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) (end-users were not market participants in the restrained market).

In the *TFT-LCD Litigation*, the court held that the markets were inextricably intertwined where the complaint alleged (i) the component could be "traced through the supply chain," (ii) that the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

component's price could be "traced to show that changes in the prices paid by direct purchasers" of the component affect prices paid by indirect purchasers of end-products containing the component, and (iii) the component comprised 60-70% (in other words, a set proportion) of the cost of the end-products at issue. 586 F. Supp. 2d 1123-24 (N.D. Cal. 2008); *accord Jones*, 400 F. Supp. 3d at 912. *See also In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358, at 89-92 (N.D. Cal. Oct. 2, 2014) (finding component market "inextricably intertwined" in part because components were a "substantial part" of the end product and comprised a "substantial component cost" of the end product, such that the end-product price was determined in substantial part by the component price). IPPs make no allegations that these suspension assemblies—which are inexpensive subcomponents within components used in HDDs—make up some significant or set proportion of the cost of any final electronic product, or even of an HDD. Nor do IPPs' Complaints allege facts suggesting that the pricing of suspension assemblies is inextricably intertwined with the pricing of finished products. As such, they have not alleged that they made purchases in a market inextricably intertwined with the sale of suspension assemblies.

In component parts cases where downstream markets have been found to be inextricably intertwined with allegedly restrained upstream markets, the component itself is a feature or selling point known to purchasers which factors into a purchaser's purchasing decision. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU II*") ("[I]n purchasing a computer, consumers are allegedly told that it contains an ATI or Nvidia graphics card of a certain type. A graphics card having certain speed and performance characteristics can be a selling point to a consumer."). IPPs never allege that consumers knew (or cared about) which defendant-manufacturer made the suspension assemblies in the hard disk drive of the product they purchased, what kind of suspensions are in any given electronic product, or any speed, quality, or performance characteristics associated with a suspension assembly. In fact, there are no allegations that IPPs were even aware that suspension assemblies were components used in the products they allegedly purchased. To the contrary, IPPs allege that suspensions are interchangeable commodity products with no distinguishable features. End-User Compl. ¶ 140; Reseller Compl. ¶ 79.

The alleged attenuation here is too much to conclude the markets are inextricably intertwined.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## 2. *AGC* Factor 2, the Directness of the Injury, Supports Dismissal.

An antitrust injury is not direct "where plaintiffs do not allege either that they are direct victims of defendants' alleged conspiracy, or that they were the necessary means by which defendants' conspiracy was effectuated." *DRAM II*, 536 F. Supp. 2d 1129, 1146. This factor overlaps substantially with the directness analysis of Article III standing (*see supra* Section IV.A). The Ninth Circuit directs courts to "look to the chain of causation between" the "injury and the alleged restraint in the market." *Am. Ad Mgmt.*, 190 F.3d at 1054. "Directness in the antitrust context means closeness in the chain of causation." *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1162 (9th Cir. 1991) (quoting *AGC*, 459 U.S. at 540); *Am. Ad Mgmt.*, 190 F.3d at 1058. A direct injury cannot be established where the price-fixed component is but one of many components in the downstream finished product market and where the chain of causation is too speculative to trace.

Factor 2 is difficult to establish where the final consumer product "contains numerous other components, all of which collectively determine the final price actually paid by plaintiffs for the final product. In other words, the price for the actual product paid by plaintiffs is reflective of much more than just the component price." *Jones*, 400 F. Supp. 3d at 912-13; *see also DRAM I*, 516 F. Supp. 2d at 1092 (where "plaintiffs have purchased DRAM not only in computers, but in other products [and] each product in which DRAM is a component, contains numerous other components, all of which collectively determine the final price [it is] too remote to warrant tipping this factor in favor of standing."). Suspension assemblies are alleged to be but one of 17 component parts in an HDD, which themselves are but one of many parts making up most final consumer goods. Reseller Compl. ¶ 44; End-User Compl. ¶ 88. On the facts alleged here, the alleged injury is too remote to tip in favor of standing.

## 3. *AGC* Factor 3, the Speculative Measure of the Harm, Supports Dismissal.

Factor 3 "focuses attention on the possibility that an antitrust plaintiff's damages theory is mere speculation because the claimed damages are too indirect and may have been produced by factors independent from any alleged overcharge." *Lithium Ion Batteries*, 2014 U.S. Dist. LEXIS 141358, at *98; *AGC*, 459 U.S. at 542. Here, as discussed above, any number of intervening factors affect final consumer prices, including the many separate pricing decisions made at multiple levels of commerce.

17

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

Further, when analyzing standing, courts will consider if the component is a "separately-invoiced component of a finished computer, and [if] it is severable from the computer itself[.]" *GPU II*, 540 F. Supp. 2d at 1098. IPPs never allege that suspension assemblies are separately invoiced, severable, or replaceable—because they are not—at least without significantly dismantling the HDDs within a computer likely rendering them unusable.

### 4. *AGC* Factor 4, the Risk of Duplicative Recovery, Supports Dismissal.

Standing is barred where there is a significant risk of duplicative recovery such as where there are "numerous other plaintiffs further up the supply/distribution chain . . . who would be better positioned to enforce the antitrust laws." *See In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at *88-89. "Potential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, the amount of the alleged overcharge, thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs." *AGC*, 459 U.S. at 544. In this case, direct purchaser Seagate has brought a claim multiple levels up the supply/distribution chain, and IPPs have alleged the existence of other potential plaintiffs—OEMs—closer to the initial sale than themselves.

Given the many transactions in the distribution chain that IPPs allege, *see supra* Section I, there is a significant risk here of overlapping claims for recovery. Indeed, here three conflicting overcharge claims from purchasers at three different levels of distribution have already been asserted so far. This fact weighs against standing for indirect purchasers at the bottom of the distribution chain. *See Am. Ad. Mgmt*, 190 F.3d at 1060 n.10 (although "the existence of a related lawsuit is by no means a prerequisite to finding a risk of duplicative recoveries," its existence "weighs against finding in the plaintiff's favor on this factor.").

### 5. *AGC* Factor 5, the Complexity in Apportioning Damages, Supports Dismissal.

The significant challenges in apportioning damages and tracing the alleged pass-through of overcharges through multiple levels of commerce for suspension assemblies weigh heavily against standing here.

As IPPs allege, even the first sale of suspension assemblies is complex with a number of active

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

intermediaries (e.g., head gimbal assembly manufacturers). Reseller Compl. ¶¶ 55, 78; End-User Compl. ¶ 139. From there, each product is included in an HDD and most likely sold a second time to an OEM manufacturer which will then be sold a third time to a Reseller before being sold to an End-User. An alleged upstream overcharge in this chain will be at best difficult, and more likely impossible, to apportion downstream.

Indeed, Resellers and End-Users each claim damages from the same upstream sales, and the inherent conflict between their respective apportionments of damages are already apparent from the face of their pleadings. For example, End-Users allege that "at least some of the overcharge will be passed on by distributors [the reseller class] to end consumers. When the distribution markets are highly competitive, as they are here, <u>all or nearly the entire overcharge will be passed on through to ultimate consumers</u>." End-User Compl. ¶ 172 (citation omitted) (emphasis added). Resellers and End-Users are pursuing two plaintiff classes at different distribution levels for the very same overcharge, but each plaintiff class claims that damages should be apportioned to them. These allegations demonstrate the apportionment complexities that defeat antitrust standing under Factor 5.

Under each *AGC* factor, Resellers and End-Users lack antitrust standing, requiring dismissal.

## B. *AGC's* Antitrust Standing Requirements Apply to the State Claims.

This District requires a state-by-state analysis of whether *AGC* antitrust standing requirements apply to state-law claims. *See Jones*, 400 F. Supp. 3d at 914. Appendices A, B, C, and D detail the relevant authorities that support this analysis, summarized below.[3] In sum, nearly every jurisdiction in which IPPs assert state law claims have statutes and legal authority supporting the application of the *AGC* test or a comparable test for determining standing.

### 1. Twenty-Two State-Law Claims Should be Dismissed Because These States Adopted (or Would Adopt) *AGC*.

Twenty-two states either have case law directly applying the *AGC* factors in analyzing standing

---

[3] Appendix A provides a chart summarizing the state-by-state analysis; Appendix B provides a chart summarizing prior federal court decisions that have conducted a state-by-state *AGC* analysis; Appendix C summarizes state (and federal) cases dealing with the applicability *AGC* factors under the state's antitrust and consumer protection laws; and Appendix D summarizes state harmonization provisions (or the equivalent). For the court's convenience, Defendants have provided Appendix E which tracks which arguments throughout the brief apply to each state claim.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

under state antitrust statutes or case law suggesting that the high court would apply those factors. Further, these states either have a federal harmonization statute or case law from their high courts requiring that state antitrust law be interpreted consistently with its federal counterpart. *See infra* App. D.

