UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC |
|---|---|
| | MDL No. 2918 |
| This Document Relates to:<br><br>ALL CASES | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:     Hon. Maxine M. Chesney<br>Date:      May 29, 2020<br>Time:      10:30 a.m.<br>Courtroom: 7, 19th Floor |

Pursuant to the Stipulation and Order Continuing Further Case Management Conference entered in the above-captioned MDL matter (ECF No. 159), and the Standing Order for All Judges of the Northern District of California ("Standing Order"), End-User, Reseller and Seagate Plaintiffs and Defendants hereby submit this Joint Case Management Statement. This statement details the progress the parties have made to advance discovery efforts and outlines the current state of the outstanding issues.

    a.    **Plaintiffs' Position.**

Plaintiffs believe a brief telephonic status to address matters raised in sections 12 and 17 below will be beneficial.

    b.    **Defendants' Position**

Given the cooperation between the parties and the lack of any fully briefed motions or

disputes pending before the Court, Defendants see no need for a status hearing at this time. Defendants do not believe that the issues raised in sections 12 or 17 require a conference and, if the Court agrees, would be happy to defer a further case management conference until either the same date as the hearing on the motions to dismiss or shortly thereafter, as the parties jointly propose below in section 17.

### 1.   JURISDICTION AND SERVICE

#### a.   Subject Matter Jurisdiction

Plaintiffs contend, and Defendants do not dispute, that this Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 and §1337 (federal question jurisdiction over Plaintiffs' Sherman Act and Clayton Act claims); 28 U.S.C. §1367 (supplemental jurisdiction over Plaintiffs' state law claims); and 28 U.S.C. § 1332(d) (End-User and Reseller Plaintiffs assert class action claims that meet the requirements of the Class Action Fairness Act of 2005). End-Users' Consolidated Compl., ¶¶ 10-11; Resellers' Consolidated Compl., at ¶ 13.

#### b.   Personal Jurisdiction

Plaintiffs contend that this Court has personal jurisdiction over Defendants because Defendants, either directly or through the ownership or control of their United States subsidiaries, conduct substantial business throughout the United States, and they have purposefully availed themselves of the laws of the United States.  Plaintiffs further allege that Defendants' conspiracy to fix the prices of Hard Disk Drive ("HDD") Suspension Assemblies substantially affected commerce throughout the United States and in the various states, because Defendants, directly or through their agents, engaged in activities affecting those states and have purposefully availed themselves of the laws of those states in connection with their activities relating to the production, marketing, sale and/or distribution of HDD Suspension Assemblies. End-Users' Consolidated Compl., ¶¶ 14-17; Resellers' Consolidated Compl., at ¶ 15.  Further, the Seagate Plaintiffs assert that Defendants have consented to this Court's personal jurisdiction by agreeing to the mandatory venue provisions contained in Defendants' agreements with Seagate relating to HDD Suspension Assemblies.

Defendant SAE Magnetics (H.K.) Ltd. ("SAE") has filed a motion to dismiss Plaintiffs' claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The other Defendants have not challenged the Court's personal jurisdiction over them. Defendants' submission to the Court's personal jurisdiction does not constitute an admission of any of the legal or factual bases set forth above by Plaintiffs.

### c.   Venue

The parties acknowledge that this Court is a legally appropriate venue for this Multi-District Litigation.

### d.   Service

All Defendants have been served or stipulated to the acceptance of service in satisfaction of the requirements of Fed. R. Civ. P. 4.

## 2.   FACTS

### a.   Plaintiffs' Statement

End-User and Reseller Plaintiffs filed their respective consolidated amended complaints under seal on February 19, 2020 and February 20, 2020, respectively (ECF Nos. 153, 154), and public record versions thereof were filed on March 7 and March 6, respectively (ECF Nos. 166, 167).[1] Seagate's complaint was filed on February 18, 2020, and the Seagate action was related to these MDL proceedings by order dated February 20, 2020. ECF No. 157.

These actions arise from an alleged price-fixing conspiracy and other anticompetitive conduct in the market for HDD Suspension Assemblies. Suspension Assemblies are a critical component of HDDs, and are one of the highest cost components of an HDD. HDDs are used to store information electronically and may be incorporated into finished products such as desktop or laptop computers, network servers, and enterprise storage systems or sold as stand-alone

---

[1] Resellers also filed a corrected version of their complaint, on April 17, 2020 (ECF No. 190)

electronic storage devices.[2]  Suspension Assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

      Plaintiffs allege that, to carry out their conspiracy, Defendants (a) engaged in discussions, and attended meetings, in which they reached and refined agreements to refrain from competing on prices for, and fix the prices of, Suspension Assemblies to be sold in the United States and elsewhere, exchanged bidding information and agreed on bids for Suspension Assemblies, and allocated market share and coordinated the market structure for supplying Suspension Assemblies; (b) exchanged Suspension Assembly pricing information, including anticipated pricing quotes and Seagate confidential information, in the United States and elsewhere; (c) relied on the agreements identified above and used the exchange of pricing and other information to inform their negotiations with U.S.-based and foreign customers that purchased Suspension Assemblies and produced HDDs for sale in, or for delivery to, the United States and elsewhere; (d) sold price-fixed Suspension Assemblies in, or for delivery to, the United States; and (e) accepted payment for price-fixed Suspension Assemblies sold in, or for delivery to, the United States and elsewhere at artificially inflated prices.

      Plaintiffs are (1) indirect purchaser resellers (i.e., plaintiffs who purchased Suspension Assemblies for resale), (2) indirect purchaser end-users (i.e., plaintiffs who purchased Suspension Assemblies for their own use and not for resale), and (3) the Seagate Plaintiffs (i.e., purchasers of suspension assemblies, and Head Gimbal Assemblies ("HGAs") containing suspension assemblies, for use in making HDDs for sale).  Plaintiffs allege that, as a result of Defendants' unlawful conduct, they have been harmed by paying inflated, supra-competitive prices for Suspension Assemblies.  Plaintiffs bring claims for damages and injunctive relief

---

[2] *See* Information, *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 29, 2019), *available at* https://www.justice.gov/opa/press-release/file/1188586/download; *see also* Rule 11 Plea Agreement ("Plea Agreement"), *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 26, 2019), ECF No. 15.

under Sections 4 and 16 of the Clayton Act for violations of Section 1 of the Sherman Act, and for damages under the antitrust, unfair competition, consumer protection and unjust enrichment laws of various states.  Seagate Plaintiffs also bring a claim for damages for breach of agreements Defendants entered with Seagate relating to HDD Suspension Assemblies.

As explained in their complaints, End-User and Reseller Plaintiffs intend to show, through the use of regression analyses recognized by numerous courts, that the overcharge attributable to Defendants' collusive conduct flowed to them, through the chain of distribution.

The United States Department of Justice ("DOJ") filed a one-count charge against NHK Spring Co., Ltd. ("NHK Spring") for alleged violation of the Sherman Act, to which NHK Spring pleaded guilty, and agreed to pay $28.5 million in criminal fines and cooperate in the DOJ's ongoing investigation of the HDD Suspension Assemblies industry.  *See* Plea Agreement. NHK Spring and the DOJ also "agree[d] that, in light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information."[3]  In noting the parties' agreement regarding no restitution order, the DOJ expressly referenced the pendency of these actions.  *Id.*  Similarly, as Assistant Attorney General of the DOJ Antitrust Division Makan Delrahim described, HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."[4]

The NHK Plea Agreement states that "[d]uring the relevant period, the defendant and its co-conspirators manufactured HDD suspension assemblies outside the United States and sold them in, or for delivery to, the United States.  During the relevant period, the defendant and its

---

[3] United States' Sentencing Memorandum at 8, in *United States of America v. D-1; NHK Springs Co., Ltd.*, No. 2:19-cr-20503-MAG-DRG (E.D. Mich. Dec. 5, 2019) (ECF No. 21).

[4] Department of Justice, *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives* (July 29, 2019), available at https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

co-conspirators sold foreign-manufactured HDD suspension assemblies outside the United States for incorporation into products—namely, hard disk drives—that were sold in, or for delivery to, the United States.  During the relevant period, HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies traveled in, and substantially affected, interstate and import trade and commerce.  During the Relevant Period, the conspiracy involved and had a direct, substantial and reasonably foreseeable effect on interstate and import trade and commerce." Plea Agreement at 5.

On February 13, 2020, the DOJ indicted Hitoshi Hashimoto and Hiroyuki Tamura for their roles in the "conspiracy to suppress and eliminate competition by agreeing to stabilize, maintain, and fix prices for HDD suspension assemblies sold in the United States and elsewhere."[5]  Both were general managers of NHK Spring's disk drive suspension and component sales department, who were involved in the sale and pricing of NHK Spring's HDD suspension assemblies.

Defendants' motions to dismiss do not contest the plausibility of Plaintiffs' conspiracy allegations under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).  Defendants' Joint Motion to Dismiss the Class Plaintiffs' Complaints does not dispute that the Class Plaintiffs have claims for HDD Suspension Assemblies sold abroad and shipped to the United States.  As for Defendants' standing arguments, they have been rejected by numerous other courts.

b. **Defendants' Statement**

HDD Suspension Assemblies are tiny components used to guide the heads that are designed to read data stored on HDDs.  HDD Suspension Assemblies are alleged to cost less than $1 USD.  Defendants' sales of those products during the periods at issue in the Complaints were made almost exclusively outside the United States and were incorporated into HDDs outside the United States.

None of the End-User or Reseller Plaintiffs allege that they purchased HDD Suspension

---

[5] Indictment at ¶ 6, United States v. Hitoshi Hashimoto and Hiroyuki Tamura, No. 3:20-cr-00070-JD (N.D. Cal. Feb. 13, 2020).

Assemblies from Defendants; and most (if not all) did not purchase HDDs as stand-alone products. Instead, they generally allege that they purchased (a) other products that vary from laptop computers, to photocopy machines, to DVRs, that (b) incorporated HDDs, that (c) in turn incorporated HDD Suspension Assemblies manufactured by Defendants. There is a long and complex distribution chain between the Defendants' sales of HDD Suspension Assemblies and the purchases on which Plaintiffs' claims are premised, with most of that distribution chain occurring outside the United States.

Defendants have moved to dismiss the indirect purchaser claims on the grounds that this complex chain of international commercial manufacturing and distribution raises significant standing deficiencies and that numerous other pleading deficiencies are apparent from the Complaint under various state law claims. Defendants have moved to dismiss Class Plaintiffs' claims in their entirety. Defendants have moved to dismiss Seagate's claims on the basis of pleading deficiencies that are apparent under various state law claims.

### 3. LEGAL ISSUES

The following issues of law are likely to require adjudication:

**Plaintiffs' Statement:**

a. Whether the requirements of Fed. R. Civ. P. 23(a) have been met, and whether there are common factual and legal issues that predominate over individualized issues sufficient to certify classes of indirect purchasers under Fed. R. Civ. P. 23(b)(2) and (b)(3) and, if so, the definitions of the classes.

b. The timing and scope of Defendants' agreements or understandings to fix, raise or stabilize the prices of Suspension Assemblies purchased indirectly by Plaintiffs in violation of Section 1 of the Sherman Act, or state antitrust, consumer protection and unjust enrichment laws.

c. Whether a permanent injunction should issue to the extent Defendants' alleged conduct has not concluded.

    d.   Whether Plaintiffs or other members of the respective classes have suffered damages, and if so, the appropriate class-wide measure of damages.

    e.   Whether Defendants state or can prove cognizable affirmative defenses.

    f.   Whether Defendants' misuse of Seagate's confidential business information, in furtherance of Defendants' conspiracy, violated Defendants' contractual obligations under their agreements with Seagate.

    g.   Whether Seagate's business and property were injured as a result of Defendants' violations and breaches.

**Defendants' Statement:**

    h.   Whether Plaintiffs have met the pleading requirements of Fed. R. Civ. P. 8(a).

    i.   Whether the laws on which Plaintiffs' claims are premised apply to the claims Plaintiffs are asserting.

    j.   The extent to which the significant foreign commerce alleged in this case is barred by the Foreign Trade Antitrust Improvements Act of 1982 as foreign commerce to which there is no direct, substantial, or reasonably foreseeable effect on a domestic U.S. market or where such effect does not give rise to a claim under the Sherman Act (or related state antitrust or consumer protection statutes).

    k.   Whether Plaintiffs' claims are time-barred.

    l.   Whether the Court has personal jurisdiction over certain Defendants.

    m.   Whether all Plaintiffs have standing to assert claims under all statutes alleged.

    n.   Whether the Plaintiffs have sustained an antitrust injury proximately caused by Defendants' actions as required by Section 4 of the Clayton Act and various state antitrust and consumer production statutes.

    o.   Whether certain other defenses bar Plaintiffs' claims as a matter of law.

**4.**    <u>**MOTIONS**</u>

    a.   <u>**Prior Motions**</u>

The following motions have been resolved: (1) End-User And Reseller Class Plaintiffs'

Notice Of Motion And Motion To Lift The Discovery Stay, filed April 24, 2020.  This motion was resolved by a stipulation among the parties to lift the discovery stay and allow written and document discovery to proceed before resolution of the motions to dismiss.  *See* Stipulation And Order Re: Lifting Of Discovery Stay And Coordination Of Discovery And Discovery Limits; Notice Of Withdrawal Of Motion To Lift Discovery Stay, filed May 14, 2020 (ECF No. 213).

### b. **Pending Motions**

The following motions are pending:  (1) Defendants' Joint Notice of Motion and Motion To Dismiss (1) End-Users' Consolidated Class Action Complaint and (2) Reseller Plaintiffs' Consolidated Amended Complaint; (2) Defendant SAE Magnetics (H.K.) Ltd.'s Motion To Dismiss Complaints For Lack Of Personal Jurisdiction (against all Plaintiffs); (3) Defendants' Notice Of Motion And Motion To Dismiss The Seagate Complaint.  All of these motions were filed on April 17, 2020.  Plaintiffs' responses to these motions are due June 1, 2020, Defendants' replies are due June 22, 2020, and the hearing on these motions is set for July 17, 2020.  ECF No. 169.

### c. **Anticipated Motions**

End-User and Reseller Plaintiffs anticipate filing motion(s) for class certification, and may file motions for summary judgment after taking discovery and other pretrial motions as necessary.  Seagate Plaintiffs may also file motions for summary judgment after taking discovery and may file other pretrial motions as necessary.  Plaintiffs reserve the right to argue waiver as to any motions filed by Defendants.

Defendants assert that the pending motion to dismiss, if granted, will dispose of all claims alleged by the putative Reseller and End-User classes.  Defendants anticipate filing against Seagate, and against the Reseller and End-User classes should any part of their claims survive dismissal, an early motion for summary judgment based on the Foreign Trade Antitrust Improvement Act of 1982 ("FTAIA") which will narrow Plaintiffs' claims to only what is permissible under the Sherman Act.  Defendants may also file motions for summary judgment after taking discovery, and other pretrial motions as necessary.

9                Case No. 19-md-02918-MMC
JOINT CASE MANAGEMENT STATEMENT

Plaintiffs oppose the filing of any early motion for summary judgment based on the FTAIA. Such a summary judgment motion raises factual questions that require the completion of discovery prior to adjudication. In any event, it is Plaintiffs' position that Defendants should not be allowed multiple summary judgment motions under the Court's Standing Orders for Civil Cases.

### 5. AMENDMENT OF PLEADINGS

The parties anticipate that upon final resolution of Defendants' motions to dismiss, the parties shall meet and confer regarding a deadline for amending the pleadings if necessary. The parties reserve the right to amend their pleadings as permitted by this Court and the Federal Rules of Civil Procedure.

### 6. EVIDENCE PRESERVATION

The parties have engaged in multiple Rule 26(f) conferences in-person, by telephone and through email and letter communications. The parties have met and conferred regarding evidence preservation, including discussion of the Northern District of California's Checklist for Rule 26(f) Meet and Confer Regarding ESI, and the Court's Guidelines for the Discovery of ESI. End-User and Reseller Plaintiffs and Defendants have exchanged information related to custodians, non-custodial sources of ESI and documents, structured data and non-structured data information systems, and other potential sources of ESI, and are continuing their discussions in this regard so as to inform their decisions and positions related to timing and scope of preservation of ESI and other evidence. Seagate Plaintiffs and Defendants are also in the process of discussing and exchanging these categories of information.

Until the parties reach an agreement on a preservation plan for all cases or the Court orders otherwise, each party will continue to take reasonable steps to preserve all evidence that may be relevant to this litigation.

### 7. DISCLOSURES

Class Plaintiffs and Defendants exchanged initial disclosures on March 23, 2020, and have also exchanged initial proposed lists of custodians, and information regarding the parties'

possession of relevant documents, tangible things and electronically stored information. Seagate Plaintiffs and Defendants exchanged initial disclosures on March 27, 2020, and are also in the process of discussing and exchanging the above categories of information. Reseller Plaintiffs have produced certain organizational charts. End Users are individuals who have no such organizational charts to produce. Seagate Plaintiffs will be producing certain organizational charts and document retention policies this month. Defendants have produced certain organizational charts and document preservation policies. The parties are continuing to meet and confer on the extent of each other's disclosures to date.

8. **DISCOVERY**

   a. **Joint Statement**

Since the February 21, 2020 Case Management Conference, the parties have negotiated or are negotiating the following discovery stipulations and proposed orders:

(i) *Stipulation And Order Regarding Non-Discoverability Of Certain Expert Materials And Communications* (filed May 1, 2020). ECF No. 205. This order has been entered. See ECF No. 206.

(ii) *Stipulation And Order Re: Lifting Of Discovery Stay And Coordination Of Discovery And Discovery Limits; Notice Of Withdrawal Of Motion To Lift Discovery Stay* (filed May 14, 2020). ECF No. 213. This order has been entered, and permits all parties to commence written and document discovery at this time. The parties also agreed to defer deposition discovery until after resolution of Defendants' current motions to dismiss (ECF No. 192; Seagate Action ECF No. 30) and entry of a deposition protocol, except that Plaintiffs reserved the right to seek depositions that may be pertinent to Defendant SAE's motion to dismiss for lack of personal jurisdiction. The order further provides for, *inter alia*, discovery coordination among the parties, and imposes certain limitations on certain written discovery.

(iii) *Stipulation And Order Regarding Production Of Electronically Stored Information And Hard Copy Documents*. ECF No. 218. This order has been entered.

The order addresses discovery of electronically stored information ("ESI") and hard copy documents in this matter, as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

(iv)  *Stipulation and [Proposed] Order Regarding Deposition Protocol*.  The parties have acknowledged that a deposition protocol needs to be negotiated and entered. The parties currently anticipate that they will commence this process shortly, and that a stipulation and proposed order will be submitted to the Court by no later July 1, 2020.

*Production of Documents Produced to Regulators*.  Class Plaintiffs first requested that Defendants produce to Plaintiffs documents that they produced to government authorities in connection with those regulators' investigation of the HDD suspension assembly market ("Regulator Documents") in October 2019.  *See* Joint Case Management Statement (filed November 8, 2019) at 9.  Class Plaintiffs thereafter provided Defendants with a provisional request for production of documents that considered and attempted to accommodate certain objections and other concerns raised by Defendants.  Defendants agreed to respond to that request, review documents subject to it, and produce documents, subject to any objections, during the pendency of any motions to dismiss.  *See* Joint Case Management Statement (filed February 14, 2020), ECF. No. 150, at 9; Case Management Conference Civil Minutes (filed February 21, 2020), ECF No. 159, at 1 (reflecting Defendants' agreement to produce "documents already submitted to regulators").

On February 19, 2020, Class Plaintiffs served a request for production of the Regulator Documents.  Class Plaintiffs and Seagate met and conferred with TDK Defendants (February 26, 2020) and NHK Defendants (February 27, 2020) regarding, *inter alia*, the timing of Defendants' production of the Regulator Documents.  On March 20 and March 23, 2020, respectively, the NHK Defendants and TDK Defendants served written responses to Class Plaintiffs' requests.

The NHK Defendants made their productions of Regulator Documents to Class Plaintiffs on April 15, 2020 and to Seagate on April 20, 2020.  The TDK Defendants made their

productions of Regulator Documents to Class Plaintiffs on April 15, 2020, April 17, 2020, May 4, 2020, and May 12, 2020, and to Seagate on April 17, 2020, May 4, 2020, and May 12, 2020. These productions total over 60,000 documents and over 430,000 pages of documents.

Seagate engaged in two additional 26(f) conferences with Defendants in May and has agreed to produce its Regulator Documents this month.

Plaintiffs are now in the process of reviewing Defendants' Regulator Documents to assist them in selecting Defendants' custodians and noncustodial sources of ESI and hard copy documents from which documents will be produced; preparing written discovery requests seeking production of relevant structured data (*e.g.*, transactional sales, purchase and cost data, etc.), non-structured data (*e.g.*, emails, presentations, memoranda, etc.) and hard copy documents from Defendants; preparing third-party discovery; altering limitations on deposition discovery and preparation of a deposition protocol; among other discovery topics. These efforts, and related discussions with Defendants, are ongoing.

## 9. CLASS ACTIONS

Class Plaintiffs brought their claims as class actions. Class Plaintiffs anticipate filing motions for class certification. Defendants expect to oppose any motions for class certification.

## 10. RELATED CASES

The parties are unaware of any related actions that have not been transferred to this Court.

## 11. RELIEF

Plaintiffs seek money damages, including treble damages, and equitable and injunctive relief against alleged continued illegal practices. Defendants deny that Plaintiffs are entitled to any relief at all, including the specific relief that they seek.

## 12. SETTLEMENT AND ADR

No settlement discussions have occurred since the filing of the parties' respective lawsuits. Class Plaintiffs believe that assignment of a Magistrate Judge with whom the parties may confer should they desire to engage in settlement discussions is appropriate. Class Plaintiffs

propose Magistrate Judge Jacqueline Scott Corley given her recent similar referrals in a similar price-fixing case (i.e., *In re Cathode Ray Tubes (CRT) Antitrust Litig.*, Master File No. 4:07-cv-5944-JST, MDL No. 1917) ("*CRTs*"); *In re Optical Disk Drive Products Antitrust Litigation*, Case No. 3:10-md-2143-RS (JCS), MDL No. 2143 ("*ODDs*")). Defendants do not agree that assignment of a Magistrate Judge at this stage of the proceedings is necessary or appropriate, and ask the Court to defer this determination until the pending motions to dismiss are resolved.

### 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to have a magistrate judge conduct all further proceedings including trial.

### 14. OTHER REFERENCES

The Parties are not currently aware of any claims or defenses that are subject to arbitration. Class Plaintiff believe that assignment of a Magistrate Judge to whom the parties may bring discovery disputes if necessary is appropriate. The parties propose Magistrate Judge Jacqueline Scott Corley for this assignment given her recent involvement in similar price-fixing cases (i.e., *CRTs*, *ODDs*).

### 15. NARROWING OF ISSUES

At this time, the parties have yet to identify issues that can be narrowed by agreement. The parties believe it is premature to consider the narrowing of issues at this time.

### 16. EXPEDITED SCHEDULE

The parties do not believe that this case can be handled on an expedited basis with streamlined procedures.

### 17. SCHEDULING AND TRIAL

The parties shall meet and confer regarding a case schedule, work to present an agreed-upon schedule, and/or present any disputed matters with respect to such schedule, to the Court at the next case management conference. The parties propose that the Court consider scheduling that case management conference either on the same date as the hearing on the motions to dismiss or shortly thereafter, depending on the Court's preference.

**18.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PARTIES**

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Plaintiffs to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Defendants to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**19.    FILING**

Seagate Plaintiffs and Defendants seek the Court's clarification as to whether all documents relevant to the Seagate action should be filed in both the MDL docket (No. 19-cv-02918-MMC) and the individual Seagate docket (No. 20-cv-01217-MMC).  The Order Scheduling Initial CMC; Directions to Party; Directions to Clerk states that "All documents shall be e-filed in the master file, No. 19-md-02918 MMC . . . . Documents that pertain to one action or only some of the actions shall also be e-filed in the individual case(s) to which the documents pertain." Order Scheduling Initial CMC; Directions to Party; Directions to Clerk (filed February 24, 2020, No. 20-cv-01217-MMC), ECF. No. 12.  To date, certain documents have been filed on only the MDL docket or only the individual docket.

**20.    PROFESSIONAL CONDUCT**

All counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated:  May 22, 2020

Respectfully submitted,

| | |
|---|---|
| */s/ Victoria Sims* | */s/ Christopher T. Micheletti* |
| Victoria Sims | Christopher T. Micheletti |
| **CUNEO GILBERT & LADUCA, LLP** | **ZELLE LLP** |
| 4725 Wisconsin Avenue, NW, Suite 200 | 44 Montgomery St., Suite 3400 |
| Washington, DC 20016 | San Francisco, CA 94104 |

Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

/s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the Reseller Plaintiffs*

By: /s/ Mark H. Hamer
Mark H. Hamer
**BAKER MCKENZIE LLP**
815 Connecticut Ave., NW
Washington, DC 20006
Telephone: (202) 452-7077
mark.hamer@bakermckenzie.com

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.*

By: /s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-5860
Clay.everett@morganlewis.com

*Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*

Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zelle.com

/s/ Aaron M. Sheanin
Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*

By: /s/ Craig Y. Lee
Craig Y. Lee
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Ave., NW
Washington, D.C. 20005
Telephone: (202) 419-2114
craiglee@huntonak.com

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co., Ltd.*

By: /s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2160
korourke@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

**ATTORNEY ATTESTATION**

I, Christopher T. Micheletti, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

                             */s/ Christopher T. Micheletti*
                             Christopher T. Micheletti

                             *Interim Co-Lead Class Counsel for the End-User Plaintiffs*