Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zelle.com

Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the
End-User Plaintiffs*

*Interim Co-Lead Class Counsel for the
Reseller Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 3:19-md-02918-MMC |
| | MDL No. 2918 |
| THIS DOCUMENT RELATES TO | **RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINTS** |
| RESELLER AND END-USER ACTIONS | |
| | Judge: Hon. Maxine M. Chesney |
| | Date: July 17, 2020 |
| | Time: 9:00 a.m. |
| | Courtroom: 7, 19th Floor |

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED .................................................................xv

I.     INTRODUCTION ...............................................................................................1

II.    FACTUAL BACKGROUND .................................................................................3

III.   PLAINTIFFS HAVE ARTICLE III STANDING ..............................................5

       A.    Plaintiffs' Injuries Are Fairly Traceable to Defendants' Actions. ...........5

       B.    Article III Standing Does Not Turn on the Cost of the Component. .......9

       C.    The Complaints Sufficiently Define the Relevant Finished Products. ....9

IV.    ARTICLE III DOES NOT PRECLUDE RESELLER PLAINTIFFS FROM
       PROCEEDING ON BEHALF OF NON-RESIDENT CLASS MEMBERS ...................10

V.     PLAINTIFFS ADEQUATELY ALLEGED ANTITRUST STANDING .........................12

       A.    *AGC* Should Not Be Applied to Plaintiffs' State Law Claims. ...............12

       B.    Application of the *AGC* Factors Supports Antitrust Standing. ..............15

       C.    Defendants' Assertions that Certain States Are Not Repealer States, Only
             Permit the State AG to Bring a Claim, or Cover Only Intrastate Commerce
             are Incorrect. ...........................................................................................20

VI.    PLAINTIFFS PROPERLY ALLEGE CLAYTON ACT DAMAGE CLAIMS .............20

       A.    The Clayton Act Deters Cartel Formation and Compensate U.S. Victims............21

       B.    NDC Plaintiffs Have Standing to Pursue Damages Under the Clayton Act..........22

VII.   PLAINTIFFS STATE CLAIMS FOR INJUNCTIVE RELIEF .................................23

VIII.  PLAINTIFFS PROPERLY PLEAD THEIR ANTITRUST STATE LAW CLAIMS ......24

       A.    Oregon and New Hampshire Antitrust Statutes Cover the Entire Damages
             Period. .....................................................................................................24

       B.    Plaintiffs Provided Notice to the AGs in Arizona, Hawaii, and Nevada...............25

IX.    PLAINTIFFS PROPERLY PLEAD CONSUMER PROTECTION STATE LAW
       CLAIMS ..............................................................................................................25

       A.    Plaintiffs Adequately Plead Arkansas and New Mexico Consumer
             Protection Claims.....................................................................................25

       B.    Plaintiffs Can Assert Arkansas, Colorado, Montana, South Carolina,
             and Virginia Consumer-Protection Claims on a Class Basis................26

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

C.    End-User Plaintiffs Have Statutory Standing As "Consumers" under the D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont Consumer-Protection Laws. .................................................................................................27

D.    Colorado, Florida, Michigan, and Minnesota Consumer Protection Claims Are Not Subject to Rule 9(b)'s Heightened Pleading Requirements ...................27

E.    Plaintiffs Properly Allege Intrastate Effects on the Commerce of Delaware, North Carolina, New Hampshire, and Massachusetts. ...........................................28

F.    Plaintiffs Adequately Plead Claims Under the Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah, and Virginia Consumer Protection Statutes. ................................................................................29

G.    Plaintiffs Adequately Plead Arkansas, California, and North Carolina Consumer Protection Claims and Are Not Required to Plead Reliance. ...............................31

X.    UNJUST ENRICHMENT IS A COGNIZABLE CAUSE OF ACTION ..........................32

APPENDIX A. ..........................................................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Aikens v. Debow,*
   208 W. Va. 486 (2000) ..................................................................................40

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,*
   190 F.3d 1051 (9th Cir. 1999) ......................................................................15

*Ames v. Oceanside Welding & Towing Co.,*
   767 A.2d 677 (R.I. 2001) ............................................................................30

*Andren v. Alere, Inc.,*
   2017 WL 6509550 (S.D. Cal. Dec. 20, 2017)..............................................27

*Apple Inc. v. Pepper,*
   139 S.Ct. 1514 (2019)..................................................................................23

*Arthur v. Microsoft Corp.,*
   676 N.W.2d 29 (Neb. 2004)........................................................................37

*Aryeh v. Canon Bus. Solutions, Inc.,*
   55 Cal. 4th 1185 (2013) ..............................................................................33

*Associated General Contractors of California, Inc. v. California State Council of Carpenters,*
   459 U.S. 519 (1983)................................................................................2, 12

*Astiana v. Hain Celestial Group, Inc.,*
   783 F.3d 753 (9th Cir. 2015) ......................................................................32

*Baptist Health v. Murphy,*
   226 S.W. 3d 800 (Ark. 2006)......................................................................25

*Beckler v. Visa U.S.A., Inc.,*
   2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004)......................................37

*Bergstrom v. Noah,*
   974 P.2d 520 (1999)....................................................................................35

*Bledsoe v. FCA US LLC,*
   378 F. Supp. 3d 626 (E.D. Mich. 2019) ......................................................28

*Blue Shield of Virginia v. McCready,*
   457 U.S. 465 (1982)....................................................................................21

*Bunker's Glass Co. v. Pilkington PLC,*
   75 P. 3d 99 (Ariz. 2003)........................................................................14, 33

*Burton v. Micron Tech, Inc.,*
   Case No. CV 2004-226-1 (Cir. Ct. 1st Div. Nov. 6, 2009)..........................26

*California v. Arc America Corp.,*
   490 U.S. 93 (1989)......................................................................................12

*California v. Infineon Technologies AG,*
531 F. Supp. 2d 1124 (N.D. Cal. 2007)........................................................36

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999)..............................................................................34

*Cieri v. Leticia Query Realty,*
80 Haw. 54 (1995)......................................................................................35

*Consiglio-Tseffos v. Visa U.S.A., Inc.,*
2004 WL 3030043 (Ariz. Super. Ct. Dec. 8, 2004).......................................33

*Cox v. Microsoft Corp.,*
2005 WL 3288130 (N.Y. Sup. Ct. July 29, 2005)..........................................38

*Crouch v. Crompton Corp.,*
2004 WL 2414027 (N.C. Super Ct., Oct. 28, 2004)........................................37

*D.R. Ward Construction Co. v. Rohm & Haas Co.,*
470 F. Supp. 2d 485 (E.D. Pa. 2006)..........................................6, 19, 33, 39

*Davis v. Four Seasons Hotel Ltd.,*
228 P.3d 303 (Haw. 2010)..........................................................................35

*Duke Power Co. v. Carolina Envtl. Study Grp.,*
438 U.S. 59 (1978)......................................................................................5

*Eldridge v. Eldridge,*
620 A.2d 1031 (N.H. 1993).........................................................................24

*Elkins v. Microsoft Corp.,*
817 A.2d 9 (Vt. 2002).................................................................................39

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
542 U.S. 155 (2004)....................................................................................21

*Fallick v. Nationwide Mut. Ins. Co.,*
162 F.3d 410 (6th Cir. 1998).......................................................................11

*Four B Corp. v. Daicel Chem. Indus., Ltd.,*
253 F. Supp. 2d 1147 (D. Kan. 2003)..........................................................35

*Freeman Indus. LLC v. Eastman Chem. Co.,*
172 S.W.3d 512, 524 (Tenn. 2005)..............................................................39

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000)....................................................................................23

*Ganim v. Smith & Wesson Corp.,*
780 A.2d 98 (Conn. 2001)...........................................................................34

*Garnica v. HomeTeam Pest Def., Inc.,*
2015 WL 13066140 (N.D. Cal. Dec. 21, 2015)..............................................12

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

*Gatt Comms., Inc. v. PMC Assoc, L.L.C.*,
   711 F.3d 68 (2d Cir. 2013)..........................................................................38

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) .....................................................................15

*Goodrich v. E.F. Hutton Grp., Inc.*,
   542 A.2d 1200 (Del. Ch. 1988)..................................................................28

*Grand Ventures, Inc. v. Whaley*,
   632 A.2d 63 (Del. 1993) .............................................................................34

*Guerrero v. RJM Acquisitions LLC*,
   499 F.3d 926 (9th Cir. 2007) .....................................................................21

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   61 Cal. 4th 98 (2015) .................................................................................32

*Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*,
   113 Haw. 77 (2006) ...................................................................................35

*Hernandez v. Wells Fargo Bank, N.A.*,
   139 N.M. 68 (2005) ...................................................................................26

*Hill v. LLR, Inc.*,
   2019 WL 2404900 (D. Mont. Mar. 8, 2019) ............................................26

*Ho v. Visa USA, Inc.*,
   16 A.D.3d 256 (N.Y. App. Div. 2005) ......................................................38

*Holder v. Archer Daniels Midland Co.*,
   1998 WL 1469620 (D.C. Super. Nov. 4, 1998)........................................34

*Hood ex rel. State v. BASF Corp.*,
   2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006) ......................................36

*Howe v. Microsoft Corp.*,
   656 N.W.2d 285 (N.D. 2003) ....................................................................37

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)............................................................................ *passim*

*In re Aftermarket Filters Antitrust Litig.*,
   2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .............................................26

*In re Aluminum Warehousing Antitrust Litig.*,
   95 F. Supp. 3d 419 (S.D.N.Y. 2015).........................................................32

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) .............................................................22, 23

*In re Automotive Parts Antitrust Litig.*,
   2015 WL 13834708 (E.D. Mich. May 1, 2015).........................................24

*In re Automotive Parts Antitrust Litig. (Bearings)*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014)...................................................................17, 19

*In re Automotive Parts Antitrust Litig. (Ceramic Substrates)*,
   2017 WL 7689654 (E.D. Mich. May 5, 2017)...........................................................17

*In re Automotive Parts Antitrust Litig. (Fuel Senders)*,
   29 F. Supp. 3d 982 (E.D. Mich. 2014)...................................................................*passim*

*In re Automotive Parts Antitrust Litig. (Wire Harness)*,
   2013 WL 2456612 (E.D. Mich. June 6, 2013)..................................................12, 25, 26

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ...........................................................................12

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) ...................................................................*passim*

*In re Capacitors Antitrust Litig.*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015)...........................................................10, 12, 13, 33

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) .....................................................15, 16, 19, 33

*In re Cathode Ray Tube Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 118566 (N.D. Cal. May 2, 2013) .....................................................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) .........................................................................17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ....................................................................24

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2012 WL 12914681 (N.D. Cal. Nov. 16, 2012) ....................................................................24

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ...........................................................................26

*In re Chocolate Confectionary Antitrust Litig.*,
   749 F. Supp. 2d 224 (M.D. Pa. 2010) ...........................................................................29

*In re Chrysler-Dodge-Jeep Ecodiesel Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ...........................................................................11

*In re Cipro Cases I & II*,
   61 Cal. 4th 116 (2015) .........................................................................................33

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   2015 WL 3988488 (N.D. Ill. June 29, 2015).........................................................33, 34, 35, 37

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012)...........................................................................34

*In re Dynamic Random Access Memory Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ............................................................7, 17, 30

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...............................................................17, 30

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................ *passim*

*In re G-Fees Antitrust Litig.*,
584 F. Supp. 2d 26 (D.D.C. 2008) ...........................................................................32

*In re Generic Pharm. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ...................................................27, 29, 34, 37

*In re Glumetza Antitrust Litig.*,
2020 WL 1066934 (N.D. Cal. Mar. 5, 2020) ..........................................................31

*In re Graphics Processing Units Antitrust Litig. (GPUs I)*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................7, 13, 32, 35

*In re Graphics Processing Units Antitrust Litig. (GPUs II)*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................................ *passim*

*In re Hester*,
2015 WL 6125308 (Bankr. E.D.N.C. Oct. 16, 2015) .............................................31

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) ..............................................................................27

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019) ........................................................................7

*In re Lidoderm Antitrust Litig.*,
103 F. Supp. 3d 1155 (N.D. Cal. 2015) ..............................................................26, 30

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ........................................................ *passim*

*In re Loestrin 24 FE Antitrust Litig.*,
410 F. Supp. 3d 352 (D.R.I. 2019) ...........................................................................37

*In re Magnesium Oxide Antitrust Litig.*,
2011 WL 5008090 (D.N.J. Oct. 20, 2011) .................................................................7

*In re Microsoft*,
2003 WL 22070561 (D. Md. Aug. 22, 2003) ...........................................................36

*In re Myford Touch Consumer Litig.*,
2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) .........................................................26

*In Re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) .....................................................30, 32, 34

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

*In re Optical Disk Drive Antitrust Litig.*,
2016 WL 467444 (N.D. Cal. Feb 8, 2016) ...........................................9

*In re Optical Disk Drive Antitrust Litig.*,
2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ................................13, 18

*In re Packaged Seafood Products Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017).................................... *passim*

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) ...............................6, 12, 31

*In re Qualcomm Antitrust Litig.*,
292 F. Supp. 3d 948 (N.D. Cal. 2017) ...................................6

*In re South Dakota Microsoft Antitrust Litig.*,
657 N.W.2d 668 (S.D. 2003) .........................................38

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009).................................... *passim*

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ...........................27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2012 WL 253298 (N.D. Cal. Jan. 26, 2012) ............................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................. *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010).....................................24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
787 F. Supp. 2d 1036 (N.D. Cal. 2011) ...............................26

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) ............................................31

*In re Warfarin Sodium Antitrust Litig.*,
214 F.3d 395 (3d Cir. 2000).........................................7

*Ireland v. Microsoft Corp.*,
2001 WL 1868946 (Mo. Cir. Jan. 24, 2001).............................34

*ITCO Corp. v. Michelin Tire Corp.*,
722 F.2d 42 (4th Cir. 1983) ........................................37

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) ........................7, 9, 10, 18

*Kanne v. Visa U.S.A. Inc.*,
723 N.W.2d 293 (Neb. 2006).........................................14

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

*Knapp v. McCleary*,
   1987 WL14864 (Del. July 9, 1987) ...............................................34

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ...................................................14

*Knowles v. Visa, U.S.A.*,
   2004 WL 2475284 (Me. Super. Oct. 20, 2004) ..............................36

*KPS & Assocs., Inc. v. Designs By FMC, Inc.*,
   318 F.3d 1 (1st Cir. 2003) .......................................................29

*Kutza v. Williams-Sonoma, Inc.*,
   2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ................................11

*LaChance v. U.S. Smokeless Tobacco Co.*,
   931 A.2d 571 (N.H. 2007) .......................................................29

*Lantec, Inc. v. Novell, Inc.*,
   146 F. Supp. 2d 1140 (D. Utah 2001) ........................................39

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................5

*Lindner v. Durham Hosiery Mills, Inc.*,
   761 F.2d 162 (4th Cir. 1985) ...................................................37

*Liquid Aluminum Sulfate Antitrust Litigation*,
   2017 WL 3131977 (D.N.J. July 20, 2017).............................. *passim*

*Little Caesar Enters. v. Smith*,
   895 F. Supp. 884 (E.D. Mich. 1995)..........................................36

*Loeb Indus., Inc. v. Sumitomo Corp.*,
   306 F.3d 469 (7th Cir. 2002) ..............................................20, 22

*Lorix v. Crompton Corp.*,
   736 N.W.2d 619 (Minn. 2007)..........................................13, 14, 36

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ......................... *passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 561 (1992)............................................................5

*Mack v. Bristol-Myers Squibb Co.*,
   673 So. 2d 100 (Fla. 1st Dist. Ct. App. 1996)..............................35

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .......................................31

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ....................................................8

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

*McNulty v. Reddy Ice Holding, Inc.*,
    2009 WL 1508381 (E.D. Mich. May 29, 2009)...................................................36

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ....................................................10, 11, 12

*Merck & Co., Inc. v. Lyon*,
    941 F. Supp. 1443 (M.D.N.C. 1996) ...........................................................37

*Meyers v. Bayer AG, Bayer Corp.*,
    735 N.W.2d 448 (Wis. 2007)...........................................................................39

*Minuteman, LLC v. Microsoft Corp.*,
    147 N.H. 634 (2002) ...........................................................................................25

*Motorola Mobility LLC v. AU Optronics Corp.*,
    775 F.3d 816 (7th Cir. 2015) ..................................................................21, 22

*Mounce v. CHSPSC, LLC*,
    2017 WL 4392048 (W.D. Ark. Sept. 29, 2017)........................................27

*Nev. Recycling and Salvage, Ltd. v. Reno Disposal Co.*,
    423 P.3d 605 (Nev. 2018) ................................................................................38

*Olstad v. Microsoft Corp.*,
    284 Wis. 2d 224 (2005) ....................................................................................40

*Orr v. Beamon*,
    77 F. Supp. 2d 1208 (D. Kan. 1999) ...........................................................35

*Patterson Dental Co. v. McGaughey*,
    1985 WL 25732 (D. Or. Dec. 9, 1985) ......................................................38

*Peacock v. 21st Amendment Brewery Cafe, LLC*,
    2018 WL 452153 (N.D. Cal. Jan. 17, 2018)..............................................11

*Pecanha v. The Hain Celestial Grp., Inc.*,
    2018 WL 534299 (N.D. Cal. Jan. 24, 2018)..............................................11

*Perdue v. Hy-Vee, Inc.*,
    2020 WL 1917835 (C.D. Ill. Apr. 20, 2020) ............................................28

*Perez v. Monster Inc.*,
    149 F. Supp. 3d 1176 (N.D. Cal. 2016) .....................................................32

*Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*,
    617 S.E.2d 664 (N.C. App. 2005).................................................................29

*Philip Morris Cos. v. Miner*,
    462 S.W.3d 313 (Ark. 2015)...........................................................................31

*Pleasant v. McDaniel*,
    550 S.W.3d 8 (Ark. Ct. App. 2018) .............................................................31

*Pooler v. R.J. Reynolds Tobacco Co.*,
    2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001) ........................................................38

*Precourt v. Fairbank Reconstruction Corp.*,
    856 F. Supp. 2d 327 (D.N.H. 2012)........................................................................29

*Princeton Ins. Agency v. Erie Ins. Co.*,
    2008 WL 8928936 (W. Va. Cir. Ct. Jan. 09, 2008) ...............................................40

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).......................................................................................26, 27

*Silvas v. E\*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ................................................................................3

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..............................................................................................11

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) ..................................................................................34

*Southard v. Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007) .........................................................................14, 35

*Staley v. Gilead Scis., Inc.*,
    2020 WL 1032320 (N.D. Cal. Mar. 3, 2020).........................................................11

*State ex rel. Bryant v. R & A Inv. Co.*,
    985 S.W. 2d 299 (Ark. 1999)................................................................................25

*State ex rel. Leech v. Levi Strauss & Co.*,
    1980 WL 4696 (Tenn. Ch. Ct. Sept. 25, 1980).....................................................39

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
    2005 WL 6056054 (N.Y. Sup. Ct. Aug. 9, 2005) ..................................................38

*Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*,
    2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000)..............................................39

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
    902 F.3d 735 (7th Cir. 2018) ..................................................................................7

*Szukalski v. Crompton Corp.*,
    726 N.W.2d 304 (Wis. Ct. App. 2006) ............................................................39, 40

*Teague v. Bayer AG*,
    671 S.E.2d 550 (N.C. Ct. App. 2009) ...................................................................36

*Troyk v. Farmers Group, Inc.*
    171 Cal. App. 4th 1305 (2009) .............................................................................34

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987) .......................................................................37

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

*United States v. Concentrated Phosphate Exp. Ass'n*,
393 U.S. 199 (1968)................................................................23

*United States v. Or. State Med. Soc'y*,
343 U.S. 326 (1952)................................................................24

*United States v. Texas*,
507 U.S. 529 (1993)................................................................32

*United States ex rel. Joshi v. St. Luke's Hosp.*,
441 F.3d 552 (8th Cir. 2006)................................................28

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*,
721 F. App'x 662 (9th Cir. 2018)..........................................28

*Van Mourik v. Big Heart PetBrands, Inc.*,
2018 U.S. Dist. LEXIS 34796 (N.D. Cal. March 1, 2018)........11

*Vinci v. Waste Mgmt., Inc.*,
43 Cal. Rptr. 2d 337 (Cal. Ct. App. 1995)......................33, 34

*Walker v. Fleetwood Homes of N. Carolina, Inc.*,
653 S.E.2d 393 (N.C. 2007)..................................................32

*Westport Taxi Serv., Inc. v. Westport Transit Dist.*,
664 A.2d 719 (Conn. 1995)..................................................34

*Whipple v. Howser*,
632 P.2d 782 (Or. 1981).......................................................24

*Williams v. Citigroup, Inc.*,
36 Misc. 3d 1201[A] (N.Y. Sup. Ct. 2012)...........................38

*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012)................................................28

*Wrobel v. Avery Dennison Corp.*,
2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006)...................35

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

**Federal Statutes**          **Page(s)**

15 U.S.C. § 6a ........................................................................................20

15 U.S.C. § 15 ...................................................................................20, 21

15 U.S.C. § 26 ........................................................................................23

28 U.S.C. § 2072(b) ................................................................................26

Fed. R. Civ. P. 8(d)(3)............................................................................32

Fed. R. Civ. P. 9(b) ..........................................................................27, 28

Fed. R. Civ. P. 23 .......................................................................11, 26, 27

**State Statutes**

6 Del. Code Ann. § 2512 .........................................................................28

Ariz. Rev. Stat. Ann.§ 44-1412................................................................33

Ark. Code §§ 4-88-101 ............................................................................33

Ark. Stat. Ann. § 4-88-107(a)(10) .....................................................25, 31

Ark. Stat. Ann. § 4-88-107(b)..................................................................25

Cal. Bus. & Prof. Code § 17200 ..............................................................31

Col. Rev. Stat. § 6-1-105 ....................................................................27, 30

Colorado Rev. Stat. § 6-1-113(2)..............................................................27

Del. Code § 2532(11)...............................................................................30

Fla. Stat. § 501.204(1)..............................................................................27

Haw. Rev. Stat. § 480-3 ...........................................................................35

Md. Code Com. Law § 11-209(b)(2)(i) .....................................................35

Mich. Comp. Laws § 445.903...............................................................27, 30

Minn. Stat. § 325F.69 ...............................................................................27

Mont. Code Ann. § 30-14-133 .............................................................26-27

N.C. Gen. Stat. § 75-1.1 ...........................................................................31

Nev. Rev. Stat. § 598.0915(13).................................................................30

Nev. Rev. Stat. § 598.0923(2)...................................................................30

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

Nev. Rev. Stat. § 598.0923(3)...................................................................................30

Or. Rev. Stat. § 646.715 (2)....................................................................................38

Or. Rev. Stat. § 646.607.........................................................................................30

R.I. Gen. Laws § 6-13.1-1.......................................................................................30

R.I. Gen. Laws § 6-36-11(a)....................................................................................38

R.I. Gen Laws § 6-36-12(g).....................................................................................38

S.D. Code § 37-24-6..............................................................................................30

Utah Code § 13-11-4.............................................................................................30

Utah Code § 13-11-5.............................................................................................30

Va. Code § 59.1-200.............................................................................................30

W. Va. Code § 142-9.1.6.........................................................................................40

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

# STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Plaintiffs have Article III standing when they allege that the price-fixed HDD suspension assemblies are discrete products following a traceable path through the distribution chain, overcharges for the suspension assemblies were passed through the distribution chain from Defendants to Plaintiffs, and such overcharges are quantifiable through well-accepted economic methods.

2.  Whether Reseller Plaintiffs can assert claims on behalf of non-resident class members at the pleading stage when the *per se* rule in the Ninth Circuit is that once named plaintiffs establish individual standing, whether they may present claims on behalf of others with similar claims is a question for class certification.

3.  Whether Plaintiffs have antitrust standing, either because *AGC* does not apply or, assuming *AGC* applies to a particular state-law claim, because their allegations satisfy the *AGC* factors at the pleading stage.

4.  Whether the first U.S. victims of a global price-fixing conspiracy (Nationwide Damages Class Plaintiffs) have standing to assert a Clayton Act damages claim when the foreign "direct purchaser" suffered its injuries in foreign commerce, placing its claims beyond the reach of U.S. antitrust law.

5.  Whether Plaintiffs state claims for injunctive relief by alleging that they continue to be threatened by loss or damage from Defendants' antitrust violations.

6.  Whether the Oregon and New Hampshire repealer statutes apply retroactively and cover the entire damages period.

7.  Whether Plaintiffs satisfied the notice requirements under the antitrust statutes of Arizona, Hawaii, and Nevada.

8. Whether Plaintiffs properly plead their claims under the Arkansas and New Mexico consumer protection statutes, which have been found to apply to price-fixing conduct.

9. Whether Plaintiffs can assert Arkansas, Colorado, Montana, South Carolina, and Virginia consumer-protection claims on a class basis when the Supreme Court decision in *Shady Grove* dictates that Rule 23 supersedes the state law restrictions.

10. Whether End-User Plaintiffs have statutory standing as "consumers" under the D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont consumer protection laws.

11. Whether Plaintiffs' claims under the consumer statutes of Colorado, Florida, Michigan, and Minnesota are not subject to Rule 9(b)'s heightened pleading requirements.

12. Whether Plaintiffs properly allege intrastate effects on the commerce of Delaware, North Carolina, New Hampshire, and Massachusetts and meet the pleading requirements under those states' consumer protection statutes.

13. Whether the alleged conduct is prohibited under the Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah, and Virginia consumer protection statutes.

14. Whether Plaintiffs sufficiently plead Arkansas, California, and North Carolina consumer protection claims, when pleading reliance upon misrepresentations is not required by those statutes.

15. Whether Plaintiffs sufficiently plead unjust enrichment claims.

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

# I.    INTRODUCTION

Defendants admit they conspired to fix prices for suspension assemblies. NHK Spring pled guilty, while TDK sought leniency from the U.S. Department of Justice ("DOJ"). The DOJ indicted two NHK Spring senior executives, and other foreign competition regulators have prosecuted Defendants. In announcing NHK Spring's guilty plea, the DOJ explained that the "impact on American consumers and business is direct and substantial."[1] The conspiracy's pervasive impact is not surprising, because suspension assemblies are essential components of every hard disk drive ("HDD") and Finished Product containing HDDs sold in the United States.

Unlike most antitrust cases, Defendants do not question the sufficiency of Plaintiffs' conspiracy allegations. Nor can they. Plaintiffs allege extensive details of the agreements to fix prices, restrict supply, and allocate customers between Defendants' top executives over more than a decade. Instead, Defendants claim that HDD suspension assemblies are too small for their illegal conduct to affect Plaintiffs. But as Judge Wilken explained, "Defendants may not shield themselves from liability by fixing prices on a relatively inexpensive item." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal. 2009) ("*SRAM*"). Courts repeatedly reject Defendants' hodge-podge of challenges to Plaintiffs' complaints.

First, Plaintiffs have standing under Article III of the Constitution. They sustained harm because Defendants' unlawful overcharge was passed on to them through a traceable path within the distribution chain. Plaintiffs describe the distribution chain, identify certain relevant Finished Products, and explain how the overcharge will be quantified through well-accepted economic methods. For all claims made, Plaintiffs' allegations easily satisfy the requirement that their injuries be fairly traceable to Defendants' conduct. Nothing more is needed.

Second, Defendants' attempt to deprive Resellers of the ability to bring state law claims on behalf of absent class members who reside in states other than Resellers' states erroneously conflates standing and class certification issues and is in violation of the *per se* rule in the Ninth

---

[1] End-User Consolidated Class Action Complaint (ECF No. 167) ("EUC") ¶ 4; Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190) ("RC") ¶ 1. End-User Plaintiffs and Reseller Plaintiffs are collectively referred to here as "Plaintiffs."

Circuit requiring such issues to be decided as part of the class certification analysis, and not the standing analysis.

Third, as courts routinely find in component parts cases like this, Plaintiffs have antitrust standing. As an initial matter, Defendants assume, incorrectly, that federal standards under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), apply to Plaintiffs' state law antitrust claims. They do not. Nonetheless, each of the *AGC* factors favors antitrust standing. Among other things, the markets for HDDs and HDD suspension assemblies are inextricably intertwined, as the products themselves are valueless on their own; Plaintiffs' injuries are direct, traceable, and non-speculative; and damages can readily be calculated and apportioned through economic analysis.

Fourth, *Illinois Brick* does not bar damages for claims under Section 4 of the Clayton Act by the Nationwide Damages Class ("NDC") Plaintiffs—the highest-level victims in the distribution chain who suffered damages in the United States as a result of the cartel. The Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") places beyond the reach of the Clayton Act claims concerning "upstream" purchases that occurred abroad. To preclude NDC Plaintiffs from pursuing federal claims would undermine Congress' intent in providing a private right of action to U.S. victims, eliminate the deterrent effect and remedial purpose of that statute and encourage foreign companies to structure their distribution chains to avoid U.S. antitrust law.

Fifth, Plaintiffs state injunctive relief claims under the Clayton Act, because they continue to be threatened by loss or damage from a violation of the antitrust laws. Defendants conspired to fix HDD suspension assembly prices. As the only two remaining competitors, they are perfectly positioned to do so again, notwithstanding their new compliance practices.

Finally, Plaintiffs satisfy the pleading requirements for their state law claims. Defendants' scattershot challenges to the antitrust and consumer protection claims have no merit, and the unjust enrichment claim is viable on its own or in the alternative to the other causes of action.

The Court should deny Defendants' motion to dismiss.

## II.    FACTUAL BACKGROUND[2]

HDD suspension assemblies are indispensable components of HDDs. EUC ¶ 87; RC ¶ 43. HDDs are installed in a variety of Finished Products to write, retrieve, and store vast amounts of information electronically. *Id.* Finished Products include portable and external HDDs, desktop and laptop computers, game consoles, set-top boxes/DVRs, network servers, enterprise storage arrays, printers, and copy machines. EUC ¶ 1; RC ¶ 2. HDD suspension assemblies have no independent utility separate from HDDs themselves; similarly, HDDs cannot function without HDD suspension assemblies. EUC ¶ 167; RC ¶ 118. In this way, the markets for HDDs and HDD suspension assemblies are inextricably linked and intertwined. *Id.*

Defendants are members of two corporate families: NHK and TDK. EUC ¶¶ 65-74; RC ¶¶ 27-36. Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension assemblies into HDDs. EUC ¶ 89; RC ¶ 45. HDD suspension assemblies and HDDs are sold to Resellers either as stand-alone products or as part of other Finished Products, RC ¶ 45, which are then sold to consumers, EUC ¶ 89. Between 2005 and 2016, over six billion HDD units were shipped worldwide, approximately one-third of which were sold into the United States as HDDs or Finished Products. EUC ¶ 90.

Starting in 2003, Defendants agreed to refrain from competing on prices, fix prices, and allocate market shares for HDD suspension assemblies. EUC ¶ 92; RC ¶ 4. They did so through extensive exchange of competitively-sensitive information about actual and projected prices of HDDs; market share and customer volumes; manufacturing capacity; utilization rates; timing of bid responses; bid information; and product design development. EUC ¶ 91. These communications and agreements took place at all levels including senior executives with pricing authority. *Id.* Meetings and communications took place in California and other parts of the United States, Japan, Thailand, China, and Hong Kong. *Id.* ¶¶ 92-104.

TDK sought leniency from the DOJ for its criminal conduct and that of its corporate family

---

[2] The allegations described here are taken from Plaintiffs' complaints. On this motion to dismiss, the Court must accept these allegations as true and construe all reasonable inferences in Plaintiffs' favor. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).

members. *Id.* ¶ 17. NHK Spring Co. Ltd. pleaded guilty and paid a $28.5 million fine for the NHK corporate family's role in the price-fixing conspiracy. *Id.* ¶¶ 2, 106. According to NHK Spring's plea agreement, Defendants "relied on their agreements not to compete and used the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD suspension assemblies and produced hard disk drives for sale, or delivery to, the United States and elsewhere." *Id.* The DOJ declined to seek restitution because damages are available through this litigation. *Id.* ¶ 107. The DOJ also indicted two NHK Spring senior executives at the heart of the conspiracy. *Id.* ¶¶ 5, 118.

Several features of the HDD suspension assemblies market make it susceptible to effective collusion. These characteristics include: high barriers to entry, EUC ¶¶ 120-24; RC ¶¶ 62-66; high concentration on the "sell" side of the market, now comprising NHK Spring and TDK, EUC ¶¶ 125-34; RC ¶¶ 67-76; high concentration on the market's "buy" side, which had five major HDD producers in 2005 (Western Digital, Seagate, Toshiba, Hitachi, Samsung) and now has only three, EUC ¶¶ 135-39; RC ¶¶ 77-78; homogeneous, commodity-like products and, in the absence of close substitutes, inelasticity of demand, EUC ¶¶ 140-43; RC ¶¶ 79-82; a maturing market and declining demand, EUC ¶¶ 144-45; and close relationships among Defendants including a joint venture and industry organizations that provided opportunities for collusion, EUC ¶¶ 146-48; RC ¶¶ 83-86.

The chain of distribution is straightforward. Defendants typically manufacture and sell HDD suspension assemblies to HDD manufacturers (Western Digital, Seagate, and Toshiba). EUC ¶¶ 135, 149; RC ¶ 45, 77, 107. HDD manufacturers then sell HDDs to distributors and retailers (including BestBuy, Newegg, Costco and others, such as Reseller Plaintiffs), and to be used as inputs in Finished Products by original equipment manufacturers ("OEMs" like Dell, Hewlett-Packard, and Apple). EUC ¶¶ 149, 151, 153; RC ¶ 45. Retailers, in turn sell HDDs and Finished Products to consumers. EUC ¶¶ 18-64, 152-56. Resellers also purchase HDD suspension assemblies. RC ¶ 107. A number of Defendants' HDD suspension assembly sales to HDD manufacturers and their sales to OEMs occurred overseas, leaving the Resellers and End-Users in these cases as the first purchasers of Finished Products containing Defendants' price-fixed HDD suspension assemblies in the United States. EUC ¶¶ 150, 152-53; RC ¶ 45-46.

Defendants' cartel caused Plaintiffs to pay more for HDD suspension assemblies, HDDs and Finished Products than they would have paid in a competitive market. EUC ¶¶ 165-77; RC ¶¶ 140, 151. The overcharge, like the HDD suspension assembly itself, is discrete, identifiable, and traceable throughout the chain of distribution. EUC ¶¶ 168-69; RC ¶ 120. HDD and Finished Product manufacturers could and did pass on Defendants' conspiratorial overcharge because it was a variable cost, in an inelastic and highly-competitive market, directed to the entire industry for more than a decade. EUC ¶ 174. Economists have developed well-accepted methods to isolate and identify the specific impact of a price increase for HDD suspension assemblies on prices for HDDs and Finished Products, even though those products contain numerous other components with prices that may have been changing over time. EUC ¶ 175; RC ¶ 121. As a result, the precise amount of the overcharge that was passed through to Plaintiffs can and will be measured and quantified. EUC ¶ 176; RC ¶ 121.

## III. PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs readily satisfy the constitutional standing requirements under Article III for all claims. They allege: (1) they suffered an "injury in fact" by paying overcharges; (2) there is a "causal connection" between the overcharges they paid and Defendants' cartel; and (3) a favorable decision would likely redress that injury by compensating Plaintiffs for overcharges paid. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Id* "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 75 n.20 (1978) (Article III standing "require[s] no more than a showing that there is a substantial likelihood" of causation.). Plaintiffs' allegations that Defendants' overcharges were passed through the chain of distribution to them are sufficient to confer Article III standing.

### A. Plaintiffs' Injuries Are Fairly Traceable to Defendants' Actions.

Defendants concede injury-in-fact and redressability; their challenge to traceability is baseless. Traceability is satisfied by allegations that "(1) Defendants overcharged the direct

purchasers; and (2) some or all of the overcharge was passed on to them through each of the various intermediate levels of the distribution chain." *In re Automotive Parts Antitrust Litig. (Fuel Senders)*, 29 F. Supp. 3d 982, 997 (E.D. Mich. 2014). Plaintiffs need not plead every detail of the chain of distribution or their purchases. Rather, Article III standing exists where indirect purchasers allege the price-fixed component "follow[s] a traceable path through the distribution chain and that overcharges for [those components] were passed through that distribution chain" from manufacturers to the Plaintiffs. *Id.* at 994; *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 968 (N.D. Cal. 2017) (rejecting argument that Plaintiffs had to "identify by name specific intermediaries that pass on" overcharges); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 887 (E.D. Pa. 2012) ("*Processed Eggs*") (finding indirect purchasers had Article III standing where they alleged that they "paid artificially inflated prices for eggs because of the Defendants' conspiracy"); *D.R. Ward Construction Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 492-93 (E.D. Pa. 2006) ("*D.R. Ward*") (finding Article III standing where "Plaintiffs allege that they paid inflated prices for products with plastics additives due to an overcharge on plastics additives which was passed on to them from the intervening links within the distribution chain").

Plaintiffs easily satisfy traceability by alleging Defendants fixed HDD suspension assembly prices at supracompetitive levels to direct purchasers, and that those overcharges were passed on to Finished Products purchasers. EUC ¶¶ 149-53; RC ¶ 45. The complaints explain that HDD suspension assemblies are discrete physical products that remain essentially unchanged when incorporated into an HDD and follow a traceable path through the distribution chain from Defendants to HDD makers, to OEMs and resellers, and then to consumers. EUC ¶¶ 151-53, 168-69; RC ¶¶ 119-20. They allege that Defendants' overcharge was passed through the distribution chain, and that its precise amount can be measured and quantified through commonly-used and well-accepted economic models. EUC ¶¶ 170-77; RC ¶¶ 121-22.

Plaintiffs also identify the distribution chain: (1) <u>conspirators/sellers of HDD suspension assemblies</u> (TDK and NHK Defendants); (2) <u>HDD manufacturers</u> (Western Digital, Seagate, Toshiba, Hitachi, and Samsung); (3) <u>OEMs</u> (Dell, Hewlett-Packard, Lenovo, IBM, and Apple), and <u>resellers</u> (BestBuy, Newegg, Tigerdirect, Costco, Walmart, Staples, Office Depot, MacMall,

GameStop, and Amazon, as well as Reseller Plaintiffs); and (4) <u>consumers</u>. *See* §II, *supra*. Even the DOJ recognizes the impact of the conspiracy "on American consumers and businesses is direct and substantial." EUC ¶ 4; RC ¶ 1. These allegations well-exceed those found deficient in *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (dismissing for lack of Article III standing where "Plaintiffs do not identify the pertinent OEMs or retailers who manufactured and/or sold the 'relevant' DRAM Products"). Article III does not require Plaintiffs to plead the chain of distribution, their purchases, or their harm in any greater detail.[3]

Courts regularly allow indirect purchaser claims to proceed with similar distribution chains. In *SRAM*, Judge Wilken denied motions to dismiss and later certified an indirect purchaser class where "Defendants [sold] SRAM to various customers, both large and small scale, through a variety of distribution paths." 264 F.R.D. at 606, 610–11. In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Judge Illston denied a motion to decertify the indirect purchaser class even though the "manufacturers of LCD products frequently buy panels from multiple sources" and did "not keep detailed records about the panels used in their products." No. M 07-1827-SI, 2012 WL 253298, at *1 & n.2 (N.D. Cal. Jan. 26, 2012). The *Fuel Senders* court concluded that the chain of distribution was not too "elongated" to support Article III standing, holding that traceability issues went to "difficulties of proof, not pleading deficiencies." 29 F. Supp. 3d at 998.[4] Similarly,

---

[3] Defendants' cases conflate Article III and antitrust standing. *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 WL 5008090, at *6 (D.N.J. Oct. 20, 2011) (asking whether plaintiff's injury was "inextricably intertwined" with injury the conspirators sought to inflict, and relying on *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000), which addresses antitrust standing); *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) ("In the antitrust context, the proximate causation requirement in the past has been termed 'antitrust standing,' even though it has nothing to do with a plaintiff's standing to sue under Article III …[.]"); *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*") (addressing antitrust, not constitutional, standing); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ("*GPUs I*") (same).

[4] Although Defendants cite *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019), for the proposition that Plaintiffs are too far downstream to have Article III standing, that case deals with antitrust standing. Furthermore, that "Article III standing existed where the 'distribution chain . . . is short . . .'" MTD at 9 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1113-14 (N.D. Cal. 2008) ("*TFT-LCD I*")), does not preclude a finding of Article III standing where the distribution chain may be longer.

Plaintiffs' claims should proceed.

Defendants are also incorrect that every other indirect purchaser who prevailed on a motion to dismiss has been "only one or two levels of commerce removed from the direct purchase." MTD at 9. For instance, in *Fuel Senders*, the consumers were four levels of distribution below the defendants, when fuel senders were sold by defendants to manufacturers of larger components, like fuel tanks, which were then sold to automakers, to dealerships, and ultimately to consumers, similar to the situation here. *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 1746121, at *1 (E.D. Mich. Apr. 30, 2014) (describing distribution chain before automakers); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *14 (N.D. Cal. Oct. 2, 2014) ("*LIB*") (upholding indirect purchasers' complaint where the alleged distribution chain had 5 levels from defendants to consumers).

Defendants cannot obtain dismissal because this litigation involves cases on behalf of different classes of indirect purchasers, which have existed in cases including *Auto Parts* and *Broiler Chicken*.[5] These claims have survived motions to dismiss. The Court must consider End-User's and Reseller's standing allegations independently. Those allegations do not fail because purchasers at another level of the distribution chain also allege they were harmed by Defendants' conspiracy. The overcharge sustained by each class is not a matter of Article III standing but rather a merits question that must be determined at a later stage of proceedings. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim.") (quotation marks omitted). In sum, damages can be apportioned between different levels of purchasers here, just as they have been in similar cases.

---

[5] *In re Automotive Parts Antitrust Litig.*, MDL 2311 (E.D. Mich.) (indirect purchaser automobile dealerships and consumers); *In Re Broiler Chicken Antitrust Litig.*, No. 16-C-8637 (N.D. Ill.) (indirect purchaser retailers and consumers); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670 (S.D. Cal.) (indirect purchaser commercial food preparers and consumers); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (pharmacies, consumers and third-party payors).

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

## B. Article III Standing Does Not Turn on the Cost of the Component.

That HDD suspension assemblies may be inexpensive relative to the price of Finished Products is not a basis for dismissal. *Fuel Senders* rejected this exact argument, finding indirect purchasers had Article III standing despite the limited cost of a fuel sender—less than $5, as argued by defendants at the hearing on motions to dismiss—in a vehicle containing thousands of parts. 29 F. Supp. 3d at 998. The court held that defendants had raised only an issue "of proof, not pleading," and plaintiffs "are not required to allege how they intend to establish their damages theory." *Id.* Similarly, Judge Wilken certified an indirect purchaser class over defendants' objection that "any price increase in SRAM will have a de minimis effect," explaining that, "Defendants may not shield themselves from liability by fixing prices on a relatively inexpensive item." *SRAM*, 264 F.R.D. at 614. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2016 WL 467444, at *2 (N.D. Cal. Feb. 8, 2016) (certifying indirect purchaser class where component "typically represent[s] a relatively small percentage of the cost of the product as a whole"). Defendants cite *Jones*, but that case acknowledges that plaintiffs need not quantify damages to establish Article III injury. The *Jones* court only required plaintiffs to provide sufficient allegations to allow it to "infer" that the price of DRAM "wended its way" into DRAM products. 400 F. Supp. 3d at 907. Plaintiffs have done so here.

## C. The Complaints Sufficiently Define the Relevant Finished Products.

The markets in this case, which comprise only HDDs and products containing HDDs, are sufficiently well defined to support Article III standing. End-Users limit their complaint to: (1) portable and external HDDs, (2) desktop and laptop computers, (3) game consoles, (4) set-top boxes/DVRs, (5) network servers, and (6) enterprise storage arrays. EUC ¶ 1. Resellers point to stand-alone HDDs and HDDs incorporated into computers, gaming systems, printers, and copy machines. RC ¶ 2. These products are definite enough to satisfy traceability. *See SRAM*, 264 F.R.D. at 606 (certifying indirect purchaser class for a component "used in a variety of product markets, including: (1) the communications market in cell phones and Voice Over Internet Protocol (VOIP) technology; (2) the computer market in servers, mainframes, high-end computer workstations, and personal digital assistants (PDAs) and smart phones; and (3) the networking communications

market in routers, switches, proxy and gateway devices, modems, storage area networks and firewalls"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1150-56 (N.D. Cal. 2009) ("*Flash Memory*") (standing satisfied where class products included "flash memory cards, USB flash drives, flash-based digital music players (*i.e.*, iPods, etc.) and higher end mobile telephones and computing devices"); *TFT-LCD I*, 586 F. Supp. 2d at 1113–14 (indirect purchasers had standing where they identified a large universe of end-products "such as computer monitors, laptop computers, televisions, and mobile phones containing LCD panels").

None of Defendants' cases focus on such a limited set of specific products. HDD suspension assemblies are not nearly as "ubiquitous" as capacitors, which are found in "virtually every electronic device." *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1058 (N.D. Cal. 2015) ("*Capacitors*"). Indirect purchasers in *Jones* failed to identify the "relevant DRAM devices," suggested that smartphones and laptops were "barely the tip of the iceberg," and did "not list the complete types of products (for example, computers, smartphones, tablets, televisions) they intend to reach." 400 F. Supp. 3d at 908. In *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-1180, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ("*Los Gatos Mercantile*"), the market for Architectural Coatings "contain[ed] thousands of products, some of which have countless formulations," and included products "that may have only a trace of titanium dioxide." *Id.* at *14. Plaintiffs' complaints suffer no such infirmities.

## IV. ARTICLE III DOES NOT PRECLUDE RESELLER PLAINTIFFS FROM PROCEEDING ON BEHALF OF NON-RESIDENT CLASS MEMBERS

Defendants' argument that a plaintiff does not have Article III standing to pursue state law claims on behalf of absent class members unless it was a resident of or purchased the product in those states erroneously conflates Article III standing with unrelated class certification issues.

The Ninth Circuit instructs that, once named plaintiffs establish individual standing, the question of whether they may be permitted to present claims on behalf of others with similar claims is one for class certification. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015). In *Melendres*, the Ninth Circuit held that "disjuncture[s] between the claims of named plaintiffs and those of absent class members" like those raised by Defendants, "are relevant only to class

certification, not to standing." *Id.* at 1261-62. The court continued: "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.* at 1262. The Ninth Circuit explained this approach "has been embraced several times (though not always) by the Supreme Court, and is the one adopted by 'most' other federal courts to have addressed the issue." *Id.* (citing *Sosna v. Iowa*, 419 U.S. 393, 397–403 (1975); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (applied to the same effect in *Fuel Senders*, 29 F. Supp. 3d at 1000). "[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met," at a later stage of the case. *Id.* (citing Newberg § 2:6). Defendants do not cite contrary Ninth Circuit law.[6]

Courts in this District have followed *Melendres*, declining to dismiss claims brought on behalf of absent class members including those residing in states where the putative class representatives do not. For instance, applying *Melendres*, the court in *Chrysler-Dodge-Jeep Ecodiesel* held that plaintiffs could assert claims on behalf of class members in states where "[n]o named Plaintiff . . . is alleged to reside or have purchased" the product at issue. *In re Chrysler-Dodge-Jeep Ecodiesel Litig.*, 295 F. Supp. 3d 927, 953-56 (N.D. Cal. 2018). This District followed that reasoning again, in March of this year, in *Staley*, stating that *Melendres* had established a "per se rule." *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2020 WL 1032320, at *33 (N.D. Cal. Mar. 3, 2020); *see also Kutza v. Williams-Sonoma, Inc.*, No. 18-CV-03534-RS, 2018 WL 5886611, at *3 (N.D. Cal. Nov. 9, 2018); *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299, at *8–9 (N.D. Cal. Jan. 24, 2018); *Peacock v. 21st Amendment Brewery Cafe, LLC*, No. 17-CV-01918-JST, 2018 WL 452153, at *10 (N.D. Cal. Jan. 17, 2018).

---

[6] The only case Defendants cite decided any significant amount of time after *Melendres*, *Van Mourik*, deals with an out-of-state plaintiff trying to bring *her own* claims, not those of putative class members, under California law. *Van Mourik v. Big Heart PetBrands, Inc.*, No. 17-cv-3889-JD, 2018 U.S. Dist. LEXIS 34796, at *1-2 (N.D. Cal. March 1, 2018). It is therefore not on point.

Tellingly, neither Defendants nor any of the cases they rely upon reference *Melendres* and most of Defendants' cases were decided before *Melendres* was the law of the Ninth Circuit.[7]

## V. PLAINTIFFS ADEQUATELY ALLEGED ANTITRUST STANDING

### A. *AGC* Should Not Be Applied to Plaintiffs' State Law Claims.

The question of antitrust standing under Plaintiffs' state-law damages claims is one of "*state* law," not federal law. *LIB* (emphasis in orig.). Defendants' incorrect assumption (MTD at 14-19) that the *AGC* federal standards apply to Plaintiffs' state claims should be rejected.

In response to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), many states created "repealer" provisions that permitted, by statute or case law, indirect purchasers to maintain damages claims under state antitrust statutes. *See TFT-LCD I*, 586 F. Supp. 2d at 1120. The Supreme Court rejected a preemption challenge to these repealer provisions, and affirmed states' rights to provide indirect purchasers with redress for antitrust injuries. *California v. Arc America Corp.*, 490 U.S. 93, 105-06 (1989). The court in *AGC* acknowledged its antitrust standing analysis was guided by "[t]he same concerns" underlying the holding in *Illinois Brick* (*see* 459 U.S. at 544); these concerns were rejected by the state legislatures and courts that repealed *Illinois Brick*.

Courts in this District repeatedly hold that *AGC* either does not apply to state-law claims given the absence of a clear directive from state legislatures, highest courts or other sources, or even assuming it applies, *AGC* does not preclude standing at the pleading stage on facts like those present here.[8] As the Minnesota Supreme Court emphasized in rejecting *AGC*'s application to

---

[7] *See also Garnica v. HomeTeam Pest Def., Inc.*, No. 14-CV-05243-VC, 2015 WL 13066140, at *1–2 (N.D. Cal. Dec. 21, 2015); *Automotive Parts Antitrust Litig. (Wire Harness),* No. 12-MD-02311, 2013 WL 2456612, at *10 (E.D. Mich. June 6, 2013) (capacity of named plaintiff to seek relief for non-resident class members determined at class certification); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."); *Processed Eggs*, 851 F. Supp. 2d at 886-87.

[8] *See, e.g.*, *Capacitors*, 106 F. Supp. 3d at 1073 (*AGC* not applicable under California law); *LIB*, 2014 WL 4955377, at *4 nn.6, 7 (states at issue), *11 (*AGC* not applicable under laws of 25 states at issue (*i.e.*, AK, AR, AZ, CA, DC, FL, IL, KS, MA, ME, MI, MN, MO, MS, MT, NH, NY, NC, ND, OR, SC, TN, UT, VT, WV, WI)); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-

---

Case No. 3:19-md-02918-MMC

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

Minnesota law, the state legislature did not "repudiate [] *Illinois Brick* and invite [] indirect purchaser suits only for courts to dismiss those suits on the pleadings based on the very concerns that motivated *Illinois Brick*." *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 629 (Minn. 2007). Other federal courts recognize that *AGC* does not apply to <u>any</u> repealer states. *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) ("*Broiler Chicken*"); *Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (JLL), 2017 WL 3131977, at *19-20 (D.N.J. July 20, 2017) ("*Liquid Aluminum*"). This Court should disregard *AGC* for at least three reasons.

First, most federal courts have held that *AGC* does not apply in the absence of a clear directive from the relevant state's legislature or highest court, even in the face of statutory or judicially-created harmonization provisions.[9] Defendants cite few, if any, such directives. *See generally* Appendix A ("App. A"), *infra* (state-by-state list of cases rejecting or limiting *AGC*'s application to state law claims, and distinguishing Defendants' cases).

Second, Defendants' overly broad reliance upon "harmonization statutes" or "equivalent caselaw" fails to recognize that federal and state antitrust law may differ on issues such as antitrust

---

2143 RS, 2011 WL 3894376, at *10 n.9, *12 (N.D. Cal. Aug. 3, 2011) ("*Optical Disk Drive*") (holding that "it is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the [29] repealer states' laws in the absence of a clear directive from those states' legislatures or highest courts," and that even if applied, the *AGC* test "does not conclusively rule out standing . . . at the pleading stage, on facts like those present here") (quotations omitted); *Flash Memory*, 643 F. Supp. 2d 1133 (*AGC* not applicable under laws of 15 states at issue (*i.e.*, AL, AZ, DC, KS, ME, MI, MN, MS, NV, NM, NC, SD, TN, WV and WI); *TFT-LCD I*, 586 F. Supp. 2d 1109, 1123 (refusing to dismiss plaintiffs' claims under 17 states at issue (*i.e.*, AZ, CA, IA, KS, ME, MI, MS, NE, NV, NM, NY, NC, ND, SD, WV, WI), holding that it is "inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or highest courts," and that even if *AGC* applied, plaintiffs met that test); *GPUs I*, 527 F. Supp. 2d at 1026 ("Standing under each state's antitrust statute is a matter of that state's law. It would be wrong for a district judge, in *ipse dixit* style, to bypass all state's legislatures and all state appellate courts and to pronounce a blanket and nationwide revision of all state antitrust laws.").

[9] *See, e.g.*, *Capacitors*, 106 F. Supp. 3d at 1073 ("*AGC* has not been clearly applied by the California Supreme Court to claims brought under California's Cartwright Act"); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPUs II*") (declining to apply *AGC* to state-law claims "[a]bsent clearer directive from the courts and legislatures of those states"); *TFT-LCD I*, 586 F. Supp. 2d at 1123 (same).

---

Case No. 3:19-md-02918-MMC

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

plaintiffs' standing to pursue damages claims.[10] Mere references to federal law do not establish that *AGC* has been adopted as the law of repealer states, and courts have repeatedly rejected the "harmonization" argument.[11] For example, Defendants rely on *Knevelbaard Dairies v. Kraft Foods, Inc.* as a "binding precedent." MTD at 14, 20, n.4. But *Knevelbaard* confirms that standing under the Cartwright Act is governed by California law, and that federal antitrust precedent has "limited" value and is "not necessarily decisive" in construing the Cartwright Act, because "California law affords standing more liberally than does federal law." 232 F.3d 979, 987 (9th Cir. 2000).

Third, Defendants' cases are off-point. The *Visa* cases dealt with facts not present here. *See* MTD App. C-(1) to C-(4), and C-(11) (citing 15 *Visa* cases). The *Visa* plaintiffs brought the actions under state laws, alleging that the defendants had engaged in tying arrangements that forced merchants to pay inflated fees for processing transactions, which the merchants then passed on to consumers. Unlike Plaintiffs who purchased products containing the price-fixed component through the stream of commerce, the *Visa* plaintiffs "did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard."[12]

---

[10] *See, e.g., Bunker's Glass Co. v. Pilkington PLC*, 75 P. 3d 99, 106 (Ariz. 2003) (harmonization does not extend to "procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct"); *Lorix*, 736 N.W. at 626 ("[t]he desire for harmony between federal and state antitrust law relates more to prohibited conduct than to who can bring a lawsuit").

[11] *See, e.g., Flash Memory*, 643 F. Supp. 2d at 1153 (questioning whether "a state's harmonization provision, whether created by statute or common law, is an appropriate means of predicting how a state's highest court would rule regarding the applicability of *AGC*"); *LIB*, 2014 WL 4955377, at *10 ("[S]imply because a state statute encourages reference to federal law does not impose a mandate on state courts to conform in fact to federal law."); *Broiler Chicken,* 290 F. Supp. 3d at 816 n. 17 (rejecting "harmonization" statutes as a basis to apply *AGC* to states' antitrust laws).

[12] *Southard v. Visa U.S.A. Inc*., 734 N.W.2d 192, 196-97 (Iowa 2007) ("*Southard*"); *see also id.* at 199 (*Visa* plaintiffs are not indirect purchasers because they are "not in the chain of distribution"); *Kanne v. Visa U.S.A. Inc.,* 723 N.W.2d 293, 298-99 (Neb. 2006) (same); *see also Lorix*, 736 N.W. 2d at 631 (distinguishing the *Visa* cases from an indirect-purchaser component case because the latter involves a purchaser injured by an overcharge passing through the chain of distribution). Plaintiffs recognize that courts in this District (*e.g., Flash*), relying primarily on *Visa* cases, have held that *AGC* applies to Iowa and Nebraska, but respectfully submit that for the reasons stated above, the *Visa* cases are inapposite and *AGC* should not be applied to any *Illinois Brick* repealer states.

Defendants' remaining cases are either cited incorrectly, distinguishable, or contrary to the weight of authority in this District. For example, Defendants' representation in Appendix B that *GPUs II* found that 21 states would apply *AGC* is just wrong. The *GPUs II* court held only that "applying [AGC] to claims under [Nebraska and Iowa] law is proper," questioned whether it should be applied to all other states at issue, and held there was no need to make that determination because "indirect purchasers have shown standing under *AGC* for consumers who bought finished computers." 540 F. Supp. 2d at 1097. Defendants' claim that *CRT* held that *AGC* applied under Arizona is also wrong (*see In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 3:07-cv-5944, 2013 WL 4505701, at *8-9 (N.D. Cal. Aug. 21, 2013) (reversing report and recommendation cited by Defendants and holding that *AGC* did not apply under Arizona law)), as is Defendants' Appendix B citation to *Broiler Chicken*, which held that "any state with an *Illinois Brick* repealer *would reject application of AGC to this case* …," and applied it to none of the states at issue. 290 F. Supp. 3d at 816. As detailed in Appendix A below, Defendants fail to justify categorical application of *AGC* to Plaintiffs' state law claims.

## B. Application of the *AGC* Factors Supports Antitrust Standing.

The *AGC* factors, even if applicable, weigh in favor of Plaintiffs' antitrust standing.

***Nature of Plaintiffs' Injury.*** The first *AGC* factor evaluates whether plaintiffs have pled "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Here, Plaintiffs allege a *per se* antitrust violation which caused them to pay higher prices for Defendants' products. *See, e.g.*, EUC ¶¶ 165, 177; RC ¶¶ 116, 123. This is classic antitrust injury. As the Ninth Circuit has observed, "consumers and competitors are *most* likely to suffer antitrust injury," *Am. Ad Mgmt.*, 190 F.3d at 1057 (emphasis added), and are "presumptively the proper plaintiffs to allege antitrust injury." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).

Contrary to Defendants' assertions (MTD at 14-16), courts do not impose a strict "market participation" requirement for indirect-purchaser claims. *See LIB*, 2014 WL 4955377, at *12 ("[B]eing a consumer or competitor in the allegedly restrained market is not strictly required.").

To the extent *AGC* requires market participation, numerous courts have found that allegedly price-fixed components and the finished products containing them "reside in the same market, or inextricably linked markets." *Id*. (citing cases). Indeed, Defendants incorrectly cite *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2013 U.S. Dist. LEXIS 118566, at *84-88 (N.D. Cal. May 2, 2013) for the proposition that courts in this District recognize that price-fixed components and the finished product containing them are separate markets. MTD at 15. But Defendants' cited authority was later modified by Judge Conti *to hold the opposite*:

> The Court finds that where a product like a CRT itself is virtually valueless on its own, and the markets for CRTs themselves and CRT products are plausibly pled to be inextricably intertwined, a plaintiff adequately pleads an antitrust injury when the alleged anticompetitive activity surrounding a component affects the market for the finished product in a traceable way. *CRT*, 2013 WL 4505701, at *10 (N.D. Cal. August 21, 2013).

Defendants misstep again by ignoring Plaintiffs' detailed allegations that the price-fixed suspension assemblies and the Finished Product markets are inextricably intertwined. For example, Plaintiffs allege that: (1) suspension assemblies are "indispensable components of HDDs" (EUC ¶ 87; RC ¶ 43); (2) they purchased HDDs or Finished Products containing the price-fixed suspension assemblies that were manufactured by Defendants (EUC ¶¶ 18-64; RC ¶¶ 22-26); (3) while HDD suspension assemblies have no independent utility, HDDs cannot function without them (EUC ¶ 167; RC ¶ 118); (4) "Defendants monitored and forecast the demand for HDDs for use in various Finished Product applications such as desktop and laptop computers, DVRs, game consoles, and network servers" (EUC ¶ 167); (5) suspension assemblies are "identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD," that "follow a traceable physical chain of distribution from Defendants to Plaintiffs and members of the Classes" and the costs of which "can be traced through the chain of distribution to Plaintiffs and members of the Classes" (EUC ¶ 168; RC ¶¶ 118-19); and (6) "customers must purchase HDD suspension assemblies as an essential part of an HDD, or a product containing an HDD" and "[d]emand in the market for HDDs was derived from consumer demand for HDDs and Finished Products" (EUC ¶¶ 143, 174; RC ¶ 82), such that the component and Finished Product markets are economic complements. These allegations—ignored by Defendants—plausibly show market

participation sufficient to confer antitrust standing. *See, e.g., LIB*, 2014 WL 4955377, at *12-13;

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010);

*TFT-LCD I,* 586 F. Supp. 2d at 1123; *Flash Memory*, 643 F. Supp. 2d at 1154.

Plaintiffs need not allege that suspension assemblies comprise a "significant or set proportion" of an HDD or Finished Product to show market participation. Defendants cite no case holding that a component's cost must reach a certain percentage of a finished product to show antitrust standing. Rather, courts recognize that defendants "may not shield themselves from liability by fixing prices on a relatively inexpensive item." *SRAM*, 264 F.R.D. at 614-15. Indeed, in the *Automotive Parts Antitrust Litigation*, the court repeatedly held that auto dealers and consumers who purchased new vehicles adequately pleaded participation in the market for the price-fixed automotive component parts at issue notwithstanding defendants' assertions that the part at issue was "one of thousands" in vehicle, or comprised a "negligible" portion of the value of the vehicle.[13] The same result is warranted here. In any event, these factual questions cannot be decided on a pleading motion. *See LIB*, 2014 WL 4955377, at *13 (whether markets are "inextricably intertwined likely will require sophisticated economic analysis and is a factual matter not amenable to resolution at the pleadings stage"). Notably, Seagate alleges "suspension assemblies are one of the highest cost components of an HDD." Seagate Complaint, ¶ 50.

Finally, Defendants' reliance on a number of *DRAM* decisions is unavailing.[14] In *DRAM II*, the court recognized that its ruling was not without controversy, 536 F. Supp. 2d at 1142, and

---

[13] *In re Automotive Parts Antitrust Litig. (Bearings)*, 50 F. Supp. 3d 836, 851, 855 (E.D. Mich. 2014) (market participant requirement met despite defendants' claim "that the price-fixed product *does not make up a substantial portion* of the finished good's costs") (emphasis added); *Fuel Senders*, 29 F. Supp. 3d at 998, 1002-03 (antitrust standing upheld despite defendants' argument regarding "the cost of a Fuel Sender relative to the final price of a vehicle containing *thousands of component parts*") (emphasis added); *In re Automotive Parts Antitrust Litig. (Ceramic Substrates)*, No. 12-md-02311, 2017 WL 7689654, at *10-11 (E.D. Mich. May 5, 2017) (antirust standing upheld despite defendant's argument regarding "*a part's negligible price relative to the vehicle*") (emphasis added).

[14] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM I*"); *DRAM II*.

---

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

multiple courts have since declined to follow the *DRAM* court's analyses on market participation.[15] Also, Plaintiffs' allegations cover essentially all of the allegations made in *LIB* and *TFT-LCD* that the *Jones v. Micron* court found lacking. *Compare Jones*, 400 F. Supp. 3d at 912 (citing detailed allegations in *LIB* and *TFT-LCD*), *with* EUC ¶¶ 168-69, 174-77 and RC ¶¶ 82, 117-19 (allegations similar to those in *LIB* and *TFT-LCD*). Moreover, as explained above (§ III), the plaintiffs' claims in *Jones* encompassed a "ubiquitous" universe of finished products that contain DRAM. *Id.* at 908, 913. Here, Plaintiffs' Finished Products are limited and they have alleged suspension assemblies that are "indispensable components of HDDs." EUC ¶¶ 1, 87, 154-56; RC ¶ 43.

***Direct and Non-speculative Injury.*** On the second *AGC* factor, "directness of the alleged injury," "courts have determined that discrete injuries traceable through a distribution chain tilt this factor in favor of antitrust standing." *LIB*, 2014 WL 4955377, at *14. Here, Plaintiffs allege that (1) they paid an overcharge that was passed on to them by HDD and Finished Product makers; (2) the product and its cost can be traced through the chain of distribution; (3) the markets for HDDs and Finished Products were inelastic, thereby permitting cost increases; (4) the cost increases here were industry-wide and the HDD and Finished Product markets highly competitive, economically necessitating pass-on of variable cost increases; and (5) regression analyses will "isolate and identify only the impact of an increase in the price of HDD suspension assemblies[.]" *See* EUC ¶¶ 168, 174-77; RC ¶¶ 116-23. These allegations support antitrust standing. *See LIB*, 2014 WL 4955377, at *15; *TFT-LCD I*, 586 F. Supp. 2d at 1123-24; *Auto Parts (Fuel Senders)*, 29 F. Supp. 3d at 1002-03.

Plaintiffs' allegations also support antitrust standing under the third *AGC* factor, because their harm is not speculative. *See LIB*, 2014 WL 4955377, at *15; *TFT-LCD I*, 586 F. Supp. 2d at 1124; *Auto Parts(Fuel Senders)*, 29 F. Supp. 3d at 1003. Defendants' bald assertion that "pricing decisions made at multiple levels of commerce" impact "final consumer prices" is insufficient to overcome Plaintiffs' detailed allegations regarding the market, causation and impact set out above.

---

[15] *See, e.g.. LIB*, 2014 WL 4955377, at *13 (declining to follow *DRAM II*); *Optical Disk Drive*, 2011 WL 3894376, at *12 (declining to follow *DRAM I and II*); *TFT-LCD I*, 586 F. Supp. 2d at 1121-23 (same).

Courts in this District repeatedly hold that defendants' claims that causation and damages in an antitrust case will be complicated is not grounds for finding harm speculative, and that "it would be inappropriate to determine complex and intensely factual damages issues without a more fully developed factual record." *TFT-LCD I*, 586 F. Supp. 2d at 1124 (quotations omitted); *LIB*, 2014 WL 4955377, at *15 (courts should "avoid substituting defendants' speculation for the complaint's allegations of causation"). Finally, Defendants ignore that Plaintiffs are suing under state repealer laws that are based on a policy decision to protect downstream purchasers who often "suffer[ ] the greatest, if not the most direct, injury of the price-fixing conspiracy." *D.R. Ward*, 470 F. Supp. 2d at 503.

**Risk of Duplicative Recovery and Complexity in Apportioning Damages.** The fourth and fifth *AGC* factors can be considered alongside each other. *CRT*, 2013 WL 4505701, at *11; *see also LIB*, 2014 WL 4955377, at *15 (these factors evaluate whether plaintiffs have sufficiently alleged that duplicative recovery can be avoided and apportionment of any overcharge passed on in the distribution chain is possible). First, courts recognize that vis-à-vis direct purchasers, the risk of duplicative recovery "generally is inapposite in the context of [*Illinois Brick* repealer] state law antitrust claims." *Flash Memory*, 643 F. Supp. 2d at 1156. Second, in indirect purchaser cases involving price-fixed component parts, the risks of duplicative recovery and undue complexity in apportioning damages are adequately addressed by allegations that the "overcharges are distinct and traceable." *Auto Parts (Bearings)*, 50 F. Supp. 3d at 855 (holding that "the existence of three classes does not render the IPPs' claims ripe for duplicative recovery"); *see also Auto Parts (Fuel Senders)*, 29 F. Supp. 3d at 1003 (finding antitrust standing where both auto dealers' and downstream consumer purchasers' allegations that "overcharges are distinct and traceable . . . lessen the risk of duplicative recovery"); *TFT-LCD I*, 586 F. Supp. 2d at 1124 ("plaintiffs have sufficiently alleged that damages are traceable and thus apportionable because [the parts at issue] are a separate component"). Indeed, "defendants do not explain why damages could not be apportioned in this case, as they have been in other complex antitrust cases, . . . [and] [i]t is a rule of long standing that in complicated antitrust cases plaintiffs are permitted to use estimates and analysis to calculate a reasonable approximation of their damages." *LIB*, 2014 WL 4955377, at

*16 (quotations omitted). Finally, if necessary, Resellers and End Users would rely on the types of well-established regression analyses that have been used in similar indirect purchaser component cases to apportion damages.

### C. Defendants' Assertions that Certain States Are Not Repealer States, Only Permit the State AG to Bring a Claim, or Cover Only Intrastate Commerce are Incorrect.

Virtually all of Defendants' remaining arguments fail. Delaware, Missouri, New Jersey and Virginia permit indirect purchasers to sue for the alleged price-fixing. *See* App. A, *infra*, at 34, 36, 37. Additionally, Arkansas, Colorado, Maryland and Rhode Island do not limit the right to sue to the Attorneys General. *See id* at 33, 34, 35, 38. Finally, the antitrust statutes of Mississippi, North Carolina, Tennessee and Wisconsin do not require that Defendants manufacture or directly distribute products from within those states for an indirect purchaser to maintain a claim. *See id.* at 36, 37, 39. Reseller Plaintiffs withdraw their claims under Alaska and Alabama law.

## VI. PLAINTIFFS PROPERLY ALLEGE CLAYTON ACT DAMAGE CLAIMS

The Nationwide Damages Class ("NDC") Plaintiffs—comprising both Resellers and End Users (*see* EUC ¶ 155; RC ¶ 106)—allege they are the highest-level victims in the chain of distribution who suffered damages in the United States as a result of Defendant's cartel. EUC ¶¶ 149-53, 155. These allegations, accepted as true, show the NDC Plaintiffs have standing to assert Clayton Act claims under the plain language of Clayton Act Section 4, 15 U.S.C. § 15, and the rationale of *Illinois Brick*.

Defendants' argument to the contrary rests on the overbroad contention that *Illinois Brick* categorically bars anyone other than direct purchasers—those in privity with the conspirators— from bringing Clayton Act damage claims. MTD at 1, 5-6. But *Illinois Brick* denied standing to indirect purchasers only because there were direct purchasers who were better situated to assert Clayton Act claims. *Illinois Brick*, 431 U.S. at 745-46; *see also Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 489 (7th Cir. 2002). Here, by contrast, NDC Plaintiffs allege that the direct purchasers were primarily foreign companies (including foreign subsidiaries of U.S. companies) that purchased in foreign commerce, EUC ¶¶ 149-53, 155, and therefore may not be allowed to bring Clayton Act claims. *See* 15 U.S.C. §6a (Foreign Trade Antitrust Improvements Act of 1982

("FTAIA")); *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158, 161 (2004) (FTAIA "excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury."). This factual difference is critical because *Illinois Brick*'s holding was premised on the existence of direct purchaser plaintiffs who could serve as "private attorneys general" to enforce the antitrust laws by bringing Clayton Act claims for the "full extent of the overcharge." 431 U.S. at 721. *Illinois Brick* is therefore instructive but not precedential. *See, e.g., Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) (non-litigated issues are not precedential for future decisions) (citations omitted). The Supreme Court has not considered whether *Illinois Brick* applies where, as here, direct purchasers could not serve as private enforcers of the federal antitrust laws.[16] The plain language of Section 4 of the Clayton Act and the rationale of *Illinois Brick* support standing for the NDC Plaintiffs.

## A. The Clayton Act Deters Cartel Formation and Compensates U.S. Victims.

Congress enacted Section 4 of the Clayton Act to provide a treble damages private right of action to "[a]ny person" injured "by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. The broad language of Section 4 reflects Congress' intent to "create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations." *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 472 (1982).

In *Illinois Brick*, the Supreme Court held that in price-fixing cases involving U.S. victims

---

[16] Although NDC Plaintiffs are unaware of any reported case presenting this factual scenario, the DOJ and Federal Trade Commission ("FTC") have argued in favor of indirect-purchaser standing in a case where the FTAIA barred the direct purchaser from bringing a Clayton Act claim. *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 818-20 (7th Cir. 2015). There, the Seventh Circuit held that a domestic cellphone maker could not assert viable Clayton Act claims for purchases of price-fixed products that it made through its subsidiaries in foreign commerce. In an *amicus* brief, the DOJ and FTC argued that *Illinois Brick* should be construed to permit the first U.S. purchasers of cellphones that incorporated the price-fixed product to bring Clayton Act claims because *"[t]hat construction would permit vigorous private enforcement of the antitrust laws— the reason full recovery is ordinarily concentrated in direct purchasers—without implicating the doctrine's concerns about multiple recovery and apportionment*." Brief for the United States and the Federal Trade Commission as Amici Curiae in Support of Neither Party at 6, *Motorola Mobility LLC v. AU Optronics Corp.*, 2014 WL 4447001 (7th Cir.) (emphasis added). So too here.

Case No. 3:19-md-02918-MMC

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

at various levels in a chain of distribution, direct purchasers should be elevated to "a preferred position as private attorneys general," to the exclusion of downstream purchasers, to promote the "longstanding policy of encouraging vigorous private enforcement of the antitrust laws." 431 U.S. at 745-46. Otherwise, the Supreme Court reasoned, plaintiffs at multiple levels of the chain of distribution could all make conflicting claims to the same overcharge, which would create complexities in determining how to apportion damages, creating a risk of duplicative recoveries, leading to uncertainty and reducing the incentives of victims to bring Clayton Act damage claims. *Illinois Brick*, 431 U.S. at 730-31. As such, the indirect purchasers' claims failed in *Illinois Brick* "not because the defendants did not sell to them," but because the defendants sold to other victims who "could recover for any injury they claimed." *Loeb Indus.*, 306 F.3d at 482.

## B. NDC Plaintiffs Have Standing to Pursue Damages Under the Clayton Act.

HDD suspension assemblies were sold by Defendants almost entirely to foreign companies in foreign commerce. EUC ¶¶ 150-52. Such extraterritorial purchases are presumptively beyond the reach of U.S. antitrust law and therefore those foreign direct purchasers may not assert viable Clayton Act claims. *See, e.g., Motorola Mobility*, 775 F.3d at 818-20 (granting defendants' motion for summary judgment because "U.S. antitrust laws are not to be used for injury to foreign customers"). If, as Defendants assert, *Illinois Brick* creates a categorical rule that limits standing to direct purchasers only, regardless of whether those purchasers have a right to recovery under U.S. law, then in cases where the direct purchaser is barred from recovery, *nobody* could successfully assert a Clayton Act claim. Such an outcome would gut Section 4 of the Clayton Act in cases like this and, consequently, reduce the statute's deterrent effect, encourage foreign producers to structure their sales to avoid U.S. antitrust law and "retain the fruits of their illegality," *Illinois Brick* at 725, and leave U.S. victims of foreign cartels with no federal remedy (and in the 14 non-repealer states here, no remedy at all).

Rather than confront the alleged facts, policy concerns, and law described above, Defendants ask this Court to mechanically apply a "bright-line" rule that has never been applied to preclude standing in the circumstances alleged by NDC Plaintiffs. Defendants fail to cite any case that addresses these facts. *In re ATM Fee Antitrust Litig.* held only that plaintiffs lacked

standing because, like in *Illinois Brick*, there were upstream victims that could lawfully assert Clayton Act claims. 686 F.3d 741, 747 (9th Cir. 2012). In *Apple Inc. v. Pepper*, 139 S.Ct. 1514, 1521 (2019), the Supreme Court actually upheld standing for U.S. victims of an alleged antitrust violation. In so ruling, the Supreme Court noted that the *Illinois Brick* rationales cut strongly in favor of the plaintiffs there and any ambiguities regarding the right of a plaintiff to sue should be resolved in the direction of the statutory text. *Id.* 1522, 1524.

## VII. PLAINTIFFS STATE CLAIMS FOR INJUNCTIVE RELIEF

The Court should deny Defendants' motion to dismiss the injunctive relief claims because Plaintiffs more than adequately allege that they are threatened by "loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26 ("Any person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws."). Defendants, who have admittedly fixed HDD suspension assembly prices, are the only two competitors in a market that continues to have high barriers to entry and inelastic demand, and remains ripe for conspiracy. EUC ¶¶ 119-53; RC ¶¶ 61-86.

Defendants' guilty plea, leniency application, and compliance policies do not change this analysis because they have shown their willingness to flout the law and their own compliance policies to rig the market. EUC ¶¶ 189-90; RC ¶ 50. Injunctive relief would protect American consumers and businesses, who have continued to purchase products containing HDD suspension assemblies, from further collusion. Defendants' "voluntary" cessation—NHK Spring stopped its anticompetitive activities only because TDK disclosed the cartel—does not moot the injunctive relief claim. "[I]f it did, the courts would be compelled to leave the defendant free to return to his old ways." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (antitrust case; alterations and quotations omitted). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (quotations omitted).[17]

---

[17] Courts recognize that the presence of finite time periods in criminal pleas or class periods does

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

The Defendants' cases do not hold otherwise. The injunctive relief claims in the *CRT* cases were dismissed because, unlike here, the conspirators no longer manufactured or sold the price-fixed component. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2016 WL 721680, at *23 (N.D. Cal. Jan. 28, 2016); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2012 WL 12914681, at *2 (N.D. Cal. Nov. 16, 2012). *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 330 (1952), also is inapposite because the injunctive relief claim there was dismissed "after a long trial" where the government failed to prove its case. *Id.* at 330, 334.

## VIII. PLAINTIFFS PROPERLY PLEAD THEIR ANTITRUST STATE LAW CLAIMS

### A. Oregon and New Hampshire Antitrust Statutes Cover the Entire Damages Period.

Defendants can be held liable for the entire period of their conspiracy under New Hampshire and Oregon law, even though those statutes were enacted while their conspiracy was active. The Oregon legislation states that it applies to any "actions commenced on or after the effective date of this 2009 Act." 2009 Oregon Laws Ch. 304 (H.B. 2584). The Oregon Supreme Court found such language to be "a clear statement of an intent by the legislature to apply the statute retroactively to actions which had been 'commenced' after the effective date of the act, regardless of when such actions had 'accrued.'" *Whipple v. Howser*, 632 P.2d 782, 788 (Or. 1981); *In re Automotive Parts Antitrust Litig.*, 2015 WL 13834708, at *4 (E.D. Mich. May 1, 2015) ("In light of the clear direction set forth in *Whipple*, this Court finds that it cannot agree with Defendants that the legislature intended the statute to apply prospectively.").

The New Hampshire statute operates retroactively because it does not impair or increase Defendants' substantive rights. *See Eldridge v. Eldridge*, 620 A.2d 1031, 1033 (N.H. 1993) (retroactive application allowed when new law is remedial and does not create new obligation or impose new duty). The statute did not create a new duty or liability for past conduct, as Defendants' conduct has always been illegal. It merely created a remedy for indirect purchasers.[18] *See*

---

not preclude a claim for injunctive relief. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 597 (N.D. Cal. 2010); *SRAM*, 264 F.R.D. at 611.

[18] The lone opinion cited by Defendants for their New Hampshire argument should be disregarded because the court did not perform the retroactivity analysis required under New Hampshire law.

*Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 640 (2002) (indirect purchaser right to sue is a "remedy"). Plaintiffs agree that claims under Rhode Island's Antitrust Act are cognizable beginning on July 15, 2013.

### B. Plaintiffs Provided Notice to the AGs in Arizona, Hawaii, and Nevada.

Defendants erroneously claim that Plaintiffs failed to serve copies or notice of their complaints on the Attorneys General of Arizona, Hawaii, and Nevada. Plaintiffs have done so. *See* Ex. 1 hereto (reflecting notices given to AZ, HI and NV AGs and HI AG's reply).

## IX. PLAINTIFFS PROPERLY PLEAD CONSUMER PROTECTION STATE LAW CLAIMS

### A. Plaintiffs Adequately Plead Arkansas and New Mexico Consumer Protection Claims.

The Court should reject Defendants' improper construction of the "unconscionable" conduct requirement under the Arkansas Deceptive Trade Practices Act ("ADTPA") and the New Mexico Unfair Practices Act ("NMUPA").

To state a claim under the ADTPA, Plaintiffs must allege Defendants engaged in an "unconscionable, false, or deceptive act or practice." Ark. Stat. Ann. § 4-88-107(a)(10). "[L]iberal construction of the [A]DTPA is appropriate." *State ex rel. Bryant v. R & A Inv. Co.*, 985 S.W. 2d 299, 302 (Ark. 1999). An unconscionable act, according to the Arkansas Supreme Court, is one that "affront[s] the sense of justice, decency, or reasonableness." *Baptist Health v. Murphy*, 226 S.W. 3d 800, 811, n.6 (Ark. 2006) (citing BLACK'S LAW DICTIONARY 1561 (8th ed. 2004)). Many federal courts have found "well pleaded price-fixing claims to constitute ADTPA violations." *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072 (S.D. Cal. 2017) ("*Packaged Seafood*") (collecting cases); *LIB,* 2014 WL 4955377, at *22; *Flash Memory*, 643 F. Supp. 2d at 1156-57 (rejecting *GPUs I* analysis Defendants here rely on and finding price-fixing was "substantively unconscionable"); *Auto Parts (Wire Harness),* 2013 WL 2456612, at *24.[19]

---

*Auto Parts (Fuel Senders)*, 29 F. Supp. 3d at 1004.

[19] Defendants' contention that the ADTPA prohibits only unconscionable act is incorrect. "False or deceptive" acts or any types of "unfair trade practices actionable at common law or under other statutes of [Arkansas]" are also declared unlawful. Ark. Stat. Ann. § 4-88-107(a)(10), § 4-88-

Similarly, federal courts have "generally permitted claims" under the NMUPA in price-fixing cases. *See, e.g., Packaged Seafood,* 242 F. Supp. 3d at 1082; *TFT-LCD I,* 586 F. Supp. 2d at 1127; *In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009); *In re Aftermarket Filters Antitrust Litig.,* No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *Auto Parts (Wire Harness),* 2013 WL 2456612, at *25 (holding that plaintiffs "satisfied their pleading obligation" under NMUPA based on price-fixing allegations).[20] Plaintiffs' similar price-fixing claims in this case should stand.

**B. Plaintiffs Can Assert Arkansas, Colorado, Montana, South Carolina, and Virginia Consumer Protection Claims on a Class Basis.**

A state law that permits individual suits by indirect purchasers but prohibits class actions in state court does not preclude plaintiffs from bringing a class action in federal courts under Rule 23. *See Shady Grove Orthopedic Assoc, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-10 (2010). Rule 23 must be applied in federal court unless its application would "abridge, enlarge or modify any substantive right" under the Rules Enabling Act. 28 U.S.C. § 2072(b). Given that Rule 23 "addresses not the remedy, but the procedural right to maintain a class action," *Shady Grove*, 559 U.S. 393, 401 n.4, it is procedural, and thus supersedes the state law restrictions. Replying upon *Shady Grove*, federal courts hold that state class action bans do not apply to state law claims proceeding under Rule 23.[21] Similarly, federal courts permit class actions under Rule 23 for

107(b). Defendants' citations to *Lidoderm* and *TFT-LCD* are inapposite. *Lidoderm* involved "conduct that occurred exclusively before the [US]PTO and was not directed to consumers." *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1167 (N.D. Cal. 2015). *TFT-LCD* noted the "absence of any Arkansas authority interpreting the ADTPA to apply to price-fixing," *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011). However, such decisions exist. *See, e.g., Auto Parts (Fuel Senders)*, 29 F. Supp. 3d 982, 1008-09 (E.D. Mich. 2014) (discussing *Burton v. Micron Tech, Inc.*, Case No. CV 2004-226-1 (Cir. Ct. 1st Div. Nov. 6, 2009), where Arkansas Circuit Court upheld ADTPA claim regarding price-fixing conspiracy).

[20] Defendants' reliance on an affirmed summary judgment ruling in *Hernandez v. Wells Fargo Bank, N.A.*, 139 N.M. 68, 69 (2005), is misplaced. Here, Plaintiffs have specifically alleged a gross disparity and price increases, which allegations are sufficient as a matter of pleading to state a claim under the NMUPA. *See* EUC ¶ 277(c); RC ¶ 204(c).

[21] *See, e.g., LIB*, 2014 WL 4955377, at *21 (denying motion to dismiss South Carolina class claims because Rule 23 would not modify substantive rights under state law); *Hill v. LLR, Inc.*, No. CV-18-120, 2019 WL 2404900, at *10-11 (D. Mont. Mar. 8, 2019) (class action ban in Mont. Code

Case No. 3:19-md-02918-MMC

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

damages under Colorado's consumer statute (fn. 21). Defendants only cite pre-*Shady Grove* law.

**C.** **End-User Plaintiffs Have Statutory Standing As "Consumers" under the D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont Consumer Protection Laws.**

End-User Plaintiffs have standing as consumers under the D.C., Hawaii, Missouri, Montana, Rhode Island, and Vermont consumer protection laws because the price-fixed products they purchased were primarily for personal, family or household purposes.[22] Resellers voluntarily dismiss their claim under the Vermont consumer protection statute—the only one of the above-enumerated statutes pursuant to which they had brought claims. RC ¶ 208.

**D.** **Colorado, Florida, Michigan, and Minnesota Consumer Protection Claims Are Not Subject to Rule 9(b)'s Heightened Pleading Requirements.**

Defendants' assertion that Plaintiffs' claims under Colorado, Florida, Michigan, and Minnesota consumer protection law are subject to Rule 9(b) is meritless. These claims are based on unlawful and unfair business practices as distinguished from fraud. Rule 9(b) is inapplicable.[23] *See In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 846 (E.D. Pa. 2019) ("*Generics*") ("consumer protection claims [under the laws of Colorado, Minnesota, Michigan and Florida] rest on Defendants' alleged unconscionable or deceptive conduct [in carrying out their conspiracy], not on fraud. Therefore, their claims do not require application of the heightened

---

Ann. § 30-14-133 does not apply in federal court); *Andren v. Alere, Inc.*, No. 16-cv-1255-GPC(AGS), 2017 WL 6509550, at *22 (S.D. Cal. Dec. 20, 2017) (Colorado Rev. Stat. § 6-1-113(2) does not bar class actions under Rule 23); *Mounce v. CHSPSC, LLC*, No. 5:15-CV-05197, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (class action bar in Arkansas' DTPA does not apply in federal court); *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) (Virginia Consumer Protection Act's class action bar is trumped by Rule 23); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

[22] In addition, under the Hawaii Unfair or Deceptive Trade Practices Act, the restriction related to household use "applies only to claims involving deceptive acts or practices, not unfair competition; no such restriction applies to claims for unfair competition." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289, at *2 (N.D. Cal. Dec. 8, 2010).

[23] None of the four states' statutes are limited to fraud-based claims. *See* Col. Rev. Stat. § 6-1-105; Fla. Stat. § 501.204(1); Mich. Comp. Laws § 445.903; Minn. Stat. § 325F.69.

Case No. 3:19-md-02918-MMC

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINTS

pleading standard," where Defendants' conspiracy was "hatched in secret and maintained through deception"); *Packaged Seafood,* 242 F. Supp. 3d 1033, 1077-78 (S.D. Cal. 2017) (price-fixing allegations of "secret meetings" and "surreptitious communications among Defendants and their co-conspirators" sufficed to state a valid claim under Michigan and Minnesota consumer protection statutes); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 648 (E.D. Mich. 2019); *Perdue v. Hy-Vee, Inc.*, -- F. Supp. 3d --, 2020 WL 1917835, at *11-12 (C.D. Ill. Apr. 20, 2020) (Rule 9(b) inapplicable to Minnesota consumer protection statute).

Even if Rule 9(b) applied, Plaintiffs' detailed allegations are more than sufficient.[24]

### E.  Plaintiffs Properly Allege Intrastate Effects on the Commerce of Delaware, North Carolina, New Hampshire, and Massachusetts.

There is no question that once products with Defendants' HDD suspension assemblies were purchased in each state, the price-fixed products entered the state's commerce and injured purchasers.[25] The touchstone of these state laws is the protection of in-state businesses and consumers. Defendants' contention that the state laws at issue require in-state purchases or sales is simply wrong. Defendants' conduct impacted the "conduct of commerce" at least "in part" within Delaware. 6 Del. Code Ann. § 2512 (the law's purpose "shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State"); *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) (Receipt of checks in Delaware satisfies statute). North

---

[24] *See United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018) (Rule 9 requirements may be relaxed "[w]here, as here, the relevant information is within the defendant's exclusive possession and control."); *United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d 552, 557 (8th Cir. 2006) (holding that to satisfy the requirements of Rule 9(b), the plaintiff need not allege specific details of every fraudulent claim; instead, the plaintiff need only "allege some representative examples of the fraudulent conduct"); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) ("Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.") (citation omitted).

[25] End-User Plaintiffs, who only bring claims under New Hampshire and Massachusetts law, do make those allegations. *See* EUC ¶¶ 33, 269 (Massachusetts); ¶¶ 45, 244, 276 (New Hampshire). Reseller Plaintiffs, who bring claims under the Delaware and North Carolina statutes, also make such allegations. RC ¶¶ 24, 201, 206.

Carolina's Unfair Trade Practices Act requires conduct "in or affecting [North Carolina] commerce" not purely intrastate. *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 617 S.E.2d 664, 671 (N.C. App. 2005); *see also Packaged Seafood*, 242 F. Supp. 3d at 1083 ("the Court is not convinced that the NCDUPTA requires a plaintiff to show 'substantial effects'" in North Carolina and there is nothing to indicate the "conspiracy's effect in North Carolina was somehow less than in all the other affected states"); *see also* App. A. New Hampshire's consumer protection law has been regularly interpreted to permit claims similar to those of Plaintiffs. *See, e.g., In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235 (M.D. Pa. 2010) (allegation that defendants colluded to fix the price of chocolate products that were "then introduced into the New Hampshire market" sufficient to state a claim) (citing *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H. 2007)).[26] Finally, thousands of HDD Suspension Assemblies customers were on the "receiving end" of Defendants' conduct in Massachusetts. *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 24-25 (1st Cir. 2003) (applying Massachusetts consumer statute where "receiving end" and loss "situs" factors "weigh[ed] heavily" in Massachusetts, despite unfair conduct occurring elsewhere).

**F.**      <u>**Plaintiffs Adequately Plead Claims Under the Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah, and Virginia Consumer Protection Statutes.**</u>

Defendants contend that Plaintiffs cannot state claims under the consumer protection statutes of Arkansas, Colorado, Delaware, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah, and Virginia because price-fixing is not "enumerated" under those laws. Courts have rejected such arguments. *See, e.g., Generics*, 368 F. Supp. 3d at 841 (rejecting arguments that consumer protection laws "do not encompass actions based on allegations of an antitrust conspiracy" when the statutes prohibited false or misleading statements or the concealment, suppression or omission of any material fact); *Packaged Seafood.*, 242 F. Supp. 3d at 1080, 1083-

---

[26] *Precourt v. Fairbank Reconstruction Corp.,* cited by Defendants, is inapposite. 856 F. Supp. 2d 327, 344 (D.N.H. 2012). Unlike the plaintiff in *Precourt* who alleged no misconduct that reached New Hampshire, Plaintiffs here alleged that Defendants' anticompetitive conduct reached and affected the New Hampshire marketplace. *See* EUC ¶ 244; RC ¶ 179.

29

Case No. 3:19-md-02918-MMC
RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

85, 1086-87 (upholding Nevada, Oregon, Utah, and Rhode Island consumer protection claims).

Plaintiffs' claims under the above, and similarly-worded statutes, should be upheld. Col. Rev. Stat. § 6-1-105(l) (false or misleading statements concerning price of goods or price reductions actionable); Del. Code § 2532(11) (false or misleading statements of fact concerning price actionable); Mich. Comp. Laws § 445.903 (failing to reveal material fact, the omission of which tends to mislead or deceive consumer); Nev. Rev. Stat. §598.0915(13) ("[m]akes false or misleading statements of fact concerning the price of goods or services for sale"), § 598.0923(2) ("[f]ails to disclose a material fact in connection with the sale . . . of goods or services"), § 598.0923(3) ("[v]iolates a state or federal statute or regulation relating to the sale . . . of goods or services"); Or. Rev. Stat. §646.607 ("any unconscionable tactic" in the selling of goods); R.I. Gen. Laws §6-13.1-1 and *Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677, 681 (R.I. 2001) ("unfair" acts or practices (1) violate public policy, as expressed by the law; (2) are oppressive or unscrupulous; and (3) cause substantial injury to consumers); S.D. Code § 37-24-6 (any deceptive act, practice or misrepresentation to conceal or omit a material fact); Utah Code § 13-11-4 and 13-11-5 (deceptive and unconscionable act by supplier in connection with consumer transaction); Va. Code § 59.1-200 (deception or misrepresentation in consumer transaction). Defendants' argument regarding Arkansas and their citation to *LCDs* has already been addressed in Section IX.A, *supra*.

Plaintiffs allege the price-fixing conduct includes misrepresentations, omissions, concealment and suppression of material facts. *See* RC ¶¶ 53(b), (d)-(g), 98 (describing clandestine conspiracy including collusive quotes), 202(a) (purchasers deceived into believing they were buying competitively-priced products containing HDD SAs); *see also* EUC ¶¶ 91-104, 270 (e)-271(e). These states' consumer protection statutes prohibit such conduct.[27]

---

[27] Defendants' remaining cases are off-point. Although Defendants cite *DRAM I*, 516 F. Supp. 2d at 1116, to argue that Rhode Island's DTPA does not recognize a cause of action for price-fixing, a subsequent order explicitly allowed such claims. *DRAM II*, 536 F. Supp. 2d at 1145. *Lidoderm*, 103 F. Supp. 3d at 1162, only deals with Rhode Island's antitrust law, not the RIDTPA. Unlike in *In Re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004) ("*New Motor Vehicles*"), where the plaintiffs made no allegation of deception or omission of material fact under the Delaware and Michigan consumer statutes, Plaintiffs have alleged both here.

## G. Plaintiffs Adequately Plead Arkansas, California, and North Carolina Consumer Protection Claims and Are Not Required to Plead Reliance.

Contrary to Defendants' assertion, Plaintiffs need not allege "reliance" for claims under consumer protection statutes of Arkansas, California, and North Carolina because those statutes do not require Plaintiffs to plead under a theory of "misrepresentation." Ark. Code Ann. § 4-88-107(a)(10), (b); Cal. Bus. & Prof. Code § 17200; N.C. Gen. Stat. § 75-1.1.

Plaintiffs sufficiently plead Defendants' unconscionable conduct under the ADTPA. EUC ¶ 263; RC ¶ 198. Because a claim under the ADTPA is not a fraud claim, reliance is not required. *Pleasant v. McDaniel,* 550 S.W.3d 8, 12 (Ark. Ct. App. 2018) ("Knowledge of the deceptive nature of one's actions, intent to induce action, reliance, and damages are conspicuously missing from the elements of the ADTPA."); *Philip Morris Cos. v. Miner*, 462 S.W.3d 313, 320 (Ark. 2015).

In California, "to state a claim under the UCL, a plaintiff must plead that: (1) defendant engaged in one of the practices prohibited by the statute; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions." *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (citation omitted). Fraud is "not a necessary element." *Id.* at 1004; *see also In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) ("California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.") (citation omitted). Because Plaintiffs allege that Defendants' cartel is an unlawful and unfair business practice, there is no requirement for pleading reliance.[28]

As for North Carolina, "[t]he *Bumpers* court's interpretation of § 75–1.1 was in the context of a § 75–1.1 claim 'stemming from an alleged misrepresentation.'" *In re Hester*, No. 11-04375-8-DMW, 2015 WL 6125308, at *4 (Bankr. E.D.N.C. Oct. 16, 2015).[29] For a claim based on

---

[28] *In re Glumetza Antitrust Litig.,* No. C 19-05822 WHA, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020), cited by Defendants, is inapposite. *Glumetza* discussed a consumers' claim based on misrepresentation and fraud by a drug manufacturer, which requires pleading of the consumers' reliance on the specific misrepresentation. *See id.* at *11.

[29] Here, claims based on Defendants' price-fixing practice does not stem from a misrepresentation. *See also Processed Eggs*, 851 F. Supp. 2d at 910-11 (finding that a Section 75-1.1 claim "may also arise in the form of a per se violation, such as a violation of the Sherman Act" and "a plaintiff is not always obligated to plead allegations of reliance on a statement or misrepresentation").

another unfair practice "reliance on the misrepresentation is not required." *Id.* "A practice is unfair [under the NCUDPTA] when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007). Plaintiffs' unfair trade practice claims are based on Defendants' price-fixing and do not stem from a misrepresentation.

## X.   UNJUST ENRICHMENT IS A COGNIZABLE CAUSE OF ACTION

In this Circuit, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation omitted). An unjust enrichment claim can be construed as such even if plaintiffs do not identify it as a quasi-contract claim in their pleadings. *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1186 (N.D. Cal. 2016); *Packaged Seafood*, 242 F. Supp. 3d at 1093 (allowing unjust enrichment claim in similar case); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1001 (2015) (recognizing independent cause of action for unjust enrichment under California law); *United States v. Texas*, 507 U.S. 529, 534 (1993) (statute does not abrogate a rule of common law, such as unjust enrichment, unless the legislature clearly expresses such intent). As shown above, Plaintiffs have alleged such facts here on behalf of consumers and resellers in (only) those states under the laws of which they seek recovery. *See* EUC ¶ 289; RC ¶ 210. That is sufficient. *New Motor Vehicles*, 350 F. Supp. 2d at 211-12. In any event,  Plaintiffs may plead unjust enrichment in the alternative.[30] Fed. R. Civ. P. 8(d)(3); *GPUs I*, 527 F. Supp. 2d at 1029; *see also In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008).

---

[30] Defendants' reliance on *In re Aluminum Warehousing Antitrust Litigation* is misplaced. In a later opinion that "there [wa]s no bar to pleading both [unjust enrichment and antitrust] claims simultaneously at the pleading stage." 95 F. Supp. 3d 419, 457 (S.D.N.Y. 2015).

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

**APPENDIX A**

**PLAINTIFFS' STATE-BY-STATE ANALYSIS OF REPEALER
STATE STATUS AND ANTITRUST STANDING, AND
RESPONSE TO DEFENDANTS' APPENDICES A - E**

| State | Plaintiffs' Authorities and Defendants' Authorities Distinguished |
|---|---|
| AR | **Private right to sue?** **Yes.** Plaintiffs assert claims under the Arkansas Deceptive Trade Practice Act ("ADTPA"), Ark. Code §§ 4-88-101, *et seq. See Packaged Seafood*, 242 F. Supp. 3d at 1072 (price-fixing claims constitute ADTPA violations given the Arkansas Supreme Court's liberal construction of the statute). Defendants' cited provisions (App. C-(9)) do not apply to ADTPA claims.<br><br>***AGC* applicable?** **No.** *LIB*, 2014 WL 4955377, at *4 nn.6 and 7 (listing states at issue), *11 (*AGC* not applicable under laws of 25 states, including Arkansas); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (refusing to apply *AGC* to states at issue, including Arkansas). Arkansas state courts have not addressed *AGC* applicability. ***Defendants' cited authorities are inapposite*** (App. C-(11)): The *Dairy Farmers'* decision "is driven by several key factors, including [] that this is a *mixed-market case*, where damages inflicted on the physical commodity market are not derivative of injuries in the futures market *and the price-fixed products are not components of the finished goods.*" *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *16 (N.D. Ill. June 29, 2015) (emphasis added). |
| AZ | ***AGC* applicable?** **No.** *See LIB*, 2014 WL 4955377, at *4 nn.6-7 (listing states at issue), *11 (*AGC* not applicable under laws of 25 states, including Arizona); *Flash Memory,* 643 F. Supp. 2d at 1152 (*AGC* does not apply to Arizona). Arizona's harmonization provision permits, but does not require, interpretation of Arizona antitrust law in accordance with federal precedents. *See* Ariz. Rev. Stat. Ann.§ 44-1412 ("the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"). ***Defendants' cited authorities are inapposite*** (App. C-(2)): In *Bunker's Glass*, the Arizona Supreme Court implicitly declined to apply *AGC*. 75 P.3d at 102-10. The 2-page unpublished *Luscher* decision cited by Defendants provides no analysis of *AGC*'s applicability. *See D.R. Ward*, 470 F. Supp. 2d at 497 (rejecting *Luscher* and predicting that the Arizona Supreme Court would apply its liberal standing approach to indirect-purchaser claims, rather than an *AGC* analysis). In addition, the one-page *Visa* decision dismissed the claims because the alleged injury "is not that of an indirect purchaser of the services sold by Defendants." *Consiglio-Tseffos v. Visa U.S.A., Inc.*, No. CV 2003-020170, 2004 WL 3030043, at *1 (Ariz. Super. Ct. Dec. 8, 2004). ***Defendants miscite cases*** (App. B): *See CRT*, 2013 WL 4505701, at *8-9 (reversing R&R cited by Defendants and holding that *AGC* did not apply under Arizona law); *GPUs II*, 540 F. Supp. 2d at 1097 (declining to address *AGC*'s applicability to Arizona). |
| CA | ***AGC* applicable?** **No.** *See Capacitors*, 106 F. Supp. 3d at 1072-73 (analyzing recent California law and holding *AGC* not applicable); *Los Gatos Mercantile*, 2015 WL 4755335, at *19 (same); *LIB*, 2014 WL 4955377, at *10-11 (same); *Broiler Chicken*, 290 F. Supp. 3d at 816 n.15 (same); *see also Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013) ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century"); *In re Cipro Cases I & II*, 61 Cal. 4th 116, 160 (2015) ("The Cartwright Act is broader in range and deeper in reach than the Sherman Act."). ***Defendants' cited authorities are inapposite*** (App. C-(2)): *Clayworth* "did not involve a question of standing under the California antitrust laws, and the court's reference to *AGC* was at most a passing one made in discussing an intermediate appellate court's opinion." *Capacitors*, 106 F. Supp. 3d at 1072. *Vinci*, cited by Defendants, involved an attempt to transform a time-barred wrongful termination claim into an antitrust claim. *Vinci* reasoned that plaintiff was neither a consumer nor a competitor in the market in which the trade was retrained, and that plaintiff's job loss "was not the type of loss the antitrust statute was intended to forestall." *Vinci* |

*v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 339-40 (Cal. Ct. App. 1995).

**IPP standing under UCL? Yes.** Courts in this district have allowed indirect-purchaser UCL claims predicated on price-fixing products that are components of finished goods. *See* fn. 8, *supra*. **Defendants' cited authorities are inapposite** (App. C-(11)): *Dairy Farmers* is inapposite for the reasons stated above. *See* Arizona, *supra*. *Troyk* did not decide what standard of causation applies in determining whether a plaintiff has standing to prosecute a UCL claim. The footnote Defendants cite only speaks to "negligence actions." 171 Cal. App. 4th 1305, 1349 and n.33 (2009); *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 n.12 (1999) ("This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are limited to that context. Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law . . .").

| CO | **Private right to sue? Yes.** *See, e.g., Generics*, 368 F. Supp. 3d at 846; *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 221 (S.D.N.Y. 2012) (permitting indirect claims under CCPA). **Defendants' cited authorities are inapposite** (App. C-(11)): The indirect purchaser failed to show that a deceptive trade practice caused injury in *New Motor Vehicles*. In contrast here, Plaintiffs allege Defendants' deceptive and concealed price-fixing conspiracy caused them to pay overcharges. |
| --- | --- |
| CT | *AGC* **applicable? No. Defendants' authorities are inapposite** (App. C-(2)): None of the CT high court cases cited by Defendants expressly adopt the *AGC* five-factor analysis, and none involve indirect purchasers of a price-fixed component or product. *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 288 (Conn. 2019) (CUTPA action arising out of gun violence, neither cites nor applies *AGC*); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 121 (Conn. 2001) (CUTPA action arising out of gun violence, references *AGC* but does not apply *AGC* factors); *Westport Taxi Serv., Inc. v. Westport Transit Dist.*, 664 A.2d 719, 728 (Conn. 1995) (predatory pricing action, does not apply *AGC*). |
| DC | *AGC* **applicable? No.** *See Holder v. Archer Daniels Midland Co.*, No. 96-2975, 1998 WL 1469620, at *2, *5 (D.C. Super. Nov. 4, 1998) (noting that "core of the standing issue" is controlled by intent behind state law and that "a broad application of the District of Columbia's antitrust statute seems particularly important to effectuate the purpose of the statute"); *id.* at *3 n.4 ("[s]ince the D.C. [Antitrust] Act was passed to distinguish D.C. antitrust law from federal law with respect to standing for indirect purchasers, there is no 'comparable' federal antitrust statute in this respect"); *see also Los Gatos Mercantile*, 2015 WL 4755335, at *19 (*AGC* does not apply to D.C.); *LIB*, 2014 WL 4955377, at *4 nn.6-7, *11 (same); *Flash Memory*, 643 F. Supp. 2d at 1152 (same). **Defendants' cited authorities are inapposite** (App. C-(4)): The cited *Visa* case did not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. Absent a pronouncement from the D.C. high court, there is no apparent reason to consider *Peterson* as more authoritative than *Holder*. **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (declining to address *AGC*'s applicability to D.C.); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to any repealer states). |
| DE | **Repealer state? Yes.** *See Generics*, 368 F. Supp. 3d at 840-41, 849–50 (permitting Delaware state law claims to proceed in the absence of an antitrust repealer statute). **Defendants' cited authorities are inapposite** (App. C-(8)): *Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 WL 1868946, at *1 (Mo. Cir. Jan. 24, 2001), is an unpublished case addressing the applicability of *Illinois Brick* to Missouri state laws. |
| | **IPP standing under DDTPA? Yes.** Standing is not based on whether the purchaser is an individual or business so long as it has a business or trade interest at stake. *See Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993) (holding that "[a] litigant has standing under the [D]DTPA only when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another"). Defendants admit in App. A that *AGC* has never been applied in Delaware. Defendants cite *Knapp v. McCleary*, C. A. No. 83C-JN-87, 1987 WL 14864, at *3 (Del. July 9, 1987) for the holding that consumers lack |

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

| | | |
|---|---|---|
| | | standing to sue, but Reseller Plaintiffs are not consumers. |
| | **FL** | **_AGC applicable?_ No.** *LIB*, 2014 WL 4955377, at \*4 nn.6-7 (listing states at issue), \*11 (*AGC* not applicable under laws of 25 states, including Florida); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including Florida). Florida state courts have not addressed *AGC* applicability. |
| | | **_IPP standing under FDUTPA?_ Yes.** *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 110 (Fla. 1st Dist. Ct. App. 1996) (confirming that FDUTPA permits indirect purchasers to sue for damages for price-fixing as an unfair method of competition and the FDUTPA claim "is not adverse to the purposes of the Antitrust Act"). **_Defendants' cited authorities are inapposite_** (App. C-(11)): *Dairy Farmers* is inapposite for the reasons stated above. *See* AZ section, *supra*. |
| | **HI** | **_AGC applicable?_ No.** Hawaii's "harmonization statute" expressly carves-out indirect purchaser actions. Haw. Rev. Stat. § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, *except that lawsuits by indirect purchasers may be brought as provided in this chapter.*") (emphasis added); *see also Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including Hawaii). **_Defendants' cited authorities are inapposite_** (App. C-(2)): Defendants' cited cases counsel against applying *AGC* and/or are irrelevant. *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 326 n.33 (Haw. 2010) (declining to consider *AGC*'s applicability); *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 114 (2006) (allegation of "commercial or competitive injury" unnecessary; alleged injury to "personal property through a payment of money wrongfully induced" suffices); *Cieri v. Leticia Query Realty*, 80 Haw. 54, 66 (1995) (suit concerned whether real estate purchasers had standing to sue as "consumers" under HRS chapter 480). |
| | **IA** | **_AGC applicable?_ No.** *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including Iowa). **_Defendants' cited authorities are inapposite_** (App. C-(1)): *Southard* only cited *AGC* in determining whether "persons who were *not* indirect purchasers and who suffered injuries *even more remote than those sustained by indirect purchasers* had standing" under Iowa antitrust law due to Iowa's "common-law remoteness doctrine." *Southard*, 734 N.W.2d at 196-99 (emphasis added). **_Defendants miscite cases_** (App. B): *See Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to any repealer states). |
| | **KS** | **_AGC applicable?_ No.** *See Los Gatos Mercantile*, 2015 WL 4755335, at \*19 (*AGC* not applicable to Kansas); *LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (same); *Flash Memory*, 643 F. Supp. 2d at 1152 (same). Kansas Supreme Court has made clear that its state courts are not bound by federal decisions interpreting federal antitrust law. *Bergstrom v. Noah*, 974 P.2d 520, 531 (1999) ("such authority is not binding upon any court in Kansas interpreting Kansas antitrust laws"); *see also Four B Corp. v. Daicel Chem. Indus., Ltd.*, 253 F. Supp. 2d 1147, 1150-53 (D. Kan. 2003) (finding standing for indirect purchasers of price-fixed products). **_Defendants' cited authorities are inapposite_** (App. C-(4)): Neither case provides a sufficient basis upon which to conclude that Kansas courts would apply the *AGC* factors. *See Wrobel v. Avery Dennison Corp.*, No. 05CV1296, 2006 WL 7130617, at \*3-4 (Kan. Dist. Ct. Feb. 1, 2006) (unpublished trial court opinion finding that an indirect purchaser had alleged antitrust standing, and that if applied, the court would modify *AGC* factors to ensure indirect purchasers' claims); *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (summary judgment decision reasoning only that it found "no Kansas cases to the contrary" and that federal precedent was "sufficiently persuasive to guide its decision with regard to standing under Kansas law"). **_Defendants miscite cases_** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (refusing to apply *AGC* to Kansas). |
| | **MD** | **_Private right to sue?_ Yes.** *See* Md. Code Com. Law § 11-209(b)(2)(i) (permitting "an action for damages . . . regardless of whether the person maintaining the action dealt directly or indirectly with the person who has committed the violation"). The statutes cited by Defendants (App. C-(9)) are irrelevant. |
| | | **_AGC applicable?_ No.** Maryland state courts have not addressed *AGC* applicability. Given repealer state status, court should not, "*ipse dixit* style" bypass the state legislature and revise state antitrust laws. *GPUs I*, 527 F. Supp. 2d at 1026; *see also Broiler Chicken*, 290 F. Supp. 3d |

| | |
|---|---|
| | at 815-16 (*AGC* should not apply to any repealer states). |
| **ME** | **_AGC_ applicable? No.** *See LIB*, 2014 WL 4955377, at \*4 nn.6-7 (listing states at issue), \*11 (*AGC* not applicable to Maine); *Flash Memory*, 643 F. Supp. 2d at 1152-53 (same); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (same). **Defendants' cited authorities are inapposite** (App. C-(4)): In *Knowles v. Visa, U.S.A.*, the trial court noted that Maine's highest court would *not* apply *AGC* factors where "those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer." No. Civ.A. CV-03-707, 2004 WL 2475284, at \*5 (Me. Super. Oct. 20, 2004). **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (declining to address *AGC*'s applicability to Maine). |
| **MI** | **_AGC_ applicable? No.** *See Los Gatos Mercantile*, 2015 WL 4755335, at \*19 (*AGC* does not apply to Michigan); *LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (same); *Flash Memory,* 643 F. Supp. 2d at 1152 (same); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (same). **Defendants' cited authorities are inapposite** (App. C-(4)): In *McNulty v. Reddy Ice Holding, Inc.*, the court did not analyze whether Michigan state law requires application of the *AGC* factors; instead, the court summarily dismissed plaintiff's state law antitrust claim based on its standing analysis of plaintiff's Sherman Act claim. No. 08-CV-13178, 2009 WL 1508381, at \*21 (E.D. Mich. May 29, 2009). In *Little Caesar Enters. v. Smith*, the court did not even address *AGC* in its summary judgment decision. 895 F. Supp. 884, 898 (E.D. Mich. 1995). **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (declining to address *AGC*'s applicability to Michigan). |
| **MN** | **_AGC_ applicable? No.** *Lorix,* 736 N.W.2d at 632 (Minnesota Supreme Court expressly rejecting *AGC*). |
| **MO** | **Repealer state? Yes.** *See Packaged Seafood,* 242 F. Supp. 3d at 1079 (providing detailed analysis of the Missouri Merchandising Practices Act ("MMPA") and joining the majority of courts in concluding that "*Illinois Brick* does not bar indirect-purchaser [price-fixing] claims under the MMPA."); *LIB*, 2014 WL 4955377, at \*19 (same). **Defendants' authorities inapposite** (App. C-(8)): *Sickles* is a New Jersey superior court decision and does not address Missouri law.

**_AGC_ applicable? No.** *LIB*, 2014 WL 4955377 at \*4 nn.6 and 7, \*11 (*AGC* not applicable under laws of 25 states, including Missouri); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including Missouri). Missouri state courts have not addressed *AGC* applicability. |
| **MS** | **_AGC_ applicable? No.** *See Los Gatos Mercantile*, 2015 WL 4755335, at \*19 (*AGC* does not apply to Mississippi); *LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (same); *Flash Memory,* 643 F. Supp. 2d at 1152-53 (same). Mississippi state courts have not addressed *AGC* applicability. **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (refusing to apply *AGC* to Mississippi).

**Intrastate limitation applicable? No.** *See California v. Infineon Technologies AG,* 531 F. Supp. 2d 1124, 1158-59 (N.D. Cal. 2007) (rejecting the argument that the Mississippi Antitrust Act is limited to intrastate conspiracies; *Hood ex rel. State v. BASF Corp.,* No. 56863, 2006 WL 308378, at \*5 (Miss. Ch. Ct. Jan. 17, 2006) (explaining that Mississippi Antitrust Act reaches "all monopolies that exist in both interstate and intrastate commerce."). Moreover, Plaintiffs allege in-state purchases of products containing the price-fixed component in Mississippi and that Defendants' illegal conduct substantially affected Mississippi commerce. EC ¶ 241(b)-(c); RC ¶ 176(a)-(b). Defendants' price-fixed products—as part of the HDD products—were transported to their final destination and purchased by Plaintiffs and class members; they entered the state's commerce and caused injury. **Defendants' cited authorities are inapposite** (App. C-10)): *See GPUs II*, 540 F. Supp. 2d at 1099 (rejecting construction of Mississippi Antitrust Act in *In re Microsoft*, No. MDL 1332, 2003 WL 22070561, at \*2 (D. Md. Aug. 22, 2003)). |
| **NC** | **_AGC_ applicable? No.** *See Teague v. Bayer AG,* 671 S.E.2d 550, 555-58 (N.C. Ct. App. 2009) (holding that *AGC* factors do not apply in determining indirect-purchaser standing in a component case); *see also Los Gatos Mercantile*, 2015 WL 4755335, at \*19 (*AGC* does not apply to North Carolina); *LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (same); *Flash Memory,* 643 F. |

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

Supp. 2d at 1152-53 (same); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (same). ***Defendants' cited authorities are inapposite*** (App. C-(4)): In *Crouch v. Crompton Corp.*, the North Carolina trial court provided an example of a case in which antitrust injury would exist: "Where a component, *such as a computer chip*, is price fixed, and its costs passed through directly to purchasers of the product in which it is incorporated." 2004 WL 2414027, at \*23 (N.C. Super Ct., Oct. 28, 2004) (emphasis added). ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (North Carolina not discussed).

**Intrastate limitation applicable?** **No.** (App. C-10)): Defendants' cited cases merely establish that the touchstone of the North Carolina Unfair Trade Practices Act is the protection of in-state businesses and consumers. *See ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("[I]njuries sustained by ITCO, a North Carolina corporation with its principal place of business in North Carolina, were sustained in the state of North Carolina."); *Merck & Co., Inc. v. Lyon,* 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing claim where *foreign plaintiffs* failed to allege in-state injury); *The 'In' Porters, S.A. v. Hanes Printables, Inc.,* 663 F. Supp. 494, 501 (M.D.N.C. 1987) (same). Here, in-state Plaintiffs allege that they purchased products containing price-fixed component in North Carolina. *See EUC ¶ 247(b)-(c); RC ¶ 24, 206(c)-(d).*

**IPP standing under NCUDTPA?** **Yes.** *See Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165 (4th Cir. 1985) (stating that the NCUDPTA "grew out of antitrust laws in an effort to protect the consuming public from anticompetitive business practices"). ***Defendants' cited authorities are inapposite*** (App. C-11): *Dairy Farmers* is inapposite. *See* Arizona section, *supra.*

| ND | ***AGC applicable?*** **No.** *See LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (*AGC* not applicable under laws of 25 states, including North Dakota); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including North Dakota); *see also Howe v. Microsoft Corp.,* 656 N.W.2d 285 (N.D. 2003) (upholding certification of indirect-purchaser class of computer purchasers in a Microsoft case). ***Defendants' cited authorities are inapposite*** (App. C-(4)): The court in *Beckler v. Visa U.S.A., Inc.* cited *AGC*, but did not discuss any of its factors, and like other *Visa* cases, distinguished between indirect purchasers and the *Visa* plaintiffs, who "are not indirect purchasers" within the scope of North Dakota Antitrust Act. No. 09-04-C-00030, 2004 WL 2115144, at \*3 (N.D. Dist. Ct. Aug. 23, 2004). ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (North Dakota not discussed). |
|---|---|
| NE | ***AGC applicable?*** **No.** *See Arthur v. Microsoft Corp.,* 676 N.W.2d 29, 38 (Neb. 2004) ("[t]o deny the indirect purchaser, who in this case is the ultimate purchaser, the right to seek relief from unlawful conduct would essentially remove the word 'consumer' from the Consumer Protection Act"); *see also Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to repealer states at issue, including Nebraska); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (refusing to apply *AGC* to states at issue, including Nebraska). ***Defendants' cited authorities are inapposite*** (App. C-(1) and C-(11)): The cited *Visa* case is inapposite for the same reasons stated above. *See* Arizona, D.C., Iowa sections, *supra*. *DRAM II* was decided after the parties received full benefit of discovery and a majority of courts have declined to follow *DRAM II*'s wholesale application of *AGC* to state law. *See LIB*, 2014 WL 4955377, at \*13. |
| NJ | **Claims permitted under consumer protection statute?** **Yes.** *See Generics*, 368 F. Supp. 3d at 840-41, 849–50 (permitting NJ unjust enrichment and consumer protection claims to proceed in the absence of an antitrust repealer statute). ***Defendants' authority is inapposite*** (App. C-(8)): In *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019), the court denied an unjust enrichment, not a consumer claim, under New Jersey law stating "that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer protection statutes." *Id.* But indirect purchaser claims *have* been permitted under New Jersey's consumer protection statute. *See supra.* |
| NM | ***AGC applicable?*** **No.** *Flash Memory*, 643 F. Supp. 2d at 1152-53 (*AGC* not applicable under New Mexico law); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (same). ***Defendants' cited authorities are inapposite*** (App. C-(3)): The cited *Visa* case is inapposite for the same reason stated above. *See* Arizona, D.C., Iowa sections, *supra*. ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 ("declin[ing] to hold that *AGC* is the law of [New |

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

| | |
|---|---|
| | Mexico]"); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to any repealer states). |
| **NV** | **<u>*AGC* applicable?</u> No.** *See Flash Memory*, 643 F. Supp. 2d at 1152-53 (*AGC* not applicable under Nevada law); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same); *see also Pooler v. R.J. Reynolds Tobacco Co*., No. CV00-02674, 2001 WL 403167, at *1 (Nev. Dist. Ct. Apr. 4, 2001) (holding that the state's repealer statute was enacted to reverse a decision that relied on Nevada's harmonization provision to deny standing to indirect purchasers under *Illinois Brick*). **Defendants' cited authorities are inapposite** (App. C-(1)): *Nev. Recycling and Salvage, Ltd. v. Reno Disposal Co.*, 423 P.3d 605, 607 (Nev. 2018), is a summary judgment decision which does not involve indirect purchasers of price-fixed component products. **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (Nevada not discussed). |
| **NY** | **<u>*AGC* applicable?</u> No.** *See LIB*, 2014 WL 4955377, at *4 nn.6-7, *11 (*AGC* not applicable under laws of 25 states, including New York); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to repealer states at issue, including New York); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same); *see also Cox v. Microsoft Corp.*, No. 105193/2000, 2005 WL 3288130, at *5 (N.Y. Sup. Ct. July 29, 2005) (holding that computer purchaser plaintiffs had adequately alleged injury because Microsoft's "inflated [software] prices [were] passed [on] to consumers."). **Defendants' cited authorities are inapposite** (App. C-(3), C-(11)): The cited *Visa* case is inapposite for the same reason stated above. *See* Arizona, D.C., Iowa sections, *supra*. The *Ho* court did not engage in a thorough analysis of whether New York law requires application of the *AGC* factors. *Ho v. Visa USA, Inc.*, 16 A.D.3d 256 (N.Y. App. Div. 2005). Defendants' other cases are likewise distinguishable because plaintiffs alleged derivative or incidental harms, none involving indirect purchases of a price-fixed component. *See Williams v. Citigroup, Inc.*, 36 Misc. 3d 1201[A], at *4-5 (N.Y. Sup. Ct. 2012) (holding that plaintiff could not rely on market-wide injury to establish standing because her alleged loss of revenue was not caused by any injury to competition in the market); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, No. 0403878/2002, 2005 WL 6056054 (N.Y. Sup. Ct. Aug. 9, 2005) (unpublished) (holding that alleged chemical preservatives price-fixing conspiracy "only had an ancillary effect" on consumers of food products); *Gatt Comms., Inc. v. PMC Assoc, L.L.C.*, 711 F.3d 68, 78-79 (2d Cir. 2013) (denying standing because the plaintiff "was only incidentally harmed by the conspiracy . . . It did not pay higher prices by virtue of the conspiracy."). *DRAM II* is inapposite for the reasons stated above. *See* Nebraska section, *supra*. **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (New York not discussed). |
| **OR** | **<u>*AGC* applicable?</u> No.** *See Los Gatos Mercantile*, 2015 WL 4755335, at *19 (*AGC* does not apply to D.C.); *LIB*, 2014 WL 4955377, at *4 nn.6 and 7, *11 (same); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to repealer states at issue, including Oregon); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same). Moreover, Or. Rev. Stat. § 646.715 (2) is merely permissive and only looks to federal antitrust statutes for guidance. **Defendants' cited authorities are inapposite** (App. C-(5)): *Patterson Dental Co. v. McGaughey* did not analyze whether Oregon law requires application of *AGC*. Civil No. 85-469-PA, 1985 WL 25732 (D. Or. Dec. 9, 1985). |
| **RI** | **<u>Private right to sue?</u> Yes.** (App. C-(9)): R.I. GEN. LAWS § 6-36-12(g) (2020) expressly permits private suits by indirect purchasers: "No provision of this chapter shall be construed to limit the standing of any person or public body, whether the person or public body is a direct or indirect purchaser, from bringing suit on his or her own behalf." *See also id.* § 6-36-11(a).<br><br>**<u>*AGC* applicable?</u> No.** *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (refusing to apply *AGC* to states at issue, including Rhode Island); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* should not apply to any repealer states). Rhode Island courts have not addressed AGC applicability. **Defendants miscite cases** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (Rhode Island not discussed). |
| **SD** | **<u>*AGC* applicable?</u> No.** *Flash Memory*, 643 F. Supp. 2d at 1152 (*AGC* not applicable to South Dakota); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same); *see also In re South Dakota Microsoft Antitrust Litig.*, 657 N.W.2d 668 (S.D. 2003) (upholding certification of indirect- |

| | |
|---|---|
| | purchaser class of computer purchasers in a Microsoft case). ***Defendants' authorities inapposite*** (App. C-(4)): The cited *Visa* case is inapposite for the same reason stated above. *See* Arizona, D.C., Iowa sections, *supra*. ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (declining to address *AGC*'s applicability to South Dakota). |
| **TN** | ***AGC* applicable?** No. *See D.R. Ward,* 470 F. Supp. 2d at 499 (recognizing that indirect purchasers are "real victims" of antitrust conduct, the court "predicts that the Supreme Court of Tennessee . . . would apply traditional standing requirements rather than the *AGC* analysis to determine whether the injuries suffered by an indirect purchaser are too remote to confer standing under the TTPA)"; *Los Gatos Mercantile*, 2015 WL 4755335, at *19 (*AGC* does not apply to Tennessee); *LIB*, 2014 WL 4955377, at *4 nn.6-7, *11 (same). ***Defendants' cited authorities are inapposite*** (App. C-(7)): Neither case cited by Defendants addresses indirect-purchaser standing. *Steamfitters* involved derivative cost-recovery claims against tobacco company for medical expenses that Union health and welfare funds paid for members who had smoking-related diseases. *See Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, No. W1999-01061-COA-R9-CV, 2000 WL 1390171, at *3 (Tenn. Ct. App. Sept. 26, 2000). *State ex rel. Leech v. Levi Strauss & Co.* is not a standing decision. No. 79-722-III, 1980 WL 4696, at *5 (Tenn. Ch. Ct. Sept. 25, 1980) (dismissing the state's *parens partriae* damages claim for lack of authorization from the state's Legislature). ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (refusing to apply *AGC* to Tennessee).

**Intrastate limitation applicable?** No. App. C-10: In *Freeman Indus. LLC v. Eastman Chem. Co.*, the court concluded that the *effect* of anticompetitive conduct on Tennessee commerce, not the anticompetitive conduct itself, is determinative. 172 S.W.3d 512, 524 (Tenn. 2005). The allegation that one defendant took certain actions in Tennessee was not sufficient to show substantial effects on Tennessee commerce. *Id.* This is not the case here, where Plaintiffs allege purchases of products containing a price-fixed component in Tennessee. *See* EUC ¶ 252(b)-(c); RC ¶ 187(a)-(b). |
| **UT** | ***AGC* applicable?** No. *LIB*, 2014 WL 4955377, at *4 nn.6-7 (listing states at issue), *11 (*AGC* not applicable under laws of 25 states, including Utah); *Broiler Chicken*, 290 F. Supp. 3d at 815-16 (*AGC* does not apply to repealer states at issue, including Utah); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same). ***Defendants' cited authorities are inapposite*** (App. C-(5)): In *Lantec, Inc. v. Novell, Inc.* (a FRCP 50(a) motion), the court cited *AGC* only in its discussion of plaintiffs' antitrust standing under the Sherman Act and did not consider whether *AGC* would apply to state-law antitrust claim. 146 F. Supp. 2d 1140, 1152-54 (D. Utah 2001). ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (*AGC*'s application to Utah not discussed). |
| **VA** | **Repealer state?** Yes. *See Packaged Seafood,* 242 F. Supp. 3d at 1118 (denying defendants' motion to dismiss indirect purchasers' price-fixing claim under Virginia's consumer protection law).

***AGC* applicable?** No. Virginia courts have not addressed *AGC* applicability. |
| **VT** | ***AGC* applicable?** No. *LIB*, 2014 WL 4955377, at *4 nn.6-7, *11 (*AGC* not applicable under laws of 25 states, including Vermont); *Liquid Aluminum*, 2017 WL 3131977, at *9, *19-20 (same); *see also D.R. Ward,* 470 F. Supp. 2d 485 at 501 (casting doubt that the Vermont Supreme Court would adopt *AGC* factors to determine standing under the VCPA); *Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002) (rejecting the argument "that the definition of who may sue under the [VCPA] must be consistent with the definition of who may sue under federal antitrust law"). ***Defendants' cited authorities are inapposite*** (App. C-(4) and C-(11)): The cited *Visa* case is inapposite for the same reason stated above. *See* Arizona, D.C., Iowa sections, *supra*.. |
| **WI** | ***AGC* applicable?** No. *See Los Gatos Mercantile*, 2015 WL 4755335, at *19 (*AGC* does not apply to Wisconsin); *LIB*, 2014 WL 4955377, at *4 nn.6-7, *11 (same); *Flash Memory*, 643 F. Supp. 2d at 1152-53 (same); *Szukalski v. Crompton Corp.*, 726 N.W.2d 304, 307 n.6 (Wis. Ct. App. 2006), *abrogated on other grounds, Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448 (Wis. 2007) (holding that indirect purchasers in a tire-chemical case have standing based on the |

| | |
|---|---|
| | Wisconsin legislature's direction that its antitrust statute "be interpreted in a manner which gives the most liberal construction to achieve the aim of competition," and the Wisconsin's Supreme Court's direction "not to construe the standing requirement narrowly."). ***Defendants' authorities are inapposite*** (App. C-(4)): The cited *Visa* case is inapposite for the same reason stated above. *See* Arizona, D.C., Iowa sections, *supra.* ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 (*AGC*'s application to Wisconsin not addressed). <br><br> **Intrastate limitation applicable?** No. App. C-(10): *See Olstad v. Microsoft Corp.*, 284 Wis. 2d 224 (2005) (holding that Wisconsin's antitrust act is not limited in application to intrastate commerce); *see also Szukalski*, 726 N.W.2d at 308 ("After a thorough analysis of the legislative history, . . . the court in *Olstad* expressly withdrew the language from *Conley* that read that 'the scope of [Wisconsin's antitrust statute] is limited to intrastate transactions.'"). Moreover, Plaintiffs allege purchases of products containing price-fixed component in Wisconsin and that Defendants' illegal conduct substantially affected Wisconsin commerce. *See* EC ¶ 256(b)-(c); RC ¶ 191(a)-(b). |
| **WV** | ***AGC* applicable?** **No.** *See LIB*, 2014 WL 4955377, at \*4 nn.6-7, \*11 (*AGC* not applicable under laws of 25 states, including West Virginia); *Flash Memory,* 643 F. Supp. 2d at 1152-53 (same); *Liquid Aluminum*, 2017 WL 3131977, at \*9, \*19-20 (same); *see also* W. Va. Code § 142-9.1.6 (requiring that the repealer statute "be liberally construed to effectuate the beneficial purposes of the West Virginia Antitrust Act"). ***Defendants' cited authorities are inapposite*** (App. C-(2)): *Aikens v. Debow* is not an antitrust case but involved the issue of when recovery of "purely economic loss from an interruption in commerce caused by another's negligence" is permissible. 208 W. Va. 486, 499 (2000). In *Princeton Ins. Agency v. Erie Ins. Co.,* on a post-trial motion, the circuit court cited federal precedents to emphasize that West Virginia Antitrust Act should be "liberally" construed. No. 04-C-784-F, 2008 WL 8928936 (W. Va. Cir. Ct. Jan. 09, 2008). ***Defendants miscite cases*** (App. B): *See GPUs II*, 540 F. Supp. 2d at 1097 ("declin[ing] to hold that *AGC* is the law of [West Virginia]"). |

Dated: June 1, 2020

Respectfully submitted,

/s/ Christopher T. Micheletti
Christopher T. Micheletti
Qianwei Fu
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:   (415) 693-0700
Facsimile:   (415) 693-0770
cmicheletti@zelle.com
qfu@zelle.com

James R. Martin
**ZELLE LLP**
1775 Pennsylvania Avenue, NW,
Suite 375
Washington, D.C. 20006
Telephone:  (202) 899-4100
Facsimile:   (612) 336-9100
jmartin@zelle.com

/s/ Aaron M. Sheanin
Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:   (650) 784-4040
Facsimile:   (650) 784-4041
asheanin@robinskaplan.com

Kellie Lerner
Adam C. Mendel
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone:   (212) 980-7400
Facsimile:   (212) 980-7499
klerner@robinskaplan.com
amendel@robinskaplan.com

*Interim Co-Lead Class Counsel for the*
*End-User Plaintiffs*

s/ Victoria Sims
Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:   (202) 789-1813
vicky@cuneolaw.com

/s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone:  (651) 312-6518
Facsimile:   (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the*
*Reseller Plaintiffs*

RESELLER AND END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINTS

## **ATTORNEY ATTESTATION**

I, Christopher T. Micheletti, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

_/s/ Christopher T. Micheletti_
Christopher T. Micheletti

_Interim Co-Lead Class Counsel for the End-User Plaintiffs_

# EXHIBIT 1

 

399 PARK AVENUE          212 980 7400 TEL
SUITE 3600               212 980 7499 FAX
NEW YORK NY 10022-4690   ROBINSKAPLAN.COM


ADAM C. MENDEL
212 980 2342 TEL
AMENDEL@ROBINSKAPLAN.COM

February 19, 2020

Attorney General Mark Brnovich
Office of the Attorney General
Phoenix Office
1275 West Washington Street
Phoenix, AZ 85007-2926

     Re:   Notice Pursuant to the Arizona Uniform State Antitrust Act, Ariz. Rev.
           Stat. Ann. § 44-1415


     In accordance with Arizona Uniform State Antitrust Act, Ariz. Rev. Stat.
Ann. § 44-1415, please find enclosed a copy of the following complaint, filed on
February 19, 2020 in the United States District Court for the Northern District of
California: *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, 19-md-
2918 (N.D. Cal.).


                            Sincerely,

                            Adam C. Mendel
                            Attorney

Enclosures



May 26, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 390513518245

---

**Delivery Information:**

---

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | L.FISCHER | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | PHOENIX, AZ, |
| Special Handling: | Deliver Weekday | Delivery date: | Feb 21, 2020 14:22 |

---

**Shipping Information:**

---

| | | | |
|---|---|---|---|
| Tracking number: | 390513518245 | Ship Date: | Feb 20, 2020 |
| | | Weight: | |

Recipient:                                    Shipper:

PHOENIX, AZ, US,                              MOUNTAIN VIEW, CA, US,

Reference            110533.0000/08828/Lin,Xiyue/XL

Signature image is available. In order to view image and detailed information, the shipper or payor account
number of the shipment must be provided.

Thank you for choosing FedEx



399 PARK AVENUE          212 980 7400 TEL
SUITE 3600               212 980 7499 FAX
NEW YORK NY  10022-4690  ROBINSKAPLAN.COM



ADAM C. MENDEL
212 980 2342 TEL
AMENDEL@ROBINSKAPLAN.COM

February 19, 2020

Attorney General Claire E. Connors
Department of the Attorney General
425 Queen Street
Honolulu, HI 968313

     Re:   Notice Pursuant to Hawaii Revised Statutes § 480-13.3

     In accordance with Hawaii Revised Statutes § 480-13.3, please find enclosed a copy of the following complaint, filed on February 19, 2020 in the United States District Court for the Northern District of California: *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, 19-md-2918 (N.D. Cal.).

     Sincerely,

Adam C. Mendel
Attorney

Enclosures



Dear Customer,

The following is the proof-of-delivery for tracking number: 390513640890

---

**Delivery Information:**

---

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | M.SEWELL | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | HONOLULU, HI, |
| Special Handling: | Deliver Weekday | Delivery date: | Feb 21, 2020 11:56 |

---

**Shipping Information:**

---

| | | | |
|---|---|---|---|
| Tracking number: | 390513640890 | Ship Date: | Feb 20, 2020 |
| | | Weight: | |

**Recipient:**                                                     **Shipper:**

HONOLULU, HI, US,                                    MOUNTAIN VIEW, CA, US,

**Reference**                    110533.0000/08828/Lin,Xiyue/XL

Signature image is available. In order to view image and detailed information, the shipper or payor account
number of the shipment must be provided.

Thank you for choosing FedEx



399 PARK AVENUE          212 980 7400 TEL
SUITE 3600              212 980 7499 FAX
NEW YORK NY  10022-4690  ROBINSKAPLAN.COM



ADAM C. MENDEL
212 980 2342 TEL
AMENDEL@ROBINSKAPLAN.COM

February 19, 2020

Attorney General Aaron Ford
Nevada Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717

     Re:   Notice Pursuant to the Nevada Unfair Trade Practice Act, Nev. Rev.
            Stat. Ann. § 598A.210

     In accordance with the Nevada Unfair Trade Practice Act, Nev. Rev. Stat.
Ann. § 598A.210, please find enclosed a copy of the following complaint, filed on
February 19, 2020 in the United States District Court for the Northern District of
California: *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, 19-md-
2918 (N.D. Cal.).

                           Sincerely,

                           Adam C. Mendel
                           Attorney

Enclosures



Dear Customer,

The following is the proof-of-delivery for tracking number: 390513238098

---

**Delivery Information:**

---

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | B.SALYERS | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | CARSON CITY, NV, |
| Special Handling: | Deliver Weekday | Delivery date: | Feb 21, 2020 09:35 |

---

**Shipping Information:**

---

| | | | |
|---|---|---|---|
| Tracking number: | 390513238098 | Ship Date: | Feb 20, 2020 |
| | | Weight: | |

| **Recipient:** | **Shipper:** |
|---|---|
| CARSON CITY, NV, US, | MOUNTAIN VIEW, CA, US, |

Reference                     110533.0000/08828/Lin,Xiyue/XL

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

Thank you for choosing FedEx



4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
Fax: (202) 789-1813
contact@cuneolaw.com
www.cuneolaw.com

Victoria Sims, Esquire
Telephone: (202) 449-3958
vicky@cuneolaw.com
Admitted to Practice in Maryland
and the District of Columbia

**SENT VIA U.S. MAIL**
Attorney General Mark Brnovich
Office of the Attorney General
2005 N Central Ave
Phoenix, AZ 85004-2926

April 17, 2020

Re:    *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*


Dear General Brnovich,

Per Arizona Revised Statutes, §§ 44-1401, *et seq.*, enclosed please find the Reseller Plaintiffs' Complaint, filed in the above-captioned litigation.

Please do not hesitate to contact me with any questions.



Sincerely,

*/s/ Victoria Sims*
Victoria Sims

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attorney General Mark Brnovich
Office of the Attorney General
2005 N Central Ave
Phoenix, AZ 85004

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 5585 9274 2052 57

2. Article Number (Transfer from service label)

7018 0360 0001 6938 7990

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X RECEIVED

☐ Agent
☐ Addressee

B. Received by (Printed Name)

APR 2 0 2020

C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

AZ ATTORNEY GENERAL
PHOENIX MAIL ROOM
PALM BUILDING

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                     Domestic Return Receipt



4725 WISCONSIN AVE, NW, SUITE 200
WASHINGTON, DC 20016
TEL: (202) 789-3960
FAX: (202) 789-1813
contact@cuneolaw.com
www.cuneolaw.com


Victoria Sims, Esquire
Telephone: (202) 449-3958
vicky@cuneolaw.com
Admitted to Practice in Maryland
and the District of Columbia

**SENT VIA U.S. MAIL**
Attorney General Aaron Ford
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701

April 17, 2020

Re:     *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*


Dear General Ford,

Per Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*, enclosed please find the Reseller Plaintiffs' Complaint, filed in the above-captioned litigation.

Please do not hesitate to contact me with any questions.



Sincerely,

*/s/ Victoria Sims*
Victoria Sims

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attorney General Aaron Ford
Office of the Attorney General
100 North Carson St
Carson City, NV 89701

9590 9402 4628 8323 3106 28

2. Article Number *(Transfer from service label)*

7018 0360 0001 0278 3003

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

CARSON CITY, NEVADA

APR 2 0 2020

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**DAVID Y. IGE**
GOVERNOR



**CLARE E. CONNORS**
ATTORNEY GENERAL

**DANA O. VIOLA**
FIRST DEPUTY ATTORNEY GENERAL

**STATE OF HAWAII**
**DEPARTMENT OF THE ATTORNEY GENERAL**
COMMERCE AND ECONOMIC DEVELOPMENT DIVISION
425 QUEEN STREET
HONOLULU, HAWAII 96813
(808) 586-1180

May 15, 2020

The Honorable Beth Labson Freeman
United States District Judge
Robert F. Peckman Federal Building
Courtroom 3 – 5th Floor
280 South Street 1st Street
San Jose, California 95113

Dear Judge Freeman:

    Re: Now Micro, Inc. et al. v. Hutchinson Technology Inc. et al.
       Civil Case No. 3:20-cv-02796 *SEALED*

    On April 28, 2020, a copy of the Complaint filed under seal in the above-referenced matter was served on the Attorney General of Hawai'i by mail pursuant to Haw. Rev. Stat. section 480-13.3.

    The Attorney General has determined that she will not prosecute the action nor file her own action involving the same or similar claim or claims asserted in the Complaint at this time and will so inform Plaintiff's Counsel.

    Accordingly, the Complaint may be unsealed and Plaintiffs may proceed with appropriate action.

Very truly yours,

Rodney I. Kimura
Deputy Attorney General

cc: John C Kakinuki, Esq.