MORGAN, LEWIS & BOCKIUS LLP
J. Clayton Everett, Jr. (pro hac vice)
clay.everett@morganlewis.com
Scott A. Stempel (pro hac vice)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

HUNTON ANDREWS KURTH LLP
Craig Y. Lee (pro hac vice)
craiglee@huntonak.com
Carter C. Simpson (pro hac vice)
csimpson@huntonak.com
Emily K. Bolles (pro hac vice)
ebolles@huntonak.com
2200 Pennsylvania Ave., NW
Washington, DC 20037
Tel.: (202) 955-1500
Fax: (202) 778-2201

HUNTON ANDREWS KURTH LLP
Anne Marie Mortimer, SBN 169077
amortimer@huntonak.com
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Tel.: (213) 532-2103
Fax: (213) 532-2020

*Attorneys for Defendants TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.*

*Attorneys for Defendants NHK Spring Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring (Thailand) Co., Ltd., NHK International Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC, SEAGATE TECHNOLOGY (THAILAND) LTD., SEAGATE SINGAPORE INTERNATIONAL HEADQUARTERS PTE. LTD., and SEAGATE TECHNOLOGY INTERNATIONAL,<br><br>Plaintiffs,<br><br>v.<br><br>HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO., LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., SAE MAGNETICS (H.K.) LTD., and TDK CORPORATION,<br><br>Defendants. | Case No. 20 Civ. 1217(MMC)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SEAGATE COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    July 17, 2020<br>Time:    9:00 a.m.<br>Crtrm:   7, 19th Floor<br>Before:  The Hon. Maxine M. Chesney |

1

**<u>NOTICE OF MOTION AND MOTION</u>**

2    PLEASE TAKE NOTICE that pursuant to this Court's March 10, 2020 Order, on July 17,

3 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7, located on the

4 19th Floor of this Court, 450 Golden Gate Avenue, San Francisco, CA 94102, before the

5 Hon. Maxine M. Chesney, Defendants NHK Spring Co., Ltd., NHK International Corporation,

6 NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral

7 (H.K.) Co., Ltd. (collectively, "NHK"), TDK Corporation, Magnecomp Precision Technology

8 Public Co. Ltd., SAE Magnetics (H.K.) Ltd., and Headway Technologies, Inc. ("Headway" and,

9 collectively, "TDK"), and Hutchinson Technology Inc. ("HTI"), will and hereby do move the

10 Court to dismiss Counts IV and V of Seagate Technology, LLC, Seagate Technology (Thailand)

11 Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology

12 International's (collectively, "Seagate") Complaint, Dkt. No. 1 (the "Seagate Complaint"),

13 pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant Headway moves to dismiss all

14 claims of the Seagate Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

15    This Motion seeks dismissal of Counts IV and V as to all Defendants and dismissal of all

16 claims against Headway.

17    This Motion is supported by the accompanying Memorandum of Points and Authorities

18 and [Proposed] Order filed herewith, the pleadings and papers on file herein, and such other

19 matters that may be presented to the Court at the hearing.

20

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

21  1.  Whether Seagate can state a claim for breach of contract without alleging the

22    essential terms of the agreements, facts showing how any Defendant breached any

23    such agreement, or that the alleged breach caused damages.

24  2.  Whether Seagate can state a claim under the Minnesota Antitrust Law of 1971

25    when Seagate alleges no presence in Minnesota or purchases of HDD Suspensions

26    from Defendants in Minnesota, and does not allege a nexus with Minnesota

27    sufficient to establish Article III standing or satisfy Due Process.

28

1     3.     Whether Seagate can state a claim against Headway without alleging that

2            Headway had any involvement in the alleged wrongdoing.

MOTION TO DISMISS THE SEAGATE COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

    I.       Seagate Fails To State a Breach of Contract Claim. .................................................. 3

           A.      Seagate Fails To Allege the Essential Terms of the Claimed Contracts. .................................................................................................. 4

           B.      Seagate Fails To Sufficiently Allege Defendants' Breach. ......................... 7

           C.      Seagate Fails To Sufficiently Allege Damages Caused by Any Breach. ....................................................................................................... 8

    II.      Seagate Fails To Allege Sufficient Facts To Support Application of the Minnesota Antitrust Law of 1971. ............................................................................ 9

    III.     Seagate Fails To Adequately Allege Headway's Involvement in the Alleged Conspiracy. ............................................................................................... 12

CONCLUSION .................................................................................................................... 13

MOTION TO DISMISS THE SEAGATE COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ...................................................................................................11

*Arata v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
35 Cal. Rptr. 703 (Cal. Ct. App. 1963) ......................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................................3

*AT&T Mobility LLC v. AU Optronics Corp.*,
707 F.3d 1106 (9th Cir. 2013)...................................................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................3

*Camper v. McDermott*,
71 Cal. Rptr. 590 (Cal. Ct. App. 1968) ......................................................................8

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) .......................................................10, 11

*City of St. Paul v. FMC Corp.*,
No. 89 Civ. 466, 1990 WL 265171 (D. Minn. Feb. 27, 1990)..............................9, 10

*Codding v. Pearson Educ., Inc.*,
No. 18 Civ. 817, 2018 WL 3609027 (N.D. Cal. July 27, 2018) .............................5, 8

*In re Glumetza Antitrust Litig.*,
No. 19 Civ. 5822, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020) ..............................11

*Gold v. Gibbons*,
3 Cal. Rptr. 117 (Cal. Ct. App. 1960) ........................................................................6

*Gomez v. Bayview Loan Servicing, LLC*,
No. 14 Civ. 4004, 2015 WL 433669 (N.D. Cal. Feb. 2, 2015)...................................8

*Jackson v. Farmers Ins. Exchange*,
No. 12 Civ. 1020, 2012 WL 5337076 (E.D. Cal. Oct. 26, 2012) ...........................4, 6

*Jajco, Inc. v. Leader Drug Stores, Inc.*,
No. 12 Civ. 5703, 2013 WL 875957 (N.D. Cal. Mar. 7, 2013) .............................. 6-7

*Key v. BMW of N. Am., LLC*,
No. 19 Civ. 3366, 2020 WL 137166 (N.D. Cal. Jan. 13, 2020) .............................2, 3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13 MD 2420, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ................................................. 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................................... 11

*May v. Semblant, Inc.*,
   No. 13 Civ. 1576, 2013 WL 5423614 (N.D. Cal. Sept. 27, 2013) ................................................ 7

*McAfee v. Francis*,
   No. 11 Civ. 821, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) ............................................... 4, 5

*McDonald v. John P. Scripps Newspaper*,
   257 Cal. Rptr. 473 (Cal. Ct. App. 1989) ..................................................................................... 4

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ..................................................................................... 4, 5

*Philips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................................................................... 12

*Raines v. Byrd*,
   521 U.S. 811 (1997) ..................................................................................................................... 10

*Sensible Foods, LLC v. World Gourmet, Inc.*,
   No. 11 Civ. 2819, 2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ................................................ 7

*Space Data Corp. v. X*,
   No. 16 Civ. 3260, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ................................................ 7

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
   124 Cal. Rptr. 2d 818 (Cal. Ct. App. 2002) ................................................................................ 8

*Sutherland v. Francis*,
   No. 12 Civ. 5110, 2013 WL 2558169 (N.D. Cal. June 10, 2013) .......................................... 4, 5

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................................................... 10

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..................................................................................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07 Civ. 1827, 2013 WL 1891367 (N.D. Cal. May 6, 2013) ............................................... 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

Cal. Civ. Code § 3300 ................................................................................................................8

Minn. Stat. § 325D.49, *et seq*. ..........................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................1, 13

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................5

1    Defendants respectfully submit this memorandum of law in support of their joint motion

2    under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim Counts IV

3    and V of Seagate's Complaint as to all Defendants, and all claims as to Headway Technologies

4    Inc. ("Headway").

5    **PRELIMINARY STATEMENT**

6    Seagate alleges a conspiracy to fix the prices of, and allocate markets for, Hard Disk Drive

7    Suspensions ("HDD Suspensions"), a component used in hard disk drives.  Seagate asserts claims

8    under the Sherman Act, California's Cartwright Act, California's Unfair Competition Law, the

9    Minnesota Antitrust Law of 1971, and for breach of contract.  Seagate's complaint fails to offer

10   sufficient allegations to support its claims for breach of contract or for violation of Minnesota

11   state antitrust law against any of the defendants.  Thus, both claims should be dismissed.

12   Similarly, Seagate offers no factual allegations to show Headway's involvement in the alleged

13   conspiracy and, for that reason, all claims against Headway should be dismissed.

14   *First*, Seagate's breach of contract claim is not properly pleaded.  The Seagate Complaint

15   does not plead (i) the essential terms of the agreement or agreements they claim were breached,

16   including the specific provisions that Seagate claims restrict the use of information and the

17   specific information subject to any such provisions, (ii) how any such provision was breached, or

18   (iii) that it suffered any harm directly as a result of any alleged breach.

19   *Second*, Seagate's claim under Minnesota state antitrust law fails because it does not

20   allege a sufficient nexus to Minnesota.  Without alleging any conspiratorial conduct in Minnesota,

21   that Seagate made any purchases from Defendants in Minnesota, that any negotiations with

22   Defendants took place in Minnesota, or that Defendants shipped any HDD Suspensions to

23   Seagate in Minnesota, there is an insufficient basis to invoke Minnesota's antitrust law.

24   *Third*, Seagate's claims against Headway fail because Seagate does not allege facts

25   required to show Headway's involvement in any of the conduct alleged to be anticompetitive.

26

27

28

1

## **BACKGROUND**

2

Seagate's claims are based on an alleged conspiracy to fix prices and allocate market

3

shares for HDD Suspensions.[1]  (Seagate Compl. ¶ 1.)  HDD Suspensions are components used in

4

hard disk drives, which secure the read/write head in position over the disk, maintain a constant

5

height, and link the read/write head to the electronic circuitry of the hard disk drive.  (*Id.* ¶ 50.)

6

Seagate asserts claims against NHK Spring Co., Ltd., NHK International Corporation, NHK

7

Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.)

8

Co., Ltd. (collectively, "NHK"), TDK Corporation, Magnecomp Precision Technology Public Co.

9

Ltd., SAE Magnetics (H.K.) Ltd., and Headway (collectively, "TDK"), and Hutchinson

10

Technology Inc. ("HTI").  (*Id.* ¶ 59.)

11

Seagate's breach of contract claim is premised on allegations that Defendants breached

12

obligations under nondisclosure agreements by "misusing, exchanging, and/or disclosing

13

Seagate's confidential business information."  (*Id.* ¶ 177.)  Seagate does not attach any agreement

14

that is the subject of this claim to its complaint.  Nor does it allege the date of any such

15

agreement, the parties to any such agreement, or quote in full any of the substantive terms it

16

claims were breached in any such agreement.  The only named plaintiff that is alleged to be a

17

party to the alleged agreements is Seagate LLC.  (*Id.* ¶ 171.)  Seagate does not allege which of the

18

named Defendants is party to which alleged agreement.

19

Seagate also does not offer any factual allegations that any specific conduct related to the

20

sale of HDD Suspensions took place in Minnesota.  The only specific factual allegation in the

21

Seagate Complaint related to Minnesota is that HTI's principal place of business was in

22

Minnesota.  (*Id.* ¶ 44.)  Seagate does not allege any conspiratorial conduct in Minnesota or that

23

Defendants shipped any HDD Suspensions affected by the alleged conspiracy to Seagate in

24

Minnesota.  Rather, Seagate merely states that the conspiracy was intended to, and did, have

25

effects "in Minnesota *and elsewhere*."  (*Id.* ¶¶ 165, 166 (emphasis added).)

26

27

[1] For purposes of this motion, Defendants accept as true all well-pleaded allegations in the
Seagate Complaint.  *See Key v. BMW of N. Am., LLC*, No. 19 Civ. 3366, 2020 WL 137166, at *2

28

(N.D. Cal. Jan. 13, 2020).

1    Nor does Seagate offer any allegations that specifically show Headway's involvement in

2    the alleged wrongdoing.  The only allegations in the Seagate Complaint referring specifically to

3    Headway are found in paragraphs 27 and 43.  Those paragraphs allege nothing more than that

4    (a) Headway is a Delaware corporation with a principal place of business in California,

5    (b) Headway is a subsidiary of TDK Corporation, and (c) Headway or "its affiliates" sold HDD

6    Suspensions.  (*Id.* ¶¶ 27, 43.)  There are no substantive allegations specific to Headway.  The

7    substantive allegations all refer generally to "Defendants" or "TDK" – which is defined to include

8    Headway, Magnecomp Precision Technology Public Co., Ltd., SAE Magnetics (H.K.) Ltd., and

9    TDK Corporation.  (*Id.* ¶ 3(ii).)  The Seagate Complaint has no specific factual allegations that

10   anyone affiliated with Headway participated in any meetings or communications related to the

11   alleged conspiracy or that participants in the conspiracy entered into agreements on behalf of their

12   respective corporate families.

13                                          **ARGUMENT**

14   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

15   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

17   *Key*, 2020 WL 137166, at *3 (granting motion to dismiss where plaintiff "includes no facts to

18   support a finding that [defendant] played any role in the allegedly faulty work").  "Factual

19   allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

20   U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

21   allegation."  *See Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).  "[A] plaintiff's

22   obligation to provide the grounds of his entitlement to relief requires more than labels and

23   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

24   *Twombly*, 550 U.S. at 555 (internal quotation marks, citation, and alteration omitted).

25   **I.    Seagate Fails To State a Breach of Contract Claim.**

26   The claim for breach of contract fails to allege the essential terms of any agreement, how

27   any of the ten named Defendants breached any such agreement, or how such breach caused

28   damage to Seagate, and it should be dismissed.  To state a claim for breach of contract under

1   California law,[2] a plaintiff must allege (1) a contract, (2) the plaintiff's performance, (3) the

2   defendant's breach, and (4) damages to plaintiff arising from the breach.  *See, e.g.*, *McDonald v.*

3   *John P. Scripps Newspaper*, 257 Cal. Rptr. 473, 475 (Cal. Ct. App. 1989).  Seagate's breach of

4   contract claim fails because it does not adequately plead the required elements of this claim.

5            **A.      Seagate Fails To Allege the Essential Terms of the Claimed Contracts.**

6            To state a claim for breach of contract, Seagate must allege the essential terms with

7   specificity or attach the agreements to its Complaint.  *See Sutherland v. Francis*, No. 12 Civ.

8   5110, 2013 WL 2558169, at *4 (N.D. Cal. June 10, 2013) (dismissing breach of contract claim

9   where only the amounts of money paid were alleged with specificity); *Jackson v. Farmers Ins.*

10  *Exch.*, No. 12 Civ. 1020, 2012 WL 5337076, at * 4 (E.D. Cal. Oct. 26, 2012) (dismissing breach

11  of contract claim when the complaint failed to specify relevant terms, including, "the dates the

12  contracts were entered into"); *McAfee v. Francis*, No. 11 Civ. 821, 2011 WL 3293759, at *2

13  (N.D. Cal. Aug. 1, 2011) (dismissing breach of contract claim for failure to plead "the essential

14  terms of the agreement and more specific allegations as to breach").  Seagate's allegation that

15  Defendants breached "various nondisclosure agreements and Supplements to the same" (Seagate

16  Compl. ¶ 97) is far from sufficient to satisfy its pleading burden.  The Seagate Complaint fails to

17  identify (a) the specific contract terms – or even the specific contracts – that Seagate claims were

18  breached, (b) the periods in which those contract terms were in place, or (c) which Defendants, or

19  Plaintiffs, are party to the alleged agreements.  Each of these failures provides an independent

20  basis for dismissal.

21           *First*, the Seagate Complaint fails to allege the specific contract terms that it claims were

22  breached.  Failing to allege the substantive terms of a contract is grounds for dismissal.  *See, e.g.*,

23  *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (dismissing claim for

24  breach of non-disclosure agreements when the plaintiff did not plead the substantive terms of

25  those agreements).  Seagate alleges only that certain unidentified provisions in certain

26  unidentified nondisclosure agreements require that recipients use information provided by

---

[2] Seagate does not even allege what law governs its claim for breach of contract.  For purposes of this motion, Defendants assume that Seagate believes California law applies but reserve all rights to challenge the application of California law if this claim proceeds.

Seagate only for limited purposes.  (Seagate Compl. ¶¶ 102, 177.)  Those general allegations, unconnected to any particular agreement, are not sufficient to set forth the substantive terms of the contracts.  In particular, the allegations fail to plead with sufficient detail (i) the actual language of provisions of the nondisclosure agreements that restrict the use of information, (ii) the specific information protected from disclosure under those agreements, or (iii) the specific limitations in the agreements on use of such information.  Without pleading the substantive terms of the contract with specificity, Seagate's breach of contract claim should be dismissed.  *Cf. Sutherland*, 2013 WL 2558169, at *4 (dismissing breach of contract claim because "[n]o copies of the agreements are attached to the FAC, nor are the essential terms of the agreement, other than amount, pled with any particularity"); *Pellerin*, 877 F. Supp. 2d at 990 (dismissing breach of contract claim that failed to plead "whether the confidential information falls within the terms of the agreements").

*Second*, Seagate does not allege the effective dates or terms of any alleged agreements.  Dismissal is appropriate where the plaintiff has failed to allege the contract date.  *See, e.g.*, *McAfee*, 2011 WL 3293759, at *2 (dismissing breach of contract claim where complaint failed to, among other things, "identify a contract date").  Seagate's only allegation as to timing summarily states that Seagate LLC and Defendants entered into "various" NDAs "[d]uring and throughout the Conspiracy Period."  (Seagate Compl. ¶ 97.)  That allegation does not adequately allege the date of any agreements.  *Cf. Sutherland*, 2013 WL 2558169, at *4 (dismissing breach of contract claim where complaint "fails to identify a specific contract date—instead alleging only months and vague stretches of time").

*Third*, Seagate has not alleged which of the ten named Defendants are parties to which, if any, of the nondisclosure agreements.  "Courts consistently conclude that a complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)."  *Codding v. Pearson Educ., Inc.*, No. 18 Civ. 00817-LB, 2018 WL 3609027, at *8 (N.D. Cal. July 27, 2018) (internal quotation marks omitted).  In this context, lumping all Defendants together is particularly improper, as "[b]reach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume

its obligations." *Gold v. Gibbons*, 3 Cal. Rptr. 117, 118 (Cal. Ct. App. 1960); *see Jackson*, 2012 WL 5337076, at *4 (dismissing breach of contract claim in part because "[t]he court cannot even decide whether individual defendants should be named in the action because nowhere does the complaint allege who signed these contracts"). Because Seagate fails to allege with specificity which Defendant executed which, if any, agreement, it fails to adequately allege a breach of contract claim against each individual Defendant.[3]

*Fourth*, Seagate fails to plead a sufficient basis to assert this claim on behalf of all Plaintiffs. The Seagate Complaint alleges only that "Defendants executed nondisclosure agreements with *Seagate LLC*." (Seagate Compl. ¶ 171 (emphasis added)). It makes no allegations that Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd. or Singapore Technology International are parties to any alleged agreement that it claims was breached. Because none of those entities are even alleged to be parties to any agreements at issue, they cannot assert breach of contract claims.

Seagate also fails to establish that Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd. or Singapore Technology International are third-party beneficiaries of the agreements at issue who can pursue claims for breach of those agreements. Under California law, "[t]he test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Arata v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 35 Cal. Rptr. 703, 706 (Cal. Ct. App. 1963). Here, the Seagate Complaint offers only a conclusory allegation that "the parties entered into the agreements with the intent to confer a direct benefit upon Seagate LLC as well as its corporate affiliates, including Seagate Thailand." (Seagate Compl. ¶¶ 100, 174.) That conclusory recitation of the legal standard is insufficient to establish that any Seagate affiliate is an intended beneficiary of any alleged agreement. *Cf. Jajco, Inc. v. Leader Drug Stores, Inc.*, No. 12

---

[3] Seagate alleges that a Master Nondisclosure Agreement "states that its terms 'shall apply' when the signatories 'or [their] affiliates . . . disclose[] Confidential Information to the other or its affiliates . . . under this Agreement.'" (*Id.* ¶ 99 (omissions and alterations all in original).) Even if this heavily excerpted provision were sufficiently pleaded, it would still fail to establish that a breach of contract claim could be pursued against an affiliate of a party to the agreement who is not itself a party to the agreement.

Case No. 20 Civ. 1217

1   Civ. 5703, 2013 WL 875957, at *1 (N.D. Cal. Mar. 7, 2013) (dismissing breach of contract claim

2   because "[t]he operative complaint does not include allegations that [the plaintiff] is an intended

3   third party beneficiary of the [pertinent] contracts or facts supporting this theory").  Accordingly,

4   although the Seagate Complaint does not adequately plead a breach of contract claim by *any*

5   Defendant, at the very least the claim should be dismissed as to all entities other than Seagate

6   Technology LLC.

7           **B.       Seagate Fails To Sufficiently Allege Defendants' Breach.**

8           Seagate fails to plead with specificity how any of the Defendants breached a contract.

9   "To plead breach, a claimant must allege how the non-claimant breached a relevant term of the

10  alleged contract."  *May v. Semblant, Inc.*, No. 13 Civ. 1576, 2013 WL 5423614, at *6 (N.D. Cal.

11  Sept. 27, 2013).  "Simply alleging that [the defendant] did not honor or did not intend to honor

12  the terms of the agreement is not enough to state a claim for breach of contract without describing

13  which terms were not honored and in what way."  *Id.*

14          Here, Seagate fails to allege what specific information within the scope of any

15  nondisclosure agreement was disclosed in violation of that agreement.  In this context, to state a

16  claim for breach of a nondisclosure agreement, a plaintiff must allege how a defendant's use of

17  protected information violated the terms of the nondisclosure agreement and "give the Court or

18  Defendants notice of the boundaries of this case."  *See Space Data Corp. v. X*, No. 16 Civ. 3260,

19  2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017); *see also Sensible Foods, LLC v. World*

20  *Gourmet, Inc.*, No. 11 Civ. 2819, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011).  For

21  example, in *Sensible Foods*, the Court recognized that the allegation of "disclosing all or a portion

22  of Plaintiff's Confidential Information without the express or implied consent of Plaintiff" was

23  insufficient to state a breach of contract claim because the plaintiff "pleads no facts regarding . . .

24  what information was allegedly disclosed or how it was disclosed."  2011 WL 5244716, at *5.

25  Like the plaintiffs in *Sensible Foods* and *Space Data*, Seagate makes no specific allegations about

26  the actual information that was disclosed or how it was disclosed.  (*See* Seagate Compl. ¶¶ 102,

27  177.)  Without specific factual allegations about what information was disclosed and how it was

28

1   disclosed, Seagate fails to adequately allege breach and, accordingly, this claim should be

2   dismissed.

3      **C.**  <u>**Seagate Fails To Sufficiently Allege Damages Caused by Any Breach.**</u>

4      Seagate's breach of contract claim fails for the additional reason that it does not allege

5   harm resulting from breach of the alleged nondisclosure agreements.  "An essential element of a

6   claim for breach of contract are damages *resulting from the breach*."  *St. Paul Fire & Marine Ins.*

7   *Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 124 Cal. Rptr. 2d 818, 834–35 (Cal. Ct. App. 2002)

8   (emphasis in original).  California law applies a proximate cause standard.  *Id.*; *see* Cal. Civ. Code

9   § 3300; *Gomez v. Bayview Loan Servicing, LLC*, No. 14 Civ. 4004, 2015 WL 433669, at *3 (N.D.

10   Cal. Feb. 2, 2015) ("A complaint must allege actual damages that were proximately caused by the

11   defendant's breach.").  Damages that are too remote may not be recovered in a breach of contract

12   action.  *See, e.g.*, *Camper v. McDermott*, 71 Cal. Rptr. 590, 594 (Cal. Ct. App. 1968) (finding it

13   "common sense" that failure to rent all 50 units of an apartment building cannot be "attributed

14   entirely to the absence of a swimming pool" that was inadequately constructed by the breaching

15   party); *Codding*, 2018 WL 3609027, at *8 (dismissing breach of contract claim where the

16   plaintiff did not allege non-conclusory facts supporting that the defendant's breach was the

17   proximate cause of the damages alleged).

18      Here, Seagate fails to allege damages – or any injury – that resulted directly from any

19   breach of any nondisclosure agreement.  Even if Defendants exchanged information in violation

20   of a nondisclosure agreement – which Seagate has not adequately alleged for the reasons

21   explained above – there is no allegation that the exchange of information directly caused any

22   injuries to Seagate.  To the contrary, the only allegations of harm that Seagate makes are based on

23   an alleged conspiracy to fix prices and allocate markets for HDD Suspensions.  (Seagate Compl.

24   ¶ 18.)  The proximate cause of that alleged harm, if there was such harm, would be the alleged

25   antitrust conspiracy; not the breach of any non-disclosure agreement or obligation.  *Cf. Gomez*,

26   2015 WL 433669, at *2-3 (dismissing claim for breach of notice provision because the complaint

27   "lack[ed] any factual allegations that failure to receive prior notice proximately caused"

28   plaintiff's damages, including that the plaintiff did not allege "an ability to cure his default absent

the alleged missing notice").  Just like its allegations about the contract and breach, Seagate's

causation and damages allegations are mere recitations of the elements of breach of contract.

Those allegations are insufficient to state a claim and Count V should therefore be dismissed.

## II.   Seagate Fails To Allege Sufficient Facts To Support Application of the Minnesota Antitrust Law of 1971.

Seagate's complaint does not allege the requisite connection to the State of Minnesota

necessary to satisfy the requirements under Minnesota law, Article III, or the Due Process Clause.

As such, Count IV for violation of the Minnesota Antitrust Law of 1971 should be dismissed.[4]

*First*, Seagate fails to allege a sufficient connection to Minnesota to meet the requirements

under the Minnesota Antitrust Law of 1971, Minn. Stat. § 325D.49, *et seq*.  The Minnesota

Antitrust Law applies only to:

> (a) any contract, combination, or conspiracy when any part thereof was *created, formed, or entered into in this state*; and

> (b) any contract, combination, or conspiracy, wherever created, formed, or entered into; any establishment, maintenance, or use of monopoly power; and any attempt to establish, maintain, or use monopoly power; whenever any of the foregoing *affects the trade or commerce of this state*.

Minn. Stat. § 325D.54, "Scope of Act" (emphasis added).  Seagate does not claim that the

conspiracy was created, formed, or entered into in Minnesota, as required to state a claim under

subsection (a).

Nor does Seagate adequately allege that the conspiracy "affect[ed] the trade or commerce

of [Minnesota]" under subsection (b) because Seagate does not allege that it purchased HDD

Suspensions from Defendants in Minnesota.  Courts considering Minn. Stat. § 325D.54(b) have

limited its scope to purchases occurring in Minnesota.  *City of St. Paul v. FMC Corp.*, No. 89 Civ.

---

[4] Following the Court's instructions at the February 21, 2020 conference, before filing this motion Defendants explained to Seagate the arguments they intended to make, including that the complaint did not allege an adequate nexus to Minnesota.  Although Seagate suggested that it *could* make additional allegations about conduct in Minnesota, it declined Defendants' request to provide specific additional allegations in writing or amend its complaint.  Because Defendants must respond to the operative pleading – and not hypothetical allegations Seagate stated it *could* make – they are proceeding to file this motion because the Seagate Complaint does not allege a sufficient nexus to Minnesota.

466, 1990 WL 265171, at *7 (D. Minn. Feb. 27, 1990);[5] *see In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001).  Although Seagate generally alleges that the conspiracy concerned "suspension assemblies sold to purchasers in Minnesota during the Conspiracy Period" (Seagate Compl. ¶ 163), it asserts claims only on behalf of itself (*id.* ¶ 21), and fails to allege that *Seagate* purchased any allegedly affected HDD Suspensions from Defendants in Minnesota, or that Defendants sold or shipped any allegedly affected HDD Suspensions to *Seagate* in Minnesota.  Seagate's bare allegations as to the effect of the conspiracy on trade and commerce in Minnesota and that some unidentified purchasers may have purchased HDD Suspensions in Minnesota do not meet the requirements to bring a claim under the Minnesota Antitrust Law.[6]

   *Second*, Seagate fails to establish that it has Article III standing to bring claims under Minnesota state law.  Under Article III of the U.S. Constitution, a federal court may adjudicate an action only if it constitutes a justiciable "case" or "controversy" that has real consequences for the parties.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Analysis of Seagate's Article III standing to raise Minnesota state antitrust claims is distinct from whether such claims fall under the purview of Minn. Stat. § 325D.54.  *See In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) ("[W]hether or not the state statutes 'call for' an in-state injury or purchase says nothing about whether or not such an injury is required under Article III.").

   Seagate has not established Article III standing to assert a claim under the Minnesota Antitrust Law because it has not alleged an "injury in fact" – "an invasion of a legally protected

[5] In *City of St. Paul*, the plaintiff alleged a price-fixing conspiracy in violation of the Minnesota Antitrust Law and sought to represent a nationwide class of municipalities and public entities. The defendants moved for judgment on the pleadings, in part on the basis that claims arising out of purchases occurring outside of Minnesota were beyond the scope of the Minnesota Antitrust Law.  1990 WL 265171 at *3, *7.  The court concluded that, although distant purchases in a "nationwide market . . . might be seen to affect the trade or commerce in Minnesota," the assertion of a claim under the Minnesota Antitrust Law requires "a tighter nexus between the anticompetitive activity and [] Minnesota purchases."  *Id.* at *7.  The court limited the scope of Minn. Stat. § 325D.54 to purchases within the state, consistent with the Minnesota legislature's "explicit purpose of protecting the trade or commerce of Minnesota."  *Id.*

[6] Even if Seagate were to allege that it purchased HDD Suspensions affected by the alleged conspiracy from Defendants in Minnesota – a fact that is *not* in the Seagate Complaint – any claim under Minnesota law would have to be limited *only* to those units purchased in Minnesota. *See City of St. Paul*, 1990 WL 265171, at *7-8.

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" arising in Minnesota or from any violation of Minnesota law. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). It is under this requirement that there has been a "strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims." *Capacitors*, 154 F. Supp. 3d at 926 (collecting N.D. Cal. cases).[7] These courts reason that, "[a]t bottom, 'the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.'" *In re Glumetza Antitrust Litig.*, No. 19 Civ. 5822, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015)). Where "the injury alleged is the overcharge at each purchase . . . the scope of [Article III] standing is limited to the locations of the purchases." *Id*.

Here, Seagate alleges an overcharge at each purchase: "As a result of the unlawful conduct and acts undertaken in furtherance of the conspiracy by Defendants and their co-conspirators, Seagate's business and property were injured, in that Seagate paid more for HDD Suspensions than it would have paid in the absence of Defendants' unlawful conduct." (Seagate Compl. ¶ 168.) Because Seagate has not alleged that it purchased HDD Suspensions from Defendants in Minnesota, it has not established injury-in-fact and, thus, lacks Article III standing to bring a claim under the Minnesota Antitrust Law.

*Third*, Seagate's Minnesota Antitrust Law claim also should be dismissed because it does not have a nexus to Minnesota sufficient to satisfy Due Process. Under the Due Process Clause, invocation of Minnesota state law requires that Minnesota have substantial interests related to the facts underlying the state law claim. When deciding whether application of a state's laws comports with Due Process, courts examine "the contacts of the State, whose law [is to be] applied, with the parties *and* with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) (emphasis added); *see also Philips*

---

[7] In *Capacitors*, which concerned allegedly price-fixed electronic device components, the court dismissed claims under the laws of 31 states, finding that "that in-state injury in the form of an in-state purchase of a capacitor at a supra-competitive price is required here to satisfy Article III standing for each of the state law claims asserted." 154 F. Supp. 3d at 927.

MOTION TO DISMISS THE SEAGATE COMPLAINT

1  *Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (due process requires "significant contact

2  or aggregation of contacts" between the plaintiff's claims and the state at issue).  This analysis

3  must be separately performed "with respect to each defendant as to whether plaintiffs have

4  alleged sufficient conspiratorial conduct within [the state], that is not 'slight and casual,' such that

5  the application of [the state's] law to that defendant is 'neither arbitrary nor fundamentally

6  unfair.'"  *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1114 (9th Cir. 2013).  In a

7  price-fixing case such as this, the relevant "occurrence or transaction" includes the plaintiff's

8  purchase of an allegedly price-fixed good from each of the defendants and the defendants'

9  conspiratorial conduct leading up to the sale.  *Id.* at 1112.

10        Seagate's only allegations related to Minnesota are that HTI's principal place of business

11  was in Minnesota (Seagate Compl. ¶ 44);[8] the alleged conspiracy unreasonably restrained trade

12  "in Minnesota *and elsewhere*" (*id.* ¶¶ 162, 165-66); and the alleged conspiracy concerned

13  "suspension assemblies sold to purchasers in Minnesota during the Conspiracy Period" (*id.*

14  ¶ 163).  Seagate does not allege that any conspiratorial conduct took place in Minnesota, that any

15  of the relevant transactions (*i.e.*, Seagate's purchase of HDD Suspensions from each Defendant)

16  took place in Minnesota, or that it was otherwise harmed or injured in Minnesota.  As such,

17  Seagate has failed to establish that Minnesota has substantial interests in the facts underlying

18  Seagate's claim to satisfy notions of Due Process, and Count IV should be dismissed.

19  **III.**  **Seagate Fails To Adequately Allege Headway's Involvement in the Alleged**

20  **Conspiracy.**

21        To state a claim, Seagate is required "to make allegations that plausibly suggest that each

22  Defendant participated in the alleged conspiracy."  *In re TFT–LCD (Flat Panel) Antitrust Litig.*,

23  599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009).  Seagate's allegations fail to provide any basis for

24  plausibly inferring Headway's participation in the alleged conspiracy.  Aside from setting forth

---

25  [8] In light of the Ninth Circuit's "express instructions [in *AT&T Mobility*] to conduct a defendant-

26  by-defendant analysis," even if the Court were to find Due Process satisfied with respect to the claim against HTI because of its presence in Minnesota, that provides no basis for applying Minnesota law to the other Defendants.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07

27  Civ. 1827, 2013 WL 1891367, at *4 (N.D. Cal. May 6, 2013) (affirming dismissal of claims against two defendants for whom plaintiffs had not alleged sufficient in-state acts in furtherance

28  of the conspiracy).

1    where Headway is incorporated and has its principal place of business, the only other allegations

2    specific to Headway are that it is wholly-owned by TDK Corp. and the conclusory assertion that

3    Headway or "its affiliates" sold HDD Suspensions.  (Seagate Compl. ¶¶ 27, 43.)  None of those

4    allegations concerns any wrongdoing, and none is sufficient to establish a plausible basis to

5    believe that Headway participated in the conspiracy that Seagate alleges.

6         Seagate offers no other allegations to show Headway's involvement in the alleged

7    conspiracy.  The Seagate Complaint does not include any factual allegations that anyone affiliated

8    with Headway participated in any meetings or communications related to the alleged conspiracy,

9    agreed to participate in the conspiracy, or was even aware of the alleged conspiracy.[9]

10        Seagate cannot avoid dismissal through general allegations about Defendants or TDK.  In

11   *In re Lithium Ion Batteries Antitrust Litigation* the Court recognized that merely alleging the

12   relationship between multinational affiliates did "not suffice to demonstrate that the American

13   subsidiaries themselves made a conscious decision to conspire with their Korean or Japanese

14   parents."  No. 13 MD 2420, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014).  Accordingly, the

15   Court rejected "boilerplate assertions of an agency relationship with the parties whose

16   participation in the conspiracy is more directly alleged" and dismissed claims against United

17   States subsidiaries.  *Id.*  Here, too, because Seagate does not allege that Headway consciously

18   participated in the alleged conspiracy, the claims against it should be dismissed.

19                                    **CONCLUSION**

20        For the foregoing reasons, Defendants respectfully request that this Court dismiss

21   Counts IV and V of the Seagate Complaint and all claims against Headway pursuant to Federal

22   Rule of Civil Procedure 12(b)(6).

23

24

25

26

27   _____
[9] In contrast, indirect purchaser plaintiffs, who do allege specific meetings and communications in

28   connection with the conspiracy, do *not* allege that Headway participated in any conspiratorial
     conduct and do *not* name Headway as a defendant.

1   Dated:  April 17, 2020                     Respectfully submitted,

2

3                                       */s/  J. Clayton Everett, Jr.*

                                     J. Clayton Everett, Jr. (pro hac vice)

4                                     MORGAN, LEWIS & BOCKIUS LLP

                                     1111 Pennsylvania Ave., NW

5                                     Washington, DC 20004

                                     Telephone: (202) 739-5860

6                                     clay.everett@morganlewis.com

7                                     *Counsel for Defendants TDK Corporation,*
*Magnecomp Precision Technology Public Co.*

8                                    *Ltd., SAE Magnetics (H.K.) Ltd.,*
*Headway Technologies, Inc., and Hutchinson*

9                                    *Technology Inc.*

10

11                                   Craig Y. Lee (pro hac vice)

                                     HUNTON ANDREWS KURTH LLP

12                                   2200 Pennsylvania Ave., NW

                                     Washington, DC 20037

13                                   Telephone: (202) 419-2114

                                   craiglee@huntonak.com

14                                   *Counsel for Defendants NHK Spring Co., Ltd.,*
*NAT Peripheral (Dong Guan) Co., Ltd., NAT*

15                                    *Peripheral (H.K.) Co., Ltd., NHK Spring*
*(Thailand) Co., Ltd., NHK International Corp.*

16

17

18

19

20

21

22

23

24

25

26

27

28

1  MORGAN, LEWIS & BOCKIUS LLP
   J. Clayton Everett, Jr. (pro hac vice)
2  clay.everett@morganlewis.com
   Scott A. Stempel (pro hac vice)
3  scott.stempel@morganlewis.com
   1111 Pennsylvania Ave., N.W.
4  Washington, D.C. 20004
   Tel.: (202) 739-3000
5  Fax: (202) 739-3001

6  MORGAN, LEWIS & BOCKIUS LLP
   C. Cecilia Wang, SBN 314125
7  cecilia.wang@morganlewis.com
   One Market, Spear Street Tower
8  San Francisco, CA 94105
   Tel: (415) 442-1000
9  Fax: (415) 442-1001

10

11 *Attorneys for Defendants TDK Corporation,*
   *SAE Magnetics (H.K.) Ltd., Hutchinson*
12 *Technology, Inc., Magnecomp Precision*
   *Technology Public Co. Ltd., and Magnecomp*
13 *Corporation*

HUNTON ANDREWS KURTH LLP
Craig Y. Lee (pro hac vice)
craiglee@huntonak.com
Carter C. Simpson (pro hac vice)
csimpson@huntonak.com
Emily K. Bolles (pro hac vice)
ebolles@huntonak.com
2200 Pennsylvania Ave., NW
Washington, DC 20037
Tel.: (202) 955-1500
Fax: (202) 778-2201

HUNTON ANDREWS KURTH LLP
Anne Marie Mortimer, SBN 169077
amortimer@huntonak.com
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Tel.: (213) 532-2103
Fax: (213) 532-2020

*Attorneys for Defendants NHK Spring Co.,*
*Ltd., NAT Peripheral (Dong Guan) Co., Ltd.,*
*NAT Peripheral (H.K.) Co., Ltd., NHK Spring*
*(Thailand) Co., Ltd., NHK International Corp.*

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18 | SEAGATE TECHNOLOGY LLC, SEAGATE
   | TECHNOLOGY (THAILAND) LTD.,
   | SEAGATE SINGAPORE INTERNATIONAL

19 | HEADQUARTERS PTE. LTD., and
   | SEAGATE TECHNOLOGY

20 | INTERNATIONAL,

21 |            Plaintiffs,

22 | v.

23 | HEADWAY TECHNOLOGIES, INC.,
   | HUTCHINSON TECHNOLOGY INC.,

24 | MAGNECOMP PRECISION TECHNOLOGY
   | PUBLIC CO. LTD., NAT PERIPHERAL

25 | (DONG GUAN) CO., LTD., NAT
   | PERIPHERAL (H.K.) CO., LTD., NHK

26 | SPRING CO., LTD., NHK INTERNATIONAL
   | CORPORATION, NHK SPRING

27 | (THAILAND) CO., LTD., SAE MAGNETICS
   | (H.K.) LTD., and TDK CORPORATION,

28 |            Defendants.

Case No. 20 Civ. 1217(MMC)

**[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
THE SEAGATE COMPLAINT**

Date:      July 17, 2020
Time:      9:00 a.m.
Crtrm:     7, 19th Floor
Before:    The Hon. Maxine M. Chesney

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Pending before the Court is the motion of Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc. ("Headway"), and Hutchinson Technology Inc. (collectively, "Defendants") to Dismiss Plaintiffs Seagate Technology, LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International's (collectively, "Seagate") Complaint, Dkt. No. 1 (the "Seagate Complaint").

After full consideration of the moving and opposing papers of each party, the arguments of counsel, and all other matters presented to the Court, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**.  Count V of the Seagate Complaint is dismissed as to all Defendants because Seagate fails to plead the essential terms of any agreement, how any Defendants breached any such agreement, or how such breach caused damage to Seagate.  Count IV of the Seagate Complaint is dismissed as to all Defendants because the Seagate Complaint does not allege the requisite connection to the State of Minnesota necessary to satisfy the requirements under Minn. Stat. § 325D.49, *et seq.*, Article III, or the Due Process Clause.  All counts are dismissed as to Headway because the Seagate Complaint does not allege that it participated in the alleged conspiracy.

So **ORDERED** this _____ day of _____, 2020.

_____
Hon. Maxine M. Chesney
United States District Judge

[PROPOSED] ORDER re MOTION TO DISMISS THE SEAGATE COMPLAINT