MORGAN, LEWIS & BOCKIUS LLP
J. Clayton Everett, Jr., (pro hac vice)
clay.everett@morganlewis.com
Scott A. Stempel, (pro hac vice)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendant SAE Magnetics (H.K.) Ltd.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Hard Disk Drive Suspension Assemblies Antitrust Litigation<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case Nos. 19 MD 2918(MMC)<br>20 Civ. 1217(MMC)<br><br>**DEFENDANT SAE MAGNETICS (H.K.) LTD.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINTS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: July 17, 2020<br>Time: 9:00 a.m.<br>Dept.: Hon. Maxine M. Chesney |

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

Case Nos. 19 MD 2918, 20 Civ. 1217
SAE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................. 1

I. MOST OF PLAINTIFFS' ARGUMENTS ADDRESS HGAS, WHICH ARE NOT AT ISSUE .................................................................................................................. 1

    A. Plaintiffs Allegations Regarding HGA Sales Cannot Support Jurisdiction ............ 2

    B. Plaintiffs' Arguments Concerning Offices and Employees in the United States Are Factually Incorrect and Legally Irrelevant ................................ 3

    C. The Two Customer Meetings Plaintiffs Allege Are a Red Herring ....................... 5

    D. "Choice-of-Law Provisions" in Unrelated Agreements Provide No Basis for Personal Jurisdiction ......................................................................... 5

II. PLAINTIFFS HAVE NOT ALLEGED OR PROVIDED EVIDENCE REGARDING CONSPIRATORIAL CONDUCT BY SAE IN OR DIRECTED AT THE FORUM .................................................................................................................. 6

    A. Plaintiffs' Reliance on the Leniency Application and Enforcement Actions of Foreign Antitrust Authorities is Misplaced ........................................... 6

    B. The Email Communications Plaintiffs Rely on Do Not Support a Finding of Personal Jurisdiction Over SAE ....................................................... 7

    C. Plaintiffs' Arguments To Impute TDK's Contacts to SAE Are Nonsensical and Insufficient ........................................................................................ 8

III. THE SEAGATE NDA VENUE PROVISION DOES NOT JUSTIFY THE EXERCISE OF PERSONAL JURISDICTION OVER SAE .......................................... 9

CONCLUSION ....................................................................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anaya v. Machines de Triage et Broyage*,
  No. 18 Civ. 1731, 2019 WL 1083783 (N.D. Cal. Mar. 7, 2019) ................................................. 2

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  875 F.3d 1064 (9th Cir. 2017) .................................................................................................. 8

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .................................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................................. 6

*China Tech. Glob. Corp. v. Fuller, Tubb, Pomeroy & Stokes*,
  No. 05 Civ. 1793, 2005 WL 1513153 (N.D. Cal. June 27, 2005) ............................................ 5

*Chirila v. Conforte*,
  47 F. App'x 838 (9th Cir. 2002) ............................................................................................... 2

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) .................................................................................... 8

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
  No. 19 Civ. 5611, 2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) ............................................ 2

*Gilder v. PGA Tour, Inc.*,
  936 F.2d 417 (9th Cir. 1991) .................................................................................................. 10

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .................................................................................................. 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. 02 Civ. 1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) .............................................. 7

*In re Vitamins Antitrust Litig.*,
  120 F. Supp. 2d 45 (D.D.C. 2000) ............................................................................................ 6

*Krypt, Inc. v. Ropaar LLC*,
  No. 19 Civ. 03226, 2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ................................................. 2

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) .................................................................................................... 3

*Maeda v. Pinnacle Foods Inc.*,
  390 F. Supp. 3d 1231 (D. Haw. 2019) ...................................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Monterey Bay Military Housing, LLC v. Ambas Assurance Corp.*,
  No. 17 Civ. 4992, 2019 WL 4888693 (N.D. Cal. Oct. 3, 2019) ................................................10

*Ranza v. Nike*,
  793 F.3d 1059 (9th Cir. 2015) .....................................................................................................9

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...................................................................................................4, 8

*Sloan v. Gen. Motors, LLC*,
  No. 16 Civ. 7244, 2019 WL 6612221 (N.D. Cal. Dec. 5, 2019) .................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................................3, 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .....................................................................................................................2

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) .....................................................................................................6

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

iii    Case Nos. 19 MD 2918, 20 Civ. 1217
SAE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# CITATION CONVENTIONS

- "End-User Compl." for references to End-User Plaintiffs' Consolidated Class Action Complaint, dated Feb. 19, 2020, Case No. 19 MD 2918, ECF No. 167.

- "Floeder Decl." for references to the Declaration of Daniel Floeder in Support of Plaintiffs' Opposition to Defendant SAE Magnetics (H.K.) Ltd.'s Motion to Dismiss Complaints for Lack of Personal Jurisdiction.

- "Mot." for references to Defendant SAE's Notice of Motion and Motion To Dismiss Complaints for Lack of Personal Jurisdiction, dated April 17, 2020, Case No. 19 MD 2918, ECF No. 191, Case No. 20 Civ. 1217, ECF No. 31.

- "Opp." for references to Plaintiffs' Opposition to Defendant SAE Magnetics (H.K.) Ltd's Motion To Dismiss Complaints for Lack of Personal Jurisdiction, dated June 1, 2020, Case No. 19 MD 2918, ECF No. 228, Case No. 20 Civ. 1217, ECF No. 44.

- "Reseller Compl." for references to Reseller Plaintiffs' Corrected Consolidated Amended Complaint, dated Apr. 17, 2020, Case No. 19 MD 2918, ECF No. 190

- "SAE" for references to SAE Magnetics (H.K.) Ltd.

- "Seagate" for references to Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International.

- "Seagate Compl." for references to the Complaint for Damages, dated Feb. 18, 2020, Case No. 20 Civ. 1217, ECF No. 1.

- "Sheanin Decl." for references to the Declaration of Aaron M. Sheanin in Support of Plaintiffs' Opposition to Defendant SAE Magnetics (H.K.) Ltd.'s Motion to Dismiss Complaints for Lack of Personal Jurisdiction.

These cases are about HDD Suspensions. Plaintiffs have not alleged, or provided evidence regarding, *any* SAE contacts with the United States concerning the pricing, marketing, or sale of HDD Suspensions. Those are the only relevant contacts for the purposes of establishing specific jurisdiction over SAE; and their absence demands dismissal of SAE.[1]

Plaintiffs' arguments largely focus on SAE's purported contacts with the forum relating to a different product—HGAs—that is not at issue in this matter, and thus are irrelevant to determining the Court's jurisdiction. Likewise, although Plaintiffs spend much of their Opposition arguing that SAE is complicit in the HDD Suspensions conspiracy they allege, that too is jurisdictionally irrelevant given the absence of allegations or evidence that *SAE* undertook actions in furtherance of that alleged conspiracy either in the forum or purposefully directed at the forum. There are no such allegations or evidence.

Finally, Plaintiffs cannot rely on the venue provision in Seagate's NDA with SAE to bootstrap jurisdiction over SAE. The Seagate NDA claim cannot provide a basis for the Court to exercise jurisdiction over the Class complaints, which contain no breach of contract claims. Nor does that venue provision provide a basis for jurisdiction over Seagate's claims. There are no allegations plausibly establishing that SAE breached its NDA with Seagate, rendering the venue provision irrelevant. Even if there were such allegations, however, that would not be sufficient for jurisdiction given the absence of any pleaded basis for the federal courts to exercise jurisdiction over the NDA claim. SAE should be dismissed.

## ARGUMENT

### I. MOST OF PLAINTIFFS' ARGUMENTS ADDRESS HGAS, WHICH ARE NOT AT ISSUE

Plaintiffs admit that SAE does not sell HDD Suspensions, the only products at issue in this matter. (*See* Opp. 2.) Instead, SAE procures HDD Suspensions at the direction of HDD manufacturers, at prices determined through direct negotiations between the HDD manufacturers and HDD Suspension suppliers, which it incorporates into HGAs, a product *not* alleged to be a part of the conspiracy. Plaintiffs make a series of arguments premised on SAE's purported

---

[1] Plaintiffs do not argue that SAE is subject to general jurisdiction, nor could they. SAE is neither headquartered nor domiciled in the United States.

contacts with the United States relating to HGAs, but those contacts are jurisdictionally irrelevant.

### A. Plaintiffs Allegations Regarding HGA Sales Cannot Support Jurisdiction

Plaintiffs do not allege that SAE fixed prices of HDD Suspensions sold in the United States—to the contrary they acknowledge that SAE did not sell HDD Suspensions. Plaintiffs instead claim that SAE had "knowledge" that "price-fixed HDD suspension assemblies that it supplied as part of HGAs went to U.S. customers," but that alleged knowledge provides no basis for jurisdiction. The Ninth Circuit has held that knowledge of, and consent to, unlawful activity in the forum state does not constitute conduct committed *by the defendant* in the forum state. *See Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002) ("[K]nowledge and consent—passive states of mind—do not constitute intentional acts directed at the forum state."); *see also Krypt, Inc. v. Ropaar LLC*, No. 19 Civ. 03226, 2020 WL 32334, at *4 (N.D. Cal. Jan. 2, 2020) (applying *Chirila* to find that defendant's knowledge of and consent to conspiracy's unlawful activities in the forum state were insufficient to establish personal jurisdiction).

Similarly deficient are Plaintiffs' claims that SAE "knew that its conduct caused harm in the United States when it understood these price-fixed products were going to the United States." (Opp. 9.) "Foreseeability alone has never been a sufficient benchmark for personal jurisdiction." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Indeed, this Court has consistently held that "plaintiffs can no longer show express aiming simply by alleging the defendant knew of the plaintiff's forum connections and could reasonably foresee the harm in that forum." *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19 Civ. 5611, 2020 WL 1244918, at *7 (N.D. Cal. Mar. 16, 2020) (rejecting jurisdiction based on allegations that defendant knew that plaintiff would sell the finished product in California because its "business is centered in California and thus the brunt of the harm [plaintiff] suffers from the [] product is in California"); *see also Anaya v. Machines de Triage et Broyage*, No. 18 Civ. 1731, 2019 WL 1083783, at *4 (N.D. Cal. Mar. 7, 2019) ("[A]ssuming Auger knew its product was destined for California, such knowledge would be insufficient to establish that Auger expressly aimed its conduct at California."). Thus, SAE's sales of HGAs incorporating "price-fixed HDD suspensions" are insufficient to establish personal jurisdiction, irrespective of whether SAE knew

the HGAs it sold to HDD manufacturers would end up with customers in the United States.

Plaintiffs do not controvert sworn testimony that SAE "sells HGAs primarily to HDD manufacturers outside the United States." (Lim Decl. ¶ 8.) Instead, Plaintiffs point to a ██████████████████████████████████████████████████ to suggest that ████████████████████████████████████ (Opp. 2; Sheanin Decl., ¶ 3, Ex. B.) That summary not only fails to identify the final destination where HGAs were shipped, but █ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ *See Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) (holding that plaintiff must make factual allegations that defendant actually targeted plaintiff's business *in the forum*, and not plaintiff's business in a foreign forum).

The summary also does not quantify the volume of sales through the different distribution channels. In fact, sales of HGAs—again, not the products at issue in this case—shipped to the United States comprise a tiny portion of overall HGA sales. ██████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████. Even if sales of HGAs were jurisdictionally relevant, which they are not, the allegations, evidence and arguments made by Plaintiffs concerning those sales cannot support the exercise of jurisdiction given the absence of factual allegations suggesting that the United States was "targeted" by SAE.

B. **Plaintiffs' Arguments Concerning Offices and Employees in the United States Are Factually Incorrect and Legally Irrelevant**

Plaintiffs claim that SAE's presence in the United States subjects it to personal jurisdiction, but they do not in any way link SAE's purported offices, employees, customer meetings or supply agreements with the conduct at issue in the case. (*See* Opp. 3, 9, 11-12.)

Given that Plaintiffs are explicitly only seeking to establish specific, as opposed to general, jurisdiction, these unrelated "contacts" cannot support the exercise of jurisdiction. (*Id.* at 2.)

Many of the allegations concerning SAE's U.S. "presence" are inaccurate. Contrary to Plaintiffs' assertions, SAE does not maintain an office at "100 S. Milpitas Blvd., Milpitas, California," nor did it during the relevant period. (*Id.* at 3.) SAE does not own or lease any real estate in the United States. (*See* Mot. 2; Lim Decl. ¶ 5.) The office Plaintiffs refer to belonged to SAE's now-dissolved subsidiary, Husko, Inc. ("Husko"), which conducted business as SAE under a "dba" designation. (*See* Suppl. Lim Decl. ¶¶ 6-9.) Prior to its dissolution in 2010, Husko developed air-bearing designs for HGAs. (*Id.* ¶ 9.)

Even if that were SAE's office, rather than the office of a subsidiary, that does not provide a basis for specific personal jurisdiction. Plaintiffs must still demonstrate that SAE engaged in forum-related activities *from* the California office that *gives rise to* their claims. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d, 797, 803 (9th Cir. 2004). Plaintiffs base their arguments concerning SAE's purported California address on a NDA executed in 2005, which listed the California office of Husko as the address (Opp. 9), but that agreement was executed **two years** before SAE's first alleged involvement in the purported conspiracy and that agreement is not alleged to be part of or in furtherance of that conspiracy.[2]

Plaintiffs' argument based on the LinkedIn profiles of seven SAE employees based in California is likewise misplaced. (Opp. 3.) Those individuals were, in fact, all either (a) employed by an affiliated entity, Headway, Inc. ("Headway"), which had a service agreement with SAE, rather than SAE itself or, (b) for one of them, seconded by SAE to Headway. *See* Araujo Decl. ¶ 8. Although the seconded employee maintained his employment status with SAE, he became a Headway employee and worked out of Headway's office in California, which is presumably why he listed his location as California. *Id.* ¶¶ 5, 7-8. As with all secondees, this individual typically received instructions from Headway and worked at the direction of, and

---

[2] Plaintiffs allege that between 2003 and 2007, purported conspiratorial conduct occurred *only* among other defendants. (*See* End-User Compl. ¶ 92; Reseller Compl. ¶¶ 87-90.) Plaintiffs do not allege any conduct on the part of SAE until late 2007, when "TDK communicated [a market share] plan to SAE and MPT." (*Id.* ¶ 94.) This is one of only a few references to SAE in the Complaints

performed tasks for, Headway while seconded. *Id.* ¶ 7. Moreover, each of the individuals Plaintiffs identified served in an engineering or R&D role, and not a sales role. *Id.* ¶ 8. At no point did any of the individuals Plaintiffs identify engage in conduct related to the purported conspiracy. Plaintiffs do not even suggest otherwise.

### C. The Two Customer Meetings Plaintiffs Allege Are a Red Herring

Plaintiffs attempt to construct a basis for personal jurisdiction out of two meetings, one in 2011 and one in 2015, with HGA customers in California, each attended by a TDK executive who was at the time seconded to SAE. (Opp. 3.) Plaintiffs claim that those two meetings demonstrate that "SAE was a key player with a significant role in the conspiracy while directing its activities at the United States." (*Id.* at 3.) Plaintiffs are wrong for two reasons.

*First*, meetings in California relating to HGAs do not provide a basis for the exercise of jurisdiction in this case, which is about HDD Suspensions. HGAs are not alleged to be the subject of the conspiracy and there is no indication that either meeting related to HDD Suspensions. Accordingly, these meetings do not factor into the jurisdictional analysis.

*Second*, there is no evidence, and no factual allegations, that the meetings had anything to do with the purported conspiracy. The expense records Plaintiffs attach relate to dinners with employees of HDD OEMs, not HDD Suspension manufacturers, and there is no basis to infer or assert that they were in any way "conspiratorial." (*See* Sheanin Decl. Exs. J-K.) They are thus irrelevant to the Court's jurisdiction over SAE. *See, e.g., China Tech. Glob. Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. 05 Civ. 1793, 2005 WL 1513153 (N.D. Cal. June 27, 2005) (rejecting evidence of in-forum meetings and telephone calls because it fails to "demonstrate that Plaintiff's claims *arise out of* Defendants' California contacts").

### D. "Choice-of-Law Provisions" in Unrelated Agreements Provide No Basis for Personal Jurisdiction

Plaintiffs claim that personal jurisdiction over SAE is appropriate because it executed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[3] (*See* Opp. 12.) Plaintiffs are wrong. Where, as here, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[3] The choice-of-law provisions are completely irrelevant for the claims asserted by End-User Plaintiffs and Reseller Plaintiffs, who are not parties to the PSAs.

▇, a product not included in the alleged conspiracy, and contemplate performance outside the United States,[4] the ▇▇▇▇▇▇▇▇▇▇▇▇ are insufficient to establish specific personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (finding no purposeful availment where performance of the contract did not require defendants to engage in any substantial business in California); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) ("[C]hoice-of-law provision . . . standing alone would be insufficient to confer jurisdiction.").

## II. PLAINTIFFS HAVE NOT ALLEGED OR PROVIDED EVIDENCE REGARDING CONSPIRATORIAL CONDUCT *BY SAE* IN OR DIRECTED AT THE FORUM

Plaintiffs' arguments concerning SAE's alleged involvement in conspiratorial conduct miss the mark. The relevant jurisdictional question is not whether SAE participated in the conduct underlying Plaintiffs' claims; it is whether SAE's conduct occurred in or was purposefully directed at the United States. Plaintiffs have neither alleged nor provided evidence of any action or conduct *by SAE* that was in or purposefully directed at the United States.

### A. Plaintiffs' Reliance on the Leniency Application and Enforcement Actions of Foreign Antitrust Authorities Is Misplaced

Plaintiffs' argument that SAE is subject to personal jurisdiction because it is covered by a leniency agreement with the DOJ is unfounded and unsupported. (Opp. 11.) As explained in the Motion, seeking or receiving leniency is insufficient to establish that an entity that receives leniency purposefully directed conduct towards the United States. (Mot. 8-9 (citing *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45 (D.D.C. 2000)).) Plaintiffs fail to distinguish *In re Vitamins*, which recognized that "[leniency] agreements do not confer civil jurisdiction on this Court." 120 F. Supp. 2d at 47, 53.[5]

The same is true of the enforcement proceedings in Japan and Brazil. (Opp. 2.) The fact that SAE is named in both enforcement proceedings says nothing about actions by SAE in or

---

[4] *See, e.g.*, Floeder Decl., Ex. C, § 4.1 which expressly provides for shipments of goods to Hong Kong and China, but *not* the United States.

[5] Plaintiffs' reliance on *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) and *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) is misplaced, as *neither* case involved leniency applications.

directed at the United States. Nothing in the documents regarding the enforcement actions that Plaintiffs attach or inherent in the enforcement actions themselves demonstrate that SAE directed relevant conduct at the United States. Nor do Plaintiffs allege any such conduct.

**B.  The Email Communications Plaintiffs Rely on Do Not Support a Finding of Personal Jurisdiction Over SAE**

Plaintiffs highlight emails sent by two TDK executives "from an SAE email address," which Plaintiffs characterize as evidence that SAE exchanged information with TDK and NHK in furtherance of the purported conspiracy. (Opp. 4.) But a closer look at those emails reveals nothing that would establish a sufficient jurisdictional nexus between SAE and the United States.

The emails do not clearly evidence conspiratorial conduct by SAE, [6] and, even if they did, they provide no indication of action by SAE either in the forum or directed at the forum in furtherance of the alleged conspiracy. Plaintiffs present an email exchange between TDK and SAE executives, in which they discuss scheduling a meeting. (*See* Sheanin Decl. Ex. Q.) Plaintiffs also present an email in which SAE reaches out to TDK and NHK—both HDD Suspensions manufacturers—for HDD Suspensions pricing information. (*Id.* Ex. P.) Plaintiffs argue these emails are evidence of SAE's participation in the conspiracy, but they ignore the legitimate business reasons why SAE, a manufacturer and seller of HGAs, would be scheduling meetings and exchanging information about forecasts with TDK and NHK, manufacturers of a sub-component of HGAs.

Even if the messages were related to the alleged conspiracy, they do not provide evidence that SAE intentionally targeted the United States, and not some other forum. In fact, those emails do not suggest any conduct by SAE directed at the United States. General discussions about pricing or customer information is insufficient to establish jurisdiction in the absence of evidence linking such discussions to the United States. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02 Civ. 1486, 2005 WL 2988715, at *6 (N.D. Cal. Nov. 7, 2005)

---

[6] The emails at issue were sent by TDK executives seconded to SAE at the time. (*See* Suppl. Lim Decl. ¶ 13.) Although seconded to SAE, and given email addresses for SAE, the executives remained employees of TDK and continued also to have, and to use, TDK email addresses as well. (*Id.* ¶ 14.) Without evidence demonstrating that they acted on behalf of SAE and not TDK, when engaging in purported conspiratorial conduct, those emails do not show SAE's involvement in the alleged conspiracy, let alone subject it to personal jurisdiction.

(no express aiming where defendant did not knowingly target consumers resident in the U.S., had never manufactured or sold DRAM in the U.S., and did not maintain business or corporate formalities in the U.S.). Nothing in these communications demonstrates that the discussions concerned customers' purchases in the United States, as opposed to their foreign subsidiaries or customers located outside the United States. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1092-93 (C.D. Cal. 2010) (finding no "express aiming" where meetings allegedly "giv[ing] rise to the current suit . . . have [nothing] to do with the United States"). That is the crucial element notably missing from Plaintiffs' argument (not to mention, Plaintiffs' Complaints), which makes their claims defective. *See Schwarzenegger*, 374 F.3d at 803. And, more particularly, they do not describe any purported actions of SAE—as opposed to other defendants—concerning, relating or directed at the United States.

The Supreme Court has held that the relevant inquiry is whether the defendant has sufficient contacts with the "forum State itself," not with a forum resident. *Walden*, 571 U.S. at 278, 289. The "targeting" basis for jurisdiction—the one Plaintiffs advance here—cannot be founded solely on allegations that a forum resident was allegedly injured, even if the defendant knew that the allegedly injured person was a forum resident. *Id*. at 289 (recognizing that "knowledge of [the plaintiffs'] strong forum connections," combined with the plaintiffs' "foreseeable harm" suffered in the forum State is not sufficient to warrant the exercise of personal jurisdiction); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 875 F.3d 1064, 1070 (9th Cir. 2017) ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.").

### C. Plaintiffs' Arguments To Impute TDK's Contacts to SAE Are Nonsensical and Insufficient

Plaintiffs "alter ego" arguments provide no legally cognizable basis for imputing TDK's jurisdictional contacts to SAE, and, regardless, Plaintiffs allege no jurisdictionally relevant contacts of TDK that could be imputed to establish jurisdiction over SAE. (Opp. 11-12.) Although the jurisdictional contacts of a *subsidiary* may be imputed to a parent company that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8     Case Nos. 19 MD 2918, 20 Civ. 1217
SAE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"dominates and controls" the subsidiary, that is not what Plaintiffs argue for here. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). SAE is a subsidiary of TDK, not the other way around.

Alter ego jurisdiction "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (internal citation omitted). There is no contention that SAE dominates and controls TDK, and that would make no sense given that TDK (a) owns SAE and (b) is a much larger entity with a much more diverse portfolio of businesses than SAE.

Even if there were a basis to impute TDK's "jurisdictional contacts" to SAE, however, Plaintiffs fail to identify any TDK contacts that would provide a sufficient basis to exercise jurisdiction over SAE. That failure independently requires rejection of Plaintiffs' argument.

### III. THE SEAGATE NDA VENUE PROVISION DOES NOT JUSTIFY THE EXERCISE OF PERSONAL JURISDICTION OVER SAE

Plaintiffs' attempt to bootstrap the venue provision in the Seagate NDA into jurisdiction over SAE for all of Plaintiffs' claims fails for three reasons. First, there are no well-founded, factual allegations plausibly suggesting that SAE breached the NDA. (*See* ECF No. 229 at 7-8 (Motion to Dismiss Seagate Complaint).) There is nothing inherent in the allegations concerning purported conspiratorial conduct that would plausibly suggest that SAE, which does not even sell HDD Suspensions, must have breached the NDA in connection with the alleged conspiracy. And there are no allegations concerning breach of the alleged NDA in the Seagate complaint that are specific to SAE.

Even if there were such allegations, they would not support pendent personal jurisdiction, contrary to Plaintiffs' argument. (*See* Opp. at 17-18.) Courts in this Circuit routinely decline to assert pendent personal jurisdiction where there is no jurisdiction over a properly pending federal claim. *See, e.g.*, *Sloan v. Gen. Motors* LLC, No. 16 Civ. 7244, 2019 WL 6612221, at *8–10 (N.D. Cal. Dec. 5, 2019) (declining to assert pendent jurisdiction where federal claim was subsequently dismissed); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1247 (D. Haw.

2019) (holding that "pendent jurisdiction is inapplicable absent a federal claim" (citing *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991))). That is the case here: Seagate has no properly pending federal claims for which there is a legally sufficient basis to exercise personal jurisdiction over SAE.

Contract claims, such as the NDA claim here, are a creature of state law, the venue provision does not (and could not) create jurisdiction in the federal courts, and there is no other basis pled to establish that the NDA claims are properly brought in federal court if not appended to the antitrust claims, for which there is no personal jurisdiction. (*See* Floeder Decl., Exs. A at ¶ 13, B at ¶ 13 (establishing venue for enforcement of the NDA in a "court of proper jurisdiction in Santa Clara County, California").) Plaintiffs may not rely on the antitrust claims—for which there is no independent basis for personal jurisdiction—to create subject matter jurisdiction over contract claims, which Plaintiffs then seek to rely upon to establish a basis for personal jurisdiction over the antitrust claims.

Moreover, it goes without saying that Seagate's contract claims—which are not and could not be asserted by the class plaintiffs—provide no basis for the Court to exercise jurisdiction over the putative class claims against SAE. Plaintiffs identify no decision in which a court has exercised pendent jurisdiction over claims brought by different plaintiffs in a different lawsuit. *See, e.g.*, *Monterey Bay Military Housing, LLC v. Ambas Assurance Corp.*, No. 17 Civ. 4992, 2019 WL 4888693, at *23 (N.D. Cal. Oct. 3, 2019) (declining to assert pendent jurisdiction over other plaintiffs' claims where "each of the Plaintiffs engaged in separate and distinct transactions with Defendants").

**CONCLUSION**

For the reasons set out in the Motion and above, Plaintiffs fail to show that SAE is subject to personal jurisdiction in this Court. All claims against SAE should be dismissed with prejudice.

| | |
|---|---|
| Dated: June 22, 2020 | Respectfully submitted,<br><br>　　　*/s/ J. Clayton Everett, Jr.*<br>J. Clayton Everett, Jr.<br>Scott A. Stempel<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone: (202) 739-5860<br>Clay.everett@morganlewis.com<br><br>***Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd***|

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

11  Case Nos. 19 MD 2918, 20 Civ. 1217
SAE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION