| | |
|---|---|
| **ZELLE LLP** | **MORGAN, LEWIS & BOCKIUS LLP** |
| **ROBINS KAPLAN LLP** | **BAKER MCKENZIE LLP** |
| **CUNEO GILBERT & LaDUCA, LLP** | **HUNTON ANDREWS KURTH LLP** |
| **LARSON • KING, LLP** | |

August 12, 2020

**VIA ECF FILING**
The Honorable Maxine M. Chesney
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re: Hard Disk Drive Suspension Assemblies Antitrust Litigation*, No. 19-md-02918-MMC – Joint Letter Brief Regarding Deposition Protocol Disputes

Dear Judge Chesney,

      Pursuant to the Court's Order Regarding Submission Of Deposition Protocol Disputed Issues To Court By Joint Letter Brief (ECF No. 251), End-User and Reseller Plaintiffs ("Plaintiffs") and Defendants respectfully submit their respective positions on the following disputed provisions of their proposed deposition protocol: (1) deposition location of foreign-based witnesses; and (2) length of foreign language depositions translated into English. The Seagate Plaintiffs take no position on these two issues. The parties have engaged in extensive, good faith negotiations, and have reached agreement on the vast majority of provisions. The shaded provisions in the deposition protocol attached as Exhibit 1 set forth the parties' alternative proposals on the disputed issues.

    A. Location of Foreign-based Witness Depositions

      *Plaintiffs' Position:* Plaintiffs submit that foreign-based witness depositions should "take place in the Northern District of California, unless the foreign witness shows that it is more appropriate to have the deposition take place outside the United States." Ex. 1 at p. 7. Plaintiffs' provision is consistent with well-established practice in antitrust cases in this District.

      Notwithstanding Defendants' concerns over travel restrictions and health risks, the disputed provision does not apply during the COVID-19 pandemic. The protocol specifically acknowledges that the means and locations of depositions may need to be changed, and provides procedures for depositions taken by videoconference in light of the pandemic. Ex. 1 at p. 1 & §VI. Instead, the disputed provision pertains to in-person depositions after the present health crisis has passed and travel restrictions are lifted.

      Courts regularly require foreign witnesses to travel to the United States for depositions to minimize expense and inconvenience, and allow for court intervention when necessary. *Carson Cheng v. AIM Sports, Inc.*, 2011 WL 13177134, at *1 (C.D. Cal. May 4, 2011); *In re Vitamin Antitrust Litig.*, 2001 WL 35814436, at *4-5 (D.D.C. Sept. 11, 2001). Courts in the vast majority of antitrust cases in the Northern District have ordered that depositions presumptively be taken

here, or expressed such a preference.  Ex. 2 ¶5 (*SRAM*, M:07-cv-01819-CW); Ex. 3 §V (*TFT-LCD*, M:07-1827 SI); Ex. 4 §VI (*CRT*, 3:07-cv-05944-SC); Ex. 5 (Doc. No. 707) ¶1 (*ODD*, 3:10-md-02143-RS); *Capacitors*, 2016 WL 11281272, at *2 (N.D. Cal. Feb. 24, 2016); Ex. 6 §III.B (*Lithium Ion Batteries*, 13-MD-02420 YGR DMR ("*LIB*")).  This is consistent with the Federal Rules, which do not limit the location of party depositions but instead permit the noticing party to designate the location.  Fed. R. Civ. P. 30(b)(1); *Carson Cheng*, 2011 WL 13177134, at *1 ("[T]he deposition of a party may be noticed wherever the deposing party designates, subject to the Court's power to grant a protective order.").

The lesser burden and expense associated with a domestic deposition strongly militates in favor of taking foreign witness depositions in the United States.  *See Carson Cheng*, 2011 WL 13177134, at *1 ("[T]he cost for all the parties and counsel to travel to either China or Hong Kong to conduct this deposition would far exceed what it would cost for a single person to travel to Irvine."); *Vitamin*, 2001 WL 35814436, at *4 ("[T]he expense and burden of taking depositions in Europe and Japan far outweigh those entailed by requiring defendants' witnesses to travel to the United States").  The *TFT-LCD* court ordered depositions of foreign witnesses to take place in the Northern District "to minimize the expense and inconvenience to parties, witnesses, and counsel …."  Ex. 3 at 6.  Similar consideration was given in *CRT*, *SRAM*, and other courts.  Ex. 2 ¶5; Ex. 4 §VI; *SHM Int'l Corp. v. Chant Heat Energy Sci. & Tech. (Zhongshan) Co.*, 2015 WL 11404609, at *2 (N.D. Ga. July 29, 2015); *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 337-38 (N.D. Ind. 2000).

Defendants' proposal—requiring that depositions of foreign witnesses take place within 50 miles of the witness's home or place of employment, or alternatively in Taiwan, Hong Kong, or Thailand (but only for 30(b)(1), not 30(b)(6)) witnesses)—would create additional, unnecessary burden and expense.  It would require at least six lawyers (counsel for End Users, Resellers, Seagate, TDK, and both firms representing NHK) and likely other individuals (interpreters, court reporters, and videographers) to travel abroad.  Clearly, the burden of six or more attorneys traveling to Asia for depositions would be far greater than having one witness travel to California.

Defendants and their executives cannot complain about having to travel to the U.S. to testify.  As the *Vitamin* court explained, "there are considerable efficiencies to be gained by ordering depositions here that outweigh the burdens imposed by requiring defendants' 30(b)(6) witnesses and managing agents to miss work because of travel time."  2001 WL 35814436, at *5.  *See Fenerjian v. Nong Shim Co., Ltd*, 2016 WL 1019669, at *3 (N.D. Cal. Mar. 15, 2016) (ordering depositions in San Francisco over assertions that travel would unduly burden deponents due to "childcare responsibilities, work, medical treatment, and financial burden of missing work").  Moreover, Defendants concede they were part of the conspiracy, and TDK agreed to cooperate to avoid prison and fines.  Any inconvenience is a consequence of Defendants' own misconduct.

Holding foreign witness depositions in the Northern District will result in less logistical burden and attorney time, as well as lower travel, food, and lodging costs—all of which would be borne by clients and class members.  This is particularly true given that counsel for Defendants, End Users, and Seagate have offices in the Northern District who are more than capable of taking and defending these depositions.  Defendants downplay the convenience of counsel, but courts routinely consider the "location of counsel for the parties in the forum district" as a primary factor in determining the location for depositions.  *See, e.g., Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D.

625, 629 (C.D. Cal. 2005); *Custom Form*, 196 F.R.D. at 337 ("[T]ravel expenses of the deponents are not the only relevant expenses considered in determining the site of a deposition. The travel expense of counsel is also relevant."). Further, depositions in the Court's time zone provide convenience for court supervision, as opposed to an opposite time zone with no overlapping business hours, where it will be difficult to obtain real time Court supervision. *See id.*; *Vitamin*, 2001 WL 35814436 at *5.

Under Plaintiffs' provision, depositions of foreign witnesses who (1) recently or frequently traveled to the U.S. for business or otherwise, (2) had managerial responsibility, or (3) are 30(b)(6) designees will generally take place in the Northern District. These considerations are consistent with other Northern District deposition protocols including *SRAM*, Ex. 2 ¶5, and *TFT-LCD*, Ex. 3 §V, and case law in general. *See Cadent*, 232 F.R.D. at 629 (considering "whether the persons sought to be deposed often engage in travel for business purposes" in ordering depositions away from corporation's principal place of business); *In Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535 (D. Md. 1996) (foreign nationals who are managing agents of a corporate defendant may be required to travel to the U.S. for deposition). Defendants' citation to *Transpacific* is off-point, because plaintiffs there failed to show that the specific witnesses were managing agents who could be ordered to testify in the U.S.

Plaintiffs' proposal also would allow a foreign-based witness to show that "that it is more appropriate to have the deposition take place outside the United States." Ex. 1 at p. 7. The parties will take into account extenuating circumstances, such as the health of a witness, or other strong justifications for requiring a deposition to take place abroad. This is consistent with *Merianos*, cited by Defendants, which ordered depositions to take place abroad where one witness did not have a passport and the other was nursing an infant.

***Defendants' Position:*** "A corporate officer or employee's deposition 'should usually take place at the corporation's principal place of business or, as other courts have held, at his place of business or employment.'" *James Brooks Co., Inc. v. Lloyd's London,* No. Civ-F-05-0849, 2006 U.S. Dist. LEXIS 57183, at *8 (E.D. Cal. Jul. 31, 2006) (quoting *Philadelphia Indem. Ins. v. Fed. Ins. Co.,* 215 F.R.D. 492, 495 (E.D. Pa. 2003)). Consistent with this presumption, courts have declined to require that witnesses located outside the United States travel to the United States to be deposed, even in antitrust class actions. *E.g.*, Ex. 7 ¶ 12 (*In re Packaged Seafood Products Antitrust Litig.*, No. 15 MD 2670; Ex. 8 ¶ III.B (*In re Lithium Ion Batteries Antitrust Litigation*); *In re Transpacific Passenger Air. Transp. Litig.*, No. 07 Civ. 5634, 2013 WL 6730165, at *2 (N.D. Cal. Dec. 20, 2013). The defendants here have their principal places of business in Japan, Thailand, Hong Kong and China in addition to the United States. Particularly in these unprecedented times when travel remains restricted, poses serious health risks, and can require quarantines, it is not appropriate to require that every individual affiliated with a Defendant travel to the Northern District of California for a deposition.[1]

---

[1] Plaintiffs rely on *Apple v. Samsung* regarding the length of interpreted depositions. *See infra* Section B. However, that case required that the deposition of two individuals in question take place in Suwon, Korea, where they worked. *See Apple Inc. v. Samsung Elecs. Co.*, No. 12 Civ. 630, 2013 U.S. Dist. LEXIS 53409, at *20-21 (N.D. Cal. Apr. 12, 2013).

Compelling defendants' executives and employees located in Asia to travel to the United States for depositions would create substantial burdens that are not justified. Each such executive would need to be away from work for a week or more, with the flights to and from Asia each taking at least a full day, followed by deposition preparation; and then depositions that, if cross-noticed and translated, could take four days. Plaintiffs' proposal would apply to all witnesses, including those who do not regularly travel to the United States, and put the burden on the witness to show why he or she should *not* be compelled to appear for a deposition in the United States.

Plaintiffs argue that depositions should take place in the Northern District of California primarily for their counsel's convenience, so that counsel can avoid the cost and inconvenience of traveling to Asia for depositions. Those arguments should not be given serious weight: "travel for depositions is expected of litigators and the convenience of counsel is less compelling than any hardship to . . . witnesses." *Merianos v. Merry Chance Indus. Ltd.*, No. V102357JSTFMOX, 2011 WL 13214089, at *2–3 (C.D. Cal. Aug. 8, 2011) (citation and internal quotation marks omitted). The burden is reciprocal, and there is no justification for giving priority to the burdens of counsel whose job it is to litigate the case over the burdens on Defendants' executives.

Nor is there any other justification for requiring the depositions of Defendants' Asia-resident executives to take place in the United States. Although Japan, where some of the witnesses are located, requires depositions to be taken at a U.S. embassy or consulate, Defendants have proposed that such depositions take place in Taiwan, Hong Kong or Thailand—where other defendant employees are located and which do not have the same requirements, but which are much closer and easier for travel from Japan. Indeed, cases that Plaintiffs rely on, including *Vitamins* required depositions in the United States to overcome restrictions on taking depositions in certain foreign countries. *E.g.*, *Vitamins*, 2001 WL 3581443, at *6 (describing legal and procedural impediments to taking depositions and concerns about affronting the sovereignty of foreign countries). Here, however, there are no such concerns about taking depositions in the countries Defendants have proposed. Additionally, unlike other cases in which deponents could be located across the world, here, likely deponents are all located in the United States and Asia. Thus, those depositions can be scheduled together to allow multiple depositions to be taken in a single trip, which will further minimize potential burdens.

Plaintiffs' reliance on deposition protocols from other matters is misplaced. *First*, not all class actions, let alone antitrust class actions, require that depositions be in the United States. For example, in *Transpacific Passenger Air Transportation Antitrust Litigation* the court denied a request that would have required a defendant to bring employees based in China and Japan to the United States for deposition. No. 07 Civ. 5634, 2013 WL 6730165, at *3 (N.D. Cal. Feb. 20, 2013). *Second*, the matters Plaintiffs rely on generally involved a far larger number of plaintiff classes, individual plaintiffs, and defendants. Here, there are only three groups of plaintiffs, and two groups of defendants, so depositions should involve far fewer traveling counsel than were involved in the cases Plaintiffs cite, many of which involved dozens of plaintiffs and defendants. Indeed, *Vitamins* noted that one deposition involved 24 attorneys and another 25 attorneys. 2001 WL 3581443, at *4 n.17. And, unlike *Carson Cheng v. AIM Sports*, on which Plaintiffs rely, counsel in this case will need to travel for depositions in the Northern District of California, just as they would for depositions in Asia. 2011 WL 13177134, at *1. Lead counsel for both groups of Defendants, interim lead counsel for Resellers, and lead counsel for Seagate are located in Washington, DC, and they would need to travel cross-country for any deposition in the Northern

District of California. *Third*, Plaintiffs overstate the requirements of some of the deposition protocols they rely on. For example, the deposition protocol in *ODD* merely said that the parties should *consider* whether to conduct depositions of foreign witnesses in the United States. Ex. 5 (Doc. No. 707) ¶1. Defendants will, of course do so, but should not be *compelled* to bring every witness to the United States, especially given the concerns that COVID-19 presents for travel. *Fourth*, Plaintiffs have not even agreed to pay for costs of travel, including lodging and food, for deponents to attend deposition in the United States, as was the case in multiple of the matters on which they rely. *E.g.*, *Vitamins*, 2001 WL 3581443, at *11.

Simply put, in the current climate, it is not reasonable to insist that every witness affiliated with a Defendant travel to the United States for deposition.

B. Time Length of Foreign Language Depositions

*Plaintiffs' Position:* Plaintiffs propose that "deposition time limits shall be extended to a ratio of 14 hours for every 7 (or multiplied by 2)," if an interpreter is used for all or nearly all of a percipient witness or Rule 30(b)(6) deposition. Ex. 1 at p. 15. Doubling deposition hours when an interpreter is necessary is well-accepted in most antitrust class actions involving international cartels in the Northern District. *SRAM*, Ex. 2 ¶8; *TFT-LCD*, Ex. 3 §I.D; *CRT*, Ex. 4 §II.D; *ODD*, Ex. 5 (Doc. No. 1002) §IV.D; *LIB*, Ex. 6 §IV.D (all doubling time for translated depositions). *Capacitors* and *Resistors*, which Defendants cite, are outliers. Non-antitrust cases in the Northern District also adhere to the double-time standard. *See Artec Grp., Inc. v. Klimov*, 2017 WL 9614086, at *1 (N.D. Cal. Aug. 4, 2017); *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 1563253, at *3 (N.D. Cal. Apr. 12, 2013).

Experience in other antitrust cases demonstrates that a translated seven-hour deposition likely will take 14 hours of record time. First, each question and answer must be stated twice. Second, interpreter and check-interpreter objections and colloquy will take up additional record time without substantive examination occurring. Third, questions frequently need to be re-formulated or restated to address witness confusion that stems from translation imperfections and lack of literal translations of certain words—which may be proliferated here by technical terms used within the HDD industry. Contrary to Defendants' assertion, natural pauses and exhibit review do not account for two hours of record deposition time.

Defendants' proposed multiplier of 1.7, or only 12 total hours of record time for a seven-hour deposition, is simply insufficient. It would prejudice Plaintiffs by substantially reducing the time permitted under the Federal Rules. Moreover, while Defendants suggest that TDK or NHK may examine a co-conspirator witness for 3-6 hours, experience shows that such co-defendant examinations rarely occur, if ever. Even if Defendants do so here, that should not reduce the time for Plaintiffs to take testimony necessary to establish their case.

*Defendants' Position:* Defendants agree translated depositions should be extended but disagree about the length of the extension. In Clause VII-E, Plaintiffs seek to double the time for such depositions (*e.g.*, from 7 to 14 hours), and Defendants seek to lengthen such depositions by 1.71 times (*e.g.*, from 7 to 12 hours). To be clear, this is not a dispute about 2 hours. Because other provisions in the protocol further lengthen depositions to accommodate cross-noticing and

multiple-party questioning, Clause VII-E acts as a multiplier that can result in absurdly long depositions.

For example, for a deposition of a defendant cross-noticed by all plaintiffs and the co-defendant, a deponent needing a translator could sit for as long as ***27 hours*** under plaintiffs' proposal (compared to a maximum of 23.1 hours under Defendants' proposal). That would be 20 hours longer than the presumptive 7-hour length under Federal Rule of Civil Procedure 30(d)(1). Plaintiffs' proposal on time would push nearly every deposition into three days, and many into four, imposing undue burden on the parties and, in particular, on the deponent.

Recent deposition protocols in the Northern District of California are consistent with Defendants' proposal. See *Capacitors Discovery Limits Order*, Ex. 9 at 2 ("Depositions conducted in English shall be limited to 7 hours each. Depositions for which interpreters are used shall be limited to 12 hours each."); *Resistors Discovery Limits Order*, Ex. 10 at 2 (same).

Moreover, when courts have ruled on this issue outside of a stipulated protocol, they have found that a more limited amount of time for foreign-language depositions is reasonable. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, No. 15-2599, 2016 U.S. Dist. LEXIS 133736, at *117-20 (S.D. Fla. Sep. 8, 2016) (rejecting claims that deposition time must be doubled simply because "the translation process involves repeating each question, objection, and answer" and instead ordering translated deposition to have a "presumptive limit of 10 hours per foreign language deposition[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, No. 13-cv-05038 NC, 2014 U.S. Dist. LEXIS 199947, at *8-9 (N.D. Cal. June 9, 2014) ("The Court rescinds the case management order permitting two-day depositions for deponents not testifying in English. The ordinary limits (one day, no more than seven hours) will apply to all witnesses.").

A 1.71 multiplier should provide ample time to secure testimony using an interpreter. Far less than all of the record time in a deposition is spent speaking that would require translation. For instance, there is a natural pause between each question and answer as the deponent considers his or her response and the questioner considers his or her question; and deponents and counsel will need to take time—which does not require translation—to review exhibits presented in the deposition. Consequently, even if translation of testimony takes the same amount of time as the foreign language testimony, that would not justify doubling the deposition time.

Plaintiffs' cited cases are inapposite. *Artec Group* and *Apple* place a 14-hour limitation on depositions. The *SRAM and ODD* Protocols Plaintiffs cite (see Exs. 3 & 5) only allow a maximum deposition time of 14 hours. The *CRT* and *LIB* protocols (see Exs. 4 & 6) double time and expand hours but only to accommodate significantly different interests. The *CRT* protocol at § 2(C), limits "the Direct/Indirect Purchaser Plaintiffs" to seven hours and only expands time for state attorneys general and opt out plaintiffs. *Id.*; *see* Ex. 6 § II.E. In this case there is no direct purchaser class, no opt outs, and no state attorneys general who have intervened. If the maximum time for any translated deposition were more limited, that might have presented a different situation.

To accommodate multiple questioners where translators are used, Defendants have been exceptionally reasonable in agreeing to up to 23 hours for a single deposition. At some point, further hours become abusive to the deponent. Defendants respectfully ask the Court to adopt Defendants' proposal.

Respectfully submitted,

 /s/ Christopher T. Micheletti
Christopher T. Micheletti
**ZELLE LLP**

Aaron M. Sheanin
**ROBINS KAPLAN LLP**

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*

 /s/ Mark H. Hamer
Mark H. Hamer
**BAKER MCKENZIE LLP**

 /s/ Craig Y. Lee
Craig Y. Lee
**HUNTON ANDREWS KURTH LLP**

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd.,, NAT Peripheral (H.K.) Co., Ltd. and NHK Spring Precision (Guangzhou) Co, Ltd.*

 /s/ Victoria Sims
Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**

Shawn M. Raiter
**LARSON • KING, LLP**

*Interim Co-Lead Class Counsel for the Reseller Plaintiffs*

 /s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**

*Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*

Enclosures

## ATTORNEY ATTESTATION

I, Christopher T. Micheletti, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

 /s/ Christopher T. Micheletti
Christopher T. Micheletti

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*