IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>SEAGATE TECHNOLOGY LLC, et al.,<br>　　Plaintiffs,<br>　v.<br>HEADWAY TECHNOLOGIES, INC.<br>　　Defendants. | Case No. 19-md-02918-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SEAGATE COMPLAINT IN PART; AFFORDING SEAGATE PLAINTIFFS' LEAVE TO AMEND** |

Before the Court is the "Motion to Dismiss Seagate Complaint," which motion was filed April 17, 2020, on behalf of defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co, Ltd., NAT Peripheral (H.K.) Co., Ltd. (collectively, "NHK Defendants"), as well as TDK Corporation ("TDK"), Magnecomp Precision Technology Public Co, Ltd. ("MPT"), SAE Magnetics (H.K.) Ltd. ("SAE"), Headway Technologies, Inc. ("Headway"), and Hutchinson Technology Inc. ("Hutchinson"),[1] whereby said defendants seek, pursuant to Rule

---

[1] An eleventh defendant, specifically, NHK Spring Precision (Guangzhou) Co., Ltd., was voluntarily dismissed. (See Doc. No. 29.)

12(b)(6) of the Federal Rules of Civil Procedure, dismissal of Counts IV and V as asserted against all said defendants, as well as dismissal of all Counts asserted against Headway. Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International (collectively, "Seagate Plaintiffs") have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**A.  Count IV**

Count IV, titled "Restraint of Trade in Violation of the Minnesota Antitrust Law of 1971," is based on a theory that Seagate Plaintiffs were damaged by an alleged conspiracy to fix the price of "suspension assemblies." (See Compl. ¶¶ 1, 162.) [3,4] Defendants contend Seagate Plaintiffs fail to allege any facts to support a finding that the Minnesota Antitrust Law applies to the alleged price-fixing conspiracy.

Under Minnesota law, specifically, subdivision 1 of Minn. Stat. § 325D.53, a conspiracy to fix "the market price . . . of any commodity" is unlawful. See Minn. Stat. § 325D.53, subdiv. 1. Pursuant to § 325D.54, however, the scope of § 325D.53 is limited to the following two circumstances:

> (a) any contract, combination, or conspiracy when any part thereof was created, formed, or entered into in this state; and
>
> (b) any contract, combination, or conspiracy, wherever created, formed, or entered into; any establishment, maintenance, or use of monopoly power; and any attempt to establish, maintain, or use monopoly power; whenever any of the foregoing affects the trade or commerce of this state.

See Minn. Stat. § 325D.54 (emphases added).

---

[2] By order filed July 10, 2020, the Court took the matter under submission.

[3] As set forth in more detail in the complaint, suspension assemblies are a component of computer hard disk drives. (See, e.g., Compl. ¶¶ 1, 50-52.)

[4] Count I seeks relief under the Sherman Act and Counts II and III seek relief under California law, all based on the above-described conspiracy. Defendants do not seek dismissal of Counts I, II, or III, other than, as set forth below, to the extent they are asserted against Headway.

1      Here, as defendants point out, the complaint includes no factual allegations to
2 support a finding that § 325D.54(a) applies, namely, that the asserted conspiracy was
3 created, formed, or entered into in Minnesota.  With respect to § 325D.54(b), defendants
4 point out that the complaint includes no factual allegations to support a finding that any
5 Seagate Plaintiff purchased suspension assemblies in Minnesota, and that courts
6 considering the matter have found § 325D.54(b) only applies where the plaintiff has
7 purchased the subject commodity in Minnesota.  See In re Terazosin Hydrochloride
8 Antitrust Litig., 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (dismissing claim under
9 § 325D.54 where claim not based on purchases made in Minnesota); City of St. Paul v.
10 FMC Corp., 1990 WL 265171, at 7 (D. Minn. February 27, 1990 (finding § 325D.54(b)
11 applies only to "purchases made" in Minnesota; dismissing claim based on purchases in
12 other states); see also Sheet Metal Workers Local 441 v. GlaxoSmithKline, PLC, 737 F.
13 Supp. 2d 380, 396-97 (E.D. Penn. 2010) (finding § 325D.54(b) satisfied where plaintiffs
14 alleged they purchased subject commodity in Minnesota).

15      In their opposition, Seagate Plaintiffs contend Count IV should not be dismissed
16 because "[i]t is not in dispute that [d]efendants negotiated suspension assembly prices
17 with Seagate in Minnesota, quoted prices to Seagate in Minnesota, and shipped
18 suspension assemblies to Minnesota."  (See Pls.' Opp. at 13:17-19.)  As Seagate
19 Plaintiffs acknowledge, however, no such factual allegations are pleaded in the
20 complaint.  (See id. at 16:27-28.)  "In determining the propriety of a Rule 12(b)(6)
21 dismissal, a court may not look beyond the complaint to a plaintiff's . . . memorandum in
22 opposition to a defendant's motion to dismiss," see Schneider v. California Dep't of
23 Corrections, 151 F.3d 1194, 1197 n.3 (9th Cir. 1998), and, consequently, Seagate
24 Plaintiffs may not avoid dismissal by relying on factual assertions not pleaded in their
25 complaint.

26      Accordingly, Count IV is subject to dismissal, with leave to amend.

**B.  Count V**

28      Count V, titled Breach of Contract, is based on the theory that "[d]efendants

3

1  executed nondisclosure agreements" ("NDAs") with Seagate Technology LLC (see
2  Compl. ¶¶ 2, 171), that "[d]efendants were provided with confidential business
3  information pursuant to these agreements" (see Compl. ¶ 172), which information
4  "includ[ed] pricing and volume information, forecasts, and product designs" (see Compl.
5  ¶ 98), and that "[d]efendants breached these agreements by misusing, exchanging,
6  and/or disclosing Seagate's confidential business information" (see Compl. ¶ 177).
7      Defendants argue the complaint fails to include facts to support a finding that
8  Seagate Plaintiffs were damaged by any alleged breach of one or more of the above-
9  referenced NDAs.[5]  The Court agrees.
10     "An essential element of a claim for breach of contract are damages resulting from
11 the breach."  St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.,
12 101 Cal. App. 4th 1038, 1060 (2002).  Here, Seagate Plaintiffs allege defendants
13 exchanged Seagate Plaintiffs' confidential information with "one another" for the purpose
14 of "charg[ing] Seagate artificially high prices," and that such exchanges resulted in
15 Seagate Plaintiffs' purchasing HDD suspension assemblies at supracompetitive prices."
16 (See Compl. ¶ 103).  The complaint, however, lacks factual allegations in support of such
17 conclusory assertions.  In particular, the complaint does not include factual allegations
18 that, if true, would establish a "causal connection" between the asserted exchanges of
19 Seagate Plaintiffs' confidential information and the claimed damages.  See St. Paul Fire
20 & Marine Ins., 101 Cal. App. 4th at 1061.
21     Accordingly, Count V is subject to dismissal, with leave to amend.

---

[5] Defendants also argue the complaint does not allege "which of the ten [d]efendants are parties to which, if any, of the [NDAs]."  (See Defs.' Mot. at 5:22-23.)  Seagate Plaintiffs, however, expressly allege Seagate Technology LLC entered into separate NDAs with four defendants, specifically, TDK (see Compl. ¶ 97 n.17), MPT (see Compl. ¶ 99), HTI (see Compl. ¶ 101), and SAE (see id.).  Seagate Plaintiffs also allege "NHK" signed an NDA.  (See id.)  Although such allegation is less clear, as Seagate Plaintiffs collectively refer to six entities as "NHK" (see Compl. ¶ 3(i)), the Court, for purposes of the instant motion only, assumes Seagate Plaintiffs are alleging each of those six entities likewise signed a separate NDA.  In any amended complaint, Seagate Plaintiffs should clarify their allegations regarding the identity of the contracting parties.

### C. Claims Against Headway

As to the remaining Counts, i.e., Counts I through III, defendants argue the complaint fails to include facts to support a finding that Headway, a corporation alleged to be "wholly owned by TDK," and which "provides recording head products to the HDD industry" (see Compl. ¶ 43), can be held liable for the alleged price-fixing conspiracy.

In their opposition, Seagate Plaintiffs do not identify any allegations in the complaint providing a basis for Headway's liability. Rather, Seagate Plaintiffs set forth their theory in their opposition, specifically, their theory that Headway, acting "in concert with TDK" (see Pls.' Opp. at 2:26-27), "purchased and then controlled one of the co-conspirators, Hutchison" (see id.), in order "to guarantee the scheme's continuing success by reducing the number of conspirators" (see id. at 19:6-8). As set forth above, however, Seagate Plaintiffs may not avoid dismissal of claims by relying on factual assertions not pleaded in their complaint. See Schneider, 151 F.3d at 1197 n.3.

Accordingly, to the extent Counts I through III are alleged against Headway, said Counts are subject to dismissal, with leave to amend.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED in part, as follows:

1. Counts I through III are DISMISSED to the extent they are alleged against Headway; and

2. Counts IV and V are DISMISSED as to all defendants.

If Seagate Plaintiffs seek to amend for purposes of curing the deficiencies identified above, they shall file an amended complaint no later than September 18, 2020.

**IT IS SO ORDERED.**

Dated: August 26, 2020

MAXINE M. CHESNEY
United States District Judge