IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br>    ALL ACTIONS | Case No.  19-md-02918-MMC<br><br>**ORDER DENYING DEFENDANT SAE MAGNETICS (H.K.) LTD.'S MOTION TO DISMISS COMPLAINTS FOR LACK OF PERSONAL JURISDICTION** |

Before the Court is defendant SAE Magnetics (H.K.) Ltd.'s ("SAE") "Motion to Dismiss Complaints for Lack of Personal Jurisdiction," filed April 17, 2020.  Seagate Plaintiffs, Reseller Plaintiffs, and End-User Plaintiffs have filed a joint opposition, to which SAE has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

The above-titled multidistrict litigation consists of claims asserted by three groups of plaintiffs:  (1) Seagate Plaintiffs, which allege they manufacture and sell hard disk drives ("HDDs"), (2) Reseller Plaintiffs, which allege they purchased HDDs for resale, and (3) End-User Plaintiffs, who allege they purchased HDDs, or products containing HDDs, for personal use.  In each of the three operative complaints, plaintiffs allege that SAE and the other named defendants entered into a conspiracy to fix the prices of suspension assemblies, which commodities are necessary components of HDDs, and that plaintiffs,

---

[1] By order filed July 10, 2020, the Court took the matter under submission.

1  as a result, paid supracompetitive prices for suspension assemblies or products that
2  included suspension assemblies.  Based on said allegations, plaintiffs assert antitrust
3  claims under the Sherman Act and various state statutes as well as claims under state
4  laws prohibiting unfair competition.

By the instant motion SAE, which is located in Hong Kong, argues the claims alleged against it in the three complaints are subject to dismissal for lack of personal jurisdiction.

## LEGAL STANDARD

To exercise personal jurisdiction over a defendant, "due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantive justice."  See Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation and citation omitted).  "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction."  Id.

A court has specific jurisdiction over a defendant if (1) "the defendant has purposefully directed his activities at residents of the forum," (2) "the litigation results from alleged injuries that arise out of or relate to those activities," and (3) the exercise of jurisdiction over the defendant would not be "unreasonable."  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 477 (1985) (internal quotation and citation omitted).[2]

"The plaintiff bears the burden on the first two prongs."  Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).  To meet its burden, "the plaintiff need only make a prima facie showing of the jurisdictional facts."  See id. at 1015.  Where a defendant does not rely on evidence to contradict the complaint, the "allegations in the plaintiff's complaint must be taken as true," see id., and the complaint is subject to dismissal only if the factual allegations, assumed true, are insufficient to support a finding that the plaintiff's claim arises "out of sufficient minimum contacts with [the forum]," see Butcher's

---

[2] Plaintiffs do not assert the Court has general jurisdiction over SAE.

1  Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 540 (9th Cir. 1986).  Where

2  a defendant offers evidence to controvert the factual allegations in the complaint, the

3  plaintiff must offer evidence that "support[s] a finding of jurisdiction."  See Data Disc, Inc.

4  v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  In either

5  instance, if the plaintiff makes the requisite prima facie showing, the defendant has the

6  burden to "present a compelling case that the presence of some other considerations

7  would render jurisdiction unreasonable."  See Burger King, 471 U.S. at 477.

## DISCUSSION

### A. Sherman Act Claims

The Court first considers whether personal jurisdiction exists as to the Sherman Act claims asserted by plaintiffs against SAE, which claims, as set forth above, are based on SAE's alleged entry into the above-referenced price-fixing conspiracy.  See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (2004) (holding "[p]ersonal jurisdiction must exist for each claim asserted against a defendant").

#### 1. Purposeful Direction

As explained above, a plaintiff, to establish a court's jurisdiction over a defendant, must first show the defendant purposefully directed its activities toward residents of the applicable forum.  For purposes of determining whether SAE has the requisite contacts with the forum, the Court considers SAE's contacts with the United States.  See GoVideo, Inc. v. Akai Electric Co., 885 F.2d 1406, 1407, 1417 (9th Cir. 1989) (holding, with respect to Sherman Act claims, courts "examine the [defendant's] national contacts" when determining whether personal jurisdiction exists).

In that regard, as the Ninth Circuit has observed, "[a] showing that a defendant purposefully directed [its] conduct toward a forum . . . usually consists of evidence of the defendant's actions outside the forum . . . that are directed at the forum, such as the distribution in the forum . . . of goods originating elsewhere."  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004).

Here, SAE, relying on evidence it "does not, and has never, sold, supplied, or

marketed HDD suspensions as stand-alone products in the United States or elsewhere" (see Lim Decl. ¶ 9), argues plaintiffs lack any basis to show SAE engaged in activities directed at the United States. In their opposition, plaintiffs do not contend SAE sold, supplied, or marketed "stand-alone" HDD suspension assemblies. Rather, plaintiffs offer evidence that, during the relevant time period, SAE, on a regular basis, sold to Seagate, as well as to other customers in the United States, head gimbal assemblies ("HGAs"), a component of HDDs. (See Sheanin Decl. Ex. B.) Additionally, plaintiffs offer evidence that SAE, during such period, conducted meetings in the United States with two of those customers. (See id. Exs. J, K.) Such evidence is sufficient to support a finding of purposeful direction. See Schwarzenegger, 374 F.3d at 803.

Accordingly, the Court finds plaintiffs have made a prima facie showing that SAE purposefully directed its activities toward residents in the United States.

**2. Relationship Between Claims and Defendant's Forum-Related Activities**

The next issue is whether the litigation results from alleged injuries arising out of or relating to the above-referenced activities, namely, SAE's sales of HGAs to customers in the United States. In that regard, SAE argues, HGAs are "not at issue in this matter" (see SAE's Reply at 1:5-7), and, consequently, any evidence of its HGA sales and sales activities in the United States do not support personal jurisdiction. As set forth below, the Court disagrees.

Plaintiffs offer evidence, undisputed by SAE, that "HGAs are an integrated component comprising suspension assemblies, a slider, and a read/write" (see Floeder Decl. ¶ 5), and that all HDDs contain HGAs (see Sheanin Decl. Ex. A (Doc. No. 228-2 p.9)) (describing HDD as device that writes or reads data using "magnetic head" and describing HGA as "component" of HDD that combines magnetic head and suspension assembly). Plaintiffs allege that SAE, prior to selling its HGAs, "coordinated" with other defendants, all of which then "agreed upon [the] prices" they would charge to customers who wished to purchase HGAs and/or suspension assemblies (see End-User Pls.' Consolidated Class Action Compl. ("End-User Pls.' Compl.") ¶ 137)), an allegation SAE

4

1    has not disputed.  Similarly, SAE has not disputed plaintiffs' allegation that SAE and other
2    defendants entered into agreements to "allocate" customers among themselves, such as
3    SAE's agreement with defendant Magnecomp Precision Technology ("MPT"), whereby
4    MPT agreed "not to quote pricing for a particular HDD suspension assembly project
5    directly to Samsung or Western Digital [and] instead allow[ed] SAE to quote pricing for
6    head gimbal assemblies that incorporated MPT's HDD suspension assemblies to those
7    customers."  (See End-User Pls.' Compl. ¶ 139; Reseller Pls.' Corrected Consolidated
8    Amended Compl. ¶ 78.)

9    Accordingly, the Court finds plaintiffs have made a prima facie showing that the
10   Sherman Act claims arise out of or relate to SAE's forum-related activities.

**3. Unreasonableness**

12   As noted, where, as here, a plaintiff makes a prima facie showing as to the first
13   two factors, the defendant "must present a compelling case that the presence of some
14   other considerations would render jurisdiction unreasonable."  See Burger King, 471 U.S.
15   at 477.  To determine whether a defendant has made such a showing, a court must
16   "balance" seven "factors," specifically, "(1) the extent of the defendant['s] purposeful
17   interjection into the forum state's affairs; (2) the burden on the defendant of defending in
18   the forum; (3) the extent of conflict with the sovereignty of the defendant['s] state; (4) the
19   forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution
20   of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient
21   and effective relief; and (7) the existence of an alternative forum."  See Core-Vent Corp.
22   v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

23   Here, SAE argues it would be unreasonable to require it to defend the instant
24   action in the Northern District of California, a venue "located some 5,000 miles from its
25   principal place of business, despite [its] lack of any sales of HDD suspensions in the
26   United States" (see Def.'s Mot. at 11:25), which argument the Court understands to
27   pertain to the second and first factors, respectively.

28   As set forth above, plaintiffs' claims arise out of SAE's sales of HGAs (which, as

noted include suspension assemblies) in the United States, not SAE's sales of stand-alone suspension assemblies, and, consequently, the Court finds the first factor weighs in favor of exercising jurisdiction. Although a reasonable inference can be drawn that SAE, given its location in Hong Kong, may, to some extent, find it burdensome to defend against claims in this district, SAE fails to identify any particular burden it would face, other than to note "the witnesses and evidence necessary to resolve [p]laintiffs' claims are likely located outside the United States in places like Hong Kong." (See id. at 111:28 - 12:2.) SAE has not, however, asserted, let alone shown, it would be unable to call any such witness or submit any such evidence if the matter were tried here. The second factor thus weighs, at best, only slightly against the exercise of jurisdiction. See Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1481 (9th Cir. 1986) (holding, unless "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction").[3] As to the third through seventh factors, SAE makes no argument, nor is it otherwise apparent any such factor weighs against the exercise of jurisdiction.

Accordingly, the Court finds SAE has failed to make a compelling showing that the exercise of jurisdiction in the Northern District of California would be unreasonable.

### c. Summary

SAE has not shown the Sherman Act claims asserted against it are subject to dismissal for lack of personal jurisdiction.

## B. State Law Claims

In their respective complaints, plaintiffs assert claims arising under state antitrust statutes and state statutes prohibiting unfair competition. All such state law claims are

---

[3] Moreover, as plaintiffs point out, SAE, in a patent infringement action filed in the Western District of Pennsylvania, took the position that it should not be subject to personal jurisdiction in that forum because it was "amenable to suit in California." See Lambeth Magnetic Structures, Inc. v. Toshiba Corp., 2017 WL 782892, at *6 (W. D. Penn. March 1, 2017).

based on the same facts as those upon which plaintiffs base their Sherman Act claims. Under such circumstances, the Court finds it appropriate to exercise pendent personal jurisdiction over the state law claims. See Action Embroidery Corp., 368 F.3d at 1180-81 (holding district court has discretion to exercise "pendent personal jurisdiction" over claim "aris[ing] out of a common nucleus of operative facts with a claim . . . over which the court does have personal jurisdiction").[4]

Accordingly, SAE has not shown the state law antitrust and unfair competition claims asserted against it are subject to dismissal for lack of personal matter jurisdiction.

## CONCLUSION

For the reasons stated above, SAE's motion to dismiss for lack of personal jurisdiction is hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 31, 2020

MAXINE M. CHESNEY
United States District Judge

---

[4] Seagate Plaintiffs also assert against SAE a claim for breach of contract, which claim is based on SAE's alleged breach of the terms of a nondisclosure agreement. By order filed August 26, 2020, the Court dismissed that claim with leave to amend. If realleged in an amended complaint, the Court finds, for the reasons stated by plaintiffs, SAE has consented to personal jurisdiction with respect to such claim in light of the forum selection clause set forth in the nondisclosure agreement.