| | |
|---|---|
| **HUNTON ANDREWS KURTH LLP**<br>Craig Y. Lee (pro hac vice)<br>craiglee@huntonak.com<br>Carter S. Simpson (pro hac vice)<br>csimpson@huntonak.com<br>2200 Pennsylvania Ave., NW<br>Washington, DC 20037<br>Telephone: (202) 955-1500<br>Facsimile: (202) 778-2201 | **MORGAN, LEWIS & BOCKIUS LLP**<br>J. Clayton Everett, Jr., (pro hac vice)<br>clay.everett@morganlewis.com<br>Scott A. Stempel, (pro hac vice)<br>scott.stempel@morganlewis.com<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone: (202) 739-3000<br>Facsimile: (202) 739-3001 |
| **HUNTON ANDREWS KURTH LLP**<br>Ann Marie Mortimer (State Bar No. 169077)<br>amortimer@huntonak.com<br>550 South Hope Street, Suite 2000<br>Los Angeles, CA 90071-2627<br>Telephone: (213) 532-2000<br>Facsimile: (213) 532-2020 | **MORGAN, LEWIS & BOCKIUS LLP**<br>C. Cecilia Wang (State Bar No. 314125)<br>cecilia.wang@morganlewis.com<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: (415) 442-1000<br>Facsimile: (415) 442-1001 |
| Attorneys for Defendants NHK Spring Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring (Thailand) Co., Ltd., NHK International Corp. | Attorneys for Defendants TDK Corporation, Headway Technologies, Inc., SAE Magnetics (H.K.) Ltd., Hutchinson Technology, Inc., and Magnecomp Precision Technology Public Co. Ltd. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Seagate Technology LLC, et al. v. Headway Technologies, Inc., et al.* | CASE NO.: 3:19-MD-02918-MMC<br>　　　　　　3:20-CV-01217-MMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SEAGATE'S AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　December 4, 2020<br>Time:　　　9:00 a.m.<br>Crtrm:　　　7, 19th Floor<br>Before:　　　Hon. Maxine M. Chesney |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that pursuant to this Court's September 30, 2020 Order, on December 4, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7, located on the 19th Floor of this Court, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Maxine M. Chesney, Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd. (collectively, "NHK"), TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., SAE Magnetics (H.K.) Ltd., and Headway Technologies, Inc. ("Headway" and, collectively, "TDK"), and Hutchinson Technology Inc. ("HTI"), will and hereby do move the Court to dismiss Counts IV and V of Seagate Technology, LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International's (collectively, "Seagate") Amended Complaint, Dkt. No. 271, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant Headway moves to dismiss all claims of the Seagate Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion seeks dismissal with prejudice of Counts IV and V as to all Defendants and dismissal with prejudice of all claims against Headway.

This Motion is supported by the accompanying Memorandum of Points and Authorities and [Proposed] Order filed herewith, the pleadings and papers on file herein, and such other matters that may be presented to the Court at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Seagate can state a claim under the Minnesota Antitrust Law of 1971 when Seagate alleges no purchases of HDD Suspensions from Defendants in Minnesota and does not allege a nexus with Minnesota sufficient to establish Article III standing.
2. Whether Seagate can state a claim for breach of contract without alleging what constitutes "confidential information" under the pertinent agreements and without alleging facts showing that any breach proximately caused Seagate's alleged damages or injury.
3. Whether Seagate can state a claim against Headway without alleging that Headway had any involvement in the alleged wrongdoing.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT.......................................................................................................................................2

    I.    Seagate Fails to Allege Facts Sufficient to Support Application of the Minnesota Antitrust Law of 1971. ......................................................................................2

        A.    Seagate has not stated a claim under Minn. Stat. § 325D.54(a) or (b), which only permit a plaintiff to recover for in-state purchases. .........................2

        B.    Seagate also fails to establish that it has standing under Article III of the U.S. Constitution to bring claims under Minnesota state law......................5

    II.    Seagate Again Fails to State a Breach of Contract Claim. ............................................7

        A.    Seagate Fails to Allege Breach Because it Does Not Identify What Constitutes "Confidential Information" Under Any Agreement. .......................7

        B.    Seagate Fails to Adequately Allege Proximate Cause.......................................7

    III.    Seagate Fails to Adequately Allege Headway's Involvement in the Alleged Conspiracy ........................................................................................................................9

CONCLUSION....................................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases** ............................................................................................................................. **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 2

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................................................ 2

*In re Capacitors Antitrust Litig.*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015) ........................................................................ 3, 4, 5, 6

*City of St. Paul v. FMC Corp.*,
  No. 89-cv-466, 1990 WL 265171 (D. Minn. February 27, 1990) ....................................... 2, 3

*In re Glumetza Antitrust Litig.*,
  No. 19-5822, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020) .................................................... 6

*Kumaraperu v. Feldsted*,
  237 Cal. App. 4th 60 (2015) ................................................................................................ 8, 9

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13 MD 2420, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ........................................... 10

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................ 5

*McAfee v. Francis*,
  No. 11 Civ. 821, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) .............................................. 7

*McLaughlin Equip. Co., Inc. v. Servaas*,
  No. IP98-0127-C-T/K, 2004 WL 1629603 (S.D. Ind. Feb. 18, 2004) .................................... 5

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ................................................................................................ 6

*In re Packaged Seafood Prod. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) ................................................................................ 10

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ..................................................................................... 7

*Raines v. Byrd*,
  521 U.S. 811 (1997) ................................................................................................................ 5

*Sheet Metal Workers Local 441 v. GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................................................... 2

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
  1101 Cal. App. 4th 1038 (2002) ............................................................................................. 7

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ....................................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................................................9

*US Ecology, Inc. v. State of Cal.*,
    129 Cal. App. 4th 887 (2005) ..................................................................................................8

**Statutes**

Minn. Stat. § 325D..............................................................................................................2, 3, 4, 5

Minnesota Antitrust Law of 1971 ............................................................................................ *passim*

Minnesota Antitrust Law of 1990 .....................................................................................................3

**Other Authorities**

U.S. Constitution Article III.......................................................................................................... *passim*

Pursuant to Rule 12(b)(6), Defendants NHK Spring Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring (Thailand) Co., Ltd., NHK International Corp. (collectively, "NHK") and TDK Corporation, Headway Technologies, Inc. ("Headway"), SAE Magnetics (H.K.) Ltd., Hutchinson Technology, Inc., and Magnecomp Precision Technology Public Co. Ltd.(collectively "TDK") respectfully submit this Memorandum of Law in Support of their Joint Motion to Dismiss Counts IV and V of the Amended Complaint filed by Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International (collectively, "Seagate") for failure to state a claim and motion by Headway to dismiss all claims.

**PRELIMINARY STATEMENT**

Seagate still fails to state a claim against any defendant under Minnesota law or for breach of contract and fails to state any claims against Headway. The Court dismissed these same claims just a few months ago, and Seagate's Amended Complaint does not address the deficiencies Defendants previously identified. On August 26, 2020, this Court granted Defendants' Motion to Dismiss Counts IV (Minnesota antitrust law) and V (breach of contract) for failure to state a claim. For the Minnesota antitrust law claim, the Court reasoned that "the complaint includes no factual allegations to support a finding that any Seagate Plaintiff purchased suspension assemblies in Minnesota." ECF No. 260 at 3 ("MTD Order"). For the breach of contract claim, the Court found that "the complaint does not include factual allegations that, if true, would establish a 'causal connection' between the asserted exchanges of Seagate Plaintiffs' confidential information and the claimed damages." *Id.* at 4. With respect to the claims against Headway, which is not named as a defendant in either of the class actions, the Court acknowledged that Seagate did "not identify any allegations in the complaint providing a basis for Headway's liability." *Id.* at 5.

On September 18, 2020, Seagate filed an Amended Complaint that included the same Minnesota antitrust law and breach of contract claims, and continued to name Headway as a defendant. The Amended Complaint contains new allegations, but Seagate still fails to state a claim under the Minnesota Antitrust Law of 1971, for breach of contract, or against Headway. The Amended Complaint still does not allege that Seagate made any purchases of relevant products in

Minnesota. The Amended Complaint does not allege what constitutes "Confidential Information" under any specific agreement, and does not adequately allege that any breach of contract proximately caused its only claimed injury: paying supracompetitive prices for suspension assemblies. Finally, the Amended Complaint still fails to offer any factual allegations that show Headway was anything more than a TDK subsidiary used to acquire HTI, which is insufficient to show that Headway was involved in the alleged antitrust conspiracy. Because Seagate fails to adequately address the specific defects that Defendants previously identified, the claims should again be dismissed, this time with prejudice.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Even after taking the opportunity to amend, Seagate has not met this standard.

**I.     Seagate Fails to Allege Facts Sufficient to Support Application of the Minnesota Antitrust Law of 1971.**

Seagate has not alleged in the Amended Complaint, and apparently cannot allege, that it purchased suspension assemblies from Defendants in Minnesota. This fact is fatal to Seagate's claim under the Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.49-.66, which applies only to purchases that a plaintiff made in Minnesota. Having failed for a second time to include this crucial fact, Seagate's Count IV should now be dismissed with prejudice.

**A.     Seagate has not stated a claim under Minn. Stat. § 325D.54(a) or (b), which only permit a plaintiff to recover for in-state purchases.**

The Minnesota Antitrust Law of 1971 provides a cause of action for price fixing where "(a) any contract, combination, or conspiracy when any part thereof was created, formed, or entered into in this state; and (b) . . . whenever any of the foregoing affects the trade or commerce of this state." Minn. Stat. § 325D.54, "Scope of Act." There is no allegation in the Amended Complaint that any part of the alleged conspiracy was "created, formed or entered into" in Minnesota, so

<007C>

subsection (a) is inapplicable. Courts considering claims under subsection (b) interpret the "trade or commerce" language to require that the plaintiff made purchases of the subject commodity in Minnesota in order to fall within the ambit of the Act. *See City of St. Paul v. FMC Corp.*, No. 89-cv-466, 1990 WL 265171, at *7 (D. Minn. February 27, 1990) (finding § 325D.54(b) applies only to "purchases made" in Minnesota; dismissing claim based on purchases in other states)[1]; *Sheet Metal Workers Local 441 v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 396-97 (E.D. Pa. 2010) (finding § 325D.54(b) satisfied where plaintiffs "purchased and paid for Wellbutrin SR in Minnesota"). And regardless which subsection is invoked, a plaintiff is still only permitted to recover for purchases made in Minnesota. *See City of St. Paul*, 1990 WL 265171, at *7-8; *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (dismissing claim under § 325D and other states' antitrust laws because "[n]one of these statutes authorizes antitrust actions based on commerce in other states"). Thus, an in-state purchase of the subject good is essential to support a claim under the Minnesota Antitrust Law.

Here, Seagate has not alleged that it purchased suspension assemblies in Minnesota. Instead, even though this issue is squarely addressed in the Court's prior decision dismissing Seagate's claim under the Minnesota antitrust law, Seagate alleges only that Defendants engaged in "***negotiations***" and "***supplied*** [suspension assemblies] to Seagate" in Minnesota. *See* Am. Compl. ¶¶ 154, 160 (emphases added); *see also id.* ¶ 155 (Minnesota-based employees were responsible for "***negotiating*** the pricing for and overseeing the acquisition of" suspension assemblies), ¶ 158 (Defendants "***shipped*** certain suspension assemblies" to Seagate in Minnesota) (emphases added).[2] Seagate

---

[1] In *City of St. Paul*, the plaintiff alleged a price-fixing conspiracy in violation of the Minnesota Antitrust Law and sought to represent a nationwide class of municipalities and public entities. The defendants moved for judgment on the pleadings, in part on the basis that claims arising out of purchases occurring outside of Minnesota were beyond the scope of the Minnesota Antitrust Law. 1990 WL 265171 at *3, *7. The court concluded that, although distant purchases in a "nationwide market . . . might be seen to affect the trade or commerce in Minnesota," (quotation omitted) the assertion of a claim under the Minnesota Antitrust Law requires "a tighter nexus between the anticompetitive activity and [] Minnesota purchases." *Id.* at *7. The court limited the scope of Minn. Stat. § 325D.54 to purchases within the state, consistent with the Minnesota legislature's "explicit purpose of protecting the trade or commerce of Minnesota." *Id.*

[2] Seagate also adds an allegation that it incorporated some of Defendants' suspension assemblies into HDDs that were then delivered in Minnesota. Am. Compl. ¶ 159. However, this allegation about

glaringly does not allege that it *purchased* the suspension assemblies that form the basis of its claim in Minnesota. In *In re Capacitors Antitrust Litig.*, this Court recognized the distinction between shipments and purchases for purposes of the reach of state antitrust laws. 154 F. Supp. 3d 918 (N.D. Cal. 2015). There, the plaintiffs "sa[id] they have some states where defendants shipped allegedly price-fixed capacitors." *Id.* at 927. The Court, however, rejected that argument, holding that "[j]ust receiving deliveries of price-fixed goods *that were purchased elsewhere* does not constitute an Article III injury-in-fact under the antitrust or consumer protection laws."[3] *Id.* (emphasis added).

In dismissing the Minnesota Antitrust Law count from Seagate's original Complaint, this Court emphasized that "the complaint includes no factual allegations to support a finding that any Seagate Plaintiff *purchased* suspension assemblies in Minnesota." MTD Order at 3 (emphasis added). If Seagate made any such purchases, it would have alleged such purchases in its Amended Complaint. But whenever Seagate alleges that Defendants made actual sales to Seagate, the essential words—"*in Minnesota*"—are missing. *See* Am. Compl. ¶¶ 156, 164, 244-248 ("Seagate's Injuries").[4] The one exception is where an allegation combines Seagate together with other purported "purchasers," a sleight of hand that obscures that Seagate itself did not make purchases in Minnesota. *See id.* ¶ 280 (describing suspension assembles "sold to purchasers, including Seagate, in Minnesota and outside of Minnesota for hard disk drives delivered to Minnesota"). Seagate cannot artfully plead its way around an essential element.[5]

---

where HDDs Seagate made were shipped does not bear on whether Seagate itself made in-state purchases of the product.

[3] Although the Court reached this decision in connection with dismissing the complaint for lack of Article III standing, the same reasoning applies to the applicability to the claims of Minnesota law.

[4] Conversely, to the extent that Seagate includes any allegations about purchases in Minnesota, it does not allege that Seagate made those purchases. Every time Seagate alleges actual sales in Minnesota, two critical words—"*to Seagate*"—are missing. *See id.* ¶ 162 ("Defendant HTI . . . manufactured and sold suspension assemblies in Minnesota."), ¶ 222 ('Each Defendant . . . sold suspension assemblies . . . through and into Minnesota."). Even if Defendants sold suspension assemblies to some other entity in Minnesota, that would not be sufficient to support this claim by Seagate.

[5] Even if Seagate had alleged a purchase of suspension assemblies in Minnesota – and it has not – a claim under Minnesota antitrust law could be asserted only by the specific Seagate entity that made such purchases and to those specific purchases in Minnesota.

Nor has Seagate alleged facts to support any argument that § 325D.54(a) applies, namely, that the asserted conspiracy was created, formed, or entered into in Minnesota. With regard to conspiratorial conduct, Seagate alleges only that certain Defendants had employees based in Minnesota who exchanged competitively sensitive information. The earliest specific example of these exchanges is from 2005, *see* Am. Compl. ¶ 10, at least four years after the first year Seagate alleges that contacts between Defendants began. Seagate also states that these Minnesota-based employees were "deployed" and "tasked' by senior Defendant executives to exchange information, and that these senior Defendant executives "funneled confidential business information" through the Minnesota-based employees. *See id.* ¶ 165. These allegations are a far cry from what would be required to show that the conspiracy was "created, formed, or entered into" in Minnesota; nowhere does Seagate allege that the conspiracy was hatched or had its origins in Minnesota. Without more, Seagate cannot state a claim under § 325D.54(a).[6]

Seagate has not alleged facts sufficient to state a claim under Minnesota state antitrust law. The absence of an allegation of a qualifying purchase in the first instance, combined with Seagate's renewed failure to include one now, confirms that dismissal of Count IV with prejudice is appropriate.

> **B.   Seagate also fails to establish that it has standing under Article III of the U.S. Constitution to bring claims under Minnesota state law.**

Seagate also does not allege the requisite connection to the state of Minnesota to satisfy the requirements of Article III of the U.S. Constitution. Under Article III, a federal court may adjudicate an action only if it constitutes a justiciable "case" or "controversy" that has real consequences for the parties. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Analysis of Article III standing is distinct from the state law statutory analysis. *See Capacitors*, 154 F. Supp. 3d at 926 ("[W]hether or not the state

---

[6] Even if Seagate had alleged that the conspiracy was created, formed or entered into in Minnesota – which it cannot – its failure to allege purchases in Minnesota would still prohibit it from pursuing this claim. *See McLaughlin Equip. Co., Inc. v. Servaas*, No. IP98-0127-C-T/K, 2004 WL 1629603, at *32 (S.D. Ind. Feb. 18, 2004) (noting plaintiff needed to show effect on trade or commerce where it had not alleged that the defendants "entered into a conspiracy" in Minnesota); (see *infra* Part II.a.2).

statutes 'call for' an in-state injury or purchase says nothing about whether or not such an injury is required under Article III.").

Courts interpret Article III to require an "injury in fact," *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992), and there is a "strong trend in this district and in other courts . . . to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims." *Capacitors*, 154 F. Supp. 3d at 926 (collecting N.D. Cal. cases).[7] These courts reason that, "[a]t bottom, 'the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.'" *In re Glumetza Antitrust Litig.*, No. 19-5822, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015)).  Where "the injury alleged is the overcharge at each purchase . . . the scope of [Article III] standing is limited to the locations of the purchases." *Id*.

Here, Seagate alleges an overcharge at each purchase:  "[A]s a direct and proximate result of the Defendants' unlawful conduct and subsequent sales of suspension assemblies at supracompetitive prices, Seagate has been injured in its business and property, in that it paid more for suspension assembles than it otherwise would have paid in the absence of Defendants' unlawful conduct." Am. Compl. ¶ 174.  But Seagate seems to recognize that it cannot make this claim of overpayment in Minnesota:  while it expressly alleges a Seagate overpayment under every other count, *id.* ¶¶ 258, 267, 276, 294, **Seagate does not allege a direct impact on Seagate** in Count IV.  *See id.* ¶ 283 (alleging only that Defendants' violation of Minnesota Antitrust Law "had a substantial and foreseeable effect on trade and commerce in Minnesota by raising and fixing prices for suspension assemblies throughout Minnesota and elsewhere.").

Because Seagate has not alleged that it purchased suspension assemblies from Defendants in Minnesota, and because Seagate has not even attempted to allege that it was injured in Minnesota, it has not established injury-in-fact and, thus, lacks Article III standing to bring a claim under the Minnesota Antitrust Law.  Seagate's Count IV should be dismissed with prejudice.

---

[7] In *Capacitors*, which concerned allegedly price-fixed electronic device components, the court dismissed claims under the laws of 31 states, finding that "in-state injury in the form of an in-state purchase of a capacitor at a supra-competitive price is required here to satisfy Article III standing for each of the state law claims asserted." 154 F. Supp. 3d at 927.

## II. Seagate Again Fails to State a Breach of Contract Claim.

### A. Seagate Fails to Allege Breach Because it Does Not Identify What Constitutes "Confidential Information" Under Any Agreement.

Seagate's breach of contract claim fails because, even after repleading, the Amended Complaint does not allege what constitutes "Confidential Information" under any of the non-disclosure agreements ("NDAs") and Supplements for Disclosure at issue.  To state a claim for breach of contract, Seagate must allege the essential terms with specificity.  *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (dismissing claim for breach of non-disclosure agreements when the plaintiff did not plead the substantive terms of those agreements); *McAfee v. Francis*, No. 11 Civ. 821, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011).  Seagate's Amended Complaint conspicuously avoids alleging how the NDAs and Supplements for Disclosure define "Confidential Information," although it recognizes that "Confidential Information" is specifically defined in those agreements.

Seagate fails to plead facts showing that the information allegedly disclosed between TDK and NHK was protected by contract.  Seagate's Amended Complaint alleges that the various NDAs at issue apply "to protect *certain* confidential and proprietary information ('Confidential Information')."  Am. Compl. ¶¶ 181, 186, 191, 194, 199 (emphasis added).  Seagate also alleges that Seagate LLC "entered periodic Supplements for Disclosure describing *categories* of confidential information the parties proposed to disclose."  *Id.* ¶ 176 (emphasis added).  But Seagate never alleges what that "certain" confidential information is, or what falls into the "category" of confidential information.  Indeed, Seagate does not offer any factual allegations to show that any information it contends was improperly exchanged between Defendants was protected from disclosure pursuant to the terms of any agreement.  Absent such an allegation, Seagate fails to articulate how any agreement was breached.  Accordingly, its claim for breach of contract should be dismissed.

### B. Seagate Fails to Adequately Allege Proximate Cause.

This Court found that Seagate's original Complaint failed to allege facts establishing causation.  *See* MTD Order at 4 (citing *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus*

*Lines Ins. Co.*, 1101 Cal. App. 4th 1038, 1060 (2002)).  Although Seagate has now dressed up its Amended Complaint with additional factual allegations, it has still not addressed the Court's concern about causation and has failed to plead this key element of its breach of contract claim.

To state its claim, Seagate needs to allege proximate cause—and there is nothing to suggest that a breach of contract proximately caused harm to Seagate here.  In California, "[a] proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage."  *US Ecology, Inc. v. State of Cal.*, 129 Cal. App. 4th 887, 909 (2005).  A substantial factor "is more than a slight, trivial, negligible, or theoretical factor in producing a particular result."  *Id.*  Notably, "[a]n event that enables harm ultimately to occur need not necessarily be a substantial factor in bringing about the harm."  *Kumaraperu v. Feldsted*, 237 Cal. App. 4th 60, 68 (2015) (warning that care must be taken to maintain a distinction between an immediate cause and a necessary antecedent).

The breach of contract claim Seagate alleges and the injury that Seagate seeks to address do not align.  The contracts at issue are NDAs and other agreements that limit the use of specifically identified information.  *See, e.g.*, Am. Compl. ¶¶ 176, 218.  The injury Seagate claims is supracompetitive prices charged by Defendants.[8]  *See, e.g., id.* ¶ 211.  Seagate's only bridge from one to the other is the alleged anticompetitive conduct that makes up the centerpiece of Seagate's Amended Complaint; Seagate's theory is that Defendants "carried out their price fixing and supply allocation conspiracy by . . . exchanging and using confidential information in breach of the [NDAs]. . . ." *Id.* ¶ 1.[9]

---

[8] Seagate tries to thread the needle by using multiple synonyms for the supracompetitive prices it alleges as injury, sometimes going so far as to call them "unjust enrichment."  However, the meaning of each of these terms is the same to Seagate.  *See* Am. Compl. ¶ 211 ("Seagate was damaged (and Defendants were ***unjustly enriched***). Defendants charged and Seagate ***paid supracompetitive prices*** for suspension assemblies . . . ." (emphasis added)); ¶ 294 ("Seagate has suffered actual damages in the form of ***unlawfully inflated prices for suspension assemblies***, and Defendants have been ***unjustly enriched*** at Seagate's expense.").

[9] Seagate itself blames the allegedly supracompetitive prices on anticompetitive conduct, even as it tries to articulate causation for its breach of contract claim. For example, Seagate alleges that Defendants circumvented its negotiation strategy "by sharing confidential information Seagate provided during negotiations, pursuant to the NDAs, ***and their planned responses to Seagate***." Am. Compl. ¶ 216 (emphasis added).  Seagate does not (and cannot) allege that Defendants' planned responses to Seagate were confidential information protected by the NDAs or other contracts.  This allegation is merely another statement of Seagate's ultimate theory, that breaching the NDAs

Against the warning from *Kumaraperu*, Seagate improperly equates "an event that enables harm" with a substantial factor. Seagate's Amended Complaint lists several alleged disclosures that it argues are "but for" causes of its harm. *See id.* ¶¶ 206, 215-16. But-for causation is not enough. In the face of the antitrust conspiracy Seagate alleges, it is specious for Seagate to claim that any breach of the confidentiality provisions was a "substantial factor" in causing allegedly supracompetitive prices to Seagate. Any breach of the NDAs or confidentiality provisions would be merely incidental. Seagate's breach of contract claim should be dismissed with prejudice because Seagate has again failed to adequately allege causation even after an opportunity to amend.

### III. Seagate Fails to Adequately Allege Headway's Involvement in the Alleged Conspiracy

Seagate's Amended Complaint fails to add any allegations to show Headway's involvement in the alleged conspiracy. Class Plaintiffs have not asserted claims against Headway and, in dismissing Seagate's claims against Headway, this Court recognized that, to state a claim, Seagate must allege facts that show Headway participated in the alleged wrongdoing. MTD Order at 5; *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009) (recognizing that a plaintiff must "make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy"). In opposition to the motion to dismiss, Seagate offered a theory that was nowhere alleged in its complaint, namely that Headway acquired HTI "to guarantee the scheme's continuing success by reducing the number of conspirators." MTD Order at 5 (quoting Seagate's Opposition). Seagate's Amended Complaint fails to offer any factual support for that theory.

The only factual allegations specific to Headway in the Amended Complaint are that it was based in the United States and used to acquire HTI, Am. Compl. ¶¶ 143, 144, and that certain senior executives at TDK Corp., the parent company of Headway, MPT and SAE also held positions at Headway, *e.g.*, *id.* ¶¶ 145-50. Those allegations fail to show Headway's involvement in the alleged conspiracy. Seagate's conclusory assertion that "Headway's acquisition of HTI was intended to guarantee the continued success of the long-running conspiracy" by making it easier for the

---

happened *while* Defendants were engaging in the anticompetitive conduct Seagate alleges, not that such a breach was the proximate cause of Seagate's stated harm.

remaining conspirators to coordinate and consult, *id.* ¶ 151, is not sufficient to state claims against Headway.

*First*, Seagate's Amended Complaint is internally inconsistent as to HTI's involvement. Seagate alleges that "HTI also was a knowing participant in the conspiratorial conduct." *Id.* ¶ 90. But at the same time Seagate alleges that HTI was a target of the alleged conspiracy and "subjected to coordinated efforts by TDK and NHK to weaken its market position" including that TDK and NHK worked to reduce HTI's market shares. *Id.* ¶ 65; *see, e.g., id.* ¶¶ 123, 127, 132. Crediting Seagate's allegations that HTI was a knowing participant in the alleged conspiracy, an object of that conspiracy cannot have been eliminating HTI.[10]

*Second*, even if Seagate's Amended Complaint had adequately alleged that eliminating HTI was part of the alleged conspiracy, the Amended Complaint fails to allege Headway's involvement. The only factual allegations in support of the argument that eliminating HTI was an object of the alleged conspiracy are based exclusively on communications between TDK and NHK. *Id.* ¶ 138. None of those allegations even mentions Headway, let alone shows that Headway was involved. Rather, the only allegation is that Headway was used as the acquiring entity for HTI and certain Headway executives also had roles at other TDK entities.[11] *Id.* ¶¶ 143, 145. Those allegations, however, fail to show Headway's involvement. Indeed, *In re Lithium Ion Batteries Antitrust Litigation* recognized that merely alleging the relationship between multinational affiliates did "not suffice to demonstrate that the American subsidiaries themselves made a conscious decision to conspire with their Korean or Japanese parents." No. 13 MD 2420, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014). Accordingly, the Court rejected "boilerplate assertions of an agency relationship with the parties whose participation in the conspiracy is more directly alleged" and dismissed claims

---

[10] And if HTI is not alleged to have participated in the alleged conspiracy, claims against HTI should be dismissed or at the very least narrowed to only the period in which it was involved.

[11] Executives having multiple roles across members of a corporate family is neither surprising nor unusual. It is not a basis for showing Headway's involvement in the alleged conspiracy. *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1146 (S.D. Cal. 2018) ("The overlap of board members or executive officers here does not demonstrate that [parent] exercised day to day control over the operations of [subsidiary].").

against United States subsidiaries.  *Id.*  Here, too, because Seagate does not allege that Headway consciously participated in the alleged conspiracy, the claims against it should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Counts IV and V of the Seagate Amended Complaint and all claims against Headway with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

| | | |
|---|---|---|
| Dated: October 21, 2020 | | **HUNTON ANDREWS KURTH LLP** |
| | By: | /s/ Craig Y. Lee |
| | | Craig Y. Lee |
| | | Ann Marie Mortimer |
| | | Counsel for Defendants NHK Spring Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring (Thailand) Co., Ltd., NHK International Corp. |
| Dated: October 21, 2020 | | **MORGAN, LEWIS & BOCKIUS LLP** |
| | By: | /s/ J. Clayton Everett, Jr. |
| | | J. Clayton Everett, Jr. |
| | | Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd. |

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 21, 2020                         By:   /s/ Craig Y. Lee

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2020, I caused to be electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Northern District of California by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

/s/ Craig Y. Lee
Craig Y. Lee