MORGAN, LEWIS & BOCKIUS LLP
J. Clayton Everett, Jr. (*pro hac vice*)
clay.everett@morganlewis.com
Scott A. Stempel (*pro hac vice*)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
Alexander J. Scolnik (*pro hac vice*)
alexander.scolnik@morganlewis.com
101 Park Avenue
Tel: (212) 309-6000
Fax: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
Jordan Mundell, SBN 324110
jordan.mundell@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants TDK Corporation,
Magnecomp Precision Technology Public Co.
Ltd., Headway Technologies, Inc., Magnecomp
Corporation, SAE Magnetics (H.K.) Ltd., and
Hutchinson Technology Inc.*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  Hard Disk Drive Suspension Assemblies<br><br>Antitrust Litigation<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.    19 MD 2918 (MMC)<br><br>**DEFENDANTS' MOTION FOR A SCHEDULING ORDER**<br><br>Date:        December 4, 2020<br>Time:       9:00 a.m.<br>Crtrm:     7, 19th Floor<br>Before:    The Hon. Maxine M. Chesney |

1

**NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that on December 4, 2020 at 9:00 a.m. in Courtroom 8, 19th

3 Floor, 450 Golden Gate Ave., San Francisco, before the Hon. Maxine M. Chesney, Defendants

4 TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Headway Technologies,

5 Inc., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology Inc.

6 (collectively, "TDK") and NHK Spring Co., Ltd., NHK International Corporation, NHK Spring

7 (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co.,

8 Ltd. (collectively, "NHK") will and hereby do move the Court for an order establishing a

9 schedule that provides for (1) Defendants to make a motion for partial summary judgment based

10 on the discrete, threshold issue of whether the Foreign Trade Antitrust Improvements Act, 15

11 U.S.C. § 6a ("FTAIA") and other laws limiting the extraterritorial reach of U.S. antitrust laws

12 forecloses Plaintiffs' claims based on sales of HDD Suspensions outside the United States, and

13 (2) phased discovery to allow the parties to focus discovery on facts necessary for such a motion

14 while avoiding costly and burdensome discovery on other issues that may be unnecessary if

15 Defendants' motion is successful.

16       This two-phase approach, previously implemented in this District in *In re Capacitors*

17 *Antitrust Litigation*, No. 14-CV-03264-JD, 2016 WL 5724960 (N.D. Cal. Sept. 30, 2016), is

18 appropriate for these consolidated cases because it will allow for the efficient and early

19 determination of whether, and the extent to which, Plaintiffs may pursue claims under United

20 States law predicated on Defendants' sale of hard disk drive suspension assemblies ("HDD

21 Suspensions") outside the United States. Because the vast majority of Defendants' HDD

22 Suspension sales were made outside the United States, the extraterritorial application of U.S.

23 federal and state antitrust laws is a central issue in these matters. Proceeding with discovery

24 addressing that issue first may lead to the efficient and prompt resolution of substantial portions

25 of these cases and a substantial narrowing of the scope of the issues.

26       Accordingly, Defendants respectfully request that the Court enter the proposed schedule,

27 attached as Appendix A hereto, which permits Defendants to make a motion for summary

28 judgment based on the FTAIA, provides a briefing schedule for such motion, and requires that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:16-cv-06385-WHA
DEFENDANTS' MOTION FOR A SCHEDULING ORDER

1    discovery proceed in phases so that the parties can resolve the threshold issue of the applicability

2    of the FTAIA without the need for costly and burdensome discovery that may prove unnecessary.

3    Defendants' proposed schedule will promote the efficient conduct of these cases and avoid "years

4    of staggeringly costly multinational discovery," *In re Capacitors Antitrust*, 2016 WL 5724960, at

5    *2, that may never be necessary.  It will also not prejudice Plaintiffs, who have already received

6    nearly half a million pages of documents in discovery that were produced to antitrust regulators

7    focused on the conduct that underlies their claims.

8            The Motion is supported by this Notice of Motion, the Memorandum of Points and

9    Authorities that follows, the accompanying Declaration of J. Clayton Everett, all of the Court's

10   files and records in this action, and such other and further argument as the Court may require.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR A SCHEDULING ORDER

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 16 and the Court's Standing Order ¶ 7, Defendants respectfully request that the Court enter the proposed schedule attached as Appendix A hereto, that (1) provides for an early motion for partial summary judgment addressing the extraterritorial application of the U.S. federal and state antitrust laws underlying Plaintiffs' claims, and (2) phases discovery to focus first on issues necessary to decide the contemplated motion for partial summary judgment.[1]

**RELEVANT BACKGROUND**

This antitrust case predominantly concerns foreign sales of HDD Suspensions.  The vast majority of Defendants' sales of HDD Suspensions during the relevant period were sold and shipped to purchasers, primarily HDD manufacturers, outside the United States.  *See, e.g.*, End-User Compl. ¶¶ 149-151.  Plaintiffs allege that those sales were the subject of agreements to fix or raise prices, and seek recoveries under U.S. federal and state antitrust laws for alleged inflation of the prices charged on those sales.

HDD manufacturers that largely paid for and received shipment of HDD Suspensions outside the United States incorporated the HDD Suspensions into hard disk drives ("HDDs"), which were largely sold to further downstream purchasers, including original equipment manufacturers ("OEMs"), that also largely received and paid for the HDDs outside the United States.  *Id.* ¶ 151.  OEMs then incorporated HDDs into finished products (*e.g.*, computers) outside the United States and sold those finished products to distributors, retailers, and consumers around the world.  *Id.* ¶ 153.  HDD Suspensions typically sold for less than a dollar during the relevant period and comprised a relatively small percentage of the total cost of the HDDs in which they are incorporated, and an even smaller percentage of the cost of the broad variety of end user devices incorporating HDDs (*e.g.*, laptop computers).  Plaintiffs allege that Defendants sold HDD Suspensions at inflated prices and caused overcharges to be passed down through each subsequent level of commercial manufacturing and distribution to eventually cause an overcharge

[1] Defendants note that their motion to dismiss, ECF No. 192, remains pending.  If granted, that motion will resolve all claims filed by End User Plaintiffs and Reseller Plaintiffs, making this motion moot as to those Plaintiffs.

in the price IPPs paid for the finished products.[2]  *See* Seagate Compl. ¶ 244; Reseller Compl. ¶ 117; End-User Compl. ¶ 166.

Even though the Court initially stayed discovery, ECF No. 3 at 3, Defendants agreed to produce materials that had previously been provided to regulators in connection with investigations into the conduct that forms the basis for the claims asserted in this litigation.  *See* ECF No. 150 at 10; ECF No. 159.  Defendants ultimately produced over 430,000 pages of documents that they had provided to regulators.  In May, the Parties stipulated to lift the stay on discovery, subject to entering an appropriate order on the conduct of discovery.  ECF No. 213 at 3.

Since the Court lifted the stay on discovery, Plaintiffs have served broad interrogatories, requests for admission, and requests for production on numerous issues, many of which call for wide-ranging information that is burdensome to provide and unnecessary to determine whether, and the extent to which, the claims Plaintiffs assert may be applied to Defendants' sales outside the United States.  For example, among the 86 separate requests for production that Plaintiffs jointly served on Defendants, Plaintiffs seek all documents "reflecting, memorializing, constituting, or referring to" Defendants' pricing decisions for HDD Suspensions manufactured and sold outside the United States, and shipped to entities located abroad.  *See* Declaration of J. Clayton Everett in Support of Defendants' Motion for a Scheduling Order (October 21, 2020), Ex. 1 ("Everett Decl.").  Plaintiffs have further served interrogatories on a broad range of topics, including requests for detailed accounts of all communications and agreements between Defendants.  *Id.* at Exs. 2-4.  Plaintiffs most recently served 75 requests for admission on TDK and 81 requests for admission on NHK.  *Id.* at Exs. 5-6.  These discovery requests require the collection of information from multiple entities throughout Asia who are named as defendants, information that is unnecessary to resolve whether the vast majority of the sales at issue are even subject to U.S. law under the FTAIA or other limits on extraterritorial application of domestic

---

[2] IPPs are, at a minimum, at the third- or fourth-level in the chain of distribution as explained in Defendants' pending motion to dismiss.  *See* ECF No. 192 at 3-4.  There is a long and complex distribution chain between Defendants' sales of HDD Suspensions and the purchases on which IPPs' claims are premised, with most of that distribution chain occurring outside the United States.  *Id.*

antitrust laws.

Defendants explicitly flagged their intention to file an early motion for summary judgment based on the FTAIA to "narrow Plaintiffs' claims to only what is permissible under the Sherman Act" in the Joint Management Conference Statement filed on May 22, 2020, and Plaintiffs expressed their opposition to that proposal.  ECF No. 220 at 9.  On August 28, 2020, Defendants sought Plaintiffs' consent to phase discovery as outlined in the Motion and contemplated making such a request during the status conference that had been scheduled for September 11, 2020.  *See* Everett Decl. ¶ 4.

On September 2, 2020, Defendants served their responses and objections to Plaintiffs' first set of requests for production and interrogatories, which objected that responses to certain discovery requests were premature and should be provided only after the extraterritoriality issue is resolved.  *Id.* ¶ 5.  Plaintiffs have advised that they do not consent to any phasing of discovery to enable prompt resolution of whether the majority of sales at issue here are beyond the reach of the domestic antitrust claims they assert.  *Id.* ¶ 6.

## **ARGUMENT**

District courts have "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").  Under the Federal Rules, courts are empowered to phase discovery so that potentially dispositive or narrowing discovery is taken first, before other matters are joined.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) (citing 8 Wright & Marcus, *Federal Practice & Procedure* § 2040 (2d ed. 1994)).  Here, the Court should permit Defendants to make an early motion for partial summary judgment to resolve whether Plaintiffs' claims based on foreign sales of HDD Suspensions can proceed and provide for phased discovery that enables the resolution of that issue while avoiding burdensome and potentially unnecessary discovery on unrelated issues.

Various laws and doctrines limit the extraterritorial reach of United States antitrust laws, including the FTAIA.  Application of those laws and doctrines requires resolution of limited

1    factual issues, focused primarily on (a) determining the markets in which Defendants' sales of

2    allegedly affected products were made and (b) the nature and extent of any effects on U.S.

3    commerce.  *See, e.g.*, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004)

4    (pursuant to the FTAIA, "all (nonimport) activity involving foreign commerce [is] outside the

5    Sherman Act's reach" unless " the conduct *both* (1) sufficiently affects American commerce, *i.e.*,

6    it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or

7    (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful,

8    *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim'"); *In re Capacitors Antitrust Litig.*,

9    2018 WL 4558265, at *3 (concluding that the reach of plaintiffs' antitrust claims under the

10   competition laws of California, Iowa, Michigan, Minnesota, and Nebraska is "coterminous with

11   the FTAIA.  No more and no less").  Because Plaintiffs' claims are based on an alleged

12   conspiracy to fix prices for HDD Suspensions primarily sold and shipped to purchasers outside

13   the United States, whether United States antitrust laws reach that conduct is a threshold issue that

14   should be resolved before burdensome discovery on other issues is allowed to proceed.

15       Courts in this district have recognized the utility in phasing discovery to first resolve the

16   applicability of the FTAIA in circumstances similar to those here.  *See In re Capacitors Antitrust*

17   *Litig.*, 2016 WL 5724960, at *1-2.  In *In re Capacitors*, direct and indirect purchasers filed suit

18   against "overseas manufacturers" of electrolytic and film capacitors "operating in Japan and other

19   parts of East Asia" for "conspir[ing] to fix prices and suppress competition in those markets."  *Id.*

20   Early in the proceedings, the Court recognized that "the FTAIA would play a pivotal role" in the

21   action, and decided to "address the FTAIA issues sooner rather than later" to avoid "years of

22   staggeringly costly multinational discovery."  *Id.*  The court set out to "resolve the parties'

23   FTAIA disagreements early enough to realize downstream efficiencies and economies in

24   discovery and class certification and other motions."  *Id.*  The court determined that the best way

25   to proceed would be to set a "phased approach" to discovery to "simplify and clarify resolution of

26   the FTAIA questions" in the first instance.  *Id.* at *2.  Here, too, the FTAIA plays a pivotal role

27   and resolving those issues first will avoid extensive and burdensome discovery.

28       As in *In re Capacitors*, Defendants' proposed phasing schedule (Appendix A) prioritizes

6

1  discovery on the potentially dispositive FTAIA issue and defers all other burdensome discovery

2  unrelated to that issue.  For example, many of Plaintiffs' broad and expansive discovery requests

3  seek information regarding the scope and content of Defendants' communications with each

4  other, the nature of agreements between Defendants, and the extent to which Defendants' conduct

5  caused prices to be elevated above competitive levels.  Such discovery, however, has no

6  relevance to determining the threshold issue of extraterritoriality, and Defendants should not be

7  subjected to such broad and burdensome discovery demands unless and until the case is properly

8  narrowed to only those sales to which U.S. antitrust law applies.[3]

9      Discovery should initially be limited to that which is necessary to determine whether

10  Plaintiffs' claims based on extraterritorial conduct can proceed, including the location of

11  Defendants' sales and shipments of HDD Suspensions, and the distribution chain for those

12  products, allowing for early consideration of the extraterritoriality issue.  *See, e.g.*, *In re*

13  *Capacitors Antitrust Litig.*, 2018 WL 4558265, at *4-7.  To the extent any claims proceed based

14  on specific transactions, any additional discovery can be narrowed to focus on the specific

15  communications and/or agreements that may have affected those particular transactions.[4]  Thus,

16  this approach is likely to significantly narrow the issues by obviating the need for extensive and

17  burdensome discovery on issues relating to extraterritorial conduct that is outside the reach of

18  Plaintiffs' claims under U.S. laws, and promote the early resolution of the actions.

19      The benefits of Defendants' proposed schedule far outweighs any potential prejudice to

20  Plaintiffs.  Defendants' proposal has the potential to lead to the swifter resolution of these actions.

21  And, even if some claims do survive summary judgment, Plaintiffs will face no significant

22

23  [3] Indeed, courts regularly phase discovery to avoid broad and potentially wasteful discovery or to

24  allow the parties to first focus on threshold issues.  *See, e.g.*, *Giglio v. Monsanto Co.*, No. 15-2279, 2016 WL 4098285, at *1 (S.D. Cal. Aug. 2, 2016) (granting motion to bifurcate discovery

25  because "conducting discovery in phases is an efficient solution that may prevent the parties from engaging in extremely broad and potentially wasteful discovery"); *In re Hanford Nuclear*

26  *Reservation Litig.*, 292 F.3d 1124, 1129 (9th Cir. 2002) (noting that district court properly granted motion to bifurcate and phase discovery to first focus on threshold issues relevant to

27  "anticipate[d] dispositive motions before proceeding further").

28  [4] Clarifying the scope of the claims potentially at issue may also facilitate productive settlement discussions.  *See, e.g.*, *In re Capacitors Antitrust*, 2016 WL 5724960, at *2 ("Early resolution might also help to spur settlement talks.").

1    prejudice from any possible delay because they seek money damages based on conduct that

2    ceased more than four years ago.[5]  Moreover, because Defendants have produced to Plaintiffs

3    materials that were provided to antitrust regulators investigating the precise conduct at issue here,

4    Plaintiffs already have more than 430,000 pages of documents relevant to their claims.

5    Particularly because Plaintiffs already have this large volume of relevant materials, there can be

6    no prejudice from first determining the appropriate scope of the claims based on application of

7    the FTAIA and other laws limiting the extraterritorial reach of U.S. antitrust law before allowing

8    further discovery.

9          On the other hand, without phased discovery, Defendants will face considerable,

10   unrecoverable, and potentially unnecessary discovery expenses before resolving this threshold

11   issue.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)

12   (recognizing that "the costs of discovery in [antitrust] actions are *prohibitive*" (emphasis added));

13   *see also In re Capacitors Antitrust*, 2016 WL 5724960, at *2 (phasing discovery to "address the

14   FTAIA issues sooner rather than later" avoids "years of staggeringly costly multinational

15   discovery").  The broad merits- and class-based discovery requests Plaintiffs have served on

16   Defendants will impose substantial burdens and expense on Defendants.  Full-fledged discovery

17   would require numerous depositions—most of which involve foreign deponents—the engagement

18   of multiple expert witnesses, and the production of a significant volume of documents by

19   Defendants, including, for example documents pertaining to *all* communications and agreements

20   between Defendants for *all* HDD Suspensions manufactured across an almost twenty-year period.

21   Defendants will be prejudiced by the need to immediately undergo the substantial expenditure of

22   resources necessary to address such broad and extensive discovery requests, even though the

23   Court may later determine that Plaintiffs' claims are barred by the FTAIA or other laws limiting

24   the exterritorial reach of U.S. antitrust law.

25         Defendants' request will avoid that situation.  For example, in *In re Capacitors*, after

26   engaging in limited, FTAIA-related discovery, the Court granted in part the defendants' motion

27

28   [5] IPPs have asserted a claim for injunctive relief.  However, for the reasons set forth in
     Defendants' pending motion to dismiss, that claim cannot proceed in light of the allegations that
     the conduct at issue ceased years ago.

1   for summary judgment and dismissed from the case all capacitors sold and shipped to purchasers

2   outside the United States that were subsequently sold to consumers located outside the United

3   States.  2018 WL 4558265, at *6.  As a result, the defendants avoided having to incur costly,

4   unnecessary expenses responding to discovery requests for claims that were ultimately dismissed.

5   So too here.  Even if the Court dismisses only some of Plaintiffs' claims, that may obviate the

6   need for Defendants to collect documents from particular custodians, may enable the parties to

7   limit the time period for certain discovery, or otherwise significantly narrow the scope of

8   discovery.  Thus, proceeding in this fashion promotes the Court's directive to "secure the just,

9   speedy, and inexpensive determination of every action and proceeding" without prejudice to any

10  party.  Fed. R. Civ. P. 1; *see also Curry v. Castillo*, 297 F.3d 940, 952 (9th Cir. 2002)

11  (recognizing that a court's inherent power to control its own docket is a critical part of its judicial

12  function).  For the reasons outlined above, Defendants respectfully request the Court enter an

13  order phasing discovery to resolve threshold issues arising under the FTAIA in the first instance,

14  scheduling an early motion for partial summary judgment on FTAIA issues, and then, if

15  necessary, focusing discovery on all remaining issues of fact.

16

17    Dated:      October 21, 2020                              Respectfully submitted,

18                                                                    */s/ J. Clayton Everett, Jr.*

19                                                             J. Clayton Everett, Jr.
                                                             MORGAN, LEWIS & BOCKIUS LLP
20                                                           1111 Pennsylvania Ave., NW
                                                             Washington, DC 20004
21                                                           Tel: (202) 739-5860
                                                             clay.everett@morganlewis.com
22
                                                             *Attorneys for Defendants TDK Corporation,*
23                                                           *Magnecomp Precision Technology Public Co.*
                                                             *Ltd., Headway Technologies, Inc.,*
24                                                           *Magnecomp Corporation, SAE Magnetics*
                                                             *(H.K.) Ltd., and Hutchinson Technology Inc.*
25

26

27

28

1

2

*/s/ Mark H. Hamer*

3 Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Ave., NW

4 Washington, DC 20006
Tel: (202) 452-7077

5 mark.hamer@bakermckenzie.com

6

*/s/ Craig Y. Lee*

7 Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW

8 Washington, DC 20037
Tel.: (202) 955-1500

9 craiglee@huntonak.com

10 *Attorneys for Defendants NHK Spring Co.,*
*Ltd., NHK International Corporation, NHK*

11 *Spring (Thailand) Co., Ltd., NAT Peripheral*
*(Dong Guan) Co., Ltd. and NAT Peripheral*

12 *(H.K.) Co., Ltd.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 19 MD 2918
DEFENDANTS' MOTION FOR A SCHEDULING ORDER

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  October 21, 2020                                    By:  */s/ J. Clayton Everett, Jr.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of October, 2020, I caused to be electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Northern District of California by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

*/s/ J. Clayton Everett, Jr.*
J. Clayton Everett, Jr.