# EXHIBIT 1 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zelle.com

Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

*Interim Co-Lead Class Counsel for the*
*End-User Plaintiffs*

Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the*
*Reseller Plaintiffs*

Kenneth R. O'Rourke
**WILSON SONSINI GOODRICH &**
**ROSATI**
**Professional Corporation**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
korourke@wsgr.com

*Counsel for Seagate Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC |
| | MDL No. 2918 |
| THIS DOCUMENT RELATES TO<br><br>ALL ACTIONS | **PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

**PROPOUNDING PARTIES**:      End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs

**RESPONDING PARTY**:      NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.

**SET NUMBER:**      One

Pursuant to Federal Rules of Civil Procedure 26 and 34, End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs (collectively, "Plaintiffs") request that Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc. (collectively, "Defendants") respond to each of the following requests for production of documents and produce all responsive documents for inspection and copying within 30 days according to the Definitions and Instructions set forth herein. The manner and format of the production shall comply with the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents, ECF No. 218 and 218-1 ("ESI Protocol").

## I.  DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1**

Documents sufficient to show Your corporate structure or organization throughout the Relevant Time Period, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, or other sub-units that were engaged during any part of the Relevant Time Period in the manufacture, marketing, pricing, sale, or distribution of HDD Suspension Assemblies

or HDD Components Incorporating Suspension Assemblies including, where applicable, the percentage of any stock or other interests owned by each entity in the chain.

**REQUEST FOR PRODUCTION NO. 2**

As to each of Your divisions, subdivisions, departments, units, subsidiaries, parents, affiliates and joint ventures, Documents sufficient to identify each employee having any responsibilities or duties with respect to each of the following during the Relevant Time Period:

    (a)    the manufacturing or production of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies;

    (b)    the marketing of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies;

    (c)    the pricing of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies; and

    (d)    the sale or distribution of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies.

**REQUEST FOR PRODUCTION NO. 3**

Your transaction-level sales data (in machine-readable format such as *.csv, *.txt or other native flat file format) for all sales or transfers of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies anywhere in the world during the Structured Data Time Period, including:

    (a)    date of transaction, including date of order, date of invoice, date of shipment;

    (b)    invoiced or transferred (e.g., in the case of an intra-company transfer) unit price (including unit of measure);

    (c)    quantity sold (including negative values if relevant, such as the case of returns or credits);

    (d)    total amount of the transaction;

(e)     any adjustments to those amounts and prices, including discounts, rebates, credits, debits, returns, or other payments You made to Your customer, free or discounted goods or other incentives You made or provided to Your customer;

(f)     the net price per unit and net total dollars paid by Your customer (after the application of any discounts or rebates);

(g)     freight charges associated with transaction, as well as an indication of whether that freight is contained in the transaction amount;

(h)     Incoterms, a/k/a International Commercial Terms: i.e., EXW, FOB, CIF, DDP, etc. and indication as to the version used;

(i)     any surcharge or discount associated with transaction, as well as an indication of whether surcharge or discount is accounted for in the transaction amount;

(j)     any tax or duty associated with transaction, as well as an indication of whether the tax or duty is accounted for in the transaction amount;

(k)     to the extent that the values in the sales data have been converted to U.S. dollars from other currencies, the exchange rate used to convert those values, as well as the original transaction currency;

(l)     product identifiers, including Your model number, part number/code or other unique identifying information for each product sold, Your customer's part number/code or other unique identifying information for each product purchased, product descriptions, customer product line descriptions, and any product categorizations (types or series) You use in the normal course of business;

(m)     all records and information sufficient to allow the product identifiers and the transaction data to be linked;

(n)     detailed breakdown of all cost components per unit or transaction, including:

         a.   the cost of raw materials used in manufacture;

         b.   labor, manufacturing and general overhead;

         c.   any depreciation allocated to the product;

d.  licensing/royalty fees; and

e.  any other fixed and variable costs of producing and distributing the product;

(o)  any information that uniquely identifies Each transaction, such as invoice number and invoice line item number, customer purchase order number, etc.;

a.  if the transaction is pursuant to a contract with the purchaser or transferee, an indication of the contract number or other means used to identify the contract under which the transaction is made;

b.  to the extent there exist data outside the sale transaction data that could be used for connecting bids or requests for quotations ("RFQs") to contract or purchase order identifiers in the transactional data, please supply all records of such data;

(p)  the customer's program in connection with which the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies were being manufactured;

(q)  manufacturing facility used to produce the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies;

(r)  invoicing entity name and location;

(s)  manufacturing entity, if different than invoicing entity;

(t)  manufacturing and/or ship-from location;

(u)  identification of the customer to whom the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies were shipped, as well as the customer to whom such products were billed.  Such identification includes:

a.  name, including any hierarchical name potentially used to group multiple customer names or customer numbers under a single umbrella;

b.  any unique identification numbers;

c.  geographic location (address, state, and country);

4

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

d.  any data used to classify the customer facility, including distribution channel (e.g., head manufacturer, disk drive manufacturer, or distributor); and

e.  any field, method, or information that would allow one to link each customer to all of its transaction records;

(v)  identification of the final product into which the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies were intended to be incorporated, i.e. hard drive, laptop, including:

a.  make;

b.  model;

c.  model number;

d.  model year or other year-related information;

e.  SKU;

f.  capacity;

g.  product series;

h.  any other information used to identify the final product; and

i.  intended jurisdiction where the final product was to be sold;

(w)  cost of goods sold;

(x)  type of transaction, including original sale, rebate, return, credit, debit, surcharge, and discount; in the case of returns and exchanges, an indication of the original invoice number against which the return or exchange should be applied; and

(y)  any other information associated with the transaction(s) tracked in the normal course of business in Your electronic database(s), including the legal entity making the sale.

**REQUEST FOR PRODUCTION NO. 4**

All invoices issued or received in connection with Your sales, supply, or procurement of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during

the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 5**

Documents sufficient to identify any Enterprise Resource Planning ("ERP") system or electronic data processing system or program that You used during the Structured Data Time Period to record, store, compute, analyze or retrieve any transactional information relating to the pricing, sale, production, supply, distribution, output, capacity, or marketing of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, or system performing such ERP functions.  Such Documents should include information sufficient to identify:

(a)     the type of the system or program used (e.g., Oracle, IBM DB2, Microsoft SQL Server, SAP, Fujitsu's Glovia, Oracle ERP);

(b)     the specific version of the system or program used;

(c)     the people responsible for each system or program;

(d)     the department to which each of the responsible person belong;

(e)     the individuals and/or departments to whom they report;

(f)     a list of the reports each system or program runs, and is capable of running; and

(g)     system or program manuals; and

(h)     data dictionaries explaining the fields available in system reports.

**REQUEST FOR PRODUCTION NO. 6**

Documents sufficient to identify types, classes, or categories of the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies manufactured, marketed, sold or distributed by You during the Structured Data Time Period, including any functions, product identification numbers, and physical properties, and characteristics for which the HDD Suspension Assembly or the HDD component was made or sold.

**REQUEST FOR PRODUCTION NO. 7**

All Documents (e.g., Bills of Materials) reflecting, memorializing, constituting, or referring to a list of parts or a complete set of physical elements required to manufacture HDD Suspension Assemblies, HDD Components Incorporating Suspension Assemblies, or HDDs at any

time during the Structured Data Time Period, including part or element cost and price information if available.

**REQUEST FOR PRODUCTION NO. 8**

All product cross-reference guides and other Documents which compare Your HDD Suspension Assemblies and HDD Components Incorporating Suspension Assemblies with those of any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Structured Data Time Period, including comparisons of functions, physical properties, characteristics, or prices.

**REQUEST FOR PRODUCTION NO. 9**

Documents sufficient to decipher and/or explain the information captured by product codes, bar codes, quick response ("QR") codes, model numbers, and part numbers for Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 10**

Product decoders, product keys, product dictionaries, product cross-reference guides, and/or product manuals and/or catalogues for any HDDs, HDD Suspensions Assemblies, or HDD Components Incorporating Suspension Assemblies during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 11**

Documents sufficient to show why and how You labeled, marked, and/or branded Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, for purposes of product tracking, destination, customer, construction, performance, quality, safety, and/or regulatory compliance.

**REQUEST FOR PRODUCTION NO. 12**

Documents sufficient to show why and how You traced, tracked, or located Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies in any Finished Products during the Relevant Time Period, for purposes of product tracking, destination, customer, construction, performance, quality, safety, and/or regulatory compliance.

**REQUEST FOR PRODUCTION NO. 13**

Documents sufficient to identify each of Your facilities that manufactured HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Structured Data Time Period, and for each such facility, Documents relating to the following during the Structured Data Time Period:

    (a)    production capacity and capacity utilization during each month;

    (b)    proposed or actual changes in production capacity and capacity utilization;

    (c)    projected capacity utilization;

    (d)    the reasons for changes in each facility's production capacity and capacity utilization;

    (e)    the identity of all persons who had decision-making or supervisory responsibility regarding production;

    (f)    each type, class, category, and respective use of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies produced and the amounts of each produced during each month of the Relevant Time Period;

    (g)    production shutdowns or slowdowns and reasons for each shutdowns or slowdowns;

    (h)    locations to which HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies manufactured at each facility were shipped or jurisdictions for which they were destined;

    (i)    projected production forecasts;

    (j)    actual and projected shipment volumes; and

    (k)    future plans to construct, joint venture, or purchase fabrication plants.

**REQUEST FOR PRODUCTION NO. 14**

Data showing Your capacity to produce, and production of, HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies by facility and line for each month, quarter, and year during the Structured Data Time Period.

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

**REQUEST FOR PRODUCTION NO. 15**

Documents sufficient to show Your inventory levels of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies for each month, quarter, and year during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 16**

For HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period:

    (a)    All business plans, policies, methods, formulas, guidelines, or factors You used to determine, compute, or quote prices;

    (b)    All published or non-published price announcements, price lists, price schedules, or price changes communicated to Your customers; and

    (c)    Your contracts, offers, supply agreements, or proposals (including any rebates, discounts, off-invoice discounts, or other price concessions offered to customers), including both drafts and final versions, and amendments to such.

**REQUEST FOR PRODUCTION NO. 17**

All Documents that relate to or explain the reasons for any proposed or actual price increases or price decreases, bid responses, final RFQ pricing, or proposed or actual price changes for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 18**

All Documents reflecting, memorializing, constituting, dealing with, concerning or referring to any refusal by You or any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to quote or bid for business or to supply HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to a customer, or to submit a competitive bid or quote (e.g., a bid or quote too high to win the quote or obtain the business) to any actual or potential customer during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 19**

All Documents concerning any agreement or understanding that prices charged to one customer for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies will not be below prices charged to another customer during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 20**

All Documents reflecting, memorializing, constituting, concerning or referring to requests by Your customers or potential customers that you decrease prices quoted, charged, submitted, or provided for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies and techniques used to accomplish these reductions during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 21**

All Documents reflecting, memorializing, constituting, concerning or referring to the relationship between prices for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies and the costs of producing, manufacturing, marketing, selling, or distributing HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including how prices respond to any cost changes during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 22**

All Documents reflecting, memorializing, constituting, or referring to the sale, purchase, or transfer of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies between You and any Affiliated Entities, including (a) Communications reflecting, memorializing, constituting, or referring to the price or negotiation of prices for any such sale, purchase, or transfer; (b) terms and conditions of any such sale, purchase, or transfer, and (c) policies and accounting standards employed regarding the setting of transfer prices during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 23**

All Documents reflecting, memorializing, constituting, or referring to any purchases, sales, trades, exchanges, or swaps of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies between You and any other producer(s) or seller(s) of HDD Suspension

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

Assemblies or HDD Components Incorporating Suspension Assemblies, including Documents that reflect the terms, amounts, or reasons for any such trades, exchanges, or swaps during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 24**

All contracts or agreements (in final form or draft) relating to sales, product development, and/or distribution of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to Your customers during the Structured Data Time Period, and all contracts or agreements (in final form or draft) governing Your relationships with Your customers, including but not limited to any agreements relating to confidentiality or tooling development.

**REQUEST FOR PRODUCTION NO. 25**

All Documents reflecting, memorializing, constituting, concerning or referring to the negotiations for selling or supplying HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including All Documents reflecting, memorializing, constituting, concerning or referring to the negotiations for tooling for production of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies.

**REQUEST FOR PRODUCTION NO. 26**

All Documents relating to the direct cost of manufacturing, marketing, and selling HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Structured Data Time Period.

**REQUEST FOR PRODUCTION NO. 27**

Documents sufficient to show each Finished Product in which HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies were incorporated during the Relevant Time Period, including its name, manufacturer, model number, function, and physical properties and characteristics, as well as the volume of such products that contain(ed) Suspension Assemblies manufactured by You.

**REQUEST FOR PRODUCTION NO. 28**

All Documents including, but not limited to, any studies or analyses reflecting,

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

memorializing, concerning, involving, connected to or referring to the impact or effect of changes of Your manufacturing costs for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies on the prices You charge customers for those products during the Relevant Time Period.  Please include all Documents discussing any method or formula for instituting any increase in the prices You charge following or due to an increase in Your acquisition costs.

**REQUEST FOR PRODUCTION NO. 29**

All Documents including, but not limited to, any studies or analyses relating to how the price of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies sold by You or by any of Your competitors affected the prices of HDDs or Finished Products sold by third parties to others during the Relevant Time Period including, but not limited to, end-user purchasers of Finished Products such as the classes identified in the End-User Plaintiffs Consolidated Class Action Complaint (ECF No. 167) and Resellers of Finished Products such as the classes identified in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190).

**REQUEST FOR PRODUCTION NO. 30**

All Documents including, but not limited to, any studies or analyses relating to the extent to which original equipment manufacturers, original design manufacturers, retailers, distributors or any other entities involved in the manufacture, distribution, or sale of HDD Components Incorporating Suspension Assemblies, HDDs or Finished Products pass through the cost of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to their respective customers during the Relevant Time Period and the way in which the cost of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies travels through the chain of distribution towards resellers and end-users during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 31**

All Documents including, but not limited to, any studies or analyses reflecting, memorializing, constituting, or referring to how the price of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies sold by You or by Your competitors affected

the quality of other components contained in HDDs or Finished Products sold by third parties to others during the Relevant Time Period including, but not limited to, end-user purchasers of Finished Products such as the classes identified in the End-User Plaintiffs' Consolidated Class Action Complaint (ECF No. 167) and Resellers of Finished Products such as the classes identified in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190).

**REQUEST FOR PRODUCTION NO. 32**

All Documents including, but not limited to, any studies or analyses reflecting, memorializing, constituting, concerning or referring to the distribution channels for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies from You to resellers such as the Plaintiffs and classes defined in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190), and end users such as the classes defined in the End-User Plaintiffs' Consolidated Class Action Complaint (ECF No. 167) during the Relevant Time Period, including, but not limited to: the specific entities in the distribution chain(s); the products sold by these entities that incorporated Suspension Assemblies; and the amount of such products sold by these entities.

**REQUEST FOR PRODUCTION NO. 33**

All Documents including, but not limited to, any studies or analyses reflecting, memorializing, constituting, concerning or referring to retail prices, resale prices, or street prices of HDD Suspension Assemblies, HDD Components Incorporating Suspension Assemblies, or Finished Products during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 34**

All Documents reflecting, memorializing, constituting, concerning or referring to the marketing, sale, or distribution of any HDD Suspension Assemblies, HDD Components Incorporating Suspension Assemblies, or Finished Products to the United States during the Relevant Time Period, including, but not limited to, product development, production, distribution, or any other business plans; any regulatory compliance requirements; any industry or government laws, policies, or regulations relating to quotas, duties, taxes, or required surcharges; and any

product tracking or tracing methods that refer to the United States or North America in any way.

**REQUEST FOR PRODUCTION NO. 35**

All Documents reflecting, memorializing, constituting, concerning referring to, or demonstrating Defendants' knowledge that HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies manufactured, sold, marketed or distributed by them or their competitors, or Finished Products containing such HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, would ultimately be purchased in or shipped to the United States, including Documents concerning intellectual property protections, regulatory issues and other jurisdiction-specific concerns, during the Relevant time Period.

**REQUEST FOR PRODUCTION NO. 36**

All contracts, agreements, approvals, authorizations, licenses, and certificates enabling you to supply HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to the United States during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 37**

Documents sufficient to show all of the suppliers who manufactured, sold, marketed or distributed HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 38**

All Documents that assess the competitive conditions at any level in the distribution channels for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, including, but not limited to, Documents which discuss competitors, potential competitors, barriers to entry, market conditions, market shares, profitability, availability of supply, the supply of and demand, input supply contracts/procurement methods, forecasts, pricing trends, cost conditions, or sales trends.

**REQUEST FOR PRODUCTION NO. 39**

Your internal and public annual, quarterly, and monthly financial statements, summaries, or analyses during the Relevant Time Period, including profit and loss statements and comparisons

to budget that relate to HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies.

**REQUEST FOR PRODUCTION NO. 40**

All business plans, planning analyses, budgets, forecasts, or sales or profit projections relating to HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, and all analyses, studies, or reports comparing actual results to such plans, budgets, forecasts, or projections, during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 41**

All Documents reflecting, memorializing, constituting, or referring to economies of scale, economies of scope, or other cost advantages relating to the manufacturing or production of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 42**

Documents sufficient to show Your percentage or share of industry production, capacity, sales, or shipments/shipment volume of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including all changes to Your percentage or share, throughout the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 43**

All Documents reflecting, memorializing, constituting, concerning or referring to any consideration or contemplation of entering into a purchase, sale, acquisition, merger, or joint venture with any other Defendant, including all related Communications, analyses, assessments, profitability studies, business plans, reports, presentations, or other materials throughout the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 44**

Documents sufficient to show any purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, wind downs, spin-offs, or any other change in ownership of assets, liabilities, subsidiaries, departments, units or other subdivisions of You and Your Affiliated

Entities relating to production, distribution, marketing, pricing, sale or resale of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 45**

All transcripts taken in connection with any regulator's review of TDK Corporation's acquisition of Hutchinson Technology Inc.

**REQUEST FOR PRODUCTION NO. 46**

All Documents and Communications reflecting, memorializing, constituting, concerning or referring to Headway Technologies, Inc.'s role in TDK Corporation's acquisition of Hutchinson Technology Inc., including but not limited to All Documents describing the selection and purpose of Headway Technologies, Inc. as the acquiring entity.

**REQUEST FOR PRODUCTION NO. 47**

All Documents reflecting, memorializing, constituting, concerning or referring to the purpose, reasoning, and justification for TDK Corporation's acquisition of Hutchinson Technology Inc. through Headway Technologies, Inc.

**REQUEST FOR PRODUCTION NO. 48**

All Documents reflecting, memorializing, constituting, concerning or referring to the competitive effects of TDK Corporation's acquisition of Hutchinson Technology Inc. through Headway Technologies, Inc., both predating and postdating the acquisition, including but not limited to All Documents describing market consolidation.

**REQUEST FOR PRODUCTION NO. 49**

All Communications between TDK Corporation and direct customers of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies reflecting, concerning or referring to TDK Corporation's acquisition of Hutchinson Technology Inc. or TDK Corporation's contemplation of the acquisition of Hutchinson Technology Inc. at any time during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 50**

All Communications between TDK Corporation and other Defendant entities reflecting, memorializing, constituting, concerning or referring to TDK Corporation's acquisition of Hutchinson Technology Inc. or TDK Corporation's contemplation of the acquisition of Hutchinson Technology Inc. at any time during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 51**

All Documents and Communications reflecting, memorializing, constituting, containing or referring to analyses or reasons for not acquiring, merging with, or purchasing Hutchinson Technology Inc.

**REQUEST FOR PRODUCTION NO. 52**

All Documents reflecting, memorializing, constituting, concerning or referring to Communications between or amongst You or any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to Hutchinson Technology Inc., where the participants discussed production, capacity, utilization, customer product lines, product design development, customer technical requirements, component supplies, cross-licensing arrangements, HDD Suspension Assemblies-related patents, market share, customer volumes, pricing, bidding events, RFQs, distribution, inventory levels, shipment, or sale of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 53**

All Documents reflecting, memorializing, constituting, concerning or referring to Meetings attended by You or any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to Hutchinson Technology Inc., where the attendees discussed production, capacity, utilization, customer product lines, product design development, customer technical requirements, component supplies, cross-licensing arrangements, HDD Suspension Assemblies-related patents, market share, customer volumes, pricing, bidding events, RFQs, distribution, inventory levels, shipment, or sale of HDD

Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 54**

For each of Your Employees during the Relevant Time Period who has or had any non-clerical responsibility for recommending, reviewing, setting, communicating, or approving prices for, price increase announcements, production, bids or quotes related to, or setting or restricting capacity utilization for facilities manufacturing, Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, as well as any other Employee listed in Exhibit A:

    (a)    all copies of electronic and manual diaries, calendars, appointment books, "to do" lists, day timers or appointment notes;

    (b)    all copies of trip and travel logs, records or other supporting Documents;

    (c)    all copies of expense reports or other supporting Documents;

    (d)    all copies of telephone logs, directories, notebooks, Rolodex cards or related memoranda, including personal telephone logs if ever used for a business purpose;

    (e)    all telephone (both landline and wireless) bills, statements, records and supporting Documents, including for personal telephone lines if ever used for a business purpose;

    (f)    all Documents relating to membership in any trade association or industry group, including but not limited to any standard setting organization;

    (g)    resumes and employee reviews for that Employee;

    (h)    all visa applications made to the United States government for that Employee; and

    (i)    all compensation (both salary and incentive payments or bonuses) and all performance reviews for that Employee; and

    (j)    personnel files, including the employment history for that Employees (including but not limited to promotions, demotions, title changes, firings, and reprimands); at any point during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 55**

All Documents mentioning or referring to another manufacturer or seller of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, in which the Document includes a request or instruction to: delete, destroy, or discard the Document after reading; maintain secrecy on the Document; handle the Document with care; prohibit forwarding or circulating the Document; limit the recipients of the Document; preclude non-recipients from accessing the Document; limit the participants in Meetings between or amongst Defendants; keep the Document confidential; or avoiding leaving written evidence.

**REQUEST FOR PRODUCTION NO. 56**

Documents sufficient to show the name and address of each trade or industry association or other industry group (including committees and subcommittees) relating to the HDD supply chain or HDD component industry (such as the International Disk Drive Equipment and Materials Association ("IDEMA")) of which You or any of Your employees are or have been a member during the Relevant Time Period, as well as Documents sufficient to show dates of membership and dates of participation in committees or subcommittees.

**REQUEST FOR PRODUCTION NO. 57**

All Documents reflecting, memorializing, constituting, concerning or referring to Meetings of each trade or industry association, or other industry group, and each of its committees or subcommittees relating to the HDD supply chain or HDD component industry (such as the IDEMA) during the Relevant Time Period, including All Documents reflecting, memorializing, constituting, concerning or referring to any such Meeting attended by You and any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, and All Documents identifying the Employees from Your company who attended, the dates of attendance, and the subject matter discussed.

**REQUEST FOR PRODUCTION NO. 58**

Public statements, announcements, disclosures, or press releases issued by You or any Defendant during the Relevant Time Period relating to the production, cost, sale, marketing,

1    pricing, or distribution of HDD Suspension Assemblies or HDD Components Incorporating

2    Suspension Assemblies.

3    **REQUEST FOR PRODUCTION NO. 59**

4          Documents that You claim were available to the Plaintiffs or any purchaser of HDD

5    Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the

6    Relevant Time Period that should have caused the Plaintiffs or any such purchaser to investigate

7    whether there was a conspiracy to fix, raise, maintain or stabilize the prices or to control or restrict

8    supply of HDD Suspension Assemblies.

9    **REQUEST FOR PRODUCTION NO. 60**

10         Documents sufficient to describe Your policies or practices with respect to the retention or

11   destruction of Documents.

12   **REQUEST FOR PRODUCTION NO. 61**

13         Your policies or practices directed toward compliance with antitrust or competition laws

14   during the Relevant Time Period, including:

15         (a)     All written policies;

16         (b)     All Employee handbooks;

17         (c)     Presentations to Employees, including antitrust education and training sessions; and

18         (d)     All statements signed by Your Employees with pricing, sales or marketing

19         responsibility for HDD Suspension Assemblies or HDD Components Incorporating

20         Suspension Assemblies acknowledging their receipt of or compliance with Your

21         antitrust compliance policy.

22   **REQUEST FOR PRODUCTION NO. 62**

23         All Documents reflecting, memorializing, constituting, concerning or referring to

24   Employee discipline for failure to comply with antitrust laws or internal antitrust company policies

25   or practices relating to HDD Suspension Assemblies or HDD Components Incorporating

26   Suspension Assemblies, including but not limited to any discipline letters issued by You or any

27   apology letters written by Your Employees.

28

**REQUEST FOR PRODUCTION NO. 63**

Any Documents exchanged between You and the Antitrust Division of the United States Department of Justice relating to a conspiracy to fix the prices of, rig bids, or allocate customers or market shares for and exchange sensitive information about, HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to any conditional leniency letters from the Antitrust Division and any other documents relating to the corporate leniency program.

**REQUEST FOR PRODUCTION NO. 64**

Any Documents exchanged between You and any government agency anywhere in the world reflecting, memorializing, constituting, or referring to a conspiracy to fix the prices of, rig bids, or allocate customers or market shares for, and exchange sensitive information about HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to any conditional leniency letters or equivalent documentation.

**REQUEST FOR PRODUCTION NO. 65**

All records of witness testimony or statements (attestments) made to any government agency anywhere in the world investigating a conspiracy to fix the prices of, rig bids, or allocate customers or market shares for, and exchange sensitive information about HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies.

**REQUEST FOR PRODUCTION NO. 66**

All Documents that You submitted or showed to a government agency anywhere in the world relating to Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to any draft versions of such documents.

**REQUEST FOR PRODUCTION NO. 67**

All Documents that a government agency anywhere in the world shared with or showed You reflecting, memorializing, constituting, concerning or referring to Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to any draft versions of such documents.

**REQUEST FOR PRODUCTION NO. 68 (SAE only)**

All contracts executed by SAE Magnetics (H.K.) Ltd. in the United States, or otherwise listing SAE's address in the United States, including but not limited to any contracts listing SAE's address as 100 S. Milpitas Blvd, Milpitas, CA 95035.

**REQUEST FOR PRODUCTION NO. 69 (SAE only)**

All personnel files and secondment records for any SAE Magnetics (H.K.) Ltd. Employee seconded to the United States, including but not limited to any secondment in the San Francisco Bay Area.

**REQUEST FOR PRODUCTION NO. 70**

All Documents and Communications reflecting, memorializing, constituting, concerning or referring to information originating with Seagate that You disclosed to, shared with, or exchanged with, any producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including Defendants (but not entities wholly owned by You at the time of the disclosure, sharing, or exchange).

**REQUEST FOR PRODUCTION NO. 71**

All Product Supply Agreements that You entered into with Seagate, and All Documents and Communications reflecting related negotiations.

**REQUEST FOR PRODUCTION NO. 72**

All Documents relating to the information called for by Interrogatory No. 1 in End-User Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 73**

All Documents relating to the information called for by Interrogatory No. 2 in End-User Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 74**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 3 in End-User Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 75**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 4 in End-User Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 76**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 1 in Reseller Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 77**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 2 in Reseller Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 78**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 3 in Reseller Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 79**

All Documents reflecting, memorializing, constituting, concerning or referring to the information called for by Interrogatory No. 4 in Reseller Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 80**

All Documents reflecting, memorializing, constituting, concerning or referring to information called for by Interrogatory No. 1 in Seagate's First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 81**

All Documents reflecting, memorializing, constituting, or referring to information called for by Interrogatory No. 2 in Seagate's First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 82**

All Documents reflecting, memorializing, constituting, concerning or referring to information called for by Interrogatory No. 3 in Seagate's First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 83**

All Documents reflecting, memorializing, constituting, concerning or referring to information called for by Interrogatory No. 4 in Seagate's First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 84**

All Documents reflecting, memorializing, constituting, concerning or referring to information called for by Interrogatory No. 5 in Seagate's First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 85**

All Documents that are responsive to the foregoing Requests in the Documents seized from Your offices by any enforcement or regulatory agency.

**REQUEST FOR PRODUCTION NO. 86**

All Documents obtained in connection with this litigation from any third-party company or individual, whether formally or informally, including declarations.

## II.    DEFINITIONS

1.    The following rules of construction shall apply to all discovery requests:

(a)    The terms "All" and "Each" shall be construed as all and each;

(b)    The connectives "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)    "Including" shall be construed to mean "without limitation";

(d)    "Relating to," "referring to," "regarding," or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with,

24

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part; and

(e)     The use of the singular form of any word includes the plural and vice versa.

2.     "Affiliated Entity(ies)" means any entity(ies) involved in the production, pricing, marketing, distribution, and/or sale of HDD Suspension Assemblies and/or HDD components incorporating Suspension Assemblies at any time during the Relevant Time Period (as defined herein) in which You or any of Your divisions, subdivisions, business units, parents, subsidiaries, affiliates, or joint venture thereof, held any ownership interest at any time during the Relevant Time Period.

3.     "Communication(s)" means, without limitation, any disclosure, transfer, or exchange of information, opinions, ideas or thoughts, by any means, including but not limited to face-to-face meetings; written, recorded, electronic, or oral communications; or otherwise, at any time or place under any circumstances.  This definition shall include communication via social media, including, but not limited to, information, opinions, ideas, or thoughts, posted on or transmitted through social networking platforms (e.g., LinkedIn, Facebook, Instagram), digital file-sharing services (e.g., Dropbox), blogs and microblogs (e.g., Twitter, Tumblr), Voice Over Internet Protocol services (e.g. Skype, Zoom), and/or instant messages (e.g., Facebook Messenger, WhatsApp, WeChat).  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

4.     "Defendant" means any person or entity named as a defendant in the End-User Consolidated Class Action Complaint (ECF No. 167, Case No. 19-md-02918-MMC), in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190, Case No. 19-md-02918-MMC), or in the Seagate Plaintiffs' Complaint (ECF No. 1, Case No. 20-cv-01217-MMC) at the time responses to these document requests are served.

5.     "Document(s)" shall mean and include all recorded information of any kind, including "writings," "recordings" or "photographs" as those terms are defined in Federal Rule of

Civil Procedure 34 and Federal Rule of Evidence 1001.  Without limiting the generality of the foregoing, the term "Documents" includes both hard copy Documents as well as structured data, electronically stored data files including e-mail, instant messaging, shared network files and databases. With respect to electronically stored data, "Documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb flash drives, floppy disks or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

6.      "Enterprise Resource Planning" or "ERP" shall mean any business management software or system—whether implemented as a suite of integrated applications or not—that is used to collect, store, manage, track and interpret data across manufacturing, purchasing, sales, accounting, finance, and business planning departments, including data relating to expenses, costs, manufacturing and production information, data relating to the flow of products through the distribution chain, and data relating to historical reports and forecasts on ongoing business activities, such as the completion of production plans, pricing, and profitability.

7.      "Finished Products" means finished goods containing HDD Suspension Assemblies, including portable and external HDDs, desktop and laptop computers, game consoles, set-top boxes/DVRs, network servers, workstations, network video recorders, enterprise storage arrays, printers, and copy machines.

8.      "HDD Suspension Assemblies" or "Suspension Assemblies" refers to components used in hard disk drives ("HDD") which hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the HDD's circuitry, and is meant to include both the singular "Assembly" and plural "Assemblies."

9.      "HDD Components Incorporating Suspension Assemblies" refers to head gimbal assemblies ("HGAs"), head disk assemblies ("HDAs"), head stack assemblies ("HSAs"), head assemblies, or any other subassemblies of HDDs that contain Suspension Assemblies.

10.      "Meeting" means, without limitation, any assembly, event, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether planned or

arranged, scheduled or not.

11. "You" or "Your" mean the responding Defendant, its predecessors (including acquired entities), successors, subsidiaries, departments, divisions, units, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any Persons acting or purporting to act on behalf of the responding Defendant.

### III.    RELEVANT TIME PERIOD

Unless otherwise noted, the term "Relevant Time Period" means the period January 1, 2003 through the present.  Unless otherwise noted, the term "Structured Data Time Period" means the period January 1, 2000 through the present.

### IV.    INSTRUCTIONS

1. These requests call for the production of all responsive Documents that are within the possession, custody, or control of You.

2. If any Document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work production protection, or any other privilege or protection, please furnish a log in compliance with the ESI Protocol.

3. With respect to any Document maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

4. Please produce All Documents maintained or stored electronically in native, electronic format with All relevant metadata intact.  Encrypted or password-protected Documents should be produced in a form permitting them to be reviewed.

5. Please organize electronic Documents produced for inspection in the same manner that You store them (e.g., if maintained by a custodian, such as e-mail residing on an e-mail server, please organize Documents for production by custodian; if maintained as a subfolder of "My Documents" on a custodian's hard drive, please organize Documents for production by custodian with path information preserved, etc.).

6. Consistent with the ESI Protocol, Documents maintained or stored in paper, hard-

copy form shall be produced as searchable .PDF (i.e., portable document format files with embedded text) and in the same order as they are kept in the usual course of business.

7.      To the extent responsive Documents reside on databases and other such systems and files, You are requested to produce the relevant database in useable form and/or permit access for inspection, review, and extraction of responsive information.

8.      Each document request, and Each subpart thereof, shall be separately set forth and accorded a separate answer.  Each response shall first set forth verbatim the document request to which it is responsible, followed by Your response.

9.      No part of a document request shall be left unanswered merely because an objection was interposed to another part of the document request.

10.     If You object to any document request or subpart thereof, the objection shall state with specificity all grounds.  Any ground not stated shall be waived.

11.     If You are unable to answer any document request, the reason for Your inability to answer shall be separately stated in detail for Each document request.

12.     Failure to provide information in response to these requests will be deemed a waiver of Your right to produce such evidence at trial.  Plaintiffs reserve the right to move to preclude the introduction of any evidence not produced in response to these requests.

13.     All Documents produced pursuant to these requests shall be produced to End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs.

14.     These requests shall be deemed continuing so as to require further and supplemental production in accordance with Federal Rule of Civil Procedure 23(e).

Dated:  August 3, 2020

/s/ Christopher T. Micheletti
Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:   (415) 693-0700
Facsimile:   (415) 693-0770
cmicheletti@zelle.com

/s/ Aaron M. Sheanin
Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:   (650) 784-4040
Facsimile:   (650) 784-4041
asheanin@robinskaplan.com

**Interim Co-Lead Class Counsel for the
End-User Plaintiffs**

/s/ Victoria Sims
Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:   (202) 789-1813
vicky@cuneolaw.com

/s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone:   (651) 312-6518
Facsimile:   (651) 789-4818
sraiter@larsonking.com

**Interim Co-Lead Class Counsel for the
Reseller Plaintiffs**

/s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke
**WILSON SONSINI GOODRICH & ROSATI
Professional Corporation**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:  (415) 947-2000
Facsimile:  (415) 947-2099
korourke@wsgr.com

**Counsel for Plaintiffs Seagate Technology LLC,
Seagate Technology (Thailand) Ltd., Seagate
Singapore International Headquarters Pte. Ltd.,
and Seagate Technology International**

PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

# EXHIBIT A

| NHK Employees | |
|---|---|
| Takehiko Amaki | Yuichi Nagase |
| Toshiyuki Aoyagi | Isamu Ninomiya |
| Masashi Chiba | Kazuhiko Otake |
| Masahiro Futakami | Kunihiko Saika |
| Hitoshi Hashimoto | Kenji Sasaki |
| Akihiro Honda | Susumu Senkawa |
| Richard "Skipp" Harvey | Toru Sugiyama |
| Yusuke Inami | Keiichi Suzuki |
| Hironori Kajii | Hiroshi Takei |
| Takao Kiriya | Kazumi Tamamura |
| Masaru Koda | Hiroyuki Tamura |
| Junichiro Mizutani | Tsutomu Yamaguchi |
| Kenji Nagai | |
| **TDK Employees** | |
| Kenichiro Arimura | Rick McHone |
| Steven Campbell | Wichai Mekadenamporn |
| Wenjie Chen | John Miller |
| Arun Dhawan | Yew Ah Ming |
| Amaninder Dhillon | Stephen Andrew Misuta |
| Moris Dovek | Giichi Nagata |
| Todd Drahos | Chaiyatat Namsubin |
| Peter Hahn | Akihiko Negishi |
| Toshimi Hamada | T.S. Ng |
| Richard Han | Tuan Nguyen |
| Keisuke Igarashi | Hidetomo Nishi |
| Koji Inada | Archit Nunvititpongse |
| Shigenao Ishiguro | Albert Ong |
| Masato Ishikawa | Gary Pester |
| Michael ("Jake") Jacoby | Henry James ("Hank") Pselos |
| Takehiro Kamigama | Thana Ratnaubonchai |
| Shigeki Kimura | Frank Ruttenberg |
| Atsuo Kobayashi | Hajime Sawabe |
| Mark Lazatin | Sommit Suksersee |
| Peter Lim Chee Shan | Sivaporn Temanon |
| Wing Sun Clarence Lo ("Clarence Lo") | Tetsuya Ueda |
| Lo Kwok Fai ("Frankie Lo") | David Wagner |
| Thiti Makarabhiromya ("Makarabhirom") | Hai Ming Zhou |
| Ken Martini | |
| **HTI Employees** | |
| Creighton Burrows | Keith Johnson |
| Mark Cosner | Rick Nass |

## PROOF OF SERVICE

I, Qianwei Fu, declare under penalty of perjury:

I am a citizen of the United States and employed by Zelle LLP.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 44 Montgomery St., Suite 3400, San Francisco, CA 94104.

On August 3, 2020, I served the following document in the manner indicated below:

**1.  PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS.**

☒      **ELECTRONIC MAIL**: by causing said document to be served electronically to the email addresses set forth below.

J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-5860
clay.everett@morganlewis.com

Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7000
mark.hamer@bakermckenzie.com

Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: (202) 955-1500
craiglee@huntonak.com

Dated:  August 3, 2020

_____
            */s/ Qianwei Fu*
             Qianwei Fu

# EXHIBIT 2 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone:  (651) 312-6518
Facsimile:  (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the
Reseller Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 3:19-md-02918-MMC |
| | MDL No. 2918 |
| | **RESELLER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**PROPOUNDING PARTIES**:     Reseller Plaintiffs

**RESPONDING PARTY**:     NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd.,

Headway Technologies, Inc., and Hutchinson Technology Inc.

**SET NUMBER:**                One

Pursuant to Federal Rules of Civil Procedure 26 and 33, Reseller Plaintiffs request that Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc. (collectively, "Defendants") answer the following interrogatories within thirty (30) days of service and supplement their interrogatory answers, as necessary, to comply with Federal Rule of Civil Procedure 26(e).

## I.        INTERROGATORIES

**INTERROGATORY NO. 1**

Identify and describe each customer to which You or Your affiliates, joint ventures, parent companies, or subsidiaries sold or distributed HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, including:

(a)    each customer's name and address of its principal office or headquarters;

(b)    Your understanding of the lines of business each customer was in (e.g., whether the customer is a head manufacturer, disk drive manufacturer, or a distributor);

(c)    the manufacturers for whose products that customer's products were destined and Finished Products they manufactured during the Relevant Time Period, as well as the destination of those Finished Products;

(d)    the type of HDD component products You sold or distributed to each customer (e.g., stand-alone Suspension Assemblies, head gimbal assemblies, head stack assemblies, head disk assemblies, etc.);

(e)    the names and locations of the individuals for each customer with whom You communicated to negotiate, sell, or distribute HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies;

(f)    Your understanding of the geographic location where each customer took title to the HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including the basis for such understanding;

(g)    any ownership interest You had in the customer at any time during the Relevant Time Period; and

(h)    any other suppliers of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies who also sold such products to the customer during the Relevant Time Period.

**INTERROGATORY NO. 2**

Describe each instance in which You instituted a price increase, price decrease, or supply restriction (including capacity or shipment restrictions) for HDD Suspension Assemblies and/or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period. "Describe" means to state, for each instance, when the decision was taken, to what products the decision related, when it was announced to customers, when the decision was implemented, the amount of the price increase or decrease, and extent to which supply was restricted.

**INTERROGATORY NO. 3**

With respect to Your guilty plea and/or leniency application(s) in connection with governmental investigations of Your business for HDD Suspension Assemblies and/or HDD Components Incorporating Suspension Assemblies, state all facts that support Your guilty plea and/or leniency application(s), identify the Persons with whom You conspired and/or reached agreements to refrain from competing on prices for, fix the prices of, and allocate market shares for, HDD Suspension Assemblies, identify all Persons with knowledge of the factual basis for Your guilty plea and/or leniency application(s), identify the volume of commerce covered by or agreed to in said guilty plea or leniency application(s), and identify all individuals "carved out" of

1    any protection from prosecution provided by Your guilty plea and/or leniency application(s).

2    **INTERROGATORY NO. 4**

3    Identify and describe Your and Your affiliates', joint ventures', parent companies', or

4    subsidiaries' fabrication facilities for HDD Suspension Assemblies or HDD Components

5    Incorporating Suspension Assemblies during the Relevant Time Period, including:

6    (a)    the name and address of each facility;

7    (b)    the owners of the facility;

8    (c)    the highest-ranking employee at the facility and his or her duration of employment

9    at the facility;

10   (d)    the start and end-date of production operations at each facility;

11   (e)    description of technology and generation for HDD Suspension Assemblies or HDD

12   components incorporating Suspension Assemblies manufactured at each

13   fabrication facility;

14   (f)    the amount and nature of each product produced at each facility;

15   (g)    the geographic destination of the products produced at each facility;

16   (h)    description of the information contained on the products including all labels and

17   brand identifiers;

18   (i)    the number of lines at each facility and products produced by line;

19   (j)    the methods used to track production capacity, capacity utilization, and inventory

20   levels at each facility; and

21   (k)    the monthly capacity-utilization rates for each facility and line within each facility.

22

23

24

25

26

27

28

RESELLER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS
CASE NO. 3:19-md-02918-MMC

## II.    DEFINITIONS

1.    The following rules of construction shall apply to all discovery requests:

(a)    The connectives "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(b)    "Including" shall be construed to mean "without limitation";

(c)    "Relating to," "regarding," or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part; and

(d)    The use of the singular form of any word includes the plural and vice versa.

2.    "Communication(s)" means, without limitation, any disclosure, transfer, or exchange of information, opinions, ideas or thoughts, by any means, including but not limited to face-to-face meetings; written, recorded, electronic, or oral communications; or otherwise, at any time or place under any circumstances.  This definition shall include communication via social media, including, but not limited to, information, opinions, ideas, or thoughts, posted on or transmitted through social networking platforms (e.g., LinkedIn, Facebook, Instagram), digital file-sharing services (e.g., Dropbox), blogs and microblogs (e.g., Twitter, Tumblr), Voice Over Internet Protocol services (e.g., Skype, Zoom), and/or instant messages (e.g., Facebook Messenger, WhatsApp, WeChat).  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.    "Defendant" means any person or entity named as a defendant in the End-User Consolidated Class Action Complaint (ECF No. 167, Case No. 19-md-02918-MMC), in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190, Case No. 19-md-02918-MMC), or in the Seagate Plaintiffs' Complaint (ECF No. 1, Case No. 20-cv-01217-MMC) at the time responses to these Interrogatories are served.

1    4.    "Document(s)" shall mean and include all recorded information of any kind,

2  including "writings," "recordings" or "photographs" as those terms are defined in Federal Rule of

3  Civil Procedure 34 and Federal Rule of Evidence 1001.  Without limiting the generality of the

4  foregoing, the term "Documents" includes both hard copy Documents as well as electronically

5  stored data files including e-mail, instant messaging, shared network files and databases. With

6  respect to electronically stored data, "Documents" also includes, without limitation, any data on

7  magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes,

8  CDs, DVDs, thumb flash drives, floppy disks or any other type of portable storage device, etc.)

9  stored as an "active" or backup file, in its native format.

10    5.    "Employee" means any individual currently in the employ of, or at any time

11 employed by, or acting as the agent of a Defendant as defined herein.

12    6.    "Finished Products" means finished goods containing HDD Suspension

13 Assemblies, including portable and external HDDs, desktop and laptop computers, game consoles,

14 set-top boxes/DVRs, network servers, workstations, network video recorders, enterprise storage

15 arrays, printers, and copy machines.

16    7.    "HDD Suspension Assemblies" or "Suspension Assemblies" refers to components

17 used in hard disk drives ("HDD") which hold the recording heads in close proximity to the disks

18 and provide the electrical connection from the recording heads to the HDD's circuitry.

19    8.    "HDD Components Incorporating Suspension Assemblies" refers to head gimbal

20 assemblies ("HGAs"), head disk assemblies ("HDAs"), head stack assemblies ("HSAs"), head

21 assemblies, or any other subassemblies of HDDs that contain Suspension Assemblies.

22    9.    "Meeting(s)" means, without limitation, any assembly, event, convocation,

23 encounter, or contemporaneous presence of two or more persons for any purpose, whether planned

24 or arranged, scheduled or not.

25    10.    "Person" or "Persons" means any natural person, corporation, or partnership,

26 proprietorship, joint venture, or any business, legal, or government entity, organization, or

27 association.

28

11.     "You" and "Your" mean the responding Defendant, its predecessors (including acquired entities), successors, subsidiaries, departments, divisions, units, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any Persons acting or purporting to act on behalf of the responding Defendant.

### III.     RELEVANT TIME PERIOD

Unless otherwise noted, the term "Relevant Time Period" means the period January 1, 2003 through the present.

### IV.     INSTRUCTIONS

1.     The obligation to answer these interrogatories is continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  If at any time after answering these interrogatories the responding party discovers additional information that will make the answers to these interrogatories more complete or correct, the responding party must amend the answers as soon as reasonably possible.

2.     If the responding party elects to produce business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d), the responding party shall produce the records as they are kept in the usual course of business or shall organize and label them to correspond with the interrogatory.  The manner and format of the production shall comply with the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents, ECF No. 218 and 218-1.  If the Document is being produced in its native electronic format (allowing the Document to retain its metadata), identify the Document using its hash or other appropriate electronic identification and identify the interrogatories to which the Document is responsive.  If the Document is not being produced in electronic form, identify the Document using the applicable bates numbers or specifically identify the type of Document being produced (*e.g.*, letter, memorandum, contract, invoice, *etc.*), its date and author(s), its custodian, and every person to whom such Document or any copy thereof was given or sent.  For all Documents produced pursuant to Rule 33(d), identify the name of the employee, officer, or agent

certifying the Document as business records.

3.     If any answer to an interrogatory or part thereof is withheld on a claim of privilege or constitutes attorney work product such that the responding party will not respond to the interrogatory, please provide a written statement describing each and every fact or basis upon which the purported privilege or claim of work product is asserted.

Dated:  August 3, 2020

/s/ Victoria Sims
Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:    (202) 789-3960
Facsimile:     (202) 789-1813
vicky@cuneolaw.com

/s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone:    (651) 312-6518
Facsimile:     (651) 789-4818
sraiter@larsonking.com

***Interim Co-Lead Class Counsel for the Reseller Plaintiffs***

1

**PROOF OF SERVICE**

2

I, Victoria Sims, declare under penalty of perjury:

3

I am a citizen of the United States and employed by Cuneo Gilbert & LaDuca, LLP.  I am

4

over the age of eighteen years and not a party to the within entitled action.  My business address

5

is 4725 Wisconsin Ave. NW Washington, DC 20016.

6

On August 3, 2020, I served the following document in the manner indicated below:

7

8

1.   **RESELLER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS**

9

☒      **ELECTRONIC MAIL**: by causing said document to be served electronically to

10

the email addresses set forth below.

11

12

J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-5860
clay.everett@morganlewis.com

Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7000
mark.hamer@bakermckenzie.com

13

14

15

Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: (202) 955-1500
craiglee@huntonak.com

16

17

18

19

20

Dated: August 3, 2020
       Washington, DC

21

_/s/ Victoria Sims_
Victoria Sims

22

23

24

25

26

27

28

# EXHIBIT 3 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:  (415) 693-0700
Facsimile:   (415) 693-0770
cmicheletti@zelle.com

Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:  (650) 784-4040
Facsimile:   (650) 784-4041
asheanin@robinskaplan.com

*Interim Co-Lead Class Counsel for the*
*End-User Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 3:19-md-02918-MMC |
| | MDL No. 2918 |
| | **END-USER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS** |
| THIS DOCUMENT RELATES TO | |
| ALL ACTIONS | |

**PROPOUNDING PARTIES**:      End-User Plaintiffs

**RESPONDING PARTY**:           NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology

1

Inc.

**SET NUMBER:**                One

Pursuant to Federal Rules of Civil Procedure 26 and 33, End-User Plaintiffs request that Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc. (collectively, "Defendants") answer the following interrogatories within thirty (30) days of service and supplement their interrogatory answers, as necessary, to comply with Federal Rule of Civil Procedure 26(e).

## I.    INTERROGATORIES

**INTERROGATORY NO. 1**

Identify all Meetings and Communications between You and any other producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including Defendants (but not entities wholly owned by You at the time of the Meeting or Communication), in which pricing, price increase announcements, terms or conditions of sales, profit margins or market share, forecasting, supply, demand, intellectual property cross-licensing, production/output levels, inventory, customers, customer product lines, product plans, product roadmaps, capacity utilization, shipments, shipment volumes, designs, or sales for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period were among the topics of the Meeting or Communication. "Identify" means to provide the date and location of the Meeting or Communication; name the person(s) who attended and/or participated in the Meeting or Communication and his or her employer at the time of the Meeting or Communication; describe the subject matter discussed and any information You provided or received; describe all agreements reached; and state the product(s) that were the subject of the Communication or Meeting by product name, number, model, model number, program, RFP, and customer. Please also identify all persons You believe or have reason to believe

have personal knowledge of the Meeting or Communication, and all Documents that constitute, memorialize, or reflect the Meeting or Communication, or other information requested in this Interrogatory.

**INTERROGATORY NO. 2**

Identify each actual and proposed agreement (oral, written, or implied) between You and any producer(s) or seller(s) of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including Defendants (but not entities wholly owned by You at the time of the agreement), relating to prices or pricing, production/output levels, supply, intellectual property cross-licensing, customers, market shares or market allocations, inventory levels, shipments, shipment volumes, or designs for HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period.  "Identify" means to provide the name of the parties to the actual or proposed agreement; state whether the agreement was entered, when the agreement was proposed or entered, and the terms of the agreement; state whether the agreement was amended or renewed and the circumstances under which such amendment or renewal occurred; state how the agreement was proposed or entered (by in-person meeting, oral communication, or written communication) and where the meeting occurred; state the product(s) that were the subject of the actual or proposed agreement by product name, number, model, model number, program, RFP, and customer.  If You withdrew from the agreement, state the circumstances under which You withdrew.  Please also identify all persons You believe or have reason to believe have personal knowledge of the agreement and all Documents that constitute, memorialize, or reflect the agreement and any amendment or renewal, or terms thereof, or other information requested in this Interrogatory.

**INTERROGATORY NO. 3**

Identify each current and former Employee who has or had any non-clerical responsibility for recommending, reviewing, setting, communicating, or approving prices for, price increase announcements, production, bids or quotes related to, determining shipments or shipment volumes of, or setting or restricting capacity utilization for facilities manufacturing, Your HDD Suspension

Assemblies and/or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, as well as his or her manager or managers.  For each person identified, as well as any other individual listed on Exhibit A, identify the following:

      (a)      full legal name and any informal names or nicknames associated with the person;

      (b)      current employer and title;

      (c)      current (or last known) business address;

      (d)      current (or last known) residence address;

      (e)      date of separation for any former Employee;

      (f)      date of last Communication with any former Employee;

      (g)      all titles, roles, locations, and the division or unit of the company associated with the Employee, including the time periods associated with each;

      (h)      a description of the responsibilities held by the Employee in each of his or her titles or roles;

      (i)      all company-issued telephone numbers and associated carriers, whether landline or cellular, used by the Employee;

      (j)      all personal telephone numbers and associated carriers, whether landline or cellular, used by the Employee, if ever used for a business purpose;

      (k)      the Employee's company-issued email addresses and private email accounts if ever used for a business purpose;

      (l)      the Employee's social media accounts, including user name or handle, if ever used for a business purpose; and

      (m)      the dates of use for all telephone numbers, email addresses, and social media accounts.

**INTERROGATORY NO. 4**

Identify and describe Your corporate structure as it relates to the research, development, manufacture, sale, marketing, and distribution of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, including

Your departments, divisions, and units; their functions; and the present or former personnel with responsibilities for these functions, including those with managerial responsibility for pricing.

## II.    DEFINITIONS

1.      The following rules of construction shall apply to all discovery requests:

(a)     The connectives "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(b)     "Including" shall be construed to mean "without limitation";

(c)     "Relating to," "regarding," or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part; and

(d)     The use of the singular form of any word includes the plural and vice versa.

2.      "Communication(s)" means, without limitation, any disclosure, transfer, or exchange of information, opinions, ideas or thoughts, by any means, including but not limited to face-to-face meetings; written, recorded, electronic, or oral communications; or otherwise, at any time or place under any circumstances.  This definition shall include communication via social media, including, but not limited to, information, opinions, ideas, or thoughts, posted on or transmitted through social networking platforms (e.g., LinkedIn, Facebook, Instagram), digital file-sharing services (e.g., Dropbox), blogs and microblogs (e.g., Twitter, Tumblr), Voice Over Internet Protocol services (e.g., Skype, Zoom), and/or instant messages (e.g., Facebook Messenger, WhatsApp, WeChat).  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Defendant" means any person or entity named as a defendant in the End-User Consolidated Class Action Complaint (ECF No. 167, Case No. 19-md-02918-MMC), in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190, Case No. 19-md-

02918-MMC), or in the Seagate Plaintiffs' Complaint (ECF No. 1, Case No. 20-cv-01217-MMC) at the time responses to these interrogatories are served.

4.      "Document(s)" shall mean and include all recorded information of any kind, including "writings," "recordings" or "photographs" as those terms are defined in Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.  Without limiting the generality of the foregoing, the term "Documents" includes both hard copy Documents as well as electronically stored data files including e-mail, instant messaging, shared network files and databases. With respect to electronically stored data, "Documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb flash drives, floppy disks or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

5.      "Employee" means any individual currently in the employ of, or at any time employed by, or acting as the agent of a Defendant as defined herein.

6.      "HDD Suspension Assemblies" or "Suspension Assemblies" refers to components used in hard disk drives ("HDD") which hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the HDD's circuitry.

7.      "HDD Components Incorporating Suspension Assemblies" refers to head gimbal assemblies ("HGAs"), head disk assemblies ("HDAs"), head stack assemblies ("HSAs"), head assemblies, or any other subassemblies of HDDs that contain Suspension Assemblies.

8.      "Meeting(s)" means, without limitation, any assembly, event, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether planned or arranged, scheduled or not.

9.      "You" and "Your" mean the responding Defendant, its predecessors (including acquired entities), successors, subsidiaries, departments, divisions, units, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any Persons acting or purporting to act on behalf of the responding Defendant.

### III.    RELEVANT TIME PERIOD

Unless otherwise noted, the term "Relevant Time Period" means the period January 1, 2003 through the present.

### IV.    INSTRUCTIONS

1.      The obligation to answer these interrogatories is continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  If at any time after answering these interrogatories the responding party discovers additional information that will make the answers to these interrogatories more complete or correct, the responding party must amend the answers as soon as reasonably possible.

2.      If the responding party elects to produce business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d), the responding party shall produce the records as they are kept in the usual course of business or shall organize and label them to correspond with the interrogatory.  The manner and format of the production shall comply with the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents, ECF No. 218 and 218-1.  If the Document is being produced in its native electronic format (allowing the Document to retain its metadata), identify the Document using its hash or other appropriate electronic identification and identify the interrogatories to which the Document is responsive.  If the Document is not being produced in electronic form, identify the Document using the applicable bates numbers or specifically identify the type of Document being produced (*e.g.*, letter, memorandum, contract, invoice, *etc.*), its date and author(s), its custodian, and every person to whom such Document or any copy thereof was given or sent.  For all Documents produced pursuant to Rule 33(d), identify the name of the employee, officer, or agent certifying the Document as business records.

3.      If any answer to an interrogatory or part thereof is withheld on a claim of privilege or constitutes attorney work product such that the responding party will not respond to the interrogatory, please provide a written statement describing each and every fact or basis upon which the purported privilege or claim of work product is asserted.

Dated:  August 3, 2020

/s/ Christopher T. Micheletti
Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:   (415) 693-0700
Facsimile:    (415) 693-0770
cmicheletti@zelle.com

/s/ Aaron M. Sheanin
Aaron M. Sheanin
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:  (650) 784-4040
Facsimile:   (650) 784-4041
asheanin@robinskaplan.com

***Interim Co-Lead Class Counsel for the
End-User Plaintiffs***

END-USER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS
CASE NO. 3:19-md-02918-MMC

# EXHIBIT A

| NHK Employees | |
|---|---|
| Takehiko Amaki | Yuichi Nagase |
| Toshiyuki Aoyagi | Isamu Ninomiya |
| Masashi Chiba | Kazuhiko Otake |
| Masahiro Futakami | Kunihiko Saika |
| Hitoshi Hashimoto | Kenji Sasaki |
| Akihiro Honda | Susumu Senkawa |
| Richard "Skip" Harvey | Toru Sugiyama |
| Yusuke Inami | Keiichi Suzuki |
| Hironori Kajii | Hiroshi Takei |
| Takao Kiriya | Kazumi Tamamura |
| Masaru Koda | Hiroyuki Tamura |
| Junichiro Mizutani | Tsutomu Yamaguchi |
| Kenji Nagai | |
| **TDK Employees** | |
| Kenichiro Arimura | Rick McHone |
| Steven Campbell | Wichai Mekadenamporn |
| Wenjie Chen | John Miller |
| Arun Dhawan | Yew Ah Ming |
| Amaninder Dhillon | Stephen Andrew Misuta |
| Moris Dovek | Giichi Nagata |
| Todd Drahos | Chaiyatat Namsubin |
| Peter Hahn | Akihiko Negishi |
| Toshimi Hamada | T.S. Ng |
| Richard Han | Tuan Nguyen |
| Keisuke Igarashi | Hidetomo Nishi |
| Koji Inada | Archit Nunvititpongse |
| Shigenao Ishiguro | Albert Ong |
| Masato Ishikawa | Gary Pester |
| Michael ("Jake") Jacoby | Henry James ("Hank") Pselos |
| Takehiro Kamigama | Thana Ratnaubonchai |
| Shigeki Kimura | Frank Ruttenberg |
| Atsuo Kobayashi | Hajime Sawabe |
| Mark Lazatin | Sommit Suksersee |
| Peter Lim Chee Shan | Sivaporn Temanon |
| Wing Sun Clarence Lo ("Clarence Lo") | Tetsuya Ueda |
| Lo Kwok Fai ("Frankie Lo") | David Wagner |
| Thiti Makarabhiromya ("Makarabhirom") | Hai Ming Zhou |
| Ken Martini | |
| **HTI Employees** | |
| Creighton Burrows | Keith Johnson |
| Mark Cosner | Rick Nass |

1

### PROOF OF SERVICE

2

I, Qianwei Fu, declare under penalty of perjury:

3

I am a citizen of the United States and employed by Zelle LLP.  I am over the age of

4

eighteen years and not a party to the within entitled action.  My business address is 44 Montgomery

5

St., Suite 3400, San Francisco, CA 94104.

6

On August 3, 2020, I served the following document in the manner indicated below:

7

**1.  END-USER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO
DEFENDANTS**

8

9

☒      **ELECTRONIC MAIL**: by causing said document to be served electronically to

10

the email addresses set forth below.

11

12

J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-5860
clay.everett@morganlewis.com

Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7000
mark.hamer@bakermckenzie.com

13

14

15

Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: (202) 955-1500
craiglee@huntonak.com

16

17

18

19

20

Dated:  August 3, 2020

_____
        */s/ Qianwei Fu*
          Qianwei Fu

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. 3:19-md-02918-MMC

# EXHIBIT 4 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

1   Kenneth R. O'Rourke
2   Jeff VanHooreweghe
    **WILSON SONSINI GOODRICH & ROSATI**
3   Professional Corporation
    One Market Plaza
4   Spear Tower, Suite 3300
    San Francisco, CA 94105
5   Telephone: (415) 947-2000
    Facsimile:  (415) 947-2099
6   korourke@wsgr.com
7   jvanhooreweghe@wsgr.com

8   Mikaela E. Evans-Aziz (admitted *pro hac vice*)
    **WILSON SONSINI GOODRICH & ROSATI**
9   Professional Corporation
    1301 Avenue of the Americas, 40th Floor
10  New York, NY 10019
    Telephone: (212) 497-7710
11  Facsimile:  (212) 999-5899
12  mevansaziz@wsgr.com

13  ***Counsel for Plaintiffs Seagate Technology LLC,***
    ***Seagate Technology (Thailand) Ltd., Seagate***
14  ***Singapore International Headquarters Pte. Ltd.,***
    ***and Seagate Technology International***
15

16

17                    **UNITED STATES DISTRICT COURT**

18                  **NORTHERN DISTRICT OF CALIFORNIA**

19

20  IN RE: HARD DISK DRIVE SUSPENSION          Case Nos. 3:19-md-02918-MMC
21  ASSEMBLIES ANTITRUST LITIGATION                       3:20-cv-01217-MMC
22                                                        MDL No. 2918
23  THIS DOCUMENT RELATES TO                   **SEAGATE'S FIRST SET OF**
                                               **INTERROGATORIES TO**
24  ALL ACTIONS                                **DEFENDANTS**
25

26

27

28

---

SEAGATE'S FIRST SET OF INTERROGATORIES TO DEFENDANTS
CASE NOS. 3:19-md-02918-MMC, 3:20-cv-01217-MMC

**PROPOUNDING PARTIES**:     Seagate Plaintiffs

**RESPONDING PARTY**:     NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.

**SET NUMBER:**     One

Pursuant to Federal Rules of Civil Procedure 26 and 33, Seagate Plaintiffs request that Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc. (collectively, "Defendants") answer the following interrogatories according to the Definitions and Instructions set forth herein within thirty (30) days of service and supplement their interrogatory answers, as necessary, to comply with Federal Rule of Civil Procedure 26(e).

## I.     INTERROGATORIES

**INTERROGATORY NO. 1**

Identify all Meetings and Communications that You or someone on Your behalf or with Your knowledge or approval had with an Employee or representative of another Defendant during the Relevant Time Period at which or about which the pricing of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to Seagate, Western Digital, Samsung, or Toshiba was a topic of the Meeting or Communication, other than Meetings and Communications restricted to only Employees or representatives of entities wholly owned by You at the time of the Meeting or Communication, including:

(a)     all participants in the Meeting or Communication, and their employers at the time of the Meeting or Communication;

(b)     the date of the Meeting or Communication;

(c)     the topics addressed during or in the Meeting or Communication;

(d)     any information You provided or received;

(e)     the purpose of the Meeting or Communication;

(f)     whether or not the Meeting or Communication was part of a violation of the Sherman Act, California Cartwright Act, or Minnesota Antitrust Law;

(g)     all Persons You or Your representatives believe or have reason to believe have personal knowledge of the Meeting or Communication; and

(h)     all Documents that constitute, memorialize, reflect, or refer to the Meeting or Communication, or other information requested in this interrogatory.

**INTERROGATORY NO. 2**

Identify all Meetings and Communications that You or someone on Your behalf or with Your knowledge or approval had with an Employee or representative of another Defendant during the Relevant Time Period at which or about which the forecasting, supply, demand, product lines, product plans, or product roadmaps with respect to the sale of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to Seagate, Western Digital, Samsung, or Toshiba was a topic of the Meeting or Communication, other than Meetings and Communications restricted to only Employees or representatives of entities wholly owned by You at the time of the Meeting or Communication, including:

(a)     all participants in the Meeting or Communication, and their employers at the time of the Meeting or Communication;

(b)     the date of the Meeting or Communication;

(c)     the topics addressed during or in the Meeting or Communication;

(d)     any information You provided or received;

(e)     the purpose of the Meeting or Communication;

(f)    whether or not the Meeting or Communication was part of a violation of the Sherman Act, California Cartwright Act, or Minnesota Antitrust Law;

(g)    all Persons You or Your representatives believe or have reason to believe have personal knowledge of the Meeting or Communication; and

(h)    all Documents that constitute, memorialize, reflect, or refer to the Meeting or Communication, or other information requested in this interrogatory.

**INTERROGATORY NO. 3**

Other than agreements entered into with Seagate, Western Digital, Samsung, or Toshiba, identify each agreement (oral, written, or implied) that You or anyone on Your behalf or with Your knowledge or Your approval entered into during the Relevant Time Period concerning pricing or supply of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies to Seagate, Western Digital, Samsung, or Toshiba, including:

(a)    all parties to the agreement and to any amendment or renewal;

(b)    the date of the agreement and any amendment or renewal;

(c)    the Meeting(s) at which, or the Communication(s) in which, the agreement and any amendment or renewal were reached;

(d)    whether the agreement and any amendment or renewal was oral, written, or implied;

(e)    the terms of the agreement and any amendment or renewal;

(f)    the purpose of the agreement and any amendment or renewal;

(g)    the ending date, if any, of the agreement and any amendment or renewal;

(h)    the reason the agreement and any amendment or renewal came to an end;

(i)    whether or not the agreement and any amendment or renewal violated the Sherman Act, California Cartwright Act, or Minnesota Antitrust Law;

(j)    all Persons You or Your representatives believe or have reason to believe have personal knowledge of the agreement and any amendment or renewal, the existence, or terms of same; and

(k)     all Documents that constitute, memorialize, reflect, or refer to the agreement and any amendment or renewal, or terms thereof, or other information requested in this interrogatory.

**INTERROGATORY NO. 4**

Identify and describe any trade association show, trade association event, or other industry Meeting or event, including but not limited to any standard setting organization Meeting or event, attended by any of Your Employees who has or had any non-clerical responsibility for recommending, reviewing, setting, communicating, or approving prices for, price increase announcements, production, bids or quotes related to, or setting or restricting capacity utilization for facilities manufacturing, Your HDD Suspension Assemblies and/or HDD Components Incorporating Suspension Assemblies during the Relevant Time Period, including:

(a)     the date of the trade association show, trade association event, or other industry Meeting or event;

(b)     the location of the trade association show, trade association event, or other industry Meeting or event; and

(c)     the names and titles of each Employee with the responsibility described in this interrogatory that attended the trade association show, trade association event, or other industry Meeting or event.

**INTERROGATORY NO. 5**

Identify each instance in which You shared Seagate information regarding HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to Seagate information regarding pricing, forecasting, supply, demand, product lines, product plans, or product roadmaps with any other Defendant, competitor, or manufacturer of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including, for each instance:

(a)     the date;

(b)     the contents of the shared information;

(c)     the nature of the Communication in which You shared the Seagate information;

(d)     the names and titles of the individuals who provided and received the information, and their employers;

(e)     whether or not the instance in which You shared Seagate information was part of a violation of the Sherman Act, California Cartwright Act, or Minnesota Antitrust Law; and

(f)     all Documents that constitute, memorialize, reflect, or refer to the shared information, Communication, or other information requested in this interrogatory.

## II.     DEFINITIONS

1.     The following rules of construction shall apply to all discovery requests:

(a)     The connectives "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(b)     "Including" shall be construed to mean "without limitation";

(c)     "Relating to," "regarding," or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part; and

(d)     The use of the singular form of any word includes the plural and vice versa.

2.     "Communication(s)" means, without limitation, any disclosure, transfer, or exchange of information, opinions, ideas or thoughts, by any means, including but not limited to face-to-face meetings; written, recorded, electronic, or oral communications; or otherwise, at any time or place under any circumstances.  This definition shall include communication via social media, including, but not limited to, information, opinions, ideas, or thoughts, posted on or transmitted through social networking platforms (e.g., LinkedIn, Facebook, Instagram), digital file-sharing services (e.g., Dropbox), blogs and microblogs (e.g., Twitter, Tumblr), Voice Over Internet Protocol services (e.g., Skype, Zoom), and/or instant messages (e.g., Facebook

Messenger, WhatsApp, WeChat).  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.   "Defendant" means any person or entity named as a defendant in the End-User Consolidated Class Action Complaint (ECF No. 167, Case No. 19-md-02918-MMC), in the Reseller Plaintiffs' Corrected Consolidated Amended Complaint (ECF No. 190, Case No. 19-md-02918-MMC), or in the Seagate Plaintiffs' Complaint (ECF No. 1, Case No. 20-cv-01217-MMC) at the time responses to these interrogatories are served.

4.   "Document(s)" shall mean and include all recorded information of any kind, including "writings," "recordings" or "photographs" as those terms are defined in Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.  Without limiting the generality of the foregoing, the term "Documents" includes both hard copy Documents as well as electronically stored data files including e-mail, instant messaging, shared network files and databases. With respect to electronically stored data, "Documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb flash drives, floppy disks or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

5.   "Employee" means any individual currently in the employ of, or at any time employed by, or acting as the agent of a Defendant as defined herein.

6.   "HDD Suspension Assemblies" or "Suspension Assemblies" refers to components used in hard disk drives ("HDD") which hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the HDD's circuitry.

7.   "HDD Components Incorporating Suspension Assemblies" refers to head gimbal assemblies ("HGAs"), head disk assemblies ("HDAs"), head stack assemblies ("HSAs"), head assemblies, or any other subassemblies of HDDs that contain Suspension Assemblies.

8.   "Meeting(s)" means, without limitation, any assembly, event, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether planned

or arranged, scheduled or not.

9.      "Person" or "Persons" means any natural person, corporation, or partnership, proprietorship, joint venture, or any business, legal, or government entity, organization, or association.

10.     "You" and "Your" mean the responding Defendant, its predecessors (including acquired entities), successors, subsidiaries, departments, divisions, units, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any Persons acting or purporting to act on behalf of the responding Defendant.

### III.      RELEVANT TIME PERIOD

Unless otherwise noted, the term "Relevant Time Period" means the period January 1, 2003 through July 31, 2017.

### IV.      INSTRUCTIONS

1.      The obligation to answer these interrogatories is continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  If at any time after answering these interrogatories the responding party discovers additional information that will make the answers to these interrogatories more complete or correct, the responding party must amend the answers as soon as reasonably possible.

2.      If the responding party elects to produce business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d), the responding party shall produce the records as they are kept in the usual course of business or shall organize and label them to correspond with the interrogatory.  The manner and format of the production shall comply with the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents, ECF No. 218 and 218-1.  If the Document is being produced in its native electronic format (allowing the Document to retain its metadata), identify the Document using its hash or other appropriate electronic identification and identify the interrogatories to which the Document is responsive.  If the Document is not being produced in electronic form, identify the

Document using the applicable bates numbers or specifically identify the type of Document being produced (e.g., letter, memorandum, contract, invoice, etc.), its date and author(s), its custodian, and every person to whom such Document or any copy thereof was given or sent.  For all Documents produced pursuant to Rule 33(d), identify the name of the employee, officer, or agent certifying the Document as business records.

3.      If any answer to an interrogatory or part thereof is withheld on a claim of privilege or constitutes attorney work product such that the responding party will not respond to the interrogatory, please provide a written statement describing each and every fact or basis upon which the purported privilege or claim of work product is asserted.

Dated:  August 3, 2020

*/s/ Kenneth R. O'Rourke*
Kenneth R. O'Rourke
Jeff VanHooreweghe
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:  (415) 947-2000
Facsimile:  (415) 947-2099
korourke@wsgr.com
jvanhooreweghe@wsgr.com

Mikaela E. Evans-Aziz (admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone:  (212) 497-7710
Facsimile:  (212) 999-5899
mevansaziz@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

**PROOF OF SERVICE**

I, Mikaela E. Evans-Aziz, declare under penalty of perjury:

I am a citizen of the United States and employed by Wilson Sonsini Goodrich & Rosati PC. I am over the age of eighteen years and not a party to the within entitled action. My business address is 1301 Avenue of the Americas, 40th Floor, New York, New York 10019.

On August 3, 2020, I served the following document in the manner indicated below:

**SEAGATE'S FIRST SET OF INTERROGATORIES TO DEFENDANTS**

☒ **ELECTRONIC MAIL**: by causing said document to be served electronically to the email addresses set forth below.

| **MORGAN, LEWIS & BOCKIUS LLP** | **HUNTON ANDREWS KURTH LLP** |
|---|---|
| J. Clayton Everett, Jr.<br>1111 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 739-3000<br>Facsimile: (202) 739-3001<br>Email: clay.everett@morganlewis.com<br><br>Alexander J. Scolnik<br>101 Park Avenue<br>New York, New York 10178<br>Telephone: (212) 309-6051<br>Facsimile: (212) 309-6001<br>Email: alexander.scolnik@morganlewis.com | Craig Y. Lee<br>Carter C. Simpson<br>Emily K. Bolles<br>2200 Pennsylvania Ave., N.W.<br>Washington, D.C. 20037<br>Telephone: (202) 955-1500<br>Facsimile: (202) 778-2201<br>Email: craiglee@hunton.com<br>Email: csimpson@hunton.com<br>Email: ebolles@hunton.com |

Dated: August 3, 2020
    Chicago, IL

*/s/ Mikaela E. Evans-Aziz*
Mikaela E. Evans-Aziz

# EXHIBIT 5 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

1   Christopher T. Micheletti                    Victoria Sims
    **ZELLE LLP**                                **CUNEO GILBERT & LADUCA, LLP**
2   44 Montgomery St., Suite 3400               4725 Wisconsin Avenue, NW, Suite 200
    San Francisco, CA 94104                     Washington, DC 20016
3   Telephone:  (415) 693-0700                  Telephone:  (202) 789-3960
    Facsimile:   (415) 693-0770                 Facsimile:  (202) 789-1813
4   cmicheletti@zelle.com                       vicky@cuneolaw.com

5   Aaron M. Sheanin                            Shawn M. Raiter
    **ROBINS KAPLAN LLP**                        **LARSON • KING, LLP**
6   46 Shattuck Square, Suite 22                30 East Seventh Street, Suite 2800
    Berkeley, CA 94704                          Saint Paul, MN 55101
7   Telephone:  (650) 784-4040                  Telephone:  (651) 312-6518
    Facsimile:   (650) 784-4041                 Facsimile:  (651) 789-4818
8   asheanin@robinskaplan.com                   sraiter@larsonking.com

9   *Interim Co-Lead Class Counsel for the*      *Interim Co-Lead Class Counsel for the*
    *End-User Plaintiffs*                         *Reseller Plaintiffs*
10
                                                Kenneth R. O'Rourke
11                                              **WILSON SONSINI GOODRICH &**
                                                **ROSATI**
12                                              **Professional Corporation**
                                                One Market Plaza
13                                              Spear Tower, Suite 3300
                                                San Francisco, CA 94105
14                                              Telephone:  (415) 947-2000
                                                Facsimile:   (415) 947-2099
15                                              korourke@wsgr.com
16
                                                *Counsel for Seagate Plaintiffs*
17

18              **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20

21  IN RE: HARD DISK DRIVE SUSPENSION
    ASSEMBLIES ANTITRUST LITIGATION          Case No. 3:19-md-02918-MMC
22
                                             MDL No. 2918
23
                                             **PLAINTIFFS' FIRST JOINT SET OF**
24  THIS DOCUMENT RELATES TO                 **REQUESTS FOR ADMISSION TO**
                                             **TDK DEFENDANTS**
25  ALL ACTIONS

26

27

28

**PROPOUNDING PARTIES**: End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs

**RESPONDING PARTY**: TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.

**SET NUMBER**: One

Pursuant to Federal Rules of Civil Procedure 26 and 36, End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs (collectively, "Plaintiffs") request that Defendants TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc. (collectively, "Defendants") respond to each of the following requests for production of documents and produce all responsive documents for inspection and copying within 30 days.

**DEFINITIONS**

1. "HDD suspension assemblies" means hard disk drive suspension assemblies.

2. "NHK Spring" means NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.

3. "TDK" means TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.

**REQUEST FOR ADMISSION NO. 1:**

Admit that TDK reported anticompetitive activity in the supply of HDD suspension assemblies to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division violated Section 1 of the Sherman Act.

**REQUEST FOR ADMISSION NO. 3:**

Admit that TDK Corporation participated in the anticompetitive activity in the supply of HDD suspension assemblies that it reported to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Magnecomp Precision Technology Public Co., Ltd. participated in the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Magnecomp Corporation participated in the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 6:**

Admit that SAE Magnetics (H.K.) Ltd. participated in the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Headway Technologies, Inc. participated in the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Hutchinson Technology Inc. participated in the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division, prior to its acquisition by TDK.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included price-fixing.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Hutchinson Technology Inc.'s anticompetitive activity in the supply of HDD

suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included price-fixing.

**REQUEST FOR ADMISSION NO. 11:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included bid-rigging.

**REQUEST FOR ADMISSION NO. 12:**

Admit that Hutchinson Technology Inc.'s anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included bid-rigging.

**REQUEST FOR ADMISSION NO. 13:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included market allocation.

**REQUEST FOR ADMISSION NO. 14:**

Admit that Hutchinson Technology Inc.'s anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division included market allocation.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division affected United States commerce.

**REQUEST FOR ADMISSION NO. 16:**

Admit that TDK violated Section 1 of the Sherman Act in the supply of HDD suspension assemblies.

**REQUEST FOR ADMISSION NO. 17:**

Admit that TDK was a producer of HDD suspension assemblies.

**REQUEST FOR ADMISSION NO. 18:**

Admit that TDK was engaged in the sale of HDD suspension assemblies in the United States.

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

**REQUEST FOR ADMISSION NO. 19:**

Admit that HDD suspension assemblies are components of hard disk drives, which are used to store information electronically.

**REQUEST FOR ADMISSION NO. 20:**

Admit that hard disk drives use magnetic recording heads to read from and write onto rapidly spinning disks.

**REQUEST FOR ADMISSION NO. 21:**

Admit that suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

**REQUEST FOR ADMISSION NO. 22:**

Admit that HDD suspension assemblies are critical to the operation and performance of electronic devices that contain hard disk drives.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the impact of HDD suspension assemblies on American consumers and businesses is direct and substantial.

**REQUEST FOR ADMISSION NO. 24:**

Admit that hard disk drives were incorporated into some desktop and laptop computers.

**REQUEST FOR ADMISSION NO. 25:**

Admit that hard disk drives were incorporated into some game consoles.

**REQUEST FOR ADMISSION NO. 26:**

Admit that hard disk drives were incorporated into some set-top boxes or DVRs.

**REQUEST FOR ADMISSION NO. 27:**

Admit that hard disk drives were incorporated into some network servers.

**REQUEST FOR ADMISSION NO. 28:**

Admit that hard disk drives were incorporated into some workstations.

**REQUEST FOR ADMISSION NO. 29:**

Admit that hard disk drives were incorporated into some network video recorders.

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

1    **REQUEST FOR ADMISSION NO. 30:**

2         Admit that hard disk drives were incorporated into some enterprise storage arrays.

3    **REQUEST FOR ADMISSION NO. 31:**

4         Admit that hard disk drives were incorporated into some printers.

5    **REQUEST FOR ADMISSION NO. 32:**

6         Admit that hard disk drives were incorporated into some copy machines.

7    **REQUEST FOR ADMISSION NO. 33:**

8         Admit that hard disk drives were incorporated into electronic devices other than those

9    listed *supra*.

10   **REQUEST FOR ADMISSION NO. 34:**

11        Admit that hard disk drives were sold as stand-alone electronic storage devices.

12   **REQUEST FOR ADMISSION NO. 35:**

13        Admit that TDK participated in a conspiracy with NHK Spring, a purpose of which was to

14   fix the prices of HDD suspension assemblies sold in the United States.

15   **REQUEST FOR ADMISSION NO. 36:**

16        Admit that TDK's officers and employees engaged in discussions and attended meetings

17   with NHK Spring's officers and employees in the United States in furtherance of their conspiracy.

18   **REQUEST FOR ADMISSION NO. 37:**

19        Admit that TDK reached agreements with NHK Spring to refrain from competing on

20   prices for HDD suspension assemblies to be sold in the United States.

21   **REQUEST FOR ADMISSION NO. 38:**

22        Admit that TDK reached agreements with NHK Spring to fix the prices of HDD

23   suspension assemblies to be sold in the United States.

24   **REQUEST FOR ADMISSION NO. 39:**

25        Admit that TDK reached agreements with NHK Spring to allocate their respective market

26   shares for HDD suspension assemblies to be sold in the United States.

27   **REQUEST FOR ADMISSION NO. 40:**

28        Admit that TDK reached agreements with NHK Spring to refrain from competing on

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

1    prices for HDD suspension assemblies that were incorporated into electronic devices sold to

2    businesses and consumers in the United States.

3    **REQUEST FOR ADMISSION NO. 41:**

4         Admit that TDK reached agreements with NHK Spring to fix the prices of HDD

5    suspension assemblies that were incorporated into electronic devices sold to businesses and

6    consumers in the United States.

7    **REQUEST FOR ADMISSION NO. 42:**

8         Admit that TDK reached agreements with NHK Spring to allocate their respective market

9    shares for HDD suspension assemblies that were incorporated into electronic devices sold to

10   businesses and consumers in the United States.

11   **REQUEST FOR ADMISSION NO. 43:**

12        Admit that TDK and NHK Spring effectuated their agreements by exchanging pricing

13   information for HDD suspension assemblies to be sold in the United States.

14   **REQUEST FOR ADMISSION NO. 44:**

15        Admit that TDK and NHK Spring effectuated their agreements by exchanging anticipated

16   pricing quotes for HDD suspension assemblies to be sold in the United States.

17   **REQUEST FOR ADMISSION NO. 45:**

18        Admit that TDK relied on its agreements with NHK Spring to inform TDK's negotiations

19   with United States and foreign customers that purchased HDD suspension assemblies and

20   produced hard disk drives for sale in the United States.

21   **REQUEST FOR ADMISSION NO. 46:**

22        Admit that TDK relied on its agreements with NHK Spring to inform TDK's negotiations

23   with United States and foreign customers that purchased HDD suspension assemblies and

24   produced hard disk drives for delivery to the United States.

25   **REQUEST FOR ADMISSION NO. 47:**

26        Admit that TDK used pricing information that TDK exchanged with NHK Spring to

27   inform TDK's negotiations with United States and foreign customers that purchased HDD

28   suspension assemblies and produced hard disk drives for sale in the United States.

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

1   **REQUEST FOR ADMISSION NO. 48:**

2       Admit that TDK used pricing information that TDK exchanged with NHK Spring to

3   inform TDK's negotiations with United States and foreign customers that purchased HDD

4   suspension assemblies and produced hard disk drives for delivery to the United States.

5   **REQUEST FOR ADMISSION NO. 49:**

6       Admit that TDK used anticipated pricing quotes that TDK exchanged with NHK Spring to

7   inform TDK's negotiations with United States and foreign customers that purchased HDD

8   suspension assemblies and produced hard disk drives for sale in the United States.

9   **REQUEST FOR ADMISSION NO. 50:**

10      Admit that TDK used anticipated pricing quotes that TDK exchanged with NHK Spring to

11  inform TDK's negotiations with United States and foreign customers that purchased HDD

12  suspension assemblies and produced hard disk drives for delivery to the United States.

13  **REQUEST FOR ADMISSION NO. 51:**

14      Admit that TDK manufactured HDD suspension assemblies outside the United States.

15  **REQUEST FOR ADMISSION NO. 52:**

16      Admit that TDK sold HDD suspension assemblies in the United States.

17  **REQUEST FOR ADMISSION NO. 53:**

18      Admit that TDK sold HDD suspension assemblies for delivery to the United States.

19  **REQUEST FOR ADMISSION NO. 54:**

20      Admit that TDK sold foreign-manufactured HDD suspension assemblies outside the

21  United States for incorporation into hard disk drives that were sold in the United States.

22  **REQUEST FOR ADMISSION NO. 55:**

23      Admit that TDK sold foreign-manufactured HDD suspension assemblies outside the

24  United States for incorporation into hard disk drives that were for delivery to the United States.

25  **REQUEST FOR ADMISSION NO. 56:**

26      Admit that HDD suspension assemblies traveled in interstate trade and commerce within

27  the United States.

28

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

**REQUEST FOR ADMISSION NO. 57:**

Admit that HDD suspension assemblies substantially affected interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 58:**

Admit that hard disk drives incorporating HDD suspension assemblies traveled in import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 59:**

Admit that hard disk drives incorporating HDD suspension assemblies substantially affected import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division had a direct effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division had a substantial effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 62:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division had a reasonably foreseeable effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 63:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division had a direct effect on import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 64:**

Admit that the anticompetitive activity in the supply of HDD suspension assemblies that TDK reported to the U.S. Department of Justice Antitrust Division had a substantial effect on

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

1    import trade and commerce to the United States.

2    **REQUEST FOR ADMISSION NO. 65:**

3         Admit that the anticompetitive activity in the supply of HDD suspension assemblies that

4    TDK reported to the U.S. Department of Justice Antitrust Division had a reasonably foreseeable

5    effect on import trade and commerce to the United States.

6    **REQUEST FOR ADMISSION NO. 66:**

7         Admit that acts in furtherance of TDK's conspiracy with NHK Spring were carried out in

8    the United States.

9    **REQUEST FOR ADMISSION NO. 67:**

10        Admit that TDK's meetings and discussions with NHK Spring in furtherance of the

11   conspiracy took place in the United States.

12   **REQUEST FOR ADMISSION NO. 68:**

13        Admit that communications made in furtherance of TDK's conspiracy with NHK Spring

14   were transmitted through and stored on servers located in the United States.

15   **REQUEST FOR ADMISSION NO. 69:**

16        Admit that communications memorializing TDK's conspiratorial meetings and

17   discussions with NHK Spring were transmitted through and stored on servers located in the

18   United States.

19   **REQUEST FOR ADMISSION NO. 70:**

20        Admit that TDK negotiated with United States companies in the United States to sell

21   HDD suspension assemblies.

22   **REQUEST FOR ADMISSION NO. 71:**

23        Admit that TDK negotiated with United States companies in the United States to sell

24   HDD suspension assemblies at collusive and noncompetitive prices.

25   **REQUEST FOR ADMISSION NO. 72:**

26        Admit that TDK sold HDD suspension assemblies in the United States at collusive and

27   noncompetitive prices.

28

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO TDK
DEFENDANTS

**REQUEST FOR ADMISSION NO. 73:**

Admit that TDK sold HDD suspension assemblies for delivery to the United States at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 74:**

Admit that TDK accepted payment for HDD suspension assemblies sold in the United States at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 75:**

Admit that TDK accepted payment for HDD suspension assemblies sold for delivery to the United States at collusive and noncompetitive prices.

1  Dated:  October 1, 2020

2  */s/ Christopher T. Micheletti*                          */s/ Victoria Sims*

3  Christopher T. Micheletti                                Victoria Sims
   **ZELLE LLP**                                            **CUNEO GILBERT & LADUCA, LLP**

4  44 Montgomery St., Suite 3400                            4725 Wisconsin Avenue, NW, Suite 200
   San Francisco, CA 94104                                  Washington, DC 20016

5  Telephone:  (415) 693-0700                               Telephone:  (202) 789-3960
   Facsimile:  (415) 693-0770                               Facsimile:  (202) 789-1813

6  cmicheletti@zelle.com                                    vicky@cuneolaw.com

7
   */s/ Aaron M. Sheanin*                                   */s/ Shawn M. Raiter*

8  Aaron M. Sheanin                                         Shawn M. Raiter
   **ROBINS KAPLAN LLP**                                    **LARSON • KING, LLP**

9  46 Shattuck Square, Suite 22                             30 East Seventh Street, Suite 2800
   Berkeley, CA 94704                                       Saint Paul, MN 55101

10 Telephone:  (650) 784-4040                               Telephone:  (651) 312-6518
   Facsimile:  (650) 784-4041                               Facsimile:  (651) 789-4818

11 asheanin@robinskaplan.com                                sraiter@larsonking.com

12
   **Interim Co-Lead Class Counsel for the End-**          **Interim Co-Lead Class Counsel for the**
13 **User Plaintiffs**                                      **Reseller Plaintiffs**

14
                                                            */s/ Kenneth R. O'Rourke*
15                                                          Kenneth R. O'Rourke
                                                            **WILSON SONSINI GOODRICH & ROSATI**
16                                                          **Professional Corporation**
                                                            One Market Plaza
17                                                          Spear Tower, Suite 3300
                                                            San Francisco, CA 94105
18                                                          Telephone:  (415) 947-2000
                                                            Facsimile:  (415) 947-2099
19                                                          korourke@wsgr.com

20
                                                            **Counsel for Plaintiffs Seagate Technology**
21                                                          **LLC, Seagate Technology (Thailand) Ltd.,**
                                                            **Seagate Singapore International Headquarters**
22                                                          **Pte. Ltd., and Seagate Technology**
                                                            **International**
23

24

25

26

27

28
                                                            PLAINTIFFS' FIRST JOINT SET OF
                                 - 12 -                     REQUESTS FOR ADMISSION TO TDK
                                                            DEFENDANTS

1

**PROOF OF SERVICE**

2

I, Aaron M. Sheanin, declare under penalty of perjury:

3

I am a citizen of the United States and employed by Robins Kaplan LLP.  I am over the

4

age of eighteen years and not a party to the within entitled action. My business address is 46

5

Shattuck Square, Suite 22, Berkeley, California, 94704.

6

On October 1, 2020, I served the following document in the manner indicated below:

7

**PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR ADMISSION TO TDK
DEFENDANTS**

8

9

☒       **ELECTRONIC MAIL**: by causing said document to be served electronically to

10

the email addresses set forth below.

11

12

J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-5860
clay.everett@morganlewis.com

Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7000
mark.hamer@bakermckenzie.com

13

14

15

Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: (202) 955-1500
craiglee@huntonak.com

16

17

18

19

Dated: October 1, 2020

*/s/ Aaron M. Sheanin*

20

21

22

23

24

25

26

27

28

- 13 -

# EXHIBIT 6 TO

# DECLARATION OF J. CLAYTON EVERETT, JR.

Christopher T. Micheletti
**ZELLE LLP**
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:  (415) 693-0700
Facsimile:  (415) 693-0770
cmicheletti@zelle.com

Aaron M. Sheanin
**ROBINS KAPLAN LLP**
46 Shattuck Square, Suite 22
Berkeley, CA 94704
Telephone:  (650) 784-4040
Facsimile:  (650) 784-4041
asheanin@robinskaplan.com

*Interim Co-Lead Class Counsel for the*
*End-User Plaintiffs*

Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone:  (651) 312-6518
Facsimile:  (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the*
*Reseller Plaintiffs*

Kenneth R. O'Rourke
**WILSON SONSINI GOODRICH &**
**ROSATI**
**Professional Corporation**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:  (415) 947-2000
Facsimile:  (415) 947-2099
korourke@wsgr.com

*Counsel for Seagate Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 3:19-md-02918-MMC<br><br>MDL No. 2918 |
| THIS DOCUMENT RELATES TO<br><br>ALL ACTIONS | **PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR ADMISSION TO NHK SPRING DEFENDANTS** |

**PROPOUNDING PARTIES**:    End-User Plaintiffs, Reseller Plaintiffs, and Seagate
Plaintiffs

**RESPONDING PARTY**:    NHK Spring Co., Ltd., NHK International Corporation,
NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong
Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.

**SET NUMBER:**    One

Pursuant to Federal Rules of Civil Procedure 26 and 36, End-User Plaintiffs, Reseller
Plaintiffs, and Seagate Plaintiffs request that Defendants NHK Spring Co., Ltd., NHK
International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co.,
Ltd., and NAT Peripheral (H.K.) Co., Ltd. respond to each of the following requests for
production of documents and produce all responsive documents for inspection and copying within
30 days.

**DEFINITIONS**

1.    "HDD suspension assemblies" means hard disk drive suspension assemblies.

2.    "NHK Spring" means NHK Spring Co., Ltd., NHK International Corporation,
NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral
(H.K.) Co., Ltd.

3.    "TDK" means TDK Corporation, Magnecomp Precision Technology Public Co.,
Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and
Hutchinson Technology Inc.

**REQUEST FOR ADMISSION NO. 1:**

Admit that NHK Spring Co., Ltd. pled guilty to violating Section One of the Sherman
Antitrust Act in connection with its participation in a conspiracy to suppress and eliminate
competition for HDD suspension assemblies sold in the United States.

**REQUEST FOR ADMISSION NO. 2:**

Admit that NHK Spring Co., Ltd. agreed that it will not to make any public statement
contradicting the facts described in paragraph 4 of the Rule 11 Plea Agreement entered in *United
States v. NHK Spring Co., Ltd.*, Case 2:19-cr-20503-MAG-DRG (E.D. Mich.) (ECF No. 15), on

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

1   September 23, 2019.

2   **REQUEST FOR ADMISSION NO. 3:**

3       Admit that NHK Spring Co., Ltd. participated in the conspiracy that formed the basis of

4   its guilty plea for violating Section One of the Sherman Antitrust Act.

5   **REQUEST FOR ADMISSION NO. 4:**

6       Admit that NHK International Corporation participated in the conspiracy that formed the

7   basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust

8   Act.

9   **REQUEST FOR ADMISSION NO. 5:**

10      Admit that NHK Spring (Thailand) Co., Ltd. participated in the conspiracy that formed

11  the basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman

12  Antitrust Act.

13  **REQUEST FOR ADMISSION NO. 6:**

14      Admit that NAT Peripheral (Dong Guan) Co., Ltd. participated in the conspiracy that

15  formed the basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman

16  Antitrust Act.

17  **REQUEST FOR ADMISSION NO. 7:**

18      Admit that NAT Peripheral (H.K.) Co., Ltd. participated in the conspiracy that formed the

19  basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust

20  Act.

21  **REQUEST FOR ADMISSION NO. 8:**

22      Admit that Hitoshi Hashimoto participated in the conspiracy that formed the basis of NHK

23  Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust Act.

24  **REQUEST FOR ADMISSION NO. 9:**

25      Admit that Hiroyuki Tamura participated in the conspiracy that formed the basis of NHK

26  Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust Act.

27  **REQUEST FOR ADMISSION NO. 10:**

28      Admit that TDK Corporation participated in the conspiracy that formed the basis of NHK

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

1  Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust Act.

2  **REQUEST FOR ADMISSION NO. 11:**

3      Admit that Magnecomp Precision Technology Public Co., Ltd. participated in the

4  conspiracy that formed the basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One

5  of the Sherman Antitrust Act.

6  **REQUEST FOR ADMISSION NO. 12:**

7      Admit that Magnecomp Corporation participated in the conspiracy that formed the basis

8  of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust Act.

9  **REQUEST FOR ADMISSION NO. 13:**

10      Admit that SAE Magnetics (H.K.) Ltd. participated in the conspiracy that formed the basis

11  of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust Act.

12  **REQUEST FOR ADMISSION NO. 14:**

13      Admit that Headway Technologies, Inc. participated in the conspiracy that formed the

14  basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust

15  Act.

16  **REQUEST FOR ADMISSION NO. 15:**

17      Admit that Hutchinson Technology Inc. participated in the conspiracy that formed the

18  basis of NHK Spring Co., Ltd.'s guilty plea for violating Section One of the Sherman Antitrust

19  Act.

20  **REQUEST FOR ADMISSION NO. 16:**

21      Admit that the conspiracy to which NHK Spring Co., Ltd. pled guilty included price-

22  fixing.

23  **REQUEST FOR ADMISSION NO. 17:**

24      Admit that the conspiracy to which NHK Spring Co., Ltd. pled guilty included bid-

25  rigging.

26  **REQUEST FOR ADMISSION NO. 18:**

27      Admit that the conspiracy to which NHK Spring Co., Ltd. pled guilty included market

28  allocation.

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

**REQUEST FOR ADMISSION NO. 19:**

Admit that the conspiracy to which NHK Spring Co., Ltd. pled guilty affected United States commerce.

**REQUEST FOR ADMISSION NO. 20:**

Admit that NHK Spring was a producer of HDD suspension assemblies.

**REQUEST FOR ADMISSION NO. 21:**

Admit that NHK Spring was engaged in the sale of HDD suspension assemblies in the United States.

**REQUEST FOR ADMISSION NO. 22:**

Admit that HDD suspension assemblies are components of hard disk drives, which are used to store information electronically.

**REQUEST FOR ADMISSION NO. 23:**

Admit that hard disk drives use magnetic recording heads to read from and write onto rapidly spinning disks.

**REQUEST FOR ADMISSION NO. 24:**

Admit that suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

**REQUEST FOR ADMISSION NO. 25:**

Admit that HDD suspension assemblies are critical to the operation and performance of electronic devices that contain hard disk drives.

**REQUEST FOR ADMISSION NO. 26:**

Admit that the impact of HDD suspension assemblies on American consumers and businesses is direct and substantial.

**REQUEST FOR ADMISSION NO. 27:**

Admit that the volume of affected U.S. commerce attributable to NHK Spring in the conspiracy admitted in the plea agreement with the Department of Justice is at least $46,874,950.

**REQUEST FOR ADMISSION NO. 28:**

Admit that the volume of affected U.S. commerce attributable to NHK Spring in the

1   conspiracy admitted in the plea agreement with the Department of Justice exceeded $46,874,950.

2   **REQUEST FOR ADMISSION NO. 29:**

3       Admit that the U.S. volume of affected commerce amount of $46,874,950 in NHK

4   Spring's plea agreement does not include all of NHK Spring's sales of HDD suspension

5   assemblies incorporated into hard disk drives sold in the United States or further incorporated into

6   computers sold in the United States.

7   **REQUEST FOR ADMISSION NO. 30:**

8       Admit that hard disk drives were incorporated into some desktop and laptop computers.

9   **REQUEST FOR ADMISSION NO. 31:**

10      Admit that hard disk drives were incorporated into some game consoles.

11  **REQUEST FOR ADMISSION NO. 32:**

12      Admit that hard disk drives were incorporated into some set-top boxes or DVRs.

13  **REQUEST FOR ADMISSION NO. 33:**

14      Admit that hard disk drives were incorporated into some network servers.

15  **REQUEST FOR ADMISSION NO. 34:**

16      Admit that hard disk drives were incorporated into some workstations.

17  **REQUEST FOR ADMISSION NO. 35:**

18      Admit that hard disk drives were incorporated into some network video recorders.

19  **REQUEST FOR ADMISSION NO. 36:**

20      Admit that hard disk drives were incorporated into some enterprise storage arrays.

21  **REQUEST FOR ADMISSION NO. 37:**

22      Admit that hard disk drives were incorporated into some printers.

23  **REQUEST FOR ADMISSION NO. 38:**

24      Admit that hard disk drives were incorporated into some copy machines.

25  **REQUEST FOR ADMISSION NO. 39:**

26      Admit that hard disk drives were incorporated into electronic devices other than those

27  listed *supra*.

28

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

**REQUEST FOR ADMISSION NO. 40:**

Admit that hard disk drives were sold as stand-alone electronic storage devices.

**REQUEST FOR ADMISSION NO. 41:**

Admit that NHK Spring participated in a conspiracy with TDK, a purpose of which was to fix the prices of HDD suspension assemblies sold in the United States.

**REQUEST FOR ADMISSION NO. 42:**

Admit that NHK Spring's officers and employees engaged in discussions and attended meetings with TDK's officers and employees in the United States in furtherance of their conspiracy.

**REQUEST FOR ADMISSION NO. 43:**

Admit that NHK Spring reached agreements with TDK to refrain from competing on prices for HDD suspension assemblies to be sold in the United States.

**REQUEST FOR ADMISSION NO. 44:**

Admit that NHK Spring reached agreements with TDK to fix the prices of HDD suspension assemblies to be sold in the United States.

**REQUEST FOR ADMISSION NO. 45:**

Admit that NHK Spring reached agreements with TDK to allocate their respective market shares for HDD suspension assemblies to be sold in the United States.

**REQUEST FOR ADMISSION NO. 46:**

Admit that NHK Spring reached agreements with TDK to refrain from competing on prices for HDD suspension assemblies that were incorporated into electronic devices sold to businesses and consumers in the United States.

**REQUEST FOR ADMISSION NO. 47:**

Admit that NHK Spring reached agreements with TDK to fix the prices of HDD suspension assemblies that were incorporated into electronic devices sold to businesses and consumers in the United States.

**REQUEST FOR ADMISSION NO. 48:**

Admit that NHK Spring reached agreements with TDK to allocate their respective market

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

1    shares for HDD suspension assemblies that were incorporated into electronic devices sold to

2    businesses and consumers in the United States.

3    **REQUEST FOR ADMISSION NO. 49:**

4        Admit that NHK Spring and TDK effectuated their agreements by exchanging pricing

5    information for HDD suspension assemblies to be sold in the United States.

6    **REQUEST FOR ADMISSION NO. 50:**

7        Admit that NHK Spring and TDK effectuated their agreements by exchanging anticipated

8    pricing quotes for HDD suspension assemblies to be sold in the United States.

9    **REQUEST FOR ADMISSION NO. 51:**

10        Admit that NHK Spring relied on its agreements with TDK to inform NHK Spring's

11    negotiations with United States and foreign customers that purchased HDD suspension

12    assemblies and produced hard disk drives for sale in the United States.

13    **REQUEST FOR ADMISSION NO. 52:**

14        Admit that NHK Spring relied on its agreements with TDK to inform NHK Spring's

15    negotiations with United States and foreign customers that purchased HDD suspension

16    assemblies and produced hard disk drives for delivery to the United States.

17    **REQUEST FOR ADMISSION NO. 53:**

18        Admit that NHK Spring used pricing information that NHK Spring exchanged with TDK

19    to inform NHK Spring's negotiations with United States and foreign customers that purchased

20    HDD suspension assemblies and produced hard disk drives for sale in the United States.

21    **REQUEST FOR ADMISSION NO. 54:**

22        Admit that NHK Spring used pricing information that NHK Spring exchanged with TDK

23    to inform NHK Spring's negotiations with United States and foreign customers that purchased

24    HDD suspension assemblies and produced hard disk drives for delivery to the United States.

25    **REQUEST FOR ADMISSION NO. 55:**

26        Admit that NHK Spring used anticipated pricing quotes that NHK Spring exchanged with

27    TDK to inform NHK Spring's negotiations with United States and foreign customers that

28    purchased HDD suspension assemblies and produced hard disk drives for sale in the United

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

1  States.

2  **REQUEST FOR ADMISSION NO. 56:**

3      Admit that NHK Spring used anticipated pricing quotes that NHK Spring exchanged with

4  TDK to inform NHK Spring's negotiations with United States and foreign customers that

5  purchased HDD suspension assemblies and produced hard disk drives for delivery to the United

6  States.

7  **REQUEST FOR ADMISSION NO. 57:**

8      Admit that NHK Spring manufactured HDD suspension assemblies outside the United

9  States.

10  **REQUEST FOR ADMISSION NO. 58:**

11      Admit that NHK Spring sold HDD suspension assemblies in the United States.

12  **REQUEST FOR ADMISSION NO. 59:**

13      Admit that NHK Spring sold HDD suspension assemblies for delivery to the United

14  States.

15  **REQUEST FOR ADMISSION NO. 60:**

16      Admit that NHK Spring sold foreign-manufactured HDD suspension assemblies outside

17  the United States for incorporation into hard disk drives that were sold in the United States.

18  **REQUEST FOR ADMISSION NO. 61:**

19      Admit that NHK Spring sold foreign-manufactured HDD suspension assemblies outside

20  the United States for incorporation into hard disk drives that were for delivery to the United

21  States.

22  **REQUEST FOR ADMISSION NO. 62:**

23      Admit that HDD suspension assemblies traveled in interstate trade and commerce within

24  the United States.

25  **REQUEST FOR ADMISSION NO. 63:**

26      Admit that HDD suspension assemblies substantially affected interstate trade and

27  commerce within the United States.

28

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

**REQUEST FOR ADMISSION NO. 64:**

Admit that hard disk drives incorporating HDD suspension assemblies traveled in import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 65:**

Admit that hard disk drives incorporating HDD suspension assemblies substantially affected import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 66:**

Admit that NHK Spring's conspiracy with TDK had a direct effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 67:**

Admit that NHK Spring's conspiracy with TDK had a substantial effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 68:**

Admit that NHK Spring's conspiracy with TDK had a reasonably foreseeable effect on interstate trade and commerce within the United States.

**REQUEST FOR ADMISSION NO. 69:**

Admit that NHK Spring's conspiracy with TDK had a direct effect on import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 70:**

Admit that NHK Spring's conspiracy with TDK had a substantial effect on import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 71:**

Admit that NHK Spring's conspiracy with TDK had a reasonably foreseeable effect on import trade and commerce to the United States.

**REQUEST FOR ADMISSION NO. 72:**

Admit that acts in furtherance of NHK Spring's conspiracy with TDK were carried out in the United States.

**REQUEST FOR ADMISSION NO. 73:**

Admit that NHK Spring's meetings and discussions with TDK in furtherance of the conspiracy took place in the United States and elsewhere.

**REQUEST FOR ADMISSION NO. 74:**

Admit that communications made in furtherance of NHK Spring's conspiracy with TDK were transmitted through and stored on servers located in the United States.

**REQUEST FOR ADMISSION NO. 75:**

Admit that communications memorializing NHK Spring's conspiratorial meetings and discussions with TDK were transmitted through and stored on servers located in the United States.

**REQUEST FOR ADMISSION NO. 76:**

Admit that NHK Spring negotiated with United States companies in the United States to sell HDD suspension assemblies.

**REQUEST FOR ADMISSION NO. 77:**

Admit that NHK Spring negotiated with United States companies in the United States to sell HDD suspension assemblies at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 78:**

Admit that NHK Spring sold HDD suspension assemblies in the United States at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 79:**

Admit that NHK Spring sold HDD suspension assemblies for delivery to the United States at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 80:**

Admit that NHK Spring accepted payment for HDD suspension assemblies sold in the United States at collusive and noncompetitive prices.

**REQUEST FOR ADMISSION NO. 81:**

Admit that NHK Spring accepted payment for HDD suspension assemblies sold for delivery to the United States at collusive and noncompetitive prices.

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS

1  Dated:  October 1, 2020

2  /s/ Christopher T. Micheletti              /s/ Victoria Sims

3  Christopher T. Micheletti              Victoria Sims
   **ZELLE LLP**                          **CUNEO GILBERT & LADUCA, LLP**
4  44 Montgomery St., Suite 3400          4725 Wisconsin Avenue, NW, Suite 200
   San Francisco, CA 94104               Washington, DC 20016
5  Telephone:  (415) 693-0700             Telephone:  (202) 789-3960
   Facsimile:  (415) 693-0770             Facsimile:  (202) 789-1813
6  cmicheletti@zelle.com                  vicky@cuneolaw.com

7
   /s/ Aaron M. Sheanin                   /s/ Shawn M. Raiter
8  Aaron M. Sheanin                       Shawn M. Raiter
   **ROBINS KAPLAN LLP**                  **LARSON • KING, LLP**
9  46 Shattuck Square, Suite 22           30 East Seventh Street, Suite 2800
   Berkeley, CA 94704                     Saint Paul, MN 55101
10 Telephone:  (650) 784-4040             Telephone:  (651) 312-6518
   Facsimile:  (650) 784-4041             Facsimile:  (651) 789-4818
11 asheanin@robinskaplan.com              sraiter@larsonking.com

12
   ***Interim Co-Lead Class Counsel for the End-***   ***Interim Co-Lead Class Counsel for the***
13 ***User Plaintiffs***                             ***Reseller Plaintiffs***

14
                                          /s/ Kenneth R. O'Rourke
15                                        Kenneth R. O'Rourke
                                          **WILSON SONSINI GOODRICH & ROSATI**
16                                          **Professional Corporation**
                                          One Market Plaza
17                                        Spear Tower, Suite 3300
                                          San Francisco, CA 94105
18                                        Telephone:  (415) 947-2000
                                          Facsimile:  (415) 947-2099
19                                        korourke@wsgr.com

20
                                          ***Counsel for Plaintiffs Seagate Technology***
21                                        ***LLC, Seagate Technology (Thailand) Ltd.,***
                                          ***Seagate Singapore International Headquarters***
22                                        ***Pte. Ltd., and Seagate Technology***
                                          ***International***
23

24

25

26

27

28
                                          PLAINTIFFS' FIRST JOINT SET OF
                                          REQUESTS FOR ADMISSION TO NHK
                                          SPRING DEFENDANTS

1

## PROOF OF SERVICE

2      I, Aaron M. Sheanin, declare under penalty of perjury:

3      I am a citizen of the United States and employed by Robins Kaplan LLP.  I am over the age

4 of eighteen years and not a party to the within entitled action. My business address is 46 Shattuck

5 Square, Suite 22, Berkeley, California 94704.

6      On October 1, 2020, I served the following document in the manner indicated below:

7 **PLAINTIFFS' FIRST JOINT SET OF REQUESTS FOR ADMISSION TO NHK SPRING DEFENDANTS**

8

9      ☒    **ELECTRONIC MAIL**: by causing said document to be served electronically to

10 the email addresses set forth below.

11
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
12 1111 Pennsylvania Ave., NW
Washington, DC 20004
13 Telephone: (202) 739-5860
clay.everett@morganlewis.com

Mark H. Hamer
BAKER & McKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7000
mark.hamer@bakermckenzie.com

14

15 Craig Y. Lee
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
16 Washington, D.C. 20037
Telephone: (202) 955-1500
17 craiglee@huntonak.com

18

19

20      Dated: October 1, 2020          */s/ Aaron M. Sheanin*

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST JOINT SET OF
REQUESTS FOR ADMISSION TO NHK
SPRING DEFENDANTS