1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No.  19-md-02918-MMC |
| | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS END-USER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND RESELLER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT; AFFORDING PLAINTIFFS LEAVE TO AMEND** |
| This Document Relates to: END-USER ACTIONS and RESELLER ACTIONS | |

Before the Court is defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co, Ltd., NAT Peripheral (H.K.) Co., Ltd., TDK Corporation, Magnecomp Precision Technology Public Co, Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology Inc.'s Motion, filed April 17, 2020, "to Dismiss (1) End-Users' Consolidated Class Action Complaint and (2) Reseller Plaintiffs' Consolidated Amended Complaint." End-User Plaintiffs and Reseller Plaintiffs have filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

---

[1] By order filed July 10, 2020, the Court took the matter under submission.

1

**BACKGROUND**

Plaintiffs, in their respective operative complaints, specifically, End-User Plaintiffs'

Consolidated Class Action Complaint ("End-User Compl.") and Reseller Plaintiffs'

Corrected Consolidated Amended Complaint ("Reseller AC"), assert claims based on

their allegations that defendants engaged in a conspiracy to fix the prices of "hard disk

drive ('HDD') suspension assemblies." (See End-User Compl. ¶ 1; Reseller AC ¶ 1.)[2]

Plaintiffs allege "HDDs use magnetism to write, retrieve and store vast amounts of

information electronically." (See End-User Compl. ¶ 87; Reseller AC ¶ 43.)  "HDDs are

comprised of, among other things, spinning magnetic disks and magnetic heads that fly

over the disks, reading and writing the information contained on the disks." (End-User

Compl. ¶ 88; Reseller AC ¶ 44.)  "HDD suspension assemblies hold the magnetic heads

in position over the disks," and, consequently, are "essential to the functioning of HDDs."

(End-User Compl. ¶ 88; Reseller AC ¶ 44.)

According to plaintiffs, defendants sold HDD suspension assemblies to HDD

manufacturers or their "foreign subsidiaries," which manufacturers, in turn, sold HDDs

either as "stand-alone devices" or to companies that incorporated HDDs into other

products, such as computers.  (See End-User Compl. ¶¶ 149-153; see also Reseller AC

¶ 45.)

End-User Plaintiffs, comprising forty-seven individuals, each allegedly purchased

for his or her own use "at least one [f]inished [p]roduct containing HDD suspension

assemblies manufactured or sold by at least one [d]efendant."  (See End-User Compl.

¶¶ 18-64, 86.)  Reseller Plaintiffs, comprising four companies and one individual, each

allegedly purchased "for resale" at least "one HDD suspension assembly indirectly from

at least one [d]efendant."  (See Reseller AC ¶¶ 22-26, 105.)  Plaintiffs allege they each

---

[2] Defendants, for purposes of the instant motion, do not challenge the sufficiency of plaintiffs' allegations that a price-fixing conspiracy existed, and, consequently, the Court does not set forth herein plaintiffs' factual allegations in support of the existence of such conspiracy.

United States District Court
Northern District of California

1  paid "inflated" prices because the prices defendants charged their customers were

2  "passed on" to plaintiffs.  (See End-User Compl. ¶ 166; Reseller AC ¶ 117.)

3  Based on the above allegations, End-User Plaintiffs and Reseller Plaintiffs, on

4  their own behalf and on behalf of putative class members, bring claims asserting

5  (1) violations of the Sherman Act, (2) violations of numerous state antitrust statutes,

6  (3) violations of numerous states consumer protection statutes, and (4) "unjust

7  enrichment" under the laws of numerous states.

8  **DISCUSSION**

9  Defendants argue each claim asserted by End-User Plaintiffs and Reseller

10  Plaintiffs is subject to dismissal.

11  At the outset, the Court notes that Reseller Plaintiffs, in their opposition to the

12  instant motion, (1) "withdraw their claims under Alaska and Alabama law" (see Pls.' Opp.

13  at 20:12) and (2) "voluntarily dismiss their claim under the Vermont consumer protection

14  statute" (see Pls.' Opp. at 27:6-7).  Accordingly, to the extent defendants' motion seeks

15  dismissal of those claims, the motion will be granted as unopposed.

16  The Court next turns to defendants' arguments as to the remaining claims.

17  **A.  Standing**

18  To satisfy Article III's standing requirements, a "plaintiff must have (1) suffered an

19  injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

20  (3) that it is likely to be redressed by a favorable judicial decision."  See Spokeo, Inc. v.

21  Robins, 136 S. Ct. 1540, 1547 (2016).  "Where, as here, a case is at the pleading stage,

22  the plaintiff must clearly allege facts demonstrating each element."  Id. (internal quotation,

23  alteration and citation omitted).

24  **1.  Injury In Fact**

25  As noted, plaintiffs allege they paid "inflated" prices for the products they

26  purchased.  (See End-User Compl. ¶ 166; Reseller AC ¶ 117.)  Defendants, for purposes

27  of the instant motion, do not challenge that allegation.

28  //

United States District Court
Northern District of California

### 2. Fairly Traceable

Defendants argue plaintiffs have not pleaded sufficient facts to support a finding that plaintiffs' claimed injury, overpaying for the product(s) each plaintiff purchased, is fairly traceable to the alleged price-fixing conspiracy.

To sufficiently plead traceability in an indirect purchaser action, the plaintiff must allege facts to support a finding that defendants "overcharged" the individuals or entities who purchased directly from them and that "some or all of that overcharge was passed on" to each plaintiff "through each of the various intermediate levels of the distribution chain." See Jones v. Micron Technology Inc., 400 F. Supp. 3d 897, 907 (N.D. Cal. 2019); In re Automobile Parts Antitrust Litig., 29 F. Supp. 3d 982, 997 (E.D. Mich. 2014) (same).

Here, plaintiffs allege, defendants agreed to, and did, fix the prices of suspension assemblies they charged companies who purchased directly from them, which direct purchasers are identified by plaintiffs as HDD manufacturers, specifically, Seagate Technology, LLC, Western Digital Corporation, Toshiba Electronics & Device Storage Corporation, Hitachi Global Storage Technologies, and Samsung Electronics Co., or their "foreign subsidiaries." (See, e.g., End-User Compl. ¶¶ 89, 135, 152; Reseller AC ¶¶ 5, 45, 77.) Defendants do not challenge the sufficiency of plaintiffs' allegations that direct purchasers were overcharged by defendants. Rather, defendants challenge the sufficiency of plaintiffs' allegations that the asserted overcharge paid by direct purchasers was passed on through the chain of distribution to plaintiffs.

In that respect, plaintiffs allege the following: "HDD manufacturers and other purchasers of HDD suspension assemblies passed on inflated prices to [p]laintiffs and members of the Classes." (See End-User Compl. ¶ 166; Reseller AC ¶ 117.) As noted, however, a plaintiff must "clearly allege facts" demonstrating each element of standing, see Spokeo, 136 S. Ct. at 1547, and plaintiffs' respective pleadings fail to include facts to support the above-quoted conclusion, see, e.g., Los Gatos Mercantile, Inc. v. E.I. DuPont de Nemours, 2015 WL 4755335, at *15 (N.D. Cal. August 11, 2015) (dismissing for lack of standing indirect purchaser's claims, where plaintiffs did not "allege facts showing that

4

the resulting overcharges to [direct purchasers] were passed down").

The respective pleadings contain no facts from which each participant in the chain of distribution can be identified, beginning with the direct purchasers and continuing through the chain.  Although plaintiffs identify large numbers of products containing suspension assemblies that an end-user or reseller might purchase (see End-User Compl. ¶¶ 1, 83, 87, 89-90, 167; Reseller AC ¶¶ 2, 43, 45, 151), and what appear to be numerous possible chains of distribution for those products (see End-User Compl. ¶¶ 65-74, 83.b, 135, 137, 149-53; Reseller AC ¶¶ 3, 5, 27- 36, 45-46, 77), plaintiffs do not allege the type(s) of product(s) any named plaintiff purchased and from whom in the chain of distribution any named plaintiff made such purchase(s) (see End-User Compl. ¶¶ 18-64; Reseller AC ¶¶ 22-26).  See Jones, 400 F. Supp. 3d at 907-08 (dismissing antitrust claims for lack of standing, where indirect purchasers did not "identify the pertinent [companies] or retailers who manufactured and/or sold" products to plaintiffs, and where plaintiffs failed to provide "detail concerning the varieties of types, makes, and models of the products implicated in the [c]omplaint"); In re Magnesium Oxide Antitrust Litig., 2011 WL 5008090, at *7 (D. N.J. October 20, 2011) (dismissing antitrust claims for lack of standing, where indirect purchasers "fail[ed] to specify" products they purchased).

Nor do the respective pleadings contain facts setting forth directly, or from which a reasonable inference can be drawn, that each participant in the chain necessarily passed on the asserted overcharge to the next participant.  See Jones, 400 F. Supp. 3d at 980 n.2 (noting, for example, if a product "contains three components, of which [the price-fixed component] is one, it is more likely that an increase in [the price-fixing component's] price will affect the overall price of the [product] than if the [product] contained thirty components"); Magnesium Oxide, 2011 WL 5008090, at *7 (noting, as to "foreseeable effect" of price-fixed mineral, difference between products in which price-fixed mineral is "major ingredient[ ]" and products containing only "trace amounts" thereof).

Accordingly, plaintiffs' claims are subject to dismissal for lack of standing, with leave to amend to cure the deficiencies identified above.

### 3. Place of Purchase

In their AC, Reseller Plaintiffs assert, albeit in a few titled Claims, violations of numerous state laws.  Specifically, the Third Claim for Relief is based on violations of antitrust statutes under the laws of twenty-seven states, the Fourth Claim for Relief is based on violations of consumer protection statutes under the laws of nine states, and the Fifth Claim for Relief is based on unjust enrichment under the laws of thirty-three states.  Reseller Plaintiffs, which, as noted, consist of four companies and one individual, allege they made their respective purchases in five of those states, namely, California, Michigan, Minnesota, New York, and North Carolina.  (See Reseller AC ¶¶ 22-26.)

Defendants argue that, to the extent Reseller Plaintiffs seek relief under the laws of any state other than those in which they allegedly made a purchase, Reseller Plaintiffs lack standing.[3]

As defendants point out, when a putative class action is brought by indirect purchasers, "the strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims" and to dismiss for lack of standing claims arising under the laws of states in which none of the named plaintiffs made a purchase.  See In re Capacitors Antitrust Litig., 154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) (citing cases so holding).  In response, plaintiffs, relying on Melendres v. Arpaio, 784 F.3d 1254 (9th Cir. 2015), argue that the states in which the named plaintiffs made purchases is potentially relevant to class certification, but not to standing.  Melendres, however, is readily distinguishable on its facts, as the named plaintiffs therein, on behalf of themselves and the members of the class they sought to represent, asserted claims under a single statute for injuries sustained in a single county.  See id. at 1262-63.  Here, by contrast, Reseller Plaintiffs seek to assert claims under the laws of various states in which they do not claim to have

---

[3] Defendants do not make this argument as to End-User Plaintiffs, all of whom allege claims under state laws that correspond to the states in which they allegedly purchased a product.

been injured.

Accordingly, to the extent Reseller Plaintiffs' Third, Fourth, and Fifth Claims for Relief are based on state laws other than California, Michigan, Minnesota, New York, and North Carolina, the claims are subject to dismissal for lack of standing,[4] without prejudice to Reseller Plaintiffs' adding named plaintiffs who have standing to assert claims under the laws of those other states.

**B.  Failure to State A Claim**

As set forth above, the Court will afford plaintiffs leave to amend their respective pleadings to address the above-noted deficiencies.  Under such circumstances, the Court finds it appropriate to consider additional arguments defendants have made with respect to the First and Second Claims for Relief, the two federal claims alleged here.

### 1.  First Claim for Relief:  Injunctive Relief

In their respective pleadings, End-User Plaintiffs and Reseller Plaintiffs assert as the First Claim for Relief a claim for injunctive relief under the Clayton Act.

Under the Clayton Act, "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws."  See 15 U.S.C. § 26.  The violation of the antitrust laws on which plaintiffs' claims are based is defendants' alleged conspiracy to fix the prices of HDD suspension assemblies, in violation of the Sherman Act's prohibition against conspiracies "in restraint

---

[4] Specifically, (1) Reseller Plaintiffs' Third Claim for Relief is subject to dismissal to the extent it is based on violations of Arizona, Connecticut, District of Columbia, Hawaii, Iowa, Kansas, Maine, Maryland, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin law; (2) Reseller Plaintiffs' Fourth Claim for Relief is subject to dismissal to the extent it is based on violations of Arkansas, Colorado, Delaware, Florida, New Jersey, New Mexico, and South Carolina law; and (3) Reseller Plaintiffs' Fifth Claim for Relief is subject to dismissal to the extent it is based on violations of Arkansas, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Maryland, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin law.

United States District Court
Northern District of California

1   of trade." See 15 U.S.C. § 1.

2       Defendants argue the claim is subject to dismissal on the ground that plaintiffs fail

3   to allege facts to show there is an "ongoing violation." (See Defs.' Mot. at 5.)

4       To establish a Clayton Act claim for injunctive relief, the plaintiff must show "a real

5   threat of future violation or a contemporary violation of a nature likely to continue to

6   recur." See United States v. Oregon State Medical Society, 343 U.S. 326, 333-34 (1952)

7   (affirming dismissal of Clayton Act claim for injunction, where conduct alleged to be in

8   violation of antitrust laws "discontinued" prior to filing of lawsuit); see also O'Shea v.

9   Littleton, 414 U.S. 488, 502 (1974) (observing "basic requisites of the issuance of

10   equitable relief" include "likelihood of substantial and immediate irreparable injury").

11       Plaintiffs, although alleging defendants engaged in the price-fixing conspiracy

12   "from 2003 to May 2016" (see End-User Compl. ¶ 7; Reseller AC ¶ 57), do not allege that

13   any defendant has, after May 2016, sold HDD suspension assemblies at fixed prices or

14   otherwise engaged in a violation of antitrust laws. Plaintiffs also fail to allege facts from

15   which it can be inferred that any defendant is likely, at some point in the future, to repeat

16   the conspiratorial conduct alleged to have occurred from 2003 to 2016. See United Food

17   & Commercial Workers v. Teikoku Pharma USA, Inc., 2015 WL 4397396, at *3 (N.D. Cal.

18   July 17, 2015) (dismissing Clayton Act claim for injunctive relief, where plaintiffs failed to

19   allege facts identifying "any ongoing or future harm caused by the alleged Sherman Act

20   violations").

21       In their opposition, plaintiffs rely on cases applying the principle that a defendant's

22   voluntary cessation of challenged conduct does not, by itself, require dismissal of a claim

23   for injunctive relief. In the cited cases, however, the defendants there, unlike here,

24   allegedly were still engaging in the challenged conduct at the time the complaints were

25   filed, and the issue presented was whether their subsequent "cessation" during the

26   course of ongoing litigation mooted the controversy. See Friends of the Earth, Inc. v.

27   Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 184, 189-94 (2000) (directing

28   lower court, in case in which challenged conduct "was occurring at the time the complaint

was filed," to determine whether defendant's subsequent "voluntary conduct" ceasing the challenged practice rendered case "moot"); United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 200-04 (1968) (holding, in action challenging conduct ongoing at time complaint was filed, case did not later become moot when defendants stated "it would be uneconomical for them to engage in any further joint operations").

Accordingly, plaintiffs' respective First Causes of Action are subject to dismissal. The Court will, however, afford plaintiffs leave to amend to allege, if they can do so, facts to support a finding that injunctive relief is warranted.

### 2. Second Claim for Relief:  Damages

In their respective pleadings, End-User Plaintiffs and Reseller Plaintiffs assert as the Second Claim for Relief a claim for treble damages under the Clayton Act, based on defendants' alleged violations of the Sherman Act.

Under the Clayton Act, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court . . . and shall recover threefold the damages by him sustained." See 15 U.S.C. § 15(a).

Defendants argue that indirect purchasers of an allegedly price-fixed product cannot bring a claim for damages under the Clayton Act.  As set forth below, the Court agrees.

In Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), the Supreme Court held that only "direct purchasers" could bring a claim for damages under the Clayton Act.  See id. at 745-46.  In so doing, the Supreme Court determined that "allowing indirect purchasers to recover using pass-on theories . . . would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant," see id. at 740, a result the Supreme Court found would impose unwarranted "burdens" on "the effective enforcement of the antitrust laws," see id. at 741.

//

9

1    Plaintiffs argue the rule set forth in <u>Illinois Brick</u> should be limited to cases in which

2    direct purchasers are "better suited" than indirect purchasers to assert Clayton Act

3    claims, and contend that, in the instant case, "the direct purchasers were primarily foreign

4    companies . . . that purchased in foreign commerce . . . and therefore may not be allowed

5    to bring Clayton Act claims."  (<u>See</u> Pls.' Opp. at 20:23-28.)  The Court is not persuaded

6    that such an exception should be recognized.

7    In <u>Illinois Brick</u>, the Supreme Court acknowledged that "direct purchasers

8    sometimes may refrain from bringing a treble damages suit for fear of disrupting relations

9    with their suppliers," <u>see</u> <u>Illinois Brick</u>, 431 U.S. at 746," but nonetheless barred suits for

10   damages by all indirect purchasers.  More recently, the Supreme Court, rejecting an

11   argument by indirect purchasers that the rule announced in <u>Illinois Brick</u> should not be

12   applied in cases where direct purchasers are "public utilities that pass on 100 percent of

13   their costs to their customers," declined to "carve out exceptions."  <u>See</u> <u>Kansas v.</u>

14   <u>Utilicorp United, Inc.</u>, 497 U.S. 199, 208, 216-17 (1990) (explaining that, although the

15   "rationales" underlying <u>Illinois Brick</u> "will not apply with equal force in all cases," the

16   "possibility of allowing an exception, even in rather meritorious circumstances, would

17   undermine the rule"); <u>see</u> <u>also</u> <u>Delaware Valley Surgical Supply Inc. v. Johnson &</u>

18   <u>Johnson</u>, 523 F.3d 1116, 1122 (9th Cir. 2008) (observing "Supreme Court jurisprudence

19   has been neither vague nor ambiguous in establishing the direct purchaser rule").

20   Accordingly, plaintiffs' respective Second Claims for Relief are subject to dismissal

21   without leave to amend.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED, as follows.

1.  End-User Plaintiffs' Consolidated Class Action Complaint is hereby DISMISSED, with leave to amend all claims with the exception of the Second Claim for Relief.  Any such amended pleading shall be filed no later than November 20, 2020.

2.  Reseller Plaintiffs' Corrected Consolidated Amended Complaint is hereby DISMISSED, with leave to amend all claims with the exception of the Second Claim for Relief.  Any such amended pleading shall be filed no later than November 20, 2020.

**IT IS SO ORDERED.**

Dated: October 23, 2020

MAXINE M. CHESNEY
United States District Judge