UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 19-md-02918-MMC<br><br>MDL No. 2918<br><br>**JOINT LETTER BRIEF REGARDING DEFENDANT TDK'S OBJECTION TO PRODUCTION OF DISCIPLINARY RECORDS**<br><br>Judge:        Hon. Maxine M. Chesney<br>Courtroom: 7, 19th Floor |

Plaintiffs move to compel TDK[1] to produce executive and employee disciplinary records. The records stem from TDK's discipline of certain executives and employees for their participation in conduct relating to Plaintiffs' antitrust and breach of contract claims in this case. TDK contests relevancy. The parties are at an impasse. Plaintiffs jointly propounded Requests for Production ("Plaintiffs' RFPs") Nos. 54 and 62 on TDK on August 3, 2020, seeking the records. TDK served Responses and Objections to Plaintiffs' RFPs (attached as Exhibit A) on September 2, 2020. Per Your Honor's Standing Order, the parties met and conferred multiple times telephonically on December 16, 2020, January 7, 2021, and January 12, 2021, and had parallel correspondence. The parties also have complied with Section 9 of the Northern District's Guidelines for Professional Conduct.

---

[1] "TDK" herein comprises TDK Corporation, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.

Dated:  January 20, 2021

Respectfully submitted,

| | |
|---|---|
| */s/ Victoria Sims*<br>Victoria Sims<br>**CUNEO GILBERT & LADUCA, LLP**<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>Telephone:  (202) 789-3960<br>Facsimile:  (202) 789-1813<br>vicky@cuneolaw.com | */s/ Christopher T. Micheletti*<br>Christopher T. Micheletti<br>**ZELLE LLP**<br>44 Montgomery St., Suite 3400<br>San Francisco, CA 94104<br>Telephone:  (415) 693-0700<br>Facsimile:  (415) 693-0770<br>cmicheletti@zelle.com |
| */s/ Shawn M. Raiter*<br>Shawn M. Raiter<br>**LARSON • KING, LLP**<br>30 East Seventh Street, Suite 2800<br>Saint Paul, MN 55101<br>Telephone:  (651) 312-6518<br>Facsimile:  (651) 789-4818<br>sraiter@larsonking.com | */s/ Aaron M. Sheanin*<br>Aaron M. Sheanin<br>**ROBINS KAPLAN LLP**<br>2440 West El Camino Real, Suite 100<br>Mountain View, CA 94040<br>Telephone:  (650) 784-4040<br>Facsimile:  (650) 784-4041<br>asheanin@robinskaplan.com |
| ***Interim Co-Lead Class Counsel for the Reseller Plaintiffs*** | ***Interim Co-Lead Class Counsel for the End-User Plaintiffs*** |
| */s/ J. Clayton Everett, Jr.*<br>J. Clayton Everett, Jr.<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone:   (202) 739-5860<br>Clay.everett@morganlewis.com<br><br>***Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*** | */s/ Kenneth R. O'Rourke*<br>Kenneth R. O'Rourke<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.**<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>Telephone: (415) 947-2160<br>korourke@wsgr.com<br><br>***Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*** |

**Request for Production No. 54:** For each of Your Employees during the Relevant Time Period who has or had any non-clerical responsibility for recommending, reviewing, setting, communicating, or approving prices for, price increase announcements, production, bids or quotes related to, or setting or restricting capacity utilization for facilities manufacturing, Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies . . . :

(j) personnel files, including the employment history for that Employee[] (including but not limited to promotions, demotions, title changes, firings, and reprimands)[.]

**Request for Production No. 62:** All Documents reflecting, memorializing, constituting, concerning or referring to Employee discipline for failure to comply with antitrust laws or internal antitrust company policies or practices relating to HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including but not limited to any discipline letters issued by You or any apology letters written by Your Employees.

**Plaintiffs' Position**: Plaintiffs seek TDK's disciplinary records for its employees who participated in (or failed to stop) the anticompetitive conspiracy that TDK reported to the U.S. Department of Justice and foreign governments. The conspiracy is at the heart of this litigation. There are, at least, letters or notices informing TDK employees of their discipline and acknowledgements of such notices. There may also be apology letters written by employees and agreements concerning employee conduct and/or conditions on continued employment as a result of the wrongdoing.

Contrary to TDK's position, this dispute does not concern all personnel files for an undefined number of employees. Rather, this dispute is limited to *disciplinary records* for TDK employees who were punished, reprimanded, or put on notice by TDK in connection with the alleged conspiracy. There are at least four such employees, but Plaintiffs do not know how many there are. TDK initially informed Plaintiffs that three employees were disciplined for participating in the conspiracy. Plaintiffs then learned of a fourth. Only TDK knows the total number.[2]

Whatever the total number ends up being, there is no substitute for contemporaneous documents created in connection with TDK's internal investigation and the actual statements and admissions of wrongdoing made in those documents. If, for instance, an executive was disciplined for exchanging confidential business and pricing information with a competitor, that conduct goes to the very heart of this case.

It is not enough that Plaintiffs can depose the disciplined employees; the disciplinary records are needed before their depositions, not after. *See* Tr. at 35:7-9, *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal. Apr. 19, 2018) (ECF No. 2273) ("*Batteries*") (concluding that because discipline records for defendant's employee were not produced before his deposition the plaintiffs were "robbed of an opportunity to depose him with the document in hand" and ordering additional deposition); *Vibal v. Geico Cas. Co.*, No. 17-cv-534-LAB(BLM), 2018 WL 571948, at *5 (S.D. Cal. Jan. 26, 2018) ("[T]his Court agrees with other courts that . . . deposition testimony is not a substitute for the information contained in a personnel file.").

---

[2] TDK refused to respond to an interrogatory seeking comprehensive disciplinary information.

The records are highly relevant for at least five reasons: (i) they likely identify key conspiracy participants; (ii) they likely describe and admit to specific acts taken in furtherance of the conspiracy; (iii) they likely identify the laws and policies violated; (iv) they likely discuss or shed light on the anticompetitive impact of the conspiracy; and (v) they may shed light on potential witness bias. TDK objects on relevancy grounds and, just recently, on privacy grounds.

The records easily meet the relevance standard of Rule 26(b). *See, e.g.*, Minute Order at 2, *Batteries*, No. 4:13-md-02420 YGR (N.D. Cal. Apr. 19, 2018) (ECF No. 2269) (compelling production of disciplinary records and apology letters); Minute Order at 2, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal. May 11, 2018) (ECF No. 2140) (ordering production of disciplinary reports and apology letters); *see also In re Vitamins Antitrust Litig.*, No. 99-197TFH, 2001 WL 1049433, at *8 (D.D.C. June 20, 2001) (disciplinary records "are necessary to identify and elucidate the substance of meetings with competitors and to determine how defendants dealt with conspirator-employees"); *In re ATM Fee Antitrust Litig.*, No. C 04-02676 CRB, 2007 WL 1827635, at *1 (N.D. Cal. June 25, 2007) ("In an antitrust case, nearly every aspect of a defendant's conduct or business can plausibly be viewed as relevant.").[3]

The terms of disciplinary agreements between TDK and its employees may also reveal witness bias. Plaintiffs would be prejudiced if, for example, a potential witness was given a lenient punishment in exchange for agreeing to testify favorably for their employer. Similarly, the *absence* of disciplinary action taken against employees who participated in the conspiracy may shed light on potential bias. For example, undisciplined senior executives who engaged in the same conduct as harshly disciplined mid- and low-level employees may be more willing to testify favorably for their employer. Or an employee who retained their position, pay, and benefits despite participating in the conspiracy may have an incentive to protect their employer. *See, e.g.*, *Uschold v. Carriage Servs., Inc.*, No. 17-cv-04424-JSW (EDL), 2019 WL 3282961, at *6 (N.D. Cal. Jan. 17, 2019) (employment-related information is "relevant to credibility and bias" and discoverable).

TDK's privacy objection is too little, too late.[4] In its responses and objections, TDK did not object to either request – or to Plaintiffs' RFPs generally – on privacy grounds. *See* Ex. A. Nor did it raise privacy objections in subsequent meet and confers. Its newly asserted privacy objection is therefore "waived." *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Apple Inc. v. Samsung Elecs. Co.*, No. C 11-CV-1846 LHK PSG, 2012 WL 952254, at *2 (N.D. Cal. Mar. 20, 2012) (finding that party waived objections by failing to raise

---

[3] *Cf. Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 2705089, at *5 (N.D. Cal. July 8, 2008) (denying motion to compel employment records unrelated to claims at issue); *Foster v. ScentAir Techs., Inc.,* No. 13-CV-05772-TEH(MEJ), 2014 WL 4063160, at *2 (N.D. Cal. Aug. 15, 2014) (same); *Loop AI Labs Inc v. Gatti,* No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *4 (N.D. Cal. Feb. 29, 2016) (same); *Fleming v. Dollar Tree Stores Inc.*, No. C 06-3409 MJJ (JL), 2006 WL 8443148, at *5 (N.D. Cal. Oct. 30, 2006) (same).

[4] It also undermines TDK's argument that the requested disciplinary information can be obtained through "less intrusive means." Information is either too private to produce in any format, or not. As TDK concedes, disciplinary information is not too private, and the records should be produced for accuracy over one's memory and for completeness.

them in original responses and by "offer[ing] no justification for introducing additional objection arguments at a later time.").

Even if timely, TDK's privacy objection is misplaced where, as here, the parties have negotiated and agreed to a robust protective order governing the use and disclosure of information designated as confidential. "Any . . . privacy concerns defendant may have should be addressed by a protective order." *Nakagawa v. Regents of Univ. of Cal.*, No. C 06-2066 SI, 2008 WL 1808902, at *3 (N.D. Cal. Apr. 22, 2008) (compelling production of personnel records); *see also Beaver v. Delicate Palate Bistro, Inc.*, No. 3:17-CV-644-PK, 2017 WL 4011208, at *2 (D. Or. Sept. 12, 2017) ("[T]he Ninth Circuit generally allow[s] discovery of employment records notwithstanding such privacy . . . concerns where the material sought is clearly relevant to claims or defenses at issue[.]"); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW PVT, 2008 WL 2038047, at *5 (N.D. Cal. May 12, 2008) (privacy concerns "outweighed" by relevance).

Plaintiffs seek disciplinary information to illuminate key details of the conspiracy and determine potential witness biases; not to harass or embarrass TDK or its employees. Indeed, this Court has already rejected TDK's privacy argument over its employees' participation in the conspiracy: "the names of the majority of such individuals, as well as an allegation that each such individual is a member of the asserted conspiracy, are already filed in the public record." ECF No. 310 at 2.

TDK's disciplinary records serve as admissions of the conduct and key facts at the heart of this case. In fact, they likely memorialize TDK's understanding of the conspiracy and its executives' and employees' conduct prior to this litigation. And they may reveal witness biases – such as agreements to employment conditions, longevity, and pecuniary terms – that could severely prejudice Plaintiffs if Plaintiffs are "robbed" of the opportunity to depose that witness with the documents in hand. The discipline records should be produced.

**TDK's Position**: Plaintiffs seek personnel files and records, including records of employee discipline, for all employees of the five TDK defendants who played some "non-clerical" role in the production, marketing or sale of HDD Suspension Assemblies over a period covering more than a decade. Plaintiffs subsequently proposed to limit the individuals whose personnel files would need to be produced to the more than two dozen "agreed document custodians" plus others identified on a list attached to the RFPs to the extent that such employees played some "non-clerical" role in the production, marketing or sale of HDD Suspension Assemblies. Whether applicable to the hundreds of employees encompassed by the Request as written, or the dozens addressed in Plaintiffs' compromise proposal, the Request is improper.

Compliance with the Requests would unnecessarily and unduly invade the privacy rights and interests of TDK's employees.[5] Article 1, Section 1 of the California Constitution provides

---

[5] While TDK's Responses and Objections to Plaintiffs' RFPs did not specifically reference employee privacy interests in response to the two Requests at issue, General Objection Number 12 objects to provision of third parties' confidential information and TDK did specially object completely to producing the requested material as being "unduly burdensome" and were explicit in the meet and confer process about the burden that compliance with the Requests would place on the privacy interests of its employees.

persons with an "inalienable right of privacy," and discovery seeking information that implicates that constitutionally protected right "is not justifiable merely on the grounds that it may lead to relevant information and even when the information is directly relevant, it is not automatically discoverable." *Fleming v. Dollar Tree Stores Inc.,* No. C 06-3409 MJJ (JL), 2006 WL 8443148, at *2 (N.D. Cal. Oct. 30, 2006). Japanese law likewise recognizes that individuals have protectable rights over the dissemination of their personnel files and disciplinary records. The Act on the Protection of Personal Information (the "APPI"), which per Article 21 applies to personnel and discipline records of individuals based in Japan, is specifically designed to "protect the rights and interests of individuals."[6]

Courts have repeatedly recognized employees' privacy interests in their employment and personnel files and their right to be protected from invasion of those privacy interests. *Nakagawa v. Regents of Univ. of Cal.*, 2008 WL 1808902, at *2 (N.D. Cal. Apr. 22, 2008). Requests for records concerning employee discipline, in particular, are considered "deeply invasive." *Tierno v. Rite Aid Corp.,* No. C 05-02520 TEH, 2008 WL 2705089, at *5 (N.D. Cal. July 8, 2008) (recognizing requests for disciplinary records as "deeply invasive").

Because of the sensitive and personal nature of information in personnel files, and disciplinary records in particular, courts have held that "relevance" is insufficient to justify compelled production of employment records. *Nakagawa*, 2008 WL 1808902, at *2. Instead, the requesting party must show "a compelling need for the personnel files at this time" to justify compelled disclosure of personnel files. *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 579688, at *4 (N.D. Cal. Feb. 11, 2015). Courts have found no compelling need for a party to produce confidential personnel files where the relevant information can be "obtained through depositions or from nonconfidential sources." *Foster v. ScentAir Techs., Inc.,* No. 13-CV-05772-TEH(MEJ), 2014 WL 4063160, at *2 (N.D. Cal. Aug. 15, 2014); *see also Loop AI Labs Inc v. Gatti,* No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *4 (N.D. Cal. Feb. 29, 2016).

There is no such "compelling need" here. Plaintiffs argue that disciplinary records (but not other portions of the personnel files) may be probative of the existence of the conspiracy they allege in their complaints, but they offer no real explanation for why they cannot request and receive sufficient information on those issues "through depositions or from nonconfidential sources." *Foster*, 2014 WL 4063160, at *2. TDK responded to Requests for Admission providing admissions on various aspects of the alleged conspiracy. They have also already made substantial document productions encompassing the documents produced to enforcement authorities investigating the conduct at issue in these cases. They have or will answer interrogatories concerning meetings and communications among the non-affiliated Defendants. And Plaintiffs will have the opportunity to depose percipient witnesses concerning the allegations in their complaints. This substantial body of evidence is far more probative of the existence of the alleged conspiracy than disciplinary records and does not implicate the privacy interests of employees.

The cases Plaintiffs cite as support involve different facts and circumstances. None held that production of employee discipline records was justified by a "compelling need." In *Batteries*, the argument addressed by the court was whether the records were relevant at all. The court held that

---

[6] https://www.cas.go.jp/jp/seisaku/hourei/data/APPI.pdf

they were potentially relevant in the circumstance of that case and ordered their production; but the court did not consider or rule on an argument that production was not proper because of the lack of a compelling need in the face of other discovery and material to be produced.  Minute Order at 2, *Batteries*, No. 4:13-md-02420 YGR (N.D. Cal. Apr. 19, 2018) (ECF No. 2269).  The issue in *Capacitors* was the "relevant period" for discovery—*i.e.*, the dates of documents that needed to be searched and produced.  The court simply noted various categories of documents requested by plaintiffs in that case that would not be subject to the limitation on the time period applicable to other aspects of discovery.  Discipline records were one of those categories, but the court did not address whether there was a compelling need for such records to be produced in the case in light of other discovery.  Minute Order at 2, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal. May 11, 2018).  Finally, in *Vitamins*, the court considered whether certain foreign laws *barred* production of various documents and other information.[7]  The court there concluded that the probative value of all of the covered records—taken together—justified compelling production of the material, but it did not address whether there was a compelling need for discharge and disciplinary records in particular.  *In re Vitamins Antitrust Litig.*, No. 99-CV-197-TFH, 2001 WL 1049433, at *8 (D.D.C. June 20, 2001).  None of the cases involved a record similar to this one, in which there are admissions already by TDK to conduct relating to the alleged conspiracy and substantial other discovery available and to be produced; and none conducted an analysis of the "compelling need" for such material in the face of such a record.

Plaintiffs' argument that the discipline records (but, again, not other personnel records) may be relevant to credibility and bias is, in parts, both non-sensical and speculative.  First, they argue that the *absence* of discipline may be relevant to the credibility of witnesses' testimony.  Putting aside whether that argument even makes sense, they are free to discover whether employees were disciplined in depositions.  Second, they claim that it would be relevant to witnesses' credibility if there were agreements to provide "favorable testimony," but it is pure speculation that there were such agreements; and, again, they are free to ask questions about such agreements in depositions.  The case that Plaintiffs cite in support, moreover, does not support the claim that employee discipline records are relevant to credibility in any way that Plaintiffs have argued here or that is apposite to this case.  *See Uschold v. Carriage Servs., Inc.*, No. 17-CV-04424-JSW-EDL, 2019 WL 3282961, at *6 (N.D. Cal. Jan. 17, 2019) (cited by Plaintiffs).  That case involved claims that certain benefits were not properly paid for or reimbursed by the plaintiff's former employer.  The court held that their employment records for their subsequent employer—which would have indicated whether similar benefits were provided by that later employer—were relevant to assess the plaintiff's claims that it was damaged.  *Id.*

To the extent information in an employees' personnel file relevant Plaintiffs' request for personnel files cannot be justified in the face of the substantial other sources of discovery available to Plaintiffs that would provide them with the facts requested through less obtrusive means.  *See Gatti*, 2016 WL 787924, at *4.  Plaintiffs' motion should be denied.

---

[7] The documents at issue in *Vitamins* included "daytimers, diaries, appointment books, schedulers, calendars, credit card statements, travel and expense logs and reports, telephone billing records, records of incoming and outgoing fax transmissions, employee home addresses, former employees' new employer, identifies, email addresses, and employee discharge, discipline, suspension, termination, and retirement records." *Vitamins*, 2001 WL 1049433, at *9.

Dated:  January 20, 2021

Respectfully submitted,

| | |
|---|---|
| */s/ Victoria Sims*<br>Victoria Sims<br>**CUNEO GILBERT & LADUCA, LLP**<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>Telephone:  (202) 789-3960<br>Facsimile:  (202) 789-1813<br>vicky@cuneolaw.com | */s/ Christopher T. Micheletti*<br>Christopher T. Micheletti<br>**ZELLE LLP**<br>44 Montgomery St., Suite 3400<br>San Francisco, CA 94104<br>Telephone:  (415) 693-0700<br>Facsimile:  (415) 693-0770<br>cmicheletti@zelle.com |
| */s/ Shawn M. Raiter*<br>Shawn M. Raiter<br>**LARSON • KING, LLP**<br>30 East Seventh Street, Suite 2800<br>Saint Paul, MN 55101<br>Telephone:  (651) 312-6518<br>Facsimile:  (651) 789-4818<br>sraiter@larsonking.com | */s/ Aaron M. Sheanin*<br>Aaron M. Sheanin<br>**ROBINS KAPLAN LLP**<br>2440 West El Camino Real, Suite 100<br>Mountain View, CA 94040<br>Telephone:  (650) 784-4040<br>Facsimile:  (650) 784-4041<br>asheanin@robinskaplan.com |
| ***Interim Co-Lead Class Counsel for the Reseller Plaintiffs*** | ***Interim Co-Lead Class Counsel for the End-User Plaintiffs*** |
| */s/ J. Clayton Everett, Jr.*<br>J. Clayton Everett, Jr.<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone:   (202) 739-5860<br>Clay.everett@morganlewis.com | */s/ Kenneth R. O'Rourke*<br>Kenneth R. O'Rourke<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.**<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>Telephone: (415) 947-2160<br>korourke@wsgr.com |
| ***Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*** | ***Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*** |

**ATTORNEY ATTESTATION**

I, Kenneth R. O'Rourke, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

/s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke