1   **BAKER & McKENZIE LLP**
    Mark. H. Hamer (State Bar No. 156997)
2   mark.hamer@bakermckenzie.com
    Mark G. Weiss (*Pro Hac Vice*)
3   mark.weiss@bakermckenzie.com
    815 Connecticut Avenue, NW
4   Washington, D.C.  20006
    Tel: (202) 452-7000
5   Fax: (202) 416-7177

6   **BAKER & McKENZIE LLP**
    Christina M. Wong (State Bar No. 288171)
7   christina.wong@bakermckenzie.com
    Two Embarcadero Center, Suite 1100
8   San Francisco, California 94111
    Telephone: (415) 576-3000
9   Fax: (415) 576-3099

10  Attorneys for Defendants
    *NHK Spring Co., Ltd., NHK International*
11  *Corporation, NHK Spring (Thailand) Co., Ltd.,*
    *NAT Peripheral (Dong Guan) Co., Ltd. and*
12  *NAT Peripheral (H.K.) Co., Ltd.*

    **MORGAN, LEWIS & BOCKIUS LLP**
    J. Clayton Everett, Jr. (pro hac vice)
    clay.everett@morganlewis.com
    Scott A. Stempel (pro hac vice)
    scott.stempel@morganlewis.com
    1111 Pennsylvania Ave., N.W.
    Washington, D.C. 20004
    Tel.: (202) 739-3000
    Fax: (202) 739-3001

    **MORGAN, LEWIS & BOCKIUS LLP**
    Alexander J. Scolnik (pro hac vice)
    alexander.scolnik@morganlewis.com
    101 Park Avenue
    New York, NY 10178
    Tel: (212) 309-6000
    Fax: (212) 309-6001

    **MORGAN, LEWIS & BOCKIUS LLP**
    C. Cecilia Wang, SBN 314125
    cecilia.wang@morganlewis.com
    One Market, Spear Street Tower
    San Francisco, CA 94105
    Tel: (415) 442-1000
    Fax: (415) 442-1001

    *Attorneys for Defendants TDK Corporation,*
    *Magnecomp Precision Technology Public*
    *Co. Ltd., Magnecomp Corporation, SAE*
    *Magnetics (H.K.) Ltd., and Hutchinson*
    *Technology Inc.*

13

14

15

16

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

19               SAN FRANCISCO DIVISION

20

| In re:  Hard Disk Drive Suspension Assemblies Antitrust Litigation | Case No.  3:19-md-02918-MMC |
|---|---|
| | MDL No. 2918 |
| THIS DOCUMENT RELATES TO RESELLER AND END-USER ACTIONS | **NOTICE OF MOTION AND MOTION TO DISMISS (1) END-USERS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND (2) RESELLER PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Date:     May 7, 2021 |
| | Time:     9:00 a.m. |
| | Crtrm:    7, 19th Floor |
| | Before:   The Hon. Maxine M. Chesney |

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT, pursuant to this Court's November 18, 2020 Order (ECF

3  No. 292), on May 7, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom

4  7, located on the 19th Floor of this Court, 450 Golden Gate Avenue, San Francisco, CA  94102, before

5  the Honorable Maxine M. Chesney, Defendants NHK Spring Co., Ltd. ("NHK Spring"), NHK

6  International Corporation ("NHKI"), NHK Spring (Thailand) Co., Ltd. ("NHK Thailand"), NAT

7  Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") and NAT Peripheral (H.K.) Co., Ltd. ("NAT

8  HK," and collectively the "NHK Defendants") and TDK Corporation ("TDK"), Magnecomp Precision

9  Technology Public Co. Ltd. ("MPT"), Magnecomp Corporation ("Magnecomp"), SAE Magnetics

10  (H.K.) Ltd. ("SAE"), and Hutchinson Technology Inc. ("HTI," and collectively the "TDK

11  Defendants"), will and hereby do move this Court for an Order, pursuant to Rule 12(b)(1) and 12(b)(6)

12  of the Federal Rules of Civil Procedure, dismissing the claims against them.

13      This motion is made on the grounds that the End-User Plaintiffs' Second Amended

14  Consolidated Class Action Complaint ("EUSAC")[1] (ECF No. 311), the Reseller Plaintiffs' Second

15  Amended Consolidated Class Action Complaint ("RSAC")[2] (ECF No. 303), and each purported cause

16  of action therein, each fail to allege facts sufficient to constitute a cause of action upon which relief

17  may be granted against the NHK and TDK Defendants under Federal Rules of Civil Procedure

18  12(b)(1) and 12(b)(6).   The Motion will be based on this Notice of Motion and Motion, the

19  Memorandum of Points and Authorities in Support of the Motion, all of the other papers on file in this

20  action, and such other and further evidence or argument as the Court may allow.

21

22  [1] End-Users Plaintiffs ("End-Users") seek to represent a putative class of "all persons and entities
    who, during the period from January 2005 through at least May 2016 . . . indirectly purchased
23  Standalone Storage Devices or Computers, not for resale" or "[i]n the alternative, Plaintiffs seek to
    represent all persons and entities who, during the Class Period, indirectly purchased Standalone
24  Storage Devices, not for resale , which included HDD suspension assemblies that were
    manufactured or sold by Defendants."  EUSAC ¶¶ 13-14; 261-62.

25  [2] Reseller Plaintiffs ("Resellers") seek to represent a class of "[a]ll persons or entities, in the Indirect
26  Purchaser States who, during the period from and including 2003 through such time as the
    anticompetitive effects of Defendants' conduct ceased, purchased a Standalone Storage Device for
27  resale"  or, alternatively "purchased a Standalone Storage Device or Computer for resale which
    included as a component part one or more HDD suspension assemblies that were manufactured or
28  sold by the Defendants."  RSAC ¶ 141-42.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

1

## REQUESTED RELIEF

2        The NHK Defendants and the TDK Defendants seek an order from this Court dismissing all

3   of the claims against them contained in the End-User Plaintiffs' Second Amended Consolidated Class

4   Action Complaint and the Reseller Second Amended Consolidated Class Action Complaint with

5   prejudice.  Both Complaints fail against the NHK and TDK Defendants because the End-Users and

6   Resellers lack subject matter jurisdiction and have failed to state a claim as required by Federal Rule

7   of Civil Procedure 12(b)(1) and 12(b)(6).

8

9    Dated: January 29, 2021                        Respectfully submitted,

10                                                   **BAKER & McKENZIE LLP**
                                                     Mark H. Hamer
                                                     Mark G. Weiss
11                                                   Christina M. Wong

12
                                                     By:  /s/ *Mark H. Hamer*
13                                                   *Attorneys for Defendants NHK Spring Co.,*
                                                     *Ltd., NHK International Corporation, NHK*
14                                                   *Spring (Thailand) Co., Ltd., NAT Peripheral*
                                                     *(Dong Guan) Co., Ltd. and NAT Peripheral*
15                                                   *(H.K.) Co., Ltd.*

16                                                   **MORGAN, LEWIS & BOCKIUS LLP**
                                                     J. Clayton Everett, Jr.
17                                                   Scott A. Stempel
                                                     C. Cecilia Wang
18

19                                                   By:  /s/ *J. Clayton Everett, Jr.*

20                                                   *Attorneys for Defendants TDK Corporation,*
                                                     *Magnecomp Precision Technology Public Co.*
21                                                   *Ltd., Magnecomp Corporation, SAE Magnetics*
                                                     *(H.K.) Ltd., and Hutchinson Technology Inc.*

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

# **TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     THE INITIAL DECISION AND SECOND AMENDED COMPLAINTS. .......................... 2

II.    SUMMARY OF RELEVANT ALLEGATIONS. ............................................................. 3

III.   THE IPPS LACK ARTICLE III STANDING ............................................................... 9

       A.    The Alleged Injury is Indirect, Untraceable, and Speculative. ...................... 9

       B.    IPPs' State Law Claims Lack Article III Standing Where They Fail to Allege
             Purchase of a Particular Product in Certain States ...................................... 15

IV.    THE IPPS CANNOT ESTABLISH ANTITRUST STANDING. ..................................... 18

       A.    The Complaints Should Be Dismissed for Lack of Antitrust Standing. .......... 19

             1.    *AGC* Factor 1, the Nature of Plaintiffs' Injury, Supports Dismissal. ........... 19

             2.    *AGC* Factor 2, the Directness of the Injury, Supports Dismissal. ................ 22

             3.    *AGC* Factor 3, the Speculative Measure of the Harm, Supports
                   Dismissal .................................................................................................. 23

             4.    *AGC* Factor 4, the Risk of Duplicative Recovery, Supports Dismissal......... 23

             5.    *AGC* Factor 5, the Complexity in Apportioning Damages, Supports
                   Dismissal .................................................................................................. 24

       B.    *AGC's* Antitrust Standing Requirements Apply to the State Claims....................... 24

V.     THE IPPS' STATE-LAW ANTITRUST CLAIMS SUFFER FATAL STATE-LAW
       DEFICIENCIES .................................................................................................... 29

       A.    The Maryland and Rhode Island State Law Antitrust Claims Should Be
             Dismissed Because These States Only Allow the Attorney General to Bring
             Suit on Behalf of Indirect Purchasers. ........................................................ 29

       B.    The Mississippi, North Carolina, Tennessee, and Wisconsin Antitrust Claims
             Should Be Dismissed Because These States' Antitrust Laws Do Not Apply to
             The Interstate Sales Alleged Here ............................................................... 29

VI.    THE IPPS' STATE-LAW CONSUMER PROTECTION CLAIMS SUFFER
       NUMEROUS FATAL STATE-LAW DEFICIENCIES. ................................................... 30

       A.    The Arkansas and New Mexico Consumer-Protection Claims Should Be
             Dismissed Because No "Unconscionable Conduct" Is Alleged. ..................... 30

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

i

# TABLE OF CONTENTS
## (continued)

Page

B.    The Arkansas, Montana, South Carolina, and Virginia Consumer-Protection Claims Should Be Dismissed Because Class Actions are Barred or Limited by State Statute. .................................................................................................. 30

C.    The Florida, Michigan and Minnesota Consumer Protection Claims Should Be Dismissed Because They Fail to Meet Rule 9(b)'s Requirements. .......................... 31

D.    The Consumer Protection Claims for North Carolina, New Hampshire, and Massachusetts Should Be Dismissed Because These Statutes Do Not Reach the Interstate Sales Alleged Here. ............................................................................ 32

E.    The Arkansas, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah and Virginia, and West Virginia Consumer Protection Claims Should Be Dismissed Because Price-Fixing Is Not An Enumerated Violation. ........................ 33

F.    The Arkansas and California Consumer Protection Claims Should Be Dismissed Because Plaintiffs Do Not Allege Reliance on Deceptive Conduct......... 33

G.    The Missouri and Virginia Consumer-Protection Claims Should Be Dismissed Because Those States Lack Any *Illinois Brick* Repealer Statutes or the Equivalent. ................................................................................................................ 34

H.    The Arkansas, California, Florida, Nebraska, New York, North Carolina, and Vermont Consumer Protection Claims Should Be Dismissed Because These States' Consumer Protection Laws Have Standing Requirements the IPPs Fail....... 35

VII.   THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED. .............................. 36

CONCLUSION ........................................................................................................................... 37

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No.</u>

3

### <u>Cases</u>

4

*Acacia Communs., Inc. v. ViaSat, Inc.*,
5
   No. SUCV20172386BLS1, 2018 Mass. Super. LEXIS 46 (Mass. Sup. Ct. 2018) ......................32

6
*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
   No. 09 MDL 2007-GW(PJWx), 2009 U.S. Dist. LEXIS 133088 (C.D. Cal. July 6,
7
   2009) ...................................................................................................................................25, 39

8
*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016)......................................................................................................18
9

10
*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29,
11
   2014) ...................................................................................................................................20, 23

12
*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 140765 (S.D.N.Y. Sep. 15, 2014).............37, 39
13

14
*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
   190 F.3d 1051 (9th Cir. 1999) ......................................................................................19, 22, 23

15
*Am. Airlines v. Christensen*,
16
   967 F.2d 410 (10th Cir. 1992) ..................................................................................................28

17
*Anheuser-Busch, Inc. v. Abrams*,
   520 N.E.2d 535 (N.Y. 1988) ....................................................................................................40
18

19
*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)......................................................................................................19, 23, 28

20
*In re Auto. Parts Antitrust Litig.*,
21
   29 F. Supp. 3d 982 (E.D. Mich. 2014)............................................................................2, 15, 18

22
*Beckler v. Visa U.S.A., Inc.*,
   No. 09-04-C-00030, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004)....................................27
23

*Bly-Magee v. California*,
24
   236 F.3d 1014 (9th Cir. 2001) ..................................................................................................32

25
*Bumpers v. Cmty. Bank*,
   747 S.E.2d 220 (N.C. 2013)......................................................................................................34
26

27
*Bunker's Glass Co. v. Pilkington PLC*,
   75 P.3d 99 (Ariz. 2003)............................................................................................................27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iii

*Callaghan v. BMW of N. Am., LLC*,
  No. 13-CV-04794-JD, 2014 U.S. Dist. LEXIS 164290 (N.D. Cal. Nov. 21, 2014).....................36

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................10, 11, 15, 36

*In re Capacitors Antitrust Litig.*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015) .................................................................................16

*In re Cathode Ray Tube Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 119598 (N.D. Cal. Aug. 21, 2013) .................................................20, 39

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ......................................................................................................35

*Cieri v. Leticia Query Realty*,
  80 Haw. 54, 905 P.2d 29 (1995) ............................................................................................27

*City of Oakland v. Oakland Raiders*,
  No. 18-cv-07444-JCS, 2019 U.S. Dist. LEXIS 124465 (N.D. Cal. July 25, 2019).....................36

*Clayworth v. Pfizer, Inc.*,
  233 P.3d 1066 (Cal. 2010) .....................................................................................................27

*Cole v. Sunnyvale*,
  No. C-08- 05017 RMW, 2010 U.S. Dist. LEXIS 11105 (N.D. Cal. Feb. 9, 2010) .........................5

*Cornelison v. Visa U.S.A., Inc.*,
  Civ. No. 03-1350 (S.D. Cir. Ct. Sept. 29, 2004).....................................................................27

*Crouch v. Crompton Corp.*,
  No. 02-CVS-4375, 2004 NCBC LEXIS 6 ...............................................................................27

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015).........................35, 36, 39

*Davis v. Four Seasons Hotel Ltd.*,
  228 P.3d 303 (Haw. 2010) .....................................................................................................27

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  No. 18-cv-864, 362 F. Supp. 3d 510 (N.D. Ill. 2019).........................................................25, 39

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013) ...............................................................39

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011).....................................................................................37

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................ *passim*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iv

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*In re Dynamic Random Access Memory Antitrust Litig.*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ..............................................15, 20, 22, 36, 39

*Fisher v. Monster Beverage Corp.*,
   656 F. App'x 819 (9th Cir. 2016) .................................................................................34

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..............................................................33, 34, 39

*In re Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................................37

*Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*,
   384 S.W.3d 540 (Ark. Ct. App. 2011) ...........................................................................35

*Freeman Indus. LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) .......................................................................................29

*Fucile v. Visa U.S.A., Inc.*,
   No. S1560-03 CNC, 2004 Vt. Super. LEXIS 42 (Vt. Super. Dec. 27, 2004).........................27, 36

*In re Glumetza Antitrust Litig.*,
   No. C 19-05822, 2020 U.S. Dist. LEXIS 39649 (N.D. Cal. Mar. 5, 2020)...................................34

*Grams v. Boss*,
   294 N.W.2d 473 (Wis. 1980) ........................................................................................40

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................................15, 30, 34

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ..............................................................21, 23, 29, 39

*Hernandez v. Wells Fargo Bank N.M., N.A.*,
   128 P.3d 496 (2005).......................................................................................................30

*Ho v. Visa U.S.A., Inc.*,
   787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004) ........................................................................36

*Ho v. Visa USA, Inc.*,
   793 N.Y.S. 2d 8 (N.Y. App. Div. 2005) .........................................................................27

*Independence Cnty. v. Pfizer, Inc.*,
   534 F. Supp. 2d 882 (E.D. Ark. 2008) ...........................................................................35

*In re Interior Molded Doors Antitrust Litig.*,
   2019 U.S. Dist. LEXIS 161045
   (E.D. Va. Sept. 18, 2019) ..............................................................................................39

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

v

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*Ireland v. Microsoft Corp.*,
    No. 00CV-210515, 2001 Mo. App. LEXIS 2371 (Mo. Ct. App. Jan. 24, 2001)...........................34

*Jones v. Micron Tech., Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................................... *passim*

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006).......................................................................................27, 36

*Knapp v. McCleary*,
    No. 83C-JN-87, 1987 Del. LEXIS 1198 (Del. July 9, 1987).........................................35

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ....................................................................................19, 26

*Knowles v. Visa U.S.A.*,
    No. CV-03-707, 2004 Me. Super. LEXIS 227 (Super. Ct. Me. Oct. 20, 2004)....................27

*Lantec, Inc. v. Novell, Inc.*,
    146 F. Supp. 2d 1140 (D. Utah 2001)...............................................................................28

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) ......................................................................30, 33

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014)..............................21, 23, 39

*In re Loestrin 24 Fe Antitrust Litig.*,
    410 F. Supp. 3d 352 (D.R.I. 2019)....................................................................................37

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007)...................................................................................28, 40

*Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co.*,
    2015 U.S. Dist. LEXIS 106292 (N.D. Cal. 2015) .............................................................39

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ..........................................................................................18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................................9

*In re Magnesium Oxide Antitrust Litig.*,
    No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) ...............12

*McKenna v. WhisperText*,
    No. 5:14-cv-00424-PSG, 2015 U.S. Dist. LEXIS 120090 (N.D. Cal. Sep. 9, 2015) ...................5

*McKinnon v. Honeywell Int'l, Inc.*,
    977 A.2d 420, 424 (Me. 2009) .........................................................................................40

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

*Merck & Co., Inc. v. Lyon,*
    941 F. Supp. 1443 (M.D.N.C. 1996) ........................................................................29

*Mothershed v. Justices of the Supreme Court,*
    410 F.3d 602 (9th Cir. 2005) ...................................................................................26

*Nass-Romero v. Visa U.S.A., Inc.,*
    279 P.3d 772 (N.M. Ct. App. 2012) .........................................................................27

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.,*
    423 P.3d 605 (Nev. 2018) .........................................................................................27

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    350 F. Supp. 2d 160 (D. Me. 2004) ....................................................................33, 35

*Olstad v. Microsoft Corp.,*
    700 N.W.2d 139 (Wis. 2005) ....................................................................................29

*Or. Laborers-Employers Health v. Morris,*
    17 F. Supp. 2d 1170 (D. Or. 1998) ...........................................................................28

*Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris, Inc.,*
    185 F.3d 957 (9th Cir. 1999) ....................................................................................26

*Owens Corning v. R.J. Reynolds Tobacco Co.,*
    868 So. 2d 331 (Miss. 2004) ...............................................................................27, 40

*In re Packaged Ice Antitrust Litig.,*
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ...................................................................31

*In re Packaged Seafood Prods. Antitrust Litig.,*
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ....................................................................31

*Pardini v. Unilever United States, Inc.,*
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ...................................................................16

*Partee v. San Diego Chargers Football Co.,*
    34 Cal. 3d 378 (Cal. 1983) .......................................................................................40

*Patterson Dental Co. v. McGaughey,*
    No. 85-469-PA, 1985 WL 25732 (D. Or. Dec. 9, 1985) ..........................................28

*Peterson v. Visa. U.S.A., Inc.,*
    No. 03-8080, 2005 D.C. Super. LEXIS 17 (D.C. Super. Ct. 2005)..........................27

*In re Pork Antitrust Litig.,*
    Nos. 18-1776, 19-1578, 19-2723, 2020 U.S. Dist. LEXIS 191675 (D. Minn. Oct.
    16, 2020) ...................................................................................................................37

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

vii

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) ................................................................36, 37, 39

*Precourt v. Fairbank Reconstruction Corp.*,
   856 F. Supp. 2d 327 (D.N.H. 2012).................................................................................32

*Raines v. Byrd*,
   521 U.S. 811 (1997)........................................................................................................9

*In re Refrigerant Compressors Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 50737 (E.D. Mich. April 9, 2013) .......................................39

*Rose v. Vulcan Materials Co.*,
   194 S.E.2d 521 (N.C. 1973) ..........................................................................................40

*S.C. Cotton Growers' Co-op. Ass'n v. English*,
   133 S.E. 542 (S.C. 1926) ...............................................................................................40

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,
PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010)...........................................................36, 37

*Siena v. Microsoft Corp.*,
   796 A.2d 461 (R.I. 2002) ..............................................................................................40

*Smith v. Video Lottery Consultants*,
   858 P.2d 11 (Mont. 1993) .............................................................................................40

*Southard v. Visa U.S.A. Inc.*,
   734 N.W.2d 192 (Iowa 2007) .......................................................................................27

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   840 N.Y.S.2d 8 (N.Y. App. Div. 2007) ........................................................................36

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).....................................................................................................9

*Standard Oil Co. of Ky. v. State ex rel. Att'y Gen.*,
   65 So. 468 (Miss. 1914).................................................................................................29

*Stark v. Visa U.S.A. Inc.*,
   No. 03- 055030-CZ, 2004 WL 1879003 (Mich. Cir. July 23, 2004)...........................27

*State v. Infineon Techs. AG*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) ........................................................................34

*In re Static Random Access Memory Antitrust Litig.*,
   2010 U.S. Dist. LEXIS 131002 (N.D. Cal. 2010) .......................................................37

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*,
No. W1999-01061-COA-R9-CV, 2000 Tenn. App. LEXIS 644 (Ct. App. Sept.
26, 2000) ...........................................................................................................................28

*Strang v. Visa*,
No. Sl560-03, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005)..........................................28

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
902 F.3d 735 (7th Cir. 2018) ......................................................................................19, 25

*In re Terazosin Hydrochloride Antitrust Litig.*,
160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..............................................................................36

*In re TFT-LCD Antitrust Litig.*,
787 F. Supp. 2d 1036 (N.D. Cal. 2011) ..................................................................... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1186 (N.D. Cal. 2009) ..............................................................................34

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ....................................................................................29

*Troyk v. Farmers Grp., Inc.*,
90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009) .........................................................................35

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..............................................................................................12

*W.S. Carnes, Inc. v. Bd. of Supervisors*,
478 S.E.2d 295 (Va. 1996) .................................................................................................31

*Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*,
No. 07-cv-2093, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla. Aug. 4, 2008) ......................31

*Wrobel v. Avery Dennison Corp.*,
No. 05-cv-1296, 2006 WL 7130617 (D. Kan. Feb. 1, 2006) .............................................27

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*,
951 F.2d 1158 (9th Cir. 1991) ............................................................................................22

## **Statutes**

U.S. Constitution Article III.............................................................................................. *passim*

28 U.S.C. § 2072(b) .................................................................................................................31

Fed. R. Civ. P. 9(b) .............................................................................................................31, 32

Arkansas Constitution, Amendment 89 ....................................................................................30

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

ARK. CODE ANN. § 4-88-107(a) ............................................................................30, 33

ARK. CODE § 4-88-113(f) ...........................................................................................34

ARIZ. REV. STAT. § 44-1412 (LexisNexis 2020) .....................................................40

CAL. BUS. & PROF. CODE § 17204 ............................................................................34

COLO. REV. STAT. 6-1-113 ........................................................................................35

D.C. CODE § 28-4515 (1981) .....................................................................................40

DEL. CODE tit. 6, § 2531-44 ......................................................................................35

FLA. STAT. ANN. § 542.32 (2020) .............................................................................40

HAW. REV. STAT. ANN. § 480-3 (2019) .....................................................................40

IOWA CODE § 553.2 (2019) .......................................................................................40

KAN. STAT. ANN. § 50-163(b) (2020) ........................................................................40

MASS. GEN. LAWS Ch. 93A, § 11 ..............................................................................32

MD. COM. LAW CODE ANN. § 11-202(a)(2) (2020) ..................................................40

MICH. COMP. LAWS § 445.903(1) .............................................................................33

MICH. COMP. LAWS. SERV. § 445.784(2) (2020) ......................................................40

MONT. CODE ANN. § 30-14-133(1) ............................................................................31

MO. REV. STAT. § 416.141 (2019) .............................................................................40

N. H. REV. STAT. ANN Section 358-A:2 ....................................................................32

N.M. STAT. ANN. § 57-1-15 (2020) ...........................................................................40

N.M. STAT. ANN. § 57-12-2(D) ..................................................................................30

NEV. REV. STAT. ANN. § 598A.050 (2019) ...............................................................40

NEV. REV. STAT. § 598.0915-925 ..............................................................................33

OR. REV. STAT. § 646.605 ..........................................................................................33

OR. REV. STAT. § 646.605-08 .....................................................................................33

OR. REV. STAT. § 646.715(2) (2020) .........................................................................40

OR. REV. STAT. § 646.725 ..........................................................................................28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

OR. REV. STAT. § 646.730 ...................................................................................................28

R.I. GEN. LAWS §§ 6-13.1-1(6)(i)-(xix) ...............................................................................33

R.I. GEN. LAWS § 6-36-2(b) (2020) .....................................................................................40

R.I. GEN. LAWS § 6-36-12 (amended by 2013 R.I. SB 840) ................................................29

S.C. CODE ANN. §§ 37-23-50, 37-23-70, 37-5-108, 37-5-202, 37-10-105, and 40-39-
    160 .....................................................................................................................................31

S.D. CODIFIED LAWS § 37-1-22 (2020) ................................................................................40

S.D. CODIFIED LAWS § 37-24-6 ...........................................................................................33

Sherman Act, sections 1 and 2 ..............................................................................................28

UTAH CODE ANN. §§ 13-11-1 *et seq.* ...................................................................................33

UTAH CODE ANN. § 76-10-3118 (2020) ...............................................................................40

VA. CODE ANN. § 59.1-9.17 (2020) ......................................................................................40

VA. CODE ANN. § 59.1-200 ..................................................................................................33

VA. CODE ANN. § 59.1-204 ..................................................................................................31

W. VA. CODE § 46A-6-102 ...................................................................................................33

W. VA. CODE. ANN. § 47-18-16 (2020) ...............................................................................40

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

xi

## **STATEMENT OF ISSUES TO BE DECIDED**

1. Have End-User Plaintiffs and Reseller Plaintiffs alleged facts demonstrating that they have Article III standing?

2. Have End-User Plaintiffs and Reseller Plaintiffs alleged facts demonstrating that they have antitrust standing?

3. Do End-User Plaintiffs and Reseller Plaintiffs satisfy the test established by the Supreme Court's decision in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) (*AGC*) such that they can assert state law antitrust and consumer protection claims?

4. Have End-User Plaintiffs and Reseller Plaintiffs pleaded facts establishing each element of each of their antitrust state-law claims?

5. Have End-User Plaintiffs and Reseller Plaintiffs pleaded facts establishing each element of each of their consumer protection state-law claims?

6. Have End-User Plaintiffs and Reseller Plaintiffs stated a claim or sufficiently pled claims for "unjust enrichment"?

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Court dismissed the claims of the two groups of Plaintiffs and putative classes here—Resellers and their customers, End-Users (collectively the "Indirect Purchaser Plaintiffs" or "IPPs")—for failing to "'clearly allege facts' demonstrating each element of standing," ECF No. 282 at 4 (the "Order")[3] and for failing to allege facts "setting forth directly, or from which a reasonable inference can be drawn, that each participant in the chain necessarily passed on the asserted overcharge to the next participant." *Id.* at 5.   IPPs' Amended Complaints drop some claims and add some allegations, but they do not, and cannot, allege plausible facts that would establish a basis for standing or a basis to infer that these Plaintiffs were injured.   Both sets of IPPs remain distant from the Defendants, removed by several layers of a long, complex and only vaguely alleged global product manufacturing and distribution chain.   None purchased the products at issue here—hard disk drive suspension assemblies—as a stand-alone product.   And the products that they did purchase—e.g., computers and server arrays—contain many other components besides the small, inexpensive product at issue here, have undergone substantial transformation undertaken by other manufacturers, and were sold and re-sold through various layers of a long distribution chain before being purchased by the IPPs. None of the newly-pled allegations plausibly suggest, taken separately or together, that IPPs were injured or that they are proper Plaintiffs to pursue claims against the Defendants.

IPPs' claims should be dismissed, this time with prejudice, for four reasons.

First, the injury alleged by Resellers and End-Users is untraceable and continues to be far too indirect to satisfy Article III's standing requirements.   In its order dismissing IPPs' earlier complaints, this Court recognized that IPPs' claims cannot proceed when the injury is too indirect, speculative or untraceable.   Resellers and End-Users still fail to allege sufficient facts to trace their alleged injury. Indeed, the facts they allege show there is *no* plausible way to trace injury.   The Amended Complaints confirm that suspension assemblies make up a tiny percentage of the cost of the finished electronic products IPPs purchased and they fail to allege facts that would allow a reasonable inference that any

---

[3] The Order dismissed (1) the End-Users' [First] Consolidated Class Action Complaint ("EUFAC"), ECF No.  167, and (2) Reseller Plaintiffs' [First] Consolidated Amended Complaint ("RFAC") ECF No. 190.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

purported overcharge on those tiny components resulted in these Plaintiffs paying higher prices for the  much more expensive electronic products many links down the distribution chain.  IPPs fail to satisfy Article III standing requirements.

Second, even if Article III standing were present here, the claims fall far short of the more demanding requirements for *antitrust* standing.  Because IPPs (1) are not participants in the allegedly restrained market, (2) claim only very remote and speculative damages, (3) identify more efficient enforcers of their claims including upstream direct purchasers like Seagate, (4) allege damages that are nearly impossible to apportion across multiple levels of commerce, and (5) create risk of duplicative recovery, they fail to satisfy *any* of the five factors of the antitrust standing test.

Third, numerous fatal state-specific deficiencies require dismissal of the state-law claims.

Finally, IPPs' unjust enrichment claims must be dismissed because unjust enrichment is not a recognized cause of action and these claims have been insufficiently pled.

Given the continuing deficiencies in the IPPs' allegations, dismissal with prejudice is proper.

## ARGUMENT

## I.      THE INITIAL DECISION AND SECOND AMENDED COMPLAINTS.

On October 23, 2020, this Court dismissed the EUFAC and RFAC in their entirety for lack of Article III constitutional standing.[4]  Order at 5, ECF No. 282.  The Court concluded that plaintiffs failed to "'clearly allege facts' demonstrating each element of standing."  *Id.* at 4.  Plaintiffs also failed to plead facts "setting forth directly, or from which a reasonable inference can be drawn, that each participant in the chain necessarily passed on the asserted overcharge to the next participant."  *Id.* at 5.  The Court also dismissed all but five state claims from the Reseller plaintiffs' complaint because they failed to allege that any named Reseller made a purchase in those states and, thus, "assert[ed] claims under the laws of various states in which they do not claim to have been injured."  *Id.* at 6-7.  The Court also dismissed injunctive relief, Clayton Act, and unjust enrichment claims.  *Id.* at 7-11.

In amending their complaints, both classes have abandoned claims for purchases of all

---

[4] The Resellers also withdrew claims under Alaska and Alabama law and voluntarily dismissed claims under the Vermont consumer protection statute.  *Id.* at 3.  Defendants' motion for those claims was granted as unopposed.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

2

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

downstream products except for laptop computers, desktop computers, and the four or five products which IPPs label "Standalone Storage Devices." Neither class now alleges a federal claim for damages under the Clayton Act or an injunctive relief claim. Resellers now bring claims under statutes for only the five states where the named Resellers claim to reside and have made purchases—California, Michigan, Minnesota, New York, and North Carolina—and End-Users bring claims under various state antitrust and consumer protection statutes in 33 states. Unlike the original complaints, neither class now brings any claims under the laws of Alabama, Alaska, Colorado, Connecticut, Delaware, or New Jersey.

## II.     SUMMARY OF RELEVANT ALLEGATIONS.

The five named Resellers seek to represent a putative class of indirect purchasers of either (1) Standalone Storage Devices and Computers for resale or (2) only Standalone Storage Devices for resale. RSAC ¶¶ 141-42. End-Users seek to represent a putative class of purchasers of either (1) Standalone Storage Devices and Computers not for resale or, (2) only Standalone Storage Devices not for resale. EUSAC ¶ 12. Resellers sit upstream from End-Users in the distribution chain, who sit at the bottom of the distribution chain.

Both putative classes assert they were injured by a price-fixing conspiracy among the NHK Defendants and the TDK Defendants to raise the price of suspension assemblies—a tiny component used in the manufacture of HDDs. EUSAC ¶ 15; RSAC ¶ 12. This conspiracy allegedly caused an overcharge on sales of suspension assemblies to HDD manufacturers (*e.g.* Seagate) which was then allegedly passed down through multiple subsequent levels of commercial manufacturing and distribution. In the end, IPPs contend the alleged overcharge of the small component raised the price of the finished electronic products the IPPs allege they purchased far down this manufacturing and distribution chain—injuring the putative classes. EUSAC ¶¶ 232-35; RSAC ¶¶ 103-105.

Resellers and End-Users concede they are, at best, third- or fourth-level indirect purchasers, although their amended allegations confirm that the chain is often much longer and is likely even more complicated than characterized in their original dismissed Complaints. End-Users confirm that at the very simplest, the downstream chain proceeds in at least five links from (1) Defendants to (2) HDD manufacturers, to (3) OEMs, to (4) Distributors and/or Resellers, and then finally to (5) End-Users.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

3

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

EUSAC ¶ 219. The simplest chain thus appears as follows:



Yet IPPs' amended factual allegations demonstrate that the chain is even more complicated than was described in the original IPP Complaints.  For example:

- Computers include both laptop and desktop computers.  EUSAC ¶ 12.  IPPs allege that OEM computer manufacturers include at least Acer, Apple, Dell, Gateway, Hewlett-Packard, Lenovo, and Toshiba.  EUSAC ¶¶ 220, 224, 248.

- "Stand-Alone Storage Devices" include at least (1) personal HDD storage devices and (2) enterprise HDD storage systems.  EUSAC ¶ 12.  Each category includes multiple products within it.  Personal HDD Storage Devices include (i) "bare" HDDs, (ii) external hard drives, and (iii) network attached storage (NAS) drives.  Enterprise HDD Storage systems include "storage servers and arrays."  EUSAC ¶ 125.  Enterprise Storage systems are manufactured by at least the following companies: BlueArc, Cisco Systems, Dot Hill, EMC, Isilon, LSI, NetApp, Seagate, Sun Microsystems/Oracle, Western Digital, and Xyratex.  EUSAC ¶ 245.

- The chain also includes at least six distributors of electronic products—Arrow Electronics, Avnet, D&H, Ingram Micro, Synnex, and Tech Data.  EUSAC ¶ 251.

- The chain includes numerous massive retailers including Amazon.com, Best Buy, Office Depot, Staples, and WalMart.  EUSAC ¶ 252.

- The End-Users and Resellers identify numerous other retailers of these products—well over 20, including the Apple Store, ASI, the Computer Warehouse of North Carolina, Costco, Dell.com, Dell Shop Direct, eBay,[5] Fry's Electronics, HP.com, Ibuypower.com, Intrex Computers, MA Labs, Macmall.com, the Mac Store, Maxtor, Navyexchange.com, Nebraska Furniture Mart, Newegg.com, Other World Computing, Sam's Club, SED International, Simply Mac, TigerDirect, and Westerndigital.com.  EUSAC ¶¶ 24-85 RSAC ¶¶ 23-27.

---

[5] The inclusion of eBay suggests that IPPs may be seeking damages for the sale and purchase of *second-hand or used* products which would add near infinite complexity to the distribution chain and raise further questions regarding whether End-User class members are also members of the Reseller class.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

- The five named Resellers now allege for the first time that they purchased products not only from OEMs, but also from *other Resellers and Distributors*.

  o Now Micro alleges purchases from distributors like D&H and from other Resellers like Amazon.com.  RSAC ¶ 23.

  o Voyager alleges purchases from Resellers Amazon, Best Buy and Newegg.  RSAC ¶ 24.

  o IT Worx alleges purchases from distributors D&H and Ingram Micro and Resellers like Newegg.com.  RSAC ¶ 25.

  o Willow Bay alleges purchases from distributor Ingram Micro and Resellers Newegg.com and Amazon.com.  RSAC ¶ 26.

  o Michael Medeiros, a private individual, alleges purchases from Resellers Amazon.com and Newegg.com.  RSAC ¶ 27.

- Resellers still fail to identify the models of any particular product they allege to have purchased and that underlie their claims, or to differentiate the alleged purchase of "hard drives" between three of the products in the class definition: internal "bare" HDDs, external HDDs, and NAS HDDs.  RSAC ¶¶ 23-27.

IPPs' new allegations further illustrate the maze of distribution paths by which HDD suspension assemblies might work their way through international commerce, and demonstrate that the chain includes even more links than alleged in the original Complaints.  Below is the chart summarizing the factual allegations describing the downstream chain from Defendants' initial Motion to Dismiss (ECF No. 236 at 3-4) which now adds the additional steps revealed in the Amended Complaints.[6]

| Link in the Chain | Allegations |
|---|---|
| **Step 1** | |
| IPPs allege that sometimes the first sale is not to HDD manufacturers, but between defendants, where for example, "SAE . . . <u>purchased HDD Suspension Assemblies from NHK.</u>" (emphasis added). | RSAC ¶¶ 66, 89; EUFAC ¶ 139 |

---

[6] IPPs have purged numerous allegations from their Amended Complaints detailing intermediate transactions among foreign and U.S. subsidiaries/affiliates of OEMs.  But as this District consistently recognizes, "when evaluating an amended complaint, [t]he court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense[.]"  *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 U.S. Dist. LEXIS 120090, at *7 (N.D. Cal. Sep. 9, 2015); *Cole v. Sunnyvale*, No. C-08- 05017 RMW, 2010 U.S. Dist. LEXIS 11105, at *11 (N.D. Cal. Feb. 9, 2010) (same).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

| | |
|---|---|
| This sale is between Defendants or to other manufacturers of another intermediate component part, the head gimbal assembly.<br><br>"SAE [would] quote pricing for head gimbal assemblies that incorporated MPT's HDD suspension assemblies to those customers." | |
| **Step 2** | |
| Once incorporated into head gimbal assemblies, the products are then sold to HDD manufacturers (primarily Seagate, Western Digital, or Toshiba). | RSAC ¶ 51<br>EUSAC. ¶ 219 |
| **Step 3** | |
| **AND/OR** the foreign subsidiaries or affiliates of HDD manufacturers "incorporate[] suspension assemblies into HDDs for import into the United States" purportedly through transfer to their US sales affiliates or through a sale described in Step 4. | RFAC ¶ 45<br>EUFAC ¶ 152 |
| **Step 4** | |
| HDD Manufacturers sell HDDs as "stand-alone devices" to certain original equipment manufacturers (OEMs) that manufacture desktop or laptop computers such as Acer, Apple, Dell, Gateway, Hewlett-Packard, Lenovo, and Toshiba." | RSAC ¶ 54<br>EUSAC ¶ 248 |
| **OR** HDD Manufacturers sell HDDs "as inputs in Finished Products to" OEMs. | RFAC ¶ 2<br>EUFAC ¶ 149 |
| **OR** HDD Manufacturers sell HDDs to OEM manufacturers of Standalone Storage Devices such as "BlueArc, Cisco Systems, Dot Hill, EMC, Isilon, LSI, NetApp, Seagate, Sun Microsystems/Oracle, Western Digital, and Xyratex." | RFAC ¶ 45<br>EUSAC ¶ 245 |
| **OR** HDD Manufacturers sold "bare" HDDs directly to distributors or end-users. | EUSAC ¶ 124 |
| **Step 5** | |
| The foreign subsidiaries or affiliates of OEMs "sell their products, i.e. computers, in the U.S. and outside the U.S." to "foreign subsidiaries or affiliates [of resellers], who at times sell those products to the U.S. entities of those manufacturers." | RFAC ¶ 45<br>EUFAC ¶ 153 |
| **AND/OR** the foreign subsidiaries or affiliates of OEMs "shipped Finished Products to their U.S.-based sales arms pursuant to intercompany transfer policies (in which the U.S.-based companies determined the transfer prices they paid to their foreign affiliates)." | EUFAC ¶ 153 |
| **Step 6** | |
| The OEM's U.S.-based sales affiliates sell to resellers including Amazon.com, Best Buy, Office Depot, Staples, and WalMart (and many others). | EUFAC ¶ 153, 252 |
| **OR** the foreign subsidiaries or affiliates of OEMs sell to directly to the US-based Resellers. | RFAC ¶ 46 |
| **OR** OEMs sell to distributors like Arrow Electronics, Avnet, D&H, Ingram Micro, Synnex, and Tech Data. | EUFAC ¶ 251. |
| **OR** OEMs sell directly to End-Users. | EUSAC ¶ 221 |
| **Step 7 (newly identified step in the chain)** | |
| Distributors like D&H and Ingram Micro resell these products to other Resellers like the named Reseller Plaintiffs. | RSAC ¶ 23-27. |

Baker & McKenzie LLP<br>Two Embarcadero Center<br>11th Floor<br>San Francisco, CA  94111<br>+1 415 576 3000

| | |
|---|---|
| **AND/OR** Resellers like Amazon.com and Newegg.com resell these products to other Resellers like the named Reseller Plaintiffs. | RSAC ¶ 23-27. |
| **Step 8** | |
| Then Resellers sell to the members of the putative End-User class. | EUSAC ¶ 221 |
| **Step 9 (newly identified step in the chain)** | |
| Sometimes End-Users resell their used products to other End-Users through companies like eBay. | EUSAC ¶ 38, 81, |

Thus, the alleged chain of commerce involves the independent purchase and pricing decisions of at least four different companies (a defendant, an HDD manufacturer, an OEM, and a distributor and/or Reseller).  And the product at issue here—suspension assemblies—is combined with many other components at various layers of the chain to produce the different products that are further distributed down the chain.  The intervening "inter-company transfer" transactions, distributors, and multi-reseller transactions, which are sometimes alleged to be involved, push up the alleged number of separate distribution transactions to as many as nine.

Indeed, a graphical representation of the many ways any individual suspension assembly might wind through the nebulous global supply paths is below.



Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

The bottom of this long chain—the putative End-User class—allegedly contains every U.S. individual or business in 33 states that has ever purchased any of six different products—a laptop computer, a desktop computer, a "bare" HDD, an external hard drive, a network attached storage (NAS) drive, or an enterprise HDD Storage system.  Each of these products have different uses, distribution chains, and pricing.

IPPs recognize that suspension assemblies are inexpensive.  In their original Complaint, Resellers alleged that the cost of—allegedly price-fixed—suspension assemblies sold to HDD manufacturer Seagate were "roughly $.75 to $.65 over 8 quarters."  RFAC ¶ 98.  Sales for another Seagate project were priced "$0.10 to *[sic]* high . . . [at] $.84 to $.72 over 8 quarters."  *Id.*[7]  In other words, suspension assemblies (based on IPPs' allegations) sell for somewhere between $0.65 and $0.84 per unit, a tiny fraction of the cost of HDDs and an even smaller part of the cost of a finished consumer product incorporating an HDD (e.g., a laptop computer).  Aware of this deficiency, Plaintiffs now simply omit these specific allegations and now allege that an HDD typically includes multiple suspensions.  EUSAC ¶ 119; RSAC ¶ 44.  Nevertheless, IPPs continue to allege that suspensions have very little value of their own, describing them as "commodity-like products that are interchangeable" and "substitutable for another Defendant's [product]."  EUSAC ¶ 209.

IPPs allege that suspension assemblies make up only one of at least sixteen components in HDDs.  "[A]mong other things" HDDs are alleged to contain (1) top magnetic disks, (2) E-Blocks, (3) Spindle Motors, (4) Voice Coil Motors, (5) suspensions, (6) Baseplates, (7) baseplate bosses, (8) a radius, (9) loadbeams, (10) rails, (11) dimples, (12) traces, (13) flexure tails, (14) flexures, (15) bondpads, and (16) gimbals.  RSAC ¶ 50, Figs. 1 & 2.

IPPs now allege that *the HDD* is sometimes identified as a component in the finished products that consumers purchase.  EUSAC ¶ 127.  But IPPs never allege *the suspension assembly* within any HDD is identified.  They never allege that (1) any IPP is targeted with advertising identifying the type or manufacturer of a suspension assembly, (2) any IPP bases a decision to buy finished products on the costs or features of suspension assemblies buried within them, or (3) these downstream buyers are

---

[7] Even though Resellers have removed these factual allegations from their Second Amended Complaint, the court may still consider these allegations. *See supra* n.6.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1  even aware that suspension assemblies exist.

2  ## III.  THE IPPS LACK ARTICLE III STANDING.

3  ### A.  The Alleged Injury is Indirect, Untraceable, and Speculative.

4  Under Article III of the U.S. Constitution, a federal court may adjudicate an action only if it

5  constitutes a justiciable "case" or "controversy" that has real consequences for the parties. *Raines v.*

6  *Byrd*, 521 U.S. 811, 818 (1997).  To establish constitutional standing under Article III, IPPs must show

7  their claimed injury is fairly traceable to the challenged conduct.  *Jones v. Micron Tech., Inc.*, 400 F.

8  Supp. 3d 897, 907 (N.D. Cal. 2019); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  A

9  plaintiff may not "rely on a bare legal conclusion to assert injury-in-fact, or engage in ingenious

10  academic exercise in the conceivable to explain how defendants' actions caused his injury." *Jones*,

11  400 F. Supp. 3d at 907 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).  The

12  IPPs "as the party invoking federal jurisdiction, bears the burden of establishing these elements [and]

13  must clearly . . . allege facts demonstrating each element" of standing.  *Spokeo, Inc. v. Robins*, 136 S.

14  Ct. 1540, 1547 (2016) (internal citations and quotation marks omitted).

15  To sufficiently plead that their injury is traceable to Defendants' conduct, IPPs must allege

16  that: (i) defendants overcharged direct purchasers and (ii) some or all of that overcharge was passed

17  on to indirect purchasers through *each* of the *multiple* and *different* intermediate levels of the

18  distribution chain.  *Jones*, 400 F. Supp. 3d at 907 (citing *In re Auto. Parts Antitrust Litig.*, 29 F. Supp.

19  3d 982, 997 (E.D. Mich. 2014); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 502

20  (N.D. Cal. 2008)).

21  IPPs' amended pleadings now limit the class to only seven end-use products—purchases for

22  resale and for end-use of (i) "bare" HDDs, (ii) external hard drives, (iii) network attached storage

23  (NAS) drives, (iv) Enterprise HDD storage servers, (v) Enterprise HDD storage arrays, (vi) desktop

24  computers, and (vii) laptop computers.  EUSAC ¶¶ 124-25; RSAC ¶¶ 141-42.

25  IPPs' own allegations demonstrate that the path taken by an HDD suspension assembly to end

26  up in any of these seven products and then into the hands of the class members is long and complicated.

27  As detailed above (supra pp. 5-7), the chain includes from at least four to as many as nine independent

28  distribution transactions, with a morass of possible paths through which a suspension assembly can

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

travel.  IPPs' allegations identify at least seven manufacturers of desktop and laptop computers, twelve manufacturers of Enterprise HDD storage systems, at least six distributors of electronic products, over twenty-five retailers of electronic products, and an unknown number of resellers and end-users of seven distinct end-use products.

IPPs nevertheless label this distribution chain as "simple"—EUSAC ¶ 218—but their allegations show the contrary.  The manufacturing and distribution chains that stand between Defendants and the IPPs are complex, capture a wide array of products-within-products, and involves an inestimable number of independent price-setting decision-makers along the way.  The amended complaints fail to cure the traceability deficiencies of IPPs' original pleadings because the chain remains just as lengthy and complex as it was alleged to have been in the earlier complaints.  The new allegations, if anything, point to *more* complexity than IPPs' earlier complaints disclosed.  In short, it remains implausible that any alleged overcharge could be traced through this convoluted chain.

In response to the Court's prior dismissal order—ECF No. 282 at 11, the IPPs now reveal which specific products they purchased and from whom.  These new allegations expose even deeper complexities in the intermediate levels of the distribution chain.  Resellers now reveal that they purchased products containing suspensions from *other Resellers and Distributors*.  RSAC ¶¶ 23-27.  No explanation is given for this obvious conflict among putative class members or how these purchases would contain overcharges.[8]  This adds at least one more link to the already complex chain for which IPPs must show plausible pass-through.[9]

The complexity of the chain and the intervening levels of manufacturing can be compared to *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) ("*Capacitors*"), where the court allowed only a class of purchasers of *stand-alone capacitors*—unaltered by subsequent manufacturing and purchased *directly from distributors*—to proceed.  The Court rejected an earlier

---

[8] For these purchases, the IPPs are faced with an unavoidable conflict.  Either Resellers pass-through the alleged overcharges and they sustained no injury or Resellers did not pass through the alleged overcharge, so these secondary Reseller Plaintiffs (who purchased from other Resellers) sustained no damages.

[9] Further, as noted above, IPPs have also omitted certain allegations from their prior Complaints including the details involving foreign and U.S. subsidiaries/affiliates of OEMs.  See RFAC ¶ 45; EUFAC ¶ 153.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

attempt to bring an end-user class of products containing capacitors in more complex electronic products.  Here, IPPs' only attempt to remedy their pleadings is to limit the end-use products in the class, but nothing has changed regarding the complexity of the chain or the attenuation between the initial sale and alleged injury regarding the remaining end-use products alleged.  Unlike in *Capacitors* where the indirect purchasers bought stand-alone and unaltered capacitors that were never incorporated into a secondary intermediate product, here the suspension assemblies undergo at least one and typically two complex manufacturing processes into more complicated finished products, particularly for laptop and desktop computers, external hard drives, and NAS drives, all of which contain numerous other complex parts in addition to hard disk drives.

This deficiency is multiplied here because IPPs concede that suspensions are inexpensive and represent only small percentage of the total cost of the end-use products at issue.  Courts in the Northern District of California have been explicit that to allege plausible pass-through for component products, plaintiffs must allege that the components make up some significant portion of the final products purchased.  The ratio of component cost to finished product cost "is important because it illustrates the degree to which [the finished product's] cost is dependent upon or tied to [the component] cost." *Jones*, 400 F. Supp. 3d at 908 n. 2 (internal citation omitted).  For example, in *Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co.*, the court found standing lacking where it was "left to speculate what quantum" of the relevant product makes up of the downstream market. No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292, at *48 (N.D. Cal. Aug. 11, 2015) ("*Los Gatos*").  In *Jones*, this Court held that the plaintiffs failed to explain "how much a DRAM component [made] up of the final cost of each type of DRAM Product," which would be necessary to "illustrate[] the degree to which a DRAM Product's cost is dependent upon or tied to DRAM cost."  400 F. Supp. 3d at 908 n.2.

Here, IPPs have not only failed to allege facts demonstrating the components make up significant portions of the final products, but have specifically confirmed that the quantum is insignificant for the alleged classes.  IPPs now allege that suspensions "comprise approximately 5-10%" of the cost of an HDD.  RSAC ¶ 44; EUSAC ¶ 116.  IPPs then rely on allegations that HDDs— but not the suspensions within them—make up a significant portion of the cost of downstream

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

products.  For example, IPPs allege that an HDD makes up 30%-70% of the cost of storage array products.  EUSAC ¶ 245; RSAC ¶ 49.  But IPPs never allege what percentage of any product a suspension constitutes.

Further, IPPs fail to allege what percentage of the cost that either an HDD or a suspension assembly makes up of a desktop or laptop computer, likely because the percentage is *even smaller* than in any Standalone Storage Device.  End-Users give an example of a particular Dell computer costing between $299 and $449.  IPPs also provide an example of a 13" Inch MacBook Pro which currently retails at $1,299, nearly three times as much.[10]  These high product prices for desktop and laptop computers all support a conclusion that the "quantum" of price constituted by a suspension assembly is very small.  *See Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *52 (dismissing claims for lack of Article III standing where Plaintiffs alleged specific facts that one paint product contained "17% (by weight) of titanium dioxide.").

These minimal percentages make it implausible that any alleged overcharges are likely to be passed through the long chain between the initial sale and final purchases—or that these tiny alleged component overcharges would, for example, push a computer manufacturer to abandon established retail price points such as the $299 computer that End-Users provide as an example.  EUSAC ¶ 127, Fig. 3.

Where, as here, the alleged overcharges are small relative to the cost of the downstream product purchased and attenuated, courts, including this Court, have dismissed claims for lack of constitutional standing.  *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373, at *22 (D.N.J. Oct. 20, 2011) (dismissing for lack of standing a class of purchasers of products containing a mineral because it will "have a minimal foreseeable effect on the price of products containing trace amounts");  *cf. In re TFT-LCD Antitrust Litig.* (TFT-LCD), 586 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008) (Article III standing existed where "LCD panels make up 60-70% of the cost

---

[10] See https://www.apple.com/shop/buy-mac/macbook-pro/13-inch (last accessed Jan. 28, 2021). The court may take judicial notice of these facts because the price comes from the Apple website on the very same screen as Figure 4—cited by plaintiffs.  See *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may take judicial notice of "documents attached to the complaint, documents incorporated by reference in the complaint").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

of" those products).  As *Jones* explained, "[i]f a DRAM Product contains three components, of which DRAM is one, it is more likely that an increase in DRAM price will affect the overall price of the DRAM Product than if the DRAM Product contained thirty components."  400 F. Supp. 3d at 908 n. 2.  Between an HDD and a more complex finished product, the suspension is but one of numerous components, and an insignificant one at that.

IPPs's allegations regarding pass-through remain deficient.  Resellers rely heavily on academic papers estimating pass-through in unrelated industries including energy, gasoline, milk, butter, coffee, cheese, alcoholic beverages, European cigarettes, and automobiles.  RSAC ¶ 101-102.  Resellers make no allegations explaining how these estimates relate to or are analogous in any way to this case.

Additionally, IPPs' allegations show two examples of $20 of "Total Savings" in finished products.  EUSAC ¶ 127, Fig. 3.  This allegation further undermines—rather than supports—any suggestion that tracing a minute overcharge through this chain to the final prices of complex finished products can be done with certainty or precision.  When—as with the Dell computer examples—sales or discounts are applied to pricing at various levels in the distribution chain (*e.g.* Amazon Prime Day), IPPs fail to make any allegations explaining how the tiny alleged overcharges could be segregated from the sales and discounts.

End-Users now allege that pass-through is more likely in highly competitive markets made up of undifferentiated products and that each step of the chain meet this description.  EUSAC ¶¶ 234-36.  But nothing in the overall chain here has changed.  Plausibly alleging pass-through would require tracing a marginal overcharge associated with a tiny, cheap component through a stratified distribution chain that includes a broad set of vertically-organized companies, including multiple levels of manufacturing and sales.

As this district has held, "[i]t requires no leap of logic to conclude that each product in which DRAM is a component, contains numerous other components, all of which *collectively* determine the final price actually paid by plaintiffs for the final product.  In other words, the price for the actual product paid by plaintiffs is reflective of much more than just the component price for DRAM.' . . . [which] weighs against standing."  *Jones*, 400 F. Supp. 3d at 913 (internal citations and quotations omitted); *accord TFT-LCD*, 586 F. Supp. at 1124 (Article III standing existed where the "distribution

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

13

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

chain for LCD panels is short . . . .").  By comparison to any of the *DRAM* cases, the path of suspension assemblies is longer, involves more steps in the chain, and represents an even smaller component of final product prices.  The weight against standing is thus even heavier.

Also fatal to End Users' pass-through argument is their allegation that the markets must have (1) fierce price competition and (2) undifferentiated products.  EUSAC ¶ 239-40.  IPPs allege that HDDs meet both of these requirements and that personal computers (laptops and desktops) are undifferentiated products because they "have become more commodity-like."  EUSAC ¶ 241.  The latter allegation flies in the face of reality, and conflicts with IPPs' own allegations.  First, the Complaints date back as far as 2003, and do not allege that the conspiracy extended past 2016, so any recent commoditization of computers is irrelevant for the class period.  Second, this allegation conflicts directly with other allegations that computers *are* differentiated and customizable because consumers are "provided with options for selecting or increasing the HDD storage level" and memory options within customized computers.  EUSAC ¶ 127.  IPPs provide examples of customer choice by choosing between basic packages, "essential plus packages," "performance packages," and specifically "configur[ing]" a computer between numerous options."  EUSAC ¶ 127 Figure 3, ¶ 127 Figure 4.  The differentiated nature of computers is further illustrated by the pricing disparities among the alleged products—from a $299 Dell Inspiron 560 Desktop to a $1,299 13" Inch MacBook Pro.

To establish standing, IPPs are also obligated to show that "some or all of that overcharge was passed on to indirect purchasers through ***each of the various intermediate levels*** of the distribution chain."  *Jones*, 400 F. Supp. 3d at 907 (emphasis added).  But where complicated market chains are undefined and the method of pass-through remains speculation, courts have dismissed antitrust claims for lack of standing.  This approach is represented by *Jones*, where the court held that it was not clear "from the face of the Complaint . . . that the supracompetitively-priced DRAM component *and* its supracompetitive price wended their way into the DRAM Products Plaintiffs purchased."  *Id.* at 907.  Thus, the court concluded that plaintiffs did not meet their burden of establishing traceability and lacked Article III standing for their antitrust claims.  *Id.* at 907-08; *see also In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1091 (N.D. Cal. 2007) ("*DRAM I*") (dismissing indirect purchasers' claims where plaintiffs were "indirect purchasers and consumers who purchased

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

14

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

DRAM as a component" in various "electronic products. . . .").

Here, IPPs continue to allege the longest distribution chain of any antitrust case they or Defendants have yet identified.  By comparison, nearly all other cases, even those were standing was found lacking, involved only one or two levels of commerce removed from the direct purchase.  *See, e.g.*, *Jones*, 400 F. Supp. 3d at 904 (DRAM manufacturers sold to OEMs who sold to retailers and consumers); *Capacitors*, 106 F. Supp. 3d at 1059 (IPPs "purchased capacitors as stand-alone products from one or more distributors, who in turn purchased the capacitors as stand-alone products from defendants"); *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*") (same); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 992 (E.D. Mich. 2014) (OEMs purchased fuel senders from defendants and sold to plaintiffs); *TFT-LCD*, 586 F. Supp. 2d at 1123 ("from the defendants to the OEMs to the purchasers of the finished products");  *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1013 (N.D. Cal. 2007) ("*GPU I*") (IPPs purchased either stand-alone graphics cards from intermediaries or computers containing those graphics cards).  The multiple levels separating IPPs from the initial sale make any injury they may have suffered too remote to establish standing and represent precisely the sorts of "antitrust claims based on sprawling indefinite markets [that] are readily dismissed by the courts for lack of Article III and antitrust standing."  *Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *48-51.

## B.    IPPs' State Law Claims Lack Article III Standing Where They Fail to Allege Purchase of a Particular Product in Certain States.

In their original complaints, the End-Users and Resellers failed to allege the "types, makes, and models of the products implicated in the [c]omplaint."  See Order at 5 (quoting *Jones*, 400 F. Supp. 3d at 907-08).  In an attempt to cure this Court's prior dismissal, IPPs now allege which products were purchased by the named plaintiffs in each state, even though they do not allege the manufacturer or any details about the hard disk drives in the desktop or laptop computers they claim to have purchased, let alone any details about the suspension assemblies in those drives.  *See* RSAC ¶¶ 23-27; EUSAC ¶¶ 24-85.  They also fail to allege that each product was purchased in each state where they now bring claims.  This pleading deficiency is fatal for any alleged state law claim where a product was not purchased in that state.

In the prior Order, this Court dismissed claims brought by Resellers under certain states where

15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

"none of the named plaintiffs made a purchase" because the Reseller Plaintiffs "do not claim to have been injured."  Order at 6-7.  *See also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 926-27 (N.D. Cal. 2015) (dismissing for lack of standing claims arising under the laws of states in which none of the named plaintiffs made a purchase).  The same principle applies here.  No state-law claim for damages can proceed if no plaintiff alleges a purchase of that product in that state.

This principle is well-established in Northern District of California.  *Los Gatos* holds that "*each claim must be analyzed separately*, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  No. 13-cv-01180-BLF, 2014 U.S. Dist. LEXIS 133540, at *14 (emphasis added) (internal citations and quotations omitted).  A "plaintiff lack[s] standing to assert claims under laws of states other than state where plaintiff purchased the product-at-issue."  *Jones*, 400 F. Supp. 3d at 909 (internal citations and quotation marks omitted).  *See also Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (same).

Here, IPPs lack standing for any state-law claim where plaintiffs fail to allege purchase of a product in that state because—like in the original Order—no plaintiff has "claim[ed] to have been injured."  Order at 6-7.

This problem is widespread throughout the two complaints.  Within multiple states, the End-User class did not purchase particular products in their alleged class definition.  For example:

- the named End-Users never allege the purchase of any enterprise storage server or array in any state;

- there are only allegations of the purchase of network attached storage (NAS) drives in Massachusetts and North Dakota—while in the other 31 states, no end-user purchased such a product;

- no named End-User alleged the purchase of a desktop computer in Arizona, Arkansas, California, D.C., Hawaii, Iowa, Massachusetts, Michigan, North Carolina, North Dakota, New Hampshire, New Mexico, New York, Rhode Island, South Carolina, Tennessee, Vermont, or Wisconsin;

- no named End-User alleged the purchase of a laptop computer in Arizona, Hawaii, Kansas,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Maine, Missouri, North Carolina, New York, Oregon, Vermont, or West Virginia;

- no named End-User alleged the purchase of a "bare" or internal HDD in Arkansas, California, D.C., Florida, Iowa, Kansas, Maine, Michigan, Mississippi, Missouri, North Dakota, Nebraska, New Hampshire, New Mexico, Nevada, New York, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, or West Virginia.
- no named End-User alleged the purchase of an external or portable HDD in Arkansas, Mississippi, Montana, North Carolina, Nebraska, Oregon, Rhode Island, or Utah.

The Reseller class suffers from similar deficiencies:

- no named Reseller plaintiff specifically alleged the purchase of a network attached storage (NAS) drive or external/portable HDD[11]; and
- no named plaintiff in California alleged the purchase of a laptop computer or Enterprise Storage Server or Array.

The below charts (at Exs. 1 & 2) show what products were alleged to be purchased in each state, respectively, in each of the End-User and Reseller classes.  This Court should dismiss any state claim where IPPs fail to allege a purchase of a particular product based upon *Jones, Los Gatos,* and this Court's prior ruling.

**Exhibit 1: Purchases of Products in the End-User Class by State**

| | Desktop Computers | Laptop Computers | "Bare" or Internal HDDs | External or Portable HDDs | Network Attached Storage (NAS) Drives | Enterprise Storage Server | Enterprise Storage Array |
|---|---|---|---|---|---|---|---|
| Arkansas | | X | | | | | |
| Arizona | | | X | X | | | |
| California | | X | | X | | | |
| D.C. | | X | | X | | | |
| Florida | X | X | | X | | | |
| Hawaii | | | X | X | | | |
| Iowa | | X | | X | | | |
| Kansas | X | | | X | | | |
| Massachusetts | | X | X | X | X | | |
| Maryland | X | X | X | X | | | |
| Maine | X | | | X | | | |
| Michigan | | X | | X | | | |
| Minnesota | X | X | X | X | | | |

---

[11] The Resellers however did not specify between internal, external, or NAS drives and only alleged the purchase of "hard drives."  Defendants assume these were external hard drives because they specified purchasers other than the HDD manufacturers themselves.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

17

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Missouri | X | | | X | | | |
| Mississippi | X | X | | | | | |
| Montana | X | X | X | | | | |
| North Carolina | | | X | | | | |
| North Dakota | | X | | X | X | | |
| Nebraska | X | X | | | | | |
| New Hampshire | | X | | X | | | |
| New Mexico | | X | | X | | | |
| Nevada | X | X | | X | | | |
| New York | | | | X | | | |
| Oregon | X | | X | | X | | |
| Rhode Island | | X | | | | | |
| South Carolina | | X | | X | | | |
| South Dakota | X | X | | X | | | |
| Tennessee | | X | | X | | | |
| Utah | X | X | X | | | | |
| Virginia | X | X | X | X | | | |
| Vermont | | | | X | | | |
| Wisconsin | | X | X | X | | | |
| West Virginia | X | | | X | | | |

**Exhibit 2: Purchases of Products in the Reseller Class by State**

| | Desktop Computers | Laptop Computers | "Bare" or Internal HDDs | External or Portable HDDs | Network Attached Storage (NAS) Drives | Enterprise Storage Server | Enterprise Storage Array |
|---|---|---|---|---|---|---|---|
| Minnesota (Now Micro) | X | X | | X* | | X | |
| Michigan (Voyager) | X | X | | X* | | X | |
| North Carolina (IT Worx) | X | X | | X* | | X | |
| New York (Willow Bay) | X | X | | X* | | X | |
| California (Michael Medeiros) | X | | | X* | | | |

*Resellers indicated only that these purchases were of hard drives but did not specify between internal, external, or NAS drives. Resellers also did not specify the models of the products they purchased.

## IV.     THE IPPS CANNOT ESTABLISH ANTITRUST STANDING.

"If the plaintiff meets the requirements for standing under Article III, the court must then determine whether the plaintiff also meets the more demanding standard for *antitrust* standing." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998) (internal citations and quotation marks omitted) (emphasis in original). Even where there is an allegation of "harm" to the plaintiff sufficient to satisfy the constitutional standing requirement, "the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *In re*

18

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

*Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016) (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983), 459 U.S. at 535); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054 (9th Cir. 1999).

### A.   The Complaints Should Be Dismissed for Lack of Antitrust Standing.

In *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 529-35 (1983) ("*AGC*"), the Supreme Court "held that Congress did not intend to afford a remedy to everyone injured by an antitrust violation simply on a showing of causation. The plaintiff must have 'antitrust standing.'  To determine whether that requirement is met, the court must 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them.'" *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *AGC*, 459 U.S. at 535).  Courts analyze the following factors: (1) the nature of the injury, (2) the directness of the injury, (3) the speculative measure of the harm, (4) the risk of duplicative recovery, and (5) the complexity in apportioning damages. *Id.*  Applied here, each of the *AGC* factors weigh heavily against antitrust standing and support dismissal of IPPs' claims.

### 1.   *AGC* Factor 1, the Nature of Plaintiffs' Injury, Supports Dismissal.

Factor 1 is a two-part test requiring that: (1) "the plaintiff's injury must be the type of injury antitrust laws were intended to prevent" and (2) the "plaintiff must also show that his injury occurred in the market where competition is being restrained or was at least inextricably intertwined" with the restrained market. *Jones*, 400 F. Supp. 3d at 911 (internal quotation marks omitted).  IPPs do not meet this standard.

First, IPPs are not participants in the allegedly restrained market for suspension assemblies. Rather, End-Users and Resellers are participants in a market removed from that sale by multiple levels of commerce.  Courts have held that a component market is typically distinct and separate from the product containing a component.  *See DRAM I,* 516 F. Supp. 2d at 1091 ("[T]he general market for DRAM, [is] a market that is distinct from the market for electronic products that include DRAM."); *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 744 (7th Cir. 2018) (finding injury not fairly traceable where steel "was one among many components of other more complex products, all of which have gone through numerous manufacturing alterations and lines of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

distribution"). In some cases, where components are directly incorporated into finished products, courts have found this test satisfied. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.* No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 119598, *100-01 (N.D. Cal. Aug. 21, 2013) (finding this factor slightly favors standing where CRTs were directly incorporated into the "CRT products" purchased by plaintiffs). But suspensions are not directly incorporated into finished products—they are first incorporated into head gimbals, which are incorporated into HDDs, which are components of various finished consumer products. By comparison, in *DRAM*, the court held that purchasers of products containing DRAM were "participating in a *secondary* market that is incidental to the primary price-fixed market" *DRAM I*, 516 F. Supp. 2d at 1091 (emphasis added). But here, the market is not even secondary, but between three and nine levels removed from the initial sale.

Second, IPPs are also not purchasers in a market "inextricably intertwined" with the market for the sale of suspension assemblies. Where an indirect purchaser's theory of injury "depend[s] upon a complicated series of market interactions" and where plaintiffs allege an "attenuated economic causality" and there is a strong possibility that "other market variables intervened to affect the prices plaintiff paid," then plaintiffs are not in a market that is "inextricably intertwined" with the alleged restrained market. *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435, *78-79 (S.D.N.Y. Aug. 29, 2014); *see also Jones*, 400 F. Supp. 3d at 912 (indirect purchasers of DRAM products failed to allege that downstream market was inextricably intertwined because (1) IPPs never alleged "that DRAM represents a certain portion of DRAM Product cost paid by consumers" and (2) "it is not evident from the Complaint that DRAM price increases are traceable to the costs of DRAM Products"); *see also DRAM II*, 536 F. Supp. 2d at 1140-41 (finding end-users were not market participants in the restrained market).

In the *TFT-LCD Litigation*, the court held that the markets were inextricably intertwined where the complaint alleged (i) the component could be "physically traced through the supply chain," (ii) that the component's price could be "traced to show that changes in the prices paid by direct purchasers" of the component affect prices paid by indirect purchasers of end-products containing the component, and (iii) the component comprised 60-70% (in other words, a substantial proportion) of the cost of the end-products at issue. 586 F. Supp. 2d at 1123-24; *accord Jones*, 400 F. Supp. 3d at

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

912; *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358, *89-92 (N.D. Cal. Oct. 2, 2014) (finding component market "inextricably intertwined" in part because components were a "substantial part" of the end product and comprised a "substantial component cost" of the end product, such that the end-product price was determined in substantial part by the component price). IPPs, in contrast, allege no facts demonstrating that that these suspension assemblies—inexpensive subcomponents-within-components used in HDDs—make up a significant proportion of the cost of any final electronic product, or even of an HDD. On the contrary, they affirmatively allege facts confirming these components make up a tiny fraction of the costs of each HDD. *See* supra § II. Their claims based on desktop and laptop computers are even further off the mark, as IPPs fail to even allege a suspension assembly's percentage of the cost of an HDD. They make only the conclusory assertion that the HDDs are "a significant cost component of computers," EUSAC ¶ 129, and, worse still, have alleged facts confirming suspension assemblies are inexpensive. *See, e.g.*, RFAC ¶ 98.

IPPs also fail to allege facts suggesting that the pricing of suspension assemblies is inextricably intertwined with the pricing of finished products. At best, IPPs allege that Defendants monitored trends in downstream markets through industry reports, but this behavior in no way suggests any cross-elasticity of demand. Nor does it do anything to suggest that the component itself is a feature or selling point known to *purchasers* which factors into a purchaser's purchasing decision. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU II*") ("[I]n purchasing a computer, consumers are allegedly told that it contains an ATI or Nvidia graphics card of a certain type. A graphics card having certain speed and performance characteristics can be a selling point to a consumer."). Indeed, IPPs fail to allege that consumers knew (or cared about) which defendant-manufacturer made the suspension assemblies in the hard disk drive of the product they purchased, what kind of suspensions are in any given electronic product, or any speed, quality, or performance characteristics associated with a suspension assembly. There are no allegations that IPPs were even aware that suspension assemblies were components used in the products they allegedly purchased. At best, IPPs allege that suspensions are branded with a tiny letter denoting the manufacturer—EUSAC ¶ 230—but once incorporated into finished products, suspensions are not

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

visible to consumers.  To the contrary, IPPs allege that suspensions are interchangeable commodity products with no distinguishable features.  EUSAC ¶ 209; RSAC ¶ 90.

The alleged attenuation here is too much to conclude the markets are inextricably intertwined.

### 2.   *AGC* Factor 2, the Directness of the Injury, Supports Dismissal.

An antitrust injury is not direct "where plaintiffs do not allege either that they are direct victims of defendants' alleged conspiracy, or that they were the necessary means by which defendants' conspiracy was effectuated." *DRAM II*, 536 F. Supp. 2d at 1146.  This factor overlaps substantially with the directness analysis of Article III standing (*see supra* Section III.A).  The Ninth Circuit directs courts to "look to the chain of causation between . . . [the] injury and the alleged restraint in the market." *Am. Ad Mgmt.*, 190 F.3d at 1058.  "Directness in the antitrust context means 'close in the chain of causation.'" *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1162 (9th Cir. 1991) (quoting *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 147 (9th Cir. 1989) (quoting *AGC*, 459 U.S. at 540)); *Am. Ad Mgmt.*, 190 F.3d at 1058.  A direct injury cannot be established where the price-fixed component is but one of many components in the downstream finished product market and where the chain of causation is too speculative to trace.

Factor 2 is difficult to establish where, as here, the final consumer product "contains numerous other components, all of which collectively determine the final price actually paid by plaintiffs for the final product.  In other words, the price for the actual product paid by plaintiffs is reflective of much more than just the component price." *Jones*, 400 F. Supp. 3d at 912-13; *see also DRAM I*, 516 F. Supp. 2d at 1092 (where "plaintiffs have purchased DRAM not only in computers, but in other products" and "each product in which DRAM is a component, contains numerous other components, all of which collectively determine the final price actually paid by plaintiffs for the final product," directness of plaintiffs' injury is "too remote to warrant tipping this factor in favor of standing.").  Suspension assemblies are alleged to be but one of at least 16 component parts in an HDD.  RSAC ¶50, Figure 1 & 2.  Yet, for most IPPs, the HDD itself is but one of many parts making up most final consumer goods.[12]  Thus, IPP's still cannot allege anything but a very remote injury.

---

[12] Even an external hard drive contains components in addition to the hard disk drive.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

### 3.     *AGC* Factor 3, the Speculative Measure of the Harm, Supports Dismissal.

Factor 3 "focuses attention on the possibility that an antitrust plaintiff's damages theory is mere speculation because the claimed damages are too indirect and may have been produced by factors independent from any alleged overcharge." *Lithium Ion Batteries*, 2014 U.S. Dist. LEXIS 141358, *98; *AGC*, 459 U.S. at 542. Here, as discussed above, any number of intervening factors affect final consumer prices, including the many separate pricing decisions made at multiple levels of commerce.

Further, when analyzing standing, courts will consider if the component is a "separately-invoiced component of a finished computer, and [if] it is severable from the computer itself." *See GPU II*, 540 F. Supp. 2d at 1098. IPPs never allege that suspension assemblies are separately invoiced, severable, or replaceable—because they are not.[13]

### 4.     *AGC* Factor 4, the Risk of Duplicative Recovery, Supports Dismissal.

Standing is barred where there is a significant risk of duplicative recovery such as where there are "numerous other plaintiffs further up the supply/distribution chain . . . who would be better positioned to enforce the antitrust laws." *See In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at *88-89. "Potential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, the amount of the alleged overcharge, thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs." *AGC*, 459 U.S. at 544. In this case, direct purchaser Seagate has brought a claim multiple levels up the supply/distribution chain. Other direct purchasers can similarly pursue claims.

Given the many transactions in the distribution chain that IPPs allege, *see supra* Section II, there is a significant risk here of overlapping claims for recovery. As before, IPPs have alleged conflicting overcharge claims from purchasers at three different levels of distribution. This fact weighs against standing for indirect purchasers at the bottom of the distribution chain. *See Am. Ad. Mgmt*, 190 F.3d at 1060 n.10 (although "the existence of a related lawsuit is by no means a prerequisite to finding a risk of duplicative recoveries," its existence "weighs against finding in the plaintiff's favor on this factor."). Worse still, Resellers now allege that they purchased products containing

---

[13] At best, IPPs allege that HDDs—the downstream and much more complex product—is identified to consumer and affects the price of finished products, but HDDs are not the product at issue here.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

suspensions from *other Resellers and Distributors* such as Amazon.com, an allegation which increases the already high risk of duplicative recovery and overlapping claims.  RSAC ¶ 23-27.

### 5. *AGC* Factor 5, the Complexity in Apportioning Damages, Supports Dismissal.

The significant challenges in apportioning damages and tracing the alleged pass-through of overcharges through multiple levels of commerce weigh heavily against standing here.

As IPPs previously admitted, even the first sale of suspension assemblies is complex, with a number of active intermediaries (e.g., head gimbal assembly manufacturers).  RSAC ¶¶ 66, 89; EUFAC ¶ 139.  From there, each product is included in an HDD and most likely sold a second time to an OEM manufacturer, and then likely be sold a third time to a Distributor, followed by a fourth time to a Reseller before being sold a fifth time to an End-User.  EUSAC ¶ 219.  An alleged upstream overcharge in this chain will be at best difficult, and more likely impossible, to apportion downstream.

Indeed, Resellers and End-Users each claim damages from the same upstream sales, and the inherent conflict between their respective apportionments of damages are already apparent from the face of their pleadings.  For example, End-Users allege that "at least some of the overcharge will be passed on by distributors [the reseller class] to end consumers.  When the distribution markets are highly competitive, as they are here, <u>all or nearly the entire overcharge will be passed on through to ultimate consumers</u>."  EUSAC ¶ 254 172 (citation omitted) (emphasis added).  Resellers and End-Users are pursuing two plaintiff classes at different distribution levels for the very same overcharge, but each plaintiff class claims that damages should be apportioned to them.  And, now there is conflict even within the Resellers. RSAC ¶ 23-27.   These allegations demonstrate the apportionment complexities that defeat antitrust standing under Factor 5.

Under each *AGC* factor, Resellers and End-Users lack antitrust standing, requiring dismissal.

### B. *AGC*'s Antitrust Standing Requirements Apply to the State Claims.

Recent court opinions have held  that even where a state has adopted an *Illinois Brick* repealer, that decision is not the same as rejecting the principles of proximate causation inherent in the antitrust standing test.  For example, in September 2018, the Seventh Circuit rejected the notion that *Illinois Brick* repealers "now allow all indirect-purchaser suits to go forward, no matter how far removed the

24

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

purchasers are from the production process and no matter how speculative the damages award would be. We do not read these state laws so expansively." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 744 (7th Cir. 2018) (affirming district court's application of *AGC* to all 21 state law claims asserted in the case—Arizona, California, DC, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada,  New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin).

As recently as January 2019, the Northern District of Illinois held that a plaintiff bears the burden to show that "any of the states under which Plaintiffs have brought antitrust claims would apply a different standard" than *AGC*. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 362 F. Supp. 3d 510, 541-45 (N.D. Ill. 2019) (applying *AGC* to 23 states including Alabama, Arizona, California, DC, Hawaii, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico,  New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin).

Courts in this Circuit have held that *AGC* should be applied to any state claim where (1) "courts in the various states have held that the *AGC* factors apply to their antitrust laws" or (2)  "the state legislatures have enacted harmonization provisions within the state antitrust statutes." *See In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWx), 2009 U.S. Dist. LEXIS 133088, *10-11, *19-20 (C.D. Cal. July 6, 2009) (applying *AGC* to claims under the laws of 22 states—Alaska, Arizona,  California, D.C., Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, and Wisconsin);[14] *see also DRAM I*, 516 F. Supp. 2d at 1094-95 (finding the existence of harmonization provisions and/or judicial reference to federal antitrust precedents to interpret state antitrust statutes as a sufficient basis on which to trigger application of *AGC* and applying it to at least 13 states—Arizona, California, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, and

---

[14] The Court further noted that "where state courts and legislatures have indicated that they would look to federal antitrust precedent in applying their laws, it seems that at the very least courts would require plaintiffs in antitrust actions to plausibly allege that they were participants in the relevant product market where the alleged anticompetitive activity took place." *Id.* at *19-20.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Wisconsin).  This approach is logical and should be adopted by this Court.

Regardless, every court is consistent that the application of the *AGC* antitrust standing requirements to state-law claims requires a detailed state-by-state analysis.  See *Jones*, 400 F. Supp. 3d at 914 (requiring a "careful jurisdiction-by-jurisdiction analysis").

Accordingly, Defendants provide below (1) state law showing application of *AGC* to the state law claims at issue, (2) at Appendix B, a list of federal opinions applying *AGC* to the state laws at issue, and (3) at Appendix C, the harmonization statutes in the relevant states showing that these states, even when adopting an *Illinois Brick* repealer, still interpret their state antitrust law consistently with federal law.  Appendix A tracks these arguments for each state where a claim was asserted.

Based on the following judicial decisions and state harmonization provisions, Plaintiffs cannot avoid application of *AGC* to nearly every state law claim they assert.

First, two state law claims—Maryland and Rhode Island—can be dismissed without analyzing the application of the *AGC* factors because both states allow only their Attorney General to sue on behalf of indirect purchasers.  This argument is discussed in more detail below.  *See infra* Section V.A.

Second, binding precedent from the Ninth Circuit has found that the California Cartwright Act, the Arizona Uniform State Antitrust Act, and Oregon's Unfair Trade Practices Act are interpreted in conformity with federal antitrust laws, including *AGC*.  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (California); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 609-10 (9th Cir. 2005) (Arizona); *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963-66 n.4 (9th Cir. 1999) (Oregon).

Third, twenty-one states have either case law directly applying the *AGC* factors to analyze standing under state antitrust statutes or case law suggesting that the high court would apply those factors.  Further, these states all have either a federal harmonization statute or case law from their high courts requiring that state antitrust law be interpreted consistently with its federal counterpart.  *See infra* App. C.

Specifically, the high courts of three states (Iowa, Nebraska, and Nevada) have applied the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

*AGC* factors to determine standing for state antitrust claims.[15] The high courts in five more states (Arizona, California, Hawaii, Mississippi, and West Virginia) have issued opinions that strongly suggest these courts would apply the *AGC* factors in analyzing state antitrust claims.[16]

Intermediate courts in two states (New York and New Mexico) have applied the *AGC* factors in determining standing for state antitrust claims. *See Ho v. Visa USA, Inc.*, 793 N.Y.S. 2d 8, 8-9 (N.Y. App. Div. 2005) (affirming trial court's denial of indirect purchaser standing based upon trial court's application of *AGC* factors); *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772, 778-81 (N.M. Ct. App. 2012) (applying AGC factors). Further, lower courts in D.C. and eight states (Kansas, Maine, Michigan, North Carolina, North Dakota, South Dakota, Vermont, and Wisconsin) have applied the *AGC* factors to determine standing for state antitrust claims.[17]   Finally, federal district courts in two

---

[15] *See Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007) (applying *AGC* in affirming dismissal of Iowa antitrust claims); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299-301 (Neb. 2006) (applying *AGC* in affirming dismissal of Nebraska antitrust claims); *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.*, 423 P.3d 605, 607-08 (Nev. 2018) (applying the *AGC* factors and describing the Clayton Act as the "counterpart" to the UTPA).

[16] *See Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 113 (Ariz. 2003) ("the question 'which persons have been injured by an illegal overcharge' differs from the question 'which persons have sustained injuries too remote to give them standing to sue for damages under § 4.'") (quoting *Illinois Brick*, 431 U.S. at 728 n.7); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1077 (Cal. 2010) (citing *AGC* and *Vinci* for requirement that plaintiffs establish "antitrust causation" under the Cartwright Act); *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 326 & n.33 (Haw. 2010) (remarking on "Hawaii's virtually word-for-word adoption of the prohibitions contained in the Sherman, Clayton, and FTC acts" and recognizing "federal courts have consistently applied the concept of antitrust injury when determining if a plaintiff has federal antitrust standing," but declining to consider *AGC*'s applicability in the instant case); *Cieri v. Leticia Query Realty*, 80 Haw. 54, 66, 905 P.2d 29, 41 (1995) (holding an "essential element" of standing is "an actual or threatened injury [that] . . . is fairly traceable to the defendant's actions"); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004) (denying Plaintiff's antitrust claims on grounds of proximate causation and "remoteness").

[17] *Peterson v. Visa. U.S.A., Inc.*, No. 03-8080, 2005 D.C. Super. LEXIS 17, at *12-16 (D.C. Super. Ct. 2005) (citing *AGC* as the "seminal case" in D.C. and applying factors); *Wrobel v. Avery Dennison Corp.*, No. 05-cv-1296, 2006 WL 7130617, at *3-4 (D. Kan. Feb. 1, 2006) ("*AGC* standing test may be applied to . . . KRTA"); *Knowles v. Visa U.S.A.*, No. CV-03-707, 2004 Me. Super. LEXIS 227, at *13 (Super. Ct. Me. Oct. 20, 2004) (applying *AGC* but disregarding "directness" factor to "Maine's antitrust laws"); *Stark v. Visa U.S.A. Inc.*, No. 03- 055030-CZ, 2004 WL 1879003, at *4 (Mich. Cir. July 23, 2004) (Michigan courts would "continue[] to apply antitrust standing requirements . . . [for] derivative or remote injuries"); *Crouch v. Crompton Corp.*, No. 02-CVS-4375, 2004 NCBC LEXIS 6, *31, 61 (modifying *AGC* but holding North Carolina courts "must still determine standing based upon relevant factors."); *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2115144, at *2-3 (N.D. Dist. Ct. Aug. 23, 2004) (dismissing claims where "[p]laintiffs' alleged injuries do not satisfy antitrust standing principles"); *Cornelison v. Visa U.S.A., Inc.*, Civ. No. 03-1350, at 54 (S.D. Cir. Ct. Sept. 29, 2004) (court applied a modified *AGC* analysis); *Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 Vt. Super. LEXIS 42, at *7 (Vt. Super. Dec.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

states (Oregon and Utah) have concluded that the antitrust statutes of the states where they are located would apply the *AGC* factors.[18]

Two states apply factors similar to *AGC* in analyzing standing and should thus be analyzed in the same manner. The Minnesota high court held that antitrust standing under Minnesota law depends on factors similar to those outlined by the Supreme Court in *AGC* such as foreseeability, proximate cause, remoteness, and the relation of the injury to the purported violation. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 630-31 (Minn. 2007) (declining to adopt *AGC* but recognizing that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law"). Because these criteria are comparable to the *AGC* factors, this claim should be dismissed. Similarly, although Tennessee's high court has not addressed *AGC*, at least one intermediate court has directly relied on precedent from the Tennessee high court in holding that plaintiffs cannot recover for indirect, speculative, or remote injuries in pursuing state antitrust claims. *See Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, No. W1999-01061-COA-R9-CV, 2000 Tenn. App. LEXIS 644, *11-12, 26-29 (Ct. App. Sept. 26, 2000) (plaintiff lacked standing to pursue antitrust claims "[g]iven the fact that the Funds' injuries are unquestionably indirect, and considering the speculation required to prove the Funds' damages, we must conclude that the Funds' alleged damages are too remote, as a matter of law, to support recovery"). Because these criteria are comparable to the *AGC* factors at issue when considered within the context of this case, this claim should be dismissed.

---

27, 2004) ("applying the general factors of *Associated General Contractors*"); *Strang v. Visa*, No. SI560-03, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) ("[O]ur appellate courts would look to [the AGC] factors for guidance in assessing an indirect or remote purchaser's standing").

[18] *Patterson Dental Co. v. McGaughey*, No. 85-469-PA, 1985 WL 25732, *2 (D. Or. Dec. 9, 1985) (holding analysis of the *AGC* factors "also applies to defendant's state antitrust counterclaim"); *Or. Laborers-Employers Health v. Morris*, 17 F. Supp. 2d 1170, 1176 n.2 (D. Or. 1998) ("Oregon laws, O.R.S. 646.725 and 646.730, are nearly identical to the Sherman Act, sections 1 and 2. Chapter 646.715(2) requires that state courts look to federal case law for guidance . . . "); *Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1152-54 (D. Utah 2001) (applying *AGC* factors based on 10th Circuit precedent to claims brought under federal antitrust law and Utah's antitrust statute; *see also Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992) (stating that the Utah Antitrust Act "is essentially identical to the Sherman Act" and holding that "the Utah Antitrust Act does not apply for the same reason that the Sherman Act does not apply").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

## V.   THE IPPS' STATE-LAW ANTITRUST CLAIMS SUFFER FATAL STATE-LAW DEFICIENCIES.

### A.   The Maryland and Rhode Island State Law Antitrust Claims Should Be Dismissed Because These States Only Allow the Attorney General to Bring Suit on Behalf of Indirect Purchasers.

Two state law claims—Maryland and Rhode Island—should be dismissed because both states allow only their Attorney General to sue on behalf of indirect purchasers.  The Maryland statute at the time of the alleged conspiracy permits only the "United States, the State, or any political subdivision" to bring actions for "indirect[]" harm. MD. COM. LAW CODE ANN. § 11-209(b)(2)(ii) (amended by 2017 Md. HB 1415).  The Rhode Island statute upon which End-Users appear to rely was not enacted until 2013, *see* R.I. GEN. LAWS § 6-36-12 (amended by 2013 R.I. SB 840), but even that law pertains only to *suits parents patriae* and creates no private right.  Accordingly, both should be dismissed.

### B.   The Mississippi, North Carolina, Tennessee, and Wisconsin Antitrust Claims Should Be Dismissed Because These States' Antitrust Laws Do Not Apply to The Interstate Sales Alleged Here.

The high courts in Mississippi, Tennessee, and Wisconsin have determined that their antitrust statutes either reach only conduct that occurred "within the state" or affects commerce within the state to a "substantial degree."  *Standard Oil Co. of Ky. v. State ex rel. Att'y Gen.*, 65 So. 468, 70-71 (Miss. 1914); *GPU II*, 540 F. Supp. 2d at 1099 ("Mississippi [*sic*] law requires that the majority of an antitrust conspiracy occur within the state.") (citing *Standard Oil*, 65 So. at 471); *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (affirming dismissal on the basis that plaintiff failed to allege "anticompetitive conduct affected Tennessee commerce to a substantial degree"); *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) (plaintiff must allege conduct "occurred within this state" or "substantially affects" Wisconsin).

Similarly, the Fourth Circuit and federal district courts situated in North Carolina have consistently interpreted North Carolina's antitrust laws as addressing "primarily local concerns." *ITCO Corp. v. Michelin Tire Corp.*, Commercial Div., 722 F.2d 42, 48 n.9 (4th Cir. 1983); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (limiting the scope of the NCUTPA to "cases involving substantial effect on a plaintiff's in-state business operation"); *Merck & Co., Inc. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996).  This mandates dismissal for claims

29

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

based on conduct outside of Mississippi, Tennessee, Wisconsin, and North Carolina.

## VI.   THE IPPS' STATE-LAW CONSUMER PROTECTION CLAIMS SUFFER NUMEROUS FATAL STATE-LAW DEFICIENCIES.

### A.   The Arkansas and New Mexico Consumer-Protection Claims Should Be Dismissed Because No "Unconscionable Conduct" Is Alleged.

End-User Plaintiffs have not alleged "unconscionable conduct" as required by the state consumer protection laws of Arkansas and New Mexico.  ARK. CODE ANN. § 4-88-107(a); N.M. STAT. ANN. § 57-12-2(D).  In Arkansas and New Mexico, "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high."  *GPU I*, 527 F. Supp. 2d at 1029.  Arkansas law defines "deceptive and unconscionable trade practices" as "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest." § 4-88-107(a)(8).  Similarly, unconscionable conduct as defined under New Mexico law constitutes acts or practices that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a gross disparity between the value received by a person and the price paid." § 57-12-2(E).

End-User Plaintiffs have pleaded only price fixing.  They do not allege any facts suggesting that they were "taken advantage of" or even that there was a "gross disparity" in the alleged artificially inflated prices.  *See e.g.*, *Hernandez v. Wells Fargo Bank N.M., N.A.*, 128 P.3d 496, 497-99 (2005); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1166–67 (N.D. Cal. 2015) ("[I]n absence of authority from Arkansas courts that the ADTPA extends to price fixing claims, those claims should be dismissed."); *see also In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *GPU I*, 527 F. Supp. 2d at 1029-30 (dismissing claims of "unconscionable conduct" under Arkansas and New Mexico law).  Because these consumer protection statutes do not extend to price fixing claims, these claims should be dismissed.

### B.   The Arkansas, Montana, South Carolina, and Virginia Consumer-Protection Claims Should Be Dismissed Because Class Actions are Barred or Limited by State Statute.

Like the disallowance of a private right of action for state law antitrust claims in Maryland and Rhode Island discussed above, Arkansas[19], Montana, and South Carolina bar consumer protection

---

[19] Except for claims asserted under the Arkansas Constitution, Amendment 89.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

class actions brought by private individuals.  A.C.A. § 4-88-113; MONT. CODE ANN. § 30-14-133(1); S.C. CODE ANN. §§ 37-23-50, 37-23-70, 37-5-108, 37-5-202, 37-10-105, and 40-39-160.  Likewise, Virginia authorizes only "individual action" for claims brought under its consumer protection statute. VA. CODE ANN. § 59.1-204; *see also W.S. Carnes, Inc. v. Bd. of Supervisors*, 478 S.E.2d 295, 300 (Va. 1996).  Application of Rule 23 to these claims would "abridge, enlarge or modify" substantive rights in each of these states, and therefore restrictions barring consumer protections class actions brought by private individuals must apply.  *See generally* 28 U.S.C. § 2072(b); *see also DRAM I*, 516 F. Supp. 2d at 1103 ("[T]he statutes cannot be enforced by way of a class action suit.  The clear language of all three statutes [Louisiana, Montana, and South Carolina] expressly states as much.").  Accordingly, End-User Plaintiffs' putative class action claims for these states should be dismissed.

### C.   The Florida, Michigan and Minnesota Consumer Protection Claims Should Be Dismissed Because They Fail to Meet Rule 9(b)'s Requirements.

End User Plaintiffs' Florida, Michigan, and Minnesota consumer protection claims are not pleaded with particularity and should thus be dismissed.  Florida, Michigan, and Minnesota consumer protection statutes are based in fraud and are therefore subject to Rule 9(b)'s heightened pleading requirements.  *Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, No. 07-cv-2093, 2008 U.S. Dist. LEXIS 61428, *7 (M.D. Fla. Aug. 4, 2008) ("[C]laims arising under the [Florida Deceptive and Unfair Trade Practices Act] must be pled with particularity"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) ("When the [Michigan CPA] claim is based on breach of express or implied warranties, these pleading strictures do not apply but otherwise, the allegations must include the specificity required by Fed. R. Civ. P. 9(b)."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1076, 1078 (S.D. Cal. 2017) (granting motion to dismiss CFPs claim for failure to plead with particularity because they "do not point to a specific provision of the [Michigan's Consumer Protection Act] definitional section covering antitrust violations, and the Court is unable to find one. Accordingly, the only manner in which Plaintiffs may assert a violation of the MCPA is through fraud, and therefore Rule 9(b)'s heightened pleading standard applies," and finding "Rule 9(b) applies to any claim under Minnesota's consumer fraud provisions.") (internal citations omitted).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

"Heightened pleading under Rule 9(b) requires the who, what, where, when, and how of the misconduct charged." *Jones,* 400 F. Supp. 3d at 927.  End-User Plaintiffs' bare allegations provide no details about the alleged fraudulent transactions and instead in conclusory fashion End-User Plaintiffs assert they "paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies" and "Defendants misrepresented the real cause of the price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts."  EUFAC ¶¶, 331(d) & (f), 334(e), 335(e).  End-User Plaintiffs do not plead any specific allegations detailing these alleged "public statements."  Nor are there any details about ***which*** Defendant purportedly made the representations or ***to whom***, ***what*** the specific misrepresentations were, ***when*** or ***where*** the statements were "publically" made, or ***how*** they were purportedly communicated.  These conclusory allegations fail "to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

### D.   The Consumer Protection Claims for North Carolina, New Hampshire, and Massachusetts Should Be Dismissed Because These Statutes Do Not Reach the Interstate Sales Alleged Here.

North Carolina's Unfair Trade Practices Act was "designed to address primarily local concerns." *ITCO Corp. v. Michelin Tire Corp.*, Commercial Div., 722 F.2d 42, 48 n.9 (4th Cir. 1983). The New Hampshire Consumer Protection Act only reaches anticompetitive conduct that occurs "within th[e] state."  N. H. REV. STAT. ANN Section 358-A:2; *see also Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 343-4 (D.N.H. 2012).  Massachusetts' consumer protection statute only reaches anticompetitive conduct that "occurred primarily and substantially" in the state.  MASS. GEN. LAWS Ch. 93A, § 11; *see also Acacia Communs., Inc. v. ViaSat, Inc.*, No. SUCV20172386BLS1, 2018 Mass. Super. LEXIS 46, *17-18(Mass. Sup. Ct. 2018).  IPPs do not allege that Defendants manufactured or distributed products from locations in these states.  Nor do IPPs allege that they bought any products directly from Defendants in these states.  Accordingly, IPPs have not alleged any wrongful conduct occurring in these states and their consumer protection claims should be dismissed.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

### E. The Arkansas, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah and Virginia, and West Virginia Consumer Protection Claims Should Be Dismissed Because Price-Fixing Is Not An Enumerated Violation.

IPPs' Arkansas, Michigan, Nevada, Oregon, Rhode Island, Utah, and Virginia price-fixing claims should be dismissed because they are not violations under the respective consumer protection statutes.

Each of these statutes are limited in coverage to specific enumerated conduct.[20]  ARK. CODE ANN. §§ 4-88-107(a); 4-88-108; MICH. COMP. LAWS § 445.903(1); NEV. REV. STAT. § 598.0915-925; OR. REV. STAT. § 646.605-08; S.D. CODIFIED LAWS § 37-24-6; R.I. GEN. LAWS. §§ 6-13.1-1(6)(i)-(xix); UTAH CODE ANN. § 13-11-1 *et seq.*; VA. CODE ANN. § 59.1-200; and ; and W. Va. Code § 46A-6-102.  None of these lists include price-fixing as an offense, nor do IPPs allege "deceptive," "unconscionable," or "unfair" conduct.  *See e.g.*, *In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042-43 (N.D. Cal. 2011) (granting defendants' motion to dismiss ADTPA claims because there are no "cases from Arkansas state or federal courts recognizing a price-fixing claim under the ADTPA"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 1161-62 ("[P]rice fixing is not within the ambit of the [R.I.] UTPCPA"); *DRAM I*, 516 F. Supp. 2d at 1115-17 (dismissing price-fixing claims premised on Oregon, Rhode Island, and Utah consumer protection laws); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1162, 1172-73, 1169 (N.D. Cal. 2015) (dismissing West Virginia claim); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 350 F. Supp. 2d 160, 189, 202-03, 206-07(D. Me. 2004) (dismissing consumer protection claims based on Michigan, South Dakota, and Virginia law, because plaintiffs did not allege unfair practices specifically enumerated in statute).  Accordingly, IPPs' price-fixing claims are not violations of these state consumer protection statutes and should be dismissed.

### F. The Arkansas and California Consumer Protection Claims Should Be Dismissed Because Plaintiffs Do Not Allege Reliance on Deceptive Conduct.

The IPPs' claims under the Arkansas and California consumer protection statutes fail because

---

[20] Regarding the Oregon statute, there is a catch-all provision prohibiting a person from engaging in "any other unfair or deceptive conduct in trade or commerce."  OR. REV. STAT. § 646.605. However, no action or suit is allowed under that provision "unless the Attorney General has first established a rule in accordance with the provisions of OR chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce."  *Id.*  Defendants are unaware of any such rule.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

they do not allege reliance.  Each state's consumer protection statute requires plaintiffs to demonstrate "reliance" on misrepresentations made by a defendant.  ARK. CODE § 4-88-113(f); CAL. BUS. & PROF. CODE § 17204; *Fisher v. Monster Beverage Corp.,* 656 F. App'x 819, 822 (9th Cir. 2016); *In re Glumetza Antitrust Litig.,* No. C 19-05822, 2020 U.S. Dist. LEXIS 39649, *43 (N.D. Cal. Mar. 5, 2020); *Bumpers v. Cmty. Bank*, 747 S.E.2d 220, 226-27 (N.C. 2013).  However, price fixing does not induce reliance because "logically, charging higher prices would not deceive or induce a consumer to purchase an item he or she would not otherwise purchase."  *See e.g.*, *In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d at 1160; *see also GPU I,* 527 F. Supp. 2d at 1031 (N.D. Cal. 2007) (same). Because IPPs do not allege any deceptive conduct other than price-fixing, IPPs cannot have relied on any allegedly deceptive conduct in purchasing any products with suspension assemblies.  And because IPPs have not alleged reliance, their claims under the Arkansas and California consumer protection statutes should be dismissed.

### G. The Missouri and Virginia Consumer-Protection Claims Should Be Dismissed Because Those States Lack Any *Illinois Brick* Repealer Statutes or the Equivalent.

Missouri and Virginia do not have *Illinois Brick* "repealer" statutes or case law that confer antitrust standing upon indirect purchasers.  Moreover, each of these states also have a federal harmonization statute or equivalent case law, by which their state laws are construed in a manner that is consistent with federal precedent.  While IPPs only allege consumer protection claims for these states, this tactic is an end-run around federal antitrust standing requirements and these states' choice not to repeal *Illinois Brick*.  Courts in both states have rejected similar attempts to bring antitrust claims disguised as consumer protection claims.  See *Ireland v. Microsoft Corp.*, No. 00CV-210515, 2001 Mo. App. LEXIS 2371, *1 (Mo. Ct. App. Jan. 24, 2001) ("[i]t is clear that plaintiff, as an indirect purchaser, lacks standing to sue" under both the Missouri Antitrust Laws and Missouri Merchandising Practices Act); *State v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1140-51 (N.D. Cal. 2007) (dismissing indirect purchaser claims under any "antitrust, unfair competition, and/or consumer protection statutes" in 11 states including Virginia); *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1186, 1191 (N.D. Cal. 2009).  Accordingly, these claims should be dismissed.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

34

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

### H. The Arkansas, California, Florida, Nebraska, New York, North Carolina, and Vermont Consumer Protection Claims Should Be Dismissed Because These States' Consumer Protection Laws Have Standing Requirements the IPPs Fail.

IPPs' claims under the consumer protection statutes of Arkansas, California, Florida, Nebraska, New York, North Carolina, and Vermont all either apply the *AGC* factors or have standing requirements comparable to the *AGC* analysis sufficient to bar IPPs' claims under those statutes. For the same reasons detailed above in the Article III and antitrust standing sections—*supra* §§ III & IV—consumer protection claims in these states should fail. Accordingly, those claims should be dismissed.

*Arkansas: In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *54 (N.D. Ill. June 29, 2015) (causation deficiencies "preclude [IPPs'] rebranded antitrust claims" under the ADTPA); *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 384 S.W.3d 540, 552-53 (Ark. Ct. App. 2011) (requiring "causal connection between" violation and injury"); *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 887-89 (E.D. Ark. 2008).

*California: In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *57-59 (N.D. Ill. June 29, 2015) ("[T]he Court finds that Indirect Plaintiffs lack standing to bring their claims under the UCL"); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541-42 (Cal. 1999); *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 626 n.33 (Cal. Ct. App. 2009) (defendant's conduct "must be more than a remote or trivial factor" in causing the injury).

*Colorado:* Colo. Rev. Stat. 6-1-113 (standing to obtain damages not available to class action plaintiffs); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 179-80 (D. Me. 2004) (noting that a plaintiff must show the "deceptive trade practice" had "caused" the injury)

*Delaware: Knapp v. McCleary*, No. 83C-JN-87, 1987 Del. LEXIS 1198, *7 (Del. July 9, 1987) ("the Deceptive Trade Practices Act, 6 Del.C. § 2531-44, requires "[a] plaintiff suing under the Act [to] have a business or trade interest at stake; a retail consumer lacks standing to sue").

*Florida: In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, *61 (N.D. Ill. June 29, 2015) ("[T]he Florida Supreme Court would either adopt the federal court's repackaging theory or read FDUTPA's causation requirement narrowly so as to preclude injuries that are too remote from the alleged antitrust violation.")

1    *Nebraska: DRAM II*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) (holding *AGC* applies to Nebraska

2    Consumer protection statute); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006).

3    *New York: DRAM II*, 536 F. Supp. 2d 1129, 1142-44 (N.D. Cal. 2008) (holding *AGC* applies

4    to New York consumer protection statute); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 840

5    N.Y.S.2d 8, 12 (N.Y. App. Div. 2007) (indirect purchaser claims too remote under Gen. Bus. Law §

6    349); *Ho v. Visa U.S.A., Inc.*, 787 N.Y.S.2d 677, *2-5 (N.Y. Sup. Ct. 2004).

7    *North Carolina: In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690,

8    2015 U.S. Dist. LEXIS 84152, *62-65 (N.D. Ill. June 29, 2015) (dismissing indirect purchasers' price-

9    fixing claim under § 75-1.1 of NCUDTPA.)

10    *Vermont: Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 Vt. Super. LEXIS 42, *4-7 (Vt.

11    Sup. Ct. Dec. 27, 2004) (no standing where the "causal chain . . . [was] simply too long").

12    **VII.    THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.**

13    IPPs' purported claims for "unjust enrichment" should also be dismissed. *See* RSAC ¶¶ 177-

14    82 (Third Claim for Relief); EUSAC ¶¶ 352-57 (Third Claim for Relief).  Courts routinely dismiss

15    such claims because "unjust enrichment" is not a recognized cause of action. *See Callaghan v. BMW*

16    *of N. Am., LLC*, No. 13-CV-04794-JD, 2014 U.S. Dist. LEXIS 164290, *12 (N.D. Cal. Nov. 21, 2014)

17    (finding that "unjust enrichment is not an independent cause of action"); *City of Oakland v. Oakland*

18    *Raiders*, No. 18-cv-07444-JCS, 2019 U.S. Dist. LEXIS 124465, *52-53 (N.D. Cal. July 25, 2019)

19    ("[U]njust enrichment is not a cause of action."); *Capacitors*, 106 F. Supp. 3d at 1074 ("[U]njust

20    enrichment is a remedy, and not an independent claim.").[21]

21    Indeed, IPPs fail to "cite any federal or state statute" and merely reference "the common law

22    of each state and the District of Columbia." *See In re Terazosin Hydrochloride Antitrust Litig.*, 160

23    F. Supp. 2d 1365, 1379-80 (S.D. Fla. 2001) (dismissing all unjust enrichment claims and criticizing

24    plaintiffs for their "very poorly pled" claim and unauthorized "end runs around state laws.").[22]

25    Even if unjust enrichment were a viable claim—and it is not—the claim would still fail.  First,

26    ────────────────

[21] *See also In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009) (dismissing unjust
enrichment claim for same reason based on Mississippi law).

27    [22] *See also Sheet Metal Workers Local 441 Health & Welfare Plan*, 737 F. Supp. 2d 380, 430, 445

28    (E.D. Pa. 2010) (dismissing claims where IPPs had not "provided convincing authority" that a state

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

36

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

1   it is based solely on the same allegations as the alleged antitrust violation, and is nothing more than an

2   attempted end-run around *Illinois Brick's* prohibition of a nationwide damages claim. *See In re*

3   *Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 140765, *26-

4   28 (S.D.N.Y. Sep. 15, 2014).[23]

5       Second, courts dismiss unjust enrichment claims where, as here, the purchasers are "too

6   attenuated," not in privity with the defendant, or where plaintiffs have conferred no benefit directly on

7   defendants. *See, e.g.*, *In re Static Random Access Memory Antitrust Litig.*, No. 07-md-01819, 2010

8   U.S. Dist. LEXIS 131002, *44-47 (N.D. Cal. December 8, 2010) (dismissing Kansas, Michigan, and

9   New York unjust enrichment claims); *Sheet Metal Workers Local 441 Health & Welfare Plan v.*

10  *GlaxoSmithKline*, PLC, 737 F. Supp. 2d 380, 432, 441 (E.D. Pa. 2010) (dismissing Florida and New

11  York unjust enrichment claim and requiring a relationship between parties "stronger than that between

12  a manufacturer and a consumer along the chain of commerce.").[24]

13      Third, for any of IPPs' claims that fail under particular state antitrust or consumer protection

14  statutes, their derivative unjust enrichment claims should also fail. *See GlaxoSmithKline*, 737 F. Supp.

15  2d at 426 (dismissing unjust enrichment claims in Arkansas, California, Florida, New York, Rhode

16  Island, Tennessee, and other states).

17                                   **CONCLUSION**

18      For the foregoing reasons, Defendants request dismissal of the IPP claims with prejudice.

19

20  _____

    has an autonomous unjust enrichment claim).

21

22  [23] *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011)
    (dismissing unjust enrichment claims based on Montana, New York, and Virginia law); *In re Static*
    *Random Access Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 131002, *45-46 (N.D. Cal. 2010)

23  (same for Montana and New York); *Sheet Metal Workers Local 441 Health & Welfare Plan*, 737 F.
    Supp. 2d 380, 430 (E.D. Pa. 2010) (same for Arkansas and California); *In re Loestrin 24 Fe Antitrust*

24  *Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019) (same for Florida, Maryland, Massachusetts,
    Missouri, South Carolina, Utah, and Virginia where there are no *Illinois Brick* repealers and

25  plaintiffs have not shown the "law of the state in question expressly allows for such recovery.").
    [24] *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948-49 (N.D. Ill. 2009) (dismissing unjust

26  enrichment claims in Florida, Kansas, and Michigan, where IPPs did not confer a "direct benefit" on
    Defendant); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 543-46 (E.D. Pa. 2010) (dismissing

27  claims in Florida and North Carolina for the same reason); *In re Loestrin 24 Fe Antitrust Litig.*, 410
    F. Supp. 3d 352, 384 (D.R.I. 2019) (dismissing claims in Maine, New York, and North Dakota); *In*

28  *re Pork Antitrust Litig.*, Nos. 18-1776, 19-1578, 19-2723, 2020 U.S. Dist. LEXIS 191675, at *64 (D.
    Minn. Oct. 16, 2020) (dismissing claim in Arizona).

                                        37

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

**Appendix A:  Summary Table of State-By-State Standing Requirements**

| State | State Lacks Antitrust Standing for Indirect Purchasers? | State Harmonization Provisions? | AGC Test Applied by State Court? | Federal District Court has Determined AGC Applies? |
|---|---|---|---|---|
| Arizona | | Yes (statute) | Yes (the high court has offered guidance strongly suggesting it would apply *AGC*; the Ninth Circuit has held that Arizona antitrust law is interpreted in conformity with federal law) | Yes |
| Arkansas | Yes (bars consumer protection class actions by private individuals) | No | | No |
| California | | Yes (case law) | Yes (the high court has offered guidance strongly suggesting it would apply AGC; the Ninth Circuit has held that the Cartwright Act is interpreted in conformity with federal law) | Yes |
| District of Columbia | | Yes (statute) | Yes (lower court applied AGC) | Yes |
| Florida | | Yes (statute) | | No |
| Hawaii | | Yes (statute) | Yes (the high court has offered guidance strongly suggesting it would apply AGC) | Yes |
| Iowa | | Yes (statute) | Yes (the high court has adopted AGC) | Yes |
| Kansas | | Yes (statute) | Yes (lower court applied AGC) | Yes |
| Maine | | Yes (case law) | Yes (lower court applied AGC) | Yes |
| Maryland | Yes (only the State AG may bring suit) | Yes (statute) | | No |
| Massachusetts | | Yes (statute) | | No |
| Michigan | | Yes (statute) | Yes (lower court applied AGC) | Yes |
| Minnesota | | Yes (case law) | | Yes |
| Mississippi | | Yes (case law) | Yes (the high court has offered guidance strongly suggesting it would apply AGC) | Yes |
| Missouri | Yes (no authority authorizes indirect suits) | Yes (statute) | | No |
| Montana | | Yes (case law) | | No |
| Nebraska | | Yes (statute) | Yes (high court has adopted AGC) | Yes |
| Nevada | | Yes (statute) | Yes (high court has adopted AGC) | Yes |
| New Hampshire | | Yes (statute) | | Yes |
| New Mexico | | Yes (statute) | Yes (intermediate court applied AGC) | Yes |
| New York | | Yes (case law) | Yes (intermediate court applied AGC) | Yes |
| North Carolina | | Yes (case law) | Yes (lower court applied AGC) | Yes |
| North Dakota | | No | Yes (lower court applied AGC) | Yes |
| Oregon | | Yes (statute) | Yes (federal district court sitting in Oregon has concluded Oregon would apply AGC; the Ninth Circuit has held that Oregon antitrust law is interpreted in conformity with federal law) | Yes |
| Rhode Island | Yes (only the State AG may bring suit) | Yes (statute) | | Yes |
| South Carolina | | Yes (case law) | | No |
| South Dakota | | Yes (statute) | Yes (lower court has applied modified AGC test) | Yes |
| Tennessee | | No | Yes (intermediate court has relied on precedent from the Tennessee high court in holding that plaintiffs cannot recover for indirect, speculative, or remote injuries in pursuing state antitrust claims) | Yes |
| Utah | | Yes (statute) | Yes (federal district court sitting in Utah has concluded Utah would apply AGC) | Yes |
| Vermont | | Yes (statute) | Yes (lower court applied AGC) | Yes |
| Virginia | Yes (no authority authorizes indirect suits) | Yes (statute) | | No |
| West Virginia | | Yes (statute) | Yes (the high court has offered guidance strongly suggesting it would apply AGC) | Yes |
| Wisconsin | | Yes (case law) | Yes (lower court applied AGC) | Yes |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

**Appendix B: Summary of Federal Decisions Applying *AGC* State-By-State**

| Jones v. Micron Tech., Inc., 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019). | In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig., 2013 U.S. Dist. LEXIS 142466, at *45-46 (D.N.J. Oct. 2, 2013) | In re Aluminum Warehousing Antitrust Litig., 2014 U.S. Dist. LEXIS 140765, at *25 (S.D.N.Y. Sept. 15, 2014) | In re Refrigerant Compressors Antitrust Litig., 2013 U.S. Dist. LEXIS 50737, at *40-42 (E.D. Mich. April 9, 2013) | In re Potash Antitrust Litig., 667 F. Supp. 2d 907 (N.D. Ill) | In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., 2015 U.S. Dist. LEXIS 84152, at *26-27 (N.D. Ill. June 29, 2015) | In re Interior Molded Doors Antitrust Litig., 2019 U.S. Dist. LEXIS 161045, at *45-47 (E.D. Va. Sept. 18, 2019) | In re Dealer Mgmt. Sys. Antitrust Litig., MDL 2817, 362 F. Supp. 3d 510, 539-45 (N.D. Ill. 2019) | In re Graphics Processing Units Antitrust Litig., 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) | Supreme Auto. Transp., LLC v. Mittal, 238 F. Supp. 3d 1032, 1039 (N.D. Ill. 2017) | In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1088-1095 (N.D. Cal. 2007) | In re Dynamic Random Access Memory Antitrust Litig., 536 F. Supp. 2d 1129, 1135 n.2 (N.D. Cal. 2008) | In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1151-1152 (N.D. Cal. 2009) | In re Cathode Ray Tube Antitrust Litig., 2013 U.S. Dist. LEXIS 119598, at *96-97 (N.D. Cal. Aug. 21, 2013). | In re Lithium Ion Batteries Antitrust Litig., 2014 U.S. Dist. LEXIS 141358, at *83 (N.D. Cal. Oct. 2, 2014). | Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co., 2015 U.S. Dist. LEXIS 106292, at *68-72 (N.D. Cal. Aug. 11, 2015). | State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | × | | × | | × | | | × | | | | | | Arizona |
| | | | | | | | | | | | | | | | | Arkansas |
| | | × | × | | × | | × | | | × | | | × | | | California |
| | | | | | × | | × | | | | | | | | | DC |
| | | | | | | | | | | | | | | | | Florida |
| | | | | | | | | × | | | | | | | | Hawaii |
| | | | × | | × | × | × | × | × | × | | | | × | × | Iowa |
| | | | × | | × | × | × | | | × | | | | | | Kansas |
| | | | × | | × | | × | | | × | | | | | | Maine |
| | | | | | | | | | | | | | | | | Maryland |
| | | | | | | | | | | | | | | | | Massachusetts |
| × | | | × | | × | | × | | | × | | | × | | | Michigan |
| | | | | | × | | × | | | × | | | | | | Minnesota |
| | | | × | | × | | × | | | × | | | | | | Mississippi |
| | | | | | | | | | | | | | | | | Missouri |
| | | | | | | | | | | | | | | | | Montana |
| × | | | × | | × | × | × | × | | × | | | × | × | × | Nebraska |
| | | | | | × | | × | | | × | | | | × | | Nevada |
| | | × | × | | × | | × | | | × | | | | × | × | New Hampshire |
| | × | × | × | | × | × | × | | | × | | | | × | × | New York |
| | | | | | × | × | × | | | × | | | | | | North Carolina |
| | | | | | × | | | | | | | | | | | North Dakota |
| | | × | | | × | | × | | | × | | | | | | Oregon |
| | | | | | | | × | × | | × | | | | | | Rhode Island |
| | | | | | | | | | | | | | | | | South Carolina |
| | | | × | | × | × | × | | | × | | | | | | South Dakota |
| | | × | | | × | × | × | | | × | | | | | | Tennessee |
| | | | | | × | × | × | | | × | | | | | | Utah |
| | | | | | × | × | × | | | | | | | | | Vermont |
| | | | | | | | | | | | | | | | | Virginia |
| | | × | | | × | × | × | | × | | | | | | | W. Va. |
| | | × | | | × | × | × | | × | × | | | | | | Wisconsin |

39

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**Appendix C: State with Harmonization Provisions**

| State | Relevant Authority |
|---|---|
| AZ | **Statute**: ARIZ. REV. STAT. § 44-1412 (LexisNexis 2020). |
| AR | None. |
| CA | **High Court**: *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 382(Cal. 1983). |
| DC | **Statute**: D.C. CODE § 28-4515 (1981). |
| FL | **Statute**: FLA. STAT. ANN. § 542.32 (2020). |
| HI | **Statute**: HAW. REV. STAT. ANN. § 480-3 (2019). |
| IA | **Statute**: IOWA CODE § 553.2 (2019). |
| KS | **Statute**: KAN. STAT. ANN. § 50-163(b) (2020). |
| ME | **High Court**: *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 424 (Me. 2009). |
| MD | **Statute**: MD. COM. LAW CODE ANN. §11-202(a)(2) (2020). |
| MA | **Statute**: MASS. ANN. LAWS ch. 93, § 1 (2019). |
| MI | **Statute**: MICH. COMP. LAWS. SERV. § 445.784(2) (2020). |
| MN | **High Court**: *See e.g.*, *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007). |
| MS | **High Court**: *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004). |
| MO | **Statute**: MO. REV. STAT. § 416.141 (2019). |
| MT | **High Court:** *Smith v. Video Lottery Consultants*, 858 P.2d 11, 12–13 (Mont. 1993). |
| NE | **Statute**: NEB. REV. STAT. ANN. § 59-829 (2020). |
| NV | **Statute**: NEV. REV. STAT. ANN. § 598A.050 (2019). |
| NH | **High Court**: *Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002). |
| NM | **Statute**: N.M. STAT. ANN. § 57-1-15 (2020). |
| NY | **High Court**: *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988). |
| NC | **High Court**: *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973). |
| ND | None. |
| OR | **Statute**: OR. REV. STAT. § 646.715(2) (2020). |
| RI | **Statute**: R.I. GEN. LAWS § 6-36-2(b) (2020). |
| SC | **High Court**: *S.C. Cotton Growers' Co-op. Ass'n v. English*, 133 S.E. 542, 544 (S.C. 1926) |
| SD | **Statute**: S.D. CODIFIED LAWS § 37-1-22 (2020). |
| TN | None. |
| UT | **Statute**: UTAH CODE ANN. § 76-10-3118 (2020). |
| VT | **Statute**: VT. STAT. ANN. tit. 9, § 2453a(c) (2019). |
| VA | **Statute**: VA. CODE ANN. § 59.1-9.17 (2020). |
| WV | **Statute**: W. VA. CODE. ANN. § 47-18-16 (2020). |
| WI | **High Court**: *Grams v. Boss*, 294 N.W.2d 473, 480 (Wis. 1980). |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Dated: January 29, 2021   Respectfully submitted,

Mark H. Hamer
mark.hamer@bakermckenzie.com
Mark G. Weiss (pro hac vice)
mark.weiss@bakermckenzie.com
**BAKER & McKENZIE LLP**
815 Connecticut Ave., NW
Washington, DC 20006
Tel: (202) 452-7077

Christina M. Wong
christina.wong@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, Suite 1100
San Francisco, California 94111
Tel: (415) 576-3000

By: /s/ Mark H. Hamer
*Attorneys for Defendants NHK Spring Co., Ltd., NHK
International Corporation, NHK Spring (Thailand) Co.,
Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT
Peripheral (H.K.) Co., Ltd.*

J. Clayton Everett, Jr., (pro hac vice)
clay.everett@morganlewis.com
Scott A. Stempel, (pro hac vice)
scott.stempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000

C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000

By: /s/ J. Clayton Everett, Jr.
*Attorneys for Defendants Hutchinson
Technology, Inc., Magnecomp Precision
Technology Public Co. Ltd. and Magnecomp
Corporation*

## **ATTESTATION**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

By: /s/ Mark H. Hamer

41

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:19-md-0218-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES