# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>ALL CASES | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:      Hon. Maxine M. Chesney<br>Date:       March 5, 2021<br>Time:       10:30 a.m.<br>Courtroom: 7, 19th Floor |

Pursuant to the Court's Minute Entry dated November 6, 2020 entered in the above-captioned MDL matter (ECF No. 286), and the Standing Order for All Judges of the Northern District of California ("Standing Order"), the Parties hereby submit this Joint Case Management Statement. Below, the Parties only address those sections of the Standing Order that reflect new information not presented in the Parties' prior Joint Statements.

1.     **ALLEGATIONS**

This litigation consists of two class actions, by End-User Plaintiffs and Reseller Plaintiffs, and a direct, non-class action by Seagate Plaintiffs, arising from an alleged price-fixing conspiracy and other anticompetitive conduct in the market for HDD Suspension Assemblies by TDK Corporation, Headway Technologies, Inc., Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology, Inc.

(collectively, "TDK Defendants") and NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd. and NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd. (collectively, "NHK Defendants").

Plaintiffs allege that Defendants carried out their conspiracy by, among other things:  (a) participating in meetings and discussions in which they agreed to refrain from competing on prices for, and to fix the prices of, Suspension Assemblies; exchanged bidding information and agreed on bids for Suspension Assemblies; and allocated market share and coordinated the market structure for supplying Suspension Assemblies; (b) exchanging Suspension Assembly pricing and planning information, including capacity and utilization information, anticipated pricing quotes and Seagate confidential information; and (c) relying on these agreements and information to inform their negotiations with customers.  Seagate alleges breach of non-disclosure agreements in addition to antitrust and unfair competition claims.

## 2.   **MOTION PRACTICE**

On December 3, 2020, Reseller Plaintiffs and End-User Plaintiffs filed their Second Consolidated Amended Complaints (ECF Nos. 302-3 and 303).  On January 29, 2021, Defendants filed their Motion to Dismiss those complaints (ECF No. 319).  Plaintiffs' Oppositions are due March 15, 2021 and Defendants' Reply is due April 5, 2021.  The hearing on Defendants' Motion is set for May 7, 2021, at 9:00 a.m.

On September 18, 2020, Seagate Plaintiffs filed an amended complaint (ECF No. 231). Following motion practice, on February 2, 2021, the Court issued an order denying Defendants' motion to dismiss as to Count V of Seagate's amended complaint (breach of contract) and Seagate's claims against Headway Technologies, and granting it as to Count IV of Seagate's amended complaint (Minnesota antitrust claim).  ECF No. 321.

Seagate requested Defendants' consent pursuant to Federal Rule of Civil Procedure 15(a)(2) to file a second amended complaint in light of the Court's order dismissing Seagate's Minnesota antitrust claim.  Defendants did not consent.  On February 22, 2021, Seagate filed a Motion for Leave to Amend, attaching its proposed second amended complaint (ECF No. 331).

Defendants' Opposition to the Motion for Leave to Amend is due on March 8, 2021, Seagate's Reply is due on March 15, 2021, and the hearing on Seagate's Motion is set for April 9, 2021, at 9:00 a.m.  ECF No. 332.

Per Court order, on January 8, 2021, the parties entered into a stipulation setting a schedule for briefing on Defendants' proposed motion for summary judgment based on the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA") and other laws limiting the extraterritorial reach of U.S. antitrust laws (ECF No. 312), which the Court entered on January 11, 2021 (ECF No. 313).  Per that order, Defendants will file their motion for summary judgement on FTAIA issues 65 days after all complaints have been answered and Defendants and Seagate have certified that they have substantially completed their document productions in response to all requests for production that have been propounded as of January 8, 2021.  The parties may seek an adjustment to the schedule at a later time for good cause, particularly in light of the impact the pandemic has had and could have on discovery.  ECF No. 313 at 2.

Defendants may seek summary judgment after the close of discovery as to some or all claims that remain after decisions on Defendants' pending motions to dismiss and forthcoming motion for summary judgment on issues relating to the extraterritorial application of U.S. law.

Seagate, End-User, and Reseller Plaintiffs may file motions for summary judgment after taking discovery and other pretrial motions as necessary.  End-User and Reseller Plaintiffs also anticipate filing motions for class certification.  Plaintiffs may also file a motion seeking a determination that the TDK Defendants have not met the standard to qualify for the limitation of civil liability provisions of the Antitrust Criminal Penalty and Enforcement Reform Act (ACPERA).  Plaintiffs reserve the right to argue waiver as to any motions filed by Defendants.

**3.    DISCOVERY STATUS**

Discovery is fully open.  On August 13, 2020, the Court referred all discovery disputes to Magistrate Judge Kandis A. Westmore (ECF No. 253).

### a.      Defendants' Position on Discovery Deadlines

Defendants believe it is premature to set a trial date but given that discovery is fully open Defendants request that the court order two discovery dates: (1) **July 30, 2021** as a date for substantial completion of document production in response to all requests for production that have been currently propounded as of the date of this filing and (2) **May 20, 2022** as the date for the close of fact discovery.[1]  Defendants further propose that a more complete schedule be set after decision on Defendants' motions to dismiss the putative class complaints.

Defendants, however, oppose the interim deadline (production of documents for 50% of their custodians by **May 31, 2021**) proposed by Plaintiffs below.  The parties are still negotiating search terms for production of custodial documents and the scope of certain requests—a process that remains uncertain in terms of how long it will take to fully resolve.  Plaintiffs are requesting that Defendants commit to a production date in only three months for the review of numerous custodians' documents (NHK agreed to 23 custodians and TDK has agreed to 27 custodians) when it remains to be seen when the full review can commence and what the total volume of documents requiring review will be.  That is not a reasonable request.  Further, Plaintiffs' contend that these early significant productions are required to conduct depositions in the summer but Defendants have already produced more than a million pages of documents, including every normal-course document on which the global criminal investigations around the world were predicated.  Additionally, Plaintiffs have already noticed four depositions and conducted one—suggesting that these productions are not required for depositions.  And, substantial completion is not the end of

---

[1] The quantity of time is appropriate and proportional to the needs of the case given the need to conduct and complete search term negotiations, review a large number of documents, and to allow the parties to conduct depositions—where Plaintiffs alone are allotted 33 fact deponents and 14 hours of 30(b)(6) deposition (if in English).  Currently only one deposition of an NHK fact witness has been completed which occurred over a lengthy three-day span.  Using this as the benchmark in the case, completing depositions could easily require well over 100 days of on-the-record testimony, in addition to the time required for scheduling, preparation, review, and travel.

fact discovery, so the parties will still have time to conduct depositions.  Together, Defendants believe that their proposed substantial completion date of **July 30, 2021** (without any interim deadlines) is a reasonable and expedient deadline by which to move discovery forward in this case.

### b.    Plaintiffs' Position on Discovery Deadlines

End-User Plaintiffs, Reseller Plaintiffs, and Seagate are willing to agree to Defendants' proposal of a substantial completion deadline of **July 30, 2021**, provided that Plaintiffs and Defendants produce documents for 50% of their custodians by **May 31, 2021**.  Plaintiffs need Defendants' documents by this date in order for depositions to go forward in earnest this summer. Setting an interim deadline is appropriate in order to ensure that Defendants produce a significant number of documents well in advance of the substantial completion deadline, which is necessary for depositions as well as meeting the FTAIA summary judgment schedule.  Plaintiffs propose that this interim deadline be reciprocal, and that all parties work together to identify the custodians whose documents will be prioritized for production by May 31, 2021.

As for the close of fact discovery, Plaintiffs believe it is premature to set that deadline at this time, and propose instead that the Court take that issue up at the next status conference.

### c.    Seagate's Position on Seagate Trial

To ensure discovery moves forward expeditiously (to the extent possible in the pandemic), Seagate requests that the Court set a trial date in Q3 2022 in the Seagate action.  Seagate proposes then working with the Class Plaintiffs and Defendants to agree on a discovery schedule working backwards from that trial date.

1

2

### d.   Written and Document Discovery Served and Produced

#### i.   Discovery Served by Plaintiffs

3

4

5

6

7

8

Plaintiffs have served: (1) requests for production of documents Defendants produced to government authorities in connection with those regulators' investigation of the HDD suspension assembly market ("Regulator Documents"); (2) a comprehensive set of requests for production of documents concerning the matters in this litigation; (3) separate sets of interrogatories on TDK Defendants and NHK Defendants; and (4) requests for admission concerning Defendants' conspiracy, the individuals involved, and the conspiracy's effects on U.S. commerce.

9

10

11

12

13

14

On August 3, 2020, End-User Plaintiffs, Reseller Plaintiffs, and Seagate Plaintiffs served joint requests for production of documents and separate sets of interrogatories on TDK Defendants and NHK Defendants.   These comprehensive requests seek the core information in this case. Defendants served objections and responses to that discovery on September 2, 2020.   TDK Defendants served supplemental responses to the interrogatories on February 2, 2021, and NHK Defendants served supplemental responses to the interrogatories on February 5 and 8, 2021.

15

16

17

18

19

20

21

22

23

24

Defendants produced to Plaintiffs the ordinary course business documents they had produced to government enforcement authorities in April and May 2020.   Those productions included over 170,160 documents and over 708,151 pages.   Defendants produced their transactional sales data on December 30, 2020 and February 11, 2021 (for NHK) and December 31, 2020 (for TDK).   NHK has completed the custodial document review for one fact witness whose documents were produced prior to his deposition which was taken from February 9 to February 11, 2021.   Defendants have produced over 834,000 pages of documents in response to Plaintiffs' non-regulator requests for production.   Defendants continue to produce other responsive documents on a rolling basis and are committed to substantially completing production of documents in response to Plaintiffs' served requests for production by July 30, 2021.

25

26

However, Defendants and Plaintiffs have yet to agree on proposed search terms for the custodial document review.   These discussions are ongoing.

27

On October 1, 2020, Plaintiffs served a joint set of Requests for Admission on Defendants.

28

Certain of these Requests seek admissions establishing that Defendants' conduct involved import commerce or had a direct, substantial, and foreseeable effect on U.S. commerce, giving rise to Plaintiffs' claims, such that the alleged conduct is exempt from the FTAIA.  Defendants served their objections and responses on November 2, 2020.

On December 14, 2020, Seagate Plaintiffs served a second set of interrogatories on TDK Defendants and NHK Defendants.  These requests seek information about Defendants' disciplinary actions taken against employees who were involved in conspiratorial conduct, Defendants' employees who were interviewed by or submitted testimony to a government regulator, and Defendants' employees who were involved in conspiratorial conduct.  Defendants served their objections and responses on January 13, 2021.

On December 23, 2020, Plaintiffs served a second joint set of Requests for Admission on TDK Defendants seeking admissions establishing which TDK Defendant entities and employees were involved in conspiratorial conduct.  On January 17, 2021, and January 20, 2021, TDK Defendants indicated they would respond to the requests related to which TDK Defendant entities were involved in the conduct (requests 76-86), but would object, and not respond, to requests for admission seeking discovery as to particular individuals' actions relating to alleged conspiratorial conduct, as an inappropriate use of RFAs (requests 87-141).  Plaintiffs agreed to extend TDK Defendants' deadline to respond while Plaintiffs considered whether to withdraw requests 87 through 141.  On January 27, 2021, TDK Defendants served their responses to requests 76 through 86.  On February 10, 2021, Plaintiffs notified TDK Defendants that they do not withdraw requests 87 through 141, observing that the requests are intended to narrow the scope of the case to identify which TDK employees were involved in the conspiracy.  Plaintiffs requested responses to those requests on February 17, 2021.  TDK Defendants served objections, but no substantive responses, to these requests on February 17, 2021.

On January 22, 2021, Plaintiffs served a second joint set of Requests for Admission on NHK Defendants seeking admissions establishing which NHK Defendant entities and employees were involved in conspiratorial conduct.  NHK Defendants served responses on February 22, 2021.

The parties have engaged in frequent meet and confers over the scope of certain requests, the sufficiency of certain responses, and the availability of certain structured data.  With the exception of the discovery dispute discussed below, no other discovery matters are ripe for adjudication.

### ii.       Discovery Served by Defendants

On July 21, 2020, Defendants served joint sets of Requests for Production of Documents on End-User Plaintiffs, Reseller Plaintiffs, and Seagate.  On August 20, 2020, End-User Plaintiffs, Reseller Plaintiffs, and Seagate served written responses and objections.  The parties have engaged in meet and confers over the scope of certain requests and over the material that Plaintiffs will produce in response to the requests.

Seagate has produced some of the non-custodial documents that are responsive to Defendants' requests.  Specifically, Seagate has produced seven documents on May 29, 2020, eight documents on December 28, 2020, three documents on January 15, 2021, one document on February 12, 2021, and 140 documents on February 25, 2021.  These include, *inter alia*, ordinary-course documents that Seagate previously provided to regulators, as well as retention policies and organizational charts.  On December 28, 2020, Seagate produced its transactional purchase data, and on February 1, 2021, Defendants sent Seagate seven pages of data questions, which Seagate is working on now.  On February 12, 2021, Seagate produced sample sales data.

The parties continue to engage in discussions to identify appropriate custodians and reach agreement on a final custodian list.  Additionally, Seagate and Defendants continue to meet and confer to discuss and reach agreement on the substance of many of Defendants' document requests.  The parties have made progress as to some requests (including agreement as to what documents Seagate will search for and produce).  Seagate and Defendants have yet to engage in discussions regarding proposed search terms given the discussion on the scope of some requests is ongoing.

Resellers Plaintiffs also produced sample purchase and sales data, on October 6, 2020 and October 30, 2020.

EUPs produced documents in response to Defendants' requests on November 2, 2020, and

supplemented that production on February 8, 2021.

At present, there are no disputes concerning the discovery served on Plaintiffs that are ripe for adjudication.

### iii.     Third-Party Discovery

In January 2021, End-User and Reseller Plaintiffs served third-party subpoenas on Seagate Technology LLC, Western Digital Corporation, and Toshiba America Electronic Components, Inc.  Seagate served its responses and objections on January 27, 2021.  On December 29, 2020, Seagate provided End-User and Reseller Plaintiffs with the purchase data it had produced to Defendants.  Seagate produced its sample sales data to End-User and Reseller Plaintiffs on February 12, 2021.  Seagate made a production of 140 documents to End-User and Reseller Plaintiffs on February 25, 2021.  Seagate has also provided End-User and Reseller Plaintiffs with all documents produced to Defendants.

### e.     Depositions

In the stipulation on FTAIA briefing, the parties raised to the Court that COVID-19 had so far affected deposition discovery in this case, and could require readjusting the schedule at a later time for good cause.  ECF No. 313 at 2.  The stipulation noted that the parties would update the Court at the March 5, 2020 Case Management Conference on the status of depositions.  *Id.*

The majority of Defendants' witnesses are located in Japan and Plaintiffs have been unable to secure dates for three depositions noticed of Defendants' Japanese employees, as Defendants have represented that no depositions of Japan-based witnesses can go forward at this time.

On October 13, 2020, Magistrate Judge Westmore ordered that depositions of foreign-based witnesses would presumptively take place in Asia and that "until the COVID-19 public health emergency is over, the parties are expected to conduct depositions of foreign witnesses by videoconference."  ECF No. 273 at 4.  Under the deposition protocol, "[a]bsent agreement from the Parties on an alternative location, depositions of foreign-based witnesses shall take place, at the witness's choosing, in either Taiwan, Hong Kong, or Thailand."  ECF No. 287 at 8.

On October 29, 2020, Seagate Plaintiffs noticed depositions of three NHK Spring witnesses based in Japan, Hironori Kajii, Takao Kiriya, and Kunihiko Saika. End User and Reseller Plaintiffs cross noticed these depositions on November 9, 2020. Given Japan's prohibition against taking depositions by videoconference, Plaintiffs offered to take these depositions by videoconference if the witnesses travel to Singapore, Hong Kong, Thailand, or Hawaii. However, NHK Spring informed Plaintiffs that these witnesses are unable to travel internationally due to the COVID-19 public health emergency and NHK's current corporate policy which prohibits any international travel for any employee of the company. Accordingly, the noticed depositions of deponents in Japan have been delayed until international travel can be conducted safely. Nevertheless, the parties set tentative dates in March 2021 for these three depositions. On February 18, 2021, NHK Spring's counsel informed Plaintiffs that these depositions cannot proceed in March, and suggested setting placeholder dates for April 2021 should health and safety conditions change.

Plaintiffs noticed the deposition of an NHK Defendant employee, Hiroshi Takei, who presently resides in the United States. This deposition proceeded on February 9-11, 2021. To accommodate this deposition NHK agreed to accelerate the custodial review of Mr. Takei's documents and made productions on February 1, February 2, and February 8, 2021.

Plaintiffs understand the logistical challenges, but are concerned about the slow pace of the depositions noticed to date. Due to the delays in scheduling the noticed depositions thus far, Plaintiffs have asked Defendants to proactively alert Plaintiffs as to future employee departures so that Plaintiffs can secure depositions before key employees leave the companies.

The parties will continue to apprise the Court of the status of depositions at further case management conferences, but judicial guidance may be needed sooner if COVID-19 continues to indefinitely delay depositions of foreign witnesses and resolution of this case.

### f.    Current Discovery Disputes

On January 20, 2021, Plaintiffs filed a joint letter brief requesting the Court to compel production of TDK Defendants' disciplinary records for its employees who participated in

conspiratorial conduct, including but not limited to notices informing employees of their discipline and apology letters written by employees.

### i.   Plaintiffs' Position

Plaintiffs regard these records as bearing on important issues because they describe and admit to the improper and conspiratorial conduct in which TDK Defendants employees engaged and may identify the laws and internal policies that were violated.  They may also reveal witness bias.  Deposition testimony alone or any other form of discovery is not an adequate substitute for production of the underlying records.

TDK Defendants represented to Plaintiffs that three employees were disciplined for their conduct underlying this case and Plaintiffs learned about a fourth.  After filing the joint letter brief, Plaintiffs learned that three more TDK Defendant employees were disciplined and/or apologized to their superiors for their improper conduct but could not remember the contents of their discipline notices or apologies.  Upon learning about these other employees (now totaling seven), discipline, and/or apologies, Plaintiffs filed supplements on January 25, 2021 and February 19, 2021 to inform the Court of new information as it became known.  These supplements were stricken by Magistrate Judge Westmore.  TDK Defendants now argue against producing these documents on the basis of privacy rights, but did not make any such privacy objections in their Responses and Objections to this Request—thereby waiving this argument.

### ii.   TDK Defendants' Position

TDK Defendants claim that production of the disciplinary records invades the privacy rights and interests of its employees and that there are less burdensome means of securing the types of information Plaintiffs seek through the discipline records that do not implicate the same privacy rights.   The TDK Defendants have produced the documents to Plaintiffs on which the various enforcement actions that Plaintiffs' complaints follow-on were based, and Plaintiffs will have an opportunity to depose percipient witnesses about the conduct at issue.  As explained in briefing to Magistrate Judge Westmore, and supported by relevant case law, the invasion of employees'

1  privacy interests through production of disciplinary records is not justified here.  The motion is

2  now pending before Magistrate Judge Westmore.

3  **4.**     **SETTLEMENT AND ADR**

4  No settlement discussions have occurred since the filing of the Parties' respective lawsuits.

5  **5.**     **SCHEDULING AND TRIAL**

6  End-User Plaintiffs, Reseller Plaintiffs and Defendants request that the Court hold a case

7  management conference three weeks after a decision on the motions to dismiss End-User

8  Plaintiffs' and Reseller Plaintiffs' Second Consolidated Amended Complaints, so the Parties can

9  present proposals for the litigation schedule going forward.

10  **a.   Defendants' Position on Interim Deadlines**

11  Defendants believe that it is premature to set a trial date for these cases, given the

12  uncertainty that remains about whether, and if so in what form, the class cases may proceed and

13  the significant number of interim steps remaining in the case including, but not limited to,

14  document review, deposition discovery, expert discovery, class certification, and summary

15  judgment.  But those uncertainties do not prevent discovery from proceeding in full, or from setting

16  a discovery deadline.  Defendants propose that the court order two discovery dates: (1) **July 30,**

17  **2021** as a date for substantial completion of document production in response to all requests for

18  production that have been currently propounded as of the date of this filing and (2) **May 20, 2022**

19  as the date for the close of fact discovery.  Defendants further propose that a more complete

20  schedule be set after a decision on Defendants' pending motions to dismiss the putative class

21  complaints.

22  **b.   Plaintiffs' Position on Interim Deadlines**

23  End-User Plaintiffs, Reseller Plaintiffs, and Seagate are willing to agree to Defendants'

24  proposal of a substantial completion deadline of **July 30, 2021**, provided that Plaintiffs and

25  Defendants produce documents for 50% of their custodians by **May 31, 2021**.  Plaintiffs need

26  Defendants' documents by this date in order for depositions to go forward in earnest this summer.

27  Setting an interim deadline is appropriate in order to ensure that Defendants produce a significant

28

number of documents well in advance of the substantial completion deadline, which is necessary for depositions as well as meeting the FTAIA summary judgment schedule. Plaintiffs propose that this interim deadline be reciprocal, and that all parties work together to identify the custodians whose documents will be prioritized for production by May 31, 2021.

As for the close of fact discovery, Plaintiffs believe it is premature to set that deadline at this time, and propose instead that the Court take that issue up at the next status conference.

### c.   Seagate's Position on Seagate Trial

Seagate requests that the Court set a trial date for Q3 2022 in the Seagate action. The case can be ready for trial by this date. Seagate and Defendants will be able to proceed to trial in 2022, assuming discovery proceeds at an appropriate pace in the next year. Setting a trial date at this time will provide all parties in the Seagate action with reference points for the timing of discovery and motion practice, and allow for an efficient resolution of the case. Seagate has requested a jury trial and anticipates the trial to last approximately four weeks.

Seagate disagrees with Defendants' position that the Seagate action and putative class actions should proceed on a single track to trial. As a single direct purchaser, the Seagate case will present a more straightforward trial than the indirect purchaser class action trials. Moreover, as the only direct purchaser in this litigation, resolution of the Seagate action first has potential collateral estoppel benefits for the parties in the class actions.

Although there will be substantial overlap and coordination in pre-trial discovery dates, it would be inefficient to delay trial in the Seagate case pending class certification decisions in the End-User and Reseller cases. The JPML does not require that that every case in an MDL proceed on identical case schedules, and in fact, cases often proceed on very different tracks within an MDL. For example, the putative classes and Direct Action Plaintiffs ("DAPs") in *LCD* operated on separate tracks, including separate fact and expert discovery cutoffs and trial dates. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.). Separate trials are particularly appropriate here, as this is the unique scenario where there is no direct purchaser class action and Seagate is currently the only DAP in the MDL. Delaying resolution of a direct purchaser action

1    here—pending what may be years of class certification efforts in the indirect class cases—would

2    run counter to the JPML's goals of fairness and efficiency.

3                    **d. Defendants' Position on Seagate Trial**

4                    Defendants believe that the Seagate action and the putative class actions should proceed as

5    part of a single, integrated schedule, which is necessary to assure the efficiencies contemplated by

6    the JPML in establishing this multi-district litigation.  A single, integrated, pretrial schedule is the

7    norm in antitrust MDLs, with class cases and individual cases proceeding in parallel.[2]  This is not

8    a product liability matter in which the use of bellwethers would be appropriate or informative, and

9    it would be inefficient to conduct multiple trials of the same alleged conduct.  Seagate's contention

10   that the result of a separate Seagate trial would bind the class plaintiffs, which it describes as

11   potential "collateral estoppel benefits for the parties," is unfounded.  To the extent that Seagate is

12   arguing that Seagate should be permitted to try its case first in order to give the class plaintiffs

13   "two bites at the apple"—first through a Seagate trial and later through a class trial—that is facially

14   unfair and unjust.

15   Dated:  February 26, 2021                        Respectfully submitted,

16

17   */s/ Victoria Sims*                              */s/ Christopher T. Micheletti*
     Victoria Sims                                    Christopher T. Micheletti
18   **CUNEO GILBERT & LADUCA, LLP**                  **ZELLE LLP**
     4725 Wisconsin Avenue, NW, Suite 200             555 12th Street, Suite 1230
19   Washington, DC 20016                             Oakland, CA 94607
     Telephone:  (202) 789-3960                       Telephone:  (415) 693-0700
20   Facsimile:  (202) 789-1813                        Facsimile:  (415) 693-0770
     vicky@cuneolaw.com                               cmicheletti@zelle.com
21
22   */s/ Shawn M. Raiter*                            */s/ Aaron M. Sheanin*
     Shawn M. Raiter                                  Aaron M. Sheanin
23   **LARSON • KING, LLP**                           **ROBINS KAPLAN LLP**
     30 East Seventh Street, Suite 2800               46 Shattuck Square, Suite 22
24   Saint Paul, MN 55101                             Berkeley, CA 94704

25   _____

26   [2] In *TFT-LCD*, in contrast to this case, the DAP actions that were on a separate track were filed
     long after the class actions; and after substantial proceedings and discovery had occurred in earlier
27   filed cases.  The deadlines applicable to those situated similarly to Seagate here—DAPs—were
     scheduled later than the class cases.
28

Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the Reseller Plaintiffs*

/s/ Mark H. Hamer
Mark H. Hamer
**BAKER MCKENZIE LLP**
815 Connecticut Ave., NW
Washington, DC 20006
Telephone: (202) 452-7077
Facsimile: (202) 416-7177
mark.hamer@bakermckenzie.com

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.*

/s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:     (202) 739-5860
Clay.everett@morganlewis.com

*Counsel for Defendants TDK Corporation, Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co., Ltd., and SAE Magnetics (H.K.) Ltd.*

Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*

/s/ Craig Y. Lee
Craig Y. Lee
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Ave., NW
Washington, D.C. 20005
Telephone: (202) 419-2114
Facsimile: (202) 778-2201
craiglee@huntonak.com

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co., Ltd.*

/s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2160
korourke@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

Case No. 19-md-02918-MMC
JOINT CASE MANAGEMENT STATEMENT

## **ATTORNEY ATTESTATION**

I, Victoria Sims, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Victoria Sims*
Victoria Sims

*Counsel for Reseller Plaintiffs*

JOINT CASE MANAGEMENT STATEMENT