**BAKER & McKENZIE LLP**
Mark. H. Hamer (State Bar No. 156997)
mark.hamer@bakermckenzie.com
Mark G. Weiss (*Pro Hac Vice*)
mark.weiss@bakermckenzie.com
815 Connecticut Avenue, NW
Washington, D.C. 20006
Tel: (202) 452-7000
Fax: (202) 416-7177

**BAKER & McKENZIE LLP**
Christina M. Wong (State Bar No. 288171)
christina.wong@bakermckenzie.com
Two Embarcadero Center, Suite 1100
San Francisco, California 94111
Tel: (415) 576-3000
Fax: (415) 576-3099

*Attorneys for Defendants NHK Spring Co.,
Ltd., NHK International Corporation, NHK
Spring (Thailand) Co., Ltd., NAT Peripheral
(Dong Guan) Co., Ltd. and NAT Peripheral
(H.K.) Co., Ltd.*

**MORGAN, LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr. (*Pro Hac Vice*)
clay.everett@morganlewis.com
Scott A. Stempel (*Pro Hac Vice*)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

**MORGAN, LEWIS & BOCKIUS LLP**
C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants TDK Corporation,
Magnecomp Precision Technology Public
Co. Ltd., Magnecomp Corporation, SAE
Magnetics (H.K.) Ltd., and Hutchinson
Technology Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: Hard Disk Drive Suspension Assemblies Antitrust Litigation<br><br>THIS DOCUMENT RELATES TO<br><br>RESELLER AND END-USER ACTIONS | Case No. 3:19-md-02918-MMC<br><br>MDL No. 2918<br><br>**JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (1) END-USERS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND (2) RESELLER PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: May 7, 2021<br>Time: 9:00 a.m.<br>Crtrm: 7, 19th Floor<br>Before: The Hon. Maxine M. Chesney |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. THE IPPS LACK ARTICLE III STANDING................................................... 1

    A. IPPs' Alleged Injury is Fatally Speculative and Untraceable. ..................... 1

    B. Claims for Unpurchased Products in Each State Should be Dismissed ....... 4

III. THE IPPS CANNOT ESTABLISH ANTITRUST STANDING ........................ 6

    A. The Complaints Should Be Dismissed for Lack of Antitrust Standing. ....... 6

        1. *AGC* Factor 1: The Nature of IPPs' Alleged Injury is Not "Inextricably Intertwined" with that of a Market Participant. ................. 6

        2. *AGC* Factors 2 & 3: The Alleged Injury Is Indirect and Speculative. ............. 7

        3. *AGC* Factors 4 & 5: IPPs' Damages Are Duplicative and Cannot Be Adequately Apportioned. ................. 7

    B. *AGC*'s Antitrust Standing Requirements Apply to the State Claims. ......................... 7

IV. THE IPPS' STATE-LAW ANTITRUST CLAIMS SUFFER FATAL DEFICIENCIES ................................................................................................ 12

    A. IPPs' Maryland and Rhode Island Antitrust Claims Fail. ......................... 12

    B. IPPs' Mississippi, North Carolina, Tennessee, and Wisconsin Antitrust Claims Do Not Apply to the Interstate Sales Alleged Here. ................................................. 12

V. THE IPPS' STATE-LAW CONSUMER-PROTECTION CLAIMS SUFFER NUMEROUS FATAL STATE-LAW DEFICIENCIES ..................................... 13

    A. EUPs Allege Nothing Unconscionable Under Arkansas and New Mexico Law. .......................................................................................................... 13

    B. IPPs' Montana and South Carolina Claims Fail Because Class Actions are Barred or Limited by State Statute. ............................................................. 14

    C. IPPs' Florida, Michigan, and Minnesota Claims Fail Under Rule 9(b) .................... 14

    D. IPPs' North Carolina, New Hampshire, and Massachusetts Claims Fail to Reach the Interstate Sales Alleged Here. ................................................... 15

    E. IPPs' Claims in Eight Jurisdictions Fail Because Price-Fixing is Not an Enumerated Violation. ................................................................................ 16

    F. IPPs' Claims in Arkansas and California Fail for Lack of Reliance. ......................... 17

    G. IPPs' Missouri and Virginia Claims Fail Because These States Prohibit Indirect Purchaser Actions. ......................................................................... 17

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

H.    IPPs Fail An Applicable Standing Requirement in Seven Jurisdictions.................... 18

VI.    THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED .............................. 19

VII.    CONCLUSION.................................................................................................................... 20

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

Case No. 3:19-md-02918-MMC
NOTICE OF MOTION & MOTION TO DISMISS END-USERS' & RESELLER COMPLAINTS; MEMO OF POINTS & AUTHORITIES

# TABLE OF AUTHORITIES

Page No.

## Cases

*Acacia Communs., Inc. v. ViaSat, Inc.*,
35 Mass. L. Rep. 16, 17-19 (Mass. Sup. Ct. 2018)..................................................16

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
No. 09 MDL 2007-GW(PJWx), 2009 U.S. Dist. LEXIS 133088 (C.D. Cal. July 6,
2009) ............................................................................................................................8, 10

*Aikens v. Debow*,
208 W. Va. 486 (W.V. 2000)............................................................................................10

*In re Aluminum Warehousing Antitrust Litig.*,
2014 U.S. Dist. LEXIS 140765 ......................................................................................10

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29,
2014) ...................................................................................................................................7

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ..........................................................................................6

*Anderson v. Hain Celestial Grp., Inc.*,
87 F. Supp. 3d 1226 (N.D. Cal. 2015) ..............................................................................5

*Apex Oil Co. v. Jones Stephens Corp.*,
881 F.3d 658 (8th Cir. 2018) ..........................................................................................17

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)................................................................................................. *passim*

*In re Auto. Parts Antitrust Litig.*,
29 F. Supp. 3d 982 (E.D. Mich. 2014) ..............................................................................3

*Bunker's Glass Co. v. Pilkington PLC*,
75 P.3d 99 (Ariz. 2003).....................................................................................................9

*In re Capacitors Antitrust Litig.*,
106 F. Supp. 3d 1051 (N.D. Cal. May 26, 2015) .........................................................3, 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. MDL No. 1917, 2013 U.S. Dist. LEXIS 119598 (N.D. Cal. Aug. 21, 2013) ...........3

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009)........................................................................13, 16

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Cieri v. Leticia Query Realty*,
    905 P.2d 29 (Haw. 1995) ...................................................................................................11

*Clayworth v. Pfizer, Inc.*,
    233 P.3d 1066 (Cal. 2010) ...................................................................................................9

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. 2015) .....................................10, 18, 19

*In re De Laurentiis Entertainment Group, Inc.*,
    963 F.2d 1269 (9th Cir. 1992) ............................................................................................19

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) ............................................................................ *passim*

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) .....................................................................19

*In re Dynamic Random Access Memory Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. June 1, 2007) ............................................................7, 8, 16

*In re Dynamic Random Access Memory (Dram) Indirect Purchaser Litig.*,
    2020 U.S. Dist. LEXIS 249753 (N.D. Cal. November 24, 2020)......................................... *passim*

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................................8

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. January 21, 2010) .............................................................19

*Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*,
    384 S.W.3d 540 (Ark. Ct. App. 2011) ...............................................................................18

*In re Glumetza Antitrust Litig.*,
    No. C 19-05822, 2020 U.S. Dist. LEXIS 39649 (N.D. Cal. Mar. 5, 2020)...............................17

*In re GM LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. June 30, 2017) .................................................................20

*Granfield v. Nvidia Corp.*,
    No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678 (N.D. Cal. July 11, 2012) .......................4, 5

*In re Graphics Processing Units Antitrust Litig.*,
    540 F. Supp.2d 1085 (N.D. Cal. 2007) .................................................................................8

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
    No. 19-md-02918-MMC, 2020 U.S. Dist. LEXIS 197736
    (N.D. Cal. Oct. 23, 2020) ..........................................................................................1, 2, 5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Ho v. Visa USA, Inc.*,
　793 N.Y.S. 2d 8 (N.Y. App. 2005) ..................................................................................10

*Ill. Brick Co. v. Illinois*,
　431 U.S. 720 (1977)..........................................................................................................8

*In re Interior Molded Doors Antitrust Litig.*,
　No. 3:18-cv-00718, 2019 U.S. Dist. LEXIS 161045 (E.D. Va. Sept. 18, 2019) ..............15, 17

*Jones v. Micron Tech., Inc.*,
　400 F. Supp. 3d 897 (N.D. Cal. September 3, 2019).................................................1, 2, 7

*Kessel v. Monongalia County Gen. Hosp. Co.*,
　220 W. Va. 602 (W.V. 2007)............................................................................................10

*Knowles v. Visa U.S.A.*,
　2004 Me. Super. LEXIS 227 (Me. Cty. Sup. Ct. 2004)............................................7, 11

*In re Lidoderm Antitrust Litig.*,
　103 F. Supp. 3d 1155 (N.D. Cal. May 5, 2015).................................................16, 20

*In re Lithium Ion Batteries*,
　No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358
　(N.D. Cal. Oct. 2, 2014) ..........................................................................................3, 15

*Lorenzo v. Qualcomm Inc.*,
　603 F. Supp. 2d 1291 (S.D. Cal. 2009)..........................................................................19

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,
　2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sept. 22, 2014) ........................8, 10, 13, 18

*Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co.*,
　No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292
　(N.D. Cal. Aug. 11, 2015) ..............................................................................................10

*Marolda v. Symantec Corp.*,
　672 F. Supp. 2d 992 (N.D. Cal. July 27, 2009) ..............................................................17

*In re MI Windows & Doors, Inc. Products Liability Litig.*,
　2:11-cv-167, 2012 U.S. Dist. LEXIS 158666 (D.S.C. Nov. 6, 2012) ...........................14

*Miller v. Ghirardelli Chocolate Co.*,
　912 F. Supp. 2d 861 (N.D. Cal. 2012) ..............................................................................5

*Mlejnecky v. Olympus Imaging America Inc.*,
　No. 2:10-CV-02630, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 18, 2011) .............5

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
　No. 03-170-JD, 2003 U.S. Dist. LEXIS 17448 (D.N.H. Oct. 2, 2003) .........................15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

v

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
 350 F. Supp. 2d 160 (D. Me. 2004) ...................................................................16

*Oliver v. Am. Express Co.*,
 No. 19-CV-566 (NGG) (SMG), 2020 U.S. Dist. LEXIS 76688
 (E.D.N.Y. Apr. 30, 2020) ..............................................................................11

*In re Packaged Seafood Prods., Antitrust Litig.*,
 242 F. Supp. 3d 1033 (S.D. Cal. 2017).................................................14, 15, 17

*Pleasant v. McDaniel*,
 550 S.W.3d 8 (Ark. Ct. App. 2018) ...................................................................17

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
 946 F. Supp. 2d 554 (E.D. La. 2013) ................................................................15

*In re Pork Antitrust Litig.*,
 No. 18-cv-1776, 2020 U.S. Dist. LEXIS 191675 (D. Minn. Oct. 16, 2020) ........................12, 18

*In re Refrigerant Compressors Antitrust Litig.*,
 No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737 (E.D. Mich. April 9, 2013).............11, 13, 15

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
 737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................................16

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
 249 So. 3d 1178 (Miss. 2020) ...........................................................................12

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
 14-md-2503, 2017 U.S. Dist. LEXIS 170676 (D. Mass. Oct. 16, 2017) ....................................14

*Southard v. Visa U.S.A. Inc.*,
 734 N.W.2d 192 (Iowa 2007) .............................................................7, 9, 10, 19

*Stalvey v. Am. Bank Holdings, Inc.*,
 4:13-cv-714, 2013 U.S. Dist. LEXIS 161634 (D.S.C. Nov. 13, 2013) .....................................14

*State v. Infineon Techs. AG*,
 531 F. Supp. 2d 1124 (N.D. Cal. 2007) ..............................................................17

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................3

*Stephenson v. Neutrogena Corp.*,
 No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) ..........................5

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
 64 F. Supp. 3d 665 (E.D. Pa. 2014) ..................................................................18

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
  902 F.3d 735 (7th Cir. 2018) ...............................................................................8

*Szukalski v. Crompton Corp.*,
  726 N.W.2d 304 (Wis. Ct. App. 2006) ...............................................................13

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. Dec. 18, 2014) ...............................................14

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. July 2, 2001)......................................19, 20

*In re TFT-LCD Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................3

*In re TFT-LCD Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..............................................3, 8, 19, 20

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...............................................................................2

*Vinci v. Waste Mgmt., Inc.*,
  43 Cal. Rptr. 2d 337 (Cal. Ct. App. 1995) ...........................................................9

*Waldman v. New Chapter, Inc.*,
  714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...............................................................20

*Wilcox Indus. Corp. v. Hansen*,
  870 F.Supp.2d 296 (D. N.H. 2012)......................................................................15

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  400 F. Supp. 3d 418 (E.D. Va. 2019) .................................................................16

*In re Zetia Ezetimibe Antitrust Litig.*,
  No. 2:18-md-2836, 2019 U.S. Dist. LEXIS 59469 (E.D. Va. Feb. 6, 2019)............16, 17

**Statutes**

Fed. R. Civ. P.9(b) ...............................................................................................14, 15

Fed. R. Civ. P. 23 ....................................................................................................14

Ark. Code Ann. § 4-88-113(f)(1)(A) ........................................................................17

Haw. Rev. Stat. § 480-3 ...........................................................................................11

Md. Code Ann. §11-209(b)(2)(i)(2017) ....................................................................12

H.B. 1415, 437th Gen. Assemb., Reg. Sess. (Md. 2017) ........................................12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

S.B. 858, 437th Gen. Assemb., Reg. Sess. (Md. 2017) ...................................................12

Mississippi Antitrust Act .............................................................................................12

Missouri Merchandising Practices Act ........................................................................18

N.H. Rev. Stat. Ann. § 356:14 (2010) .........................................................................11

N.M. Stat. §57-12-2(E)(2) ............................................................................................13

OR Rev. Stat. §646.715(2) .............................................................................................9

Rhode Island Antitrust Act ..........................................................................................12

R.I. Gen. Laws §§ 6-36-7(d), 6-36-12 (amended by S.B. 840, 2013 Gen. Assemb.,
Jan. Sess. (R.I. 2013)) .............................................................................................12

W. Va. Code St. R. § 142-9-1.6 ....................................................................................10

W.Va. Code § 47-18-16 ................................................................................................10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

viii

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

## I.    INTRODUCTION

IPPs' Amended Complaints, like their earlier complaints, fail to "'clearly allege facts' demonstrating each element of standing." *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC, 2020 U.S. Dist. LEXIS 197736, at *15-16 (N.D. Cal. Oct. 23, 2020) ("*HDD Suspensions Order*").  IPPs have abandoned claims based on certain end-use products and certain state laws, but they remain distant downstream purchasers of HDD suspension assemblies ("suspensions"), small components-within-components of much more complex and expensive end-use products.  The Amended Complaints confirm that any harm to these plaintiffs remains impermissibly speculative and untraceable.  IPPs' argument that they have standing essentially seeks to write out of the law any limitations on standing by indirect purchasers, regardless of how distantly attenuated the purchasers, how complex the distribution chain, or how insignificant the component cost.  But IPPs cannot rewrite the governing case law, which clearly limits the standing of far-distant purchasers of small components of larger, more complex products to pursue antitrust claims.  IPPs remain several bridges too far from the alleged harm to state a claim and as such, their claims should be dismissed—this time with prejudice.

## II.   THE IPPS LACK ARTICLE III STANDING

### A.    IPPs' Alleged Injury is Fatally Speculative and Untraceable.

The IPPs' claims should be dismissed for lack of Article III standing because their alleged injury is speculative and untraceable.  The IPPs are many steps, products and markets removed from the original sale of Defendants' components which—by IPPs' own allegations—make up only a tiny fraction of the cost of the end-use products they purchased, including desktop and laptop computers and storage servers and arrays.  Between Defendants and the IPPs are multiple intervening manufacturing and commercial transactions that make tracing any alleged injury fatally speculative.

IPPs rely heavily on *In re Dynamic Random Access Memory (Dram) Indirect Purchaser Litig.*, 2020 U.S. Dist. LEXIS 249753, *10 (N.D. Cal. November 24, 2020) ("*DRAM III*")—where the re-pled claims dismissed in *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. September 3, 2019) ("*Jones*") were found sufficient to establish standing—but the new decision reemphasizes the standing test that IPPs here fail.  To establish the traceability prong of Article III standing: (1) the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

alleged price-fixed component must "make up [a] substantial cost of manufacturing," and (2) the overcharge must be "likely to be passed on due to market conditions" sufficient to show that "plaintiffs' injury is not speculative." *DRAM III* at *9-10 (internal citations omitted). The *DRAM III* court relied on plaintiffs' allegation that DRAM "makes up 5-25% of the bill of costs in electronic devices" or "5-50% of end product cost[s]." *DRAM III* at *8, *11 n.5.[1] In this case, IPPs allege only that suspensions make up "5-10% or more—up to 15% in some instances—of the cost of **an HDD**." EUSAC ¶ 116 (emphasis added); RSAC ¶ 44. The distinction is significant—50% of the total cost is at least five to ten times higher than the 5-10% number alleged by plaintiffs in this case. *And this is not even the relevant cost*. IPPs never allege what percentage cost a *suspension* constitutes of most **end-use devices** they purchased: a laptop or desktop computer, a storage server or array, or an NAS drive. Without those factual allegations, they cannot meet the test applied in *DRAM III* that suspensions must be a "significant component of each electronic device purchased by IPPs."[2] This omission is fatal. *DRAM III*, at *10.

Moreover, IPPs are even further from the alleged price-fixed transaction than any indirect purchaser in any case that either party has cited evaluating standing. IPPs' efforts to characterize the supply chain here as "simple" and "straightforward" is contradicted by their own allegations.[3] As IPPs admit, suspension assemblies wind through a long and convoluted chain in which they are (1) manufactured by Defendants, then (2) incorporated into intermediate components called head gimbal assemblies, *see* RSAC ¶ 89, then (3) incorporated into complex HDDs, then (4) sold to OEMs to

---

[1] In fact, Plaintiffs in *DRAM III* alleged that "DRAM constitutes approximately 5-50% of the total cost, *and often significantly more.*" Complaint at 3, ¶ 85, 4:18-cv-02518-JSW, ECF No. 109 (emphasis added). Plaintiffs here fall short of alleging either percentage range for all products—even for "bare" HDDs—but their allegations are plainly deficient for more complex products like laptops, desktops, and storage servers and arrays. End-User Second Am. Complaint ("EUSAC") ¶ 124; Reseller Second Amended Complaint ("RSAC") ¶ 47.

[2] IPPs object to judicial notice of the $1,299 cost of a 13" MacBook Pro, despite explicit references in their Complaints to the website selling that computer, EUSAC ¶ 128 Fig. 4; Defendants' Motion to Dismiss ("DMTD") at 12 n.10. Judicial notice is proper, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), but even without it, dismissal is warranted because they fail to allege the costs of the end-use products they purchased.

[3] The Court should similarly reject IPPs' attempts to defer determination of traceability issues, which IPPs argue are "issues [that] go to difficulties of proof, not pleading deficiencies." RO at 9; EUO at 9-10. Standing—a threshold requirement for this Court to exercise jurisdiction—is properly addressed on a motion to dismiss as it was in *DRAM III* and *Jones*.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

incorporate into other complex devices like computers or servers, and only then (5) are the products sold to distributors and/or resellers, and then potentially resold to other resellers, and eventually (6) sold to end users. DMTD at 5-7. The distribution path for sales of suspensions is far more attenuated than that of DRAM, for example, which is incorporated directly into final products that are sold to the downstream distribution chain. The intervening steps here matter; they involve subsequent complex manufacturing, price-setting, sales, marketing, and transportation which complicates the chain and makes the alleged overcharge implausible to trace.

None of the other cases on which IPPs rely involved a comparably long or complex chain of commerce. Indeed, each of those cases have the same core facts: either the components were incorporated directly into final products, or the component made up a higher percentage cost of the end-use product, or both. For example, in *Batteries*, Defendants manufactured battery cells, packed them into modules, and sold them to OEMs, which sold products incorporating those batteries to distributors and resellers. No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358, at *54-55, *90-91 (N.D. Cal. Oct. 2, 2014). Standing was satisfied because of this shorter chain and because the battery cell "comprises a 'substantial component cost' of products" containing batteries. *Id.* at *90-91.[4]

The product chain alleged here is also far more complex than the one at issue in *In re Capacitors Antitrust Litig.*, where the only indirect class that proceeded consisted of "plaintiffs who allege that they purchased **capacitors as stand-alone products** from one or more distributors"—the "First-Level Indirect Purchaser Plaintiffs."[5] 106 F. Supp. 3d 1051, 1059 (N.D. Cal. May 26, 2015)

---

[4] In *TFT-LCD*, LCDs made up 60-70% of the final costs. 586 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008). In *CRT*, CRT components were directly incorporated into the "CRT products" purchased by plaintiffs, the CRTs were severable, and "the market and physical distribution chain for CRTs are both limited." 2013 U.S. Dist. LEXIS 119598, at *101-03 (N.D. Cal. Aug. 21, 2013). In *SRAM*, Defendants did not even raise Article III or antitrust standing arguments because, as alleged, "*SRAM* is a significant cost component of end-use electronic products using memory chips." *See generally* 580 F. Supp. 2d 896, 898 (N.D. Cal. 2008) (no standing arguments raised to dismiss IPP class); IPP Complaint ¶ 143, M: 07-cv-1819, ECF No. 290. In *Auto Parts*, the chain involved only one level of commerce—OEMs— between Defendants and the first group of plaintiffs. 29 F. Supp. 3d 982, 992-3, 997 (E.D. Mich. 2014). In *ODD*, the sentence following the one cited by plaintiffs is that "[optical disk drives] can be one of the more significant individual cost components in a computer." No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 15899, at *37 (N.D. Cal. Feb. 8, 2016). This is never alleged, nor could it be, as to suspensions.

[5] At that hearing, Judge Donato suggested that the IPPs should voluntarily dismiss the Consumer

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(emphasis added).  IPPs argue that the suspensions chain here is "more straightforward," End-User Opp. ("EUO") at 6, but that certainly is not the case:  the *Capacitors* chain was only (1) Defendants to (2) distributors to (3) the First-Level Indirect Purchasers—only three links long, which, according to IPPs, is at least two links *shorter* than the distribution chain at issue here.  *Id.*; *see also* EUO at 5.  And because the only IPP claims that proceeded in *Capacitors* involved purchases of stand-alone capacitors, the cost of the capacitors at issue constituted, by definition, 100% of the cost of the products at issue for the IPPs there.  Like capacitors, suspensions are inexpensive components[6] incorporated without alteration into final electronic products.  But IPPs have confirmed through their pleadings— and even in their overly simplified chart—that they are commonly fourth- or fifth-level purchasers, *see* EUO at 5, 7-8, while Defendants explain how that chain can be as many as nine steps long.  *See* DMTD at 5-8.

## B.   Claims for Unpurchased Products in Each State Should be Dismissed.

This Court should dismiss claims for lack of standing under the law of each state where no named Plaintiff alleged an in-state purchase.  Defendants identified those missing purchases in their opening brief.  *See* DMTD at 17-18.  IPPs push to defer resolution by rehashing already rejected arguments that "Defendants improperly conflate standing with class certification" and argue that *DRAM III* and out-of-circuit *Mednick* stand for the proposition that the inquiry should focus on the specific component at issue.  EUO at 10-12; RO at 9-10.  Both arguments ignore established law that class representatives cannot bring claims for unpurchased products as a matter of law.  In *Granfield v. Nvidia Corp.* the named plaintiff alleged that she purchased a computer, one of the same products at issue here, that contained an allegedly defective Nvidia graphics-processing component.  No. C 11-

Indirect Purchaser Class because it "appears to potentially cover every living human in the United States since 2003 who was able to purchase any component with a capacitor in it. Now, is that really your position? Because there may be prudential reasons at the pleading stage to cut that back." Transcript of Proceedings at 61, *In re Capacitors Antitrust Litigation*, 14-03264, ECF No. 589.  Nine days later, the IPPs voluntarily dismissed their Consumer Indirect Purchaser Class. *See* ECF No. 594. So too here: the End-User class would encompass everyone who has ever purchased a computer or HDD.

[6] Resellers reach outside of the Complaint, Reseller Opp. ("RO") at 7, to speculate that their own factual allegations—that suspensions cost under a dollar each, RSAC ¶ 98—can be changed with subsequent discovery, but these arguments simply underscore that the current allegations require dismissal.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

05403 JW, 2012 U.S. Dist. LEXIS 98678, *1-2, *19 (N.D. Cal. July 11, 2012). She sought to represent a class that included "eleven additional models of Nvidia GPUs" with the same alleged defects that she had never purchased. *Id.* at *19. The Court dismissed the claims for the eleven models because "claims relating to products not purchased must be dismissed for lack of standing . . . [as] Plaintiff does not allege any injury stemming from the purchase or use of these other models. *Id.*[7] The same result should hold here for the unpurchased products.

IPPs concede that Courts in this Circuit typically consider whether the products purchased are substantially similar to the products not purchased. RO at 10; *see Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099, at *2-3 (N.D. Cal. July 27, 2012) (dismissing claims for five unpurchased "Neutrogena Naturals products" dissimilar from purchased Neutrogena Natural product). Yet IPPs wrongly assert that "resolution of the asserted claims will be identical between the purchased and unpurchased products." RO at 10 (quoting *Anderson v. Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1233 (N.D. Cal. 2015)). In *Anderson*, the court found that purchased drink products were substantially similar to unpurchased drink products where they "contain[ed] the same 'All Natural' misrepresentation in a similar location on the front label [and] artificial, synthetic or extensively processed ingredients." 87 F. Supp. 3d at 1233. That is *not* the case here because the alleged purchases are far more dissimilar. A "bare" HDD, an enterprise storage array, and a laptop computer all have substantial and obvious dissimilarities in terms of their uses, prices, and characteristics. These substantive differences mean that resolution of IPPs' claims will *not* be substantially similar. Courts routinely dismiss claims in circumstances where purchased and unpurchased products are far more similar than those alleged here. *See, e.g.*, *Mlejnecky v. Olympus Imaging America Inc.*, No. 2:10-CV-02630 JAM-KJN, 2011 U.S. Dist. LEXIS 42333, at *11-13 (E.D. Cal. Apr. 18, 2011) (dismissing claims under the UCL for camera product never purchased by plaintiff but allowing claims to proceed for a model of camera made by the same manufacturer she did purchase); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870-72 (N.D. Cal. 2012) (finding

---

[7] IPPs again rely on *Melendres*, EUO at 11-12, but as explained in the initial Order in this case, the holding is easily distinguishable because "the named plaintiffs therein . . . asserted claims under a single statute for injuries sustained in a single county" whereas here, IPPs seek to represent a sprawling class covering numerous states and alternative class definitions. *HDD Suspensions Order* at *19.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

purchased brand of Ghirardelli white chocolate dissimilar from five different brands of Ghirardelli white chocolate). Because the unpurchased products are dissimilar from those purchased, the Court should dismiss IPPs' claims where no named plaintiff purchased such products in a particular state.

## III. THE IPPS CANNOT ESTABLISH ANTITRUST STANDING

### A. The Complaints Should Be Dismissed for Lack of Antitrust Standing.

IPPs' claims fail the requirements for antitrust standing articulated by the Supreme Court in *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 520 (1983) ("*AGC*").

#### 1. *AGC* Factor 1: The Nature of IPPs' Alleged Injury is Not "Inextricably Intertwined" with that of a Market Participant.

Antitrust injury requires either direct market participation or that plaintiffs meet the "narrow exception to the market participant requirement for parties whose injuries are inextricably intertwined with the injuries of market participants." *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 n.5 (9th Cir. 1999) (internal citation omitted). IPPs concede that they are not direct market participants and their injury cannot meet the "inextricably intertwined" test for two reasons. First, suspensions do not "make[] up a substantial portion of end product cost." *See DRAM III* at *11 (DRAM comprised 5-50% of the end-product cost). This point was discussed at length above, *see supra* Section II at 2-3.[8] IPPs have only alleged that suspensions make up at most 15% of the price for HDDs and they make no allegations whatsoever regarding the price that suspensions represent for other finished products.[9] Second, IPPs never allege that suspension prices "experience[] price correlation[s] with end product prices," *DRAM III* at *11, nor can they.[10]

---

[8] *In re CRT* found the markets for CRT and "CRT products" inextricably intertwined, but even so concluded only that "this factor slightly favors standing." No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 119598, *101 (N.D. Cal. Aug. 21, 2013). Importantly, unlike here, the CRT components were directly incorporated into the "CRT products" purchased by plaintiffs. *Id.* at *100-01. The products here are components of head gimbals, which are components of HDDs, which are components of various finished consumer products. These extra steps matter, because they are each distinct markets.

[9] IPPs claim they made the requisite showing because they allege that suspensions are a "critical component of HDDs," which are "critical components of Standalone Storage Devices and Computers," EUO at 15-16, RO at 17-18. But these allegations do not meet the required test.

[10] At best, IPPs engage in academic backflips to string together numerous allegations regarding price correlations, relating "the number of and cost of suspension[s]" with "HDD capacity" with "HDD

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

### 2.  *AGC* Factors 2 & 3: The Alleged Injury Is Indirect and Speculative.

Factors 2 and 3 overlap substantially with the Article III analysis above, *supra* Section II.  For the same reasons asserted there, the IPPs' claims should be dismissed for lack of antitrust standing because their alleged injury is fatally speculative and untraceable.

### 3.  *AGC* Factors 4 & 5: IPPs' Damages Are Duplicative and Cannot Be Adequately Apportioned.

IPPs fail factors four and five because their damages are duplicative of "numerous other plaintiffs further up the supply/distribution chain . . . who would be better positioned to enforce the antitrust laws."  *In re Aluminum Warehousing Antitrust Litig.,* No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435, at *88-89 (S.D.N.Y. Aug. 29, 2014).  To wit, upstream purchaser Seagate has in fact filed suit.  *Jones*, 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019) ("given the problems with traceability, damages, under the facts as alleged, would be difficult to apportion.").

Damages cannot be apportioned where the chain is too complicated and the component too inexpensive. *See Jones*, 400 F. Supp. 3d at 913; *DRAM I*, 516 F. Supp. 2d at 1092-93.[11]  This is the case here, where the suspensions are one small component in a complicated supply chain that is not known to consumers and accounts for a negligible portion of the price of the finished products.

### B.  *AGC*'s Antitrust Standing Requirements Apply to the State Claims.

IPPs bear the burden to show that any of the *Illinois Brick* repealer states "under which Plaintiffs have brought antitrust claims would apply a different standard" than *AGC*.  *See* DMTD at 25 (citing *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 541-45 (N.D. Ill. 2019).  IPPs cannot meet this burden by simply showing that a state permits suits by indirect plaintiffs.[12]  In fact, many states that expressly permit suits by indirect victims *still* require a showing of antitrust

---

price" with "total computer price."  EUSAC ¶¶ 120, 126-29.  But IPPs never make the simple allegation that suspension prices are correlated with end-product prices because they cannot.

[11] The fact that IPPs bring claims under *Illinois Brick* repealer statutes does not render the recovery they seek non-duplicative. Nor is it dispositive, even if considered—*Jones* noted that it was at worst, a "neutral fact," 400 F. Supp. 3d at 913, and *DRAM I*, at 1093, found no antitrust standing even after concluding that the policy of the repealer statutes caused this factor to favor plaintiffs.

[12] For example, IPPs attempt to distinguish *Knowles v. Visa*—supporting application of *AGC* to Maine—by noting that Maine has an *Illinois Brick* repealer statute, but, this argument rests on the flawed assumption that *AGC* cannot co-exist with an *Illinois Brick* repealer statute.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

7

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

standing—*AGC* simply "set[s] the outer limits of what injuries are compensable." *See Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 196-97 (Iowa 2007) (expressly adopting *AGC* and affirming rejection of *Illinois Brick*, explaining, "[w]e simply rejected the federal rule barring claims by indirect purchasers. We certainly did not, as suggested by the plaintiffs, determine there were no limits on who could sue under chapter 553."). As the Supreme Court observed in *Illinois Brick* itself, the bar on indirect purchaser suits is "analytically distinct" from the issue of antitrust standing. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 728 n.7 (1977).

Federal courts in this Circuit have the power to "predict how the state high court would resolve [application of *AGC*]," even where "the state's highest court has not decided [the] issue." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151 (N.D. Cal. 2009). Accordingly, the proper standard is to apply *AGC* where (1) state courts have indicated they have adopted or would adopt *AGC*, or (2) "the state legislatures have enacted harmonization provisions within the state antitrust statutes."[13] *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWx), 2009 U.S. Dist. LEXIS 133088, *10-11, *19-20 (C.D. Cal. July 6, 2009); *see also DRAM I*, 516 F. Supp. 2d at 1092-94. This in-Circuit standard also comports with recent decisions in sister Circuits. *See, e.g.*, *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 744 (7th Cir. 2018); *In re Dealer*, 362 F. Supp. 3d at 541-45 ("a statutory harmonization provision (either statutory or common law), absent any countervailing statutory law or case law from a state appellate court, is sufficient to permit a district court to apply federal antitrust-standing law—including *AGC*"). Defendants have provided detailed citations to each state's laws and relevant court opinions to enable the Court to render a state-by-state determination that *AGC* applies.[14] Where IPPs have failed to offer

---

[13] IPPs appear to equate "clear directive" with "express adoption." *See* EUO. at 13. However, the balance of IPPs' own authorities confirm that only a "clear directive" from the state is required for a federal court to apply *AGC*. *See, e.g.*, *TFT-LCD*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) (declining to "broadly apply" *AGC* "in the absence of a clear directive from the states' legislatures or highest courts," but silent on express adoption); *ODD*, 2011 U.S. Dist. LEXIS 101763, at *46 (same); *Capacitors*, 106 F. Supp. 3d at 1073 (considering whether the state court had "endorsed using the test"). IPPs never define "clear directive" but Defendants urge the Court to adopt the standard advanced by *Aftermarket Auto, DRAM I*, *Supreme Auto,* and *In re Dealer*.

[14] IPPs cite to *Capacitors, Los Gatos, In re Flash Memory* and *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp.2d 1085 (N.D. Cal. 2007) ("*GPUs II*"), to claim that "[c]ourts in this District expressly hold that *AGC* does not apply to state antitrust and/or consumer protection claims" under the laws of 27 states. EUO at 12-13. However, in those cases, the Court merely declined to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

any countervailing state law, they have failed to show that these states would reject *AGC* and cannot meet their burden. *See In re Dealer*, 362 F. Supp. 3d at 540.

Turning to individual states, the Ninth Circuit has already decided that California, Arizona and Oregon state law claims should be interpreted in conformity with federal antitrust principles. IPPs attempt to circumvent *Knevelbaard* by cherry-picking quotes and ignoring the express holding that *AGC* and its standing factors apply. 232 F.3d 979, 987 (9th Cir. 2000) ("the court must evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them," and citing *AGC*).[15] IPPs try to distinguish *Mothershed* by arguing that the case concerned whether an attorney was subject to discipline. 410 F.3d 602, 609-10 (9th Cir. 2005). This is a distinction without a difference, as the court made a legal finding as to the viability of plaintiff's antitrust claim and held that as a matter of law, "[t]he Arizona Uniform State Antitrust Act 'is interpreted in conformity with the federal [antitrust laws].'"[16] *Id.* at 609 (internal citations omitted). Finally, *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris, Inc.* found that "[t]he Oregon antitrust statutes are almost identical to the federal antitrust statutes" and "treated the state and federal antitrust claims as one and the same for purposes of standing analysis." 185 F.3d 957, 963-66 n.4 (9th Cir. 1999). Again, IPPs' attempted distinction ignores the clear holdings from the Ninth Circuit.[17]

IPPs' attempts to distinguish the remaining rulings are meritless. For example, IPPs argue that the *Visa* cases[18] are inapposite because the plaintiffs were not indirect purchasers. *See* EUO at 14.

_____

"adopt an across-the-board rule" where there was no "individualized analysis on a per state basis to enable the Court to render such a determination." *See also Flash Memory* at 1153.

[15] California's high court has issued an opinion strongly suggesting that it would apply the *AGC* factors in analyzing state antitrust claims. *See Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1077 (Cal. 2010). Further, at least one California intermediate court has applied *AGC. Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338-39 (Cal. Ct. App. 1995).

[16] The Arizona's high court opinion *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 113 (Ariz. 2003) strongly suggested that *AGC* would apply and did not "implicitly decline to apply *AGC*," as asserted by IPPs. EUO at 24. The issue of applying *AGC* was never before the Court, but it specifically recognized that standing is distinct from *Illinois Brick*. *Id.*

[17] Contrary to IPPs' argument that *Patterson Dental Co. v. McGaughey* did not analyze *AGC*, the decision expressly states that its "discussion of federal law also applies to defendant's state antitrust counterclaim" because ORS 646.715(2) provides that the decisions of federal courts construing federal antitrust laws are persuasive authority in interpreting Oregon's antitrust laws." 85-cv-469, 1985 WL 25732, at *2 (D. Or. Dec. 9, 1985).

[18] The *Visa* cases demonstrate that *AGC* applies in the following jurisdictions: D.C., Iowa, Maine,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Yet IPPs ignore the relevant legal question presented in those cases: whether or not the state court adopted *AGC*. IPPs do not dispute that the state courts in the *Visa* jurisdictions applied the *AGC* factors, and ignore subsequent state court opinions relying on the *Visa* cases to hold the same. *See, e.g.*, *Aftermarket Auto*, 2009 U.S. Dist. LEXIS 133088, at *12-13, *19-20 (relying on the *Visa* cases and other authorities to conclude the following states would apply *AGC*: Iowa, Maine, Michigan, Nebraska, North Dakota, South Dakota and Wisconsin);[19] *In re Dealer*, 362 F. Supp. 3d at 542-45 (relying on the *Visa* cases and other authorities to conclude the following states would apply *AGC*: D.C., Iowa, Maine, Nebraska, New Mexico, South Dakota, Vermont and Wisconsin).

Nor can IPPs show that West Virginia would not apply *AGC*. IPPs rely primarily on West Virginia's repealer statute, W. VA. CODE ST. R. § 142-9-1.6, to argue that *AGC* is inapplicable; however, the cited provision says nothing about standing. IPPs also ignore the West Virginia Antitrust Act itself, which provides that, "This article shall be construed liberally and *in harmony with ruling judicial interpretations of comparable federal antitrust statutes*." W.VA. CODE § 47-18-16 (emphasis added).[20]

IPPs fail to distinguish the New York intermediate court decision in *Ho v. Visa USA, Inc.*, 793 N.Y.S. 2d 8, 8-9 (N.Y. App. 2005) and misstate its holding by claiming that the court "did not engage in a thorough analysis of whether New York law requires application of the *AGC* factors." EUO at 28. All that is required is a clear directive. *Ho* provides this directive in affirming a lower court's application of the *AGC* factors to a Donnelly Act claim. *See Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *68 (relying on *Ho* to conclude that New York's high court would apply *AGC*). *Ho* demonstrates that New York's high court would adopt *AGC* standing.[21]

Michigan, Nebraska, New Mexico, New York, South Dakota, Vermont and Wisconsin.

[19] In *Aftermarket Auto*, the Central District of California rejected the very argument IPPs advance here: that the *Visa* plaintiffs "presented different types of claims from those brought in this case is not persuasive. The question is not whether the claims are similar but whether state courts apply the *AGC* factors . . . to determine antitrust standing[.]" 2009 U.S. Dist. LEXIS 133088, at *13 n.2.

[20] The West Virginia high court has already cited *AGC* approvingly. *See, e.g.*, *Aikens v. Debow*, 208 W. Va. 486, 492 (W.V. 2000); *see also Kessel v. Monongalia County Gen. Hosp. Co.*, 220 W. Va. 602, 615-16 (W.V. 2007).

[21] *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 140765, at *25 (relying on *Ho v. Visa* to hold that New York requires plaintiffs to demonstrate antitrust standing under a standard derived from *AGC*); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

IPPs' attempt to distinguish *Knowles v. Visa U.S.A.*, 2004 Me. Super. LEXIS 227 (Me. Cty. Sup. Ct. 2004), likewise fails. IPPs again contend that the high court would not apply *AGC* if "those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer." EUO at 26. But the two are not mutually exclusive. Indeed, *Knowles* held that "it is probable that the Maine Law Court, if presented with this issue, would look to the [*AGC*] factors in determining standing under Maine's antitrust laws" and expressly rejected that Maine's repealer statute "unambiguously and expressly permits suits by indirect victims[.]" *Id.* at *8, *13, *24-25. Thus, *Knowles* counsels in favor of applying *AGC* to IPPs' claims arising under Maine law.

*AGC* also applies to the New Hampshire antitrust statute, in light of New Hampshire's harmonization provision and federal decisions applying *AGC* to New Hampshire. *See* MTD, at Apps. A-C (citing *In re Dealer* at 539-45 (applying *AGC* to New Hampshire claims); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737, *41 (E.D. Mich. April 9, 2013) (same)); *see also* N.H. REV. STAT. ANN. § 356:14 (2010) ("the courts may be guided by interpretations of the United States' antitrust laws."). IPPs offer no rebuttal in their opposition.

End-Users attempt to distinguish the Hawaii high court's decision in *Davis v. Four Seasons Hotel Ltd.* because the high court did not have occasion to apply *AGC*. 228 P.3d 303, 324 n.33 (Haw. 2010). But *Davis* found that "Hawaii[] virtually word-for-word adopt[ed] the prohibitions contained in the Sherman, Clayton, and FTC acts" and recognized that "federal courts have consistently applied the concept of antitrust injury when determining if a plaintiff has federal antitrust standing." *Id.* at 324 n.33, 326.[22] While not an "express adoption," the holding provides a "clear directive" from the high court.[23] IPPs have not met their burden to show otherwise.

---

3690, 2015 U.S. Dist. LEXIS 84152, *43-44 (N.D. Ill. 2015) ("*Dairy Farmers*") ( "New York's lower- and mid-level courts have consistently endorsed the application of the *AGC* factors . . . The Court has no reason to believe that New York's highest court would not do the same."); *Oliver v. Am. Express Co.*, No. 19-CV-566 (NGG) (SMG), 2020 U.S. Dist. LEXIS 76688, *40-41 (E.D.N.Y. Apr. 30, 2020) (same).

[22] End-Users claim that Hawaii's "harmonization statute" expressly carves out indirect purchaser actions where it states that "lawsuits by indirect purchasers may be brought as provided in this chapter." EUO at 25; HAW. REV. STAT. § 480-3 But that is simply wrong. Section 480-3 repeals *Illinois Brick*; it does not bar the application of *AGC*.

[23] IPPs likewise do not dispute *Cieri v. Leticia Query Realty*, 905 P.2d 29, 41 (Haw. 1995), which found as a matter of law that the "essential element" of standing is "an actual or threatened injury

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

In the interests of efficiency, Defendants refer the Court to their positions on the remaining state law antitrust claims found in their Motion and appendices.

## IV. THE IPPS' STATE-LAW ANTITRUST CLAIMS SUFFER FATAL DEFICIENCIES

### A. IPPs' Maryland and Rhode Island Antitrust Claims Fail.

IPPs fail to demonstrate that Maryland or Rhode Island confer anyone other than the State Attorneys General standing to sue on behalf of indirect purchasers. Maryland state law claims should be dismissed because the 2017 amendment to the Maryland Antitrust Act permitting private suits by indirect purchasers post-dates the purported Class Period, and EUPs do not argue retroactive application. MD. CODE ANN. §11-209(b)(2)(i)(2017); *see also* H.B. 1415, 437th Gen. Assemb., Reg. Sess. (Md. 2017); S.B. 858, 437th Gen. Assemb., Reg. Sess. (Md. 2017).

Similarly, any Rhode Island Antitrust Act claim for damages based on conduct prior to July 15, 2013, the date Rhode Island's *Illinois Brick* repealer statute was enacted, must be dismissed. R.I. GEN. LAWS §§ 6-36-7(d), 6-36-12 (amended by S.B. 840, 2013 Gen. Assemb., Jan. Sess. (R.I. 2013)). EUPs do not argue retroactive application.

### B. IPPs' Mississippi, North Carolina, Tennessee, and Wisconsin Antitrust Claims Do Not Apply to the Interstate Sales Alleged Here.

IPPs' conclusory allegations of in-state purchases of products containing components manufactured or sold by a defendant, and that "injury was felt" within these states, EUO at 19; RO at 23, without alleging more about defendants' conduct relating to each of these states, are insufficient to survive 12(b)(6) dismissal. **Mississippi**: *State ex rel. Fitch v. Yazaki N. Am., Inc*., 249 So. 3d 1178, 1187-1190 (Miss. 2020) (affirming 12(b)(6) dismissal on grounds that Plaintiff failed to allege "that the defendant manufacturers sold AWHS in Mississippi" or "that the OEMs, suppliers, or distributors that directly purchased AWHS from the defendants were in Mississippi"); *In re Pork Antitrust Litig*., No. 18-cv-1776, 2020 U.S. Dist. LEXIS 191675, at *32-34 (D. Minn. Oct. 16, 2020) (granting 12(b)(6) motion to dismiss under Mississippi Antitrust Act on the ground that Mississippi's "wholly intrastate rule" requires (a) more specific allegations regarding defendants' conduct with respect to Mississippi

[that] . . . is fairly traceable to the defendant's actions[.]" This is another clear indication that Hawaii's high court would adopt *AGC*.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

and (b) plaintiffs to "at least specifically allege that a product is distributed to, and then sold within," Mississippi). **North Carolina**: *In re Dealer*, 362 F. Supp. 3d at 549 ("When plaintiffs do not allege that any wrongful conduct occurred in North Carolina, allegations that indirect purchasers payed [sic] inflated prices are not sufficient to establish a substantial, in-state injury"); *Compressors*, 2013 U.S. Dist. LEXIS 50737, at *61-63 (dismissing NCUDTPA claim on the ground that indirect purchases of finished products containing allegedly price-fixed compressors are an "incidental," not "substantial," in-state injury). **Wisconsin**: *Szukalski v. Crompton Corp*., 726 N.W.2d 304, 311-12 (Wis. Ct. App. 2006).[24] **Tennessee**: *Compressors*, 2013 U.S. Dist. LEXIS 50737, at *53-54 (dismissing claims under Tennessee's antitrust statute on the ground that indirect purchaser plaintiffs failed to allege a "substantial" effect on intrastate commerce).

## V. THE IPPS' STATE-LAW CONSUMER-PROTECTION CLAIMS SUFFER NUMEROUS FATAL STATE-LAW DEFICIENCIES

### A. EUPs Allege Nothing Unconscionable Under Arkansas and New Mexico Law.

**Arkansas:** Because EUPs have not alleged facts showing any direct connection between the alleged price-fixing of suspensions and any damages suffered as a result of their purchase of products containing such assemblies, EUPs' claims under the ADTPA should be dismissed. *Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co*., 2014 U.S. Dist. LEXIS 133540, *30-31 (N.D. Cal. Sept. 22, 2014) (citing *Indep. Cnty. v. Pfizer, Inc*., 534 F. Supp. 2d 882, 887 (E.D. Ark. 2008) ("Even assuming that a price-fixing claim may be asserted under the ADTPA, Arkansas law recognizes the remoteness doctrine such that a consumer claim is subject to dismissal if there is no direct link between the alleged misconduct and the claimed damages.") *citing Indep. Cnty. v. Pfizer, Inc*., 534 F. Supp. 2d 882, 887 (E.D. Ark. 2008)(internal quotations omitted). **New Mexico:** EUPs fail to allege any facts supporting a "***gross disparity*** between the value received by a person and the price paid" under the NMUPA. N.M. Stat. §57-12-2(E)(2) (emphasis added). Unlike the cases EUPs cite, the EUPSAC does not allege that the prices paid by New Mexico plaintiff were "grossly" inflated, e.g., that she

---

[24] In this case cited by the EUPs' Opposition Brief (EUO at 29-30), plaintiffs were Wisconsin residents who purchased automobile tires that used rubber processing chemicals allegedly price-fixed by defendants. The court affirmed dismissal on the grounds that the complaint failed to allege any specific facts "with respect to the dollar value in Wisconsin or, most significantly, the amount added to the cost of tires by the alleged conspiracy" and instead made "general assertions of what appears to be a nationwide issue" and thus was "significantly lacking in the kind of specificity that is required." 726 N.W.2d at 311-12.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

"paid approximately 30% more for a product as a result of price fixing." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009), citing *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 196 (D. Me. 2004) ("*New Motor*"). The EUSAC does not correlate the suspensions with the finished product prices, and thus does not allege an "unconscionable" trade practice.

**B.    IPPs' Montana and South Carolina Claims Fail Because Class Actions are Barred or Limited by State Statute.**

Interpreting *Shady Grove*, federal courts have held that Montana's consumer protection prohibition of class actions is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-2503, 2017 U.S. Dist. LEXIS 170676, at *69 (D. Mass. Oct. 16, 2017); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163-65 (D. Minn. Dec. 18, 2014).

In South Carolina, "the prohibitions against class actions ingrained in the very text of the SCUTPA and Consumer Protection code are substantive portions of South Carolina law and are not trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove* decision." *Stalvey v. Am. Bank Holdings, Inc.*, 4:13-cv-714, 2013 U.S. Dist. LEXIS 161634, at *13-14 (D.S.C. Nov. 13, 2013); *see also In re MI Windows & Doors, Inc. Products Liability Litig.*, 2:11-cv-167, 2012 U.S. Dist. LEXIS 158666, at *16-17 & n.3 (D.S.C. Nov. 6, 2012).[25]

**C.    IPPs' Florida, Michigan, and Minnesota Claims Fail Under Rule 9(b).**

First, the heightened pleading standard of Rule 9(b) applies to indirect purchaser claims under Michigan, Minnesota, and Florida law.  Even *Packaged Seafood*, which EUPs cite, requires Rule 9(b) to be applied to any claim under Michigan and Minnesota consumer protection statutes.  *In re Packaged Seafood Prods., Antitrust Litig.*, 242 F. Supp. 3d 1033, 1076-79 (S.D. Cal. 2017) (dismissing claims where complaint lacked specific allegations that defendants employed fraudulent and deceptive means with the intent to deceive).  Survival of a 12(b)(6) motion requires "more specific allegations detailing public statements, explanations, and press releases--organized by the month in which each

---

[25] Defendants agree with End-Users, EUO at 20, that this argument does not apply to IPPs' Arkansas and Virginia claims.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

was made--where in Defendants . . . offered pretextual explanations for the 2012 price increases" and specific allegations that each defendant used "fraudulent and deceptive means on which [plaintiffs] relied." *Id.* at 1077; *see also In re Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718, 2019 U.S. Dist. LEXIS 161045, at *51-52 (E.D. Va. Sept. 18, 2019).

Rule 9(b)'s heightened pleading standard requires more than EUPs' sparse and limited allegations. *See Compressors*, No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737, at *68-69 (dismissing FDUTPA claim for failure to plead indirect purchasers' allegations of price-fixing with sufficient particularity); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 570 (E.D. La. 2013) (under the FDUTPA, IPPs must state with particularity "the who, what, when, and how of any fraud or deceptive act committed by defendants").[26]

### D. IPPs' North Carolina, New Hampshire, and Massachusetts Claims Fail to Reach the Interstate Sales Alleged Here.

IPPs do not allege that Defendants manufactured or distributed products or took acts in furtherance of a conspiracy within these states. Accordingly, IPPs have not alleged any wrongful conduct occurring in these states and their consumer protection claims should be dismissed.

**North Carolina:** "[I]ndirect purchasers pay[ing] inflated prices are not sufficient to establish a substantial, in-state injury" under the NCUDTPA. *In re Dealer* at 549 (N.D. Ill. 2019); *see also Compressors*, 2013 U.S. Dist. LEXIS 50737, at *62-63 (finding that indirect purchase of components in finished products are "incidental," not "substantial," in-state injuries).

**New Hampshire:** New Hampshire requires allegations of intra-state conduct. *Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03-170-JD, 2003 U.S. Dist. LEXIS 17448, at *18 (D.N.H. Oct. 2, 2003) (requiring "unfair method of competition or unfair or deceptive act or practice which *took place within New Hampshire*") (emphasis added); *Wilcox Indus. Corp. v. Hansen*, 870 F.Supp.2d 296, 305-06 (D. N.H. 2012) (same). New Hampshire's Consumer Protection Act "proscribes only conspiratorial conduct occurring within the territorial limits of New Hampshire." *Batteries*, 2014 U.S. Dist. LEXIS 141358, at *120-121 ("[M]erely selling a good in New Hampshire is not enough when the proscribed

---

[26] The False Claims Act cases EUPs cite (EUO at 21 n.25) are inapposite as neither instructs on the extent of particularized allegations required to satisfy Rule 9(b) with respect to indirect purchaser claims under state consumer protection statutes.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

conduct occurs elsewhere.") (emphasis added) (internal citations omitted).[27]

**Massachusetts:** IPPs' reliance on *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, is unavailing, as the "receiving end" and loss "situs" factors IPPs rely on only applied when trying to determine "whether actionable misconduct occurred primarily and substantially in Massachusetts." 318 F.3d 1, 24 (1st Cir. 2003). Here, there is no question that the "center of gravity of the offending conduct"— *i.e.*, price-fixing—occurred outside Massachusetts. *See Acacia Communs., Inc. v. ViaSat, Inc.*, 35 Mass. L. Rep. 16, 17-19 (Mass. Sup. Ct. 2018).

### E. IPPs' Claims in Eight Jurisdictions Fail Because Price-Fixing is Not an Enumerated Violation.

IPPs do not dispute that the consumer protection statutes for Arkansas, Michigan, Nevada, Oregon, Rhode Island, South Dakota, Utah, and Virginia provide relief only for specific enumerated conduct, none of which includes price fixing. Instead, they argue that price fixing should be read into the state statutes' prohibitions on fraudulent, deceptive, unconscionable or unfair conduct. Courts have routinely rejected similar invitations. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1166-73 (N.D. Cal. May 5, 2015) (dismissing with prejudice consumer protection claims based on deceptive, unconscionable or unfair conduct under the laws of several jurisdictions—including Arkansas, Michigan, Oregon, and South Dakota—where the claims were based on the defendants' purported antitrust conspiracy and failure to inform consumers of such conspiracy); *DRAM I*, 516 F. Supp. 2d at 1115-17 (granting defendants' motion for judgment on the pleadings for Oregon, Rhode Island, and Utah claims and declining to read price-fixing into those states' consumer protection statutes); *In re Zetia Ezetimibe Antitrust Litig.*, No. 2:18-md-2836, 2019 U.S. Dist. LEXIS 59469, at *95 (E.D. Va. Feb. 6, 2019) ("*Zetia*") (recommending dismissal of Arkansas, Michigan, Oregon, South Dakota, and Utah claims), adopted by *In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418 (E.D. Va. 2019); *New Motor*, 350 F. Supp. 2d at 189, 202-03, 206-07 (dismissing Michigan, South Dakota, and Virginia claims); *Sheet Metal Workers Local 441 Health & Welfare Plan v.*

---

[27] Notably, the *Batteries* court rejects as inapposite and unpersuasive the cases cited by IPPs. *See id.* at 121-23 (explaining that *LaChance* dealt with a separate issue of whether consumers were required to bring "antitrust-type actions" under New Hampshire's antitrust statute rather than under the CPA and describing the New Hampshire analysis in *In re Chocolate Confectionary* as "unpersuasive " and "a single outlying decision set against a backdrop of otherwise uniform authority.").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 412-13, 417 (E.D. Pa. 2010) (dismissing Michigan and Nevada claims).  These claims should be dismissed.

### F. IPPs' Claims in Arkansas and California Fail for Lack of Reliance.

Arkansas requires that those who make a claim under the ADTPA must "suffer[] an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter."  ARK. CODE ANN. § 4-88-113(f)(1)(A).  Plaintiffs' reliance on *Pleasant v. McDaniel,* 550 S.W.3d 8, 12 (Ark. Ct. App. 2018) is inapposite because the court there was only rejecting a requirement for a heightened pleading standard for fraud.[28]

Claims under California's UCL require reliance.  *In re Glumetza Antitrust Litig.,* No. C 19-05822, 2020 U.S. Dist. LEXIS 39649, at *43 (N.D. Cal. Mar. 5, 2020) ("the consumer protection arm fails because the complaint does not plausibly allege consumer reliance—the crux of the claim—on any deceptive conduct by defendants.").

IPPs' citation to *Marolda* is inapposite because it indicates that reliance is not required *only* where "the plaintiff is part of a class, which defendant has targeted by an extensive and long-term advertising campaign."  672 F. Supp. 2d at 1004.  IPPs have made no such allegations.

### G. IPPs' Missouri and Virginia Claims Fail Because These States Prohibit Indirect Purchaser Actions.

The Virginia consumer protection claim should be dismissed because Defendants' cited authorities confirm that indirect purchaser actions are not allowed under Virginia law.  *See State v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1151 (N.D. Cal. 2007).  IPPs' citation to *Packaged Seafood,* 242 F. Supp. 3d at 1118, only resolves a dispute over the applicable statute of limitations to the Virginia consumer protection law.  Recent case law affirms that indirect purchaser claims are tenuous when brought under the Virginia Consumer Protection statute.  *See Molded Doors*, 2020 U.S. Dist. LEXIS 78458, at *9 n.3 (noting that plaintiffs voluntarily dismissed a Virginia consumer protection

---

[28] The statute was amended in 2017 to explicitly add a reliance requirement, but courts have found that reliance was always an element.  *See Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 663 (8th Cir. 2018) ("[T]he more natural reading of the [ADTPA] former text required proof of reliance."); *Zetia*, 2019 U.S. Dist. LEXIS 59469, at *94-95 (recommending dismissal of Arkansas consumer protection act where "[t]he EPPs cannot plausibly claim to have 'relied' on any of the Defendants' acts which produced the elevated pricing").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

17

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

claim in their antitrust action); *see also In re Pork*, 2020 U.S. Dist. LEXIS 191675, at *44-45.

The same is true for antitrust indirect purchaser claims brought under the Missouri Merchandising Practices Act. IPPs' argument relies on a change in Missouri's legal landscape under *Gibbons,* but other courts have rejected this analysis. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 702 (E.D. Pa. 2014) (rejecting *Gibbons* and holding that "allowing a claim under Missouri's consumer protection law would provide an end-run around the state's prohibition of antitrust claims by indirect purchasers").

### H. IPPs Fail An Applicable Standing Requirement in Seven Jurisdictions.

IPPs respond to this section in a five-and-a-half page single-spaced chart. *See* EUO at 19 n.22. Regardless, their responses miss the mark. IPPs argue only that indirect purchasers can bring claims, and ignore that applicable standing tests can still require dismissal.

IPPs distinguish *Dairy Farmers*, 2015 U.S. Dist. LEXIS 84152, because it does not deal with "*components of the finished goods*" but the court also considered "the remoteness of Plaintiffs' injuries," "the long chain of more-immediate victims," and "the causal chain required to reach Plaintiffs." *Id.* at *50. Both tests are well detailed by Defendants here. *See* DMTD at 5-7.

*Dairy Famers* dismisses state consumer protection claims in Arkansas, California, Florida, and North Carolina because a standing or causation test still applies. *Id.* at 54-65. IPPs cite nothing to the contrary. More specifically: **Arkansas:** *See Dairy Farmers* at *54 (noting "importance of causation under Arkansas law."); *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 384 S.W.3d 540, 552-53 (Ark. Ct. App. 2011) (applying "causal connection" test). **California:** *See Dairy Farmers at *55-59* (the UCL itself "imposes a causation requirement."). IPPs' cited case—*Troyk v. Farmers Grp., Inc.*—requires that under the UCL "a plaintiff therefore must prove the elements for standing to bring a UCL cause of action, including causation[.]" 90 Cal. Rptr. 3d 589, 626 (Cal. Ct. App. 2009). **Florida:** *Dairy Farmers* at *59-61 (the Court "read[s] FDUTPA's causation requirement narrowly so as to preclude injuries that are too remote from the alleged antitrust violation."). IPPs' cited case— *Mack*—holds that antitrust claims can be brought under the FDUTPA, 673 So. 2d 100 (Fla. Ct. App. 1996), but recovery is still limited where injury is tenuous or unprovable. *See Los Gatos* at *33 (acknowledging *Mack* but dismissing FDUTPA claim where IPPs failed to "show that they suffered

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

any injury"). **Nebraska:** IPPs' cited case—*Arthur*—indicates only that indirect purchasers can bring claims under the Nebraska consumer protection statute, while *DRAM II* and *Kanne* show that there remains a standing test they must meet. The *Visa* cases are discussed above, *supra* Section III.B. **New York:** IPPs' case—*Cox*—stands for the proposition that "a plaintiff must prove 'actual' injury to recover under a GBL § 349 claim." IPPs admit that *Spitzer*, and therefore New York state courts, dismiss claims where the alleged harm is only "derivative or incidental"—as Defendants here argue. EUO at 40. **North Carolina:** *Dairy Farmers* at *64-65 ("NCUDTPA's causation requirement [should be read] narrowly"). IPPs' case—*Lindner*—does not address standing or causation but does hold that it is "appropriate to look to the federal decisions interpreting the FTC Act for guidance in construing the meaning of G.S. § 75-1.1." 761 F.2d 162, 166 (4th Cir. 1985). These would include the standing tests cited by Defendants. **Vermont:** Defendants refer to their previous support for the *Visa* cases, but again IPPs cite nothing to argue that a standing test would not apply to the Vermont consumer protection claim.

## VI. THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED

IPPs seek to recast their unjust enrichment claims as quasi-contract claims. See RO at 27. In the Ninth Circuit, quasi-contract is an equitable remedy under which "a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services[.]" *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 2010) (stating that quasi-contract is appropriate where "defendant obtained a benefit from the plaintiff"). Here, IPPs do not identify any "contractual or quasi-contractual relationship" with Defendants and have failed to plead allegations showing IPPs rendered any services or conferred any benefit on Defendants. *See Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009).

IPPs' unjust enrichment claims also suffer additional fatal deficiencies. First, where IPPs' predicate claims fail, their derivative unjust enrichment claims must also fail. *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) (dismissing four unjust enrichment claims where plaintiffs lacked standing); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1378 (S.D. Fla. July 2, 2001) (same); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

January 21, 2010).[29]

Second, IPPs now assert that their claims are autonomous—relying on *In re G-Fees* and *Generics*—but this District requires that they plead the state-specific authority authorizing the independent grounds for their claims, something IPPs concede they have not done. *See Lidoderm*, 103 F. Supp. 3d at 1175 (stating plaintiffs "cannot assert an [autonomous] unjust enrichment claim unless it has support for that proposition from authority in that state"); EUO at 23.[30] Despite the opportunity to amend, IPPs make only sweeping references to "the common law" and statutes of "all states listed in the First and Second Claims." EUSAC ¶¶ 261-62, 353; RSAC ¶¶ 141, 178.

Third, IPPs argue that the direct relationship of the parties is irrelevant and the focus should be on their injury, but their citations prove the opposite. In *TFT-LCD*, the plaintiffs provided evidence showing there were "no intervening events" and that "the money they paid was passed through directly to defendants." 2011 U.S. Dist. LEXIS 110635 at *37. In *Williams v. Wells Fargo Bank, N.A.*, plaintiffs alleged that defendants received "kickbacks and/or commissions . . . taken directly from the insurance premiums paid by Plaintiffs." 2011 U.S. Dist. LEXIS 105513, at *28 (S.D. Fla. Sept. 19, 2011). Here, IPPs' alleged relationship and injury is significantly more attenuated. *See* DMTD at 7.

Finally, IPPs' reliance on *Waldman* is misplaced because the indirect purchaser brought claims against the manufacturer of the *product itself*, but not the manufacturer of an *ingredient* of the purchased product. *Waldman v. New Chapter, Inc*., 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010).[31]

## VII. CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal with prejudice.

---

[29] IPPs cite to *Cardizem*, but in-District opinions have rejected this because "the *Cardizem* court did not hold that indirect purchaser plaintiffs who lacked standing under a state antitrust statute could repackage that claim as an unjust enrichment claim." *TFT-LCD*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) (dismissing unjust enrichment claims where plaintiffs lacked standing).

[30] Similarly, even in state with *Illinois Brick* repealers, plaintiffs must plead the specific state authority authorizing the claim and the facts sufficient to support these claims. *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at 1379 (dismissing all unjust enrichment claims and criticizing plaintiffs for "very poorly pled" claims citing no federal or state statute and only referencing "the common law of each state and the District of Columbia").

[31] Nor is the attenuation concern limited only to New York, as IPPs suggest. *In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427-428 (S.D.N.Y. June 30, 2017) (dismissing Michigan unjust enrichment claim when the parties had no direct interaction and were instead "consumers plaintiffs and a remote manufacturer").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS

Dated: April 5, 2021

Respectfully submitted,

**BAKER & McKENZIE LLP**
Mark H. Hamer
Christina M. Wong
Mark G. Weiss

By: /s/ Mark H. Hamer
　　　Mark H. Hamer
*Attorneys for Defendants NHK Spring Co.,
Ltd., NHK International Corporation, NHK
Spring (Thailand) Co., Ltd., NAT Peripheral
(Dong Guan) Co., Ltd. and NAT Peripheral
(H.K.) Co., Ltd.*

**MORGAN, LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr.
Scott A. Stempel
C. Cecilia Wang

By: /s/ J. Clayton Everett, Jr.
　　　J. Clayton Everett, Jr.
*Attorneys for Defendants TDK Corporation,
Magnecomp Precision Technology Public
Co. Ltd., Magnecomp Corporation, SAE
Magnetics (H.K.) Ltd., and Hutchinson
Technology Inc.*

## ATTESTATION

　　Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories above.

Dated: April 5, 2021　　　　　　　By: /s/ Mark H. Hamer

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

21

Case No. 3:19-md-02918-MMC
JOINT REPLY MEMO IN SUPPORT OF MOTION TO DISMISS END-USER & RESELLER PLTFS' SECOND AMENDED COMPLAINTS