UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: HARD DISK DRIVE
SUSPENSION ASSEMBLIES
ANTITRUST LITIGATION

Case No. 19-md-02918-MMC (KAW)

**ORDER GRANTING, IN PART, MOTION TO COMPEL**

Re: Dkt. No. 382

The instant case concerns an alleged conspiracy by manufacturers of suspension assemblies. (End-User Plaintiffs Second Amended Compl. ("EUP SAC") ¶ 1, Dkt. No. 311.) Suspension assemblies are an indispensable component of computer hard disk drives ("HDDs"). (*Id.*) End-User Plaintiffs ("EUPs") allege that Defendants conspired to price fix and allocate market shares for suspension assemblies by agreeing not to compete and exchanging pricing information to inform their negotiations with customers that purchased suspension assemblies. (EUP SAC ¶ 2.) Defendants sold the suspension assemblies to HDD manufacturers, and EUPs purchased the HDDs (in the form of personal HDD storage devices, enterprise HDD storage systems, and computers) either directly from HDD manufacturers or from resellers (EUP SAC ¶¶ 12, 219, 221.) EUPs allege that Defendants' conspiracy harmed them because they paid higher prices for storage devices and computers, explaining that "when a firm's costs increase due to an overcharge . . . the firm will tend to pass-through the cost increase by raising its price." (EUP SAC ¶¶ 226, 232.)

On August 12, 2021, EUPs filed the instant motion to compel compliance with a subpoena as to third-party Other World Computing, Inc. ("OWC"). (EUP Mot. to Compel, Dkt. No. 382.) On September 8, 2021, OWC filed its opposition. (OWC Opp., Dkt. No. 387.) On September 22, 2021, EUPs filed their reply. (EUP Reply, Dkt. No. 391.)

The Court deems this matter suitable for disposition without a hearing, and VACATES the October 7, 2021 hearing. Having considered the parties' filings and the relevant legal authorities, the Court GRANTS IN PART EUPs' motion to compel.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. "The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b)." *Fujikura Ltd. v. Finisar Corp.*, Case No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *8 (N.D. Cal. May 14, 2015). Rule 26(b), in turn, allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

## II. DISCUSSION

Through the subpoena, EUPs seek two categories of information from OWC: (1) transactional cost and sales data of Standalone Storage Devices (*e.g.*, external/portable HDDs that contain suspension assemblies) and computers (Request Nos. 1 and 11), and (2) documents concerning the relationship between costs and price, the competitiveness of the distribution channel, and product tracking methods (Request Nos. 2-10). (EUP Mot. to Compel at 6, Exh. A.) EUPs explain that this type of information is commonly used by experts to analyze pass-through of overcharges from market players to end users. (EUP Mot. to Compel at 6; Micheletti Decl. ¶¶ 8-10, Dkt. No. 391-1.)

In support, EUPs cite cases that have considered expert studies which used transactional data to determine the pass-through rate. (EUP Mot. to Compel at 3.) For example, in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, the Interim Special Master recommended denying a motion to exclude expert testimony which used 17 years of transactions from large retailers to determine the pass-through rate. MDL No. 1917, 2013 U.S. Dist. LEXIS 137944, at *83 (N.D. Cal. June 20, 2013), *adopted by*, 2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sept. 19, 2013). Likewise, in *In re TFT-LCD Antitrust Litigation*, the district court accepted the expert's pass-through methodology which used transaction data to conduct regression analyses for various products. 267 F.R.D. 583, 603-04 (N.D. Cal. 2010). Finally, in *In re Static Random Access*

*Memory (SRAM) Antitrust Litigation*, the district court explained that third-party transactional data was relevant to the pass-through analysis. 264 F.R.D. 603, 613 (N.D. Cal. 2009) ("Before the incidence of an overcharge can be traced, one must be able to identify the distribution chain and follow transactions down the chain."). Relying on this finding, the special master compelled production of third-party transactional level pricing information, cost data, and product information for SRAM and SRAM-containing components, finding that such information was "clearly relevant to Plaintiffs' claims." No. 07-md-1819-CW, Dkt. No. 967 at 2 (N.D. Cal. Mar. 1, 2010).

Such is the case here, where Plaintiff requires information on how the alleged overcharge was passed through to consumers. To do so requires information on each step of the supply chain, from the initial sale of the suspension assemblies to its final form as HDDs or computers sold to customers. Thus, EUPs require information beyond the initial sale of the suspension assembly to analyze how the inflated costs affected them, including information about products that integrate suspension assemblies.

OWC, however, contends that it does not possess responsive documents because it does not have information about suspension assemblies specifically. (OWC Opp. at 9.) OWC states that it did not purchase or sell suspension assemblies, but rather purchased fully built HDDs which already contained suspension assemblies. (*Id.* at 11.) Thus, OWC asserts that it has no documentation that separately calls out suspension assemblies, that it cannot create a separate accounting for suspension assemblies, and that it has no knowledge of how suspension assembly pricing would affect global HDD pricing. (*Id.* at 11-12.)

The glaring problem with OWC's argument, however, is that EUPs are **not** requesting transactional information about suspension assemblies. EUPs do not suggest that OWC has information about suspension assemblies specifically.[1] Rather, EUPs request transactional data and other information about HDDs and computers that **contain** suspension assemblies, and which OWC does purchase and sell. EUPs do not require information from OWC about the specific

---

[1] Indeed, the subpoena document requests do not even say "suspension assembly."

3

costs of suspension assemblies, a distinction that was repeatedly explained to OWC.  (*See* Bakes Decl., Exhs. 6 at 2, 7 at 2, 11.)  Nor do EUPs require OWC to analyze how the cost of suspension assemblies affected HDD pricing, as OWC repeatedly complains. (*See* OWC Opp. at 3, 8, 11-13.) EUPs simply require transactional data regarding the purchases of HDDs or computers, after which *EUPs* will conduct the relevant analysis.

In the alternative, OWC casts doubt on whether a higher cost of a suspension assembly would be passed onto the consumer.  (OWC Opp. at 10.)  For example, OWC contends that Seagate, who has a pending action against Defendants for the alleged price-fixing conspiracy, does not allege that it passed on its increased costs to consumers.  (*Id.*)  The fact that Seagate does not make such allegations, which are not necessary to their claims, however, is not dispositive here. OWC also points to a declaration by its expert, Sidney Blum, who opines that higher costs of suspension assemblies would not be passed onto consumers given the insignificance of their cost compared with a computer and HDD's end-user sales price.  (Blum Decl. ¶ 27, Dkt. No. 387-3.) As EUPs point out, however, Mr. Blum does not appear to have any experience in antitrust or pass-through analysis.  (EUP Reply at 12.)  Rather, Mr. Blum's primary expertise appears to be audits.  (Blum Decl. ¶¶ 3-8.)  It is also unclear what basis Mr. Blum has for his facts; for example, he states that for a HDD selling for $60, it would be "logical" for the materials to be $10.  (Blum Decl. ¶ 29(i)(c).)  There is no basis for the Court to determine that this is, in fact, "logical." Further, to the extent Mr. Blum simply disagrees with EUP's allegations and expert citations, this is not a persuasive basis for concluding that Plaintiffs' theory of damages is wrong. It is axiomatic that the parties' experts will disagree. That, however, does not preclude discovery based on one party's theory of damages.

OWC also makes a number of cursory arguments, none of which are persuasive.  OWC complains that no single document contains the information EUPs seek, but provides no authority for why production is limited to a "single document."  (*See* OWC Opp. at 7.)   OWC asserts it will be expensive to produce the documents, but this appears to be because OWC was limiting its production to information about suspension assemblies only, thus resulting in unnecessary redactions.  (*See* Bakes Decl., Exh. 10, Dkt. No. 387-1.)  OWC argues that it is not required to

4

create documents, but EUPs are not asking OWC to do so; again, EUPs are requiring that OWC provide documents regarding its own actual transactions, not pull out particular information or analyze how HDD manufacturers determine sales prices. (*See* OWC Opp. at 9.) Finally, OWC contends that EUPs are seeking confidential business information, but fails to explain why the existing protective order is inadequate. (*Id.* at 10.)

Accordingly, the Court finds that OWC must comply with the subpoena. EUPs, however explain that if a third-party produces the transactional cost and sales data requested from Request Nos. 1 and 11, "the documents and data sought by Requests 2-10 can generally be foregone." (Pl.'s Reply at 6.) Thus, because EUPs may not require responses to Requests No. 2-10 at this time, the Court will limit OWC's production to Request Nos. 1 and 11. If OWC's production to Request Nos. 1 and 11 are not sufficient, EUP may file another motion to compel production of Request Nos. 2-10 or a joint discovery letter. Prior to filing a motion or discovery letter, the parties **must** meet and confer as required by the undersigned's standing order, including meeting and conferring in-person or by video conference.[2] (Westmore Standing Order ¶ 13.)

### III.    CONCLUSION

For the reasons stated above, the Court GRANTS, IN PART, EUP's motion to compel. OWC is ORDERED to respond to Request Nos. 1 and 11 within **45 days** of the date of this order. In complying, OWC is **not** to limit its production to suspension assemblies only. Should OWC's production be insufficient, EUPs may file another motion to compel, or the parties may file a joint letter after meeting and conferring in compliance with the undersigned's standing order.

IT IS SO ORDERED.

Dated: October 5, 2021

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] OWC apparently refused to meet and confer by videoconference, asserting that EUP's attempts to meet and confer were "plainly seeking to approximate a deposition of either [OWC] or its counsel regarding [OWC]'s electronic systems and databases." (OWC Opp. at 6.) Such arguments are not well-taken and conflict with the obligation to meet and confer as required by the undersigned's standing order.

5