UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>*Seagate Technology LLC et al. v. Headway Technologies, Inc. et al., Case No. 3:20-cv-01217-MMC* | **JOINT DISCOVERY LETTER BRIEF REGARDING THE RELEVANT TIME PERIOD FOR CERTAIN DISCOVERY REQUESTS**<br><br>Judge:        Hon. Kandis A. Westmore<br>Courtroom: 7, 19th Floor |

Seagate[1] Plaintiffs and Reseller Plaintiffs (hereinafter "Plaintiffs") move to compel Defendant NHK[2] to produce materials and information in response to certain Requests for Production ("RFPs") with an amended Relevant Time Period beginning in 1994. Plaintiffs' discovery requests to NHK in this litigation originally set a Relevant Time Period beginning on January 1, 2003 and a Structured Data Time Period beginning on January 1, 2000. NHK objects on the basis of relevance, overbreadth, prejudice, and timeliness. The parties are at impasse. Per Your Honor's Standing Order, the parties met and conferred telephonically on June 21, 2022, by video conference and in person on July 20, 2022, and by video conference on July 27, 2022, in an attempt to resolve this dispute. Reseller Plaintiffs were unable to attend the July 20, 2022 meet and confers, but are in agreement with Seagate Plaintiffs' position and wish to join in the motion. The parties have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

---

[1] "Seagate" herein comprises Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International.
[2] "NHK" herein comprises Defendants NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.

Dated: July 27, 2022

Respectfully submitted,

| | |
|---|---|
| *s/ Kenneth R. O'Rourke* | *s/ Craig Y. Lee* |
| **WILSON SONSINI GOODRICH & ROSATI** | **HUNTON ANDREWS KURTH LLP** |
| Professional Corporation | Craig Y. Lee (*pro hac vice*) |
| Kenneth R. O'Rourke, SBN 120144 | Carter C. Simpson (*pro hac vice*) |
| Jeff VanHooreweghe, SBN 313371 | Christopher J. Dufek (*pro hac vice*) |
| Mikaela E. Evans-Aziz, SBN 339283 | 2200 Pennsylvania Ave., NW |
| One Market Plaza | Washington, D.C. 20037 |
| Spear Tower, Suite 3300 | Telephone: (202) 955-1500 |
| San Francisco, CA 94105 | Email: craiglee@huntonak.com |
| Telephone: (415) 947-2000 | Email: csimpson@huntonak.com |
| Facsimile: (415) 947-2099 | Email: cdufek@huntonak.com |
| Email: korourke@wsgr.com | |
| Email: jvanhooreweghe@wsgr.com | |
| Email: mevansaziz@wsgr.com | |

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

*s/ Mark H. Hamer*
**BAKER & McKENZIE LLP**
Mark. H. Hamer (State Bar No. 156997)
Mark G. Weiss (*pro hac vice*)
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7077
Email: mark.hamer@bakermckenzie.com
Email: mark.weiss@bakermckenzie.com

*s/ Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
Victoria Sims
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: vicky@cuneolaw.com

*Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co., Ltd.*

*s/ Shawn M. Raiter*
**LARSON • KING, LLP**
Shawn M. Raiter
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
Email: sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the Reseller Plaintiffs*

**Plaintiffs' Position**

**Factual Background**: On May 3, 2022, Plaintiffs learned during a deposition that employees of two Defendant entities (HTI and NHK) began exchanging competitively sensitive information in 1994. The witness revealed that he did this when he worked for HTI in the mid- to late-1990s.

On May 11, 2022, Plaintiffs jointly requested that NHK provide documents and information in response to prior discovery served in this case starting from this exchange of information (1994), rather than 2003. On May 26, 2022, NHK objected primarily on burden and timeliness. On June 21, 2022, the parties met and conferred to try and resolve the issue. On June 30, 2022, in an effort to reach a compromise, Plaintiffs limited their request for information back to 1994 to only certain custodians, RFPs, and Interrogatories ("Rogs"), as highlighted in the attached exhibits.[3]

On July 15, 2022, NHK rejected the compromise, restating its objections. NHK did not offer a counter-proposal. On July 20 and July 27, the parties met and conferred again, but no resolution was reached.

**Plaintiffs Seek Discovery on How the Conspiracy Started and Operated**: This is a conspiracy case. Plaintiffs are seeking discovery on how this conspiracy began. Plaintiffs' complaints allege the conspiracy began "as early as 2003[.]" ECF No. 352 ¶ 5; ECF No. 418 ¶ 162. In recent discovery, Plaintiffs have learned that co-conspirators were colluding to exchange competitively sensitive information from at least as early as 1994. Specifically, a witness admitted in a deposition (on May 3, 2022) that he received competitively sensitive information "directly from . . . competitor[s]" while employed by Defendant HTI. Drahos Dep. 64:14-65:17. He further testified this was "part of [his] job," dating back to at least 1994. *Id*. It is now evident from discovery that the culture of these co-conspirators was to collude, and the direct exchange of competitively sensitive information among competitors was their primary tool for doing so. Plaintiffs ask only for discovery back to the date Plaintiffs understand these exchanges began (1994). Plaintiffs seek this to learn how the conspiracy formed, who participated in it, and how broadly it operated. Plaintiffs seek nothing more.

In a conspiracy case, the duration of the conspiracy dictates the duration of discovery, and courts routinely allow extensive discovery of long-running antitrust conspiracies. *See, e.g.,* Order, *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-1827 (N.D. Cal. May 15, 2008), ECF No. 618 (11-year conspiracy; 15-year discovery period for certain materials); Order, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05955 (N.D. Cal. Nov. 17, 2010), ECF No. 809 (12-year conspiracy; 12-year discovery period for documents, longer for data); *Natcontainer Corp. v. Cont'l Can Co.*, 362 F. Supp. 1094, 1102 (S.D.N.Y. 1973) (allowing rogs spanning 29 years on corporate history of entities participating in conspiracy, finding time period "reasonable . . . under the circumstances"); *United States v. Grinnell Corp.*, 30 F.R.D. 358, 360 (D.R.I. 1962) (extending request for documents that "may be the basis for the alleged violation of the antitrust laws" 54 years prior to date complaint was filed).

In antitrust conspiracy cases in particular, courts routinely allow for broad discovery and even allow discovery *prior* to the alleged conspiracy period warranted for damage purposes. *Cyntegra, Inc. v. IDEXX Labs., Inc.*, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) ("[C]ourts have generally allowed liberal discovery [in antitrust conspiracy cases] to uncover evidence of invidious design, pattern, or intent."); *FTC v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977) ("The discovery rules should normally be liberally construed to permit discovery in antitrust cases. The courts have . . . frequently permitted discovery of information or documents relatively remote in time and in periods prior to the time when recovery may be had."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009

---

[3] *See* Plaintiffs' June 30, 2022 Letter, available upon request. Relevant sections of the RFPs and Rogs are attached as Exs. A and B. Custodians from Plaintiffs' June 30 request are highlighted in Ex. C.

U.S. Dist. LEXIS 134955, at *17-18 (D.D.C. July 13, 2009) ("[P]laintiff is ordinarily permitted to discover defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong."); *Wortman v. Air N.Z.*, 2012 U.S. Dist. LEXIS 131714, at *15-16 (N.D. Cal. Sept. 14, 2012). *See also* 6 Moore's Federal Practice - Civil § 26.45 (2022) (recognizing the importance of discovery prior to the alleged wrongdoing).

Here, Plaintiffs request only that NHK produce a limited amount of additional discovery going back to when it apparently started exchanging competitively sensitive information with competitors. The record continues to be developed, but it is increasingly apparent that NHK started to conspire at least as early as 1994. As examples of the evidence supporting this[4]:

- Mr. Todd Drahos of HTI testified on May 3, 2022 that while employed by HTI from 1987-1999, he tried to obtain competitor price information "directly from [HTI's] competitor[s.]" Drahos Dep. 64:23-65:17; 67:22-25. Mr. Drahos understood "part of [his] job" at HTI "would be to get competitors' price information from . . . competitors[.]" *Id*. at 64:14-21.

- Mr. Skipp Harvey of NHK testified that Mr. Drahos was a "budd[y] at HTI . . . with whom [he] discussed competitive pricing information[.]" Harvey Dep. 201:18-23; 118:2-9. Mr. Harvey began working at NHK in 1994. *Id.* at 17:19-20.

- Mr. Harvey testified it was "standard operating procedure at NHK for NHK employees to exchange NHK confidential information with its competitors[,]" and "to obtain [its] competitors' confidential information[.]" *Id.* at 130:5-12. This standard operating procedure lasted 15 or 20 years, ending in 2016. *Id.*

- Mr. Drahos left HTI in 1999 and began working for Defendant MPT in 2001. Drahos Dep. 67:22-25; 20:1-3. Not long after he joined MPT, Mr. Drahos was again "in touch with [NHK's] Mr. Harvey[.]" *Id.* at 49:14-17. Mr. Drahos indeed understood that as "*part of [his] job*" at MPT he was "expected to obtain competitor price information" from competitors, including from NHK's Mr. Harvey and others. *Id*. at 105:1-21 (emphasis added); 64:14-21.

Given it was "standard operating procedure" and "part of [the] job" for Defendants to exchange competitive information, and Plaintiffs recently learned Mr. Drahos and Mr. Harvey did so starting in the mid-1990s, Plaintiffs seek discovery of more than the depositions of Mr. Drahos and Mr. Harvey. Plaintiffs' discovery request is not unlimited however. Plaintiffs recognize this case is well into discovery, and therefore have limited their request significantly to only 10 of 23 agreed-to custodians, only 11 of 93 RFPs, and only 2 of 26 Rogs. While Plaintiffs believe this is more than reasonable, Plaintiffs told NHK they are willing to further limit their request *for now* to only 9 RFPs (RFPs 3, 17, 18, 20, 25, 52–55) and only 4 custodians (Messrs. Tamura, Hashimoto, Ninomiya, Harvey).[5]

**NHK's Arguments Are Unconvincing**: First, NHK's contention that this discovery is irrelevant and speculative ignores the facts—the facts are that a witness has now admitted to engaging in coordinated activity *with NHK* back to the mid-1990s. This is direct evidence (not speculation) that the conspiracy began then, and directly relevant to prosecuting this conspiracy.

Second, NHK's argument that this discovery is overbroad ignores Plaintiffs' proposed limitations to this discovery request and the relevancy of it. Plaintiffs are not seeking discovery for "historical context" or discovery that "might include some relevant information," as in the cases cited by NHK.

---

[4] Relevant sections of the deposition transcripts cited herein are attached as Ex. D.

[5] On July 20, NHK indicated that it would not accept any proposal, no matter how limited. Nevertheless, Plaintiffs proposed this further limitation to NHK on July 26, and NHK rejected it.

Plaintiffs seek limited discovery on the conspiracy's origination, implementation, and scope, based on direct evidence it originated in the mid-1990s.

Third, NHK objects based on burden. Yet, NHK has never provided specifics or offered a compromise to mitigate its supposed burden. NHK even refused to respond to questions to assess the burden (e.g., what they have already collected pre-2003). NHK's unsubstantiated burden objection should be rejected. *See Elias v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 178546, at *9-10 (N.D. Cal. Dec. 18, 2013) (rejecting "conclusory assertion of undue burden"). Indeed, NHK may not have extensive documents pre-2003 but what they do have is likely highly relevant given the witnesses' testimony.

Finally, NHK's objection on timeliness is misplaced. There has been no delay by Plaintiffs. While prior depositions connected some Defendant employees in the early-2000s, it was Mr. Drahos' testimony—which Plaintiffs sought continuously after subpoenaing him in January 2022 as COVID conditions eased—that revealed Defendants HTI and NHK (at least) were exchanging confidential information in the mid-1990s. This significant new information was learned in May 2022, and Plaintiffs have diligently tried to reach resolution without Court intervention since. Mr. Harvey's testimony did not crystalize the facts as to the conspiratorial conduct having started in the mid-1990s; Mr. Drahos' did. That the case was well into discovery when new information came to light is of no moment. Despite NHKs contention this will prolong the case schedule, Plaintiffs are not seeking to extend the discovery deadline. Plaintiffs seek this discovery for upcoming depositions[6] and trial.

Accordingly, Plaintiffs ask the Court to compel NHK to produce materials as requested on June 30 (and reflected in Exhibits A–C). If the Court is not so inclined, Plaintiffs ask the Court to compel documents from the 9 specified RFPs from the 4 custodians identified above from 1994.

## NHK's Position

With less than three months left in discovery and nearly two years after serving the discovery requests at issue, Plaintiffs seek to expand the Relevant Time Period for document discovery—which already dates back nearly twenty years—by almost another decade. Plaintiffs' request should be denied in its entirety. NHK does not propose a compromise because there is no reasonable compromise to Plaintiffs' patently unreasonable demand.

**Courts have broad discretion over the discovery process.** Discovery is available only when "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). In exercising this discretion, the Court must weigh "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2).

The parties' needs are well-served by the existing 14-year Relevant Time Period that has governed discovery since it began, and Plaintiffs' demand to extend the scope by another nine years should be denied. *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009) ("The orderly case management of complex litigation requires defining the basic contours of the litigation from the outset . . . and directing discovery accordingly in order to avoid runaway costs.").

**Discovery dating back to 1994 is irrelevant and highly speculative.** Plaintiffs' respective complaints concern an alleged conspiracy beginning either in January 2005 or "as early as 2003." *See* ECF No. 311, ¶¶ 13, 132; ECF No. 352, ¶¶ 5, 257, 266, 275, 284; ECF No. 418, ¶¶ 4, 9, 162. Correspondingly, all of Plaintiffs' discovery requests (including End-User Plaintiffs' third set of

---

[6] Three of the four custodians in Plaintiffs' final proposal to NHK have not yet been deposed.

interrogatories served earlier this week) include a Relevant Time Period beginning in 2003—five years earlier than the period covered by the Plea Agreement referenced in Plaintiffs' pleadings.

Pre-2003 discovery simply is not relevant to Plaintiffs' claims and is not important to resolving the issues in the case. Plaintiffs' speculation that such discovery might inform their understanding of "how this conspiracy began" is too thin a reed on which to demand nine years of discovery pre-dating an alleged conspiracy. So too is the testimony underlying this fishing expedition. The deponent Plaintiffs mainly rely on, Todd Drahos, is a former employee of TDK Defendants. Thus, even if pre-2003 documents related to any of the referenced communications exist, they would reside with TDK. Yet Plaintiffs inexplicably direct their demand only to NHK.

Moreover, most of the discovery requests Plaintiffs seek to revive—nine RFPs that include dozens of subparts—are unrelated even to their stated goals. Going well beyond conspiratorial agreements or even competitor communications, the list of RFPs for which Plaintiffs seek decades-old information includes transaction-level sales data (RFP 3), extensive employee personnel information (RFP 54), documents related to price changes, bids and RFQs, sales and supply negotiations (RFPs 17, 18, 20, and 25), and various meetings and communications about HDD Suspension Assemblies untethered to any conspiratorial conduct (RFPs 52, 53, and 55). *See* Ex. A.[7]

**Plaintiffs' request is overly broad.** Expanding the Relevant Time Period by any length—much less nine years—is disproportional to the needs of this case and thus overly broad on its face. *See Kelley v. AW Distrib., Inc.*, No. 20-CV-06942-JSW, 2021 WL 5414322, at *1 n.2 (N.D. Cal. Sept. 3, 2021) (affirming Chief Magistrate Judge Spero's limiting of discovery to 2013 forward, without the need for the defendants to submit evidence of burden, because Judge Spero "was entitled to recognize" that "the [15-year] time frame involved was excessive and was overly broad on its face.").[8] This is so even if there might be *some* relevant information to be gleaned. *See Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370, 2019 WL 10007084, at *1-2 (N.D. Cal. Mar. 20, 2019) (upholding Magistrate Judge Cousins' ruling that plaintiff's requests for three categories of documents over a four-year period were overly broad even if the requested discovery "might include some relevant information . . . given the stated need versus the burden and the context of where [the case was] in discovery"); *Metzger v. Am. Fidelity Assur. Co.*, No. 05-1387, 2007 WL 3274934, at *1 (W.D. Okla. Oct. 23, 2007) (a discovery window "dating back twenty five years is overly-broad").

NHK has already produced more than half a million responsive documents spanning a fourteen-year period (and even longer for certain categories of documents). The incremental benefit of reaching back an additional nine years is outweighed by the burden of that exercise. Indeed, Plaintiffs tie their expansive requests to alleged communications involving a single NHK witness whose testimony reveals that even an exhaustive search is unlikely to yield any new documentary evidence: Mr. Harvey testified that he exchanged information with Mr. Drahos over the phone and in person, but did not recall *ever* doing so via email. *See* Ex. E.[9] None of the other deposition excerpts Plaintiffs rely upon suggest that any documents would be available. Nor do any of the excerpts mention the other NHK custodians Plaintiffs seek information from. The burden of requiring NHK to embark on a search stretching back nearly 30 years outweighs any minimal expected benefit to Plaintiffs. Mr. Harvey's

---

[7] The interrogatories at issue (although essentially removed from issue by Plaintiffs on July 26, 2022) were served by EUPs, but EUP's notably do not join in the instant motion. *See* Ex. B.

[8] Indeed, even determining all potential sources of responsive materials, the volume of such materials, and their dates would require an extensive investigation that itself would be unduly burdensome.

[9] None of the cited testimony supports Plaintiffs' bold assertion that "NHK started to conspire at least as early as 1994." Plaintiffs' extrapolation is evident from a reading of the actual testimony in Ex. D.

testimony also shows that the information Plaintiffs seek is available by other means: NHK has not objected to Plaintiffs' questions to deponents concerning pre-2003 conduct, and will not object to similar questions in future depositions on timeliness grounds.

The cases cited by Plaintiffs above actually support NHK's position. In *Flat Panel Antitrust Litig.*, the Court allowed discovery two years before a DOJ subpoena. 3:07-cv-1827 at ECF No. 618. Here, the Relevant Time Period already pre-dates the charged conspiracy by more than five years. In *Natcontainer Corp.*, the complaint alleged a conspiracy beginning in 1945, and interrogatories were allowed back to 1944. 362 F. Supp. at 1102. In *Grinnell Corp.*, the court limited discovery of "all documents that pertain to relations between these defendants, either amongst themselves or with competitors . . . to a period of ten years prior to the filing of th[e] action." 30 F.R.D. at 360. In *Cyntegra, Inc.*, the court found that "defendant[s] should not be subjected to discovery from unreasonably remote time periods," and denied plaintiff's request for discovery dating back 22 years. 2007 WL 9701999, at *5. In *Lukens Steel Co.*, the court noted that the defendant "should not be subjected to discovery of documents from unreasonably remote time periods," but allowed the requested discovery because the 60 documents at issue "at the most, antedate[d] the institution of th[e] action by twelve and a half years." 444 F. Supp. at 806. In *Rail Freight Fuel Surcharge Antitrust Litig.*, the court noted "the experience of the bench and bar that the older the data the greater the likelihood that the search will be more expensive" and limited the discovery sought—which dated back less than ten years—to a very narrow category of documents. 2009 U.S. Dist. Lexis 134955, at *22-23. In *Wortman*, the court allowed discovery that pre-dated the alleged conspiracy, but dated back less than six years from when the complaint was filed. 2012 U.S. Dist. Lexis 131714, at *15-16.[10] Plaintiffs have not mustered a single case allowing broad, pre-conspiracy discovery dating back nearly three decades for the simple reason that such discovery is not within the ambit of Rule 26.

**Extending the Relevant Time Period would cause undue prejudice and delay.** Fact discovery has been ongoing since May 14, 2020, and closes on October 21, 2022. The parties are in the midst of taking dozens of multi-day depositions over a three-month period. Expanding the Relevant Time Period by nearly a decade at this point will unduly prejudice NHK. *See Ambat v. City & County of San Francisco*, No. C 07-03622, 2009 WL 3045937, at *2 (N.D. Cal. Sept. 18, 2009) (finding that plaintiffs' new claims would unduly prejudice defendants by expanding the liability period at issue by almost a year near the end of the discovery period).

Although their request is overbroad in any event, Plaintiffs' unreasonable delay in seeking to expand the Relevant Time Period following Mr. Harvey's deposition warrants denial of their motion. *See Oracle USA, Inc.*, 264 F.R.D. at 544 ("Fundamental fairness as well as effective case management require that damages discovery not be dramatically expanded at this late date; otherwise, this already complex case may never be ready for trial."). Having already been revised twice,[11] the scheduling order would require another revision extending discovery, cutting against securing a "just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1. For all these reasons, this Court should reject Plaintiffs' demand to extend the Relevant Time Period.

---

[10] ECF No. 809 in Civil Action No. 07-cv-5944 does not contain the information asserted by Plaintiffs, but a 12-year discovery period for a 12-year conspiracy supports NHK's position.

[11] When EUPs and Reseller Plaintiffs requested that the schedule be extended in May, Mr. Drahos's deposition had already taken place (and Mr. Harvey's deposition had concluded more than seven months earlier). Plaintiffs did not inform the Court either in the May 13, 2022 Joint Case Management Statement (ECF No. 497) or during the May 20, 2022 case management conference (ECF No. 500) of their plans to seek to expand the scope of discovery by more than 60%.

Dated: July 27, 2022

Respectfully submitted,

| | |
|---|---|
| *s/ Kenneth R. O'Rourke* | *s/ Craig Y. Lee* |
| **WILSON SONSINI GOODRICH & ROSATI** | **HUNTON ANDREWS KURTH LLP** |
| Professional Corporation | Craig Y. Lee (*pro hac vice*) |
| Kenneth R. O'Rourke, SBN 120144 | Carter C. Simpson (*pro hac vice*) |
| Jeff VanHooreweghe, SBN 313371 | Christopher J. Dufek (*pro hac vice*) |
| Mikaela E. Evans-Aziz, SBN 339283 | 2200 Pennsylvania Ave., NW |
| One Market Plaza | Washington, D.C. 20037 |
| Spear Tower, Suite 3300 | Telephone: (202) 955-1500 |
| San Francisco, CA 94105 | Email: craiglee@huntonak.com |
| Telephone: (415) 947-2000 | Email: csimpson@huntonak.com |
| Facsimile: (415) 947-2099 | Email: cdufek@huntonak.com |
| Email: korourke@wsgr.com | |
| Email: jvanhooreweghe@wsgr.com | *s/ Mark H. Hamer* |
| Email: mevansaziz@wsgr.com | **BAKER & McKENZIE LLP** |
| | Mark. H. Hamer (State Bar No. 156997) |
| ***Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*** | Mark G. Weiss (*pro hac vice*) |
| | 815 Connecticut Avenue, NW |
| | Washington, D.C. 20006 |
| | Telephone: (202) 452-7077 |
| | Email: mark.hamer@bakermckenzie.com |
| | Email: mark.weiss@bakermckenzie.com |
| *s/ Victoria Sims* | |
| **CUNEO GILBERT & LADUCA, LLP** | ***Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co., Ltd.*** |
| Victoria Sims | |
| 4725 Wisconsin Avenue, NW, Suite 200 | |
| Washington, DC 20016 | |
| Telephone: (202) 789-3960 | |
| Facsimile: (202) 789-1813 | |
| Email: vicky@cuneolaw.com | |

*s/ Shawn M. Raiter*
**LARSON • KING, LLP**
Shawn M. Raiter
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
Email: sraiter@larsonking.com

***Interim Co-Lead Class Counsel for the Reseller Plaintiffs***

**ATTORNEY ATTESTATION**

I, Kenneth R. O'Rourke, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*s/ Kenneth R. O'Rourke*
Kenneth R. O'Rourke