MORGAN, LEWIS & BOCKIUS LLP
Michelle Park Chiu (State Bar No. 248421)
michelle.chiu@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

MORGAN, LEWIS & BOCKIUS LLP
J. Clayton Everett, Jr. (*pro hac vice*)
clay.everett@morganlewis.com
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants TDK Corporation,
Magnecomp Precision Technology Public Co.
Ltd., Hutchinson Technology Inc., and SAE
Magnetics (H.K.) Ltd.*

HUNTON ANDREWS KURTH LLP
Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Telephone: (213) 532-2103
Facsimile: (213) 532-2020

HUNTON ANDREWS KURTH LLP
Craig Y. Lee (*pro hac vice*)
craiglee@huntonak.com
Christopher J. Dufek (*pro hac vice*)
cdufek@huntonak.com
2200 Pennsylvania Ave., NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Attorneys for Defendants NHK Spring Co., Ltd.,
NHK International Corporation, NHK Spring
(Thailand) Co., Ltd., NAT Peripheral (Dong
Guan) Co., Ltd., and NAT Peripheral (H.K.)
Co., Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>FLEXTRONICS ACTION<br><br>CASE NO. 3:22-CV-02798-MMC | CASE NO.: 3:19-MD-02918-MMC<br><br>MDL NO. 2918<br><br>**DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT**<br><br>Date:     November 4, 2022<br>Time:     9:00 am<br>Crtrm:   7, 19th Floor<br>Before:   The Hon. Maxine M. Chesney |

1

## NOTICE OF MOTION AND MOTION

2     PLEASE TAKE NOTICE that on November 4, 2022, at 9:00 am, or as soon thereafter as

3  the matter may be heard in Courtroom 7, located on the 19th Floor of this Court, 450 Golden Gate

4  Avenue, San Francisco, CA 94102, before the Hon. Maxine M. Chesney, Defendants TDK

5  Corporation, Magnecomp Precision Technology Public Co. Ltd., Hutchinson Technology Inc.,

6  and SAE Magnetics (H.K.) Ltd. (collectively, the "TDK Defendants") and Defendants NHK

7  Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT

8  Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd. (collectively, the "NHK

9  Defendants"), will and hereby do move the Court to dismiss all counts in the Amended Complaint

10 filed by Flextronics International USA, Inc. ("Flex"), ECF No. 561 (redacted version filed as ECF

11 No. 540), pursuant to Federal Rule of Civil Procedure 12(b)(6).

12    This Motion seeks dismissal of all claims asserted against all Defendants.

13    This Motion is supported by the accompanying Memorandum of Points and Authorities,

14 the [Proposed] Order, Request for Judicial Notice, and Declaration of Michelle Park Chiu and

15 exhibits thereto filed herewith, the pleadings and papers on file herein, and such other matters that

16 may be presented to the Court at the hearing.

17

## STATEMENT OF ISSUES TO BE DECIDED

18    1.     Whether Flex's claims under the California and Tennessee antitrust laws are

19 barred by applicable statutes of limitation.

20

21

22

23

24

25

26

27

28
                                                                            3:19-MD-02918-MMC

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT .................................................................................................................. 5

    I.    Flex's Claims Are Barred by Applicable Statutes of Limitations........................... 5

          A.    Flex's California Law Claims Are Time-Barred. ....................................... 6

          B.    Flex's Tennessee Law Claim Is Time-Barred............................................ 7

    II.    None of the Tolling Doctrines Flex Alleges Apply. ............................................. 10

          A.    The Continuing Violation Doctrine Does Not Toll Flex's Claims. .......... 10

          B.    The Fraudulent Concealment Doctrine Is Inapplicable. .......................... 12

          C.    Earlier Class Actions Filed Against Defendants Do Not Save Flex's
              Claims. ..................................................................................................... 14

              i.    Flex's Claims Were Not Tolled by the Reseller Complaint. ........ 14

              ii.    End-User Class Complaints Cannot Save Most of Flex's
                   Claims. ............................................................................................ 17

              iii.    Flex's Tennessee Claim Was Time-Barred Prior to Any
                   Class Actions.................................................................................. 18

CONCLUSION............................................................................................................. 19

ATTORNEY ATTESTATION ...................................................................................... 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Alakayak v. Brit. Columbia Packers, Ltd.*,
    48 P.3d 432 (Alaska 2002) ............................................................................................. 12

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    No. CV 14-3053-MWF(VBKX), 2015 WL 12777091
    (C.D. Cal. Feb. 12, 2015) ............................................................................................. 11

*Alsbrook v. Concorde Career Colleges, Inc.*,
    469 F. Supp. 3d 805 (W.D. Tenn. 2020) ................................................................. 10, 11

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................................. 14, 16

*In re Animation Workers Antitrust Litig.*,
    123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................................ 13

*In re Animation Workers Antitrust Litig.*,
    87 F. Supp. 3d 1195 (N.D. Cal. 2015) ....................................................... 6, 11, 13, 14

*Arctic Slope Native Ass'n, Ltd. v. Sebelius*,
    583 F.3d 785 (Fed. Cir. 2009) ...................................................................................... 15

*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal. 4th 1185 (2013) ............................................................................................ 6, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    27 F. Supp. 3d 1015 (N.D. Cal. 2014) .......................................................................... 16

*City of El Paso v. Darbyshire Steel Co.*,
    575 F.2d 521 (5th Cir. 1978) .......................................................................................... 7

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
    858 F.2d 499 (9th Cir. 1988) ........................................................................................ 13

*Crown, Cork & Seal Co. Inc. v. Parker*,
    462 U.S. 345 (1983) ...................................................................................................... 16

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
    85 F. Supp. 3d 1007 (E.D. Wis. 2015) ........................................................................... 8

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) .......................................................................... 6

*Hakimi v. Societe Air France, S.A.*,
    No. 18-cv-01387-JSC, 2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) ........................................ 6

*In re HDD Suspension Assemblies Antitrust Litig.*,
    2020 WL 6270948 (N.D. Cal. Oct. 23, 2020) .......................................................... 5, 11, 17

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ................................................................................... 13

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ....................................................................................... 6

*John Kohl & Co. P.C. v. Dearborn & Ewing*,
    977 S.W.2d 528 (Tenn. 1998) ..................................................................................... 8

*Johnson v. Craycraft*,
    914 S.W.2d 506 (Tenn. Ct. App. 1995) ....................................................................... 8

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) .............................................................................................. 6, 12

*Levine v. March*,
    266 S.W.3d 426 (Tenn. Ct. App. 2007) ....................................................................... 8

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) .................................................................................. 8

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ..................................................................................... 11

*Palmer v. Stassinos*,
    236 F.R.D. 460 (N.D. Cal. 2006) .............................................................................. 17

*In re Pre-Filled Propane Tank Antirust Litig.*,
    No. 14-02567-MD-W-GAF, 2019 WL 4796528 (W.D. Mo. Aug. 21, 2019) ............... 5, 7, 11

*Ralston v. Hobbs*,
    306 S.W.3d 213 (Tenn. Ct. App. 2009) ....................................................................... 8

*Redwing v. Cath. Bishop for Diocese of Memphis*,
    363 S.W.3d 436 (Tenn. 2012) ..................................................................................... 9

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015) ....................................................................... 13

*Snow v. Align Tech., Inc.*,
    No. 21-CV-03269-VC, 2022 WL 468704 (N.D. Cal. Feb. 16, 2022),
    *supplemented*, No. 21-CV-03269-VC, 2022 WL 468703 (N.D. Cal. Feb. 16, 2022) .............. 6

*State of Colo. ex rel. Woodard v. Goodell Bros.*,
   CIV.A. 84-A-803, 1986 WL 5073 (D. Colo. Apr. 23, 1986)....................................................... 7

*Stone v. Hinds*,
   541 S.W.2d 598 (Tenn. Ct. App. 1976) .................................................................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   C 11-2225 SI., 2012 WL 149632 (N.D. Cal. Jan. 18, 2012)................................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 12-4114 SI., 2013 WL 254873 (N.D. Cal. Jan. 23, 2013)........................................... 16

*In re Wells Fargo Mortgage-Backed Certificates Litig*,
   No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ............................... 16

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) ................................................................................ 10

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................................ 17, 18

Cal. Bus. Prof. Code § 16750.1 ................................................................................................... 5, 6

Cal. Bus. Prof. Code § 16755(b) ................................................................................................. 5, 6

Cal. Bus. Prof. Code § 17208 ...................................................................................................... 5, 6

Sherman Act § 1 .............................................................................................................................. 8

Tenn. Code Ann. § 28-3-105(3) .................................................................................................... 5, 7

Tenn. Code Ann. § 47-25-101 ...................................................................................................... 5, 7

**Rules**

Fed. R. Civ. P. Rule 9(b) ............................................................................................................... 13

Fed. R. Civ. P. Rule 12(b)(6) ....................................................................................................... 1, 6

**Other Authorities**

*Hutchinson Technology says U.S. DOJ has opened an investigation relating to
   sale of suspension assemblies*, REUTERS, July 27, 2016, available at
   https://www.reuters.com/article/idINASC08YWS ............................................................. 4, 9

*The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the
   Manufacturers of Suspension for Hard Disk Drives*, JFTC, February 9, 2018,
   available at https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/
   180209.html .................................................................................................................... 4, 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

*TDK, NHK Spring searched over alleged price cartel*, THE JAPAN TIMES, July 26,
    2016, available at
    https://www.japantimes.co.jp/news/2016/07/26/business/corporate-
    business/tdk-nhk-spring-searched-alleged-price-cartel/ ....................................................... 4, 8

*US: Hutchinson cooperating with DOJ in hard drive investigation*, COMPETITION
    POLICY INTERNATIONAL, July 31, 2016, available at
    https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-
    with-doj-with-hard-drive-investigation ..................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   Flex filed its Complaint on May 11, 2022 ("Initial Complaint"), seeking damages for

3   purchases of HDDs it made more than a decade ago. ECF No. 499-1. On August 5, 2022, Flex

4   filed an Amended Complaint seeking the same relief.[1] Flex's Initial Complaint was filed more

5   than four years after the Japan Fair Trade Commission ("JFTC") issued a public cease-and-desist

6   order addressed to NHK Spring Co., Ltd. ("NHK Spring") and NAT Peripheral (H.K.) Co., Ltd.

7   ("NAT H.K.") concerning the conduct at issue, and nearly six years after government

8   investigations of Defendants were widely reported. Flex's claims for damages under California

9   and Tennessee law are untimely, barred by the four-year and three-year statutes of limitation

10  applicable, respectively, to those claims. Flex's Amended Complaint should be dismissed.

11  Flex's California claims accrued, and the statute of limitations clock began to run on those

12  claims, when Flex made the purchases of HDDs that it alleges caused it injury. Those claims are

13  subject to a four-year statute of limitations period; and so any purchases allegedly giving rise to

14  claims for damages before May 11, 2018, are time-barred. Flex has only made conclusory

15  allegations that it suffered injuries after May 11, 2018, so its California claims should be

16  dismissed in their entirety.

17  Flex's Tennessee claim accrued when Flex was aware, or should have been aware, of the

18  facts underlying its Complaint. That claim is subject to a three-year statute of limitations period,

19  so if Flex was or should have been aware of facts sufficient to at least exercise a duty of inquiry

20  on its part before May 11, 2019, then its Tennessee claim is time-barred. Here, there was

21  widespread information publicly available that should have put Flex on notice of its claim well

22  before 2019.

23  Recognizing the facial untimeliness of its claims, Flex alleges three arguments in an

24  attempt to avoid the limitations bar. All are unavailing.

25  First, Flex alleges that Defendants' conduct is subject to the "continuing violation"

26  doctrine.  But that doctrine does not apply to antitrust claims, as to which there are independent

27

28  [1] Flex filed a redacted version of the Amended Complaint on August 5, 2022. ECF No. 540. The unredacted Amended Complaint was filed on August 25, 2022. ECF No. 561.

1  causes of action for each injury. Even if the continuing violations doctrine did apply to antitrust

2  claims, Flex has not asserted plausible factual allegations that any conspiracy continued into the

3  limitations periods.

4       Second, Flex alleges that the statutes of limitations were tolled by the "fraudulent

5  concealment doctrine." But that doctrine does not allow tolling after the plaintiff was on notice of

6  the alleged wrong, as was the case here. Flex had at least constructive notice of the facts

7  underlying its claims more than four years before it filed its Complaint.

8       Third, Flex asserts that class actions filed by Resellers and End-User plaintiffs tolled the

9  statutes of limitations applicable to Flex's claims. That assertion is incorrect. The Reseller class

10  actions did not toll Flex's claims because (a) Flex is not a member of the putative Reseller class,

11  and (b) the Reseller class complaints do not contain any claims parallel to the Flex Tennessee

12  claim. The vast majority of Flex's purchases underlying its claims likewise fall outside the scope

13  of the End-User complaint, as they were, according to Flex, made for the purpose of

14  manufacturing other products, such that Flex was not the "end-user" of the purchased products.

15  And there are no allegations that would permit the inference that the limited purchases Flex

16  alleges it made for its "own use" would put a sufficient amount in controversy to satisfy the

17  requirements for diversity jurisdiction. Further, with respect to Flex's Tennessee law claims, the

18  applicable statute of limitations period had already expired prior to the filing of any class action

19  lawsuits.

20                                    **BACKGROUND**

21       Flex's Complaint alleges a series of conspiracies by and among Defendants to "fix, raise,

22  stabilize, and maintain prices of and allocate market shares for Hard Disk Drive ("HDD")

23  suspension assemblies." Am. Compl., ECF No. 561, ¶ 1. HDD suspension assemblies are one of

24  many components used to make HDDs. *Id.* ¶ 2. HDDs are data storage devices that can be

25  purchased as stand-alone devices or incorporated into computers, business information systems,

26  and other products. *Id.* Flex states that it purchased HDDs from HDD manufacturers "for the

27  primary purpose of manufacturing electronic products for United States-based customers and by

28  United States End-Users." *Id.* ¶ 29; *see id.* ¶¶ 215-217.  Flex also alleges it "purchased HDDs for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

1    its own use." *Id.* ¶ 29.

2          Flex claims that the alleged conspiracy began as "early as 2003 through the time the

3    alleged anticompetitive effects of Defendants' conduct ceased." *Id.* ¶ 1. Flex further asserts,

4    without substantiation, that the "illegal conduct alleged herein is continuing and there is no

5    indication that Defendants will not continue such activity into the future." *Id.* ¶ 273. But the latest

6    conduct alleged in the Complaint was in 2016. *See id.* ¶¶ 84, 88, 98, 172. Flex's last purchase of

7    HDDs that were purportedly affected by the conduct alleged was made even earlier—in 2012. *See*

8    *id.* ¶¶ 210-214 (listing HDD purchases Flex and its affiliates made in 2008 through 2012). Flex

9    claims that it purchased "HDDs incorporating Defendants' HDD suspension assemblies in every

10   year since at least 2003 and through the present," but provides no evidence of such purchase after

11   2012. *Id.* ¶ 30; *see id.* ¶ 202.

12         There are several other pending class actions alleging the same overarching conspiracy,

13   under different antitrust laws, as Flex alleges in its Complaint. *See id.* ¶ 20. The earliest cases

14   were filed in July 2019, more than three years after the announcement of government

15   investigations into Defendants' conduct.[2] Additional class actions followed,[3] and many were

16   consolidated in this MDL. ECF Nos. 1 & 2. None of the complaints that are part of this MDL

17   allege any conduct by Defendants after mid-2016, which is when the JFTC and DOJ

18   investigations began.[4]

19
     _____

20   [2] *Elmazi v. TDK Corporation, et al.*, No. 3:19-cv-12244 (E.D. Mich.) (filed in July 2019);
     *Integrity Financial Services of Tampa Bay, Inc., et al. v. NHK Spring Co. Ltd., et al.*, No. 3:19-

21   cv-12258 (E.D. Mich.) (filed in July 2019).

22   [3] *E.g., CMP Consulting Services, INC. v. NHK Spring Co. Ltd., et al.*, No. 3:19-cv-12337 (E.D.
     Mich.) (filed in August 2019); *Cimino, et al. v. Headway Technologies, Inc., et al.*, No. 1:19-cv-

23   07428 (S.D.N.Y.) (filed in August 2019).

24   [4] *See* ECF No. 311, End-User Plaintiffs' Second Amended Consolidated Class Action Complaint,
     at ¶ 13 ("Plaintiffs seek to represent all persons and entities who, during the period from January

25   2005 through at least May 2016 (the 'Class Period'), indirectly purchased Standalone Storage
     Devices or Computers, not for resale, which included HDD suspension assemblies that were

26   manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-
     conspirator of Defendants."); ECF No. 418, Reseller Plaintiffs' Third Consolidated Amended

27   Complaint, at ¶ 135 (The latest conspiratorial conduct alleged in the complaint was in 2015.);
     ECF No. 331-3, Seagate Plaintiffs' Second Amended Complaint for Damages and Other Relief,

28   at ¶ 5 ("Specifically, Defendants agreed to fix the prices and allocate market shares of suspension

                                        3                          3:19-MD-02918-MMC

In July 2016, the JFTC raided both Defendants TDK and NHK on the suspicion that the two companies were fixing the prices of HDD suspension assemblies.[5] Around the same time, the DOJ also opened an investigation into Defendants relating to the sale of HDD suspension assemblies in the United States.[6] Both the JFTC and DOJ investigations were widely publicized.

On February 9, 2018, the JFTC issued a cease-and-desist order to NHK Spring and NAT H.K., finding that they, along with TDK Corporation, SAE Magnetics (H.K.) Ltd., and Magnecomp Precision Technology Public Co., Ltd., "substantially restrained competition" in the market of HDD suspensions for Japanese HDD manufacturers by entering into price-maintenance agreements.[7]

While other complaints filed in the MDL expressly acknowledge the JFTC and DOJ investigations,[8] Flex's Complaint studiously avoids allegations concerning these government

---

assemblies sold to Seagate from as early as 2003 through at least April 2016 with the effects continuing thereafter (the 'Conspiracy Period.').").

[5] *See* Declaration of Michelle Park Chiu in Support of Defendants' Motion to Dismiss and Request for Judicial Notice ("Chiu Decl.") Ex. A, *TDK, NHK Spring searched over alleged price cartel*, THE JAPAN TIMES, July 26, 2016, available at https://www.japantimes.co.jp/news/2016/07/26/business/corporate-business/tdk-nhk-spring-searched-alleged-price-cartel.

[6] Chiu Decl. Ex. B, *Hutchinson Technology says U.S. DOJ has opened an investigation relating to sale of suspension assemblies*, REUTERS, July 27, 2016, available at https://www.reuters.com/article/idINASC08YWS; Chiu Decl. Ex. C, *US: Hutchinson cooperating with DOJ in hard drive investigation*, COMPETITION POLICY INTERNATIONAL, July 31, 2016, available at https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation.

[7] ECF No. 228-2, Ex. A to Declaration of Aaron M. Sheanin in Opposition to Defendant SAE Magnetics (H.K.) Ltd.'s Motion to Dismiss Complaints for Lack of Personal Jurisdiction (JFTC Cease and Desist Order); *see also* Chiu Decl. Ex. D, *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufacturers of Suspension for Hard Disk Drives*, JFTC, February 9, 2018, available at https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html.

[8] *See* Seagate Plaintiffs' Complaint, No. 3:20-cv-01217 (N.D. Cal.), ECF No. 1, at ¶ 126 (acknowledging "the public announcement of the JFTC investigation in July 2016"); *id.* ¶ 83, nn. 15-16 (discussing the JFTC's cease-and-desist order and related press releases from February 2018); *id.* ¶ 13 (alleging that the Administrative Council for Economic Defense in Brazil ("CADE") issued a Technical Report regarding its investigation in April 2018); Seagate Plaintiffs' Second Amended Complaint, ECF No. 331-3, at ¶ 245; *id.* ¶ 90, nn. 25-26; *id.* ¶ 19; Reseller Plaintiffs' Corrected Consolidated Amended Complaint, ECF No. 190, at ¶ 58 (citing CADE's Technical Report from April 2018); Reseller Plaintiffs' Third Consolidated Amended

4                                        3:19-MD-02918-MMC

1   investigations and their findings. Instead, Flex notes that NHK Spring was charged by the DOJ

2   and pled guilty in 2019 and its executives indicted in 2020. *See* Am. Compl. ¶¶ 6, 133, 231, 247.

3   These events occurred years after the JFTC and DOJ investigations were made public.

4         Flex did not and does not buy HDD suspension assemblies; rather, it bought HDDs

5   containing HDD suspension assemblies. *See id.* ¶¶ 28-30. And the most recent purchases of those

6   HDDs alleged in the Complaint were made between 2008 and 2012. *Id.* ¶¶ 210-214. Flex does not

7   specify which products it purportedly purchased at "supracompetitive" prices as a result of

8   Defendants' conduct after 2012, nor does it identify the time period in which it made such

9   purchases. This Court has already found that there are no plausible allegations of any continuing

10  misconduct after 2016 when it dismissed plaintiffs' claims for injunctive relief. *In re HDD*

11  *Suspension Assemblies Antitrust Litig.*, 2020 WL 6270948, at *3 (N.D. Cal. Oct. 23, 2020), ECF

12  No. 282 (Order dismissing End-User Plaintiffs' and Reseller Plaintiffs' complaints).

13                          **ARGUMENT**

14  **I.**     **Flex's Claims Are Barred by Applicable Statutes of Limitations.**

15        Flex asserts claims for damages and other relief under California and Tennessee state

16  antitrust and unfair practices statutes. All of these claims are subject to either a four-year

17  limitation period (the California claims)[9] or a three-year limitation period (the Tennessee claim).[10]

18  Since Flex's claims accrued outside the applicable limitation periods—i.e., before May 11, 2018,

19      Complaint, ECF No. 418, at ¶ 69;  End-User Plaintiffs Consolidated Class Action Complaint,

20  ECF No. 167, at ¶¶ 113-15 n.32 (discussing public information contained in the press release
    regarding the JFTC's cease-and-desist order from February 2018 and citing NHK Spring's 2018

21  Annual Report discussing the order); *id.* ¶ 116-17, n.33 (alleging facts from and citing CADE's
    Technical Report from April 2018); End-User Plaintiffs Second Amended Complaint, ECF No.

22  311, at ¶ 174, 176 n.42.

23  [9] California Cartwright Act, Cal. Bus. & Prof. Code, §§ 16750.1, 16755(b); California Unfair
    Competition Law ("UCL"), Cal. Bus. & Prof. Code, § 17208.

24  [10] Tenn. Code Ann. § 47-25-101; *see also In re Pre-Filled Propane Tank Antirust Litig.*, Master

25  Case No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) ("[T]he
    statute of limitations for TTPA [(Tennessee Trade Practices Act)] claims is not specifically

26  codified amongst the other antitrust statutes. Rather, claims under the TTPA are governed by a
    three-year statute of limitations as claims 'based upon the alleged violation of any federal or state

27  statute creating monetary liability for personal services rendered ... when no other time of
    limitation is fixed by the statute creating such liability.' Tenn. Code Ann. § 28-3-105(3).").

28

for claims subject to a four-year statute of limitations—they are facially untimely. Where, as here,

the running of the statute of limitations "is apparent on the face of the complaint," claims must be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Hakimi v. Societe Air

France, S.A.*, No. 18-cv-01387-JSC, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018) (quoting

*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

## A.    Flex's California Law Claims Are Time-Barred.

Flex's California law claims are brought under the Cartwright Act and the Unfair

Competition Law ("UCL"). California courts have held that, consistent with federal antitrust law,

a Cartwright Act claim accrues at the time injury occurs, not at the time of discovery. *See, e.g.*,

*Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1064-65 (N.D. Cal. 2016). UCL claims likewise

accrue at the time of injury.[11] *See In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195,

1210-11 ("Plaintiffs' UCL claim based on Defendants' alleged anticompetitive conduct also

began to accrue at the time Plaintiffs suffered their injury.").  Both statutes are subject to four-

year statutes of limitations that bar claims filed more than four years after they accrued.[12]

Here, Flex alleges three different types of conspiracies: price fixing, market allocation,

and bid rigging. Am. Compl. ¶¶ 1, 14. A new price-fixing claim accrues for statute of limitations

purposes each time a plaintiff purchases a product at a price allegedly fixed or maintained by

defendants. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (each wrongful sale to

plaintiff has an independent four-year statute of limitations that begins to run from the date of

sale). Similarly, a market allocation claim accrues each time a plaintiff purchases a product at a

price inflated as a result of a market allocation agreement. *See Snow v. Align Tech., Inc.*, No. 21-

CV-03269-VC, 2022 WL 468704, at *4 (N.D. Cal. Feb. 16, 2022), *supplemented*, No. 21-CV-

---

[11] The discovery rule may apply to UCL claims in limited circumstances, though not here. *See In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1210-11 (N.D. Cal. 2015) (discussing *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013)) ("*Aryeh* court explained that the 'UCL is a chameleon,' and that the discovery rule might be appropriate for misrepresentation or fraud claims, but not in unfair competition claims."). Even if the discovery rule applies here, for the reasons described *infra* in relation to Flex's Tennessee claims, Flex's claims are still barred.

[12] California Cartwright Act, Cal. Bus. & Prof. Code, §§ 16750.1, 16755(b); California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, § 17208.

03269-VC, 2022 WL 468703 (N.D. Cal. Feb. 16, 2022) (holding that the accrual rule for price-fixing claims applies to market allocation claims "with equal force.").

Flex claims that it purchased billions of dollars of HDDs incorporating HDD suspension assemblies from various HDD manufacturers at prices that were artificially inflated as a result of the price-fixing and market allocation conspiracy between Defendants. Am. Compl. ¶¶ 15, 201. But the most recent purchase of HDDs Flex purportedly made took place in 2012, a decade before Flex filed its Complaint. *Id.* ¶¶ 212, 214. Moreover, though Flex claims that Defendants are continuing to engage in unlawful conduct, the latest conspiratorial conduct Flex identifies in its Complaint was in 2016, well before May 11, 2018. *See id.* ¶¶ 84, 88. Flex does not allege that it purchased any HDDs at inflated prices after 2012, nor does it allege that there were any unlawful agreements between Defendants relating to the sale of HDD suspension assemblies after 2016. As such, all of Flex's price-fixing and market allocation conspiracy claims should be dismissed as untimely.

Flex also alleges that Defendants allocated the HDD market through "coordinated bids" to two HDD manufacturers, Western Digital and Seagate. *Id.* ¶ 5. Antitrust claims arising from alleged agreements to rig bids accrue at the time a defendant awards the business. *See City of El Paso v. Darbyshire Steel Co.*, 575 F.2d 521, 523 (5th Cir. 1978); *State of Colo. ex rel. Woodard v. Goodell Bros.*, CIV.A. 84-A-803, 1986 WL 5073, at *2 (D. Colo. Apr. 23, 1986). Flex does not claim that any bids made after May 11, 2018—within the limitations period—were rigged. Consequently, Flex's bid-rigging claims under California law are also time-barred.

## B.   Flex's Tennessee Law Claim Is Time-Barred.

Flex's Tennessee antitrust claim under the Tennessee Trade Practices Act ("TTPA") is subject to a three-year statute of limitations.[13]  TTPA claims accrue and the statute of limitations

---

[13] Tenn. Code Ann. § 47-25-101; *see also In re Pre-Filled Propane Tank Antitrust Litig.*, Master Case No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) ("[T]he statute of limitations for TTPA claims is not specifically codified amongst the other antitrust statutes. Rather, claims under the TTPA are governed by a three-year statute of limitations as claims 'based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered ... when no other time of limitation is fixed by the statute creating such liability.' Tenn. Code Ann. § 28-3-105(3).").

1    begins to run when the plaintiff discovers, or in the exercise of reasonable care and diligence,

2    should have discovered that it has suffered an injury and the cause of the injury. *See Levine v.*

3    *March*, 266 S.W.3d 426, 435 (Tenn. Ct. App. 2007); *Fond Du Lac Bumper Exch., Inc. v. Jui Li*

4    *Enter. Co.,* 85 F. Supp. 3d 1007, 1011 (E.D. Wis. 2015) (applying the discovery rule, "which

5    holds that a statute of limitations does not begin to accrue until the plaintiff knew or should have

6    known about its injury," to Tennessee antitrust claims); *In re Linerboard Antitrust Litig.*, 223

7    F.R.D. 335, 343 (E.D. Pa. 2004) (applying the discovery rule to a TTPA claim).

8           It is not necessary for the plaintiff to have actual knowledge of such facts in order for

9    claims to accrue and the limitations clock to run. Instead, "a cause of action accrues when the

10   plaintiff knew *or reasonably should have known* that a cause of action existed."  *Ralston v.*

11   *Hobbs*, 306 S.W.3d 213, 223 (Tenn. Ct. App. 2009) (*citing Johnson v. Craycraft*, 914 S.W.2d

12   506, 511 (Tenn. Ct. App. 1995)) (emphasis added); *John Kohl & Co. P.C. v. Dearborn & Ewing*,

13   977 S.W.2d 528, 532-33 (Tenn. 1998) ("Under the theory of constructive knowledge, [] the

14   statute [of limitations] may begin to run at an earlier date—whenever the plaintiff becomes aware

15   or *reasonably should have become aware* of facts sufficient to put a reasonable person on notice

16   that an injury has been sustained as a result of the defendant's negligent or wrongful conduct.")

17   (emphasis added); *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976) ("The phrase

18   'from the accruing of the cause of the action' means from the time when the plaintiff knew *or*

19   *reasonably should have known* that a cause of action existed.") (emphasis added) (citations

20   omitted).

21          Flex alleges that it did not discover, and could not have discovered through reasonable

22   diligence, that Defendants entered into a conspiracy to fix prices of and allocate markets for HDD

23   suspension assemblies until July 29, 2019, when the DOJ filed criminal charges against NHK

24   Spring for violating Section 1 of the Sherman Act. *See* Am. Compl. ¶¶ 231, 233. This assertion is

25   belied by facts known and alleged by other plaintiffs that Flex omits from its Complaint.

26   Specifically, beginning in July 2016, there was wide publication of the JFTC's and DOJ's

27

28

investigations into Defendants relating to the sale of HDD suspension assemblies.[14] In fact, there was a final decision by the JFTC in February 2018 sanctioning some of the Defendants for engaging in the same conduct alleged in the Flex Complaint.[15] The bevy of publicly available information demonstrates that in 2016 or at the latest February 2018, Flex was on constructive notice of possible misconduct in the sale of HDD suspension assemblies.

Courts have "made it clear that the discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages. . . . The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012). With reasonable diligence, Flex would have discovered that Defendants were alleged to have participated in a conspiracy to fix prices for HDD assemblies as early as 2016, when the JFTC and DOJ investigations were widely reported, or at the latest February 2018, when the JFTC issued a press release regarding its

---

[14] *See* Chiu Decl. Ex. A, *TDK, NHK Spring searched over alleged price cartel*, THE JAPAN TIMES, July 26, 2016, available at https://www.japantimes.co.jp/news/2016/07/26/business/corporate-business/tdk-nhk-spring-searched-alleged-price-cartel/; Chiu Decl. Ex. B, *Hutchinson Technology says U.S. DOJ has opened an investigation relating to sale of suspension assemblies*, REUTERS, July 27, 2016, available at https://www.reuters.com/article/idINASC08YWS; Chiu Decl. Ex. C, *US: Hutchinson cooperating with DOJ in hard drive investigation*, COMPETITION POLICY INTERNATIONAL, July 31, 2016, available at https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation/; *see also* Seagate Plaintiffs' Complaint, (No. 20-cv-01217, ECF No. 1), at ¶ 126 (acknowledging "the public announcement of the JFTC investigation in July 2016"); *id.* ¶ 83, nn. 15-16 (discussing the JFTC's cease-and-desist order and related press releases from February 2018); *id.* ¶ 13 (alleging that the Administrative Council for Economic Defense in Brazil ("CADE") issued a Technical Report regarding its investigation in April 2018); Seagate Plaintiffs' Second Amended Complaint, ECF No. 331-3, at ¶ 245; *id.* ¶ 90, nn. 25-26; *id.* ¶ 18; Reseller Plaintiffs' Corrected Consolidated Amended Complaint, ECF No. 190, at ¶ 58 (citing CADE's Technical Report from April 2018); Reseller Plaintiffs' Third Consolidated Amended Complaint, ECF No. 418, at ¶ 69; End-User Plaintiffs Consolidated Class Action Complaint, ECF No. 167, at ¶¶ 113-15 n. 32 (discussing public information contained in the press release regarding the JFTC's cease-and-desist order from February 2018 and citing NHK Spring's 2018 Annual Report discussing the order); id. ¶ 116-17, n. 33 (alleging facts from and citing CADE's Technical Report from April 2018); End-User Plaintiffs Second Amended Complaint, ECF No. 311, at ¶ 174, 176 n. 42.

[15] Chiu Decl. Ex. D, *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufacturers of Suspension for Hard Disk Drives*, JFTC, February 9, 2018, available at https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html.

final decision in the investigation. As such, Flex's Tennessee claim is untimely and should be dismissed.

**II.       None of the Tolling Doctrines Flex Alleges Apply.**

Recognizing the untimeliness of its claims, Flex seeks to invoke the continuing violation doctrine, the fraudulent concealment doctrine, and the class action tolling doctrine, which extend or suspend the statute of limitations under certain circumstances. *See* Am. Compl. ¶¶ 226-252. None of these doctrines are applicable. Nowhere in Flex's Complaint is there a plausible, non-conclusory allegation of any conspiratorial conduct or conspiracy continuing into the applicable limitation periods. Therefore, Flex cannot save its facially untimely claims.

**A.       The Continuing Violation Doctrine Does Not Toll Flex's Claims.**

Flex asserts that because Defendants have engaged in "a continuing course of unlawful conduct" causing "continuing and accumulating harm," the applicable statutes of limitations should be tolled under the continuing violation doctrine. *Id.* ¶¶ 226-229. Not only is Flex wrong that the "continuing violation" doctrine applies to the claims it asserts, but Flex also misapplies the doctrine by conflating the violation, or the unlawful conduct, with the residual antitrust harm or injury.

The continuing violation doctrine allows plaintiffs in certain instances to assert claims based on a defendant's conduct within the limitations period even if some claims arising from the same conduct accrued outside the limitations period. *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). Neither California nor Tennessee applies the continuing violation doctrine to antitrust claims. *See id.*; *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104, 1107 (C.D. Cal. 2016); *Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 835-38 (W.D. Tenn. 2020).

The doctrine applies to "injuries [that] are the product of a series of small harms, any one of which may not be actionable on its own," rather than "a series of discrete, independently actionable alleged wrongs." *Aryeh*, 55 Cal. at 1197-98. Price-fixing and market allocation agreements, however, are different in character from the "continuing violations" to which this doctrine applies.  Each alleged violation of the Cartwright Act and UCL gives rise to an independently actionable cause of action, which is why courts have found the continuing

violation doctrine inapplicable to such claims. Therefore, the continuing violations doctrine does not apply. *See, e.g.*, *Wolf*, 167 F. Supp. 3d at 1104 (finding that the continuing violation doctrine was not applicable to Plaintiffs' UCL claims, where Plaintiffs alleged "a series of discrete, independently actionable…wrongs, such that it [was] not necessary for a series of harms to accumulate before the alleged wrongdoing becomes…actionable.") (citations and quotations omitted); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-3053-MWF(VBKX), 2015 WL 12777091, at *12 (C.D. Cal. Feb. 12, 2015) (same).

The Tennessee Supreme Court also has not applied the continuing violations doctrine to TTPA claims. It is unlikely to do so because of how TTPA claims accrue—an independently actionable cause of action arises upon each alleged overt act. *See, e.g.*, *Alsbrook*, 469 F. Supp. 3d at 835-38 (W.D. Tenn. 2020) (holding that because each deceptive act allegedly committed by defendant independently accrued under TTPA, the continuing violations doctrine could not apply*)*; *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) ("In the absence of any state precedent to foreshadow the Tennessee Supreme Court apply[ing] the continuing violations doctrine to TTPA claims, the Court finds that those claims are untimely."). Flex's reliance on the continuing violations doctrine is even more attenuated where the discovery rule of accrual applies. Under the discovery rule, the independent act that gives rise to a cause of action occurs when, upon reasonable diligence, the wrongful act should have been discovered. Therefore, the statute of limitations begins to run for the TTPA claims at the time of "discovery" and does not renew each time an injury occurs.

This Court has already held that there are no plausible allegations of continuing conduct after 2016 when dismissing complaints filed in this MDL. *In re HDD Suspension Assemblies Antitrust Litig.*, 2020 WL 6270948, at *3 (N.D. Cal. Oct. 23, 2020), ECF No. 282. Flex alleges nothing more than was alleged in those other complaints; in fact, it alleges less. A "[b]are allegation that [Plaintiffs'] interests were 'repeatedly invaded' is . . . insufficient as a matter of law." *Animation Workers Antitrust Litig.*, 87 F. Supp. 3d at 1213 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). "Rather, Plaintiffs must plead that Defendants engaged in an overt act, e.g., that Defendants engaged in a 'new and independent act

11

that is not merely a reaffirmation of a previous act,' which 'inflict[ed] new and accumulating injury' on Plaintiffs." *Id.* (quoting *Pace*, 813 F.2d at 238). The last specific unlawful conduct that Flex identifies occurred in 2016, more than six years prior to the filing of Flex's Complaint. *See* Am. Compl. ¶¶ 84, 88. And Flex's latest purchase of HDDs alleged in the Complaint was in 2012. *Id.* ¶ 214. Flex fails to identify the specific products, Defendants, or conduct that led to Flex's alleged injury during the statute of limitations period, i.e., post-May 11, 2018. Flex's bare assertions that it purchased HDDs from HDD manufacturers at an artificially inflated price during an indefinite conspiracy period does not satisfy the pleading requirement. *See id.* ¶¶ 169, 201.

Even if Flex were deemed to have pleaded a continuing antitrust violation—which it has not—"the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr*, 521 U.S. at 189. "[I]n the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* at 190; *see also, e.g.*, *Alakayak v. Brit. Columbia Packers, Ltd.*, 48 P.3d 432, 461-63 (Alaska 2002) (applying the reasoning of *Klehr* in holding that a continuing violation limits damages under Alaska state-law claims to those accruing only during the limitations period). Thus, Flex can only recover damages for purchases of HDD suspension assemblies or products incorporating those assemblies that were sold under Defendants' alleged illegal agreements during the limitations period—and no such purchases are alleged.

### B.   The Fraudulent Concealment Doctrine Is Inapplicable.

Flex argues that Defendants fraudulently concealed their conduct, and so its claims did not accrue until its discovery of Defendants' conspiracy in 2019. Am. Compl. ¶¶ 235-49. Contrary to Flex's allegations, there are no facts to support application of the fraudulent concealment doctrine after mid-2016. As demonstrated above in relation to the discovery rule applicable to Flex's TTPA claims, there were public reports of multiple government investigations in 2016 and a final decision by the JFTC in 2018 that put Flex on at least constructive notice of its potential claims well before the earliest limitations date, stopping all potential tolling pursuant to the fraudulent concealment doctrine.

To plead fraudulent concealment, "the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim.'" *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (citing *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)); *see also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988). Plaintiffs' allegations of fraudulent concealment must satisfy Rule 9(b)'s heightened pleading standard. *Ryan*, 147 F. Supp. 3d at 878. To do so, plaintiffs must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* at 886 (citation omitted).

Flex fails to meet the pleading requirement. Flex does not plausibly allege that Defendants took any affirmative acts to mislead Flex. Instead, it claims Defendants fraudulently concealed any wrongdoing by not disclosing Defendants' conduct to Flex, publishing company policies requiring compliance with competition laws on their websites, and instructing participants in the conspiracy to handle competitor information with care. *See* Am. Compl. ¶¶ 237, 240-41, 243-46. Flex further alleges, "upon information and belief," that Defendants' representatives made false representations to Flex's supplier Seagate, not Flex. *Id.* ¶ 238. These assertions do not meet the pleading requirements and lack the particularity required by the Rule 9(b) standard. Specifically, Flex does not specify the time, place, or specific content of the alleged misrepresentation, if any, Defendants made to Flex. To satisfy the heightened standard under Rule 9(b), a "plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1193 (N.D. Cal. 2015). It must offer "specific facts showing the 'who, what, where, when' of these alleged incomplete or materially false statements." *Animation Workers Antitrust Litig.*, 87 F.Supp. 3d at 1217 (citation omitted). ("The Ninth Circuit and other courts in this District have consistently required only that a plaintiff allege 'affirmative acts' of concealment. These acts must be 'affirmative steps to misled' that are more than mere 'passive concealment.'") *Animation Workers Antitrust Litig.*, 123 F.Supp. 3d at 1197 (citation omitted).

Flex further asserts that Defendants' conspiracy was "inherently self-concealing." Am. Compl. ¶ 242. But "the fact that a defendant's acts are 'by nature self-concealing' is insufficient to show that the defendant has affirmatively misled the plaintiff as to the existence of the plaintiff's claim." *Animation Workers Antitrust Litig.*, 87 F.Supp. 3d at 1215. Since Flex cannot meet the pleading standard, and it was clearly on at least constructive notice of its claims outside the limitations period, the fraudulent concealment doctrine does not apply.

## C.   Earlier Class Actions Filed Against Defendants Do Not Save Flex's Claims.

Flex alleges that the filing of earlier class complaints by Reseller plaintiffs and End-User plaintiffs tolled the statute of limitations for its California and Tennessee claims. However, the class action tolling doctrine only applies if (a) the plaintiff (here Flex) is a member of the putative class on whose behalf the earlier class complaints were filed and (b) the class claims are identical to the claims asserted by the plaintiff. Flex is not, based on its allegations, a member of the putative Reseller class; and the Reseller complaints do not contain a Tennessee claim. Similarly, Flex has alleged that the vast majority of its purchases were not as an "end-user." They were, instead, purchases of HDDs to incorporate in other products manufactured by Flex. There are no allegations that would support the contention that the limited products Flex alleges it purchased for its "own use," which could conceivably fall within the End-User class claims, are sufficient to support the amount in controversy requirement for diversity jurisdiction; and so the Court would lack subject matter jurisdiction to consider those claims.

### i.   Flex's Claims Were Not Tolled by the Reseller Complaint.

Relying on the class action tolling doctrine, Flex alleges that the filing of the first Reseller class action complaint against Defendants in August of 2019—*Now Micro, Inc. v. Headway Technologies, Inc., et al.*, No. 3:19-cv-07049-MMC (N.D. Cal.) —stopped the statute of limitations clock as to Flex's Tennessee and California claims. Am. Compl. ¶ 251.

The class action tolling doctrine provides that "the commencement of the original class suit tolls the running of the statute for all purported members of the class[.]" *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). As explained in *American Pipe*, the class action tolling doctrine only applies to claims brought by putative class members. *American Pipe*, 414

1   U.S. at 554 ("[T]he commencement of a class action suspends the applicable statute of limitation

2   as to *all asserted members of the class who would have been parties had the suit been permitted*

3   *to continue as a class action*.") (emphasis added).  Here, the doctrine is inapplicable because Flex

4   was never a member of the putative class in the Reseller class complaints.

5         The earliest in time Reseller class complaint filed in *Now Micro, Inc. v. Headway*

6   *Technologies, Inc., et al.* on August 9, 2019, identifies a putative damages class comprised of

7   "[a]ll persons or entities, in the Indirect Purchaser States [which include California and

8   Tennessee] who . . .purchased a product *for resale* which included as a component part one or

9   more HDD suspension assemblies . . . ."  Now Micro, Inc.'s Compl. ¶ 53, No. 3:19-cv-07049-

10  MMC, ECF No. 1. When the reseller plaintiffs later filed a consolidated class complaint, it

11  likewise defined the putative class as purchasers of certain HDD-containing products "for resale."

12  Reseller Plaintiffs' Consolidated Amended Complaint, at ¶¶ 105-108 (ECF No. 166, amended at

13  ECF No. 190).[16]

14        These class definitions require the "resale" of a standalone product containing a

15  suspension assembly (e.g., an HDD or computer) or of a suspension assembly itself. However, as

16  Flex acknowledges in its own Complaint, Flex is in the business of "manufactur[ing] electronic

17  products and other goods[.]" Am. Compl. ¶ 27. In other words, Flex does not purchase HDDs

18  containing suspension assemblies for the purpose of reselling them, rather it purchases such

19  HDDs *to manufacture a different product*. *See id.* ¶ 29 ("Flex purchased HDDs for the primary

20  purpose of manufacturing electronic products . . . . Flex's products are sold for consumer,

21  medical, automotive, aerospace, and defense applications, among others."); *see also id.* ¶ 76

22  ("Flex purchases HDDs for installation in computers that Flex assembles and sells to its

23  customers."); *id.* ¶ 168 (describing Flex as a "firm[] that use[s] HDDs as inputs for finished

24  goods"). Because Flex does not fit the Reseller class definition, it cannot rely on the class action

25  tolling doctrine to save its time-barred claims based on purchases of HDDs that were used to

26  _____

27  [16] These definitions were further narrowed in Reseller Plaintiffs' Second and Third Amended
    Complaints, limiting the "products" class members purchased for resale to include only
    Standalone Storage Devices, Computers or HDD Suspension Assemblies. ECF No. 303 ¶¶ 141-

28  42; ECF No. 418 at ¶¶ 141-42.

1    manufacture other electronic products which were then sold. *See Arctic Slope Native Ass'n, Ltd.*

2    *v. Sebelius*, 583 F.3d 785, 795-797 (Fed. Cir. 2009) (adopting the principle that class action

3    tolling is not available to a party who could not be a class member if the class were certified even

4    if those parties' claims resemble the claims of the class members.)

5            Even if Flex were a member of the putative Reseller class—which it is not—the class

6    action tolling doctrine does not save Flex's Tennessee claim, as that claim was not legitimately

7    raised in the Reseller class complaints.  The *American Pipe* tolling doctrine only applies to claims

8    that were validly asserted in the prior class complaints.  *In re Cathode Ray Tube (CRT) Antitrust*

9    *Litig.*, 27 F. Supp. 3d 1015 (N.D. Cal. 2014) (holding that, for *American Pipe* to apply, the claims

10   in the later-filed individual complaint must be identical to those asserted in the original class

11   complaint, and thus dismissing Plaintiff's state law claims because the original class complaint

12   only asserted federal claims); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 12-4114 SI.,

13   2013 WL 254873 at *2 (N.D. Cal. Jan. 23, 2013) (observing that "courts have generally refused

14   to allow tolling for claims that were not asserted in the class action," and holding that Plaintiffs'

15   state law claims were time-barred because the previous class complaint did not include those state

16   law claims); *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345, 354 (1983) ("the tolling rule

17   of *American Pipe* is a generous one, inviting abuse" and it "should not be read…as leaving a

18   plaintiff free to raise different or peripheral claims following denial of class status.").

19           Thus, the Reseller class complaints cannot toll the statute of limitations for a claim that

20   the class plaintiffs lacked standing to assert in their original class complaint.  *See In re Wells*

21   *Fargo Mortgage-Backed Certificates Litig*, No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D.

22   Cal. Oct. 19, 2010) (finding that, under *American Pipe*, the filing of a class action complaint did

23   not toll the statute of limitations as to claims that were initially asserted in the class complaint but

24   later dismissed for lack of standing); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, C 11-2225 SI.,

25   2012 WL 149632 at *2 (N.D. Cal. Jan. 18, 2012) (finding that Plaintiff's California state law

26   claims could not benefit from *American Pipe* tolling, where the original class plaintiffs "were

27   residents of Tennessee and New York, respectively, and the [class] complaints did not allege that

28   they purchased the LCD products elsewhere" and thus the class plaintiffs "lacked standing [to

                                              16                          3:19-MD-02918-MMC

assert California claims]").  Indeed, a court in this district held that "it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed, because the claimant had no power to bring it."  *Palmer v. Stassinos*, 236 F.R.D. 460, 465 n. 6 (N.D. Cal. 2006) (finding that "the filing of [a] putative class action cannot have tolled the statute of limitations as to the UCL claim" because the class plaintiffs had no standing to bring those UCL claims).

While the Reseller plaintiffs initially included Tennessee law claims identical to Flex's claim in their original complaint, they did not have standing to assert those claims. In fact, this Court found that the Reseller plaintiffs failed to name class representatives for Tennessee and consequently dismissed the Reseller plaintiffs' Tennessee claims due to lack of standing. *See In re HDD Suspension Assemblies Antitrust Litig.*, 2020 WL 6270948 (N.D. Cal. Oct. 23, 2020). As such, Flex's Tennessee law claim cannot be tolled based on the Reseller class complaints. Reseller plaintiffs do not assert Tennessee law claims in their current, operative consolidated complaint.

### ii.  End-User Class Complaints Cannot Save Most of Flex's Claims.

The End-User class complaints likewise provide little tolling protection for Flex.  While Flex's alleged purchases of HDD products for its "own use" may fall within the End-User class definitions, Flex alleges clearly that the vast majority of its purchases were made for the purposes of manufacturing other products that it sold.  The End-User class complaints cannot save those untimely claims, and there are no allegations that would plausibly suggest that claims based on Flex's purchase of products for its own use would satisfy the amount in controversy requirement for diversity jurisdiction.  Given that diversity is the only alleged basis for the Court's subject matter jurisdiction over Flex's claims, Flex's potentially timely claims (for purchases made for its own use) are insufficient to provide a basis for the Court's jurisdiction to consider those claims.

In its Amended Complaint, Flex alleges that it purchased some HDDs "for its own use." Am. Compl. ¶ 29. Those purchases may fall within the scope of the putative damages classes defined in the End-User consolidated amended class action complaint.  *See* End-User Plaintiffs' Second Amended Consolidated Class Action Compl. ¶¶ 261-264.  Nonetheless, Flex has not

alleged facts that would establish that this Court has jurisdiction over those claims. Flex's only basis for subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction requires a showing of the matter in controversy to exceed the sum of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

Although Flex alleges that it "also purchased HDDs for its own use," it has not pled sufficient facts to indicate that those purchases would satisfy the amount in controversy requirement for diversity jurisdiction.  Indeed, based on the facts alleged in Flex's own complaint, it seems that the vast majority of Flex's HDD purchases were for use in manufacturing of electronic products, which were then sold to customers. *See* Am. Compl. ¶ 216 ("Flex typically directly or indirectly purchases the electric and electronic components, including HDDs incorporating HDD suspension assemblies, necessary to manufacture products for Flex's customers."); *id.* ¶ 217 ("many of the HDDs…purchased by Flex were…used at Flex's United States manufacturing facilities, purchased for use in the manufacture of products…or assembled into products[.]")

While Flex makes the conclusory allegation that "the matter in controversy exceeds the sum of $75,000[,]" it fails to state the specific dollar-value of its alleged injuries, let alone specify what portion of that dollar-value arises out of the purchases that it allegedly made "for its own use."  *See id.* ¶ 18.  And although Flex alleges that it purchased "billions of dollars' worth of HDDs" and offers a few concrete examples of purchases that it allegedly made, Flex fails to indicate which, if any, of these purchases were made for "its own use."  *See id.* ¶¶ 15, 209-214. In fact, Flex concedes that it "purchased HDDs for the primary purpose of manufacturing electronic products." *Id.* ¶ 29. Therefore, regardless of whether the class action tolling doctrine applies, Flex's claims based on the purchases it made as a putative member of the alleged End-User purchaser class should be dismissed for its failure to establish subject matter jurisdiction.

### iii.    Flex's Tennessee Claim Was Time-Barred Prior to Any Class Actions.

Furthermore, regardless of the applicability of the class action tolling doctrine, Flex's Tennessee claim should be dismissed because the claim was already time-barred *prior to the filing of any class complaints*. The first Reseller complaint in this MDL was filed in August 2019,

1   more than three years after the widespread announcement of government investigations into

2   Defendants relating to the conduct at issue in Flex's case. Similarly, the End-User complaint was

3   filed in July 2019, which was more than three years after the statute of limitations had run on

4   Flex's Tennessee claim. Thus, Flex's Tennessee claim was time-barred prior to the start of any

5   class action tolling and should be dismissed based on this basis alone.

6                                    **<u>CONCLUSION</u>**

7           For the foregoing reasons, Defendants respectfully request that the court GRANT this

8   motion and DISMISS Flex's claims.

9     Dated: September 9, 2022                        Respectfully submitted,

10                                                        */s/ Michelle Park Chiu*

11                                            Michelle Park Chiu (State Bar No. 248421)
                                             MORGAN, LEWIS & BOCKIUS LLP
12                                           One Market, Spear Street Tower
                                             San Francisco, CA 94105
13                                           Telephone: (415) 442-1000
                                             michelle.chiu@morganlewis.com
14
                                             J. Clayton Everett, Jr. (*pro hac vice*)
15                                           MORGAN, LEWIS & BOCKIUS LLP
                                             1111 Pennsylvania Ave., NW
16                                           Washington, DC 20004
                                             Telephone: (202) 739-3000
17                                           clay.everett@morganlewis.com

18                                           *Attorneys for Defendants TDK Corporation,*
                                             *Magnecomp Precision Technology Public*
19                                           *Co. Ltd., Hutchinson Technology Inc., and*
                                             *SAE Magnetics (H.K.) Ltd.*

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Anne Marie Mortimer*
_____
Ann Marie Mortimer (State Bar No. 169077)
HUNTON ANDREWS KURTH LLP
amortimer@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Telephone: (213) 532-2103

Craig Y. Lee (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
craiglee@huntonAK.com
2200 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: (202) 955-1500

*Attorneys for Defendants NHK Spring Co.,
Ltd., NHK International Corporation, NHK
Spring (Thailand) Co., Ltd., NAT Peripheral
(Dong Guan) Co., Ltd., and NAT Peripheral
(H.K.) Co., Ltd.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FLEX'S AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTORNEY ATTESTATION**

I, Michelle Park Chiu, hereby attest, pursuant to Civil Local Rule 5-1(h)(3) of the United States District Court for the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

_____
                    */s/ Michelle Park Chiu*