**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>*Seagate Technology LLC et al. v. Headway Technologies, Inc. et al.*, Case No. 3:20-cv-01217-MMC; All Reseller and End-User Actions | **JOINT DISCOVERY LETTER REQUESTING RESOLUTION OF DISPUTE REGARDING DEPOSITIONS OF NHK WITNESSES**<br><br>Judge: Hon. Kandis A. Westmore<br>Courtroom: 7, 19th Floor |

Plaintiffs[1] move to compel NHK[2] to produce two Japan-based employees, Messrs. Hiroyuki Tamura and Hitoshi Hashimoto (the "Witnesses") for deposition. Plaintiffs previously moved for the same, and Your Honor ordered the parties to agree on a mutually convenient country per the Deposition Protocol (the "Protocol"). Dkt. No. 548 at 2. Per Your Honor's order, the parties conferred, but were unable to agree. Plaintiffs now move specifically for the depositions to proceed in either Taiwan, United Arab Emirates ("UAE"), or Singapore. NHK and the individual counsel for the Witnesses believe the Witnesses are at risk of being extradited to the United States if they appear for a deposition in these countries. Per Your Honor's Standing Order, the parties met and conferred by video conference on April 26, 2022, July 8, 2022, July 22, 2022, August 23, 2022, and September 6,

---

[1] "Plaintiffs" herein comprises Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International ("Seagate"), Reseller Plaintiffs, and End-User Plaintiffs.
[2] "NHK" herein comprises Defendants NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., and NAT Peripheral (H.K.) Co., Ltd.

2022, and corresponded, in an attempt to resolve this issue. The parties have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: September 13, 2022

Respectfully submitted,

*s/ Kenneth R. O'Rourke*
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
Kenneth R. O'Rourke, SBN 120144
Jeff VanHooreweghe, SBN 313371
Mikaela E. Evans-Aziz, SBN 339283
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: korourke@wsgr.com
Email: jvanhooreweghe@wsgr.com
Email: mevansaziz@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

*s/ Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
Victoria Sims (*pro hac vice*)
4725 Wisconsin Avenue, NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: vicky@cuneolaw.com

*s/ Shawn M. Raiter*
**LARSON • KING, LLP**
Shawn M. Raiter (*pro hac vice*)
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
Email: sraiter@larsonking.com

*Interim Co-Lead Class Counsel for the Reseller Plaintiffs*

*s/ William V. Reiss*
**ROBINS KAPLAN LLP**
William V. Reiss (*pro hac vice*)
1325 Avenues of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7408
Facsimile: (212) 980-7499
Email: wreiss@robinskaplan.com

*s/ Christopher T. Micheletti*
**ZELLE LLP**
Christopher T. Micheletti, SBN 136446
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
Email: cmicheletti@zellelaw.com

*Interim Co-Lead Class Counsel for the End-User Plaintiffs*

| | |
|---|---|
| 1 | *s/ Mark. H. Hamer*<br>**BAKER & McKENZIE LLP** |
| 2 | Mark. H. Hamer, SBN 156997 |
| 3 | Mark G. Weiss (*pro hac vice*)<br>815 Connecticut Avenue, NW |
| 4 | Washington, D.C. 20006<br>Telephone: (202) 452-7077 |
| 5 | Facsimile: (202) 452-7074<br>Email: mark.hamer@bakermckenzie.com |
| 6 | Email: mark.weiss@bakermckenzie.com |
| 7 | *s/ Craig Y. Lee*<br>**HUNTON ANDREWS KURTH LLP** |
| 8 | Craig Y. Lee (*pro hac vice*)<br>Carter C. Simpson (*pro hac vice*) |
| 9 | Christopher J. Dufek (*pro hac vice*)<br>2200 Pennsylvania Ave., NW |
| 10 | Washington, D.C. 20037 |
| 11 | Telephone: (202) 955-1500<br>Facsimile: (202) 778-2201 |
| 12 | Email: craiglee@huntonak.com<br>Email: csimpson@huntonak.com |
| 13 | Email: cdufek@huntonak.com |
| 14 | *Counsel for Defendants NHK Spring Co., Ltd., NHK International Corporation, NHK Spring* |
| 15 | *(Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co.,* |
| 16 | *Ltd.* |

## Plaintiffs' Position

**I. Factual Background:** The U.S. Department of Justice ("DOJ") indicted the Witnesses on criminal antitrust charges on February 13, 2020, in relation to the conspiracy in this case.[3] As the indictment indicates, the Witnesses played significant and unique roles in the conspiracy. Both were high-level sales directors at NHK during the conspiracy period and personally participated in the conspiracy, as NHK admitted.[4] In fact, while Mr. Tamura was responsible for overseeing NHK's antitrust training,[5] he actively encouraged the conspiracy, as shown in setting a meeting with his U.S. sales manager to discuss "how the cartel is" going.[6] Mr. Hashimoto participated in far more conspiratorial communications than any other NHK employee.[7] The Witnesses are also two of only a few co-conspirators still in NHK's control. Given their unique importance, Plaintiffs put NHK on notice in December 2020 that they would pursue their depositions. Plaintiffs noticed the depositions on May 6, 2021 (Tamura) and January 5, 2022 (Hashimoto). NHK has a duty to produce the Witnesses and should be ordered to do so. *See Adobe Sys. Inc.*, 2016 WL 8222618, at *2 (N.D. Cal. June 30, 2016).

**II. The Deposition Protocol Requires Agreement on a Location:** The Witnesses intend to take the Fifth Amendment. As Your Honor recognized, the Deposition Protocol **instructs** the parties to agree on a "mutually convenient country" for Fifth Amendment depositions. Dkt. No. 548 at 1-2 (citing Dkt. No. 285 ¶ V(E)). The Protocol was negotiated, agreed, and ordered in November 2020—nine months after the Witnesses were indicted. If NHK's position is that *no country* is safe for these depositions, it should have stated so when it agreed to the Protocol. NHK cannot now point to the Witnesses as not agreeing. The Witnesses were indicted before the Protocol was agreed. During negotiations, *Defendants* proposed this provision, and Plaintiffs put NHK on notice that these Witnesses are "possible Fifth Amendment depo[nents]" to which the provision applies.[8] NHK had full access to the Witnesses (and their counsel) at that time. These Witnesses are the reason for this provision, and they would have been consulted at the time *Defendants* proposed it, or, if not, certainly should have been. NHK should not be allowed to hide behind the Witnesses' disagreement now.

Plaintiffs effectively offered NHK and the Witnesses the choice as to where these depositions could occur, offering to go nearly anywhere in the world. NHK and the Witnesses rejected the offer with no counterproposal. After Your Honor ordered the parties to agree on a "mutually convenient country," Plaintiffs proposed ten different countries and again asked NHK and the Witnesses to name the location. Again, NHK and the Witnesses refused and *never once proposed a country*, nor did it appear NHK even researched a suitable country. Indeed, NHK hardly engaged in the process, letting the Witnesses' counsel lead. The Witnesses essentially admitted to having no incentive to comply with Your Honor's order because they "are not parties in this case." **NHK is a party and cannot refuse to comply**. The Witnesses also essentially admitted they would not agree to a country unless there is "zero risk," but there is never "zero risk" for fugitives. These Witnesses even have risk sitting in Japan, which *has an extradition treaty and the requisite "dual criminality" for extradition*. **Plaintiffs are requesting only that NHK produce the Witnesses in a country with equal (or less) risk**.

**III. Depositions of Non-U.S. Citizens in Parallel Civil Antitrust Cases Are Common:** This District (and others) routinely requires individuals at risk of criminal charges to sit for civil depositions in antitrust conspiracy cases. Indeed, as Judge Donato ruled in such a case, the risk in a parallel criminal

---

[3] Indictment, *U.S. v. Hashimoto and Tamura*, 20-cr-00070 (N.D. Cal. Feb. 13, 2020), Dkt. No. 1.
[4] NHK's Supp. Resp. to End-User Plaintiffs' Interrogatories No. 1 and 2; Ex. 514 to Kamigama Dep.
[5] Inami Dep. (July 28, 2022) at 54:17–55:17.
[6] Ex. 78 to Harvey Dep.
[7] App'x I to TDK's First Suppl. Resp. and Obj. to End-User Plaintiffs' Interrogatory No. 1.
[8] Correspondence available upon request; Dkt. No. 263 at 13-14.

1

investigation is "*of no moment*" to a civil deposition. *In re Capacitors Antitrust Litig.*, 2016 WL 11281272, at *1 (N.D. Cal. Feb. 24, 2016) ("[P]ending or feared criminal charges are of no moment in determining the location of civil depositions") (quoting *Vringo, Inc. v. ZTE Corp.*, 2015 WL 4743573, at *10 (S.D.N.Y. Aug. 12, 2015)). As Judge Donato observed, this is "consistent with *the majority of other cases*." *Id*. (emphasis added) (citing *SEC v. Wu*, 2015 WL 5357715, at *3 (N.D. Cal. Sep. 14, 2015) among others). NHK cites *no instance of a court holding otherwise*, nor can it.

Notably, in *Capacitors*, the witnesses were also Japanese nationals and current employees of parties to the civil litigation. Judge Donato ordered all depositions to take place in the U.S. even where defendant witnesses were located abroad. Civil Min. 2, *Capacitors*, 14-cv-03264-JD (Jan. 14, 2016), Dkt. No. 1032. While some complied, others did not, and when raised again through a motion for sanctions, Judge Donato specifically ordered "that [Company Party] produce both of these witnesses for back-to-back depositions in Tokyo by April 28, 2017," and ordered the company party to pay all costs. Civil Min. 1, *Capacitors* (Mar. 30, 2017), Dkt. No. 1585. Plaintiffs ask Your Honor to order NHK to produce these Witnesses in the same way as *Capacitors*—order NHK to produce by October 21, 2022, in one of the 3 countries. If NHK fails to do so, the next step is sanctions against NHK.

**IV. The Witnesses Are Not at Risk of Extradition in the Countries Identified:** While the criminal risk is of "no moment," precedent provides the assurances that the Witnesses will not be arrested. No Japanese national has *ever* been extradited to the U.S. for an antitrust offense. Indeed, there have only been three individuals *ever* extradited to the U.S. purely for an antitrust offense.[9] This is because the requirements are strict: (i) the country must have an extradition treaty with the U.S. and (ii) the country must impose imprisonment for antitrust violations (the "dual criminality" requirement).[10]

While Plaintiffs identified over 145 countries that do not meet these requirements, Plaintiffs propose Taiwan, Singapore, or UAE for this motion. *None of these countries have ever extradited* an individual to the U.S. for an antitrust offense, *nor do they have a mechanism* to do so:

- **Taiwan:** Taiwan does not have an extradition treaty with the U.S. and does not have the requisite "dual criminality" for antitrust offenses (no imprisonment imposed).[11] In Taiwan, imprisonment is *only* possible if an individual fails to comply with an *administrative order following* an antitrust offense, not for the initial antitrust offense itself. NHK suggests otherwise below, but is not quoting the authorities correctly. Taiwan also is not a member of INTERPOL (if that matters). ***DOJ has even admitted*** that Taiwan is a "***safe haven***" for individuals indicted for antitrust offenses. Opp'n to Def.'s Mot. 4, *U.S. v. Bai*, 9-cr-00110 (N.D. Cal. Feb. 15, 2013). DOJ admitted this in an antitrust prosecution in which DOJ indicted 10 individuals residing in Taiwan, but *did not extradite any* of them.[12] In a separate antitrust prosecution, DOJ indicted two individuals residing in Taiwan for antitrust violations, but again *has not extradited* either. Sentencing Mem. 3 n.2, *U.S. v. Hsu*, 11-cr-00488 (N.D. Cal. Jan. 15, 2013), Dkt. No. 274 (Mr. Lin); Resp. to Sentencing Mem. 16-17, *U.S. v. Hsu* (Jan. 18, 2013), Dkt. No. 284 (Mr. Hsu). NHK's only examples of extradition from Taiwan involve violent crimes (not antitrust). Also, the Protocol designates Taiwan as a country

---

[9] DOJ, "Extradited Former Auto Parts Exec Pleads Guilty to Antitrust Charge" (Mar. 3, 2020) at here (Ger.); DOJ, "Extradited Former Air Cargo Exec Pleads Guilty for Participating in Conspiracy" (Jan. 23, 2020) at here (It.); DOJ, "First Ever Extradition on Antitrust Charge" (Apr. 4, 2014) at here (Ger.).
[10] DOJ, Office of Inspector Gen., "Review of the Office of International Affairs' Role in the International Extradition of Fugitives" 14 (2002) at here.
[11] *See* U.S. Dep't of State, Treaties in Force 497 (2020) at here (no extradition treaty with Taiwan); Pub. Competition Enf't Rev.: Taiwan, LawReviews (Apr. 3, 2022) at here (no criminal liability).
[12] 6 of the indicted individuals voluntarily came to the U.S. for trial and 4 remain fugitives.

2

for depositions when parties cannot agree on a location for foreign nationals. Dkt. No. 285 ¶ V(A).

- **UAE:** UAE does not have an extradition treaty with the U.S. and does not have the requisite "dual criminality" for antitrust offenses (no imprisonment imposed).[13] NHK's examples do not involve extradition to the U.S. or antitrust offenses, and NHK ignores the imprisonment requirement.

- **Singapore:** While Singapore has an extradition treaty with the U.S., it does not apply to antitrust offenses. Singapore also does not have the requisite "dual criminality" for antitrust offenses (no imprisonment imposed).[14] Similarly to the examples in Taiwan, DOJ prosecuted Singapore Airlines for antitrust violations and "carved out" an individual residing in Singapore from Singapore's plea, yet *has never extradited him*. NHK's only examples from Singapore involve fraud offenses, not antitrust. Despite NHK's suggestion otherwise, DOJ's charged offense is what matters and DOJ charged the Witnesses with antitrust violations (15 U.S.C. § 1), not fraud.

**V. NHK Has No Basis To Refuse Production of the Witnesses for Deposition:** NHK's arguments are unavailing. ***First***, NHK argues these countries still extradite to the U.S. Yet, NHK cites *no precedent* for extradition for antitrust offenses. NHK's examples have no relevance. ***Second***, NHK argues that a country without an extradition treaty might still be a risk because it is a member of INTERPOL. But an INTERPOL notice is nothing more than notice to other countries that a fugitive crossed the border, not a warrant. (*See* INTERPOL here). NHK again cites *no precedent* for INTERPOL *alone* leading to extradition for antitrust offenses. If NHK's argument is the Witnesses will be stopped at a border while the country calls DOJ (not arrested/extradited), that inconvenience should not preclude these depositions. ***Third***, NHK argues the value of these depositions will not outweigh the risk. NHK ignores that civil plaintiffs are often entitled to an adverse inference from Fifth Amendment testimony. *See, e.g.*, *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). **In sum**, NHK argues there should be "zero risk." But there is not even "zero risk" in Japan. NHK should not be allowed to shield its conspiracy ringleaders. The Court should compel NHK to produce the Witnesses.

## NHK's Position

### 1. Introduction.

In its August 12 Order, the Court recognized that the Deposition Protocol—entered by the Court upon a stipulation of all parties—requires that "Mr. Tamura and Mr. Hashimoto would need to agree to a mutually convenient country for the deposition." Dkt No. 548 (the "Order") at 2; Dkt. No. 285 ¶ V(E). The Court required that "[t]he parties and counsel for Mr. Tamura and Mr. Hashimoto should meet and confer as to whether a mutually convenient country exists," and if agreement cannot be achieved, Plaintiffs can submit three countries for consideration and "explain[] how the Court can order Mr. Tamura and Mr. Hashimoto to travel to another country under the Deposition Protocol if they do not agree. " Order at 2.

Since the Order, the parties and the witnesses' counsel have met and conferred in good faith. Of the countries discussed, three are proposed by Plaintiffs in this Letter: Taiwan, the UAE, and Singapore. Each has been duly evaluated, and individual counsel provided detailed risk assessments (attached as Exs. A and B) of reasons why each presents an unacceptable risk of arrest or extradition.

Plaintiffs now seek to evade the Deposition Protocol's requirement of witness consent by suggesting, incorrectly, that they were somehow deceived or they misunderstood its meaning or significance. The Deposition Protocol was heavily negotiated at arms-length—with substantial concessions by both sides on this and other provisions—over 8 months after these witnesses were indicted and 7 months

---

[13] U.S. Dep't of State, *supra* note 12, at 462 (no extradition treaty with UAE); Federal Law No. (4) of 2012 Organizing Competition at Ch. 8 (UAE) (penalties do not include imprisonment).

[14] Sing. Extradition Act § 2(1) (2022) here ("extradition offence" must carry penalty of imprisonment); Freshfields, Antitrust in Asia 42-43 (2018) here (no criminal sanctions for antitrust violation itself).

after NHK informed Plaintiffs through its Initial Disclosures that these witnesses were potentially relevant and separately represented. Plaintiffs' agreement to the provision was with full knowledge of whom the provision would apply to and what preconditions were necessary for any deposition to proceed.

**2. Plaintiffs' Proposal Subjects the Witnesses to a High Risk of Arrest or Extradition.**

Counsel for Mr. Tamura lays out the risk calculus his client faces succinctly: "While [the parties] are litigating a civil case involving damages, my client is facing a criminal prosecution. For Mr. Tamura, the consequence of an error made in permitting him to enter the jurisdiction of another country (or of the United States) for a civil deposition would likely be a lengthy period of incarceration pending extradition proceedings." *See* Ex. A at 1-2. Both witnesses object to all three proposed venues because they would be subject to arrest and extradition there. *See* Ex. A (addressing Taiwan and the UAE) and Ex. B (addressing Singapore).

Plaintiffs contend that the Witnesses are two of only a few witnesses still in NHK's control, but in fact Plaintiffs noticed 14 NHK deponents and asserted that each has highly relevant knowledge. Plaintiffs' contention that NHK has not offered any solution ignores NHK's request for safe-passage from DOJ to conduct the deposition—which DOJ declined—further emphasizing the substantial risk of arrest or extradition. Plaintiffs decry a "zero risk" approach, but Plaintiffs' assertions of witness travel safety are, at best, theoretical and insufficient given the substantial consequences if incorrect. As detailed in the attached letters, each country identified by plaintiffs presents a very high risk of arrest or extradition:

**Taiwan:** Contrary to Plaintiffs' claims, Taiwan recognizes criminal penalties for antitrust violations. This means the principles of dual criminality would apply.[15] Plaintiffs explained the concept of dual criminality in the original letter brief, stating that "extradition for antitrust offenses" requires that "the country must recognize antitrust violations as a crime." *See* ECF No. 520-3 at 2.[16] Yet here, they identify a country that *does* carry criminal penalties for antitrust offenses including jail time and fail the very standard they propose.

The DOJ cases cited by Plaintiffs do not stand for the proposition they suggest. They are all cases of *Taiwanese nationals* in Taiwan. Virtually all countries, even those with extradition treaties, decline to extradite their own citizens, but the same protections do not apply to foreign nationals—like Mr. Tamura and Mr. Hashimoto—who will be visiting Taiwan from their home country. This is well documented for Taiwan. *See* here (statements from Wang Nan-chun, a senior Taiwanese official, that "Under the current Law of Extradition, the government has very little leeway to grant requests for a Taiwanese national to be extradited to another country." *See also* here (the Taiwanese extradition law states "Extradition shall be refused if the person whose surrender is requested for is a citizen of [Taiwan].").

Further, despite the lack of an extradition treaty, Taiwan is a close ally of the United States given the extensive political and military support provided by the United States, and there is a history of

---

[15] Plaintiffs cite to a guide for Taiwan's antitrust law—here—claiming it lacks criminal penalties. This is flatly wrong and even their own source states that there are "[c]ivil and criminal liabilities for violation of the TFTA . . . determined by the courts" and "the persons in charge will face a prison term of up to three years[.]" *See also Antitrust and Competition in Taiwan* here ("the individuals responsible for the violation . . . may also be punished by imprisonment, or detention and/or a criminal penalty"); *see also Guide to Antitrust and Comp. Law in Asia Pacific—*here at 95 (explaining criminal liability and jail time for Taiwanese antitrust offenses).

[16] *See also* Mark L. Kritiski, *Extradition in International Antitrust Enforcement*, ANTITRUST SOURCE 10 (April 2015), here ("the Antitrust Division has demonstrated its resolve to pursue and litigate extradition issues for many years, if necessary. An increasing number of countries have criminalized antitrust violations, expanding the number of jurisdictions in which extradition may be pursued.")

4

cooperation between the countries. Indeed, there are prior examples of extraditions to the United States from Taiwan, often with little due process or procedure.[17] Plaintiffs do not address these at all.

**Singapore:** Singapore has an extradition treaty with the United States, which includes extradition for offenses including perjury, fraud, fraudulent conversion, and obtaining money . . . by false pretenses.[18] As one commentator has noted, "[e]ven when the other country that is party to an extradition treaty may not have criminalized antitrust violations, the Antitrust Division may consider other charged offenses as a vehicle for extradition." *See* Kritiski, *supra* note 16, at 10. Further, Singapore has extradited individuals to the United States and recently passed a new, untested extradition law designed to more easily facilitate extraditions.[19]

**UAE:** The UAE recognizes criminal penalties for antitrust laws, so the principles of dual criminality, discussed above, would apply which would subject these witnesses to a high risk of arrest. UAE responds to Interpol Red Notices and there are documented examples of arrests for economic crimes.[20]

### 3. Plaintiffs' Claims of Prejudice are Overblown.

First, these witnesses have stated their intent to assert their Fifth Amendment rights, so Plaintiffs will not advance the fact discovery record through these depositions.

Second, Plaintiffs have already amassed an extraordinary volume of fact discovery. From NHK alone, they have a corporate guilty plea with factual admissions from the underlying criminal antitrust prosecution; NHK's responses to 135 requests for admissions and 31 interrogatories; over 762,000 NHK-produced documents (including custodial records of both Mr. Tamura and Mr. Hashimoto); and, by the close of discovery, they will have taken more than 230 hours of deposition testimony from at least 13 NHK deponents, including a 28-hour 30(b)(6) deposition. They also have a comparably massive discovery record from co-defendant TDK. Plaintiffs argue they are entitled to an adverse inference, but the relevant test considers where there is "another less burdensome way of obtaining that information," *see Doe v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000), and Plaintiffs have not shown that these witnesses have unique non-duplicative evidence.

The unfairness to the witnesses of placing them in jeopardy far outweighs any alleged unfairness to Plaintiffs. Plaintiffs agreed to the terms of the Deposition Protocol that require agreement of the witnesses for foreign travel. They cannot now seek to avoid or revisit the process they consented to. That process recognizes that the witnesses whose rights are at stake must have a voice. After due consideration of the three proposed jurisdictions, the risks of arrest or extradition to Mr. Tamura and Mr. Hashimoto remain unacceptably high.

---

[17] https://www.taiwannews.com.tw/en/news/4559903 (reporting on extradition of an American back to the U.S., noting at least one other example, and stating "Taiwan does not have a formal extradition treaty with the U.S. but typically acts quickly and extradites criminal suspects.").

[18] *See* https://sso.agc.gov.sg/SL/EA1968-OR1?ProvIds=S13_1-#S13_1-. Class Plaintiffs have brought many claims under state fraud statutes. End-User Second Am. Compl. at 97-98.

[19] *See* The Strait Times, *Parliament passes amendments to Singapore's extradition laws*, here (also noting that "Singapore has extradition agreements or treaties with" the United States); *see also* The Strait Times, *Man acquitted by NSW court after being extradited from Singapore*, here (Australian national extradited from Singapore).

[20] *See The Competition Law in the UAE*, here (criminal prosecution can be initiated with approval of the Minister and there is a process for transfer to criminal courts; *see also Restraints of Trade and Dominance in the United Arab Emirates,* here ("Personal criminal liability for violations of the Competition Law can be attached to a director or manager in the event they had criminal intent."); *see also Top 5 Requirements When Requesting Extradition in the UAE*, here (discussing UAE extradition: "Any notice issued via the Interpol has an international effect and the suspect can be detained on the basis of the notice issued"); The National News, *After Gupta brothers arrest how does the UAE's extradition process work?*, here (extradition to South Africa based on Interpol Red Notice. "The ministry said the arrests 'sent a clear statement' of the UAE's efforts to combat financial crime.").

1 Dated: September 13, 2022

2 Respectfully submitted,

| | |
|---|---|
| <u>*s/ Kenneth R. O'Rourke*</u><br>**WILSON SONSINI GOODRICH & ROSATI**<br>Professional Corporation<br>Kenneth R. O'Rourke, SBN 120144<br>Jeff VanHooreweghe, SBN 313371<br>Mikaela E. Evans-Aziz, SBN 339283<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>Telephone: (415) 947-2000<br>Facsimile: (415) 947-2099<br>Email: korourke@wsgr.com<br>Email: jvanhooreweghe@wsgr.com<br>Email: mevansaziz@wsgr.com<br><br>***Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*** | <u>*s/ William V. Reiss*</u><br>**ROBINS KAPLAN LLP**<br>William V. Reiss (*pro hac vice*)<br>1325 Avenues of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7408<br>Facsimile: (212) 980-7499<br>Email: wreiss@robinskaplan.com<br><br><u>*s/ Christopher T. Micheletti*</u><br>**ZELLE LLP**<br>Christopher T. Micheletti, SBN 136446<br>555 12th Street, Suite 1230<br>Oakland, CA 94607<br>Telephone: (415) 693-0700<br>Facsimile: (415) 693-0770<br>Email: cmicheletti@zellelaw.com<br><br>***Interim Co-Lead Class Counsel for the End-User Plaintiffs*** |
| <u>*s/ Victoria Sims*</u><br>**CUNEO GILBERT & LADUCA, LLP**<br>Victoria Sims (*pro hac vice*)<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, D.C. 20016<br>Telephone: (202) 789-3960<br>Facsimile: (202) 789-1813<br>Email: vicky@cuneolaw.com<br><br><u>*s/ Shawn M. Raiter*</u><br>**LARSON • KING, LLP**<br>Shawn M. Raiter (*pro hac vice*)<br>30 East Seventh Street, Suite 2800<br>Saint Paul, MN 55101<br>Telephone: (651) 312-6500<br>Facsimile: (651) 312-6618<br>Email: sraiter@larsonking.com<br><br>***Interim Co-Lead Class Counsel for the Reseller Plaintiffs*** | |

1  *s/ Mark. H. Hamer*
   **BAKER & McKENZIE LLP**
2  Mark. H. Hamer, SBN 156997
   Mark G. Weiss (*pro hac vice*)
3  815 Connecticut Avenue, NW
   Washington, D.C. 20006
4  Telephone: (202) 452-7077
   Facsimile: (202) 452-7074
5  Email: mark.hamer@bakermckenzie.com
   Email: mark.weiss@bakermckenzie.com
6
   *s/ Craig Y. Lee*
7  **HUNTON ANDREWS KURTH LLP**
   Craig Y. Lee (*pro hac vice*)
8  Carter C. Simpson (*pro hac vice*)
   Christopher J. Dufek (*pro hac vice*)
9  2200 Pennsylvania Ave., NW
   Washington, D.C. 20037
10 Telephone: (202) 955-1500
   Facsimile: (202) 778-2201
11 Email: craiglee@huntonak.com
   Email: csimpson@huntonak.com
12 Email: cdufek@huntonak.com
13
   *Counsel for Defendants NHK Spring Co., Ltd.,*
14 *NHK International Corporation, NHK Spring*
   *(Thailand) Co., Ltd., NAT Peripheral (Dong*
15 *Guan) Co., Ltd. and NAT Peripheral (H.K.) Co.,*
   *Ltd.*
16

## **ATTORNEY ATTESTATION**

I, Kenneth R. O'Rourke, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*s/ Kenneth R. O'Rourke*
Kenneth R. O'Rourke

8

Case No. 3:19-md-02918-MMC
JOINT LETTER BR. REGARDING NHK DEPOSITIONS