UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Reseller and End-User Actions | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC<br><br>MDL No. 2918<br><br>**JOINT DISCOVERY LETTER REQUESTING EXPEDITED RESOLUTION OF DISPUTE REGARDING PRODUCTION OF 30(b)(6) WITNESS**<br><br>Judge:      Hon. Kandis A. Westmore<br>Courtroom: 7, 19th Floor |

Class Plaintiffs[1] move to compel TDK[2] to comply with Fed.R.Civ. P. 30(b)(6) and designate one or more of their officers, directors, managing agents or other consenting persons to testify about TDK's knowledge of the topics referred herein. TDK believes that, by designating prior testimony as its own binding corporate testimony, TDK has provided Class Plaintiffs with the 30(b)(6) testimony sought in their deposition notice and that further depositions on those topics would be cumulative and oppressive. Per Your Honor's Standing Order, the parties met and conferred by video conference on June 24, 2022, July 22, 2022, September 7, 2022, September 9, 2022, and September 13, 2022, and exchanged significant written correspondence in an attempt to resolve this issue. Class Plaintiffs and TDK are at impasse. The parties have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct. As the fact discovery deadline of October 21, 2022 is rapidly approaching and both Class Plaintiffs and TDK require sufficient time to prepare to depose and

---

[1] "Class Plaintiffs" herein comprises Reseller Plaintiffs, and End-User Plaintiffs.
[2] "TDK" herein comprises Defendants TDK Corporation, Magnecomp Precision Technology Public Co. ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology Inc.

educate a corporate witness, respectively, on the disputed topics, the parties respectfully request an expedited resolution of the dispute.

Dated: September 20, 2022

Respectfully submitted,

*William V. Reiss*
**ROBINS KAPLAN LLP**
William V. Reiss (*pro hac vice*)
1325 Avenues of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7408
Facsimile: (212) 980-7499
Email: wreiss@RobinsKaplan.com

*Christopher T. Micheletti*
**ZELLE LLP**
Christopher T. Micheletti, SBN 136446
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
Email: cmicheletti@zellelaw.com

***Interim Co-Lead Class Counsel for the End-User Plaintiffs***

*Michelle Park Chiu*
**MORGAN LEWIS & BOCKIUS LLP**
J. Clayton Everett, Jr. (*pro hac vice*)
Michelle Park Chiu, Esq., SBN 248421
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
Email: clay.everett@morganlewis.com
          michelle.chiu@morganlewis.com

***Attorneys for Defendants TDK Corp, Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology Inc.***

*Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
Victoria Sims (*pro hac vice*)
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: vicky@cuneolaw.com

*Shawn M. Raiter*
**LARSON • KING, LLP**
Shawn M. Raiter (*pro hac vice*)
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
Email: sraiter@larsonking.com

***Interim Co-Lead Class Counsel for the Reseller Plaintiffs***

<u>Class Plaintiffs' Position:</u> TDK maintains that it has no obligation to provide a witness on the topics discussed herein. Rather than disputing the topics' relevance under Fed. R. Civ. P. 26, TDK seeks to rely upon its selective designation of prior testimony by former and current employees in lieu of deposition testimony of the corporation. As such, it is TDK's burden to demonstrate that corporate testimony on these topics is unreasonably cumulative or duplicative. *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (holding that once relevance is established, the burden shifts to the party opposing discovery).

TDK cannot meet this burden. Courts in this district have overwhelmingly held that parties are entitled to corporate testimony and that any overlap between 30(b)(6) topics and previous deposition testimony from individuals does not in itself render corporate deposition testimony unreasonably duplicative or cumulative. *See, e.g., La. Pac. Corp.* 285 F.R.D. at 487 (holding that "[t]he testimony of an individual . . .is distinct from the testimony of an entity."); *Calvary Chapel San Jose v. Cody*, No. 20CV03794BLFVKD, 2022 WL 4099217, at *2 (N.D. Cal. Sept. 7, 2022) ("The mere fact that individual witnesses have testified regarding subject matter that is within the scope of the notice does not make the County's Rule 30(b)(6) deposition notice unreasonably duplicative."). While the *Calvary* court acknowledged that percipient witness testimony may serve as a substitute for corporate testimony if the parties *jointly* designate such testimony in a stipulation, the *Cavalry* court expressly held that it would not require an unwilling party to submit to designations. *Id.* Here, TDK unilaterally designated individual deposition testimony it claims is responsive to the topics at issue. In addition to omitting to designate substantive relevant testimony, TDK's designations are often incomplete, nonsensical, and contradictory. In many instances, TDK's individual witnesses had no memory of critical events and provided no substantive testimony. TDK would deny Class Plaintiffs the opportunity to probe the company's knowledge of these events based on its self-serving assurances that it has no more knowledge than the individual witnesses who admittedly did not educate themselves on these topics. But unlike a 30(b)(1) witness, a 30(b)(6) witness must "become educated on a topic," *La. Pac. Corp.,* 285 F.R.D. at 486 (citation omitted). Even to the extent some of TDK's designations are arguably relevant to the topics at issue, Class Plaintiffs are entitled to obtain the testimony of the company to understand the context and probe additional facts relating to the testimony. The speciousness of TDK's position is highlighted by the fact that its co-defendant, NHK, has agreed to designate witnesses on these identical topics.

In an effort to support its untenable position, TDK misleadingly cites out-of-district cases for the proposition that a corporation may unilaterally bind itself to the prior testimony of its present and former employees in lieu of designating a 30(b)(6) witness. TDK fails to acknowledge that all but two of the cases it cites denied the corporation's effort to avoid designating a corporate witness.[3] And all of the cases cited by TDK make clear that a party cannot avoid its obligation to provide corporate testimony unless it meets its heavy burden of demonstrating that such testimony would be *unreasonably cumulative or duplicative* of prior individual testimony. For the reasons discussed below, TDK has failed to carry its burden.

---

[3] Two cases denied the motion for a protective order because the response, like TDK's Objections and Responses to the 30(b)(6) Notice here, did not expressly state that the company would be bound by the designated testimony. *See Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641 at *12 (S.D. Ohio 2018). Although TDK later stated it would bind itself to the designations, it never invited Class Plaintiffs to counterdesignate. Regardless, Class Plaintiffs are entitled to corporate testimony for the reasons set forth herein.

TDK's Position: TDK is not "opposing discovery" as Class Plaintiffs contend, but rather responding to Class Plaintiffs' Rule 30(b)(6) notice, in part by adopting prior, responsive testimony as its own corporate testimony. Parties are entitled to designate percipient witness testimony as corporate testimony to satisfy their 30(b)(6) obligations. *See EEOC v. Boeing Co.*, 2007 WL 1146446 at *2 (D Ariz. 2007) ("a corporation may also *satisfy its Rule 30(b)(6) obligations* by offering to be bound by prior deposition testimony regarding a noticed Rule 30(b)(6) topic") (emphasis added); *Woods v. Standard Fire Insurance Co.*, 2022 WL 677567 at *2-3 (observing that courts "have overwhelmingly permitted such a practice" and holding that such designations were appropriate where defendant "timely communicate[d] the designated testimony to the noticing party," and the designated testimony was "on topic, rendering another deposition superfluous"); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641 at *12 (S.D. Ohio 2018); *Prosonic Corp. v. Stafford*, 2008 WL 2323528 (S.D. Ohio 2008); *Knox Trailers, Inc. v. Clark*, 2021 WL 6338461 at *1-2 (E.D. Tenn. 2021). Class Plaintiffs mischaracterize the holdings of these cases, all of which explicitly state that a party may satisfy its 30(b)(6) obligations by timely designating prior testimony thus rendering a subsequent deposition superfluous. Even Class Plaintiffs' own authorities acknowledge that such designation is an appropriate way of responding to a 30(b)(6) deposition notice. *See Calvary*, 2022 WL at *2 ("the parties may stipulate that the individual testimony of a witness will be binding on [the defendant.]"). Class Plaintiffs have deposed every current employee of TDK who, to TDK's knowledge, was a meaningful participant in any meeting or communication with other, unaffiliated, suspension assembly manufacturers outside the purchase or sale context, as well as all current employees who had responsibility for determining prices offered for suspension assemblies. Those depositions were extensive, they were exhaustive, and the designated testimony addresses TDK's knowledge on the identified topics. TDK timely designated that testimony as its own corporate testimony in response to Class Plaintiffs' 30(b)(6) notice, thereby satisfying its discovery obligations under Rule 30(b)(6).

Class Plaintiffs' arguments are a series of non-sequiturs. They argue that corporate testimony is not necessarily obviated simply because there is "overlap" between prior testimony and a 30(b)(6) topic, but TDK does not argue that there should be *no corporate testimony* on these topics.[4] Rather, it has designated the substantial prior testimony on these topics *as its corporate testimony*. Class Plaintiffs complain that TDK's designations were made "unilaterally" and are "incomplete," but TDK has repeatedly asked Class Plaintiffs to (a) identify any areas within the noticed topics that the designations do not address and (b) any testimony that TDK has not designated on these topics that Class Plaintiffs believe should have been designated. Class Plaintiffs have refused all of those requests. Class Plaintiffs argue that the designations are in some respects "contradictory," but the TDK Defendants' corporate knowledge is coincident with that of its relevant employees, including any inconsistencies in its employees' knowledge. That is not a reason to require duplicative or cumulative testimony on the same topics.

TDK is providing responsive, binding corporate testimony as permitted by the law, while sparing all parties the undue burden and needless expense of a redundant deposition. Class Plaintiffs do not and cannot contest that designation of prior testimony is an appropriate means of complying with Rule 30(b)(6), and their arguments that TDK's designations here are somehow insufficient do not withstand scrutiny. Their motion to compel should be denied.

---

[4] Class Plaintiffs' authorities all involved situations where a party *did not* offer testimony that would bind the corporation (unlike here) and did not necessarily reflect the information "known or reasonably available to the entity" (unlike here). *See Mitchell Eng'g*, 2010 WL 455290 at *1; *La. Pac. Corp*, 285 F.R.D. at 486-487; *Calvary*, 2022 WL 4099217 at *2.

**A. 30(b)(6) Topics No. 2 and 3: Your meetings, communications, and agreements with NHK and HTI concerning HDD Suspension Assemblies (regarding prices, shipment volumes, customer allocations, market shares, capacity, utilization, yields, etc.), the methods used to conceal such contacts and the identity of the persons and documents relating to the foregoing.**

<u>Class Plaintiffs' Position:</u> The excerpts which TDK unilaterally designated do not render corporate testimony on these topics unreasonably cumulative or duplicative as reflected in the sample excerpts in Exhibit A. *First*, many designations are incomplete and omit critical context, which renders the testimony vague or meaningless. Some excerpts begin in the middle of an answer or question. Many do not contain the relevant dates or exhibit numbers to bind the company to any particular meeting, communication or agreement. *Second*, numerous excerpts consist of the deponent disclaiming knowledge of the meeting, communication or agreement, despite the TDK's sworn admission of the same in its Second Supplemental Response to End-User Plaintiffs Interrogatory No. 1 ("Response"). This is precisely the type of gamesmanship the court warned against in *Woods*, the principal case cited by TDK. *Woods v. Standard Fire Ins. Co.*, No. 5:18-CV-658-JMH-MAS, 2022 WL 677567 (E.D. Ky. Mar. 7, 2022). *Third*, many identified excerpts are irrelevant to the topic. *Fourth*, the excerpts do not comprehensively respond to the topic as there are numerous communications that TDK has identified in its Response for which no or scant witness testimony has been obtained (*See, e.g.,* March 27, 2009 meeting in Hong Kong between Mr. Kobayashi and Mr. Hashimoto, August 5, 2014 meeting at the Shinagawa Prince Hotel between Mr. Ong and Mr. Hashimoto). Finally, TDK has cherry-picked its designations, omitting to designate testimony clearly describing meetings, communications, or agreements with competitors.[5] In light of the foregoing, TDK cannot satisfy its burden to demonstrate that corporate testimony on these topics would be unreasonably duplicative or cumulative.

<u>TDK's Position:</u> TDK designated testimony from 10 witnesses, who encompass the current TDK employees who were significant participants in the meetings or communications at issue. TDK does not have any additional information "reasonably available" to it (FRCP 30(b)(6)) relating to these meetings and communications beyond what these witnesses know. Some of the witnesses did not recall the specifics of particular meetings or communications, but that is also the extent of TDK's knowledge about those meetings. *See Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75-76 (D. Neb. 1995) (if the corporation "does not possess such knowledge as to so prepare [its designee,] then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization."). For other meetings, the witnesses' recollections may in some ways be inconsistent; however, TDK's knowledge extends no further than what the witnesses recall, including such inconsistencies. Some excerpts omit the beginnings of certain questions if there was an error that the questioner corrected; others begin in the "middle" of answers if there was an obvious transcription error at the beginning, or to omit intervening objections. Finally, it is not clear what "communications" Class Plaintiffs are referring to as having no "witness testimony." We have asked them to identify those, but they have not done so. The Response includes a list not only of meetings, but also of things like emails scheduling meetings, which may not have been specifically addressed in past testimony but also which provide no reason to order additional testimony.

**B. 30(b)(6) Topic No. 9: The process by which You negotiated, entered into, submitted proposals for, qualified for, approved or ratified sales of HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies, including the terms of any sales contracts.**

---

[5] Should the Court desire, Class Plaintiffs can provide a more comprehensive sampling of the problematic excerpts designated by TDK than provided in Exhibit A.

Class Plaintiffs' Position: TDK has not met its burden of showing that production of a witness on this topic is unreasonably cumulative or duplicative. The four witnesses for whom TDK has sought to designate testimony were in many instances unprepared to answer questions on the topic. For example, TDK designated the testimony of Steve Misuta, but when shown an RFQ from a customer, Mr. Misuta expressed confusion about numerous terms. Misuta at 290:22-292:4. The designated testimony does not elaborate on how TDK is qualified for or approved to sell HDD Suspension Assemblies to each of its handful of customers. Likewise, the designated testimony contains little discussion of the sales contracts other than vague reference to contract length, price and volume.

TDK's Position: TDK designated testimony thoroughly describing its process for negotiating, qualifying for, approving, and conducting sales of the relevant products including, but not limited to, testimony about: the purpose of negotiations with the commodities management teams of Seagate, Western Digital, and HGST; the identities of the MPT personnel who were involved in negotiating sales contracts with Seagate; the individuals who had ultimate authority for approving product supply agreements; the typical format of MPT's responses to requests for quotations; follow-on negotiations that occurred based on a change in circumstances after product supply agreements had been finalized; the frequency with which certain customers renegotiated prices; whether prices were always memorialized in a formal contract, as opposed to emails or meetings; how long it took to negotiate a product supply agreement; the term length of these product supply agreements; and whether the negotiation process changed during the relevant time period. A 30(b)(6) witness could hardly be expected to provide any more information than is already contained in the voluminous and detailed testimony TDK has designated. *Goldie v. Hartford Ins. Co.*, 2006 WL 8451352 at *2 (C.D. Cal. 2006). The designated testimony contains a far more comprehensive description of the TDK Defendants' sales process than any particular corporate witness could provide, and further 30(b)(6) testimony would be superfluous.

**C. 30(b)(6) Topic No. 11: Why and how You labeled, marked, and/or branded Your HDD Suspension Assemblies or HDD Components Incorporating Suspension Assemblies.**

Class Plaintiffs' Position: By admitting its designations are not extensive, TDK implicitly concedes that corporate testimony would not be unreasonably cumulative or duplicative. The designated testimony is inconsistent with one witness testifying the company etched an M from 2003 to the present, and another testifying the company switched to bar codes. There is no discussion of why the products were marked. In fact, Mr. Misuta testified he did not know why they were marked. Misuta at 100:3-25. Finally, there is no discussion of whether and how TDK marked components incorporating suspension assemblies. TDK also asserts in its final draft for the first time that this topic is overly broad and unduly burdensome, an objection which TDK failed to raise during the numerous meet and confers after it designated testimony. The entire topic is particularly relevant as Defendants have made clear their intention to challenge whether Class Plaintiffs can demonstrate they purchased a product containing a suspension assembly manufactured by one or more Defendants.

TDK's Position: TDK designated testimony describing the process by which it labeled, marked, and/or branded its Suspension Assemblies. TDK invited Class Plaintiffs to identify specific areas of inquiry that fall within the scope of the Topic, yet Class Plaintiffs refused to do so until this letter brief, claiming for the first time that they lack testimony regarding what MPT used to mark its products other than for a short period of time. Class Plaintiffs are wrong, as they appear to ignore the designated testimony of Mr. Misuta. *See* Misuta 97:12-98:22 (describing the "chemical process" for marking from 2000 to present). TDK objected to Topic 11 as overly broad and unduly burdensome in so far as

it seeks information concerning marking of components incorporating suspension assemblies, as that information is irrelevant to any issue in this litigation.

**D. 30(b)(6) Topic No. 13: The manner in which You review, measure, track, or otherwise monitor market trends, market forecasts, and demand for HDD Suspension Assemblies, HDD Components Incorporating Suspension Assemblies, and Finished Products, including internal and third-party studies, analyses, projections, or reports, and the identity of the persons and documents relating to the foregoing.**

Class Plaintiffs' Position: By admitting its designations are scant, TDK once again implicitly concedes that production of a witness on this topic is not unreasonably cumulative or duplicative. *First*, a number of TDK's designations are nonsensical. *See, e.g.,* Arimura 218:6-25; Nass 134:5-135:7. In other instances, TDK designated contradictory testimony. *Compare* Arimura 179:21-180:19 (denying receiving information from HP) *with* Arimura 214:4-217:13 (information received from HP). *Third*, TDK's designations do not comprehensively cover the topic. While there is some testimony about TDK subscribing to analyst reports and receiving free reports, there is a dearth of testimony about the internal studies, analysis, projections or reports TDK created based on such information. Other than Mr. Nass discussing that HTI had a "research analyst" (203:21-208:10) and Mr. Arimura testifying that the "passive components group" collected such information (35:17-36:9), there is no testimony identifying the persons involved in internal analyses, projections, or reports. After four months of meet and confers, TDK still does not offer to designate a corporate witness on the topic, but seeks to further delay by inviting perpetual delay. The parties have exhausted the meet and confer process and the discovery deadline is rapidly approaching.

TDK's Position: For Topic 13, TDK designated the testimony of 4 different witnesses. Again, TDK invited Class Plaintiffs to identify areas that they claim were not included in the designations. Class Plaintiffs overlook testimony that clearly provides the information they claim they lack. *See* Arimura 33:3 to 34:5 (describing reports created by TDK based on market information). Nonetheless, TDK remains willing to meet and confer with Class Plaintiffs to identify areas they claim are lacking.

**E. 30(b)(6) Topic No. 14: Your policies, practices, and procedures for setting sales prices for HDD Suspension Assemblies, and the identity of the persons and documents relating to the foregoing.**

Class Plaintiffs' Position: TDK's unilaterally designated testimony does not comprehensively address the topic. TDK's designations are limited to vague reference to "cost models", (Misuta 245:18-246:9), the definition of "average sales price" (*id*. at 129:22-131:14), a goal of 10% profit margin (*id*. 248:4-19), and negotiations occurring quarterly (Ong 411:2-414:25). The testimony describes, at most, three individuals involved in what appears to be an ad hoc pricing practice at TDK. *See, e.g.,* Exhibit A. Class Plaintiffs are entitled to corporate testimony describing, among other things, the various units and teams involved in setting prices, descriptions and bases for the models used and targets set, and descriptions of the inputs for those models.

TDK's Position: TDK designated testimony fully describing its policies, practices, and procedures for setting the prices of the relevant products. This includes testimony who was involved in setting prices (*see, e.g.*, Nass 41:6 to 47:21); the information relied upon (*see, e.g.*, Misuta 129:22 to 131:14, Nass 49:13 to 51:17), and how that information was used (*see, e.g.*, Misuta 245:18 to 246:9, 248:4-249:5). A 30(b)(6) witness could not provide any more comprehensive a description than is already contained in the designated testimony. *Goldie*, 2006 WL at *2.

Dated: September 20, 2022

Respectfully submitted,

| | |
|---|---|
| *William v. Reiss* <br> **ROBINS KAPLAN LLP** <br> William V. Reiss (*pro hac vice*) <br> 1325 Avenues of the Americas, Suite 2601 <br> New York, NY 10019 <br> Telephone: (212) 980-7408 <br> Facsimile: (212) 980-7499 <br> Email: wreiss@RobinsKaplan.com | *Victoria Sims* <br> **CUNEO GILBERT & LADUCA, LLP** <br> Victoria Sims *(pro hac vice)* <br> 4725 Wisconsin Avenue, NW, Suite 200 <br> Washington, DC 20016 <br> Telephone: (202) 789-3960 <br> Facsimile: (202) 789-1813 <br> Email: vicky@cuneolaw.com |
| *Christopher T. Micheletti* <br> **ZELLE LLP** <br> Christopher T. Micheletti, SBN 136446 <br> 555 12th Street, Suite 1230 <br> Oakland, CA 94607 <br> Telephone: (415) 693-0700 <br> Facsimile: (415) 693-0770 <br> Email: cmicheletti@zellelaw.com | *Shawn M. Raiter* <br> **LARSON • KING, LLP** <br> Shawn M. Raiter *(pro hac vice)* <br> 30 East Seventh Street, Suite 2800 <br> Saint Paul, MN 55101 <br> Telephone: (651) 312-6518 <br> Facsimile: (651) 789-4818 <br> Email: sraiter@larsonking.com |
| *Interim Co-Lead Class Counsel for the End-User Plaintiffs* | *Interim Co-Lead Class Counsel for the Reseller Plaintiffs* |

## ATTORNEY ATTESTATION

I, William V. Reiss, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*William V. Reiss*
William V. Reiss  (*pro hac vice*)