UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION

**This Document Relates to:**

All Reseller and End-User Actions

Case No. 19-md-02918-MMC

MDL No. 2918

**JOINT LETTER BRIEF REGARDING PLAINTIFFS' MOTION TO COMPEL DOCUMENTS REDACTED OR BEING WITHHELD BY THE TDK DEFENDANTS ON THE GROUNDS OF PRIVILEGE**

Judge: Hon. Magistrate Judge Kandis A. Westmore
Courtroom: 7, 19th Floor

Plaintiffs[1] move to compel TDK[2] to produce documents listed on its privilege log that are redacted or being withheld from production. Plaintiffs seek production of the claimed privileged documents on the grounds that TDK's log fails to substantiate the privilege for the challenged entries, including by failing to identify an attorney involved in the communication, among other deficiencies. TDK believes that each of the challenged privilege log entries are compliant with the Federal Rules and that production of these documents is not warranted. Plaintiffs and TDK are at an impasse. The parties have met and conferred through correspondence and videoconferences since March 2022, culminating in a videoconference call on September 20, 2022, during which they reached impasse on the issues raised herein. The parties have complied with Section 9 of the Northern District's Guidelines for Professional Conduct.

[1] "Plaintiffs" herein comprise End-User Plaintiffs and Reseller Plaintiffs.
[2] "TDK" includes Defendants TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, Hutchinson Technology Inc., and SAE Magnetics (H.K.) Ltd.

Dated: September 27, 2022

Respectfully submitted,

*/s/ William V. Reiss*
William V. Reiss (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
wreiss@robinskaplan.com

*/s/ Christopher T. Micheletti*
Christopher T. Micheletti
**ZELLE LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zellelaw.com

***Interim Co-Lead Class Counsel for the End-User Plaintiffs***

*/s/ Victoria Sims*
Victoria Sims (*pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

*/s/ Shawn M. Raiter*
Shawn M. Raiter (*pro hac vice*)
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

***Interim Co-Lead Class Counsel for the Reseller Plaintiffs***

*/s/ Michelle Park Chiu*
Michelle Park Chiu, SBN 248421
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
michelle.chiu@morganlewis.com

J. Clayton Everett, Jr. (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
clay.everett@morganlewis.com

***Counsel for Defendants TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, Hutchinson Technology Inc., and SAE Magnetics (H.K.) Ltd.***

**Plaintiffs' Position**

**1. Introduction.** TDK has withheld from production or redacted, on the grounds of attorney-client privilege, 672 standalone or parent documents prepared and sent by non-attorneys, for which it is unable to identify an attorney that was involved in the communication (the "No Attorney Entries"). These entries do not reflect an attorney in the author, to, from or cc lines. Rather, TDK asserts that "In-house Counsel," "Outside Counsel" or law firm was involved. Notably, TDK's in-house legal department, like many in Japan, includes non-attorneys, but TDK has not substantiated that its references to "In-house Counsel" are to licensed attorneys. Moreover, the privilege "description" for these entries makes no reference to the involvement of "counsel" in the communication. TDK also withholds or redacts 350 standalone or parent documents that were prepared by or sent to or from non-attorneys, where an attorney is only cc'd (the "Attorney cc'd Only Entries"). The privilege "description" for these entries similarly makes no reference to involvement of "counsel," and TDK's conclusory assertion that these entries "contain legal advice" does not adequately substantiate the privilege. TDK has clearly failed to meet its burden of substantiating its privilege claims for these two categories of documents.

**2. Factual Background**. TDK provided its first amended privilege log on April 14, 2022. 4/14/22 email. Class Plaintiffs raised the log deficiencies at issue here on April 22, 2022, identifying *specific entries* where TDK failed to "identify any attorney(s) involved in the communication or in the provision of any legal advice," and where TDK's privilege description was deficient, and an attorney was only cc'd on the communication. 4/22/22 letter at 3-5. On May 8, 2022, TDK responded, indicating that it "will review the documents Plaintiffs identified and revise its privilege log entries as necessary to identify the attorney(s) or firm(s) providing the legal advice incorporated within these documents, to the extent such information is available." 5/8/22 letter at 3. On June 24, 2022, TDK produced its final privilege log ("TDK's Log"), in which TDK purported to identify the involved attorney or firm, to the extent such information was available. 6/24/22 letter at 2. Class Plaintiffs identified and continued to challenge the sufficiency of TDK's privilege log entries at issue here. *See* 7/27/22 letter at 1-3; 9/12/22 letter at 1-2. TDK refused to further amend its privilege log, refused to divulge whether entries' references to "In-house Counsel" included "members of TDK's Legal and Compliance Department in Japan and not members of the bar," and asserted that its entries where an attorney was only cc'd were sufficient. *See* TDK's 8/23/22 letter at 1-2.

Attached hereto as Exhibit 1 are exact copies of examples of the No Attorney Entries, including any attachments.[1] TDK generally describes the No Attorney Entries as (1) a "communication" or "communication and attachment(s)" (2) "among company personnel containing legal advice . . .." (3) regarding a topic. *See generally* Ex. 1. None of these entries identify the attorney that provided the "legal advice." None of the entries listing "In-House Counsel" confirm that the "In-house" legal department member who purportedly provided the legal advice is a licensed attorney. Similarly, although TDK identifies 227 *individual* "Outside Counsel" attorneys in its privilege log "Counsel Legend," TDK cannot say that any one of them was involved in the withheld "Outside Counsel" communications. And the privilege descriptions do not tie the "legal advice" to any attorney—generic or otherwise. TDK's Attorney cc'd Only Entries are similarly deficient. The privilege descriptions do not identify which attorney is providing the claimed legal advice, or whether the legal advice is in the communication, attachment or both. *See generally* Ex. 2. TDK claims these

[1] A handful of attachments in this category refer to individual attorneys and are not challenged here, but TDK does not identify those individual attorneys in the parent document entry. *See, e.g.* Ex. 1 Log ID 14358. Also, to the extent any of the challenged entries here are produced, any family members that fail to identify an attorney should also be produced. *See* 9/12/22 letter at 2.

documents are email strings that start with communications between client and counsel, where counsel fall off the to/from email chain. But that cannot be discerned from each log entry. It is equally likely that the company personnel veered from discussing legal advice to business strategy while attorneys remained on the chain, or the communication may address a business strategy. The fact that the attorneys are being cc'd only is at best an ambiguous indicator of privilege.

**3. Argument.** The burden is on the party asserting the privilege to establish all the elements of the privilege. *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002); *see also* Dkt. No. 218 at 8 (ESI protocol: "privilege log shall provide . . . information sufficient to establish the privilege(s)"). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Martin*, 278 F.3d at 999. The attorney-client privilege has eight elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992). The entries challenged here fail to satisfy these requirements.

***First***, Failure to identify attorneys who prepared documents or gave advice amounts to an incurable and "fatal deficienc[y] of [a] privilege log." *See Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C 07–1359 PJH (JL), 2008 WL 5214330, at *1, 3 (N.D. Cal. Dec. 12, 2008) (party ordered to produce documents for 800 log entries that "do not identify any attorney as involved in the advice or opinion"); *Largan Precision Co., Ltd. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 12643367, at *2 (N.D. Cal. Dec. 21, 2014) (requiring that privilege log "specif[y] the identity of the attorney's [sic] involved and represent[] that the communications were for legal advice"); *see also Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 WL 6258490, at *7 (N.D. Ill. Nov. 22, 2019) (reasoning that the "failure to identify 'the name and capacity' of the individuals who gave the advice" make it "impossible to assess [the] privilege claim."). TDK's reliance on *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *5-6 (N.D. Fla. Dec. 29, 2017) is unavailing. The court there performed an *in camera* review, and the other deficiencies in TDK's log entries outlined here were not present. TDK's failure to identify the attorney involved in the No Attorney Entries waives the privilege and those documents should be produced. ***Second***, identification of only a law firm similarly fails to meet the foregoing requirements. *See id*. (identification of a law firm insufficient as the advice may have come from an individual at the firm to whom the attorney-client privilege does not extend); *see also Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (rejecting argument that logs that "provide only the name of a law firm" may be adequate). Under these authorities, TDK's No Attorney Entries fail to sustain the privilege.

The need for TDK to identify an involved attorney is critical because, as noted above, TDK's legal department includes personnel who are not licensed attorneys. Numerous courts recognize this issue and require more than what TDK has provided. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2019 WL 130412, at *2 (N.D. Fla. Jan. 8, 2019) (noting there are three types of Japanese lawyers—Bengoshi (licensed), non-Bengoshi (unlicensed), and Benrishi (patent)—and stating that the "distinction is important because attorney-client privilege does not apply to communications with unlicensed counsel"); *In re Rivastigmine Pat. Litig.*, 237 F.R.D. 69, 94 (S.D.N.Y. 2006), *abrogated on other grounds by In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016) ("To the extent that the legal professionals at the Japanese firm were not attorneys or patent agents, the plaintiffs have not sustained their burden of demonstrating any applicable privilege."); *see also* The Sedona Conference, *The Sedona Conference Commentary on Cross-Border Privilege Issues*, 23 Sedona Conf. J. 475, 583–84 (2022) ("because in-house lawyers

are not considered bengoshi, the privilege does not currently protect 'communications between a corporation and non-bengoshi in-house lawyers.'"). TDK's failure to establish that its references to "In-house Counsel" refer to licensed attorneys fails to sustain the privilege.

Additionally, "merely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013). Rather, "district courts in the Ninth Circuit have adopted the 'dominant purpose' test in assessing whether a communication is privileged, concluding that a communication is privileged if the 'dominant' or 'primary' purpose of the communication is to obtain legal advice." *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-6213 MMM(JCx), 2010 WL 11468584, at *4 (C.D. Cal. June 29, 2010) (citing cases). As one court observed: "Far too often, however, business e-mails are copied or addressed to lawyers simply to try to make it appear that the privilege applies when it, in fact, does not because the communication's primary purpose is business, not legal." *United States v. Heine*, No. 3:15–cr–238–SI, 2016 WL 6138245, at *1 (D. Or. Oct. 21, 2016) (quotations omitted). Similarly, simply labeling a document as "containing legal advice," as TDK does in virtually every challenged entry, is insufficient to allow a court to determine the validity of a privilege claim. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905-RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008) (vague or conclusory statements that a communication between non-legal employees "reflects" legal advice are insufficient); *Apple Inc. v. Samsung Elec. Co., Ltd.*, 306 F.R.D. 234, 239-40 (N.D. Cal. 2015) ("generic statements such as 'email reflecting legal advice regarding licensing, prepared at the direction of counsel in anticipation of litigation'" insufficient). As such, for the reasons detailed above, TDK has similarly failed to sustain the privilege on its Attorney cc'd Only Entries. All of the challenged entries should be produced, or a sample produced for the Court's review *in camera*.

**TDK's Position**

**Introduction:** Class Plaintiffs make no reasonable, good faith claim that the documents they seek compelled are not privileged. Identification of specific attorneys is not necessary to substantiate a privilege assertion; and TDK's Log provides sufficient information to assess the privilege claims Class Plaintiffs challenge. Nor is there any logical or legal support for Class Plaintiffs' contention that documents in which counsel are cc'd or bcc'd are presumptively non-privileged. This argument is logically flawed, ignores the Log's detailed descriptions, and disregards relevant authority regarding such communications.

**TDK's Log Justifies Privilege Claims for Entries Without Specific Attorneys.** Class Plaintiffs seek to compel production of 672 documents (and their attachments) where the Log identifies a particular law firm, "Outside Counsel," or "In-House Counsel" as providing legal advice, but which do not identify the specific attorney who provided the advice.

TDK withheld in whole or in part 32,812 documents from its production (which comprised more than 1.15 million documents) on the basis of privilege. It produced a privilege log consistent with the ESI Protocol for those 32,812 documents, identifying the particular attorneys who provided advice for more than 98% of those withheld documents. Other than their assertion that any document in which an attorney was cc'd or bcc'd is presumptively not privileged, which is discussed below, Class Plaintiffs do not challenge the assertions of privilege for any of the documents on TDK's Log in which TDK was able to identify a particular individual who provided advice. For a small number of documents (less than 2% of the total on the Log), however, TDK has not been able to identify the particular individual whose advice is being discussed in the withheld document. Class Plaintiffs assert that TDK's inability to identify the particular attorney who provided legal advice results in waiver of privilege, notwithstanding the

fact that it is clear from the Log and from many documents produced in redacted form that the documents are, in fact, privileged. That position has no merit.

TDK's inability to determine in a tiny fraction of cases the particular individual who provided legal advice reflected in a document does not provide a good faith basis to believe that those documents are not privileged. Courts recognize that it is not uncommon within a complex organization that employees transmitting communications from counsel often refer to counsel generally as opposed to a specific attorney or law firm. *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *5 (N.D. Fla. Dec. 29, 2017). TDK was able to identify for each of the documents in this category whether the advice was provided by a particular law firm, outside counsel, or in-house counsel, and its Log reflects that information; nevertheless, Class Plaintiffs seek to compel production of these documents. *See, e.g.*, Entry 5112 (text reads "changes made by MoFo"); Entry 13469 (text reads "We got DD report for IP from Sheppard Mullin.").

The speciousness of Class Plaintiffs' challenge is demonstrated by redacted documents in this category *that were produced to Class Plaintiffs*, where the produced text makes clear that the document conveys legal advice.[2] *See, e.g.*, Entry 1371 (text reads "TDK lawyers regarding competition law matters"); Entry 1858 (text reads "According to our lawyers"); Entry 13905 (text reads "confirmation from our US tax lawyer"); Entry 14005 (text reads "further clarification from our local tax lawyer"). It would be unreasonable to conclude that TDK's inability to identify—after the passage of many years—which particular individual provided legal advice results in waiver of privilege, particularly where TDK was able to identify the category of counsel—or particular law firm—from which advice was provided. Not one of the cases Class Plaintiffs cite stands for such a sweeping and unreasonable position. Those cases all involved repeated failures to comply with Court orders and involved multiple issues that rendered the privilege logs at issue deficient, or other—unrelated—reasons to believe from the face of the log that the documents were not privileged. *See, e.g.*, *Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, No. 07-CV-1359 PJH, 2008 WL 5214330, at *1 (N.D. Cal. Dec. 12, 2008) (defendant repeatedly ignored court orders, had merely conclusory descriptions that did not support privilege assertions, and failed to identify senders and recipients to many challenged entries); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (noting that entries also had "bare-boned" descriptions, were undated, and failed to identify their author or recipients).

Rule 26 does not require that attorneys be identified by name to substantiate a claim of privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 48 (9th Cir. 2005) (citations omitted) (parties must only "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection"). The lack of a specific attorney name "is not fatal to the assertion of privilege so long as it is evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney. . . . ***The important inquiry from a privilege perspective is the nature of the communication and the context in which it is made*** . . . ." *Aripiprazole*, 2017 WL 6757558, at *5 (emphasis added); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2016 WL 3743102, at *3 (D. Kan. July 13, 2016) (rejecting privilege challenges based solely on party's failure to identify specific attorney names).

While Plaintiffs claim that it is "critical" for TDK to name counsel because there are non-lawyers

[2] These documents are available for the Court's review, in the form they were produced to Class Plaintiffs.

in TDK's Legal Department,[3] only 135 of the 627 challenged entries refer to "In-House Counsel." The rest either identify particular law firms or outside counsel. Class Plaintiffs make no argument to suggest that advice provided by outside counsel or particular law firms is not privileged. Regardless, TDK is not asserting privilege just because there is a reference to In-House Counsel, but rather because, as set forth in the Log, these entries contain legal advice.

**The Entries on TDK's Log Where Counsel Are CC'd Provide Sufficient Information to Establish Its Privilege Assertions.** Class Plaintiffs argue that TDK improperly asserts privilege over 350 entries where attorneys are only listed in the CC and BCC columns of the Log and the descriptions of the subject matter in the Log do not refer to specific counsel. This challenge has no logical, legal, or factual basis. Contrary to Plaintiffs' assertion, "[an] attorney being in the CC, rather than To or From, column is not *prima facie* evidence that the email is not privileged. Rather, the deciding issue is whether the communications sought legal advice from a lawyer." *Heartland Consumer Prod. LLC v. DineEquity, Inc.*, No. 17-CV-01035-SEB, 2018 WL 3861648, at *1 (S.D. Ind. Aug. 14, 2018) (citations omitted). The "dominant purpose" test referenced by Class Plaintiffs is inapplicable, as it only applies to communications where in-house counsel has both legal and non-legal roles. *See U.S. v. ChevronTexaco Corp.*, 241 F.Supp. 2d 1065, 1076 (N.D. Cal. 2002). Class Plaintiffs do not assert that any of TDK's in-house counsel serve dual roles, nor do they have any factual basis to do so. And most of the documents in this category (over 70% of the total in this category) involve communications with outside counsel. "Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." *Id.* at 1073.

The Log supports the privilege assertions for these 350 challenged entries. The descriptions clearly identify patent infringement ***litigation*** (Entry 12147), government ***investigations*** (Entry 8189), or other clearly ***legal issues*** such as employer-employee disputes or IP licensing negotiations as the subject matter (Entry 2127). *See* Exhibit 3. Class Plaintiffs fail to provide any credible basis to assert that such entries are not privileged. Even if the "dominant purpose" test applies, the Log's descriptions show that the "dominant purpose" of these entries are legal. Moreover, in many instances, the challenged entry is one email in a string of replies, where an earlier or later email in time was sent to or from an attorney. In other words, if a TDK non-attorney employee sends an email to a TDK attorney requesting legal advice, and the attorney replies to that email, and the non-attorney responds back, each email in that "string" may be logged separately. All of those communications are clearly privileged. In some cases, in emails that occur *after* the attorney initially received or responded to a communication, the attorney's email address will appear in the CC field, yet that does not mean the communication is not privileged. *See, e.g.*, Exhibit 3, Entries 70 (entry 10343 unchallenged), 345 (entry 340 unchallenged), 4555 (entry 4589 unchallenged), 4861 (entries 4806, 12092 unchallenged). Notably, Class Plaintiffs do *not* challenge the email to the attorney or from the attorney in the *same email string*, yet inexplicably challenge the email where the attorney is in the cc field, which is nonsensical.

---

[3] The parties did not meet and confer about Class Plaintiffs' claim (raised for this first time in this Motion) that entries identifying "In-House Counsel" as providing legal advice are not privileged because some members of Japanese corporate legal departments are not licensed attorneys. While Class Plaintiffs generally inquired if any entries were based on communications from non-licensed attorneys in TDK's Legal Department, Plaintiffs never responded to TDK's request that they identify specific entries that they contended were at issue and seemed to have dropped the issue.

Dated: September 27, 2022

Respectfully submitted,

*/s/ William V. Reiss*
William V. Reiss (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
wreiss@robinskaplan.com

*/s/ Christopher T. Micheletti*
Christopher T. Micheletti
**ZELLE LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zellelaw.com

***Interim Co-Lead Class Counsel for the End-User Plaintiffs***

*/s/ Victoria Sims*
Victoria Sims (*pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

*/s/ Shawn M. Raiter*
Shawn M. Raiter (*pro hac vice*)
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

***Interim Co-Lead Class Counsel for the Reseller Plaintiffs***

*/s/ Michelle Park Chiu*
Michelle Park Chiu, SBN 248421
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
michelle.chiu@morganlewis.com

J. Clayton Everett, Jr. (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
clay.everett@morganlewis.com

***Counsel for Defendants TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, Hutchinson Technology Inc., and SAE Magnetics (H.K.) Ltd.***

**ATTORNEY ATTESTATION**

I, Christopher T. Micheletti, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*Christopher T. Micheletti*
Christopher T. Micheletti