# EXHIBIT 43

```
[108th Congress Public Law 237]
[From the U.S. Government Printing Office]


[DOCID: f:publ237.108]

[[Page 118 STAT. 661]]

Public Law 108-237
108th Congress

                                 An Act


   To encourage the development and promulgation of voluntary consensus
  standards by providing relief under the antitrust laws to standards
   development organizations with respect to conduct engaged in for the
    purpose of developing voluntary consensus standards, and for other
             purposes. <<NOTE: June 22, 2004 -  [H.R. 1086]>>

    Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,

     TITLE I--STANDARDS <<NOTE: Standards Development Organization
 Advancement Act of 2004.>> DEVELOPMENT ORGANIZATION ADVANCEMENT ACT OF
2004

SEC. 101. <<NOTE: 15 USC 4301 note.>> SHORT TITLE.

    This title may be cited as the ``Standards Development Organization
Advancement Act of 2004''.

SEC. 102. <<NOTE: 15 USC 4301 note.>> FINDINGS.

    The Congress finds the following:
            (1) In 1993, the Congress amended and renamed the National
        Cooperative Research Act of 1984 (now known as the National
        Cooperative Research and Production Act of 1993 (15 U.S.C. 4301
        et seq.)) by enacting the National Cooperative Production
        Amendments of 1993 (Public Law 103-42) to encourage the use of
        collaborative, procompetitive activity in the form of research
        and production joint ventures that provide adequate disclosure
        to the antitrust enforcement agencies about the nature and scope
        of the activity involved.
            (2) Subsequently, in 1995, the Congress in enacting the
        National Technology Transfer and Advancement Act of 1995 (15
        U.S.C. 272 note) recognized the importance of technical
        standards developed by voluntary consensus standards bodies to
        our national economy by requiring the use of such standards to
        the extent practicable by Federal agencies and by encouraging
        Federal agency representatives to participate in ongoing
        standards development activities. The Office of Management and
        Budget on February 18, 1998, revised Circular A-119 to reflect
        these changes made in law.
            (3) Following enactment of the National Technology Transfer
        and Advancement Act of 1995, technical standards developed or
        adopted by voluntary consensus standards bodies have replaced
        thousands of unique Government standards and specifications
        allowing the national economy to operate in a more unified
        fashion.

[[Page 118 STAT. 662]]
```

        (4) Having the same technical standards used by Federal
    agencies and by the private sector permits the Government to
    avoid the cost of developing duplicative Government standards
    and to more readily use products and components designed for the
    commercial marketplace, thereby enhancing quality and safety and
    reducing costs.
        (5) Technical standards are written by hundreds of nonprofit
    voluntary consensus standards bodies in a nonexclusionary
    fashion, using thousands of volunteers from the private and
    public sectors, and are developed under the standards
    development principles set out in Circular Number A-119, as
    revised February 18, 1998, of the Office of Management and
    Budget, including principles that require openness, balance,
    transparency, consensus, and due process. Such principles
    provide for--
            (A) notice to all parties known to be affected by
        the particular standards development activity,
            (B) the opportunity to participate in standards
        development or modification,
            (C) balancing interests so that standards
        development activities are not dominated by any single
        group of interested persons,
            (D) readily available access to essential
        information regarding proposed and final standards,
            (E) the requirement that substantial agreement be
        reached on all material points after the consideration
        of all views and objections, and
            (F) the right to express a position, to have it
        considered, and to appeal an adverse decision.
        (6) There are tens of thousands of voluntary consensus
    standards available for government use. Most of these standards
    are kept current through interim amendments and interpretations,
    issuance of addenda, and periodic reaffirmation, revision, or
    reissuance every 3 to 5 years.
        (7) Standards developed by government entities generally are
    not subject to challenge under the antitrust laws.
        (8) Private developers of the technical standards that are
    used as Government standards are often not similarly protected,
    leaving such developers vulnerable to being named as
    codefendants in lawsuits even though the likelihood of their
    being held liable is remote in most cases, and they generally
    have limited resources to defend themselves in such lawsuits.
        (9) Standards development organizations do not stand to
    benefit from any antitrust violations that might occur in the
    voluntary consensus standards development process.
        (10) As was the case with respect to research and production
    joint ventures before the passage of the National Cooperative
    Research and Production Act of 1993, if relief from the threat
    of liability under the antitrust laws is not granted to
    voluntary consensus standards bodies, both regarding the
    development of new standards and efforts to keep existing
    standards current, such bodies could be forced to cut back on
    standards development activities at great financial cost both to
    the Government and to the national economy.

[[Page 118 STAT. 663]]

SEC. 103. DEFINITIONS.

    Section 2 of the National Cooperative Research and Production Act of
1993 (15 U.S.C. 4301) is amended--
            (1) in subsection (a) by adding at the end the following:
            ``(7) The term `standards development activity' means any
        action taken by a standards development organization for the
        purpose of developing, promulgating, revising, amending,

```
            reissuing, interpreting, or otherwise maintaining a voluntary
            consensus standard, or using such standard in conformity
            assessment activities, including actions relating to the
            intellectual property policies of the standards development
            organization.
                ``(8) The term `standards development organization' means a
            domestic or international organization that plans, develops,
            establishes, or coordinates voluntary consensus standards using
            procedures that incorporate the attributes of openness, balance
            of interests, due process, an appeals process, and consensus in
            a manner consistent with the Office of Management and Budget
            Circular Number A-119, as revised February 10, 1998. The term
            `standards development organization' shall not, for purposes of
            this Act, include the parties participating in the standards
            development organization.
                ``(9) The term `technical standard' has the meaning given
            such term in section 12(d)(4) of the National Technology
            Transfer and Advancement Act of 1995.
                ``(10) The term `voluntary consensus standard' has the
            meaning given such term in Office of Management and Budget
            Circular Number A-119, as revised February 10, 1998.''; and
            (2) by adding at the end the following:

      ``(c) The term `standards development activity' excludes the
  following activities:
                ``(1) Exchanging information among competitors relating to
            cost, sales, profitability, prices, marketing, or distribution
            of any product, process, or service that is not reasonably
            required for the purpose of developing or promulgating a
            voluntary consensus standard, or using such standard in
            conformity assessment activities.
                ``(2) Entering into any agreement or engaging in any other
            conduct that would allocate a market with a competitor.
                ``(3) Entering into any agreement or conspiracy that would
            set or restrain prices of any good or service.''.

  SEC. 104. RULE OF REASON STANDARD.

      Section 3 of the National Cooperative Research and Production Act of
  1993 (15 U.S.C. 4302) is amended by striking ``of any person in making
  or performing a contract to carry out a joint venture shall'' and
  inserting the following: ``of--
                ``(1) any person in making or performing a contract to carry
            out a joint venture, or
                ``(2) a standards development organization while engaged in
            a standards development activity,

  shall''.

  SEC. 105. LIMITATION ON RECOVERY.

      Section 4 of the National Cooperative Research and Production Act of
  1993 (15 U.S.C. 4303) is amended--

  [[Page 118 STAT. 664]]

                (1) in subsections (a)(1), (b)(1), and (c)(1) by inserting
            ``, or for a standards development activity engaged in by a
            standards development organization against which such claim is
            made'' after ``joint venture'',
            (2) in subsection (e)--
                    (A) by inserting ``, or of a standards development
                activity engaged in by a standards development
                organization'' before the period at the end, and
                    (B) by redesignating such subsection as subsection
```

```
             (f), and
             (3) by inserting after subsection (d) the following:

   ``(e) Subsections (a), (b), and (c) shall not be construed to modify
 the liability under the antitrust laws of any person (other than a
 standards development organization) who--
             ``(1) directly (or through an employee or agent)
         participates in a standards development activity with respect to
         which a violation of any of the antitrust laws is found,
             ``(2) is not a fulltime employee of the standards
         development organization that engaged in such activity, and
             ``(3) is, or is an employee or agent of a person who is,
         engaged in a line of commerce that is likely to benefit directly
         from the operation of the standards development activity with
         respect to which such violation is found.''.

SEC. 106. ATTORNEY FEES.

    Section 5 of the National Cooperative Research and Production Act of
1993 (15 U.S.C. 4304) is amended--
             (1) in subsection (a) by inserting ``, or of a standards
         development activity engaged in by a standards development
         organization'' after ``joint venture'', and
             (2) by adding at the end the following:

   ``(c) Subsections (a) and (b) shall not apply with respect to any
person who--
             ``(1) directly participates in a standards development
         activity with respect to which a violation of any of the
         antitrust laws is found,
             ``(2) is not a fulltime employee of a standards development
         organization that engaged in such activity, and
             ``(3) is, or is an employee or agent of a person who is,
         engaged in a line of commerce that is likely to benefit directly
         from the operation of the standards development activity with
         respect to which such violation is found.''.

SEC. 107. DISCLOSURE OF STANDARDS DEVELOPMENT ACTIVITY.

    Section 6 of the National Cooperative Research and Production Act of
1993 (15 U.S.C. 4305) is amended--
             (1) in subsection (a)--
                     (A) by redesignating paragraphs (1), (2), and (3) as
                 subparagraphs (A), (B), and (C), respectively,
                     (B) by inserting ``(1)'' after ``(a)'', and
                     (C) by adding at the end the following:

   ``(2) A <<NOTE: Deadline.>> standards development organization may,
not later than 90 days after commencing a standards development activity
engaged in for the purpose of developing or promulgating a voluntary
consensus standards or not later than 90 days after the date of the
enactment of the Standards Development Organization Advancement Act of
2004, whichever is later, file simultaneously with

[[Page 118 STAT. 665]]

the Attorney General and the Commission, a written notification
disclosing--
             ``(A) the name and principal place of business of the
         standards development organization, and
             ``(B) documents showing the nature and scope of such
         activity.

Any standards development organization may file additional disclosure
notifications pursuant to this section as are appropriate to extend the
```

```
protections of section 4 to standards development activities that are
not covered by the initial filing or that have changed significantly
since the initial filing.'',
          (2) in subsection (b)--
                (A) in the 1st sentence by inserting ``, or a notice
            with respect to such standards development activity that
            identifies the standards development organization
            engaged in such activity and that describes such
            activity in general terms'' before the period at the
            end, and
                (B) in the last sentence by inserting ``or available
            to such organization, as the case may be'' before the
            period,
          (3) in subsection (d)(2) by inserting ``, or the standards
      development activity,'' after ``venture'',
          (4) in subsection (e)--
                (A) by striking ``person who'' and inserting
            ``person or standards development organization that'',
            and
                (B) by inserting ``or any standards development
            organization'' after ``person'' the last place it
            appears, and
          (5) in subsection (g)(1) by inserting ``or standards
      development organization'' after ``person''.

SEC. 108. <<NOTE: 15 USC 4301 note.>> RULE OF CONSTRUCTION.

    Nothing in this title shall be construed to alter or modify the
antitrust treatment under existing law of--
          (1) parties participating in standards development activity
      of standards development organizations within the scope of this
      title, including the existing standard under which the conduct
      of the parties is reviewed, regardless of the standard under
      which the conduct of the standards development organizations in
      which they participate are reviewed, or
          (2) other organizations and parties engaged in standard-
      setting processes not within the scope of this amendment to the
      title.

  TITLE II--ANTITRUST <<NOTE: Antitrust Criminal Penalty Enhancement and
Reform Act of 2004>> CRIMINAL PENALTY ENHANCEMENT AND REFORM ACT OF 2004

SEC. 201. <<NOTE: 15 USC 1 note.>> SHORT TITLE.

    This title may be cited as the ``Antitrust Criminal Penalty
Enhancement and Reform Act of 2004''.

[[Page 118 STAT. 666]]

      Subtitle A--Antitrust Enforcement Enhancements and Cooperation
                                Incentives

SEC. 211. <<NOTE: 15 USC 1 note.>> SUNSET.

    (a) In General.--Except as provided in subsection (b), the
provisions of sections 211 through 214 shall cease to have effect 5
years after the date of enactment of this Act.
    (b) Exception.--With respect to an applicant who has entered into an
antitrust leniency agreement on or before the date on which the
provisions of sections 211 through 214 of this subtitle shall cease to
have effect, the provisions of sections 211 through 214 of this subtitle
shall continue in effect.

SEC. 212. <<NOTE: 15 USC 1 note.>> DEFINITIONS.
```

```
        In this subtitle:
                (1) Antitrust division.--The term ``Antitrust Division''
        means the United States Department of Justice Antitrust
        Division.
                (2) Antitrust leniency agreement.--The term ``antitrust
        leniency agreement,'' or ``agreement,'' means a leniency letter
        agreement, whether conditional or final, between a person and
        the Antitrust Division pursuant to the Corporate Leniency Policy
        of the Antitrust Division in effect on the date of execution of
        the agreement.
                (3) Antitrust leniency applicant.--The term ``antitrust
        leniency applicant,'' or ``applicant,'' means, with respect to
        an antitrust leniency agreement, the person that has entered
        into the agreement.
                (4) Claimant.--The term ``claimant'' means a person or
        class, that has brought, or on whose behalf has been brought, a
        civil action alleging a violation of section 1 or 3 of the
        Sherman Act or any similar State law, except that the term does
        not include a State or a subdivision of a State with respect to
        a civil action brought to recover damages sustained by the State
        or subdivision.
                (5) Cooperating individual.--The term ``cooperating
        individual'' means, with respect to an antitrust leniency
        agreement, a current or former director, officer, or employee of
        the antitrust leniency applicant who is covered by the
        agreement.
                (6) Person.--The term ``person'' has the meaning given it in
        subsection (a) of the first section of the Clayton Act.

SEC. 213. <<NOTE: 15 USC 1 note.>> LIMITATION ON RECOVERY.

    (a) In General.--Subject to subsection (d), in any civil action
alleging a violation of section 1 or 3 of the Sherman Act, or alleging a
violation of any similar State law, based on conduct covered by a
currently effective antitrust leniency agreement, the amount of damages
recovered by or on behalf of a claimant from an antitrust leniency
applicant who satisfies the requirements of subsection (b), together
with the amounts so recovered from cooperating individuals who satisfy
such requirements, shall not exceed that portion of the actual damages
sustained by such claimant which is attributable to the commerce done by
the applicant in the goods or services affected by the violation.
    (b) Requirements.--Subject to subsection (c), an antitrust leniency
applicant or cooperating individual satisfies the requirements

[[Page 118 STAT. 667]]

of this subsection with respect to a civil action described in
subsection (a) if the court in which the civil action is brought
determines, after considering any appropriate pleadings from the
claimant, that the applicant or cooperating individual, as the case may
be, has provided satisfactory cooperation to the claimant with respect
to the civil action, which cooperation shall include--
                (1) providing a full account to the claimant of all facts
        known to the applicant or cooperating individual, as the case
        may be, that are potentially relevant to the civil action;
                (2) furnishing all documents or other items potentially
        relevant to the civil action that are in the possession,
        custody, or control of the applicant or cooperating individual,
        as the case may be, wherever they are located; and
                (3)(A) in the case of a cooperating individual--
                        (i) making himself or herself available for such
                interviews, depositions, or testimony in connection with
                the civil action as the claimant may reasonably require;
                and
                        (ii) responding completely and truthfully, without
```

```
                  making any attempt either falsely to protect or falsely
                  to implicate any person or entity, and without
                  intentionally withholding any potentially relevant
                  information, to all questions asked by the claimant in
                  interviews, depositions, trials, or any other court
                  proceedings in connection with the civil action; or
                (B) in the case of an antitrust leniency applicant, using
              its best efforts to secure and facilitate from cooperating
              individuals covered by the agreement the cooperation described
              in clauses (i) and (ii) and subparagraph (A).

    (c) Timeliness.--If the initial contact by the antitrust leniency
applicant with the Antitrust Division regarding conduct covered by the
antitrust leniency agreement occurs after a State, or subdivision of a
State, has issued compulsory process in connection with an investigation
of allegations of a violation of section 1 or 3 of the Sherman Act or
any similar State law based on conduct covered by the antitrust leniency
agreement or after a civil action described in subsection (a) has been
filed, then the court shall consider, in making the determination
concerning satisfactory cooperation described in subsection (b), the
timeliness of the applicant's initial cooperation with the claimant.
    (d) Continuation.--Nothing in this section shall be construed to
modify, impair, or supersede the provisions of sections 4, 4A, and 4C of
the Clayton Act relating to the recovery of costs of suit, including a
reasonable attorney's fee, and interest on damages, to the extent that
such recovery is authorized by such sections.

SEC. 214. <<NOTE: 15 USC 1 note.>> RIGHTS, AUTHORITIES, AND LIABILITIES
            NOT AFFECTED.

    Nothing in this subtitle shall be construed to--
            (1) affect the rights of the Antitrust Division to seek a
        stay or protective order in a civil action based on conduct
        covered by an antitrust leniency agreement to prevent the
        cooperation described in section 213(b) from impairing or
        impeding the investigation or prosecution by the Antitrust
        Division of conduct covered by the agreement;
            (2) create any right to challenge any decision by the
        Antitrust Division with respect to an antitrust leniency
        agreement; or

[[Page 118 STAT. 668]]

            (3) affect, in any way, the joint and several liability of
        any party to a civil action described in section 213(a), other
        than that of the antitrust leniency applicant and cooperating
        individuals as provided in section 213(a) of this title.

SEC. 215. INCREASED PENALTIES FOR ANTITRUST VIOLATIONS.

    (a) Restraint of Trade Among the States.--Section 1 of the Sherman
Act (15 U.S.C. 1) is amended by--
            (1) striking ``$10,000,000'' and inserting ``$100,000,000'';
            (2) striking ``$350,000'' and inserting ``$1,000,000''; and
            (3) striking ``three'' and inserting ``10''.

    (b) Monopolizing Trade.--Section 2 of the Sherman Act (15 U.S.C. 2)
is amended by--
            (1) striking ``$10,000,000'' and inserting ``$100,000,000'';
            (2) striking ``$350,000'' and inserting ``$1,000,000''; and
            (3) striking ``three'' and inserting ``10''.

    (c) Other Restraints of Trade.--Section 3 of the Sherman Act (15
U.S.C. 3) is amended by--
            (1) striking ``$10,000,000'' and inserting ``$100,000,000'';
```

```
        (2) striking ``$350,000'' and inserting ``$1,000,000''; and
        (3) striking ``three'' and inserting ``10''.

                  Subtitle B--Tunney Act Reform

SEC. 221. PUBLIC <<NOTE: 15 USC 16 note.>> INTEREST DETERMINATION.

    (a) Congressional Findings and Declaration of Purposes.--
            (1) Findings.--Congress finds that--
                    (A) the purpose of the Tunney Act was to ensure that
                the entry of antitrust consent judgments is in the
                public interest; and
                    (B) it would misconstrue the meaning and
                Congressional intent in enacting the Tunney Act to limit
                the discretion of district courts to review antitrust
                consent judgments solely to determining whether entry of
                those consent judgments would make a ``mockery of the
                judicial function''.
            (2) Purposes.--The purpose of this section is to effectuate
        the original Congressional intent in enacting the Tunney Act and
        to ensure that United States settlements of civil antitrust
        suits are in the public interest.

    (b) Public Interest Determination.--Section 5 of the Clayton Act (15
U.S.C. 16) is amended--
            (1) in subsection (d), by inserting at the end the
        following: ``Upon application by the United States, the district
        court may, for good cause (based on a finding that the expense
        of publication in the Federal Register exceeds the public
        interest benefits to be gained from such publication), authorize
        an alternative method of public dissemination of the public
        comments received and the response to those comments.'';
            (2) in subsection (e)--
                    (A) in the matter before paragraph (1), by--
                            (i) striking ``court may'' and inserting
                        ``court shall''; and
                            (ii) inserting ``(1)'' before ``Before''; and
                    (B) striking paragraphs (1) and (2) and inserting
                the following:

[[Page 118 STAT. 669]]

                    ``(A) the competitive impact of such judgment, including
                termination of alleged violations, provisions for enforcement
                and modification, duration of relief sought, anticipated effects
                of alternative remedies actually considered, whether its terms
                are ambiguous, and any other competitive considerations bearing
                upon the adequacy of such judgment that the court deems
                necessary to a determination of whether the consent judgment is
                in the public interest; and
                    ``(B) the impact of entry of such judgment upon competition
                in the relevant market or markets, upon the public generally and
                individuals alleging specific injury from the violations set
                forth in the complaint including consideration of the public
                benefit, if any, to be derived from a determination of the
                issues at trial.

    ``(2) Nothing in this section shall be construed to require the
court to conduct an evidentiary hearing or to require the court to
permit anyone to intervene.''; and
            (3) in subsection (g), by inserting ``by any officer,
        director, employee, or agent of such defendant'' before ``, or
        other person''.

    Approved June 22, 2004.
```

```
LEGISLATIVE HISTORY--H.R. 1086:
---------------------------------------------------------------------------

HOUSE REPORTS: No. 108-125 and Pt. 2 (Comm. on the Judiciary).
CONGRESSIONAL RECORD:
                                                  Vol. 149 (2003):
                                      June 10, considered and passed
                                          House.
                                                  Vol. 150 (2004):
                                      Apr. 2, considered and passed
                                          Senate, amended.
                                      June 2, House concurred in Senate
                                          amendment.

                                    <all>
```