IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br><u>Flextronics Int'l USA, Inc. v. TDK Corporation</u>, Case No. 22-cv-2798 | Case No. 19-md-02918-MMC<br>Case No. 22-cv-02798-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

      Before the Court is defendants' Motion, filed September 9, 2022, "to Dismiss Flex's Amended Complaint."  Plaintiff Flextronics International USA, Inc. ("Flex") has filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

      In the operative complaint, the Amended Complaint ("AC"), Flex alleges defendants entered into a conspiracy to "fix, raise, stabilize, and maintain prices of, and allocate market share for, Hard Disk Drive ('HDD') suspension assemblies" from "at least as early as 2003" (<u>see</u> AC ¶ 1) through April 2016 (<u>see</u> AC ¶ 126).  Flex alleges it "indirectly purchase[d]" suspension assemblies when it purchased HDDs from Seagate, Toshiba, and Western Digital (<u>see</u> AC ¶¶ 28, 194), which three companies had purchased the suspension assemblies contained in their respective HDD products directly from defendants (<u>see</u> AC ¶ 167).  According to Flex, during the period in which the conspiracy was operative, it "purchased (at least) billions of dollars of HDDs incorporating affected suspension assemblies . . . at prices that were artificially inflated as a result of the conspiracy."  (<u>See</u> AC ¶ 201.)  Based on said allegations, Flex asserts two

_____

[1] By order filed October 28, 2022, the Court took the matter under submission.

causes of action, namely, Count I, titled "Violation of California and Tennessee Antitrust Statutes," and Count II, titled "Violation of California Business and Professions Code § 17200, et. seq. ['UCL']."

Flex's initial complaint, in which it raised the same claims as are asserted in the AC, was filed on May 11, 2022.  By the instant motion, defendants argue Flex's claims accrued "as early as 2016 . . . or at the latest in February 2018" (see Defs.' Mot. at 9:4), that Flex's claims are barred by the applicable statutes of limitations, which the parties agree are four years for Flex's California claims and three years for Flex's Tennessee claim, and that Flex has failed to sufficiently plead any exception to the applicable statutes of limitations.

In opposition, Flex argues its claims are timely under the "discovery rule." (See AC ¶ 230.)[2]  Specifically, Flex relies on its allegation that it "did not discover . . . [d]efendants entered into a combination and conspiracy to fix prices of, and allocate markets for, HDD suspension assemblies, until July 29, 2019, when the DOJ [Department of Justice] filed criminal charges against NHK Spring for violating Section 1 of the Sherman Act." (See AC ¶ 231.)  Although Flex acknowledges it "has sophisticated procedures in place to routinely monitor input costs, including costs of HDDs and other electronic components," it alleges there was "no indication to Flex as a reasonable indirect purchaser of [suspension assemblies] that any conspiratorial activity was taking place which would artificially inflate the prices of HDDs prior to July 29, 2019." (See AC ¶ 233).

The California Supreme Court has held the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  See Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999).  Under California law,

---

[2] Flex alternatively alleges the running of the statute of limitations was tolled for other reasons.  (See, e.g., AC ¶¶ 226-29.)  In light of the Court's findings as to the discovery rule, discussed below, the Court does not address the sufficiency of plaintiff's alternative allegations.

2

the plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements" and "has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry." See id. at 398 (internal quotations and citation omitted); see also id. at 398 n.2 (citing "uniform California rule" that limitations period "begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his claims") (internal quotation, citation, and emphasis omitted).[3]

The Supreme Court of Tennessee has held "a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." See John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W. 2d 528, 532 (Tenn. 1998). Under Tennessee law, the "knowledge component" may be actual or constructive, and a plaintiff has the requisite constructive knowledge when the plaintiff "becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." See id.

In asserting Flex cannot establish its claims are timely under the discovery rule, defendants rely on four documents that were published more than four years before Flex filed its initial complaint and that, according to defendants, suffice to put a reasonable person on notice of the claims Flex asserts.

Two of those four documents pertain to actions taken by the Japan Fair Trade Commission ("JFTC"). The first such document is an article posted July 26, 2016, on the

---

[3] In their motion, defendants, in a footnote, assert the discovery rule does not apply to plaintiff's UCL claim. As the California Supreme Court has explained, however, "the UCL is governed by common law accrual rules," such as "delayed discovery," to "the same extent as any other statute." See Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1194, 1996 (2013); see also, e.g., In re California Bail Bond Antitrust Litig., 2020 WL 3041316, at *18-19 (N.D. Cal. April 13, 2020) (rejecting argument discovery rule does not apply "as a matter of law" to price-fixing claim brought under UCL; dismissing UCL claim with leave to amend to afford plaintiff leave to allege facts to support application of discovery rule).

3

Japan Times's website, in which said publication reported that, on such date, the JFTC had "searched the offices of TDK Corp. and NHK Spring Co. . . . on suspicion they formed a price cartel for electronic parts for hard disk drives," specifically, "suspensions, which are used in hard drives in personal computers and gaming consoles" (see Chiu Decl. Ex. A),[4] and the second is a press release posted February 9, 2018, on the JFTC's website, in which the JFTC stated it had "issued a cease and desist order and surcharge payment orders to the manufacturers of suspension for Hard Disk Drives," having "found that they substantially restrained competition in the field of sales of suspension for the Japanese customer by agreeing to maintain sales price of suspension" (see id. Ex. D).

The remaining two documents on which defendants rely are articles reporting about a statement made by Hutchinson Technology Inc. ("HTI"), one of the defendants in the above-titled action. Both articles, one posted July 27, 2016, on Reuter's website (see id. Ex. B), and the other posted July 29, 2016, on Competition Policy International's website (see id. Ex. C), reported that HTI had announced it had received a letter from the Antitrust Division of the DOJ stating the DOJ had "opened an investigation relating to the sale of suspension assemblies for use in HDDs," that "neither HTI or any HTI employee [was] currently a subject of the DOJ investigation," and that "HTI intend[ed] to cooperate with the DOJ's investigation." (See id.; see also id. Ex. B).

Under both California and Tennessee law, the issue of whether a plaintiff should have discovered sufficient facts to cause the applicable limitations period to begin running ordinarily is an issue of fact. See Broberg v. Guardian Life Ins. Co., 171 Cal. App. 4th 912, 922 (2009) (holding date "[w]hen a plaintiff reasonably should have discovered facts for purposes of . . . application of the delayed discovery rule is generally a question of fact"); Hathaway v. Middle Tennessee Anesthesiology, P.C., 724 S.W. 2d

---

[4] Defendants' request, unopposed by Flex, that the Court take judicial notice of the four documents is hereby GRANTED. See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (holding "[c]ourts may take judicial notice of publications introduced to indicate what was in the public realm at the time," but "not whether the contents of those articles were in fact true").

355, 360 (Tenn. 1986) (holding "[t]he question of whether due diligence under the circumstances required an examination of public records or any other particular form of investigation is properly a question for the trier of fact after hearing all the evidence"). Where, however, "the allegations in the complaint and facts properly subject to judicial notice . . . can support only one reasonable conclusion," the issue is subject to determination as a matter of law. See Broberg, 171 Cal. App. 4th at 922; see also Schmank v. Sonic Automotive, Inc., 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008) (holding where "no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, . . . judgment on the pleadings or dismissal of the complaint is appropriate").

        Here, assuming, arguendo, Flex was required to engage in a reasonable investigation, prior to July 2019, to determine whether it been injured by its purchases of HDDs, the documents on which defendants rely are insufficient to compel a finding that Flex's claims are, as a matter of law, time-barred.

        First, although the article discussing the JFTC's investigation, as well as the press release discussing the JFTC's finding that a price-fixing conspiracy existed, expressly refer to a conspiracy to fix the prices of suspension assemblies (see Chiu Decl. Exs. A, D), the press release states the JFTC found the conspiracy restrained competition in sales "for the Japanese customer" (see id. Ex. D), which qualification suffices to preclude a finding that Flex, as a matter of law, was on inquiry notice as to its claim that defendants conspired to restrain trade in California and Tennessee.

        Next, neither of the articles reporting on the DOJ's "investigation relating to the sale of suspension assemblies for use in HDDs" (see id. Ex. B, C) states the investigation pertained to price-fixing and, consequently, a reasonable person could understand the investigation pertained to some other type of activity. See In re Copper Antitrust Litig., 436 F.3d 782, 786-87 (9th Cir. 2006) (rejecting argument that plaintiff bringing price-fixing claim against bank was, as matter of law, on inquiry notice based on articles reporting

bank was "under investigation by the Commodities Futures Trading Commission").

Further, even if any of the above four articles, either separately or in combination, would cause a reasonable reader to suspect price-fixing, defendants fail to show what information Flex would have discovered had it made further inquiry at that time. See id. at 789 (denying motion for summary judgment brought on statute of limitations grounds; noting lack of showing as to "what facts the plaintiffs' diligent inquiries would have revealed").

Moreover, generally, where courts have found a plaintiff was on inquiry notice as to its claim based on publicly available information, the information on which the defendant relied had been highly publicized. See, e.g., Maestas v. Sofamor Danek Group, Inc., 1999 WL 74212, at *4 ((Tenn. Ct. App. February 16, 1999) (holding statute of limitations began running on date "nationwide television program publicized many of the allegations that plaintiffs [made]"); see also Dayco v. Goodyear Tire & Rubber Co., 523 F.3d 389, 394 (6th Cir. 1975) (finding antitrust complaint time-barred, where Congress had "conducted hearings that explored some of the same violations complained of by [plaintiff]" and "industry-wide publicity was given to a Federal Trade Commission suit describing [defendant's conduct] that ended in a cease and desist order").  Here, at the pleading stage, there is nothing before the Court to suggest either the JFTC's investigation or the DOJ's investigation was publicized beyond the articles and press release cited by defendants.  See Conmar Corp. v. Mitsui & Co., 858 F.2d 499, 503 (9th Cir. 1988) (holding publication of single article in San Francisco Chronicle and single article in Wall Street Journal, each of which reported on existing federal investigation into defendant's unlawful conduct, insufficient to show plaintiff was, as matter of law, on constructive notice as of date articles were published).

Accordingly, the motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 21, 2022

MAXINE M. CHESNEY
United States District Judge