KENNETH R. O'ROURKE, SBN 120144
JEFF VANHOOREWEGHE, SBN 313371
MIKAELA E. EVANS-AZIZ, SBN 339283
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:     (415) 947-2000
Facsimile:      (415) 947-2099
Email: korourke@wsgr.com
           jvanhooreweghe@wsgr.com
           mevansaziz@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

\*Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>ALL ACTIONS | **SEAGATE AND FLEXTRONICS' EMERGENCY MOTION FOR CLARIFICATION OF PROTECTIVE ORDER AND EXPERT STIPULATION IN LIGHT OF UPCOMING DECEMBER 6, 2022 DEPOSITION**<br><br>Hon. Maxine M. Chesney |

On December 1, 2022, less than one week from the deposition of End-User Plaintiffs' ("EUPs") expert, EUPs advised both Seagate[1] and Flextronics International USA, Inc. ("Flex") (collectively, "Direct Action Plaintiffs" or "DAPs") that DAPs will be excluded from the deposition of EUPs' expert economist on December 6, 2022. Reseller Plaintiffs similarly advised that they would exclude DAPs from their expert's deposition on December 14, 2022. The prejudice resulting from such exclusion is obvious: the class experts estimate both overcharges and pass-through rates, which DAPs' experts will likely estimate as well. Exclusion from the class experts' depositions would therefore deny DAPs an opportunity to assess critiques of the class experts' approach that may also be relevant to the DAP experts' analyses. Exclusion also would prevent DAPs from timely objecting to or following up on questions eliciting expert testimony potentially relevant to DAPs' cases.

EUPs' effort to exclude DAPs from expert depositions is merely the final step in the EUPs' escalating campaign to leverage DAPs into paying for a portion of the class experts' work. EUPs' campaign started by denying DAPs full access to third-party data productions produced to EUPs in this case. While DAPs initially provided these third-party productions to DAPs, EUPs later decided they could not permit full access to materials produced in this case because the Protective Order restricted them from doing so (which it does not), only after DAPs balked at EUPs' demands for payment.[2] At the same time, EUPs assured DAPs that they would eventually receive the same data in the EUPs' expert backup. But EUPs then retracted that assurance and conditioned access to the Fed. R. Civ. Pro. 26(a)(2)(B) expert backup materials on DAPs' payment for the classes' costs of processing the third-party data for class certification. EUPs moved the goalposts further by deciding that DAPs cannot have access to EUPs' unredacted filings on the docket in this MDL.

EUPs then reversed course yet again when they (and Resellers) announced—*yesterday*—that DAPs cannot attend the MDL depositions of the class experts. This surprise reversal comes despite

---

[1] "Seagate" herein comprises Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International.

[2] Flex did agree to purchase certain third-party data from the EUPs. But Flex objects to footing the bill for EUPs' analysis and report. Flex, like Seagate, has retained its own expert and will produce its own estimate of damages.

EUPs indicating (last week) that they did not see any issue with DAPs attending the expert depositions. Decl. of Mikaela E. Evans-Aziz ("MEA Decl.") ¶¶ 18-20.

This Court should not countenance EUPs' attempt to hold materials produced and filed in this MDL for ransom. DAPs should not be required to front the costs of the classes' expert reports in order to access information produced in this case and to the accompanying unredacted filings, and to attend depositions in this MDL. In addition to the prejudice from being barred from MDL depositions, DAPs will also be prejudiced from not having access to the unredacted filings and expert backup. This prejudice is already occurring to Seagate, as NHK recently cited EUPs' class certification materials in its interrogatory responses *to Seagate*, and Seagate does not have access to the unredacted expert report that is cited nor the expert backup material.

DAPs bring this motion to clarify that nothing in the Protective Order (ECF No. 136) ("the PO") restricts DAPs—like all parties to this MDL—access to third-party information produced in this MDL, which includes, *inter alia*, attendance at depositions where third-party information may be addressed and access to all unredacted filings from Case No. 3:19-md-02918-MMC.[3] DAPs also seek clarification that the Expert Stipulation (ECF No. 206) *requires* production of the expert reports and underlying backups to all parties in the MDL.[4] Notably, DAPs asked EUPs to join this motion for clarity, but EUPs refused, which underscores that EUPs are only seeking payment for material they should produce.

While DAPs request clarification of these Orders to resolve issues going forward in the MDL, the emergency motion is required due to the Classes' refusal yesterday to allow DAPs to attend the class expert depositions scheduled for **December 6, 2022** (of EUPs' expert, Dr. Netz) and **December 14, 2022** (of Resellers' expert, Dr. Williams). DAPs therefore respectfully request that this Court act prior to December 6, 2022. Given the emergency nature of this Motion, DAPs respectfully request that any response deadline be expedited to December 5, 2022 at 9:00 a.m., rather than the default

---

[3] TDK does not oppose this Motion and NHK does not take a position.

[4] This is not a discovery dispute, as it involves the interpretation of two Orders of this Court and has broad implications for access to information in this MDL (including unredacted filings) now and going forward for all parties. Thus, DAPs have brought this Motion before Your Honor.

response time under Civ. L.R. 7-3—or, in the alternative, that a special status conference be scheduled pursuant to Your Honor's Standing Order.

**STATEMENT OF FACTS**

EUPs' refusal to share information produced and filed in this case—and the Class Plaintiffs' further refusal to allow DAPs to attend the upcoming expert depositions—stems from their recently revised interpretation of the PO and Expert Stipulation. For over a year, EUPs had reproduced the third-party productions they received in this MDL to Defendants and Seagate. MEA Decl. ¶ 3. In doing so, EUPs indicated the confidentiality designation from the producing third party under the PO. *Id.* In September 2022, EUPs stated they no longer believed the PO allowed them to reproduce the third-party productions to Seagate. *Id.* ¶ 4. EUPs indicated, however, that they believed they *would* be able to share the data with Seagate under the Expert Stipulation with the backup for their upcoming class certification expert report, and it seemed the issue would resolve soon. *Id.* ¶¶ 4-5. But EUPs filed their class certification papers on October 11, 2022, and served their backup on October 14, 2022, to all parties *except* DAPs. *Id.* ¶ 9. Notably, Resellers served their backup to DAPs on October 14, 2022 in compliance with the Expert Stipulation. *Id.* ¶ 10.

Upon noticing EUPs did not serve their backup, Seagate asked EUPs to do so as required under the Expert Stipulation (and as EUPs indicated they would). But EUPs refused to provide Seagate and Flex access to the EUPs' unredacted class certification brief (ECF No. 605), the unredacted expert report and exhibits of their expert, Dr. Netz (ECF No. 605-4), or the expert backup for Dr. Netz. *Id* ¶¶ 9, 11-14; Decl. of Ashley Hyun-Jeong Kim ("AHK Decl.") ¶ 3. This came as a surprise given the parties' prior discussions on the Expert Stipulation. Although EUPs have taken the revised position that they cannot provide DAPs with the third-party information due to the PO—and are not required to under the Expert Stipulation—EUPs also indicated they *are* willing to provide such information if DAPs *pay* for part of the costs for EUPs' class certification report. MEA Decl. ¶ 14; AHK Decl. ¶ 3.[5]

---

[5] Flex agreed to purchase certain data purportedly relied on by EUPs' expert in order to avoid bringing a dispute to the Court. This Motion is not intended to modify or affect that agreement. Without the unredacted class certification briefing and expert backup production, however, Flex is unable to assess

In an effort to resolve this, Seagate and EUPs met and conferred again on November 23, 2022. Seagate explained that DAPs were prepared to file a motion for clarification of these orders in order to obtain (or restore) access to the materials and filings in this case. MEA Decl. ¶ 16. Seagate also explained that clarification was needed so DAPs could attend the upcoming expert depositions. *Id.* ¶ 18. EUPs stated that they did not think there would be any issue with DAPs attending the depositions since DAPs are parties to the MDL and these are MDL depositions, but that they would think about it further. *Id.*

Yesterday, on December 1, 2022, EUPs' counsel indicated that the Class Plaintiffs would not allow DAPs to attend the depositions due to the "possibility" of third-party information "being disclosed at these depositions."[6] *Id.* ¶ 20. DAPs requested a final meet and confer with Class Plaintiffs and DAPs last night. *Id.* ¶ 21. Class Plaintiffs offered that DAPs could attend the depositions but would have to leave the room for discussions of third-party information and DAPs would not have access to the unredacted report and exhibits of Dr. Netz. *Id.* ¶ 22. DAPs explained why this was not a workable solution—including the fact that it was impossible to know how often third-party information would come up, the parties would likely have different interpretations over when DAPs had to leave the room, and not having access to the unredacted report which would inevitably be the main exhibit for questioning at the deposition would be a non-starter for DAPs. *Id.* ¶¶ 22-24. And DAPs explained that this did not solve the broader dispute about interpretation of the PO and expert stipulation. *Id.* ¶ 22.

## ARGUMENT

The Expert Stipulation requires EUPs to produce all documents and information used in expert reports to all parties in this case, and the PO does nothing to restrict that. For most of this case, EUPs agreed, but now they do not. EUPs' new position is two-fold: (i) the Expert Stipulation was intended

---

arguments related to the EUPs' experts' methodology and conclusions that are likely to be relevant to Flex's expert's work as well.

[6] It is unclear on what basis Resellers are refusing to allow DAPs to attend the deposition of their expert, Dr. Williams, as Resellers have already produced his unredacted report and expert backup to DAPs. Thus, no third-party information would come up at his deposition in his report or underlying his report that Resellers have not already shared with DAPs.

to require production of expert materials only to parties opposing class certification, and (ii) the PO does not allow DAPs to view third-party information produced in this MDL unless EUPs first obtain permission from the third parties. But DAPs are *parties to the MDL*—and, importantly for the protection of the third parties' information, *parties to the MDL PO*. EUPs have used their new position to deny DAPs access to third-party data; as a basis for withholding their unredacted filings and expert backup; and to keep DAPs from attending MDL depositions. Notably, EUPs previously indicated that DAPs could have access to all of this material and information (indeed, Resellers even provided access to the expert report and materials), but EUPs have just now changed their mind.

Neither of EUPs' interpretation of these Orders is correct. The PO has no such prohibition on the free flow of information across cases in this MDL—nor would it make sense to, given that this would frustrate the very purpose of an MDL. While the protection of third-party information produced in this MDL is critical, the protections are all in the MDL PO as written and as applied in this case for years. Moreover, the Expert Stipulation also applies broadly to the MDL and plainly requires *all parties* to receive the documents and information, including expert backup productions, used in the expert reports.

EUPs' new interpretation of the PO and Expert Stipulation is going to generate significant inefficiencies and prejudice to all parties in this case. In fact, EUPs' refusal to provide their filings and underlying information is already prejudicing Seagate, as NHK recently cited EUPs' materials in its interrogatory responses *to Seagate*. The DAPs will both be prejudiced by being barred from attending the upcoming depositions, particularly as these depositions will focus on issues that are also relevant to DAPs, such as overcharge, pass-through, and damages. And this prejudice will only continue as the parties participate in coordinated summary judgment and pre-trial proceedings in this MDL if EUPs can arbitrarily restrict DAPs' access to information *in this MDL*.

I.     **END-USER PLAINTIFFS MISINTERPRET THE PO AND EXPERT STIPULATION**

***Expert Stipulation.*** The Expert Stipulation governing this MDL provides that

> Within three business days of any party serving any expert reports and/or expert declarations in this case, the party or parties proffering the expert witness shall produce all documents and/or information required by Rule 26(a)(2)(B) . . . including, but not limited to, underlying data . . . sufficient to reconstruct the expert witness's work . . .

Expert Stip. ¶ 3.  There is no dispute that the party producing an expert report should be producing the backup to all other parties in "this case."  The Expert Stipulation governing this MDL has no limitation on the "party" or "this case."  Indeed, even EUPs once acknowledged their intention to serve the expert backup materials to Seagate (including the third-party data) pursuant to the Expert Stipulation.  MEA Decl. ¶ 4.  But EUPs have now changed their position, stating the Expert Stipulation was intended to require production only to the parties opposing class certification.  At the same time, EUPs state they are willing to provide the backup to Seagate if Seagate paid for part of EUPs' cost for processing the underlying data for EUPs' class certification motion.  *Id.* ¶ 14.  There is nothing in the Expert Stipulation stating the backup materials should be served only to parties opposing class certification and nothing allowing EUPs to withhold the material for payment.

***Protective Order.***  EUPs claim that they cannot provide anything to DAPs that contains references to third-party data—whether the unredacted filings, the expert backup, or the data productions themselves.  EUPs and Resellers now maintain that this also bars DAPs' attendance at the expert depositions because of "the possibility of such information being disclosed at these depositions."  MEA Decl. ¶ 20.  This is because EUPs take the position that only they (and Resellers, and Defendants) can qualify as the "Receiving Parties" of third-party data pursuant to the PO.  But EUPs' attempt to use the PO is misplaced.  There is no requirement in the PO—nor would it make sense—that a Receiving Party can only be the MDL party that *first* received discovery directly from the producing party.  There is no restriction in the definition of "Receiving Parties" either, as it is defined as "a Party that receives Disclosure or Discovery Material from a Producing Party."  PO § 2.15.  There is no reason parties to the MDL and parties to the PO should not be considered "Receiving Parties" under the PO when they are *receiving* "Disclosure or Discovery Material" by viewing the unredacted filings and underlying information, or attending a deposition where such information is discussed.

The PO's definition section applies to the situations at issue here.  For example, when EUPs produce their expert backup, EUPs will be considered the "Producing Party" (*id.* § 2.12), the recipients will be considered "Receiving Parties" (*id.* § 2.15), the third-party data contained in that backup is

considered "Disclosure or Discovery Material" (*id.* § 2.5), the third party is considered the "Designating Party" (*id.* § 2.4), and, finally, the third-party data would be "Protected Material" (*id.* § 2.14). The same would be true if DAPs attend the class expert depositions, should any of this third-party information come up in testimony or an exhibit.

The "Designating Party" definition confirms that a Designating Party is not necessarily also the Producing Party. *Id.* § 2.4 (defining "Designating Party" as "a Party or Non-Party that designates information or items that it produces in disclosures *or that others produce or disclose*") (emphasis added). As a "Receiving Party" of "Protected Material," DAPs will be bound by all restrictions on use set forth in the PO, including allowing only DAPs' outside counsel access to the information, where applicable.

Although DAPs each served third-party subpoenas on EUPs in an effort to find some way for EUPs to provide this information, *ad seriatim* subpoenas are not necessary under the PO, and are not an efficient way to address this issue. The fact that third parties consented to their information being reproduced to DAPs as long as it maintained the confidentiality designations under the PO confirms that the third parties understand that the PO governs the entire MDL. MEA Decl. ¶ 8.

## II. DENYING SOME PARTIES ACCESS TO MDL DISCOVERY AND FILINGS WILL RESULT IN PREJUDICE TO THOSE PARTIES

Keeping certain parties in this case from accessing all filings and underlying materials will significantly prejudice DAPs—especially where this refusal is being used to prevent MDL parties from attending MDL depositions. For example, Dr. Netz estimates an overcharge to direct purchasers and a pass-through rate to EUPs, both calculated in part from Seagate's data. This certainly relates to DAPs, who will likely create similar estimates. DAPs are entitled to the ability to understand and analyze Dr. Netz's overcharge and pass-through estimates and the inevitable arguments concerning the estimates' reliability, as the Expert Stipulation contemplates. And DAPs should not be barred from attending the depositions where Defendants will be questioning experts on these very methodologies and conclusions. On the parties' meet and confer specific to the depositions, DAPs explained to the Class Plaintiffs why attendance at these depositions was important and why receiving the transcript after the fact was not sufficient. While DAPs do not necessarily contemplate asking

questions at the deposition, they cannot foreclose their ability to do so—and, moreover, they cannot waive their ability to object to questioning that affects the interests of their clients, where appropriate.

Seagate is already experiencing prejudice from not being able to access some information. NHK has already demonstrated that it may be using information from the class cases in the Seagate case, as NHK cited EUPs' expert report from Dr. Netz in a recent response to a Seagate contention interrogatory.

> The End-User Plaintiffs' expert, Dr. Janet S. Netz similarly concluded that 'there is evidence that each level of the distribution chain is highly competitive, and I expect passthrough of an industry-wide cartel overcharge to be positive and close to 100%.' See Expert Report of Janet S. Netz, Ph.D. 87, ECF No. 605-4. Dr. Netz also cited evidence that she purports to support the pass-through of any overcharge by the Seagate Plaintiffs, as well as other levels of the distribution chain. See *id.* at 66–78.

*Id.* ¶ 15. Seagate does not have access to this unredacted report nor the underlying backup data and regressions "sufficient to reconstruct the expert witness's work," Expert Stip. ¶ 3—yet these materials are being cited by NHK against Seagate.

As further examples of the prejudice already occurring, there are places in the redacted version of the expert report that EUPs provided to Seagate where Seagate cannot see what Dr. Netz is saying *about* Seagate and its own data. *See, e.g.*, Netz Report at 18:

> These figures are corroborated by Seagate and Western Digital sales data, which show that [REDACTED], respectively, of their global sales. See Exhibit 12 for Seagate and Western Digital's global and U.S. sales for the years 2003 through 2019.

There is also redacted text that then cites *to* Seagate material—meaning that Seagate is unable to see what statements EUPs and Dr. Netz are relying on Seagate's information to support. *Id.* at 83 & n.346.

This prejudice will only continue. As one of only a few direct purchasers, Seagate will continue to be front and center in the class cases. Restricting Seagate's ability to access filings in the EUPs' case that relate to Seagate—including, for example, issues of overcharge and pass-through based on Seagate's information—will result in significant harm to Seagate as the parties continue to move to summary judgment, merits expert reports, and trial. This is especially true when NHK may try to use some of that same information *against* Seagate in the Seagate case—as it has already shown it will do.

III. **DENYING SOME PARTIES ACCESS TO MDL DISCOVERY AND FILINGS WOULD FRUSTRATE THE PURPOSE OF AN MDL: TO COORDINATE DISCOVERY AND PRE-TRIAL PROCEEDINGS IN RELATED CASES**

A key reason why MDLs exist is to coordinate discovery and ensure access to information across related cases. That is why the parties have a governing protective order that applies broadly to the entire MDL—not just to individual cases within it—to ensure that discovery can be used freely across the MDL and that the parties in the various cases are all bound by the same confidentiality obligations. Class Plaintiffs have benefitted greatly from being in an MDL with Seagate—providing them with access to Seagate documents, data, and depositions. DAPs are only requesting, as parties to this MDL, access to third-party information that has been produced and is being used and filed in this MDL—especially where Class Plaintiffs are using this third-party information to prevent DAPs' attendance at MDL depositions.

## CONCLUSION

For the foregoing reasons, DAPs respectfully request clarification that (1) nothing in the PO prevents parties in the MDL (who are parties to the PO) from seeing third-party information produced in this MDL, which includes attendance at depositions and access to third-party productions and unredacted filings, and (2) the Expert Stipulation requires production of expert reports and expert report backup productions, including underlying data.

Dated: December 2, 2022

Respectfully submitted,

/s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke
Jeff VanHooreweghe
Mikaela E. Evans-Aziz
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
korourke@wsgr.com
jvanhooreweghe@wsgr.com
mevansaziz@wsgr.com

|   |   |
|---|---|
| 1 | ***Counsel for Plaintiffs Seagate Technology LLC,*** |
| 2 | ***Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and*** |
| 3 | ***Seagate Technology International*** |
| 4 | <u>/s/ Charles E. Tompkins</u> |
|   | Charles E. Tompkins (*pro hac vice*) |
| 5 | **BRYAN CAVE LEIGHTON PAISNER LLP** |
|   | 1155 F Street NW, Suite 700 |
| 6 | Washington, DC 20004 |
| 7 | Phone: (202) 508-6000 |
|   | Fax: (202) 508-6200 |
| 8 | charles.tompkins@bclplaw.com |
| 9 | Lindsay S. Johnson (*pro hac vice*) |
| 10 | **BRYAN CAVE LEIGHTON PAISNER LLP** |
|   | 1201 West Peachtree Street NW, 14th Floor |
| 11 | Atlanta, Georgia 30309 |
| 12 | Phone: (404) 572-6732 |
|   | Fax: (404) 420-0832 |
| 13 | lindsay.johnson@bclplaw.com |
| 14 | Ashley Hyun-Jeong Kim (*pro hac vice*) |
|   | Evan P. Boyle (*pro hac vice*) |
| 15 | **BRYAN CAVE LEIGHTON PAISNER LLP** |
| 16 | 161 North Clark Street, Suite 4300 |
|   | Chicago, IL 60601 |
| 17 | Phone: (312) 602-5000 |
|   | Fax: (312) 602-5050 |
| 18 | ashley.kim@bclplaw.com |
| 19 | evan.boyle@bclplaw.com |
| 20 | Joseph James Poppen (CA SBN 239282) |
|   | **BRYAN CAVE LEIGHTON PAISNER LLP** |
| 21 | Three Embarcadero Center, 7th Floor |
|   | San Francisco, CA 94111 |
| 22 | Phone: (415) 675-3400 |
| 23 | Fax: (415) 675-3434 |
|   | joseph.poppen@bclplaw.com |
| 24 | ***Counsel for Plaintiff Flextronics*** |
|   | ***International USA, Inc.*** |
| 25 |   |
| 26 |   |
| 27 |   |
| 28 |   |

**ATTORNEY ATTESTATION**

I, Kenneth R. O'Rourke, hereby attest, pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 2, 2022

/s/ *Kenneth R. O'Rourke*
Kenneth R. O'Rourke

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

# CERTIFICATE OF SERVICE

I, Kenneth R. O'Rourke, hereby certify that on December 2, 2022, I electronically filed the foregoing document entitled **SEAGATE AND FLEXTRONICS' EMERGENCY MOTION FOR CLARIFICATION OF PROTECTIVE ORDER AND EXPERT STIPULATION IN LIGHT OF UPCOMING DECEMBER 6, 2022 DEPOSITION** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Kenneth R. O'Rourke*
Kenneth R. O'Rourke