Mark. H. Hamer (State Bar No. 156997)
mark.hamer@bakermckenzie.com
Mark G. Weiss (*pro hac vice*)
mark.weiss@bakermckenzie.com
**BAKER & McKENZIE LLP**
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 452-7077

Catherine Y. Stillman (State Bar No. 242440)
catherine.stillman@bakermckenzie.com
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, New York 10018
Telephone: (212) 626-4218

*Counsel for Defendants NHK Spring Co., Ltd.,
NHK International, NHK Spring (Thailand) Co.,
Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and
NAT Peripheral (H.K.) Co., Ltd.*

[*Additional Moving Defendants and Counsel Listed
on Signature Page*]

J. Clayton Everett, Jr., (*pro hac vice*)
clay.everett@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000

Michelle Park Chiu (State Bar No. 248421)
michelle.chiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

*Counsel for Defendants TDK Corporation,
Hutchinson Technology Inc., Magnecomp
Precision Technology Public Co., Ltd.,
Magnecomp Corporation, and SAE Magnetics
(H.K.) Ltd.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: Hard Disk Drive Suspension Assemblies Antitrust Litigation | Case No. 3:19-md-02918-MMC |
| | MDL No. 2918 |
| THIS DOCUMENT RELATES TO | **DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| All Reseller Actions | Date:     TBD<br>Time:     TBD<br>Crtrm:   7, 19th Floor<br>Before:   The Hon. Maxine M. Chesney |

# **TABLE OF CONTENTS**

**Page No.**

DEFINITIONS………………………………………………………………………………..vi

STATEMENT OF ISSUES TO BE DECIDED………………………………………………..viii

INTRODUCTION………………………………………………………………………………..1

BACKGROUND ………………………………………………………………………..………2

LEGAL STANDARD…………………………………………………………………..………4

ARGUMENT ……………………………………………………………………………..………5

I.      RESELLER PLAINTIFFS' CLASS AS DEFINED CANNOT BE
       CERTIFIED…………………………………………………………………………..….5

II.     THE RESELLER PLAINTIFFS ARE NEITHER TYPICAL NOR ADEQUATE
       REPRESENTATIVES OF THE CLASS THEY SEEK TO
       REPRESENT……………………………………………………………………………7

       A.      The Putative Class Representatives Differ Materially From The Sophisticated
               Big Box Retailers and Distributors They Hope To Represent……………………7

       B.      As Small "Value-Added Retailers," the Reseller Plaintiffs Have Fundamental
               Conflicts With Upstream Resellers They Seek To Represent……………………10

       C.      The Class Representatives Are Not Typical Or Adequate Because They Face
               Unique Defenses……………………………………………………………………12

III.    RESELLER PLAINTIFFS FAIL TO PROVE THAT COMMON ISSUES
       PREDOMINATE OVER INDIVIDUAL
       ISSUES…………………………………………………..…………………………………12

       A.      Plaintiffs Must Prove Predominance Under a "Rigorous Analysis" Standard……12

       B.      Plaintiffs Cannot Prove Predominance of Common Issues of Liability or Impact
               Based on the Government Investigations………………………………………13

       C.      Reseller Plaintiffs Rely Entirely on the Flawed Expert Opinion of Dr. Williams
               to Prove Predominance……………………………………………………………15

       D.      Dr. Williams' Overcharge Regressions Fail To Prove That Common Issues of
               Antitrust Injury Predominate……………………………………………………16

               1.      Common Issues Do Not Predominate Because SAs are Not "Commodity-Like,"
                       Prices Are Individually Negotiated, and SAs Changed Over Time…………………16

       E.      Dr. Williams' Flawed Pass-Through Regression Demonstrates That Common
               Issues Do Not Predominate Over Individualized Issues…………………………19

               1.      Dr. Williams Fails to Account for Numerous Individualized Issues Endemic to
                       the Complex Supply Chain………………………………………………………19

i

2.   Dr. Williams' Pass-Through Regressions Find that Numerous Resellers Were Not Injured And He Disregards His Own Findings……………………………..21

3.   Dr. Williams' Pass-Through Regressions Do Not Measure Pass-Through of SA Costs Which Are A Tiny Percentage of Finished Product Prices…………………23

F.   Dr. Williams Uses Improper Assumptions That Inflate Reseller Damages……….25

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inv. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)........................................................................................4

*Ang v. Bimbo Bakeries USA, Inc.*
    2018 U.S. Dist. LEXIS 149395 (N.D. Cal. Aug. 31, 2018)....................15, 18

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    10-cv-4387, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014)................5

*Berlowitz v. Nob Hill Masonic Mgmt.*,
    No. 96-cv-01241-MHP, 1996 U.S. Dist. LEXIS 22599, 1996 WL 724776 (N.D.
    Cal. Dec. 6, 1996) .......................................................................................6

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ......................................................................5

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss. 1993) .........................................................8, 9

*In re Citric Acid Antitrust Litig.*,
    No. 95-1092, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. Oct. 2, 1996) ...........8, 13, 19

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).........................................................................4, 5, 15

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ................................................................6

*Deiter v. Microsoft*,
    436 F.3d 461 (4th Cir. 2006) .......................................................................8

*Douglas v. Bank of Am., N.A.*,
    No. C20-0193JLR, 2020 U.S. Dist. LEXIS 217209 (W.D. Wash. Nov. 19, 2020).....6

*In re Dynamic Random Access Memory ("DRAM") Antitrust Litig.*,
    2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ..........................13

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .......................................................................8

*In re Flash Memory Antitrust Litig.*,
    2010 U.S. Dist. LEXIS 59491 (N.D. Cal. June 9, 2010) .........................13, 17, 18

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)..........................................................*passim*

iii

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Guidroz-Brault v. Missouri Pac. RR. Co.*,
    254 F.3d 825 (9th Cir. 2001) ................................................................................. 25

*Hamm v. Mercedes-Benz United States*,
    16:cv-3370, 2021 U.S. Dist. LEXIS 65098 (N.D. Cal. Apr. 2, 2021) ........................... 12

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................. 12

*In re: Hydrogen Peroxide*,
    552 F.3d 305 (3d Cir. 2008) .................................................................................. 13

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 165261 (D. Del. Aug. 6, 2014) ..................................... *passim*

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) .................................................................................. 8

*In re Lithium Ion Batteries Antitrust Litig.*,
    13-MD-2420, 2017 U.S. Dist. LEXIS 57340 (N.D. Cal. April 12, 2017) .......... 12, 13, 20

*In re Methionine Antitrust Litig.*,
    204 F.R.D. 161 (N.D. Cal. 2001) ............................................................................ 20

*Microsoft Corp. v. Franchise Tax Bd.*,
    212 Cal. App. 4th 78, 150 Cal. Rptr. 3d 770 (2012) .................................................. 12

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ............................................................................... 15

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
    522 F.3d 6 (1st Cir. 2008) ..................................................................................... 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) .............................................................................. *passim*

*Opperman v. Kong Technologies*,
    2017 U.S. Dist. LEXIS 116333 (N.D. Cal. July 25, 2017) .......................................... 15

*In re Optical Disk Drive Antitrust Litig.*,
    303 F.R.D. 311 (N.D. Cal. 2014) .......................................................................... 4, 8

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*,
    2010 U.S. Dist. LEXIS 144511 (D. Del. July 28, 2010) ............................................ 24

*In re Rubber Chemicals Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) .................................................................... 5, 13, 19

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
    803 F.3d 1084 (9th Cir. 2015) ............................................................................... 14

iv

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*State v. Infineon Techs. AG*,
  No. C 06-4333, 2008 U.S. Dist. LEXIS 81251 (N.D. Cal. Sep. 5, 2008)....................................23

*Stromberg v. Qualcomm Inc.*,
  14 F.4th 1059 (9th Cir. 2021) .............................................................................................25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010)......................................................................................6, 23

*United States v. United States Gypsum Co.*,
  438 U.S. 422 (1978)...............................................................................................................14

*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ............................................................................................11

*W. Bender Elevator, Inc. v. Rhone-Poulenc S.A. 00-3961* (*In re Methionine Antitrust Litig.*),
  No. 00-1311, 2003 U.S. Dist. LEXIS 14828 (N.D. Cal. Aug. 22, 2003) ......................................24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..........................................................................................................5, 13

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) .............................................................................................13

**Statutes**

Sherman Act...................................................................................................................................15

**Other Authorities**

First Amendment .........................................................................................................................14

Anton Shilov, Market Views: Hard Drive Shipments Drop by Nearly 17% in 2015,
  AnandTech (Mar. 2, 2016), https://www.anandtech.com/show/10098/market-
  views-2015-hard-drive-shipments (explaining the declines of HDD sales in 2015,
  citing competition from SSDs) .............................................................................................19

Federal Rule of Civil Procedure 23 .......................................................................................*passim*

Fei Deng et al., *Economic Analysis in Indirect Purchaser Class Actions*,
  26 Antitrust 51, 53 (Fall 2011) ............................................................................................25

NHK Spring Co. Ltd., *History | Company Information | Corporate Profile*,
  https://www.nhkspg.co.jp/eng/company/outline/step.html (last visited Dec 15,
  2022)......................................................................................................................................14

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

## DEFINITIONS

| | |
|---|---|
| Br. | Reseller Plaintiffs' Notice of Motion and Motion for Class Certification, October 12, 2022 (ECF No. 611) |
| Class Period | January 2003 to May 2016, i.e., Reseller Plaintiffs' purported class period as defined in Reseller Plaintiffs' Notice of Motion and Motion for Class Certification, at 10. |
| Flextronics or Flex | Flextronics International USA, Inc. |
| FTAIA Motion | Notice of Motion and Motion for Partial Summary Judgment Regarding Foreign Commerce, August 2, 2022 (ECF No. 533) |
| HDD | Hard Disk Drive |
| HGA | Head Gimbal Assembly |
| HSA | Head Stack Assembly |
| HTI | Hutchinson Technology Inc. |
| MPT | Magnecomp Precision Technology Public Company Limited |
| NAT | NAT Peripheral (H.K.) Co., Ltd. and NAT Peripheral (Dong Guan) Col, Ltd. |
| Netz Decl. | Declaration of Janet S. Netz, Ph.D. in Support of End-User Plaintiffs' Motion for Class Certification |
| OEM | Original Equipment Manufacturer |
| Resellers | Reseller Plaintiffs |
| SAs | HDD Suspension Assemblies |
| SAE | SAE Magnetics (HK) Ltd. |
| Seagate | Seagate Technology, LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International |
| SSDs | Solid State Drives |
| Stiroh Rep. | Expert Report of Lauren J. Stiroh, Ph.D., December 20, 2022 |
| Suncall | Suncall Corporation |
| TAC | Reseller Plaintiffs' Third Consolidated Amended Complaint, December 14, 2021 (ECF No. 418) |

vi

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

| | |
|---|---|
| Toshiba | Toshiba Electronics & Device Storage Corporation |
| TDK | TDK Corporation |
| WD or Western Digital | Western Digital Corporation |
| Williams Mot. | Defendants' Notice of Motion to Exclude the Expert Report and Testimony of Michael A. Williams, Ph.D., and Memorandum of Points and Authorities in Support of Defendants' Motion, December 23, 2022 |
| Williams Rep. | Expert Report of Michael A. Williams, Ph.D., October 11, 2022, ECF No. 611-3 (filed under seal) |

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether Reseller Plaintiffs ("Resellers") have met their burden to establish each of the requirements of Federal Rule of Civil Procedure 23 to certify a class of indirect Reseller Plaintiffs, under the laws of California, Michigan, Minnesota, New York and North Carolina.  *See* Br. at 4.

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

1

## **INTRODUCTION**

2        Reseller Plaintiffs seek class treatment of claims that are mired in individualized issues.  The

3   fact of any harm to a class member, let alone any amount of harm, cannot be determined with

4   common methods and evidence, and they fail to prove otherwise.  Their motion should be denied.

5        Defendants NHK and TDK sell tiny SAs that sit within HDDs that in turn sit within

6   computers.  SAs are highly specialized technology subcomponents that travel throughout a complex

7   supply chain, with eight distribution tiers according to Resellers' expert.

8        Each transaction link involves different buyers and sellers, some with bargaining leverage;

9   further manufacturing processes; pricing negotiations; and different degrees of discounting and

10  volume purchasing.  Any SA could take a bewildering array of routes downstream.  No purchaser

11  can know which route, or how many steps, was taken.  The purchaser cannot even know which

12  manufacturer's SA is buried inside without destroying it.  And these SAs compose a tiny fraction of

13  the end-user product price.  The SA "overcharge" allegedly caused by Defendants' conduct equals

14  only ██████████████████████████████████  according to Plaintiffs' expert.

15       Class representatives for Reseller Plaintiffs sit near the bottom of this long supply chain.

16  They are two individuals and three tiny entities that largely provide IT services, with occasional

17  incidental resales of HDDs or computers.  They buy at retail—from other Resellers they seek to

18  represent—and usually pass-through their costs (including any overcharges) downstream.

19       They ask the court to certify a vaguely defined and shifting Reseller Class that sweeps in at

20  least eight tiers of indirect purchaser Resellers, including sophisticated powerhouse retailers like

21  Amazon, Wal-Mart and Best Buy bearing no resemblance whatsoever to these class representatives.

22  Indeed, the proposed representatives are in conflict with other Resellers because they are

23  incentivized to argue that upstream Resellers passed through any overcharges to them, while those

24  upstream Resellers are incentivized to argue the opposite.  These mom-and-pop class representatives

25  are neither adequate nor typical of the proposed class, requiring that the motion be denied.

26       Nor have they met their burden to prove that common issues predominate over individual

27  issues sufficient to warrant certification.  They rely solely on the expert opinion of Dr. Michael

28  Williams, which is highly flawed and unreliable.  *See* ECF No. 611 § V.  Dr. Williams makes

foundational assumptions about the industry that are irrefutably wrong and contradicted by the record evidence he has not even considered.  Dr. Williams seeks to prove common impact with overcharge and pass-through regressions, but he does not control for basic market realities, cannot track these tiny alleged overcharges, and cannot differentiate between transactions resulting in purported injury and those resulting in no injury.  Dr. Williams' own model confirms that a single Reseller—and indeed a single transaction—will have an entirely different pass-through rate depending on the exact multi-tier supply chain route through which the SA traveled.  Worse, the supply chain of any SA is completely unknowable by the Reseller, making it impossible for any Reseller to determine which of Williams' pass-through rates would apply.  No Reseller can establish that it was injured at all, let alone determine what damages may exist.  The motion should be denied.

## BACKGROUND

SAs are ███████████████████████████████████████████████████████
████████████████████████████████████████████ Declaration of Mark H. Hamer ("Hamer Decl."), Ex. 2 (Bell Dep. 36:2-16).  For each program, SA Manufacturers will build certain ██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████ Hamer Decl., Ex. 2 (Bell Dep. 95:17-96:25); Hamer Decl., Ex. 3 (Kajii Dep. Vol. II 207:15-208:15).   Once awarded, Defendants slowly ramp up production and improve yields which result in substantial SA price reductions over time.  Also, the SA manufacturers face ██████████████████████████████████████████████████████
███████ Hamer Decl., Ex. 4 (Legendre Dep. Vol. I 39:1–43:2).  Thus, SA pricing for each unique program falls over time.  Finished SAs are sold by Defendants to ████████████████████████
██████████████████████████████████ Hamer Decl., Ex. 2 (Bell Dep. 37:18–37:22).   Once incorporated into these intermediate components, they are transferred to ███████████████
██████ to then incorporate them into HDDs of various speeds and sizes.  *See, e.g.*, Hamer Decl., Ex. 5 (Williams Dep. 80:18–81:2).

Once incorporated into HDDs, SAs are then dispersed into a complex supply chain for

2

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  distribution and sale.[1]  According to Resellers' Expert Dr. Williams in Figure A1, after incorporation

2  into HDDs, ███████████████████████████████████████████████████████████

3  ████████████████████████ Williams Rep. 153, Figure A1. Dr. Williams

4  described the longest chain as ███████████████████████████████████

5  ████████████████████████████████████████ before the sale to

6  the End-User.  Hamer Decl., Ex. 5 (Williams Dep. 86:6-18).  Certainly the chain is not always this

7  long, but the Figure drives home that SAs are ████████████████████████

8  ███████████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████████

10 ████████   See Williams Rep. 153, Figure A1.

11      Each sale is a separate intervening transaction in the chain.  Each could be affected by

12 subsequent manufacturing processes (incorporation into computers), individually negotiated price-

13 setting and contracting, or bulk purchasing.  Each transaction could involve entities with substantial

14 purchasing or selling power, and may involve discounting, rebating, or other price-based incentives

15 to purchase.  The chain typically ends with a sale at retail prices to end-users.  *See, e.g.*, Hamer

16 Decl., Ex. 1 (Stiroh Rep. §§ II.2, V.B.1, V.B.2).  The transaction dynamics involved at each step—

17 and even which or how many steps—is unknown to and unknowable by any given purchaser.  That

18 buyer will not even know—without destroying and disassembling the device—who manufactured

19 the SA buried within it (NHK, MPT, HTI, or non-party Suncall).[2]  Each buyer is blind to the

20 manufacturer, pricing history, and distribution path of any SA sitting inside the product it buys.

21      Reseller Plaintiffs are five people and small entities who allege they resold stand-alone

22 storage devices or computers.  Each is in a different state, and by prior ruling of this Court, each can

---

23

24 [1] Dr. Williams illustrates the complexity in the supply chain in Figure A1 of his report (*see* Williams Rep. 153, Figure A1), including ███████████████████████████████████████

25 ████████████████████████████████ Hamer Decl., Ex. 5 (Williams Dep. 84:13–86:18). The chain is incomplete—███████████████████████████████████ *Id.* at 86:6-18.

26

27 [2] Resellers have alleged that SAs are traceable but the evidence suggests this is untrue and, even if a marking does exist inside HDDs, there is no feasible way to identify it. *See* Hamer Decl., Ex. 6 (Netz Dep. 76:24–77:12) (██████████████████████████████████████████;

28 Hamer Decl., Ex. 7 (Ver Meer Dep. 72:20–75:22) (████████████████████████████████
██████████████████████████████████████████████████████.

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

assert claims only under the laws of that state.  ECF No. 282.  Two are individuals:  Michael Medeiros (California) and Steven Arvay (New York).  Three are small businesses:  Network One (Michigan), IT Worx (North Carolina), and Now Micro (Minnesota).  All proposed class representatives are in the "Value-Added Retailer"[3] tier of distribution, purchasing at cost.[4]

## LEGAL STANDARD

Reseller Plaintiffs bear the burden of proving a class can be certified.  Federal Rule of Civil Procedure 23(a) permits the court to certify a class only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a).  If all four prerequisites of Rules 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b).  *In re Optical Disk Drive Antitrust Litig.* ("*ODD I*"), 303 F.R.D. 311, 315 (N.D. Cal. 2014), *citing Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ("*Comcast*").  Rule 23(b)(3) permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  A court must "take a close look at whether common questions predominate over individual ones."  *Comcast*, 569 U.S. at 34 (internal citations and quotations omitted).  Further, a court's class certification analysis "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'"  *Id.* at 33–34 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Amgen Inv. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

---

[3] Neither Resellers nor Dr. Williams define "Value-Added Retailers," but it appears to include mom-and-pop IT consultants and repair shops like the five plaintiffs that, like plumbers, charge customers primarily for services and charge for replacement parts incidental to such services at cost.

[4] Four out of five Reseller Class Representatives testified that they ██████████████████████ *See* Hamer Decl., Ex. 8 (Network One Dep. 107:1–107:14) (██████████████████████████████████ ██████; Hamer Decl., Ex. 9 (IT Worx Dep. 139:11–140:2) (████████████████████████████████ █████████████████████████████████; Hamer Decl., Ex. 10 (Arvay Dep. 73:19–122:12) (██████████████████████████ ██████ Hamer Decl., Ex. 11 (Medeiros Dep. 42:14–44:10) (██████████████████████████████████████████████████.

4

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Departing from more lenient earlier cases, the Supreme Court now requires district courts to conduct a "rigorous" analysis of the record to determine whether plaintiffs have met their burden of proof for each of the prerequisites of Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52 (2011); *Comcast*, 569 U.S. at 33, 35. Likewise, the Ninth Circuit has held that "[p]laintiffs . . . must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (emphasis in original) (internal citations and quotations omitted). This means that— contrary to Resellers' arguments—the court may no longer default in favor of certification "when . . . in doubt,"[5] or assume predominance is "readily met"[6] in antitrust cases. Nor can Plaintiffs argue that the court "resolve doubts [in antitrust actions] in favor of certifying the class" merely because "antitrust class actions play a critical role in enforcing the antitrust laws." Br. 15–16.[7]

## ARGUMENT

## I.    RESELLER PLAINTIFFS' CLASS AS DEFINED CANNOT BE CERTIFIED

A class definition should be "precise, objective, and presently ascertainable." *Astiana v. Ben & Jerry's Homemade, Inc.*, 10-cv-4387, 2014 U.S. Dist. LEXIS 1640, at *8 (N.D. Cal. Jan. 7, 2014) (internal citations and quotations omitted). While the Ninth Circuit does not impose a "freestanding feasibility prerequisite" to class certification, the same issues can "more properly be analyzed under the manageability criterion of Rule 23(b)(3)'s superiority requirement . . . .[which] specifically mandates that courts consider 'the likely difficulties in managing a class action." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). While often easily shown, here Resellers fail this basic threshold requirement.

The broad class definition covers anyone who "purchased a Standalone Storage Device or Computer for resale which included as a component part one or more HDD [SAs] that were

---

[5] Br. 15-16, citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 591–92 (N.D. Cal. 2010), which is distinguishable from this case because the products alleged to be price-fixed there were "fungible, interchangeable, and largely homogenous." *Id.* at 605.
[6] Br. 20 (Interpreting the cases Resellers cite to mean that this court may perform less than a "rigorous" analysis under Rule 23(b) contravenes *Wal-Mart, Comcast* and *Olean*.).
[7] *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal 2005), which Resellers cite for this proposition, predates *Wal-Mart* and *Comcast*.

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

manufactured by Defendants." TAC ¶ 142.[8]  Anyone in the complex supply chain between the initial SA component sale and the end-use purchase arguably "resold" the SAs and could be class members.  Williams Rep. 72–78, 79, Table 3.

Indeed, the Resellers' TAC even includes Original Equipment Manufacturers (**OEMs)** (e.g., Microsoft, Dell, HP and Lenovo) as Reseller class members, but quietly Resellers have now abandoned OEMs without explanation by inserting "***except OEMs***" when describing the class definition in the Reseller brief.  Br. 2.  Dr. Williams' opinion is based on the same modified class definition—Williams Rep. ¶ 6, n.1, ¶ 245—and he acknowledges that ███████████████ ████████████████████████████████████████████████████████████ ████████   Hamer Decl., Ex. 5 (Williams Dep. 116:25-117:19).  This last-minute stealth amendment confuses rather than clarifies class membership. [9]  "OEMs" are never defined in the TAC, and even tiny custom-build computer manufacturers in home offices—like class representative Mr. Medeiros himself—are apparently OEMs and thus excluded (*see supra* at I.).

It is thus no surprise that many absent class members will be confused as to whether they are a member of the Reseller class.  *Compare* ECF No. 599 at 18-21 (Flextronics, an EMS company in the Computer supply chain with its own pending indirect purchaser complaint, argued that the Reseller class action tolled Flex's claim under the doctrine of class action tolling), *with* Hamer Decl., Ex. 5 (Williams Dep. 87:9-87:25, 90:18-90:19) (testifying ███████████████████ ████████████████████████████████████████.  Even the ***direct*** purchaser—

---

[8] As a fallback, the TAC alleges a separate "Standalone Storage Device Class" excluding those who resold Computers.  *Id.* at ¶ 141.  This hedging is understandable, since Computer Resellers sweeps in substantially more supply chain steps and magnifies all the certification problems discussed in this Opposition.  Yet the motion and Dr. Williams do not address this fallback alternative class.

[9] Some Courts disallow class definition amendment through briefing outright. *See Berlowitz v. Nob Hill Masonic Mgmt.*, No. 96-cv-01241-MHP, 1996 U.S. Dist. LEXIS 22599, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996) ("The court is bound by the class definition provided in the complaint [and] will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it.");  *Costelo v. Chertoff*, 258 F.R.D. 600, 600-05 (C.D. Cal. 2009) (same).  Others allow amendments that are minor, do not require further discovery, and do not prejudice Defendants. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010). Resellers' attempt to advance through its briefing a class definition different from the one in the TAC is a material change and is an independent reason to deny certification.  *See also Douglas v. Bank of Am., N.A.*, No. C20-0193JLR, 2020 U.S. Dist. LEXIS 217209, at *21 (W.D. Wash. Nov. 19, 2020) (denying certification on these grounds).

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Plaintiff Seagate—has *de facto* argued that it too is effectively a Reseller Plaintiff.  *See* ECF No. 622 at 25, 33–34 (Seagate claims its self-described Category C sales—███████████████ █████████████████████████████████—are valid indirect purchaser claims).  Confusion about class membership already abounds, and will worsen if a class is certified.

Even if a Reseller could determine whether it falls in a "tier" of the supply chain that is within the class definition, it still cannot determine class membership.  The definition expressly includes only those Resellers of products with HDD SAs "manufactured by Defendants."  Resellers admit Suncall manufactured between ████████ of all SAs in every year in the Class Period, *see* Williams Rep. 37, Table 1, yet it is neither affiliated with a Defendant nor alleged to be a conspirator.  And HTI, a SA manufacturer that according to Resellers ████████████████████ ████████████████████████ *see id.*, was not affiliated with TDK until after the end of the Class Period.  Extensive record evidence identifies HTI, not as a participant in the conspiracy, but as a target or victim.  *See* Hamer Decl., Ex. 1 (Stiroh Rep. § V.C) ("Class members who purchased products for which TDK and NHK competed to undercut HTI's pricing have not paid anticompetitively elevated prices and may thus be unharmed.").

Identification of an SA's manufacturer requires you to ██████████████████ Hamer Decl., Ex. 6 (Netz Dep. 76:24–77:12).[10]  Since no Reseller can determine it purchased Defendants' SAs—a definitional prerequisite to class membership—none can determine whether it is a class member.  Confusion, disputes and mini-trials over class membership are inevitable and will render the proposed class unmanageable.  Resellers' vague class should not be certified.

## II.    THE RESELLER PLAINTIFFS ARE NEITHER TYPICAL NOR ADEQUATE REPRESENTATIVES OF THE CLASS THEY SEEK TO REPRESENT

### A.    The Putative Class Representatives Differ Materially From The Sophisticated Big Box Retailers and Distributors They Hope To Represent.

The class representative claims must be "typical" of absent class member claims, and they

---

[10]  *See also* Hamer Decl., Ex. 7 (Ver Meer Dep. 72:20–75:22) (an HDD expert from Seagate explained that, ███████████████████████████████████████████████ ; Hamer Decl., Ex. 11 (Medeiros Dep. 47:12–17) (██████████████████████████████████████████████████████████████ .

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

must be "adequate" representatives.  FED. R. CIV. P. 23 (A)(3), (4).  A district court must "ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."  *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489 (N.D. Cal. 2008) ("*GPU*") (internal citation and quotations omitted).[11]

The individual and mom-and-pop IT consultants here, purchasing at retail prices, are not typical or adequate representatives of sophisticated large purchasers who deploy negotiating leverage and volume purchasing to extract the best bargains from upstream sellers.  *See Deiter v. Microsoft*, 436 F.3d 461, 468 (4th Cir. 2006) (class representatives cannot represent corporate Enterprise purchasers who "were able to negotiate their deals in a different competitive context from that involving the plaintiffs.").  "[A] class consisting of both individual and enterprise customers cannot be certified when the representatives do not also include both individual and enterprise customers."  *In re Intel Corp. Microprocessor Antitrust Litig.*, 2014 U.S. Dist. LEXIS 165261, at *34 (D. Del. Aug. 6, 2014) ("*Intel*"); *see also In re Milk products. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (questioning class representatives' typicality and adequacy claims when they "made only small wholesale purchases at list price" but sought to represent absent class members who purchased at formula-based prices); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  For example, in *ODD I*, 303 F.R.D. at 317, class representatives purchased at non-negotiated list prices, while large purchasers accounting for nearly 90% of the putative class, used bargaining power to purchase the products at negotiated prices.  *ODD I*, 303 F.R.D. at 317.[12]

---

[11] Resellers oversimplify Rule 23(a)(3)'s typicality requirement.  It requires more than showing that "all" indirect purchasers of SAs allege they were overcharged and were thus "all" injured as a result.  Br. 18.  Rather, to assess typicality, the court must consider whether the class representatives' "individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *ODD I*, 303 F.R.D. at 317 (quoting *In re Bulk [Extruded] Graphite Prod. Antitrust Litig.*, 2006 U.S. Dist LEXIS 16619, at *16 (D.N.J. 2006)).

[12] The decisions cited by Resellers apply a relaxed typicality standard that pre-date *Wal-Mart*'s "rigorous scrutiny" requirement.  The court in *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 U.S. Dist. LEXIS 16409, at *8 (N.D. Cal. Oct. 2, 1996) summarily found typicality on the basis that all class members' claims stemmed from "the same event, practice, or course of conduct," i.e. the alleged price-fixing conspiracy.  The other cases cited by Resellers—*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) and *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993)—adopt the same relaxed, outdated, pre-*Wal-Mart* standard and similarly are not controlling.  Further, Resellers omit what even the *Catfish* court stated was "the most prominent consideration" for typicality

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

The disparity between class representatives and absent class members is even more striking here. Resellers' class representatives represent ███████████████ of the volume of all Reseller class sales. Williams Rep. 79, Table 3. Most Reseller transactions were purchases from multinational big-box retailers and large distributors, reselling at cost. For example, class representative **Stephen Arvay**, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████ Hamer Decl., Ex. 10 (Arvay Dep. 35:10-17, 43:19-44:2, 73:19-122:12) ███████████████████████████████████████████████████. **IT Worx** is likewise ████████ ████████████████████████████████████████████████████████████████████████████████ *See* Hamer Decl., Ex. 9 (IT Worx (Loy) 30(b)(6) Dep. 30:16-31:4, 63:15–24, 70:14–20. IT Worx ██████████████████████████████████████████████████ *See id.* 40:1–12. **Network One** also provides ███████████████████████████████████████████ ████████████████ Hamer Decl., Ex. 8 (Network One Dep. 107:1–109:22). According to Network One, ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████ *Id.* 151:20-152:1. Network One ████████████████████████ ███████████████████████████████████ *Id.* 46:4–6, 47:5–14, 50:25–53:9. Network One ████████████████████████████████████████████████████████████████████████████ ████████[13]

Similarly, **Now Micro** is an ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████ Hamer Decl., Ex. 12 (Now Micro (Patrick Finn) Dep. 48:16-50:1, 87:6-8, 122:1-16).

---

analysis—"that there is an absence of an adverse interest between the representative parties and other members of the class." *Id.* at 1034; se*e also* II (B) *infra*.

[13] A mere two days before Defendants' deadline for filing this Opposition, Resellers served supplemental interrogatory responses. *See* Hamer Decl., Ex. 13 (Reseller Pls.' Suppl. Resps. to TDK Defs.' First Set of Interrogs. (Dec. 16, 2022)), which appear to directly contradict this sworn testimony in an attempt to muddy the waters. For example, Resellers state that █████████████████ ████████████████████████████████ *Id.* at 10–11. But these desperate measures should be disregarded as the testimony under oath stands for itself.

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

9

Most egregiously, **Michael Medeiros** is not even a reseller. A self-described "PC Doctor," Medeiros testified that ███████████████████████████ Hamer Decl., Ex. 11 (Medeiros Dep. 19:21–20:2, 28:7–15, 29:3–18, 40:8–21; Hamer Decl., Ex. 14 (Medeiros Dep. Ex. 4)). Rather, he ███████████████████████████████████ ████████████████████████████████████████ *See* Hamer Decl., Ex. 11 (Medeiros Dep. 35:3-7, 52:5–15, 53:18–54:1, 59:21–60:21) (testifying that the ██████████████████████ ████████████████████████████████████████ ████████████████████████████████. In any case, Medeiros testified that he ███████████████████████████████████████ ██████████████████████████████████ *See id.* 42:17–43:19, 64:3–11, 111:16–112:6, 115:22–116:6.

In contrast, the competitive dynamics facing big-box retailers and large-volume purchasers who enter into negotiated contracts like Amazon, Wal-Mart, and Best Buy bear no resemblance to competitive dynamics facing these small (indeed, even one-man) service providers.[14] They are 1, 2 or even 3 tiers apart in the supply chain, and simply not typical of the ████████ of the transaction volume of the class they seek to represent. *See GPU*, 253 F.R.D. at 489-90 (plaintiffs who purchased graphics cards through defendants' websites were not typical of wholesale purchasers (like Dell, Microsoft, H-P, Apple, and Best Buy) who composed ████████ of the class, purchased vast arrays of products at negotiated prices, and "came to the negotiating table in a fundamentally different position than the representative plaintiffs").

**B.    As Small "Value-Added Retailers," the Reseller Plaintiffs Have Fundamental Conflicts With Upstream Resellers They Seek To Represent.**

Not only are Reseller representatives different from most Resellers, they are in conflict with them.    The putative Reseller class members buy and sell products to and from each other throughout the long supply chain. The tiny Reseller representatives sit near the bottom of the chain.

---

[14] *See, e.g.*, Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 26-28); Hamer Decl., Ex. 5 (Williams Dep. 96:4-97:9); Hamer Decl., Ex. 6 (Netz Dep. 51:17–51:25) (██████████████████████████ ██████████████████ .

10

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Each purchases from other upstream Resellers they seek to represent, and thus each is incentivized to argue that those upstream Resellers passed through any overcharge to them.  In contrast, those upstream Resellers would be incentivized to argue the exact opposite—any overcharge was borne by them and was not passed on down the line to these plaintiffs.  As an illustration of such incentives, here the End-User tier's expert presents pass-through rates—from the *same data*— ████████████████████████████████████  *See* Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 110, Figure 9) (███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████.  They have conflicting incentives for proving where harm lies.  The same is true for other distribution tiers these Resellers want to lump together.  Fundamentally, the different Reseller tiers are in conflict.

Courts have found a fundamental conflict of interest where a class representative seeks to represent entities at multiple levels in the chain of commerce.  *See, e.g.*, *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefited other members of the class" and thus "the named representatives cannot vigorously prosecute the interests of the class . . . because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members.") (internal citation and quotations omitted).

Here, the five named Reseller class representatives, each of whom sits in the "Value-Added Retailer" tier, all testified they ██████████████████████████████████████████ ████████[15]  They have a strong incentive to maximize the amount of overcharge they were forced to bear at their level, and minimize the amount of overcharge borne by the Resellers further upstream.[16]  On these facts, Resellers' class representatives cannot adequately represent absent class members in different tiers of the supply chain who have conflicting incentives in proving injury.

---

[15] *See, e.g.*, Hamer Decl., Ex. 10 (Arvay Dep. 77:2–78:2); Hamer Decl., Ex. 11 (Medeiros Dep.) 35:3–36:3; Hamer Decl., Ex. 12 (Now Micro (Patrick Finn) 30(b)(6) Dep. 86:25-87:8); Hamer Decl., Ex. 9 (IT Worx (Jeffrey Loy) 30(b)(6) Dep. 75:11–22).

[16] In fact, the class representatives have already taken this position in their depositions.  *See, e.g.*, Hamer Decl., Ex. 8 (Network One Dep. 25:17-21) ("████████████████████████████████ ████████████████████████████████");  Hamer Decl., Ex. 12 (Now Micro (Patrick Finn) 30(b)(6) Dep. 147:21–24 ("████████████████████████").

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### C.  The Class Representatives Are Not Typical Or Adequate Because They Face Unique Defenses.

The class representatives will face unique defenses not common across the class they seek to represent, precluding them from serving as class representatives.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Hamm v. Mercedes-Benz United States*, 16:cv-3370, 2021 U.S. Dist. LEXIS 65098, at *10 (N.D. Cal. Apr. 2, 2021).  First, each class representative testified to purchases at ███████████████████████████████████████████████████████ ███████████████ and face individualized defenses for these purchases.  *See* Hamer Decl., Ex. 1 (Stiroh Rep. § V.B.1, *supra* § II.A) (reflecting purchases from retailers and distributors).[17]

Second, Mr. Medeiros faces another unique defense.  As discussed *supra* at Section I, Resellers have chosen, post-discovery, to abandon OEMs as part of the Reseller class they seek to certify.  An OEM thus is neither typical nor adequate, and cannot represent the proposed Reseller class.  Yet Mr. Medeiros ███████████████████████████████████████████ ███████  Hamer Decl., Ex. 11 (Medeiros Dep. 25:22–26:26).  Courts have previously defined OEMs as "computer sales companies that assemble, and in some cases manufacture, computer systems for sales to end users."  *See, e.g.*, *Microsoft Corp. v. Franchise Tax Bd.*, 212 Cal. App. 4th 78, 82, 150 Cal. Rptr. 3d 770, 772 (2012).  Mr. Medeiros will need to litigate ████████████████████ a dispute most class members will not need to confront, and precludes him from serving.[18]

## III.  RESELLER PLAINTIFFS FAIL TO PROVE THAT COMMON ISSUES PREDOMINATE OVER INDIVIDUAL ISSUES.

### A.  Plaintiffs Must Prove Predominance Under a "Rigorous Analysis" Standard.

Predominance under Rule 23(b) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420, 2017 U.S. Dist. LEXIS 57340, at *67 (N.D. Cal. April 12, 2017) ("*LIB*"), (quoting *Amchem Prod.*,

---

[17] *See, e.g.*, Hamer Decl., Ex. 15 (Medeiros Dep. Exs. 7 & 9) (████████████████████████████ █████████████ .

[18] For example, Dr. Williams tried to argue that Mr. Medeiros was "not an OEM" because "I believe OEM's are more properly characterized actually as described in the third amended complaint as firms that make sales on a mass market basis."  Hamer Decl., Ex. 5 (Williams Dep. 230:21–233:5).  Contrary, to Dr. Williams' suggestion, the TAC does not contain a definition of OEMs and makes no mention of mass-marketing.  *See generally* TAC

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

*Inc. v. Windsor*, 521 U.S. 591, 623 (1997));  *In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491, at *43 (N.D. Cal. June 9, 2010) ("*Flash Memory*").   "What matters to class certification is not the raising of common questions—even in droves—but rather the capacity of a class-wide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original) (internal citation and quotations omitted).  *See also GPU.*, 253 F.R.D. at 490.  The court "must make a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke."  *Olean Wholesale*, 31 F.4th at 665 (internal citation and quotations omitted).[19]  Here, the court must consider whether Resellers can prove, using ***evidence that is common to the class***:  (1) the existence of an antitrust violation by Defendants; (2) that class members suffered antitrust injury as a result of that alleged violation (i.e., "impact" or "fact of injury"); and (3) a calculation of damages caused by the alleged violation.  *LIB*, 2017 U.S. Dist. LEXIS 57340 at *79.  They cannot.

### B.   Plaintiffs Cannot Prove Predominance of Common Issues of Liability or Impact Based on the Government Investigations.

Common issues of liability are often easily shown, but here Resellers fall short even of that requirement.  Resellers rest heavily on the NHK plea agreement, TDK leniency application, and related admissions in this case by Defendants to prove that common issues of liability and impact predominate.  Br. 12–15.  Certainly these are common relevant facts, but Resellers must do more to prove predominance.   Courts have denied certification in antitrust cases even where certain defendants pleaded guilty to fixing prices.  *See, e.g.*, *LIB*, 2017 U.S. Dist. LEXIS 57340 (denying class certification despite guilty pleas and payments of criminal fines); *In re: Hydrogen Peroxide*,

---

[19] Thus, the pre-*Wal-Mart* cases cited by Resellers for the proposition that courts (a) apply a "presumption of impact" in price-fixing cases, or (b) decline to rigorously consider expert evidence, are inapposite. *See, e.g.*, *In re Dynamic Random Access Memory ("DRAM") Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841, at *41–45 (N.D. Cal. June 5, 2006) (Plaintiffs need only "come forward with seemingly realistic methodologies." "The court . . . must avoid engaging in a battle of expert testimony."); *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409, at *19 (N. D. Cal. Oct. 2, 1996) (finding common impact where plaintiffs had come forward with "seemingly realistic methodologies"); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005) (crediting a presumption of antitrust impact in cases alleging price-fixing). Resellers' reliance on *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010), is misplaced.  There the court concluded, unremarkably, that individualized *amounts* of damages alone cannot defeat class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

13

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

552 F.3d 305 (3d Cir. 2008) (vacating and remanding class certification, despite guilty pleas).

Despite Plaintiffs' characterization of a single "conspiracy," *see, e.g.,* Br. 20, 22, Plaintiffs' factual allegations and the record describe at least three separate alleged agreements, each one involving different conspirators, different interactions, and different proof periods.[20]   The Plea Agreement covers only May 2008 to April 2016 (the "Plea Period").   There are no admissions of any agreements prior to 2007.   To extend their Class Period back to 2003, [21]   Resellers only point to ██████████████████████████████████████████████████████████████████████████—*see* Williams Rep. 54 n.168—but even their expert agrees that these types of communications can be necessary or procompetitive.   Hamer Decl., Ex. 5 (Williams Dep. 229:1–230:20).[22]   An alleged conspiracy to *target* HTI is very different, with different facts, from a conspiracy *with* HTI.[23] Different class members thus face different proof challenges, not common ones.   *See, e.g.,* Stanislaus *Food Prods. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1093 (9th Cir. 2015) (finding evidence of information exchange "insufficient to support the existence of a market allocation conspiracy").[24]

---

[20]   These arguments are laid out in Defendants' Opposition to the End-User's Motion for Class Certification—at §§ I.A.2 & I.C—and are equally applicable here.

[21]   It is understandable why Resellers disregard the DOJ Plea Period and allege a conspiracy back to 2003.   Dr. Stiroh explains that "Dr. Williams' overcharge model fails to find *any* class-wide impact if the damages period were to be modified to correspond to the United States Department of Justice plea period (May 2008 - April 2016)."   Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 105).

[22]   For example, NHK and SAE Magnetics, a TDK subsidiary, formed NAT, a joint venture that manufactures SAs, in 2004. *See* NHK Spring Co. Ltd., *History | Company Information | Corporate Profile*, https://www.nhkspg.co.jp/eng/company/outline/step.html (last visited Dec 15, 2022). Additionally, NHK and SAE had a strategic relationship that included ███████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ *See* Hamer Decl., Ex. 16 (Saika Vol. II Dep. 224:17–225:1; Hamer Decl., Ex. 17 (Kajii Dep. Vol. III 364:3–7). This customer supplier relationship is long-standing (dating back well before the alleged conspiracy allegations) and the two companies have a close procompetitive relationship. SAE also has a similar relationship with TDK (its parent) and MPT its sister company, whereby SAE purchases SAs from MPT. *See* FTAIA Motion, Misuta Decl. ¶¶ 18, 23; Hamer Decl., Ex. 18 (NHKS-M-00755435) (███████████ ██████████████████████████████████████████████; Hamer Decl., Ex. 19 (NHKS-M-02788679) (███████████████████████████████████████████████████████████████████.

[23]   *See* Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 72) ("the conduct at issue would be expected to have an undercharge where NHK and TDK were aggressively competing to drive HTI out of the market and an overcharge where NHK and TDK were in agreement not to compete on price when competing only with each other.").

[24]   Information exchanges are analyzed, not as a *per se* violation, but rather under the more searching rule of reason. *See, e.g.,* United States v. United States Gypsum Co., 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have

This circumstance stands in stark contrast to typical cases in which a single conspiracy mirrors the conspiracy established by criminal pleas that was common to all putative class members. While many facts about Defendants' interactions may be common, the time frames, specific SA manufacturers, and proof challenges differ dramatically for differently situated Resellers.

### C.   Reseller Plaintiffs Rely Entirely on the Flawed Expert Opinion of Dr. Williams to Prove Predominance

Resellers rely on the expert opinion of Dr. Williams to prove common impact but mere reference to an expert's regression models is not enough to certify a class. *See Comcast*, 569 U.S. at 38. Without rigorous scrutiny of expert regression models, "*any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* at 36 (emphasis in original).[25] "At class certification, a court must determine whether the expert's evidence supporting certification is persuasive following a rigorous analysis of the same." *Lidoderm Antitrust Litig.*, 14-md-2521, 217 U.S. Dist. LEXIS 24097, at *54 (N.D. Cal. Feb. 21, 2017) (internal citation omitted).[26] Dr. Williams' opinion is subject to a pending *Daubert* motion, but the "rigorous analysis" required by Rule 23 is *more stringent* than the "scientifically reliable and relevant hurdle of *Daubert.*" *Id.* "Courts have frequently found that expert evidence, while otherwise admissible under *Daubert*, was inadequate to satisfy the prerequisites of Rule 23." *Olean Wholesale,* 31 F.4th at 666 n.9. Dr. Williams bears a heavy burden: by common methods and evidence, he must "prove

anticompetitive effects . . . we have held that such exchanges of information do not constitute a *per se* violation of the Sherman Act.") (internal citations omitted); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1198 (9th Cir. 2015) (plaintiffs had "failed to allege enough nonconclusory facts to support the plausible inference that any agreement among the manufacturers was made" after considering information exchanges among defendants).

[25] Rule 23(b)(3) "does not permit the Court to wait until after certification to assess whether [the proposed model] is capable of measuring economic injury attributable" to a particular theory on a class-wide basis. *Ang v. Bimbo Bakeries USA, Inc.,* 2018 U.S. Dist. LEXIS 149395, at *40-41 (N.D. Cal. Aug. 31, 2018) (critically assessing six proposed expert damages models and finding each of them to fail *Comcast's* "rigorous analysis" standard); *see also Opperman v. Kong Technologies*, 2017 U.S. Dist. LEXIS 116333, at *39 (N.D. Cal. July 25, 2017).

[26] Thus Resellers' suggestion that *Olean Wholesale* espouses a "presumption of class-wide impact in price-fixing cases," Br. 22, is false. In fact, what the *Olean Wholesale* court was "noting" is discussion within *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6 (1st Cir. 2008) that any such presumption of impact did not apply. *Olean Wholesale*, 31 F.4th at 678-79.

15

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

that an overcharge was levied on direct purchasers of defendants' products, who then passed all or some of that overcharge through to indirect purchasers," i.e., all members of the class.  *GPU*, 253 F.R.D. 478 at 502.  At each step, his analysis is flawed and cannot withstand "rigorous" scrutiny.

**D.      Dr. Williams' Overcharge Regressions Fail To Prove That Common Issues of Antitrust Injury Predominate.**

**1.      Common Issues Do Not Predominate Because SAs are Not "Commodity-Like," Prices Are Individually Negotiated, and SAs Changed Over Time.**

Dr. Williams fails the most fundamental task of knowing the dynamics of the market he is analyzing.  Contrary to Resellers' and Dr. Williams' arguments, SAs are not ███████████ ███████████████████  *see* Williams Rep. § III.C.2.[27]  The undisputed record confirms otherwise.  SAs are customized high-tech products that are built to specification and unique to each SA program, of which there are *hundreds*.  Seagate witness Bob Legendre testified that SAs ██████████████████████████████████  Hamer Decl., Ex. 20 (Legendre Dep. Vol. II 480:1–480:23).[28]  Seagate witness Bruce Sanders confirmed that ███████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████  Hamer Decl., Ex. 22 (Sanders Dep. Vol. II 436:7–436:15). Dr. Williams claims to have relied on these transcripts, but omitted these crucial passages and core evidence. Class certification is properly denied where the plaintiff's expert's evidence contains "unsupported assumptions." *Olean Wholesale*, 31 F.4th at 666 n.9, *citing In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 552 F.3d 6, 29 (1st Cir. 2008).

Wrong assumptions yield wrong conclusions.  Dr. Williams concludes that ████████████ ██████████████████████████████████  but this is contrary to the factual record too.

---

[27] Dr. Williams goes so far as to suggest that the ███████████████████████ ████████████  Williams Rep. 11 ¶ 25.  But his only source is a *2003* HTI 10-K, which clearly could not have accounted for the subsequent 13 years of the Class Period.

[28] Dr. Williams cites evidence that Seagate considered SAs to be commodities, but when Mr. Isom, the head of the "commodity group," was asked ██████████████████████████████████ ████████████████  *See* Hamer Decl., Ex. 21 (Isom Dep. Vol. II 370:16-371:5) (████████████████████████████████████████████████████ █████.  Resellers' expert premised his economic conclusions on this meaningless legacy term used within Seagate.

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Seagate witness Eric Isom testified that ███████████████████████████████████

██████████████████████████████████████████████ Dr. Williams was asked about

████████████████████████████████████████████████████████████ Hamer

Decl., Ex. 5 (Williams Dep. 76:3–78:5).

SAs are not homogenous products priced consistently over the Class Period like widgets.

SA programs are subject to individualized and quarterly price negotiations[30] that had significant

impact on pricing.   Pricing varied based on supply and demand, technological development,

customer allocation agreements, costs, ongoing quarterly negotiations, and the HDD manufacturers'

purchasing power.[31]  Indeed, there are no uniform price lists or other consistent pricing mechanisms

utilized by direct purchasers in this case.[32]  Each of the hundreds of programs in Dr. Netz's data

build relied on by Dr. Williams represents multiple individualized negotiations resulting in widely

varying prices.  *Compare In Flash Memory*, 2010 U.S. Dist. LEXIS 59491, at *46-47 (denying

class certification where "[t]here were no uniform price lists," "individually negotiated prices,"

"sales contracts did not specify a future price, pricing formula or reference-pricing method," and

there were "renegotiation of prices on a frequent basis" resulting in prices which "varied among

_____

[29] Hamer Decl., Ex. 23 (Isom Dep. Vol. I 138:5-140:14) (███████████████████████████████

██████████████████████████████████████████████████████████████ .

[30] Seagate witness Bob Legendre testified that ██████████████████████████████████████

       *See* Hamer Decl., Ex. 4 (Legendre Vol. I Dep. 39:1–43:2) (███████████████████████

██████████████████████████████████████████████████ *Id.* 43:3–43:13.

[31] According to Seagate witness Eric Isom, direct purchasers like Seagate would ███████████

██████ Hamer Decl., Ex. 23 (Isom Vol. I Dep. 169:7–169:15). Mr. Isom testified that ███████

████████████████████████████████████████████ *See id.* 169:7-170:14.

Seagate witness Dan Floeder testified that the ████████████████████████████████████████

████████████████████████████ *See* Hamer Decl., Ex. 24 (Floeder Vol. II Dep. 489:23–491:12).

[32] *See* Hamer Decl., Ex. 25 (Floeder 30(b)(6) Dep. 313:4–316:14) (█████████████████████

██████████████████████████████ ; Hamer Decl., Ex. 2 (Bell Dep. 82:17-84:5); Hamer Decl.,

Ex. 23 (Isom Dep. Vol. I 104:15-105:12) (same); Hamer Decl., Ex. 26 (Sanders Dep. Vol. I 55:1–

56:25) (same); *see also* Netz Decl. at 27 (██████████████████████████████████████████████

████████████████████████████████ .

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

customers, and for the same customer, over time") *with Olean Wholesale*, 31 F.4th at 670 ("tuna market was conducive to price-fixing" in part because of suppliers' "use of price lists.")

In fact, prices tended to ***fall*** over the Class Period as SA manufacturers optimized production lines and quarterly negotiations eroded margins. *See* Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 93) ("[T]he price of each HDD SA program tends to decline the longer the program is in production, due to periodic contract renegotiations and competitive pricing dynamics . . . in addition to improvements in production yields and falling per unit costs of production over time.").

Dr. Williams offers no opinion on these topics, Hamer Decl., Ex. 5 (Williams Dep. 64:24–66:8), including whether ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Hamer Decl., Ex. 5 (Williams Dep. 66:2–8, 70:15–21, 82:20–23).  Nor does he control for these necessary supply and demand factors in his overcharge regression.  *See Ang v. Bimbo Bakeries USA, Inc*. 2018 U.S. Dist. LEXIS 149395, at *40-41 (N.D. Cal. Aug. 31, 2018) (rejecting expert model for failing to explain how the expert would control for certain variables).  Indeed, when applying his own model on a program-by-program basis, there is no common overcharge and many purchasers have none at all.[33]

These errors and omissions are fatal.  Individual issues predominate where direct purchasers negotiate widely varying prices, where prices vary based on independent market factors, and where the relevant product is "highly heterogeneous," "varied as to performance level but also as to its ultimate application," and "particularly customized to the needs of a specific purchaser." *See, e.g.*, *GPU*, 253 F.R.D. at 489-91 (common issues did not predominate where "the vast majority of sales were primarily executed after customized negotiations . . . rather than involving price lists and commodity products"); *Flash Memory*, U.S. Dist. LEXIS 59491, at *47-49 (common issues did not predominate where three direct purchasers made up majority of purchases and wielded substantial "bargaining power and the prices ultimately paid . . . [were] not amenable to common proof since

---

[33] *See* Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 49 ) ("Investigating Plaintiffs' experts' models on a program-by-program basis verifies that their own models show that not every HDD SA sold bore an overcharge. . . . ").

18

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

their purchases were based on individualized negotiations and contracts").[34]

Finally, individual issues are further magnified given the extremely long Class Period, during which substantial technological changes occurred in both HDD and SA technology that had major impacts on pricing.[35]   As time progressed, SAs also faced declining demand from the rise of competing technologies like solid state drives and flash memory requiring no SAs.[36]  These discrete developments had significant impact on pricing, and require individualized inquiries and controls. Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 100) ("Competition from such other memory technologies is not captured in Plaintiffs' experts' analyses, but indisputably has an impact on market prices of HDDs.").   Dr. Williams has failed to control for or consider any of these technological developments.  He bases his opinion on "unsupported assumptions" (*Olean Wholesale*, 31 F.4th at 667 n.9)—indeed, *erroneous* assumptions—and his overcharge model does not account for material variables (*see* Hamer Decl., Ex. 1 (Stiroh Rep. at § VIII.A), so his analysis is unreliable.

**E.   Dr. Williams' Flawed Pass-Through Regression Demonstrates That Common Issues Do Not Predominate Over Individualized Issues**

**1.   Dr. Williams Fails to Account for Numerous Individualized Issues Endemic to the Complex Supply Chain**

Even had he proposed a common method of determining overcharge—and he has not—Dr. Williams must establish that any overcharge passed through to class members, at each Reseller tier,

---

[34] Decisions assessing whether antitrust impact can be demonstrated on a class-wide basis where the alleged price-fixed products *are* commodities priced at list prices are inapposite.  *See, e.g.*, *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005); *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. Oct. 1, 1996).

[35] The SA industry saw major "technological advancement that reduced the cost of storage." Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 29 n.43) (noting that the cost per gigabyte of HDD storage dropped by over 90% in a ten-year period).  Dr. Netz admitted that SAs used ██████████████ ██████████ Hamer Decl., Ex. 6 (Netz Dep. 105:1–18).  DSAs debuted around 2010 or 2011 but the Class Period also saw (1) introduction of the perpendicular magnetic recording technology; (2) use of smaller piezoelectric elements called micro dual stage actuators; and (3) the development of co-located actuator SAs.  *See* Hamer Decl., Ex. 27 (NHK's Supp. Resps. to Resellers' First Set of Interrogs. at 14–16) (detailing these developments and their impact on costs). ████████████████████████████████ *See, e.g.*, Hamer Decl., Ex. 28 (STX0414912 at 914, 923–27) (██████████████████████████████████ ; *see also* Hamer Decl., Ex. 29 (STX0415341 at 341, 348) (████████████ ; Hamer Decl., Ex. 30 (STX0416297 at 303, 307) (████████ .

[36] *See, e.g.*, Anton Shilov, Market Views: Hard Drive Shipments Drop by Nearly 17% in 2015, AnandTech (Mar. 2, 2016), https://www.anandtech.com/show/10098/market-views-2015-hard-drive-shipments (explaining the declines of HDD sales in 2015, citing competition from SSDs); see also Hamer Decl., Ex. 31 (Chiba Dep. 182:15–183:13); Hamer Decl., Ex. 32 (Inami Vol II Dep. 255:21–257:20); Hamer Decl., Ex. 1 (Stiroh Rep, ¶ 33).

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

19

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    by a common method that predominates over individual issues.  *See GPU*, 253 F.R.D. 478, 489

2    (N.D. Cal. 2008) (noting that "the complexity of the defendants' distribution chain along with

3    varying products and purchasers involved have prevented broad certifications," especially where

4    there were "negotiated deals and customized products."); *In re Methionine Antitrust Litig.*, 204

5    F.R.D. 161, 164, 166-67 (N.D. Cal. 2001).

6         He does not and cannot.  In his Report—Williams Rep. 97, Table 12; 153, Figure A1—Dr.

7    Williams ███████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████      Even this complicated chart is likely a

10   simplification of the actual supply chain.  As Dr. Williams conceded in his deposition, many of the

11   intervening links in the supply chain, including HDD manufacturing, OEMs, distributors, and

12   retailers,  are  ██████████████████████████████████████████████████████████

13   ████████████████████████████████████████   Hamer Decl., Ex. 5 (Williams Dep.

14   93:3–97:9).  *See Intel*, 2014 U.S. Dist. LEXIS 165261, at *46-47 (finding the process of tracing the

15   alleged overcharge through a complex chain of commerce, which included OEMs, distributors,

16   value-added retailers, retailers like Best Buy "is going to require a highly individualized analysis");

17   *LIB*, 2017 U.S. Dist. LEXIS 57340, at *81 ("Each divergent factor—customer size, type,

18   procurement channel, product, distribution step—is a factor that increases the likelihood that proof

19   of pass-through can only be shown with resort to individualized proof.")(internal citation omitted).

20   Here, as the plaintiffs in *GPU*, Resellers' failure "to provide a class-wide method for proving

21   'impact' on a class-wise basis" is "chiefly the result of trying to define a class so broadly that no

22   method in all probability could succeed." *GPU*, 253 F.R.D. at 489.

23        Dr. Williams admits that he ██████████████████████████████████████████

24   ████████████████████      *Id.*  The chain is punctuated by large, dominant entities such as Dell, Apple,

25   Amazon, Wal-Mart, Best Buy, massive distributors, and numerous other entities relevant to the

26   many links.  *See generally* Williams Rep. 79-80, Table 3.  Dr. Williams concedes that these

27   companies have ████████████████████████████  but never explains how his simple pass-

28   through regressions account for these nuanced negotiations, because they do not.  Hamer Decl., Ex.

20

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

5 (Williams Dep. 96:25-97:9).[37]  Dr. Stiroh explains how these errors are insufficient to estimate pass-through and require further controls.  *See* Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 66) ("Different putative class members paid different prices for the same HDD or HDD-containing products. . . . If one end user purchased this HDD from Insight and another end user purchased it from Amazon, those two end users would have paid a different price for the identical product.").

But overcharges must break through *each* of these numerous intervening links in the chain to injure any Reseller.  At any stage, the tiny alleged overcharges may not have reached the final links. This outcome is even more likely by the repeated sales and resales and interim manufacturing of the SA-containing products.  As Dr. Stiroh explains, these competitive markets result in low overcharges and varied individualized pass-through rates resulting from discounting and rebates, meaning that numerous class members sustained no injury.  *See generally* Hamer Decl., Ex. 1 (Stiroh Rep. § 5). Dr. Williams provides no methodology to identify or account for these uninjured class members. *See Intel*, 2014 U.S. Dist. LEXIS 165261, at *36 (failure to satisfy Rule 23(b)(3) where plaintiffs failed to exclude from the purported class individuals who were not harmed by Intel's practices or even failed to propose a "practicable method for identifying these unharmed individuals.").

### 2.   Dr. Williams' Pass-Through Regressions Find that Numerous Resellers Were Not Injured And He Disregards His Own Findings

Even worse, Dr. Williams' own pass-through regressions find that numerous Reseller class members are in fact *uninjured* and did not retain any of the overcharge. Hamer Decl., Ex. 5 (Williams Dep. 219:5-25).  Dr. Williams reports the results of his pass-through regressions in Figure 3 on pages 79-80 of his Report.  He finds, for example, that ██████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████—meaning they passed-through all of any overcharge downstream to others and *suffered no harm*.  He admits that these entities' actual data confirms they did not retain any overcharge, *id.* 173:15–25, but he instead applies a "weighted average" pass-through rate assigned to their Reseller "Firm Type" to assign them a pass-through rate below 100%.  In other

---

[37] ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ █████████████████████████████

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

words, he ignores his own findings that ████████████ he analyzed had actually sustained no injury.  His magical reliance on weighted averaging, in this situation, is improper.  The best estimate of a firm's pass-through rate *is its own data*, not its data averaged by numerous other firms.  *See GPU*, 253 F.R.D. 478, 494 (N.D. Cal. 2008) ("[A]verages can hide substantial variation across individual cases, *which may be key to determining whether there is common impact*.") (quoting ABA SECTION OF ANTITRUST LAW, ECONOMETRICS: LEGAL PRACTICAL AND TECHNICAL ISSUES 220 (ABA Publishing 2005) (emphases added).  This disconnect demonstrates both the unreliability of his approach and the prevalence of individual issues.

This problem is compounded by another market reality Williams ignores:  non-Defendant Suncall's sale of SAs.  Williams' pass-through analysis cannot identify or exclude Resellers who purchased products with Suncall SAs, even though they necessarily were not injured and are not class members.  Dr. Stiroh explains that "it is not possible to identify with methods or information common to the class the identities of class members who purchased a product containing a Suncall HDD SA."  Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 87).  Where the class has uninjured class-members who cannot be identified or excluded, common evidence does not predominate and class certification must be denied.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 2014 U.S. Dist. LEXIS 165261, at *36 (D. Del. Aug. 6, 2014) (failure to satisfy Rule 23(b)(3) where plaintiffs failed to exclude individuals who were not harmed by Intel's practices or even failed to propose a "practicable method for identifying these unharmed individuals."); *Olean Wholesale*, 31 F.4th at 666 n.9 citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252–55 (D.C. Cir. 2013) (certification improper "where the evidence demonstrated nonsensical results such as false positives, i.e., injury to class members who could not logically have been injured by a defendant's conduct").

Dr. Williams' choice to rely on industry Firm Type weighted averages that contradict the outcomes from individual firms' actual available data is even more suspect because of his methods to create those averages.  *First,* the data he relied upon is not representative of the industry.  The "Firm Type" pass-through rates are weighted averages but some of the firms are massively over-represented.  ████████████████████████████████████████████████████████████
████████████████████████████████████████████████   Dr. Williams admitted this.  *See*

22

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Hamer Decl., Ex. 5 (Williams Dep. 221–222).   **Second**, Dr. Williams inexplicably omits data including ███████████████████████████████████████████████████████ and entire levels of the chain including HGA/HSA manufactures, and EMS and contract manufacturers.

### 3.   Dr. Williams' Pass-Through Regressions Do Not Measure Pass-Through of SA Costs Which Are A Tiny Percentage of Finished Product Prices

SAs make up a very small percentage of the cost of even the HDDs they are installed within. The alleged overcharge by Dr. Williams—████—necessarily makes up an even smaller percentage of finished products.   Williams Rep. ¶ 119.   Dr. Williams' calculated overcharge—████ ████████ (Hamer Decl., Ex. 6 (Netz Dep. 114:16–116:2))—would still only make up █████ of an average HDD and ████████████ of the total cost of computers.

No prior case has resulted in certified a class where the relevant component cost overcharge was so vanishingly small.   In *Infineon,* Judge Hamilton declined to certify a class where DRAM represented *20-30%* of the price of a computer, describing DRAM as "a small and varying cost among hundreds of other components."   Specifically she explained that computers, "will vary in price, depending on the cost of other inputs, on the distribution channels available at the time of purchase, and on the competition."   *State v. Infineon Techs. AG,* No. C 06-4333, 2008 U.S. Dist. LEXIS 81251, at *36-37 (N.D. Cal. Sep. 5, 2008). Concluding that "[t]ransaction costs precluded computer manufacturers from changing their computer prices in accordance with increasing DRAM overcharges . . . computer manufacturers may have chosen to simply absorb the [] overcharges." *Id.* at *37.[38] This same reasoning applies here, where the small SA price increases at issue were two tenths of one percent of the total cost of computers.[39]   *See* Williams Rep. 52, 92.

Plus, there is a more fundamental problem unique to this case.   Dr. Williams' pass-through

---

[38] Judge Hamilton was acutely aware of the conflicting DRAM End-User Opinion but noted that it relied on affirmative evidence that all members of the class paid prices based on "'benchmark' spot price[s]." *Id.* at *44–45.   SAs, by contrast, have individually negotiated program prices.

[39] In cases in this district where class certification was granted, the component cost has made up a much more substantial proportion of the finished downstream products.   *See, e.g.*, *TFT-LCD*, 267 F.R.D. at 588; Indirect Purchaser Pls.' Reply Mem. Supp. Class Certification Mot. 17 n.15, *SRAM*, No. 07-md-01819 (N.D. Cal. Jan. 19, 2010), ECF No. 936 (SRAM accounted for up to 40% and "substantial portion of the price" of finished products). Likewise, the components at issue in *CRT* similarly were alleged to represent roughly "60% of the total cost to manufacture the computer monitor." Indirect Purchaser Pls.' Fourth Consolidated Amended Compl. at 53 ¶ 232, *CRT*, No. 3-07-cv-5944-SC (N.D. Cal. Jan. 10, 2013), ECF No. 1526.

23

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

regressions do not even measure pass-through of SA costs, the relevant cost component.  As he

admitted, ████████████████████████  Hamer Decl., Ex. 5 (Williams Dep. 180:10-

13).  At best, he had ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████  Hamer Decl., Ex.

1 (Stiroh Rep. ¶ 114 n.172).  This failure is fatal to Plaintiffs' Motion. *See, e.g.*, *Paul v. Intel Corp.*

*(In re Intel Corp. Microprocessor Antitrust Litig.)*, 2010 U.S. Dist. LEXIS 144511, at \*55 (D. Del.

July 28, 2010) (recommending denial of class certification where expert "fail[ed] to isolate the

alleged … overcharge" for component); *W. Bender Elevator, Inc. v. Rhone-Poulenc S.A. 00-3961* (*In*

*re Methionine Antitrust Litig.*), No. 00-1311, 2003 U.S. Dist. LEXIS 14828, at \*11–\*13 (N.D. Cal.

Aug. 22, 2003) (decertifying class because of expert's failure to account for other input costs).

Even worse, Dr. Williams' pass-through conclusions are directly contradicted by evidence

that does exist from many of the entities in the supply chain that they cannot always pass through

cost increases.  For example, HP reported to the SEC that *it could not pass on cost increases* in its

computers' components during the Class Period. *See* Hamer Decl., Ex. 33 (Hewlett-Packard Co.,

Annual Report (Form 10-K) (Dec. 15, 2008)) ("We also have experienced, and may experience in

the future, gross margin declines in certain businesses, reflecting . . . competitive pricing pressures,

inventory write-downs . . . and increases in component and manufacturing costs . . . as a result of

competitive pricing pressures or other factors, ***we are unable to pass on to our customers***.")

(emphasis added); *see also* Netz Decl., ECF No. 605-4, 69–70, 69 n.304 (reflecting negative profit

margins for computer manufacturer Acer for one year and Iomega's entire "Consumer Storage

Solutions segment" for three years, suggesting that these OEMs were losing money and necessarily

not passing through all cost increases for sustained periods during the Class Period); Hamer Decl.,

Ex. 1 (Stiroh Rep. ¶ 69) (noting that both Dr. Williams and Dr. Netz identify ████████████

████████████████████████████████████████████████████████████████████████

██████████████  That Resellers may have different pricing pressures simply underscores that the ability

to pass through tiny component overcharges is a highly individualized issue defeating certification.

This evidence aligns with basic economics; such a small change in cost is far less likely to be

24

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

passed on to the purchaser of a computer costing hundreds of dollars than a much larger change in cost. *See, e.g.*, Fei Deng et al., *Economic Analysis in Indirect Purchaser Class Actions*, 26 Antitrust 51, 53 (Fall 2011) ("The allegedly price-fixed product is responsible for a small percentage of the price of the final product into which it is incorporated. . . . Thus, the overcharge may not be passed through at all or . . . only after a long period of time."). Dr. Williams' overcharge is so tiny that it is implausible that companies are minutely calibrating their prices to account for it, particularly in the face of negotiated discounts, promotional pricing, rebates and other discounting. Dr. Stiroh explains that "[i]t is simply not plausible that retailers would have uniformly incorporated a price increase of this magnitude"—roughly $0.60 per drive, on average. Hamer Decl., Ex. 1 (Stiroh Rep. ¶ 98). And Resellers collected no evidence in discovery to prove otherwise. Of course, regressions can sometimes be relied on to prove common impact, even where some class members suffered no harm, "***provided that*** the district court considers factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives) . . . . " *Olean Wholesale*, 31 F.4th at 683 (emphasis added); *also id.*, at 667 n.9. Here, Williams' proposed regressions suffer from all three defects, and cannot support a finding of predominance.

## F.    Dr. Williams Uses Improper Assumptions That Inflate Reseller Damages

Dr. Williams' damages model contains multiple contradictory, self-serving assumptions. He assumes ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████ This opinion cannot support certification. "[T]he place of wrong was the jurisdiction in which the transaction took place" i.e., "the state where the" purchase was made. *See Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1073 (9th Cir. 2021) (California's choice of law rules precluded the district court's certification of a nationwide class). Resellers cannot certify a California class for purchases outside of its jurisdiction. Resellers' motion should also be denied for all the identified reasons—*see* Williams Mot. § II.D & E—that Dr. Williams' damages model is inadmissible. *Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825, 830 (9th Cir. 2001) (excluding expert damages model with "no factual basis for the assumption").

25

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

2     Dated: December 23, 2022                    Respectfully submitted,

3      /s/ Mark H. Hamer                            /s/ J. Clayton Everett, Jr.
      Mark. H. Hamer (State Bar No. 156997)       J. Clayton Everett, Jr., (*pro hac vice*)
4     mark.hamer@bakermckenzie.com                clay.everett@morganlewis.com
      Mark G. Weiss (*pro hac vice*)              **MORGAN, LEWIS & BOCKIUS LLP**
5     mark.weiss@bakermckenzie.com                1111 Pennsylvania Ave., N.W.
      **BAKER & McKENZIE LLP**                     Washington, D.C. 20004
6     815 Connecticut Ave., N.W.                   Telephone: (202) 739-3000
      Washington, D.C. 20006
7     Telephone: (202) 452-7077                   Michelle Park Chiu (State Bar No. 248421)
                                                  michelle.chiu@morganlewis.com
8     Catherine Y. Stillman (State Bar No. 242440)  **MORGAN,  LEWIS  &  BOCKIUS  LLP**
      catherine.stillman@bakermckenzie.com        One Market, Spear Street Tower
9     **BAKER & McKENZIE LLP**                     San Francisco, CA 94105
      452 Fifth Avenue                             Telephone: (415) 442-1000
10    New York, New York 10018
      Telephone: (212) 626-4218                   *Counsel for Defendants TDK Corporation,*
11                                                *Hutchinson Technology Inc., Magnecomp*
      Craig Y. Lee (*pro hac vice*)               *Precision Technology Public Co., Ltd.,*
12    craiglee@huntonak.com                       *Magnecomp Corporation, and SAE*
      Carter C. Simpson (*pro hac vice*)          *Magnetics (H.K.) Ltd.*
13    csimpson@huntonak.com
      Christopher J. Dufek (*pro hac vice*)
14    cdufek@huntonak.com
      **HUNTON ANDREWS KURTH LLP**
15    2200 Pennsylvania Ave., N.W.
      Washington, D.C. 20037
16    Telephone: (202) 955-1500

17    *Counsel for Defendants NHK Spring Co.,*
      *Ltd., NHK International, NHK Spring*
18    *(Thailand) Co., Ltd., NAT Peripheral (Dong*
      *Guan) Co., Ltd. and NAT Peripheral (H.K.)*
19    *Co., Ltd.*

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

## **ATTORNEY ATTESTATION**

I, Mark G. Weiss, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Mark G. Weiss*
Mark G. Weiss

Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, D.C. 20006
+1 202 452 7077
+1 415 576 3000

## <u>CERTIFICATE OF SERVICE</u>

I, Mark G. Weiss, hereby certify that on December 23, 2022, I caused to be electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Northern District of California by using the Court's CM/ECF System.

Participants in this case who are registered CM/ECF users will be served by the Court's CM/ECF system.


*/s/ Mark G. Weiss*
Mark G. Weiss

Baker & McKenzie LLP
815 Connecticut Avenue
Washington, DC 20006
+1 202 452 7000

28

Case No. 3:19-md-02918-MMC
DEFENDANTS' OPPOSITION TO RESELLER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION