CROWELL & MORING LLP
Jordan Ludwig (SBN 277952)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690
E-mail: jludwig@crowell.com

CROWELL & MORING LLP
Melissa Nguyen (SBN 336165)
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827
E-mail: mnguyen@crowell.com

*Attorneys for Non-Party Target Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE HARD DISK DRIVES SUSPENSION ASSEMBLIES ANTITRUST LITIGATION**<br><br>This Document Relates to:<br>All Actions | Case No. 19-MD-02918-MMC<br><br>MDL No. 2918<br><br>**DECLARATION OF TINZING ARTMANN IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTIONS TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**<br><br>Hon. Maxine M. Chesney |

I, Tinzing Artmann, hereby declare as follows:

1. I am currently employed by Target Corporation ("Target") as Lead Paralegal. As part of my job duties, I assisted in Target's response to the End-User Plaintiffs' subpoena, including gathering the data produced and assessing its confidentiality.

2. I have personal knowledge of the matters stated herein and if called upon, could competently testify thereto.

3. Pursuant to Local Rule 79-5(f), I submit this Declaration in Support of Defendants' Administrative Motions to Consider Whether Another Party's Material Should Be Sealed (ECF Nos. 781 & 795) dated December 23, 2022 and December 24, 2022.

4. Local Rule 79-5(c)(1) and (f)(3) requires a designating party to file a statement and/or declaration, which includes a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient.

5. Courts in the Ninth Circuit apply the lesser "good cause" standard to determine whether to seal documents attached to non-dispositive motions, rather than the more stringent "compelling reasons" standard. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006); *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). The Court has "broad latitude . . . to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

6. The Supreme Court has acknowledged that sealing may be appropriate to prevent judicial records from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see, e.g., Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7374214, at *4 (N.D. Cal. Dec. 20, 2016) (finding "the need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing specific pricing and cost information.").

7. In response to a subpoena issued by End-User Plaintiffs, non-party Target produced highly confidential business information containing Target's monthly sales data and purchase data. This data was designated by Target as "Highly Confidential" under the protective order entered in this action.

8. In support of their motions for class certification, End User Plaintiffs' and Reseller Plaintiffs' experts analyzed Target's data, along with several other non-parties' data. As part of their oppositions to Plaintiffs' motions, Defendants compared the results of these experts' pass-through analyses. *See* Report of Dr. Lauren J. Stiroh, Ph.D. ("Stiroh Rep."), Fig. 9.

9. Target seeks to seal a very limited portion of Figure 9—**specifically, Target's pass-through rates** contained in Figure 9 to the Stiroh Report. Figure 9 includes a "Comparison of Dr. Williams' and Dr. Netz' Estimated Pass-Through Rates for Third-Party Entities." These pass-through rates were presumably calculated based on the data each non-party, including Target, produced in response to subpoenas in this action.

10. Target's pass-through rates, when compared to other non-parties' pass-through rates—a group that also includes other retailers—may be used by Target's competitors to gain an unfair competitive advantage by enabling others to compare what portion of costs they pass through to customers relative to Target.

11. Such information is extremely competitively sensitive and making it public would likely harm Target's business by placing it at a competitive disadvantage. Target itself takes considerable steps to keep this information confidential, including by limiting even internal access to it.

12. Other courts in this district have recognized the competitive sensitivity of pass-through analyses and have sealed non-parties' pass-through coefficients in past antitrust cases. *See, e.g., Sidibe v. Sutter Health*, 333 F.R.D. 463, 483 (N.D. Cal. 2019) (redacting two parties' pass-through coefficients from expert analysis as confidential information).

13. Target's request is extremely narrowly tailored, as it requests that only two numbers from one line of text be maintained under seal. There is no less restrictive alternative to sealing this figure.

14. Target thus requests that this Court maintain Target's competitively sensitive information under seal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: January 11, 2023          **Respectfully submitted,**

By: _____
Tinzing Artmann
Target Corporation