JEAN E. RICHMANN (SBN 323525)
Email:   jean.richmann@alston.com
**ALSTON & BIRD LLP**
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone:   415-243-1000

*Attorneys for Non-Party Dell Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HARD DISK DRIVES SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>This Document Relates to: All End-User Actions | Case No. 19-MD-02918-MMC MDL No. 2918<br><br>**DECLARATION OF MALLORY BECK IN SUPPORT OF DELL TECHNOLOGIES, INC.'S STATEMENT IN RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTIES' MATERIAL SHOULD BE SEALED [DKT 795]**<br><br>Hon. Maxine M. Chesney |

I, Mallory Beck, hereby declare as follows:

1. I am outside counsel for Dell and represented Dell in conjunction with responding to the Defendants', End-User Plaintiffs', and Reseller Plaintiffs' subpoenas, including gathering the data to be produced and assessing its confidentiality.

2. I have personal knowledge of the matters stated herein and if called upon, could competently testify thereto.

3. Pursuant to Local Rule 79-5(f), I submit this Declaration in Support of Dell Technologies Inc.'s Statement in Response to End-User Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (ECF No. 795) dated December 23, 2022.

4. Specifically, Dell respectfully requests that the Court maintain under seal its highly confidential purchase and sales data on grounds that this information, if made public, would cause competitive harm to Dell, a third-party to this litigation.

The following portions of Exhibit 1 to the Hamer Declaration (Dr. Stiroh's Exert Report):

- The reference to Dell's pricing for enterprise disk arrays in Paragraph 3, footnote 63.

- Paragraph 62 and lines 3-8 in Figure 5 which provides information on Dell's purported price and costs for specific products.

- Paragraph 66 from "Dell" to "cost to Dell was $[amount]", which discloses Dell's purported sales price and cost for certain products over time.

- The lines of Figure 9 disclosing purported pass-through rates for Dell, including the description in footnote 167.

- The lines of Figure 14 disclosing selected products sold by Dell and associated volumes.

- The lines of Exhibit 5 that purport to provide information about Dell's price-cost ratio for various sales.

5. Local Rule 79-5(c)(1) and (f)(3) require a designating party to file a statement and/or declaration, which includes a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of (1) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient.

6. Compelling reasons, namely that allowing Dell's (a non-party's) data to be made public may harm its competitive standing, justify continued sealing of Dell's competitively sensitive data. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016); *Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7374214, at *4 (N.D. Cal. Dec. 20, 2016). The Court has "broad latitude . . . to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips v. Gen. Motors Corp.*, 307 F. 3d 1206, 1211 (9th Cir. 2002).

7. The Supreme Court has acknowledged that sealing may be appropriate to prevent judicial records from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see, e.g., Philips v. Ford Motor Co.*, 2016 WL 7374214, at *4 (finding "the need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing specific pricing and cost information.").

8. In response to subpoenas issued by the parties, non-party Dell produced highly confidential business information containing Dell's sales data and purchase data. This data was designated by Dell as "Highly Confidential" under the protective order entered in this action.

9. As part of Defendants' opposition briefs and opposing expert reports, Defendants used Dell's data to assess and critique Plaintiffs' class certification arguments. *See* Expert Report of Dr. Lauren J. Stiroh, December 22, 2022 ("Dr. Stiroh Report").

10. Dell's sensitive sales data and cost data is referred to multiple times in Dr. Stiroh's Report and purported analysis of that data.

11. Dell seeks to seal very limited portions of the Defendants' filings and is not seeking to maintain all of the materials and references to Dell's data that are included in Defendants' submission.

12. Among other things, these references in Dr. Stiroh's Report and attached exhibits contain purported "pass-through rates" for Dell and other companies that were presumably calculated based on the highly confidential data each non-party produced in response to subpoenas in this action. Not only does Dell contest the accuracy of these figures, but Dell's pass-through rates are competitively sensitive information that may be used by Dell's competitors to gain an unfair

- 3 -

competitive advantage by enabling others to compare what portion of costs they pass through to customers relative to Dell. Releasing these rates to the public could also cause harm to Dell in the eyes of consumers who may compare Dell's rate to a competitor's coefficient and erroneously conclude that a competitor passes less of its costs on to a consumer than does Dell. There are also specific numbers for pricing and cost that are set forth in Dr. Stiroh's Expert Report and Defendants' Opposition brief that are competitively sensitive.

13. Making such competitively sensitive information public would likely harm Dell's business by placing it at a competitive disadvantage. Dell takes considerable steps to keep this information confidential, including by limiting internal access to this information to certain specified business units and individuals.

14. Other courts in this district have recognized the competitive sensitivity of pass-through analyses and pricing information and have sealed non-parties' pass-through coefficients in past antitrust cases. *See, e.g., Sidibe v. Sutter Health*, 333 F.R.D. 463, 483 (N.D. Cal. 2019) (redacting two parties' pass-through coefficients from expert analysis as confidential information); *see also MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 424 (E.D. Va. 2004) (finding that "volume discount price schedule" was a trade secret because it "was qualitatively different from a standard price list," not made available to customers, and used by company's sales force "to develop price quotes for customers").

15. Dell's request is narrowly tailored, as it seeks only to maintain under seal what amounts to a few lines of text and analysis of pricing and cost data produced by Dell.

16. Dell respectfully requests that this Court maintain Dell's competitively sensitive pricing, cost and pass-through information under seal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: January 13, 2023                    Respectfully Submitted,

_____
Mallory Beck
Dell Technologies, Inc.