Kenneth R. O'Rourke, SBN 120144
Jeff VanHooreweghe, SBN 313371
Mikaela E. Evans-Aziz, SBN 339283
**WILSON SONSINI**
**GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: korourke@wsgr.com
Email: jvanhooreweghe@wsgr.com
Email: mevansaziz@wsgr.com

Steffen N. Johnson (*pro hac vice* pending)
**WILSON SONSINI**
**GOODRICH & ROSATI**
Professional Corporation
1700 K Street NW
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: sjohnson@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>*Seagate Technology LLC et al. v. Headway Technologies, Inc. et al.*, Case No. 3:20-cv-01217-MMC | **SEAGATE'S RESPONSE TO THE COURT'S JANUARY 6 ORDER REGARDING ARTICLE III STANDING**<br><br>Judge: Hon.   Maxine M. Chesney<br>Courtroom: 7, 19th Floor<br>Date:          February 24, 2023<br>Time:          9:00 AM |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

ARGUMENT ........................................................................................................................3

I.    Seagate LLC has Article III Standing. .......................................................................3

    A.  Seagate LLC suffered "injury in fact" by paying artificially inflated prices, receiving lower-quality technology designs, and having fewer supply choices. ...............3

    B.  Seagate's injuries are traceable to Defendants' conspiracy not to compete. ....................6

    C.  An award of damages will redress Seagate LLC's injuries. ............................................7

II.   Alternatively, Defendants' conspiracy inflicted a redressable injury on Seagate LLC for internal transfers of HDDs and on Seagate Thailand for the transfer of payment..................7

CONCLUSION......................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page(s)**

*Amarel v. Connell,*
    102 F.3d 1494 (9th Cir.1996) ................................................................................................6

*Associated General Contractors v. California State Council of Carpenters*,
    459 U.S. 519 (1983) ...............................................................................................................3

*Carpenters Industrial Council v. Zinke,*
    854 F.3d 1 (D.C. Cir. 2017) ...................................................................................................3

*CollegeNET, Inc. v. Common Application, Inc.*,
    711 F. App'x 405 (9th Cir. 2017) ..........................................................................................5

*Czyzewski v. Jevic Holding Corp.*,
    580 U.S. 451 (2017) ...............................................................................................................3

*Diskin v. Daily Racing Form, Inc.*,
    1994 WL 330229 (S.D.N.Y. July 7, 1994) ............................................................................4

*FTC v. Qualcomm, Inc.*,
    969 F.3d 974 (9th Cir. 2020) .................................................................................................6

*Glen Holly Entertainment. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ........................................................................................3, 5, 6

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
    2016 WL 7805628 (N.D. Cal. Aug. 4, 2016) ........................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
    720 F. App'x 835 (9th Cir. 2017) ......................................................................................4, 5

*In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*,
    2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) ......................................................................7

*In re NASDAQ Mkt.-Makers Antitrust Litigation*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................................4

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    2012 WL 253298 (N.D. Cal. Jan. 26, 2012) .........................................................................6

*Kjessler v. Zaappaaz*,
    2019 WL 3017132 (S.D. Tex. April 24, 2019) .....................................................................4

*Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..................................................................................................

*Precision Associates v. Panalpina*,
    2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ................................................................... 4-5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................................... 1, 6, 7

*Van v. LLR, Inc.*,
    962 F.3d 1160 (9th Cir. 2020) ............................................................................................. 3

**Other Authorities**                                                                                                    **Page(s)**

Hovenkamp & Areeda, Antitrust Law: An Analysis of Antitrust Principles
and Their Application ¶345 n.5 (4th & 5th eds. 2018-2022) ..................................................... 5

# INTRODUCTION

Noting "that the entity that signed the purchase orders and paid for defendants' suspension assemblies was Seagate Thailand, not Seagate LLC," this Court asked whether Seagate LLC has Article III standing. Dkt. 827 at 3. Under black-letter principles of standing and agency law, it does.

First, Seagate LLC was directly harmed by purchasing Defendants' suspensions. Seagate LLC negotiated the governing contracts; budgeted, approved, and disbursed the funds used to fulfill them; and dictated when, to whom, and on what terms Seagate Thailand issued purchase orders. Like brokers buying stock for clients, Seagate Thailand was Seagate LLC's agent, "paying" Defendants with money spent for Seagate LLC's benefit. For antitrust purposes, that means Seagate LLC is a "direct purchaser." For Article III purposes, it means Seagate LLC suffered an injury-in-fact by paying inflated prices, receiving worse products, and being denied a free choice of market alternatives. Those injuries are traceable to Defendants and redressable by a ruling for Seagate LLC. Accordingly, Seagate LLC meets each Article III standing requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Second, even if Seagate LLC was not injured when it purchased suspensions directly through its agent, Seagate Thailand, it was injured when it received HDDs containing price-fixed suspensions to be sold in the Americas, and thus has standing to assert indirect purchaser claims for those products.

# BACKGROUND

Seagate LLC negotiated, controlled, funded, and finalized the purchases of Defendants' suspensions— ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶¶57, 58.

Communications between the parties confirm that Seagate LLC paid for the suspensions and

1 | was impacted by paying.  For example, during negotiations, ███████████████
2 | ███████████████████████████████████ Similarly, ███████████
3 | █████████████████████████████  Ex. 2 at -216; Ex. 3 at -618, -612. ████
4 | ████████████████████████████████████████████████████████
5 | ████████████████████████████████████████████████████████
6 | ████████████████████████████████████████████████████████
7 | ████████████████████████████████████████████████████████
8 | ████████████████████████████████████████████████████████
9 | ██████████████████████████████████████████████
10 | ██████████████████████████████████████
11 | ████████████████████████████████████████████████████████
12 | ████████████████████████████████████████████████████████
13 | ████████████████████████████████████████████████████████
14 | ████████████████████████████████████████████████████████
15 | ████████████████████████████████████████████████████████
16 | ████████████████████████████████████████████████████████
17 | ████████████████████████████████████████████████████████
18 | ████████████████████████████████████████████████████████
19 | ████████████████████████████████████████████████████████
20 | ████████████████████████████████████████████████████████
21 | ████████████████████████████████████████████████████████
22 | ████████████████████████████████████████████████████████
23 | ████████████████████████████████████████████████████████
24 | ██████████████████████████████████
25 | After purchase, Defendants' suspensions were "assembled" into HDDs for sale to customers.
26 | *Id*. ¶23. ████████████████████
27 | ███████████████████
28 |

**ARGUMENT**

**I.     Seagate LLC has Article III standing.**

Seagate LLC has Article III standing to assert each of its claims.  For antitrust purposes, Seagate LLC was a direct purchaser, as the relevant purchase orders were issued by its agent, Seagate Thailand, acting for Seagate LLC's benefit.  Seagate LLC thus suffered concrete, remediable harms that were caused by Defendants' conspiracy and would be remedied by a damages award.

**A.     Seagate LLC suffered "injury in fact" by paying artificially inflated prices, receiving lower-quality technology designs, and having fewer supply choices.**

Customers are "presumptively" injured from a conspiracy not to compete, and that injury can take many forms—"(1) artificially increased prices," "(2) artificially less innovative products," or "[3] prevent[ing] . . . free choices between market alternatives."  *Glen Holly Ent. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003).  Here, Defendants injured Seagate LLC in all three ways.[1]

*First*, Defendants injured Seagate LLC financially by charging artificially inflated prices ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Choi ¶11.  Thus, Seagate LLC suffered direct injury-in-fact from Defendants' conspiracy.  *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) ("a loss of even a small amount of money is ordinarily an 'injury'" (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)) and *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (Kavanaugh, J.) ("A dollar of economic harm is still an injury-in-fact for standing purposes.")).

An entity may suffer a direct injury even when it relies on an agent to transfer payment.  In *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7805628, *14 (N.D. Cal. Aug. 4, 2016), a court in this District held that "[a] principal has standing to sue in this context because it is, as a matter of

---

[1] Although Article III standing is distinct from antitrust standing, the latter "is sufficient to satisfy the constitutional standing requirement of injury in fact."  *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983); *see also Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (proving antitrust injury "is sufficient to show an injury-in-fact traceable to the defendants and redressable by a favorable ruling").

1 agency law, a direct purchaser, not an indirect purchaser. The agent, in contrast, is merely an extension
2 of the principal." The Ninth Circuit reversed because the district court, in *denying* standing, improp-
3 erly resolved "genuine issues of material fact" against the plaintiff, but it did not question the district
4 court's standing or agency law analysis. 720 F. App'x 835, 837 (9th Cir. 2017). Similarly, investors
5 have standing to assert securities claims when payment is submitted by brokers, as brokers lack "dis-
6 cretion concerning the price and terms of the purchase." *In re NASDAQ Mkt.-Makers Antitrust Litig.*,
7 169 F.R.D. 493, 506 (S.D.N.Y. 1996); see *Diskin v. Daily Racing Form, Inc.*, 1994 WL 330229, *5
8 (S.D.N.Y. July 7, 1994) (agents are not "a distinct entrepreneurial link in the chain of distribution").

9       That is the situation here. Yes, Seagate Thailand issues "purchase orders" and transfers pay-
10 ments to Defendants. ■
11 ■. Choi ¶¶8, 9; Shay ¶¶1, 3-7; Floeder ¶¶62, 65; Tang-
12 wongchai ¶6-9. Seagate LLC purchased the "tainted" suspensions ■
13 ■ Opp. 6-9, 18-20 (Dkt. 619); Floeder ¶¶30-54, 75. ■
14 ■ Opp. 6-8, 9
15 nn.39-40; Floeder ¶¶30-54; Tangwongchai ¶10. ■
16 ■ Floeder ¶70 (quoting
17 "Standard Operating Procedure" for purchase orders). Those orders also confirm that they are subject
18 to Seagate LLC's PSAs with Defendants: "the terms in the formal written agreement will supersede
19 any contrary terms in this order." Ex. 4 §1.3; Ex. 5 §1.3. Seagate Thailand ■
20 ■ Tangwongchai ¶¶13, 10-12. Many facts that cut the other
21 way on summary judgment in *CRT*—*e.g.*, that the plaintiff "negotiat[ed] prices," but its members de-
22 cided "whether, when, what, and how many" of each good to purchase (720 F. App'x at 838)—show
23 that Seagate LLC was a direct purchaser here.

24       The cases cited in the Court's January 6 Order are not to the contrary. In *Kjessler v. Zaappaaz*,
25 the court dismissed putative class action claims, reasoning that named plaintiffs cannot rely on absent
26 class members' standing. 2019 WL 3017132, *5 (named plaintiffs asserted claims regarding lanyards
27 they admittedly did not buy). But there was no suggestion that the named plaintiffs had given money
28 to others to buy lanyards on their behalf. Nor, unlike *Precision Associates v. Panalpina*, is this a case

1  where a company admittedly did not pay fixed prices and based its claims on an independent company
2  transacting with a conspirator in *another* market for *another* product.  R. & R. at 23 (Dkt. 468).  Rather,
3  ███████████████████████████████████████████████████  Floeder ¶¶7, 62-
4  63; Shay ¶¶ 1, 3-7.  And given that Defendants *overcharged* Seagate LLC, it was financially injured.
5  *CRT*, 720 F. App'x at 838 ("a direct purchaser is harmed the moment it pays an illegal overcharge").

6      *Second*, Defendants depressed the quality of the suspensions sold to Seagate LLC, depriving
7  it of the opportunity to innovate and market new HDD technology.  It is well settled that such harm is
8  "actionable antitrust injury."  *Glen Holly*, 352 F.3d at 374; *CollegeNET, Inc. v. Common Application,*
9  *Inc.*, 711 F. App'x 405, 406 (9th Cir. 2017) (reversing district court for holding that a plaintiff "could
10 not assert an antitrust injury from restraints that resulted in reduced choice, and lower quality and less
11 innovative college application services"); Hovenkamp & Areeda, Antitrust Law: An Analysis of An-
12 titrust Principles and Their Application ¶345 n.5 (4th & 5th eds. 2018-2022) ("[C]learly a consumer
13 has standing to sue a cartel that reduces the quality of the product that the consumer purchased.").

14      Defendants both coordinated the designs submitted to Seagate LLC and coordinated to delay
15 acceptance of Seagate LLC's proposed designs.  Opp. 10 nn.45-46.  Seagate LLC's economists will
16 testify that this deprived Seagate LLC of the ability to become a "first mover" of new HDD products,
17 resulting in lost sales and profits.  *E.g.*, Ex. 6 at 19-20 (citing "technological innovations" as one reason
18 why Seagate's revenue fluctuates), 30 (citing "innovations" as one reason why Seagate's market share
19 fluctuates).  As a concrete example, in the early 2010s, NHK coordinated with MPT ███████
20 ████████████████████████████████████████████████████████████████████████
21 ██████  Ex. 7 at -984; Harvey Dep. (Ex. 8) 230:2-231:20; Floeder Dep. (Ex. 9) 494:19-500:12.
22 Thus, ██████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████████████████████████
26 ████████

27      *Third*, when Defendants submitted rigged bids in rigged negotiations, they denied Seagate LLC
28 a choice among market alternatives.  "One form of antitrust injury is '[c]oercive activity that prevents

|   |   |
|---|---|
| 1 | its victims from making free choices between market alternatives.'" *Glen Holly*, 352 F.3d at 374 |
| 2 | (quoting *Amarel v. Connell,* 102 F.3d 1494, 1509 (9th Cir. 1996)).  That includes agreements not to |
| 3 | compete, which "detrimentally change[] the market make-up and limit[] consumers' choice." *Id*. |
| 4 | Here, Seagate LLC was the one choosing—and Defendants' rigged, coordinated bids distorted |
| 5 | the market to their benefit while limiting Seagate LLC's choice of alternatives to its detriment. ▇ |
| 6 | ▇ |
| 7 | ▇ |
| 8 | ▇ Opp. 6-9; Floeder ¶¶31-54.  It is Seagate LLC's, not Seagate |
| 9 | Thailand's, "free choices between market alternatives" that Defendants' "coercive activity" frustrated. |
| 10 | *Glen Holly*, 352 F.3d at 374.  In 2008, for example, Defendants decided to split market share 40-40- |
| 11 | 20 (with NHK "first" and MPT "second" at Seagate).  Opp. 10 n.44; Kamigama Dep. (Ex. 10) 47:13- |
| 12 | 48:17; 51:24-52:12; 153:15-18; Ex. 11 (Feb. 2, 2021 TDK Supp. Rog Resp. 2) (▇ |
| 13 | ▇).  To implement this illegal market allocation, Defendants submitted false |
| 14 | bids to Seagate LLC that corruptly influenced Seagate LLC's purchasing decisions, decreased its lev- |
| 15 | erage to negotiate better design, pricing, and supply terms, and coerced it into choosing suppliers on |
| 16 | terms to which it would not otherwise have agreed.  As Defendants "diminished consumer choices," |
| 17 | Seagate LLC suffered a concrete injury.  *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). |
| 18 | Finally, even if Seagate LLC somehow was not harmed as a direct purchaser (through its agent, |
| 19 | Seagate Thailand), it was then an indirect purchaser when it disbursed funds to Seagate Thailand for |
| 20 | the suspensions and took control of them (directing that they be assembled into HDDs).  "[I]ndirect |
| 21 | purchasers" likewise suffer a traceable and redressable injury and thus "by definition, have standing." |
| 22 | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 253298, *1 n.2 (N.D. Cal. Jan. 26, 2012). |
| 23 | **B. Seagate's injuries are traceable to Defendants' conspiracy not to compete.** |
| 24 | Seagate LLC's injuries as a direct purchaser are also "fairly traceable to" Defendants' conspir- |
| 25 | acy.  *Spokeo*, 578 U.S. at 338.  As explained above and in our FTAIA briefing (Opp. 10-13, 25-27), |
| 26 | Defendants' conspiracy inflicted on Seagate LLC all of the injuries that result from eliminating com- |
| 27 | petition—increased prices, decreased quality, and limited alternatives.  No other intervening factors |
| 28 | or third parties could have caused these injuries.  Indeed, Defendants' conspiracy not to compete went |

beyond "but for" causation and "proximately caused" Seagate LLC's injuries. Opp. 24-33.

### C. An award of damages will redress Seagate LLC's injuries.

Finally, Seagate LLC's injuries are "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. All of Seagate's Sherman Act injuries—harm from inflated prices, lost sales and profits from inferior products, and limited opportunities to reach better supply terms—are tangible, quantifiable, and properly redressed by a damages award. *See id.* at 340. Moreover, expert economists are prepared to testify to the amount of damages resulting from these injuries.

**II. Alternatively, Defendants' conspiracy inflicted a redressable injury on Seagate LLC for internal transfers of HDDs and on Seagate Thailand for the transfer of payment.**

If the Court disagreed that Seagate LLC was a direct purchaser, both it and Seagate Thailand would still have Article III standing. *First*, as this Court has recognized, indirect purchasers of finished products containing a cartel component suffer injury-in-fact. *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, *4 (N.D. Cal. Sept. 22, 2021). At a minimum, therefore, Seagate LLC was injured when it ████████████████████████████████████████ ████████████████████; *see also* Opp. 33 (discussing Seagate's alternative Category C claims); Second Am. Compl. ¶¶262-73, 283-92 (Dkt. 352) (state law claims for indirect purchase recovery). This injury, too, is traceable to Defendants and redressable by damages. *Second*, if the purchase orders were dispositive, then Seagate Thailand was injured by transferring payment for artificially inflated prices for the suspension assemblies (again with funds controlled by Seagate LLC); that injury was directly traceable to Defendants' conspiracy; and damages would redress it. Moreover, the FTAIA would not bar Seagate Thailand's claim for the same reasons that the FTAIA does not bar Seagate LLC's claim, allowing it to pursue all claims in the complaint. Opp. 14-34.

### CONCLUSION

For the foregoing reasons, Seagate LLC has Article III standing to press its Sherman Act claim.

| | | |
|---|---|---|
| 1 | Dated: January 20, 2023 | Respectfully submitted, |
| 2 | | <u>/s/ Kenneth R. O'Rourke</u> |
| | | Kenneth R. O'Rourke |
| 3 | | Jeff VanHooreweghe |
| 4 | | Mikaela E. Evans-Aziz |
| | | **WILSON SONSINI GOODRICH & ROSATI** |
| 5 | | **Professional Corporation** |
| | | One Market Plaza |
| 6 | | Spear Tower, Suite 3300 |
| 7 | | San Francisco, CA 94105 |
| | | Telephone: (415) 947-2000 |
| 8 | | Facsimile: (415) 947-2099 |
| | | korourke@wsgr.com |
| 9 | | jvanhooreweghe@wsgr.com |
| 10 | | mevansaziz@wsgr.com |
| 11 | | Steffen N. Johnson (*pro hac vice* pending) |
| | | **WILSON SONSINI GOODRICH & ROSATI** |
| 12 | | **Professional Corporation** |
| | | 1700 K Street NW |
| 13 | | Washington, DC 20006 |
| 14 | | Telephone: (202) 973-8800 |
| | | Facsimile: (202) 973-8899 |
| 15 | | Email: sjohnson@wsgr.com |
| 16 | | ***Counsel for Plaintiffs Seagate Technology LLC,*** |
| | | ***Seagate Technology (Thailand), Ltd., Seagate*** |
| 17 | | ***Singapore International Headquarters Pte. Ltd.,*** |
| | | ***and Seagate Technology International*** |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

# CERTIFICATE OF SERVICE

I, Kenneth R. O'Rourke, hereby certify that on January 20, 2023, I electronically filed the foregoing document entitled **SEAGATE'S RESPONSE TO THE COURT'S JANUARY 6 ORDER REGARDING ARTICLE III STANDING** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Kenneth R. O'Rourke*
Kenneth R. O'Rourke