REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Kenneth R. O'Rourke, SBN 120144
Jeff VanHooreweghe, SBN 313371
Mikaela E. Evans-Aziz, SBN 339283
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: korourke@wsgr.com
Email: jvanhooreweghe@wsgr.com
Email: mevansaziz@wsgr.com

Steffen N. Johnson (admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
1700 K Street NW
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: sjohnson@wsgr.com

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case Nos. 3:19-md-02918-MMC<br>3:20-cv-01217-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br><br>*Seagate Technology LLC et al. v. Headway Technologies, Inc. et al.*, Case No. 3:20-cv-01217-MMC | **SEAGATE'S REPLY IN RESPONSE TO THE COURT'S JANUARY 6 ORDER REGARDING ARTICLE III STANDING**<br><br>Judge: Hon.  Maxine M. Chesney<br>Courtroom: 7, 19th Floor<br>Date: February 24, 2023<br>Time: 9:00 AM |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  Seagate has demonstrated Article III standing.................................................................1

    A.  Seagate LLC established an "injury in fact" as a direct purchaser. ...............................1

    B.  As an alternative, Seagate LLC suffered injuries as an indirect purchaser. ..................4

II.  Conclusion .........................................................................................................................4

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019)..................................................................................................2

*City of Blaine v. Golder Assocs., Inc.*,
  2005 WL 8172693 (W.D. Wash. Apr. 4, 2005)............................................................2

*Diskin v. Daily Racing Form, Inc.*,
  1994 WL 330229 (S.D.N.Y. July 7, 1994) ...................................................................2

*Glen Holly Ent. v. Tektronix, Inc.*,
  352 F.3d 367 (9th Cir. 2003) .........................................................................................1

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).......................................................................................................4

*In re Cathode Ray Tube Antitrust Litigation* (*CRT I*),
  2016 WL 7805628 (N.D. Cal. Aug. 4, 2016)................................................................2

*In re Cathode Ray Tube Antitrust Litigation* (*CRT II*),
  720 F. App'x 835 (9th Cir. 2017) ..............................................................................1, 3

*Inland Empire Waterkeeper v. Corona Clay Co.*,
  17 F.4th 825 (9th Cir. 2021) ..........................................................................................1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................................................1

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) .......................................................................................2

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
  842 F.2d 1466 (3d Cir. 1988).........................................................................................3

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  608 F. Supp. 2d 1166 (N.D. Cal. 2009) .................................................................. 2, 3-4

*Warth v. Seldin*,
  422 U.S. 490 (1975).......................................................................................................1

**Other Authorities**      **Page(s)**

Restatement (3d) of Agency ..................................................................................................2, 3

## I. Seagate has demonstrated Article III standing.

NHK does not deny that if Seagate Thailand was Seagate LLC's agent in buying suspensions, Seagate LLC itself suffered a cognizable injury-in-fact in paying inflated prices. Nor does NHK deny that a party can suffer a direct injury when someone else—like a broker or trustee—makes payment on its behalf and for its benefit. And NHK does not deny that if Seagate LLC got worse products or was denied free choice of market alternatives, those too are distinct injuries.

Instead, NHK disputes the *facts*, saying there is "*no* evidence of intent or acceptance that Seagate Thailand performed its procurement functions on *Seagate LLC*'s behalf or that Seagate LLC controlled each function"—only "conclusory allegations." Dkt. 857 ("Opp.") 3. Yet Floeder, Shay, Tangwongchai, and Choi explain in depth how Seagate Thailand had ▇▇▇▇▇ to independently purchase suspensions, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *E.g.*, Choi ¶¶ 8, 10. These declarations, which must "be taken to be true" at this stage (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see In re Cathode Ray Tube Antitrust Litig.*, 720 F. App'x 835, 838 (9th Cir. 2017) (*CRT II*)), "establish[] an Article III injury." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 834 (9th Cir. 2021). And if it mattered, they would also show antitrust standing. *Glen Holly Ent. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003).

NHK also attempts to blur the issue of Article III standing with whether Seagate LLC is a direct or indirect purchaser. But whether Seagate LLC overpaid when it directly purchased Defendants' suspensions (on the front end), via Seagate Thailand, or when it indirectly purchased them (on the back end) as part of assembled HDDs to be sold in the Americas, it plainly has a "personal stake in the outcome of the controversy" supporting federal jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). Article III requires no more.

### A. Seagate LLC established an "injury in fact" as a direct purchaser.

NHK can say there is "*no* evidence" that Seagate Thailand acted "on Seagate LLC's behalf" (Opp. 3) only by ignoring basic agency law and the record. Intent and acceptance may be shown either by the principal's "assent" or via "expressive conduct by the principal toward a third

party through which the principal manifests assent to action by the agent." Restatement (3d) of Agency §§ 3.01, 3.03 cmt. b; *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1187 (N.D. Cal. 2009) (Restatement governs).  NHK cannot deny that Seagate LLC instructed Seagate Thailand to ▮▮▮ (Floeder ¶¶64-65), *or* that suppliers knew that Seagate Thailand's ▮▮▮ (Tangwongchai ¶¶19, 22).  Thus, this case is unlike *City of Blaine v. Golder Assocs., Inc.*, 2005 WL 8172693, *2 (W.D. Wash. Apr. 4, 2005), where the *plaintiff*'s claim that the *defendant* was an agent was wholly unsupported.  Here, all understood that Seagate Thailand acted for Seagate LLC (Tangwongchai ¶¶16-19) and was ▮▮▮ it.  VanHooreweghe Supp. Decl. ("JVH"), Ex. 1, at 410:4-7.

The factors set out in *In re Cathode Ray Tube Antitrust Litig.*, 2016 WL 7805628, *14 (N.D. Cal. Aug. 4, 2016) (*CRT I*), cut strongly in Seagate's favor.  *See* Dkt. 848 ("Resp.") 4.  The first factor—whether the agent "performs a function on behalf of his principal other than securing an offer [or a price]" (*CRT I* at *14)—supports agency because Seagate Thailand neither "secur[ed]" the price nor carried out other significant functions related to purchasing the suspensions.  NHK skips the second factor for good reason: the "degree to which the [purported] agent is authorized to exercise his discretion concerning the price and terms under which the principal's product is to be [bought]" fully supports agency, as Seagate Thailand had ▮▮▮.  Floeder ¶54.  Finally, Seagate LLC's use of Seagate Thailand as an agent was not "a separate step in the vertical distribution" chain, as Seagate Thailand did not "function as [an] independent entrepreneur[]" in the suspensions market.  *Diskin v. Daily Racing Form, Inc.*, 1994 WL 330229, *5 (S.D.N.Y. July 7, 1994).  Rather, Seagate Thailand's purchase orders were uniformly submitted at Seagate LLC's direction (Floeder ¶65); Seagate Thailand was ▮▮▮ (Choi ¶7), and did not act independently, including in marketing the suspensions (Shay ¶7 (Seagate Thailand "not [] independent[]")).  Thus, this case does not implicate concerns over "arbitrary legal rule[s]" for distinct market participants.  *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1530 (2019).

    *CRT II* confirms that Seagate Thailand acted as an agent.  720 F. App'x at 838.  For example, Seagate LLC selects the products and ▮▮▮▮▮; and while other entities ▮▮▮▮▮ Seagate LLC ▮▮▮▮▮ (*id.* at 837) and is responsible ▮▮▮▮▮ (Tangwongchai ¶¶19, 22; JVH ¶¶4-11).  Moreover, Seagate Thailand does not "determine[] the price at which it will resell the products."  *CRT II*, 720 F. App'x at 837; *see* Floeder ¶65; JVH ¶¶12-16.

    NHK ignores that a corporation "may assume the role" of an affiliate's "agent in the course of one or more specific transactions."  *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988).  Indeed, it repeatedly confuses whether Seagate Thailand performed *any other functions* (Opp. 4-5) with whether it was Seagate LLC's agent for the *specific purpose* of buying suspensions.  *CRT* did not purport to overrule the rule that "agency may attach to only a portion of the relationship between two persons," or that the principal need not have "the right to control the full range of the agent's activities."  Restatement (3d) of Agency § 1.01 cmt. b, c.  One can ask Uber to pick up lunch without asking Uber to drive the kids to school.  Whether a limited agency relationship exists turns on the principal's power over that specific function, such as "[t]he power to give interim instructions."  *Id*. cmt. f(1).  Seagate LLC had full interim control here: ▮▮▮▮▮▮▮▮▮▮ Seagate LLC had to approve it.  Floeder ¶67.  NHK cannot avoid these core agency principles.[1]

    In *Sun Microsystems*—which did not address Article III—it was "critical[]" that "the undisputed facts d[id] *not* demonstrate that Sun intended, or that the foreign subsidiaries understood," that "purchases were being made on *Sun's* behalf," not "on behalf of the foreign subsidiaries."  608 F. Supp. 2d at 1189.  Indeed, the subsidiaries "controlled, in large part, their own purchases" for

---

[1] Many of NHK's unsupported factual assertions are outright false—*e.g.*, that Seagate LLC "admits" that it "never purchased or received the 66–75% of HDD Suspensions purchased by Seagate Thailand"; that Seagate Thailand manages "supply gaps" (*contra* JVH, Ex. 14, 263:21-22 ("gap will be managed by [LLC]"); that Seagate Singapore is relevant to the purchase orders (*contra* Tangwongchai Decl. ¶11 (Seagate LLC controls *all* purchase orders)); and that Seagate Thailand contributed to "material forecasts" (JVH, Ex. 15, 139:4 (Seagate Thailand only "key[s] in" allocation and forecasts that Seagate LLC sends).  But at most, NHK's assertions raise factual disputes.

SEAGATE'S REPLY—JANUARY 6 ORDER REGARDING ARTICLE III STANDING

"their own use and sale," "did not maintain common funds or commingle assets with Sun," "used their own accounts to settle the invoices," and acted independently to sell products "through [their] own European sales offices." *Id.* at 1188-89. The record here shows the opposite: Seagate Thailand ████████████████████████████████████████████████████████████████████. Tangwongchai ¶¶9-13, Choi ¶10; Dkt. 619 ("FTAIA Opp.") 6-8; *see also id.* at 26 n.114, 28-29.

NHK's opposition thus confirms that Seagate LLC has Article III standing. *First*, Defendants injured Seagate LLC via artificially inflated prices, cutting into its available funds—a loss inflicted for *100%* of the relevant suspensions. Resp. 3-5. *Second*, Defendants depressed those suspensions' quality, depriving Seagate LLC of opportunities to innovate. Resp. 5. Contra NHK, this theory too is properly pled and supported by voluminous discovery. *E.g.*, JVH ¶¶19-30. *Third*, Defendants' rigged bids deprived Seagate LLC of a choice among market alternatives (Resp. 5-6), and that theory too is backed by the complaint and discovery. JVH ¶¶31-36; JVH Ex. 29 § 4(c) (NHK Plea admitting market allocation). These harms make Seagate LLC *the most* "direct, appropriate, and efficient" plaintiff. Opp. 6. And NHK does not contest traceability or redressability.

**B.    As an alternative, Seagate LLC suffered injuries as an indirect purchaser.**

From the start, Seagate LLC's Complaint pled alternative indirect purchaser claims (*e.g.*, Dkt. 352 ¶¶ 162, 229, 231), including state-law claims (*id.* ¶¶ 265-73, 283-92) that fall outside *Illinois Brick*. Discovery, including the very "downstream" discovery that NHK falsely suggests was blocked, has supported that theory. JVH ¶¶37-49. Beyond ignoring those facts, NHK says nothing to undercut Seagate LLC's standing to assert indirect purchaser claims. Notably, it cannot dispute that Seagate LLC buys finished products containing a cartel component—a distinct subset of the claims here. Shay ¶¶17-22; *see also* FTAIA Opp. 33 (Category C claims). This injury too traces to defendants and is redressable, and it explains why multiple Seagate entities filed suit.

**II.    Conclusion**

For the foregoing reasons, Seagate LLC has established Article III standing to press its antitrust claims. At the very least, there is a genuine factual dispute on that issue.

Dated: February 10, 2023

Respectfully submitted,

| | |
|---|---|
| *s/ Kenneth R. O' Rourke*<br>Kenneth R. O'Rourke, SBN 120144<br>Jeff VanHooreweghe, SBN 313371<br>Mikaela E. Evans-Aziz, SBN 339283<br>**WILSON SONSINI GOODRICH & ROSATI**<br>Professional Corporation<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>Telephone: (415) 947-2000<br>Facsimile: (415) 947-2099<br>Email: korourke@wsgr.com<br>Email: jvanhooreweghe@wsgr.com<br>Email: mevansaziz@wsgr.com | Steffen N. Johnson (admitted *pro hac vice*)<br>**WILSON SONSINI GOODRICH & ROSATI**<br>Professional Corporation<br>1700 K Street NW<br>Washington, DC 20006<br>Telephone: (202) 973-8800<br>Facsimile: (202) 973-8899<br>Email: sjohnson@wsgr.com |

*Counsel for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand), Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

# CERTIFICATE OF SERVICE

I, Kenneth R. O'Rourke, hereby certify that on February 10, 2023, I electronically filed the foregoing document entitled **SEAGATE'S REPLY IN RESPONSE TO THE COURT'S JANUARY 6 ORDER REGARDING ARTICLE III STANDING** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*s/ Kenneth R. O' Rourke*
Kenneth R. O'Rourke