Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON • KING, LLP**
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101
Telephone: (651) 312-6518
Facsimile: (651) 789-4818
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for*
*Reseller Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: HARD DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC<br><br>MDL No. 2918 |
| This Document Relates to:<br>RESELLER ACTIONS | **RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS**<br><br>Date: To be Determined<br>Time: 9:00 am<br>Place: Courtroom 7, 19th Floor<br>Judge: Honorable Maxine M. Chesney |

REDACTED

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................**III**

I. INTRODUCTION ...................................................................................................... 1

II. LEGAL STANDARD.................................................................................................. 1

III. ARGUMENT ............................................................................................................. 2

    A. Dr. Williams Understands the Market for HDD SAs ........................................... 2

        1. Suspension assemblies are commodity-like.............................................. 2

        2. Dr. Williams's analysis did not omit key variables .................................. 3

    B. Dr. Williams used reliable data........................................................................... 5

    C. Dr. Williams' pass-through calculations are methodologically proper, as is his weighting of the data.......................................................................................... 7

    D. The methodology is applicable to all class members.......................................... 12

    E. Dr. Williams's analysis is specific to the claims of the Reseller Class and does not exaggerate or double-count the total class damages ........................................... 13

        1. Reseller Class Members are entitled to damages based on the overcharge they paid; pass-on applies only if downstream litigants have a claim to the overcharge.............................................................................................. 15

IV. CONCLUSION........................................................................................................ 18

CERTIFICATE OF SERVICE ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Mills*, 286 U.S. 397, 407, 52 S.Ct. 589, 76 L.Ed. 1184 (1932) ...................................8

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc*, 738 F.3d 960 (9th Cir. 2013).....................6

*Allstate Ins. Co. v. Hague*, 449 US 302 (1981)..........................................................................14

*AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013)............................14

*Bazemore v. Friday*, 478 U.S. 385 (1986) ..................................................................................10

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787, 233 P.3d 1066 (2010).....................................15

*Gordon v. Microsoft Corp.*, No. 00-mc-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003) ..........7

*Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-cv-923, 2019 WL 12074086 (C.D. Cal. July 1, 2019) ..................................................................................................................11

*Hyde v. Abbott Lab'ys, Inc.*, 123 N.C. App. 572, 583, 473 S.E.2d 680 (1996)..........................17

*In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982 (E.D. Mich. 2014) .................................14

*In re Capacitors Antitrust Litig.* (No. III), No. 14-cv-3264, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018)1

*In re Glumetza Antitrust Litigation*, No. C 19-05822 WHA, 2021 WL 3773621 (N.D. Cal. Aug. 25, 2021) ...................................................................................................................8

*In re Google Play Store Antitrust Litig.*, No. 20-cv-5761, 2022 WL 17252587 (N.D. Cal. Nov. 28, 2022) 7

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)......................14

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ......................................................................................................................7

*In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012)..........................10, 11

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530 (C.D. Cal. Feb. 7, 2023)6, 17

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015)............................................................8

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) .....................14, 15

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ..................13

iii

*In re Static Random Access memory Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009)............................7

In re Suboxone Antitrust Litig., No. 19-3640, 2020 WL 4331523 (3d Cir. July 28, 2020)......................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ...........................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-4997 SI, 2012 WL 6709621 (N.D. Cal. Dec. 26,

2012) ...................................................................................................................................16

*In re Urethane Antitrust Litigation*, 768 F.3d 1261 (10th Cir. 2014) ....................................5

*In re Vitamins Antitrust Litigation*, 259 F.Supp.2d 1 (D.D.C.2003)...................................16

*Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016)...................................13

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611

(N.D. Cal. Sept. 22, 2014) .............................................................................................14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006).....................5

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ...........................................................5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ..........2, 13

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15-cv-1749, 2022 WL 4830698 (S.D. Cal. Sept. 30,

2022) ..................................................................................................................12

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. Aug 2016) ...............................17

*Sali v. Corona Regional Medical Center*, 909 F.3d 996 (9th Cir. 2018) ....................................2

*Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2022 WL 789123 (N.D. Cal. Mar. 14, 2022)...........8

*Sumotext Corp. v. Zoove, Inc.*, No. 20-17245, 2021 WL 4988024 (9th Cir. Oct. 27, 2021) ..................1, 5

*United States v. NHK Spring Co. Ltd.*, No. 19-cr-20503 (E.D. Mich. Dec. 12, 2019) ..............................3

*United States v. Ruvalcaba-Garcia*, 923 F.3d 1183 (9th Cir. 2019)...........................................1

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017) ..........................................2

*York v. Starbucks Corp.*, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011)....................................6

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

**I.  Introduction**

Dr. Williams used multivariable regression—a widely-accepted econometric method—to model whether the conspiracy led to price overcharges that had an impact on the Reseller Class, and to estimate damages. *See In re Capacitors Antitrust Litig.* (No. III), No. 14-cv-3264, 2018 WL 5980139, at *6 (N.D. Cal. Nov. 14, 2018) ("multiple regression approach … is a widely used econometric technique for determining whether prices were higher during a class period than they otherwise would have been without anti-competitive conduct."). Dr. Williams correctly described the characteristics of the HDD suspension assembly ("SA") market, confirmed the reliability of more than 40 datasets, included relevant variables in his model, and made reasonable decisions to account for varying Firm Types and the structure of the claims asserted by the Class.

Defendants' Motion to Exclude the Expert Report and Testimony of Michael A. Williams ("Defs. Mot.") does not identify any errors in the underlying data. Instead, it offers methodological criticisms which, at best, go to the weight of the evidence. Under the Daubert factors that control admissibility, the relevance and reliability of Dr. Williams' report is not seriously in doubt, and his opinion should be deemed admissible.[1]

**II.  Legal Standard**

"To satisfy Rule 702, expert testimony must be relevant and reliable." *Sumotext Corp. v. Zoove, Inc.*, No. 20-17245, 2021 WL 4988024, at *2 (9th Cir. Oct. 27, 2021).

"Although *Daubert* identifies several factors that may be used for evaluating the reliability of an expert—whether the scientific theory or technique has been tested, peer reviewed, identified as having a particular rate of error, and generally accepted in the scientific community, district courts are not required to consider all (or even any) of these factors." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019).

---

[1] Reseller Plaintiffs incorporate by reference all arguments made in their Reply in Support of their Motion for Class Certification, being filed simultaneously.

1

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

1
2
3

The Rule 702 "inquiry is flexible" and "should be applied with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (district court must "tak[e] into account the broader picture of the experts' overall methodology.").

4
5
6
7
8
9
10
11

For expert opinions in support of motions for class certification, "the Court must directly answer the Rule 23 question of "whether the plaintiffs' evidence is capable of resolving a common issue central to the plaintiffs' claims." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022). To do that, the Court will decide if the expert's methodology is "capable of showing class-wide antitrust impact" in light of "factors that may undercut the model's reliability." *Id.* at 683. *See also Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1006 (9th Cir. 2018) ("an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage").

12

**III.** **Argument**

13
14

    **A.** **Dr. Williams Understands the Market for HDD SAs**

15

        **1.** **Suspension assemblies are commodity-like**

16

Defendants argue that Dr. Williams does not understand the market for suspension assemblies.

17
18
19
20
21
22
23
24
25
26
27
28

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

Defendants attempt to portray Dr. Williams as having ignored the nuances of different programs, but his report specifically accounts for it. [REDACTED]

As Dr. Williams explained in his Opening Report:

> Fixed effect variables are a set of dummy variables, one for each possible value of a category variable. To account for various category-specific elements of a given observation, I include fixed effects for the following categorical variables: calendar month and program-HDD-manufacturer combination. The former controls for potential seasonality in HDD SA prices, while the latter controls for the possibility of major differences across products of different programs and different HDD manufacturers.

Williams Rep., ¶ 171 (footnote omitted). Ultimately Dr. Williams' overcharge analysis does not hinge on his opinion that HDD SAs are [REDACTED] makes a market more susceptible to collusion, an issue not in contention given that the Defendants have pleaded guilty and/or received amnesty. *See, e.g.* Williams Rep. ¶¶ 9, 247; *see also United States v. NHK Spring Co. Ltd.*, No. 19-cr-20503 (E.D. Mich. Dec. 12, 2019) (sentencing memorandum describing NHK guilty plea).

## 2. Dr. Williams's analysis did not omit key variables

Next, Defendants argue the Williams model suffers from "omitted variable bias" because it does not account for improvements in production that led to declining prices and does not account for quarterly price negotiations. Def. Mot. at 10. Defendants cite regressions performed by Dr. Stiroh in which she added two variables to Dr. Williams' model: one for "number of months in production" and one for "year trend." *Id.* Defendants argue that including these extra

3

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

variables "results in [the] overcharge estimate becoming statistically insignificant," so Dr. Williams' initial model must have been flawed. Def. Mot. at 13.

From an economic perspective, adding these extra variables is an improper application of the methodology and is misguided on several levels.

First, Dr. Stiroh claims that she needed the extra variables "to account for the fact that the price of each HDD SA program tends to decline the longer the program is in production" and to account for "periodic contract renegotiations." Stiroh Rep. ¶ 96. But Dr. Williams had already included variables for total number of HDD units sold and for cumulative SA units sold since introduction. Each of these reflects the idea that units produced early for a product may be comparatively more expensive than units produced later. Ex. 1 to Sims Declaration, Williams Reply Report ¶ 87.

Second, Dr. Stiroh's reasoning is circular. A regression analysis is designed to detect whether independent variables have an effect on a certain dependent variable that is of interest to the parties. Here, the parties are interested in the variation in HDD SA prices over time. Dr. Stiroh's reasoning boils down to arguing that the regression should include price variation to ███████████████████████████████████████████████████████████████ because the model already includes all the prices that resulted from those contracts as well as the major demand and cost factors affecting prices. A new contract is not the economic cause of a price change. Contracts merely memorialize the agreed price at a certain point in time. By adding a variable for contracts, Dr. Stiroh is conflating cause and effect, and her approach is as tautological as stating that a wedding is what led two spouses to become married. *See* Ex. 1 to Sims Declaration, Williams Reply Report ¶¶ 71-74.

From a legal perspective, even if Dr. Stiroh were entirely correct, the omission of variables would not make Dr. William's expert opinion inadmissible:

> The appropriate concerns at this stage are not about the quality of the data [the econometric expert] used or whether he included all the potential variables in his model. Challenges along those lines do not go to the admissibility of his opinions, but rather to matters of

4

weight and probative value for a jury to evaluate. Many of defendants' attacks miss this salient point by criticizing what [the expert] did or didn't take into account in running his analysis. Those observations may be grist for a good cross-examination at trial, but they do not play a material role in deciding whether [the expert's] work should be admitted under Rule 702.

*In re Capacitors Antitrust Litig.* (No. III), No. 14-cv-3264, 2018 WL 5980139, at *6 (N.D. Cal. Nov. 14, 2018) (citing *In re Urethane Antitrust Litigation*, 768 F.3d 1261, 1263 (10th Cir. 2014).

The same weight-versus-admissibility concept applies to the list of factual details cited by Defendants. Def. Mot. at 11-12. They ask the court to exclude Dr. Williams' report because he does not take a position on, e.g., whether the Great Recession affected HDD SA prices. *Id*. Even if they were to argue that each of these details is relevant and necessary—which they do not— their criticisms do not rise to the level of inadmissibility. *See Obrey v. Johnson*, 400 F.3d 691, 695-96 (9th Cir. 2005) (a "regression analysis does not become inadmissible as evidence simply because it does not include every variable that is quantifiable and may be relevant to the question presented ... [I]t is for the finder of fact to consider the variables that have been left out of an analysis, and the reasons given for the omissions, and then to determine the weight to accord the study's results.").

### B. Dr. Williams used reliable data

Defendants repeatedly mention that Dr. Williams used data collected and cleaned by another expert and by his own staff, but reliance on data prepared by others is not improper. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088 (N.D. Cal. 2006), ("Although an expert may not adopt another's data without verifying the validity and reliability of that data … an expert is not required to testify only upon data the expert has personally gathered or tested.").

Dr. Williams stated that "staff working under [his] direction reviewed the data cleaning computer programs that applEcon provided" and performed further cleaning, under his direction, for both Defendants' data and the third-party datasets. See Williams Rep., fn 188, fn 205. Defendants attack Dr. Williams' memory regarding who secured the data for a particular variable (oil prices), but do not identify any reason to suspect that the data is fatally unreliable.

5

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

In *York v. Starbucks Corp.*, 2011 WL 8199987, at \*14 (C.D. Cal. Nov. 23, 2011), cited by Defendants, the expert's testimony was rejected because the data he used contained an identifiable and material error, not because he "adopt[ed] another's data." The cause of action turned on whether final paychecks had been sent by a deadline, and defendants pointed out that the data conflated paychecks with other non-wage checks, making it impossible to know the real date of any check. *Id*. The data used here has no such infirmity.

Thus, if the Court accepts the reliability of the data for the purposes of the End User Plaintiffs, it should equally accept the reliability of the data for the Reseller Class. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at \*7 (C.D. Cal. Feb. 7, 2023) ("because the Court admits [expert A]'s report and data, there is no basis for excluding [expert B's] Conjoint Model due to its reliance on [A]'s data.").

Defendants criticize the inclusion of Thai electricity and labor rates rather than Japanese, Chinese, or US rates. Def. Mot at 14. They argue that the omission of these other variables requires that the entire analysis be rejected. *Id*. Defendants are simply incorrect about the fact. 2002 is the only year in Dr. Williams' benchmark period for which Defendants only produced data for NHK Spring, which accounts for just 1% of the data Dr. Williams used. Ex.1 to Sims Declaration, Williams Reply Rep. ¶ 231. The majority of the benchmark period and the majority of the entire data used in Dr. Williams' overcharge regression pertain to suspensions manufactured in Thailand, so the Thai rate is appropriate. *See* Ex. 1 to Sims Declaration, Williams Reply Rep., ¶¶ 231-232. These micro-criticisms are exactly the kind of argument that can be made to a jury, but which do not seriously threaten admissibility of an expert opinion. *See Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc*, 738 F.3d 960, 969 (9th Cir. 2013) ("The judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

## C. Dr. Williams' pass-through calculations are methodologically proper, as is his weighting of the data

Defendants argue that the Williams report must be excluded because he applied an aggregated pass-through rate by firm type and thus disregarded the option of reseller-specific individualized analyses. They argue that Williams applied averages in order to "mask" differences in pass-through rates. Def. Mot. at 16-17. But it is proper to compute pass-through rates by different firm and then use averages to combine them based on all available data for the next phase of analysis. *See In re Google Play Store Antitrust Litig.*, No. 20-cv-5761, 2022 WL 17252587, at *10 (N.D. Cal. Nov. 28, 2022) ("Dr. Singer calculated the pass-through rate for each category, then calculated the average pass-through rate across all categories[.]). "A number of courts have held that averaged and aggregated calculations may be used to demonstrate pass-through." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 605 (N.D. Cal. 2010). And for good reason:

> The damages question for trial is presumably not about whether a specific [defendant] price increase found its way through the distribution chain and resulted in an increase in the price paid by a specific class member. Rather, the question is how a series of [defendant] price increases … impacted the price each consumer paid. The question of what would have happened but for [defendant's] monopoly overcharge is a hypothetical, and a hypothetical question generally cannot be answered by historical data about what actually happened, but must often be answered by general principles about what generally tends to happen. Thus, average pass-through rates appear reasonable and even necessary to prove damages here.

*In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal. 2009) (quoting *Gordon v. Microsoft Corp.*, No. 00-mc-5994, 2003 WL 23105550, at *3 (Minn. Dist. Ct. Dec. 15, 2003).

Ultimately, Defendants' argument about averaging is yet another criticism that goes to the weight of the expert's opinion rather than its admissibility. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2017 WL 1391491, at *11 (N.D. Cal. Apr. 12, 2017).

Defendants also argue that when a reseller has a pass-through rate of 100% or more, that reseller has no injury and no damages, and because the Williams report concludes that resellers did indeed suffer damages, it must be rejected as unreliable. First, Defendants erroneously

conflate injury and damages. "[An] antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset.'" *In re Glumetza Antitrust Litigation*, No. C 19-05822 WHA, 2021 WL 3773621, at *7 (N.D. Cal. Aug. 25, 2021) (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) (holding "if a class member is overcharged, there is an injury." And that it is "incorrect[] [to] assume that if a class member offsets an overcharge through later savings attributable to the same or related transaction, there is no injury . . . antitrust injury occurs the moment the purchaser incurs an overcharge . . .") (citing *Adams v. Mills*, 286 U.S. 397, 407, 52 S.Ct. 589, 76 L.Ed. 1184 (1932)); *see also Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2022 WL 789123, at *8 (N.D. Cal. Mar. 14, 2022) (same). Further, as Dr. Williams explains, the individual passthrough rates are:

> estimations limited to a sample of each entity's cost and sales data. This data has not been weighted to account for the scope or amount of data from each entity. It would not be correct to assume from the passthrough rate provided from this data that each entity with a rate over 100% does not have damages. However, the Weighted Average Passthrough rates in Table 3 are weighted to account for how much data each entity produced . . . .

Ex. 1 to Sims Declaration, Reply Report, ¶124. Defendants also selectively quote from Dr. Williams' testimony and fail to quote Dr. Williams's clarification that Reseller Class members would have damages for any overcharges that were not passed on to other members of the Reseller Class. As Dr. Williams testified: "if the pass-through rate is greater than a hundred percent and the firm's making sales to a non-reseller class member, then it still would suffer damages." Ex.16 to Sims Decl. Williams Dep. 194:4-10. Even if the Defendants were able to successfully advance the pass-on defense against Reseller Class Members, under the laws of each Reseller State, to the extent damages are passed through to entities or persons who do not have claims against Defendants because they are not members of the End-User or Reseller Classes, such damages reside with Reseller Class members. Ex. 1 to Sims Declaration, Reply Report, ¶¶147-154. All of the entities whose samples yielded a passthrough rate of more than 100% made sales to entities that are not in the Reseller or End-User classes (i.e. government

8

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

entities and persons or entities located outside the End-User and Reseller states). Ex. 1 to Sims Declaration, Reply Report, ¶¶148-155.

In indirect purchaser downstream cases, the plaintiff is injured by an overcharge and is entitled to damages unless it can be shown that the overcharge was passed on to a downstream plaintiff that is also asserting a claim in the litigation. The pass-through consideration applies because state *Illinois Brick* repealer statutes instruct the courts to avoid duplicative damages. If there is no downstream litigant or class, there is no risk of duplication of damages. The Court may safely eschew *ad infinitum* downstream analyses for purchasers so removed from the conduct that they will never bring claims.

Defendants additionally argue that the Williams report is deficient because he did not consider whether three of the class representatives may have passed on all the overcharges they

Sims Declaration, Reply Report, ¶2011, and, in any event, it is unlikely to have changed the outcome. *Id.* ¶¶ 205-211.

. Further, as Dr. Stiroh agreed during her deposition, passthrough is the effect of changes in cost on changes in price. Ex. 6 to Sims Decl., Stiroh Deposition, 321:12-16, Dr. Stiroh also agrees that "a statement that an entity sells at cost alone wouldn't tell you the pass-through rate." Ex. 6 to Sims Decl., Stiroh Deposition, 325:7-9. Dr. Stiroh also agreed that a sale at cost could yield a pass-through rate under 100%[2] and stated that to determine that costs are being passed through consistently, one would need to establish that a product is priced at or above cost consistently. Ex. 6 to Sims Decl., Stiroh Deposition 320: 19-24. Dr. Stiroh, confirmed that no Plaintiffs asserted that they always price their HDD products at cost. Ex. 6 to Sims Decl., Stiroh Deposition, 319:8-9. Therefore, Defendants' claim that Reseller

---

[2] Stiroh Deposition 324:4-8, Ex. 6 to Sims Decl.

Plaintiffs passed on 100% of their overcharge is incorrect. Thus, nothing about the experience of these plaintiffs conflicts with the expert's conclusion—drawn from all the reliable data—that members of the Reseller Class retained overcharges and were damaged.

Defendants also complain about Dr. Williams's not examining data for entities who manufactured intermediate products containing SAs or hard drives on behalf of OEMs. Given that either they never took ownership of the SAs or their passthrough was 100%, it was unnecessary to run separate regressions for them. Ex. 1 to Sims Declaration, Reply Report, ¶170 (bill-to entities are HDD makers, even when ship-to entities are HGA and HSA makers, contract manufacturers either do not take ownership of HDD products purchased for OEMs or they function as OEMs in the supply chain), fn. 120.

Next, Defendants argue that Dr. Williams must have done something wrong in his pass through analysis because "he relies on the same underlying data as Dr. Netz but gets wildly inconsistent results." Def. Mot. at 17. This is easily explained: Defendants themselves stated that Dr. Netz did not include "product characteristics or quality" in her passthrough regression. Stiroh Rep. ¶ 110. Dr. Williams accounted for product characteristics and quality by including a variable for each item number and description. *Id.* Dr. Netz did not. The differences in estimated pass-through rates between the two expert reports is no evidence of a flaw in Dr. Williams' econometric approach.

Defendants cite *Live Nation* for the proposition that an expert's regression analysis should be excluded if does not take account of variables that are "major factors." Def. Mot. at 18. The court in *Live Nation* acknowledged that "objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility" and that the expert's analysis can be excluded only if it is "so incomplete as to be inadmissible as irrelevant." *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 973 (C.D. Cal. 2012) (quoting *Bazemore v. Friday*, 478 U.S. 385, 400, n. 10, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986).

In that case, the expert's yardstick model ignored "differences in artist quality/popularity," which the parties conceded was a major factor in the price of concert tickets, and "failed to account for venue size or any other variable." *Id*. Thus, the study "did not account for any other possible explanation in the variance of prices between defendants and its competitors." *Id*. (emphasis in original). The expert's other model, a before-and-after regression analysis, "accounted for no independent variable other than time." *Id*. Here, the analysis performed by Dr. Williams includes multiple independent variables.

Defendants also repeatedly cite to *Grasshopper House*, a case in which Dr. Williams offered a damages report. In *Grasshopper*, the party offering Dr. Williams' testimony asked him to "assume the facts of [defendants'] liability for the purpose of his analysis, which an expert opining only on damages may fairly do." But the Court found that the issue presented—whether a negative review of a rehab center had diverted patients to the competing center that controlled the review website—could not be bifurcated between causation and damages, and that the Williams report was inadequate as to causation because Dr. Williams was not an "expert in false advertising" and could not account for other negative reviews on other sites. *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-cv-923, 2019 WL 12074086, at *12 (C.D. Cal. July 1, 2019) ("an analysis of damages without proving that those damages were caused by the defendant's allegedly illegal conduct would be wholly useless to the jury"). Here, in contrast, the Williams report is grounded in antitrust econometrics, which is Dr. Williams' area of expertise.

Finally, Defendants refer repeatedly to *Persian Gulf*, which offers no criticism inherent to Dr. Williams' application of a regression methodology. Instead, the court rejected an "incongruity" between the Plaintiffs' claims and the conspiracy period they had asked Dr. Williams to analyze. His report used August 2011 to January 2015 as part of the benchmark "clean" period prior to the conspiracy. The plaintiffs, in their "post-discovery theory of the case," argued that the conspiracy began no later than August 2011. The court denied Plaintiffs the

RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

ability to offer Dr. Williams as an expert because his analysis was no longer "sufficiently tied to Plaintiffs' liability case" and would be "irrelevant" to the jury. *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15-cv-1749, 2022 WL 4830698, at *37 (S.D. Cal. Sept. 30, 2022).

Defendants also attack Dr. Williams' use of weighted averages. Def. Mot at 16, 24.[3]  As Dr. Williams explains in his rebuttal report, weighting is driven by the amount of data from a certain source as compared to other sources in the analysis. *See* Ex. 1 to Sims Declaration, Williams Reply Rep. ¶ 199. It is an adjustment that is necessary to account for the amount of data collected.[4] Further, as Dr. Williams explains, at ¶171 of this Reply Report that "my pass through regression analysis in my Opening Report covers at least 64.9% of U.S. shipments across all OEMs.  For distributor resellers, my pass through regression analysis in my Opening Report covers 50.6% of North America sales across all major distributors in North America.  For retailer resellers, my pass through regression analysis in my Opening Report covers 89.7% of North America sales across all major consumer electronics retailers."

### D.     The methodology is applicable to all class members

Defendants assert that "no class member can use Williams' model to determine whether he or she is injured, let alone to calculate any damages." What Defendants miss is that all antitrust plaintiffs must offer is statistical proof of injury beyond their own anecdotal purchases. As to injury:

> For purposes of determining whether each member of the [proposed] class can rely on the model to prove antitrust impact, it is irrelevant whether actual sales data shows a specific class member was overcharged by more or less than 10.28 percent. Rather, the question is whether each member of the class can rely on [the expert's] model to show antitrust impact of any amount. The district court did not abuse its discretion in finding that each member could. While individualized differences among the overcharges imposed on each purchaser may require a court to determine

---

[3] Defendants erroneously refer to averaging of OEM overcharges when in fact discussing OEM passthrough.
[4] Defendants, at 24, erroneously state that Dr. Williams "averages the overcharges of 11 OEM datasets." Dr. Williams did not average OEMs' overcharges. Dr. Williams measured the OEMs' passthrough.

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

damages on an individualized basis … such a task would not undermine the regression model's ability to provide evidence of common impact. Accordingly, we reject the [defendants'] argument that the regression model could not sustain liability in individual proceedings. Rather, 'each class member could have relied on [the model] to establish liability if he or she had brought an individual action.'

*Olean,* 31 F.4th at 679.

As to damages, Defendants argue that Dr. Williams' damages model cannot be used to calculate damages for an individual class member, because the distribution chain pathway for a given purchase is an "unknowable detail." Def. Mot. at 18-21. But, as he explained in both his deposition at page 90 and his Reply Report at ¶¶187, his damages methodology can be used to calculate damages suffered by individual class members using information common to the proposed class. Damages "can be allocated to an individual Class Member based on that Class Member's share of HDD units for a given reseller type for which that Class Member has claims." Ex. 1 to Sims Declaration, Williams Reply Rep. ¶187.

Dr. Williams' opinion is offered here in support of class certification, and "at the class certification stage, plaintiffs are not obliged to drill down and estimate each individual class member's damages." *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (Rule 23 has no requirement that "the plaintiffs must be prepared at the certification stage to demonstrate through common evidence the precise amount of damages incurred by each class member.").

### E. Dr. Williams's analysis is specific to the claims of the Reseller Class and does not exaggerate or double-count the total class damages

Defendants attack Dr Williams for "adopting the assumption" that resellers headquartered in the Reseller Class States should have "100% of their purchases count towards damages." They argue this is unrealistic because those resellers made many purchases outside the state.

Dr. Williams was correct to attribute sales to certain states. His assumption tracks the claims at stake because he was asked to analyze the damages of a particular class, and the available damages depend on the legal issues of class definition and surviving claims. Damages

13

are a legal concept defined by law. It is appropriate to acknowledge that class members headquartered in a certain state have claims, under that state's law, for all their nationwide purchases. *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007) (upholding right of indirect purchasers residing in CA, NY, MN and MI to make claims under their states' antitrust laws); *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) (citing *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1011 (E.D. Mich. 2014) (North Carolina residents permitted to bring claims under the North Carolina Unfair Trade Practices Act).

The texts of the California, Michigan, Minnesota, New York, and North Carolina antitrust statutes contain no geographic restrictions. California does not limit antitrust actions to purchases made inside the state. "Any person who is injured … may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained[.]" Cal. Bus. & Prof. Code § 16750. New York likewise allows an action by "any person who shall sustain damages by reason of any violation of this section," with no statutory limitation on the place of purchase. N.Y. Gen. Bus. Law § 340.

Courts have routinely rejected the Defendants' idea that an antitrust plaintiff can sue for damages only in the jurisdiction where the purchase was made. *See AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111-1112 (9th Cir. 2013) (rejecting "the district court's place-of-purchase rule" as "a return to the wooden and now largely abandoned *lex loci delicti* doctrine" that was "explicitly rejected in *Allstate Ins. Co. v. Hague*, 449 US 302 (1981)").

No plaintiff is required to split claims across the laws of different states simply because she purchased a price-fixed product in more than one state. Thus, contrary to Defendants' arguments, the "assumption that all sales to resellers headquartered in one of the five Reseller Class States should have 100% of their purchases count towards damages" is a valid assumption.

14

1.    **Reseller Class Members are entitled to damages based on the overcharge they paid; pass-on applies only if downstream litigants have a claim to the overcharge**

Defendants also claim that pass-on is a necessary part of an economic analysis, and that Williams fails to account for downstream sales that may reduce the total class damages. Again, Dr. Williams properly followed what he understood as the law of the five Reseller Class states, because the law defines the scope of damages he has been asked to analyze. *See* Ex. 1 to Sims Decl., Williams Reply Report, ¶¶197-212.

For transactions where a Reseller Class member sells to an entity that is not involved in this litigation (for example, an end user located outside of the End User Class States), no pass-on analysis is required, and it is proper to calculate the plaintiff's damages based as the full amount of the overcharge paid by the plaintiff.

### *California*

For Reseller Class members with claims under California law, a pass-on defense is "generally precluded," and thus a pass-on analysis is not required. *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787, 233 P.3d 1066, 1086 (2010) ("We therefore conclude, under the Cartwright Act as under federal law, that a pass-on defense generally may not be asserted. Instead, in an antitrust price-fixing case, the presumptive measure of damages is the amount of the overcharge paid by the plaintiff"). California recognizes an exception to this rule "in instances where multiple levels of purchasers have sued, or where a risk remains they may sue … if damages must be allocated among the various levels of injured purchasers. In those instances, in which Reseller Class members sold to other litigants in this MDL, "defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages."). *See also In re Packaged Seafood*, 332 F.R.D. at 338 (Pass-on defense "may apply" where damages may be required to be allocated among multiple levels of purchasers who have "sued in this case.")

### *Michigan*

Under Michigan law, indirect purchaser plaintiffs are required to prove that there was an overcharge and that the overcharge flowed down to their level, but are not required to prove

15

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

anything further. *See In re Vitamins Antitrust Litigation*, 259 F.Supp.2d 1, 8–9 (D.D.C.2003) ("There is no mention [in Michigan state court cases] that an indirect purchaser plaintiff must prove that it did not pass-on the overcharges to downstream indirect purchasers. As a result, this Court will not impose such a burden on [plaintiff]"). Defendants are permitted to argue, as an affirmative defense, that the plaintiffs passed on the overcharge, but this is explicitly an affirmative defense and not a prima facie element of the plaintiff's claim. *Id*.

### *Minnesota*

The Minnesota antitrust statute states that "[i]n any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant."  Minn. Stat. § 325D.57.  As in California, "consideration of pass-on is necessary" only where "multiple levels of purchasers have sued defendants alleging identical and/or overlapping claims." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-4997 SI, 2012 WL 6709621, at *7 (N.D. Cal. Dec. 26, 2012), aff'd, 637 F. App'x 981 (9th Cir. 2016).

### *New York*

"The New York Donnelly Act [N.Y. Gen. Bus. Law § 340(6)] expressly requires courts to consider evidence of downstream pass on of alleged overcharges and to limit damage awards accordingly: 'in actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove it is a partial or complete defense to a claim for damages that the illegal overcharge has been passed onto others who were themselves entitled to recovery so as to avoid duplication of recovery of damages.'" *TFT-LCD.*, 2012 WL 6709621, at *3.

Entities or individuals that purchased from the Reseller Class in states without indirect purchase recovery statutes and government entities, who are not in the EUP class are not "entitled to recovery," in the language of the New York statute, so a pass-on analysis is not required for those transactions.

### *North Carolina*

North Carolina's Unfair and Deceptive Trade Practices Act (the "NCUDTPA"), N.C. Gen. Stat. §§ 75–1 to –49, permits claims by indirect purchasers and contains no language that would require courts to avoid duplication of damages. *See Hyde v. Abbott Lab'ys, Inc.*, 123 N.C. App. 572, 583, 473 S.E.2d 680, 687 (1996) (dismissing the concern that a defendant would be subject to "liability greater than three times the amount of its antitrust violation" because "there are few, if any, reported instances of a defendant paying treble damages to two different classes of purchasers based on a single antitrust violation").

Ultimately, Dr. Williams provided an analysis of damages consistent with his understanding of the existing claims in the litigation. Defendants' arguments about pass-on are legal arguments about the available claims, they are not criticisms of his economic methodology.

The Defendants' brief "mainly advances an argument that [the expert's] credibility and conclusions are questionable, rather than an argument that [the expert] is espousing unreliable nonsense opinions." *In re Nat'l Football League's*, 2023 WL 1813530, at *9 ("Plaintiffs here have produced expert opinions and hypothetical models … as their main vehicles for showing antitrust impact and damages. Defendants' arguments … that this-or-that figure and assumption should not have been used—go to weight. Defendants, of course, may give the jury good arguments for rejecting the testimony, but this Court is within its discretion to allow the jury to listen to [Plaintiffs'] expert as well as [Defendants'].") (cleaned up).

Even beyond the narrow question of admissibility of an expert report, the presence of uninjured class members in the damages analysis does not mean that the class, if certified, will be unable to sort out damages. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. Aug 2016) (district court can "winnow out those non-injured members at the damages phase of the litigation, or . . . refine the class definition"); *see also In re Suboxone Antitrust Litig.*, No. 19-3640, 2020 WL 4331523, at *272 (3d Cir. July 28, 2020) ("Although allocating the damages among class members may be necessary after judgment, 'such individual questions

17

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS

do not ordinarily preclude the use of the class action device."')

## IV.    Conclusion

Dr. Williams offers a sound econometric method, using reliable data, with reasonable

assumptions, and his report is admissible as expert testimony.

Dated:  3/6/2023

*/s/ Victoria Sims*
Jonathan W. Cuneo
Victoria Sims
Joel Davidow
Daniel Cohen
**CUNEO GILBERT & LaDUCA, LLP**
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
vicky@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com

Shawn M. Raiter
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com

*Attorneys for Plaintiffs and the Proposed Classes*

18

1
2

## <u>CERTIFICATE OF SERVICE</u>

3
4
I hereby certify that on March 6, 2023, I electronically filed the foregoing document entitled

5
**RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**

6
**MOTION TO EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS** with

7
the Clerk of the Court for the United States District Court, Northern District of California

8
using the CM/ECF system and served a copy of same upon all counsel of record via the

9
Court's electronic filing system.

10
11
12

                 _/s/ Victoria Sims_
                 Victoria Sims

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19

Case No. 19-md-02918-MMC
RESELLER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE TESTIMONY OF DR. MICHAEL WILLIAMS