Specifically, the high court in three states (Iowa, Nebraska, and Nevada) have applied the *AGC* factors in determining standing for state antitrust claims. *See infra* App. C(1). The high court in five states (Arizona, California, Connecticut, Hawaii, Mississippi, and West Virginia) have issued opinions that strongly suggest these courts would apply the *AGC* factors in analyzing state antitrust claims.[4] Indeed, an intermediate court in California and lower courts in Arizona and Connecticut have applied the *AGC* factors in analyzing state antitrust claims. *See infra* App. C(2). Intermediate courts in two states (New York and New Mexico) have applied the *AGC* factors in determining standing for state antitrust claims. *See infra* App. C(3). Lower courts in D.C. and eight states (Kansas, Maine, Michigan, North Carolina, North Dakota, South Dakota, Vermont, and Wisconsin) have applied the *AGC* factors in determining standing for state antitrust claims. *See infra* App. C(4). Finally, federal district courts in two states (Oregon and Utah) have concluded that the antitrust statutes of the states where they are located would apply the *AGC* factors.[5] *See infra* App. C(5).

## 2. Two State-Law Claims Should Be Dismissed Because These States Consider Factors Similar to *AGC* In Analyzing Standing.

While Minnesota's high court has declined to follow the *AGC* approach in its entirety, the high court has held that antitrust standing under Minnesota law depends on factors similar to those outlined by the Supreme Court in *AGC* such as foreseeability, proximate cause, remoteness, and the relation of the injury to the purported violation. Because these criteria are comparable to the *AGC* factors at issue when considered within the context of this case, this claim should be dismissed. *See infra* App. C(6).

---

[4] Moreover, binding precedent from the Ninth Circuit has expressly applied the *AGC* factors in analyzing claims brought under the California Cartwright Act and the Arizona Uniform State Antitrust Act. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 609-10 (9th Cir. 2005).

[5] Binding precedent from the Ninth Circuit has directly applied the *AGC* factors in analyzing antitrust standing for state claims brought under Oregon's antitrust laws. *Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 (9th Cir. 1999).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Similarly, although Tennessee's high court has not addressed *AGC*, at least one intermediate court has directly relied on precedent from the Tennessee high court in holding that plaintiffs cannot recover for indirect, speculative, or remote injuries in pursuing state antitrust claims. Because these criteria are comparable to the *AGC* factors at issue when considered within the context of this case, this claim should be dismissed. *See infra* App. C(7).

3. **Four State-Law Claims Should Be Dismissed Because Those States Lack Any *Illinois Brick* Repealer Statutes or the Equivalent.**

Delaware, Missouri, New Jersey, and Virginia do not have *Illinois Brick* "repealer" statutes or case law that confer antitrust standing upon indirect purchasers. Moreover, each of these states also have a federal harmonization statute or equivalent case law, by which their state laws are construed in a manner that is consistent with federal precedent. While IPPs only allege consumer protection claims for these states (except New Hampshire which is discussed, *infra* Section VII.A), this tactic is a clear end-run around federal antitrust standing requirements and these states' choice not to repeal *Illinois Brick*. Accordingly, these claims should be dismissed. *See infra* App. C(8).

4. **Five State-Law Claims Should Be Dismissed Because Only the State Attorney General Has Standing to Assert Indirect Claims.**

Alaska, Arkansas, Colorado, Maryland, and Rhode Island only allow their Attorney General to sue on behalf of indirect purchasers. Accordingly, these claims should be dismissed. *See infra*; App. C(9).

5. **Five State-Law Claims Should Be Dismissed Because These States' Antitrust Laws Do Not Apply to The Interstate Sales Alleged Here.**

The high courts in Alabama, Mississippi, Tennessee, and Wisconsin have determined that their antitrust statutes either only reach conduct that occurred "within the state" or affects commerce within the state to a "substantial degree." Similarly, the Fourth Circuit and federal district courts situated in North Carolina have consistently interpreted North Carolina's antitrust laws as addressing "primarily local concerns." Further, high courts in Alabama, Mississippi, North Carolina, and Wisconsin instruct courts to interpret their respective state's antitrust provisions consistent with federal antitrust law.

Because IPPs do not allege that Defendants manufactured or distributed the products from

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

locations in these states and never allege that they bought any products directly from Defendants in these states, their claims should be dismissed. *See infra* App. C(10).

### 6. Ten State-Law Claims Should be Dismissed Because Their Consumer Protection Statutes Also Apply *AGC* or Comparable Standing Requirements.

IPPs' claims under the consumer protection statutes of Alaska, Arkansas, California, Colorado, Delaware, Florida, Nebraska, New York, North Carolina, and Vermont all either apply the *AGC* factors or have standing requirements comparable to the *AGC* analysis sufficient to bar IPPs' claims under those statutes. Accordingly, those claims should be dismissed. *See infra* App. C(11).

## VII. THE INDIRECT PURCHASER PLAINTIFFS' ANTITRUST STATE-LAW CLAIMS SUFFER NUMEROUS FATAL DEFICIENCIES UNDER STATE LAW.

### A. Oregon, New Hampshire, and Rhode Island Claims Should Be Dismissed Because Those States Have No Retroactive Application of Their Illinois Brick Repealer Statutes.

The state antitrust statutes of Oregon, New Hampshire, and Rhode Island that repeal *Illinois Brick* do not do so retroactively. Instead, the statutes apply only prospectively. The Complaints date the alleged conspiracy back to 2003 (Reseller Compl. ¶ 4) and 2005 (End-User Compl. ¶ 8). Accordingly, conduct that occurred before these repealer statutes were passed is not actionable.

Claims under OR. REV. STAT. §§ 646.705, et seq., should be dismissed to the extent they are based on conduct that allegedly occurred before January 1, 2010 because did not authorize earlier claims. *See* § 646.780 (amended 2009). Oregon law presumes that unless the state legislature states otherwise, statutes that "affect the legal rights and obligations arising out of past actions" apply only prospectively. *Joseph v. Lowery*, 495 P.2d 273, 275 (Or. 1972); *see Strizver v. Wilsey*, 150 P.3d 10, 12 (Or. Ct. App. 2006) (noting that "substantive" statutes are those that "impair existing rights, create new obligations or impose additional duties with respect to past transactions"—are presumed to apply prospectively).

On January 1, 2008, New Hampshire enacted its indirect purchaser statute. *See* N.H. REV. STAT. ANN. § 356:11. "Because the statute was intended to operate prospectively, IPPs cannot seek recovery under the New Hampshire statute for any conduct that occurred prior to January 1, 2008." *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1004.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Rhode Island's *Illinois Brick* repealer statute, enacted in 2013, also does not authorize retroactive application. "The *Rhode Island* legislature [passed the statute] . . . in 2013. R.I. GEN. LAWS§ 6–36–7(d). However, the repealer statute of Rhode Island is presumed to apply only prospectively, absent evidence of legislative intent to the contrary." *Hydro–Mfg., Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 954 (R.I. 1994) (same). IPPs have alleged no such evidence of legislative intent to apply the Rhode Island repeal of *Illinois Brick* retroactively. Accordingly, IPPs may not recover for any overcharges incurred before the Oregon, New Hampshire, and Rhode Island repealer statutes took effect. *See also In re Niaspan Antitrust Litig.,* 42 F. Supp. 3d 735, 759 (E.D. Pa. 2014).

**B.     The Arizona, Hawaii, and Nevada Claims Should Be Dismissed Because IPPs Failed to Comply With State-Law Notice Requirements.**

IPPs' Arizona, Hawaii, and Nevada antitrust claims should be dismissed for failure to comply with the notice requirements of those three states.

IPPs fail to allege compliance with Arizona's requirement for plaintiffs to serve a copy of the Complaint on the Arizona attorney general. ARIZ. REV. STAT. § 44-1415(A) ("A person filing a complaint . . . for any violation of the provisions of this article shall simultaneously with the filing of the pleading . . . serve a copy of the complaint . . . on the attorney general. Proof of service … shall be filed with the court."). Similarly, IPPs fail to allege that they provided notice to the Hawaii attorney general within seven days of filing, as required under Hawaii law. *See* HAW. REV. STAT. ANN. § 480–13.3(a)(1); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009) (dismissing indirect purchasers' claim under the Hawaii Antitrust Act when plaintiffs did not follow service requirements of § 480–13.3 and did not expressly limit their claim to unfair and deceptive acts); *see also In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232 (M.D. Pa. 2010). IPPs equally fail to allege compliance with the Nevada antitrust law requirement to serve a copy of the Complaint on the Nevada attorney general. NEV. REV. STAT. ANN. § 598A.210(3) ("Any person commencing an action for any violation of the provisions of this chapter shall, simultaneously with the filing of the complaint with the court, mail a copy of the complaint to the Attorney General."). These pleading deficiencies warrant dismissal of IPPs' Arizona, Hawaii, and Nevada antitrust claims.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# VIII. THE INDIRECT PURCHASER PLAINTIFFS' CONSUMER PROTECTION STATE-LAW CLAIMS SUFFER NUMEROUS FATAL STATE-LAW DEFICIENCIES.

## A. The Arkansas and New Mexico Consumer-Protection Claims Should Be Dismissed Because No "Unconscionable Conduct" Is Alleged.

IPPs have not alleged "unconscionable conduct" as required by the state consumer protection laws of Arkansas and New Mexico. ARK. CODE ANN. § 4-88-107(a); N.M. STAT. ANN. § 57-12-2(D). In Arkansas and New Mexico, "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high." *GPU I*, 527 F. Supp. 2d at 1029. Arkansas law defines "deceptive and unconscionable trade practices" as "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest." § 4-88-107(a)(8). Similarly, unconscionable conduct as defined under New Mexico law constitutes acts or practices that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a gross disparity between the value received by a person and the price paid." § 57-12-2(E).

IPPs have pleaded only price fixing. They do not allege that they were "taken advantage of" or even that there was a "gross disparity" in the alleged artificially inflated prices. *See e.g.*, *Hernandez v. Wells Fargo Bank New Mexico, N.A.,* 2006-NMCA-018, ¶ 6, 139 N.M. 68, 69, 128 P.3d 496, 497 (2005); *In re Lidoderm Antitrust Litig.,* 103 F. Supp. 3d 1155, 1166–67 (N.D. Cal. 2015) ("in absence of authority from Arkansas courts that the ADTPA extends to price fixing claims, those claims should be dismissed); *see also In re TFT–LCD Antitrust Litig.,* 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *GPU I*, 527 F. Supp. 2d at 1029-30.

## B. The Alaska, Arkansas, Colorado, Montana, South Carolina, and Virginia Consumer-Protection Claims Should Be Dismissed Because Class Actions are Barred or Limited by State Statute.

Alaska, Arkansas (except for claims asserted under the Arkansas Constitution, Amendment 89), Montana, and South Carolina bar consumer protection class actions brought by private individuals. CODE OF ALA. § 8-19-10; A.C.A. § 4-88-113; MONT. CODE ANN. § 30-14-133(1); S.C. CODE ANN. §§ 37-23-50; 37-23-70; 37-5-108; 37-5-202; 37-10-105; and 40-39-160. Likewise, Virginia only authorizes "individual action" for claims brought under its consumer protection statute. VA. CODE ANN. § 59.1-204; *see also W.S. Carnes, Inc. v. Bd. of Supervisors*, 252 Va. 377, 383, 478

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

S.E.2d 295, 300 (1996). In addition, Colorado does not allow class action plaintiffs to seek monetary damages. Col. Rev. Stat. 6-1-113(2). Application of Rule 23 to these claims would "abridge, enlarge or modify" substantive rights in each of these states, and therefore restrictions barring consumer protections class actions brought by private individuals must apply. *See generally* 28 U.S.C. § 2072(b); *see also DRAM*, 516 F. Supp. 2d at 1103 ("[T]he statutes cannot be enforced by way of a class action suit. The clear language of all three statutes [Louisiana, Montana, and South Carolina] expressly states as much."). Accordingly, the putative class action claims for these states should be dismissed.

### C. The D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont State-Law Consumer-Protection Claims Should Be Dismissed Because Some IPPs Lack Statutory Standing As "Consumers."

IPPs' consumer protection claims are barred in D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont based on the definition of consumer. The D.C. Consumer Protection Procedures Act limits standing to only those who receive or demand goods that are for personal, household, or family use. *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010). "[I]f an individual purchases what might otherwise be considered a consumer good but does so for business reasons, that transaction is not subject to the [D.C. Consumer Protection Procedures Act, § 28-3901-3913]." *Cannon v. Wells Fargo Bank*, 926 F. Supp. 2d 152, 173 (D.D.C. 2013).

Under Hawaii law, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HAW. REV. STAT. ANN. "No person other than a consumer [and certain government agencies] may bring an action based upon unfair or deceptive acts or practices[.]" *Id.* § 480-2(d). "'Consumer' means a natural person who, <u>primarily for personal, family, or household purposes</u>, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." *Id.* § 480-1(d) (emphasis added); *see e.g. Staley v. Gilead Sciences., Inc.,* No. 19-CV-02573-EMC, 2020 U.S. Dist. LEXIS 36747, at *148, 157 (N.D. Cal. Mar. 3, 2020) ("the Hawaii code refers specifically to a suit being brought by a consumer and then defines consumer as a 'natural person'" claims under the consumer protection laws of Hawaii should be dismissed); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 Civ. 6549, 2018 U.S. Dist. LEXIS 220574 at 109-10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(S.D.N.Y. Dec. 26, 2018).

Likewise, the Missouri Merchandising Practices Act ("MMPA"), MO. REV. STAT. § 407.010, et seq. limits standing to only those who receive or demand goods that are for personal, household, or family use. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080 (S.D. Cal. 2017) (dismissing Plaintiffs MMPA claims for "not [pleading] the requisite household, personal, or family purposes. . . ."); *see also In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 U.S. Dist. LEXIS 121620, at *87 (E.D. Tenn. June 24, 2015) (the MMPA does not apply to businesses).

Under the Montana Consumer Protection Act of 1973, "consumer" is defined as a "person who purchases or leases goods, services, real property, or information <u>primarily for personal, family, or household purposes</u>." Mont. Code Ann. § 30-14-102(1) (emphasis added). *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 U.S. Dist. LEXIS 80338, at *105 (E.D. Mich. June 6, 2013) (automotive dealer plaintiffs could not bring a claim under Montana's consumer protection act).

The Rhode Island Supreme Court has construed the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. GEN. LAWS § 6-13.1-5.2(a), to require that only natural persons are permitted to bring private rights of action under the statute, which natural persons must have "purchase[d] or lease[d] goods or services primarily for personal, family, or household purposes." *ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997).

Under Vermont law, "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce are hereby declared unlawful." VT. STAT. ANN. tit. 9 § 2453(a). "Consumer" means any person who "purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . . or . . . for the use or benefit of his or her business or in connection with the operation of his or her business." *Id.* § 2451a(a); *see also Staley v. Gilead Scis., Inc.,* No. 19-CV-02573-EMC, 2020 WL 1032320, at *51 (N.D. Cal. Mar. 3, 2020).

Here, the D.C., Hawaii, Missouri, Rhode Island, and Vermont Plaintiffs allege only harm to their "business and property." Resellers and End-Users who purchased products with HDD

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

suspension assemblies for business purposes have no standing to assert claims under these states' consumer protection acts. This applies to all Resellers who are necessarily in the business of reselling such products and any End-Users who purchased a product for business reasons.

### D. The Colorado, Florida, Michigan and Minnesota Consumer Protection Claims Should Be Dismissed Because They Fail to Meet Rule 9(b)'s Requirements.

IPPs' Colorado, Florida, Michigan and Minnesota consumer protection claims were not plead with particularity and should be dismissed. Colorado, Florida, Michigan, and Minnesota consumer protection statutes are based in fraud and are therefore subject to Rule 9(b)'s heightened pleading requirements. *See Hansen v. Auto-Owners Ins. Co.*, Civ. No. 09-2736, 2010 U.S. Dist. LEXIS 25431, at *7-*8 (D. Colo. Mar. 4, 2010) (holding that a Colorado consumer protection claim "must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)"); *Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, No. 07-cv-2093-JDW-MSS, 2008 U.S. Dist. LEXIS 61428, at *7 (M.D. Fla. Aug. 4, 2008) ("[C]laims arising under the [Florida Deceptive and Unfair Trade Practices Act] must be pled with particularity"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) ("When the [Michigan CPA] claim is based on breach of express or implied warranties, these pleading strictures do not apply but otherwise, the allegations must include the specificity required by Fed. R. Civ. P. 9(b)."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d at 1076 (granting motion to dismiss CFPs claim for failure to plead with particularity because they "do not point to a specific provision of the [Michigan's Consumer Protection Act] definitional section covering antitrust violations, and the Court is unable to find one. . . . Accordingly, the only manner in which Plaintiffs may assert a violation of the MCPA is through fraud, and therefore Rule 9(b)'s heightened pleading standard applies."); *id.* at 1078 ("Rule 9(b) applies to any claim under Minnesota's consumer fraud provisions.").

"Heightened pleading under Rule 9(b) requires the who, what, where, when, and how of the misconduct charged." *Jones*, 400 F. Supp. 3d at 927. IPPs bare allegations provide no details about the alleged fraudulent transactions and instead in conclusory fashion IPPs assert they "paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies" and "Defendants misrepresented the real cause of the price increases and/or the absence of price reductions in HDD

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

suspension assemblies by making public statements that were not in accord with the facts." Reseller Compl. ¶¶202, 271. Nowhere in the complaints do IPPs plead any specific allegations detailing public statements, explanations, and press releases. There are no details about what these alleged misrepresentations, where "publically" they were made, when they were made, and to whom they were made. These conclusory allegations fail "to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001).

### E. The Consumer Protection Claims for Delaware, North Carolina, New Hampshire, and Massachusetts Should Be Dismissed Because These Statutes do not reach the Interstate Sales Alleged Here.

The Delaware Consumer Fraud Act requires the relevant conduct occur "in part or wholly within this State." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006) (quoting 6 Del. § 2512). North Carolina's Unfair Trade Practices Act was "designed to address primarily local concerns." *See supra* App. C(2). The New Hampshire Consumer Protection Act only reaches conduct that occurs "within th[e] state." N. H. REV. STAT. ANN Section 358-A:2; *see e.g., Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 344 (D.N.H. 2012). Massachusetts' consumer protection statute only reaches conduct that "occurred primarily and substantially" in the state. MASS. GEN. LAWS Ch. 93A, § 11; *see e.g., Acacia Communs., Inc. v. ViaSat, Inc.*, 35 Mass. L. Rep. 16 (2018). IPPs do not allege that Defendants manufactured or distributed the products from locations in these states. Nor do IPPs allege that they bought any products directly from Defendants in these states. Accordingly, their claims under these states' consumer protection laws should be dismissed.

### F. The Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah and Virginia Consumer Protection Claims Should Be Dismissed Because Price-Fixing Is Not An Enumerated Violation.

IPPs' Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, Utah, and Virginia price-fixing claims should be dismissed because they are not violations under the respective consumer protection statutes.

Each of these statutes are limited in coverage to certain enumerated conduct.[6] ARK. CODE

---

[6] Regarding the Oregon statute, there is a catch-all provision prohibiting a person from engaging in "any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.605. However, no action or suit is allowed under that provision "unless the Attorney General has first established a

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ANN. §§ 4-88-107(a); 4-88-108; COLO. REV. STAT § 6-1-105; DEL. C. § 2532; R.I. GEN. LAWS. §§ 6-13.1-1(6)(i)-(xix); MICH. COMP. LAWS § 445.903(1); NEV. REV. STAT. § 598.0915-925; OR. REV. STAT. § 646.605-08; S.D. CODIFIED LAWS § 37-24-6; UTAH CODE ANN. § 13-11-1 *et seq.*; VA. CODE ANN. § 59.1-200. None of these lists enumerate price-fixing as an offense, nor do IPPs allege "deceptive," "unconscionable," or "unfair" conduct. *See e.g.*, *In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2011) (granting defendants' motion to dismiss ADTPA claims because there are no "cases from Arkansas state or federal courts recognizing a price-fixing claim under the ADTPA[.]"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 1161-62 ("price fixing is not within the ambit of the R.I. UTPCPA"); *DRAM I*, 516 F. Supp. 2d at 1116; *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1162 (N.D. Cal. 2015); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 350 F. Supp. 2d 160, 179 n.27 (D. Me. 2004). Accordingly, these claims should be dismissed.

### G. The Arkansas, California, and North Carolina Consumer Protection Claims Should Be Dismissed Because Plaintiffs Do Not Allege Reliance On Deceptive Conduct.

The IPPs' claims under the Arkansas, California, and North Carolina consumer protection statute fail because they do not, and cannot, allege reliance. Each state's consumer protection statute requires plaintiffs to demonstrate "reliance" on misrepresentations made by a defendant. ARK. CODE § 4-88-113(f); CAL. BUS. & PROF. CODE § 17204; *Fisher v. Monster Beverage Corp.,* 656 F. App'x 819, 822 (9th Cir. 2016); *In re Glumetza Antitrust Litig.,* 2020 WL 1066934, at *11 (N.D. Cal. Mar. 5, 2020); *Bumpers v. Cmty. Bank*, 747 S.E.2d 220 (N.C. 2013). However, price fixing does not induce reliance because "logically, charging higher prices would not deceive or induce a consumer to purchase an item he or she would not otherwise purchase." *See e.g.*, *In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d at 1160; *see also GPU I,* 527 F. Supp. 2d at 1031 (N.D. Cal. 2007) (same). Because IPPs do not allege any deceptive conduct other than price-fixing, IPPs cannot have relied on the allegedly deceptive conduct in purchasing any products with suspension assemblies. As such, IPPs' claims under the California consumer protection statute should be dismissed.

rule in accordance with the provisions of OR chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce." *Id.* Defendants are unaware of any such rule.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## IX.   THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

Finally, Resellers and End-Users assert a claim for unjust enrichment.  *See* Reseller Compl. ¶¶ 209-14 (Fifth Claim for Relief); End-User Compl. ¶¶ 288-93 (Fifth Claim for Relief).   Courts routinely dismiss such claims because "unjust enrichment" is not a recognized cause of action.  *See Callaghan v. BMW of N. Am., LLC*, No. 13-CV-04794-JD, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (finding that "the claim must be dismissed for the separate and additional reason that unjust enrichment is not an independent cause of action"); *City of Oakland v. Oakland Raiders*, No. 18-cv-07444-JCS, 2019 U.S. Dist. LEXIS 124465, at *52-53 (N.D. Cal. July 25, 2019) ("[U]njust enrichment is not a cause of action."); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014); *Capacitors*, 106 F. Supp. 3d at 1074 ("unjust enrichment is a remedy, and not an independent claim.").   Further, this claim is based solely on the same allegations as the alleged antitrust violation, and is nothing more than an attempted end-run around *Illinois Brick's* prohibition of a nationwide damages claim.  *See also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 140765, at *26-28 (S.D.N.Y. Sep. 15, 2014).  As such, the Fifth Claim for Relief in each Complaint should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss the Resellers' and End-Users' claims with prejudice.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

# Appendix A:  Summary Table of State-By-State Standing Requirements

| State | State Lacks Antitrust Standing for Indirect Purchasers? | State Harmonization Provisions? | AGC Test Applied by State Court? | Federal District Court has Determined AGC Applies? |
|---|---|---|---|---|
| Alabama | | Yes (case law) | | Yes |
| Alaksa | Yes (only the State AG may bring suit) | Yes (case law) | | Yes |
| Arizona | | Yes (statute) | Yes (the high court has offered guidance, lower courts have applied *AGC*, and Ninth Circuit has applied *AGC*) | Yes |
| Arkansas | Yes (only the State AG may bring suit) | No | | No |
| California | | Yes (case law) | Yes (the high court has offered guidance, intermediate court has applied *AGC*, and Ninth Circuit has applied AGC) | Yes |
| Colorado | Yes (only the State AG may bring suit) | Yes (statute) | | No |
| Connecticut | | Yes (statute) | Yes (high court has offered guidance) | No |
| Delaware | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| District of Columbia | | Yes (statute) | Yes (lower court applied *AGC*) | Yes |
| Florida | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| Hawaii | | Yes (statute) | Yes (high court has offered guidance) | Yes |
| Iowa | | Yes (statute) | Yes (high court applied *AGC*) | Yes |
| Kansas | | Yes (statute) | Yes (lower court applied *AGC*) | Yes |
| Maine | | Yes (case law) | Yes (lower court applied *AGC*) | |
| Maryland | Yes (only the State AG may bring suit) | Yes (statute) | | No |
| Massachusetts | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| Michigan | | Yes (statute) | Yes (lower court applied AGC factors) | Yes |
| Minnesota | | Yes (case law) | | Yes |
| Mississippi | | Yes (case law) | Yes (high court has offered guidance) | Yes |
| Missouri | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| Montana | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (case law) | | No |
| Nebraska | | Yes (statute) | Yes (high court applied *AGC*) | Yes |
| Nevada | | Yes (statute) | Yes (high court applied *AGC*) | Yes |
| New Hampshire | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | Yes |
| New Jersey | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| New Mexico | | Yes (statute) | Yes (intermediate court applied AGC) | Yes |
| New York | | Yes (case law) | Yes (intermediate court applied AGC) | Yes |
| North Carolina | | Yes (case law) | Yes (lower court applied AGC) | Yes |
| North Dakota | | No | Yes (lower court applied AGC) | Yes |
| Oregon | | Yes (statute) | Yes (district court in state applied AGC to state claim) | Yes |
| Rhode Island | Yes (only the State AG may bring suit) | Yes (statute) | | Yes |
| South Carolina | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| South Dakota | | Yes (statute) | Yes (lower court has applied modified AGC test) | Yes |
| Tennessee | | Yes (case law) | Yes (lower court offered guidance) | Yes |
| Utah | | Yes (statute) | Yes (district court in state applied AGC to state claim) | Yes |
| Vermont | | Yes (statute) | Yes (lower court applied AGC) | Yes |
| Virginia | Yes (no *Illinois Brick* Repealer or the equivalent) | Yes (statute) | | No |
| West Virginia | | Yes (statute) | Yes (high court has offered guidance) | Yes |
| Wisconsin | | Yes (case law) | Yes (lower court applied AGC) | Yes |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

# Appendix B: Summary of Federal Decisions Applying *AGC* State-By-State

The columns below correspond to the following cases:

1. Jones v. Micron Tech., Inc., 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019).
2. Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co., No. 13-01160, 2015 U.S. Dist. LEXIS 106292, at *65-68 (N.D. Cal. Aug. 11, 2015)
3. In re Lithium Ion Batteries Antitrust Litig., No. 13-2420, 2014 U.S. Dist. LEXIS 141358, at *74, 83 (N.D. Cal. Oct. 2, 2014).
4. In re Cathode Ray Tube Antitrust Litig., MDL No. 1917, 2013 U.S. Dist. LEXIS 118566, at *87-88 (N.D. Cal. May 2, 2013).
5. In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1151-52 (N.D. Cal. 2009)
6. In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal 2007)
7. In re Dynamic Random Access Memory Antitrust Litig., 536 F. Supp. 2d 1129, 1135 n.2 (N.D. Cal. 2008)
8. In re Graphics Processing Units Antitrust Litig., 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007).
9. In re Aftermarket Auto. Lighting Prods. Antitrust Litig., MDL No. 09-2007, 2009 U.S. Dist. LEXIS 133088, at *19-20 (C.D. Cal. July 6, 2009).
10. In re Dealer Mgmt. Sys. Antitrust Litig., 362 F. Supp. 3d 510, 541-45 (N.D. Ill. 2019).
11. Supreme Auto Transp. LLC v. Mittal, 238 F. Supp. 3d 1032, 1039 (N.D. Ill. 2017).
12. In re Broiler Chicken Antitrust Litig., 290 F. Supp. 3d 772, 815-16 (N.D. Ill. 2017).
13. In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., MDL No. 2031, 2015 U.S. Dist. LEXIS 84152, at *24-49 (N.D. Ill. June 29, 2015)
14. In re Interior Molded Doors Antitrust Litig., No. 18-00718, 2019 U.S. Dist. LEXIS 161045, at *38-47 (E.D. Va. Sept. 18, 2019).
15. In re Potash Antitrust Litig., 667 F. Supp. 2d 907, 943-46 (N.D. Ill. 2009).
16. In re Refrigerant Compressors Antitrust Litig., No. 9:02042, 2013 U.S. Dist. LEXIS 50737, at *31, 40-41 (E.D Mich. April 9, 2013).
17. In re Aluminum Warehousing Antitrust Litig., No. 13-2481, 2014 U.S. Dist. LEXIS 140765, at *25-28 (S.D.N.Y. Sept. 15, 2014).
18. In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig., No. 12-169, 2013 U.S. Dist. LEXIS 142466, *45-46 (D.N.J. Oct. 2, 2013).

X indicates the judge applied *AGC* where the plaintiff alleged to have participated in the relevant market within the state.

| State | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | | | | | X | | | | | | | | | | | | | |
| Alaska* | | | | | | X | | | | | | | | | | | | |
| Arizona | | | X | | X | | | X | | | | X | | | | | | |
| Arkansas* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| California | | X | X | X | X | X | X | X | | | | X | | | | | | |
| Colorado* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| Connecticut | | | | | | | | | | | | | | | | | | |
| Delaware* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| DC | | | | | | X | | | | | | | | | | | | |
| Florida* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| Hawaii | | | | X | | | | | | | | | | | | | X | X |
| Iowa | | | X | | X | | | X | | | | X | | | | | | |
| Kansas | | | X | | X | | | X | | | | X | | | | | | |
| Maine | | | | | | | | | | | | | | | | | | |
| Maryland | | | | | | | | | | | | | | | | | | |
| Massachusetts* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| Michigan | X | | X | | X | | | X | | | | X | | | X | | | |
| Minnesota | | | | | | X | | X | | | | X | | | | | | |
| Mississippi | | | | X | | X | | X | | | | X | | | | | | |
| Missouri* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| Montana* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| Nebraska | X | | X | | X | | | X | | | | X | | | X | | | |
| Nevada | | | | | | X | | X | | | | X | | | X | | | |
| New Hampshire | | | X | | | X | | X | | | | X | | | | | | |
| New Jersey* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| New Mexico | | | X | | | X | X | X | | | | X | | | X | | | |
| New York | | | X | | X | X | X | X | | | | X | | | X | | | |
| North Carolina | | | X | | X | X | X | X | | | | X | | | | | | |
| North Dakota | | | | | | X | | X | | | | X | | | | | | |
| Oregon | | | | | | | | X | | | | | | | | | | |
| Rhode Island | | | | | | | | | | | | | | | | | | |
| South Carolina | | | | | | | | | | | | | | | | | | |
| South Dakota | | | | | | X | X | X | | | | X | | | | | | |
| Tennessee | | | X | | | X | | X | | | | X | | | | | | |
| Utah | | | | | | X | | X | | | | X | | | | | | |
| Vermont | | | | | | X | | X | | | | | | | | | | |
| Virginia* | *--Never addressed--* | | | | | | | | | | | | | | | | | |
| W. Va. | | | X | | | X | X | X | X | | | | | | | | | |
| Wisconsin | | | X | | | X | X | X | X | | | | | | | | | |

32

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

**Appendix C: State by State Analysis of *AGC* Applicability & State Standing/Remoteness Doctrines**

| | **(1) States with a High Court that Expressly Applied the *AGC* Factors** |
|---|---|
| IA | **State High Court**: *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007) (applying *AGC* in affirming dismissal of Iowa antitrust claims). |
| NE | **State High Court**: *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299-301 (Neb. 2006) (applying *AGC* in affirming dismissal of Nebraska antitrust claims). |
| NV | **State High Court**: *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.*, 423 P.3d 605, 607 (Nev. 2018) (applying the *AGC* factors and describing the Clayton Act as the "counterpart" to the UTPA). |

| | **(2) States with High Court Opinions Suggesting *AGC* Factors Would Likely Be Applied** |
|---|---|
| AZ | **State High Court**: *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 110 (Ariz. 2003) ("Regarding the dissent's iteration of the Supreme Court's comments on standing, we urge caution. The Court observed that the question 'which persons have been injured by an illegal overcharge' differs from the question 'which persons have sustained injuries too remote to give them standing to sue for damages under § 4.' And we agree that this is true.") (quoting *Illinois Brick*, 431 U.S. at 728 n.7). |
| | **State Lower Court**: *Luscher v. Bayer A.G.*, No. CV 2004-01485, 2005 WL 6959406 (Ariz. Super. Ct. Sept. 14, 2005) (applying *AGC* factors to prohibit suit by indirect purchasers of end products); *see also Consiglio-Tseffos v. Visa USA Inc.*, No. CV 2003-020170, 2004 WL 3030043 (Ariz. Super. Ct. Dec. 8, 2004) (dismissing suit by consumers who purchased products in a separate market from the allegedly price-fixed market). |
| CA | **State High Court**: *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1077 (Cal. 2010) (citing *AGC* and *Vinci* in relation to its discussion about the requirement that plaintiffs establish "antitrust causation" under the Cartwright Act). |
| | **State Intermediate Court:** *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 339 (Cal. Ct. App. 1995) (applying *AGC* factors); *Wholesale Electricity Antitrust Cases I & II*, 55 Cal. Rptr. 3d 253, 265 (Cal. Ct. App. 2007) (same). |
| CT | **State High Court**: *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 121 (Conn. 2001) (citing *AGC* in its discussion of determining "directness" for standing purposes and agreeing with Third Circuit's application of *AGC* factors in analyzing whether damages were "speculative"); *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 288 (Conn. 2019) ("*Vacco* stands for the proposition that standing to bring a CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries. This remoteness requirement serves the same function as a privity requirement, as it mitigates any concerns associated with imposing limitless liability on CUTPA defendants.") (citing *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1066-67 (Conn. 2002)). |
| | **State Lower Court:** *Westport Taxi Service, Inc. v. Westport Transit District*, 235 Conn. 1, 15-16, 664 A.2d 719 (1995) (applying *AGC* factors in denying standing for Connecticut antitrust claims); *Waterford Parkade v. Picardi*, No. CV 94 0539883S, 1996 Conn. Super. LEXIS 679, at *15 (Super. Ct. Mar. 8, 1996) (same); *Wyatt Energy, Inc. v. Motiva Enters., LLC*, No. (X01) CV020174090S, 2002 Conn. Super. LEXIS 3995, at *17 (Super. Ct. Dec. 12, 2002) (same); *Roncari Dev. Co. v. Gmg Enters.*, 45 Conn. Supp. 408, 425, 718 A.2d 1025, 1034 (1997). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

| | | |
|---|---|---|
| | HI | **State High Court**: *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 326 & n.33 (Haw. 2010) (highlighting "Hawaii's virtually word-for-word adoption of the prohibitions contained in the Sherman, Clayton, and FTC acts" and recognizing "federal courts have consistently applied the concept of antitrust injury when determining if a plaintiff has federal antitrust standing" but declining to consider *AGC*'s applicability in the instant case); *see also Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Haw. 77, 114 n.32, 148 P.3d 1179, 1216 (2006) (finding that plaintiff had "clearly alleged a direct injury to its business"); *Cieri v. Leticia Query Realty*, 80 Haw. 54, 66, 905 P.2d 29, 41 (1995) (holding "an essential element of the standing inquiry is, inter alia, that the party or parties seeking standing suffered an actual or threatened injury" and that "the injury is fairly traceable to the defendant's actions."). |
| | WV | **State High Court**: *Aikens v. Debow*, 208 W. Va. 486, 492, 541 S.E.2d 576, 582 (2000) (citing *AGC* regarding the "need to draw a line to prevent unfettered imposition of unlimited exposure to liability" and explaining that "the doctrine of remoteness is a component of proximate cause"). |
| | | **State Lower Court:** *Princeton Ins. Agency v. Erie Ins. Co.*, 2008 W.V. Cir. LEXIS 24, *9 (holding that Supreme Court and Fourth Circuit precedent should inform analysis of antitrust standing under West Virginia's antitrust act). |

| *(3) States with Intermediate Courts that Expressly Applied the AGC Factors* | | |
|---|---|---|
| | NY | **State Intermediate Court:** *Ho v. Visa USA, Inc.*, 16 A.D.3d 256, 793 N.Y.S. 2d 8, 8-9 (N.Y. App. Div. 2005) *aff'd*, 16 A.D.3d 256, 793 N.Y.S.2d 8 (App. Div. 2005) (affirming trial court's denial of indirect purchaser standing based upon trial court's application of *AGC* factors). |
| | | **State Lower Court:** *Williams v. Citigroup, Inc.*, 36 Misc. 3d 1201[A], 954 N.Y.S.2d 762, 2012 NY Slip Op 51145[U], at *4 (N.Y. Sup. Ct. 2012) (holding that plaintiffs' "damages [we]re too remote from the alleged injurious" activity to confer standing) (quotation marks and citations omitted); *cf. State ex rel. Spitzer v. Daicel Chem. Indus.*, Ltd., No. 0403878, 2005 N.Y. Misc. LEXIS 8435, at *23-28 (N.Y. Sup. Ct. Aug. 9, 2005) (dismissing price-fixing claims against defendants for state law claims because alleged injuries to indirect purchasers were too remote), *aff'd*, 840 N.Y.S.2d 8 (N.Y. App. Div. 2007). |
| | | **Second Circuit:** *Gatt Communications, Inc. v. PMC Associates, L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013) ("We see no reason—nor has Gatt provided any—to interpret the Donnelly Act differently than the Sherman Act with regard to antitrust standing."). |
| | NM | **State Intermediate Court**: *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772, 778-81 (N.M. Ct. App. 2012) (applying AGC factors). |

| *(4) States with Lower Courts that Apply the AGC Factors* | | |
|---|---|---|
| | DC | **State Lower Court:** *Peterson v. Visa. U.S.A., Inc.*, No. 03-8080, 2005 D.C. Super. LEXIS 17, at *12-16 (D.C. Super. Ct. 2005) (citing *AGC* as "seminal case" and applying *AGC* factors in analyzing standing). |
| | KS | **Kansas District Court:** *Wrobel v. Avery Dennison Corp.*, No. 05-cv-1296, 2006 WL 7130617, at *3-4 (D. Kan. Feb. 1, 2006) ("[T]he Court finds that the *AGC* standing test may be applied to this action even though the KRTA specifically contemplates indirect purchaser suits."). |
| | | **Kansas District Court:** *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1212 (D. Kan. 1999) ("[T]he court concludes that standing under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts."). |
| | ME | **State Lower Court:** *Knowles v. Visa U.S.A.*, No. CV-03-707, 2004 Me. Super. LEXIS 227, at *13 (Super. Ct. Me. Oct. 20, 2004) (applying *AGC* but disregarding "directness" factor and holding "[i]t is probable that the Maine Law Court, if presented with this issue, would look to the [*AGC*] factors in determining standing under Maine's antitrust laws"). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

| | | |
|---|---|---|
| | MI | **State Lower Court:** *Stark v. Visa U.S.A. Inc.*, No. 03- 055030-CZ, 2004 WL 1879003, at *4 (Mich. Cir. July 23, 2004) (agreeing with "courts in other states that have repealed the *Illinois Brick* rule [and that] have continued to apply antitrust standing requirements to dismiss the claims of plaintiffs who assert only derivative or remote injuries"). |
| | | **Michigan District Court:** *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-CV-13178, 2009 U.S. Dist. LEXIS 45298, at *63 (E.D. Mich. May 29, 2009) (applying federal standing analysis to dismiss Michigan state antitrust claim), *rev'd in part on other grounds*, 2009 U.S. Dist. LEXIS 61517 (E.D. Mich. July 17, 2009); *see also Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 898 (D. Mich. 1995) ("Michigan antitrust law is identical to federal law and follows the federal precedents."). |
| | NC | **State Lower Court:** *Crouch v. Crompton Corp.*, No. 02-CVS-4375, 2004 NCBC LEXIS 6, *31, 61 ("[R]econciling *Illinois Brick* and *AGC* in this state requires that factor 3 be modified and that the application of factors 2 and 5 be limited by the statutory recognition of indirect purchaser claims. The courts of this state may not deny standing based upon *Illinois Brick* but must still determine standing based upon relevant factors."). |
| | ND | **State Lower Court:** *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2115144, at *2-3 (N.D. Dist. Ct. Aug. 23, 2004) (dismissing claims because "[p]laintiffs' alleged injuries do not satisfy antitrust standing principles identified in [*AGC*]"). |
| | SD | **State Lower Court:** *Cornelison v. Visa U.S.A., Inc.*, Civ. No. 03-1350, at 54 (S.D. Cir. Ct. Sept. 29, 2004) (transcript of bench ruling in which court applied a modified *AGC* analysis in dismissing indirect purchaser claims for lack of antitrust standing). |
| | VT | **State Lower Court:** *Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 Vt. Super. LEXIS 42, at *7 (Vt. Super. Dec. 27, 2004) ("[I]n applying the general factors of *Associated General Contractors*, the court holds that Mr. Fucile does not have standing in this case."). |
| | WI | **State Lower Court:** *Strang v. Visa*, No. Sl560-03, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) ("[O]ur appellate courts would look to [the AGC] factors for guidance in assessing an indirect purchaser's standing"). |

| | | |
|---|---|---|
| **(5) District Courts in States that Apply the AGC Factors to Antitrust Claims brought Under Those States' Laws** | | |
| | OR | **Oregon District Court**: *Patterson Dental Co. v. McGaughey*, 1985 WL 25732, at *2 (D. Or. Dec. 9, 1985) (holding analysis of the *AGC* factors "also applies to defendant's state antitrust counterclaim"); *see also Or. Laborers-Employers Health v. Morris*, 17 F. Supp. 2d 1170, 1176 n.2 (D. Or. 1998) ("Oregon laws, O.R.S. 646.725 and 646.730, are nearly identical to the Sherman Act, sections 1 and 2. Chapter 646.715(2) requires that state courts look to federal case law for guidance . . . "). |
| | | **Utah District Court:** *Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1152-54 (D. Utah 2001) (applying *AGC* factors based on 10th Circuit precedent to claims brought under federal antitrust law and Utah's antitrust statute); *see also Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 805 (D. Utah 1988) (holding an employee lacked antitrust standing under Utah's antitrust statute and stating that the court "sees no reason to rule differently with respect to the state claim than with respect to the federal claim"). |
| | UT | |
| | | **10th Circuit**: *Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992) (stating that the Utah Antitrust Act "is essentially identical to the Sherman Act" and holding that "the Utah Antitrust Act does not apply for the same reason that the Sherman Act does not apply") |

| | | |
|---|---|---|
| **(6) State that Applies a Modified AGC Standing Test** | | |
| | MN | **State High Court**: *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 630-31 (Minn. 2007) (declining to adopt *AGC* but recognizing that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law"). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

| **(7) State Without Harmonization Provisions that Considers Factors Similar to AGC** | |
|---|---|
| TN | **State Intermediate Court**: *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, No. W1999-01061-COA-R9-CV, 2000 Tenn. App. LEXIS 644, at \*11-12, 26-29 (Ct. App. Sept. 26, 2000) (holding that plaintiff lacked standing to pursue antitrust claims "[g]iven the fact that the Funds' injuries are unquestionably indirect, and considering the speculation required to prove the Funds' damages, we must conclude that the Funds' alleged damages are too remote, as a matter of law, to support recovery") (discussing *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 181 (Tenn. 1992) and *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn. 1997)). |
| | **State Lower Court**: *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-Ill, 1980 WL 4696, at \*2 n.2 (Tenn. Ch. Ct. 1980) ("Authorities which define the character of private damage suits under the federal anti-trust statutes . . . are most persuasive."). |

| **(8) States in which the Lack of an Illinois Brick Repealer Bars Suit** | |
|---|---|
| DE | *Ireland v. Microsoft Corp.*, 2001 WL 1868946, at \*1 (Mo. Cir. Jan. 24, 2001). |
| MO | *Sickles v. Cabot Corp.*, 379 N.J. Super. 100, 117, 877 A.2d 267, 277 (App. Div. 2005). |
| NJ | *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019). |
| VA | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1191 (N.D. Cal. 2009). |

| **(9) States in which only the State AG has standing to sue on behalf of indirect purchasers** | |
|---|---|
| AL | **Statute:** ALASKA STAT. § 45.50.577 (2019). |
| AR | **Statute:** ARK. CODE ANN. § 4-75-212(b) (2020); ARK. CODE ANN. § 4-75-315(b) (2020). |
| CO | **Statute:** COLO. REV. STAT. §§ 6-4-111(2)-(3)(b) (2019). |
| MD | **Statute:** MD. COM. LAW CODE ANN. § 11-209(b)(ii) (LEXIS 2020); *see also* MD. HEALTH-GEN. CODE ANN. § 21-1114 (LEXIS 2020). |
| RI | **Statute:** R.I. GEN. LAWS § 6-36-12(g) (2020). |

| **(10) States in which State Antitrust Law does not reach Interstate Sales to Indirect Purchasers** | |
|---|---|
| AL | **State High Court**: *Abbott Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999) ("the field of operation of Alabama's antitrust statutes . . . regulate monopolistic activities that occur . . . within the geographic boundaries of this state.") (quotation marks omitted). |
| MS | **State High Court**: *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, 2003 U.S. Dist. LEXIS 15612, 2003 WL 22070561, at \*2 (D. Md. Aug. 22, 2003) (interpreting a Mississippi Supreme Court case, *Standard Oil Co. of Ky. v. State ex rel. Attorney Gen.*, 107 Miss. 377, 65 So. 468 (Miss. 1914), to hold that Mississippi law requires that "plaintiffs . . . allege[] at least some conduct by [defendant] which was performed wholly intrastate"); *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 266-67 (S.D.N.Y 2019). |
| | **State High Court**: *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004) (citing *AGC* in denying Plaintiff's antitrust claims on grounds of proximate causation and "remoteness"). |
| NC | **Fourth Circuit**: *ITCO Corp. v. Michelin Tire Corp.*, Commercial Div., 722 F.2d 42, 48 n.9 (4th Cir. 1983) (construing North Carolina's Unfair Practices Act as addressing "primarily local concerns"). |
| | **North Carolina District Court**: *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987)); Merck & Co., Inc. v. Lyon, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996). |
| TN | **State High Court**: *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

| | |
|---|---|
| | (Tenn. 2005) (affirming dismissal on the basis that plaintiff failed to allege "anticompetitive conduct affected Tennessee to a substantial degree"). |
| WI | **State High Court**: *Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139, 158 (Wis. 2005) (plaintiff must allege conduct "occured within this state" or "substantially affects" Wisconsin). |

| | |
|---|---|
| **(11) States with Consumer Protection Statutes Requiring Dismissal for Standing Deficiencies** | |
| AK | *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 896, 907 (N.D. Cal. 2008) ("the result that appears most consistent with existing Alaska law is that the AUTPCPA does not provide a basis on which Plaintiffs may bring a suit for money damages under Alaska law."). |
| AR | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *54 (N.D. Ill. June 29, 2015) (causation deficiencies "preclude their rebranded antitrust claims" under the ADTPA); *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 2011 Ark. App. 347, 384 S.W.3d 540, 552 (Ark. Ct. App. 2011); *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 882, 888 (E.D. Ark. 2008). |
| CA | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *59 (N.D. Ill. June 29, 2015) ("the Court finds that Indirect Plaintiffs lack standing to bring their claims under the UCL"); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589, 626 n.33 (Cal. Ct. App. 2009) (defendant's conduct "must be more than a remote or trivial factor" in causing the injury); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 541 (Cal. 1999). |
| CO | Colo. Rev. Stat.. 6-1-113 (standing to obtain damages not available to class action plaintiffs); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 179 (D. Me. 2004) (noting that a plaintiff must show the "deceptive trade practice" had "caused" the injury) |
| DE | *Knapp v. McCleary*, C. A. No. 83C-JN-87, 1987 Del. LEXIS 1198, at *7 (July 9, 1987) ("the Deceptive Trade Practices Act, 6 Del.C. § 2531-44" requires "[a] plaintiff suing under the Act [to] have a business or trade interest at stake; a retail consumer lacks standing to sue[.]") |
| FL | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *61 (N.D. Ill. June 29, 2015) ("the Florida Supreme Court would either adopt the federal court's repackaging theory or read FDUTPA's causation requirement narrowly so as to preclude injuries that are too remote from the alleged" violation.) |
| NE | *DRAM II*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) (holding *AGC* applies to Nebraska Consumer protection statute); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006). |
| NY | *DRAM II*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) (holding *AGC* applies to New York consumer protection statute); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8 (N.Y.A.D. 1st Dept. 2007) (indirect purchasers' claims too remote under Gen. Bus. Law § 349); *see also Ho v. Visa U.S.A., Inc.*, 787 N.Y.S.2d 677, at *2-5 (N.Y. Sup. Ct. 2004), *aff'd*, 793 N.Y.S.2d 8 (N.Y. App. Div. 2005). |
| NC | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *64-65 (N.D. Ill. June 29, 2015) ("Court dismisses Indirect Plaintiffs' price-fixing claim under § 75-1.1 of NCUDTPA.") |
| VT | *Fucile v. Visa U.S.A. Inc.,* No. S1560-03 CNC, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004) (no standing where the "causal chain" was "too long."). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

**Appendix D: State with Harmonization Provisions**

| State | Relevant Authority |
|-------|---------------------|
| AL | **High Court**: *Vandenberg v. Aramark Educ. Servs., Inc.*, 81 So. 3d 326, 335 (Ala. 2011). |
| AK | **High Court**: *West v. Whitney-Fidalgo Seafoods*, 628 P.2d 10, *14 (Alaska 1981). |
| AZ | **Statute**: ARIZ. REV. STAT. § 44-1412 (LexisNexis 2020). |
| AR | None. |
| CA | **High Court**: *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 382(Cal. 1983). |
| CO | **Statute**: COLO. REV. STAT. § 6-4-119 (2019). |
| CT. | **Statute**: CONN. GEN. STAT. § 35-44B (2020). |
| DE | **Statute**: DEL. CODE. ANN. tit. 6, § 2113 (2020). |
| DC | **Statute**: D.C. CODE § 28-4515 (1981). |
| FL | **Statute**: FLA. STAT. ANN. § 542.32 (2020). |
| HI | **Statute**: HAW. REV. STAT. ANN. § 480-3 (2019). |
| IA | **Statute**: IOWA CODE § 553.2 (2019). |
| KS | **Statute**: KAN. STAT. ANN. § 50-163(b) (2020). |
| ME | **High Court**: *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 424 (Me. 2009). |
| MD | **Statute**: MD. COM. LAW CODE ANN. §11-202(a)(2) (2020). |
| MA | **Statute**: MASS. ANN. LAWS ch. 93, § 1 (2019). |
| MI | **Statute**: MICH. COMP. LAWS. SERV. § 445.784(2) (2020). |
| MN | **High Court**: *See e.g.*, *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007). |
| MS | **High Court**: *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004). |
| MO | **Statute**: MO. REV. STAT. § 416.141 (2019). |
| MT | **High Court**: *Smith v. Video Lottery Consultants*, 858 P.2d 11, 12–13 (Mont. 1993). |
| NE | **Statute**: NEB. REV. STAT. ANN. § 59-829 (2020). |
| NV | **Statute**: NEV. REV. STAT. ANN. § 598A.050 (2019). |
| NH | **High Court**: *Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002). |
| NJ | **Statute**: N.J. REV. STAT. § 56:9-18 (2020). |
| NM | **Statute**: N.M. STAT. ANN. § 57-1-15 (2020). |
| NY | **High Court**: *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988). |
| NC | **High Court**: *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973). |
| ND | None. |
| OR | **Statute**: OR. REV. STAT. § 646.715(2) (2020). |
| RI | **Statute**: R.I. GEN. LAWS. § 6-36-2(b) (2020). |
| SC | **High Court**: *S.C. Cotton Growers' Co-op. Ass'n v. English*, 133 S.E. 542, 544 (S.C. 1926) |
| SD | **Statute**: S.D. CODIFIED LAWS § 37-1-22 (2020). |
| TN | None. |
| UT | **Statute**: UTAH CODE ANN. § 76-10-3118 (2020). |
| VT | **Statute**: VT. STAT. ANN. tit. 9, § 2453a(c) (2019). |
| VA | **Statute**: VA. CODE ANN. § 59.1-9.17 (2020). |
| WV | **Statute**: W. VA. CODE. ANN. § 47-18-16 (2020). |
| WI | **High Court**: *Grams v. Boss*, 294 N.W.2d 473, 480 (Wis. 1980). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## Appendix E: Applicability of Each of Defendants' Arguments to State Claims

| | (§ IV) No Art. III Standing | (§ V) No Repres. Plfs.* | (§ VI) No Antitrust Standing | (§ VI.B.3) No *Ill. Brick* Repealer | (§ VI.B.4) Only AG Asserts Claims | (§ VI.B.5) Only Intrastate Sales | (§VII.A) *Ill. Brick* not Retroactive | (§VII.B) Failure to Notify AG | (§ VIII.A) Unconscion. Cond. Not Alleg. | (§ VIII.B) Class Actions Barred | (§ VIII.C) No Stand. as Consumers | (§ VIII.D) 9(b) Deficiency | (§ VIII.E) Interstate Sales not Reached | (§ VIII.F) No Enumerated Violation | (§ VIII.G) No Reliance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama AT | X | X | X | | | X | | | | | | | | | |
| Alaska CP | X | X | X | | X | | | | | X | | | | | |
| Arizona AT | X | X | X | | | | | X | | | | | | | |
| Arkansas CP | X | X | X | | X | | | | X | X | | | | X | X |
| California AT | X | | X | | | | | | | | | | | | |
| California CP | X | | X | | | | | | | | | | | | X |
| Colorado CP | X | X | X | | X | | | | | X | | | | X | |
| Connecticut AT | X | X | X | | | | | | | | | | | | |
| Delaware CP | X | X | X | X | | | | | | | | | X | X | |
| DC AT | X | X | X | | | | | | | | | | | | |
| DC CP | X | X | | | | | | | | | | X | | | |
| Florida CP | X | X | X | X | | | | | | | | | X | | |
| Hawaii AT | X | X | X | | | | | X | | | | | | | |
| Hawaii CP | X | X | | | | | | | | | | X | | | |
| Iowa AT | X | X | X | | | | | | | | | | | | |
| Kansas AT | X | X | X | | | | | | | | | | | | |
| Maine AT | X | X | X | | | | | | | | | | | | |
| Maryland AT | X | X | X | | X | | | | | | | | | | |
| Massachusetts CP | X | X | | X | | | | | | | | | | X | |
| Michigan AT | X | | X | | | | | | | | | | | | |
| Michigan CP | X | | | | | | | | | | | | X | | X |
| Minnesota AT | X | | X | | | | | | | | | | | | |
| Minnesota CP | X | | | | | | | | | | | | X | | |
| Mississippi AT | X | X | X | | | X | | | | | | | | | |
| Missouri CP | X | X | X | | | | | | | | X | | | | |
| Montana CP | X | X | | | | | | | | X | X | | | | |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Nebraska AT | X | X | X | | | | | | | | | | | | |
| Nebraska CP | X | X | X | | | | | | | | | | | | |
| Nevada AT | X | X | X | | | | | X | | | | | | | |
| Nevada CP | X | X | | | | | | X | | | | | | X | |
| New Hampshire AT | X | X | X | | | | X | | | | | | | | |
| New Hampshire CP | X | X | | | | X | X | | | | | | X | | |
| New Jersey CP | X | X | X | X | | | | | | | | | | | |
| New Mexico AT | X | X | X | | | | | | | | | | | | |
| New Mexico CP | X | X | | | | | | | X | | | | | | |
| New York AT | X | | X | | | | | | | | | | | | |
| New York CP | X | | X | | | | | | | | | | | | |
| North Carolina AT | X | | X | | | | | | | | | | | | |
| North Carolina CP | X | | X | | | | | | | | | | | X | X |
| North Dakota AT | X | X | X | | | | | | | | | | | | |
| North Dakota CP | X | X | | | | | | | | | | | | | |
| Oregon AT | X | X | X | | | | X | | | | | | | | |
| Oregon CP | X | X | | | | | X | | | | | | | X | |
| Rhode Island AT | X | X | X | | X | | X | | | | | | | | |
| Rhode Island CP | X | X | | | | | X | | | | X | | | X | |
| South Carolina CP | X | X | | X | | | | | | X | | | | | |
| South Dakota AT | X | X | X | | | | | | | | | | | | |
| South Dakota CP | X | X | | | | | | | | | | | | X | |
| Tennessee AT | X | X | X | | | | | | | | | | | | |
| Utah AT | X | X | X | | | | | | | | | | | | |
| Utah CP | X | X | | | | | | | | | | | | X | |
| Vermont AT | X | X | X | | | | | | | | | | | | |
| Vermont CP | X | X | | | | | | | | | X | | | | |
| Virginia CP | X | X | X | X | | | | | | X | | | | X | |
| W. Va. AT | X | X | X | | | | | | | | | | | | |
| Wisconsin AT | X | X | X | | | | | | | | | | | | |

*Reseller Plaintiffs Only

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Dated: April 17, 2020

Respectfully submitted,

**BAKER & McKENZIE LLP**
Mark H. Hamer
Christina M. Wong
Mark G. Weiss

By: /s/ Mark H. Hamer
　　　Mark H. Hamer
*Attorneys for Defendants NHK Spring Co.,*
*Ltd., NHK International Corporation, NHK*
*Spring (Thailand) Co., Ltd., NAT Peripheral*
*(Dong Guan) Co., Ltd. and NAT Peripheral*
*(H.K.) Co., Ltd.*

**MORGAN, LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr.
Scott A. Stempel
C. Cecilia Wang

By: /s/ J. Clayton Everett, Jr.
　　　J. Clayton Everett, Jr.
*Attorneys for Defendants TDK Corporation,*
*Magnecomp Precision Technology Public*
*Co. Ltd., Magnecomp Corporation, SAE*
*Magnetics (H.K.) Ltd., and Hutchinson*
*Technology Inc.*

## **ATTESTATION**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

Dated: April 17, 2020　　　　　　By: /s/ Mark H. Hamer

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES