IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL CLASS ACTIONS | Case No. 19-md-02918-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[DOC. NO. 533]** |

Before the Court is the "Motion for Partial Summary Judgment Regarding Foreign Commerce" (Doc. No. 533), filed August 2, 2022, by defendants TDK Corporation ("TDK"), Hutchinson Technology Inc. ("HTI"), Magnecomp Precision Technology Public Co., Ltd. ("MPT"), Magnecomp Corporation ("MC"), and SAE Magnetics (H.K.) Ltd. ("SAE") (collectively, "TDK Defendants"), and defendants NHK Spring Co., Ltd. ("NHK Spring"), NHK International ("NHKI"), NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Peripheral (Dong Guan)"), NAT Peripheral (Hong Kong) Co., Ltd ("NAT Peripheral (Hong Kong)"), and NHK Spring (Thailand) Co., Ltd ("NHK Spring (Thailand)") (collectively, "NHK Defendants"), whereby defendants seek summary judgment as to claims asserted by Reseller Plaintiffs and by End-User Plaintiffs. Reseller Plaintiffs and End-User Plaintiffs (collectively, "IPPs")[1] have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion,

---
[1] "IPPs," the term used by Reseller Plaintiffs and End-User Plaintiffs, is a reference to "indirect purchaser plaintiffs."

the Court rules as follows.[2]

## BACKGROUND

**A. Reseller Plaintiffs**

In their operative pleading, the Third Consolidated Amended Complaint ("TAC"), Reseller Plaintiffs, namely, three entities and two individuals, allege that NHK Defendants and TDK Defendants entered into a conspiracy to "fix, raise, maintain, and/or stabilize prices of and allocate market shares of suspension assemblies ['SAs']" (see TAC ¶ 4), "a critical component" of hard disk drives ("HDDs") (see TAC ¶ 44). According to Reseller Plaintiffs, defendants sold SAs to "HDD manufacturers," which in turn "install[ed]" SAs into HDDs (see TAC ¶ 51) and then sold those HDDs to "storage device and computer manufacturers," i.e., "original equipment manufacturers" ("OEMs"), such as Hewlett Packard, Dell, and Lenovo (see TAC ¶ 54), and to "distributors," such as Ingram Micro, D&H, MA Labs, and Synnex (see TAC ¶ 52). Reseller Plaintiffs further allege that, for purposes of "resale" (see TAC ¶¶ 141-42), they "purchased thousands of [HDDs] and products containing [HDDs]" (see TAC ¶ 11) from OEMs, distributors, and/or retailers (see TAC ¶¶ 23-27), and, in so doing, "paid more . . . than they otherwise would have paid in a competitive market" (see TAC ¶ 12) as a result of the "supracompetitive" prices charged by defendants having been "passed on" to Reseller Plaintiffs (see TAC ¶ 99).

Based on said allegations, Reseller Plaintiffs assert, on their own behalf and on behalf of a putative class, three Claims for Relief, specifically, the First Claim for Relief, asserting violations of antitrust statutes under the laws of California, Michigan, Minnesota, New York, and North Carolina; the Second Claim for Relief, asserting violations of consumer protection statutes under the laws of California, New York, and North Carolina; and the Third Claim for Relief, asserting claims for unjust enrichment under the laws of Michigan, Minnesota, and New York.

//

---

[2] By order filed February 21, 2023, the Court took the matter under submission.

**B. End-User Plaintiffs**

In their operative pleading, the Fourth Amended Consolidated Class Action Amended Complaint ("4AC"), End-User Plaintiffs, namely, fifty-two individuals, allege that NHK Defendants and TDK Defendants entered into a conspiracy to "fix prices of, and allocate market shares for, [SAs]." (See 4AC ¶ 1.) According to End-User Plaintiffs, defendants sold SAs to "HDD manufacturers," which in turn "incorporated" SAs into HDDs that the manufacturers sold, either as "bare HDDs" or as components, to OEMs that "incorporated" the HDDs into "storage devices or computers." (See 4AC ¶ 209.) End-User Plaintiffs then purchased the "finished products," i.e., bare HDDs, storage devices, or computers, "from HDD manufacturers (e.g. Western Digital) or from resellers (e.g., Best Buy, Newegg)," as well as "from finished product OEMs (e.g., Dell, Apple) or from resellers (e.g., Best Buy, Newegg)" (see 4AC ¶ 211), and, in so doing, paid "supra-competitive prices" as a result of the "inflated prices" defendants charged to their direct purchasers having been "passed on" to End-User Plaintiffs (see 4AC ¶¶ 249-50).

Based on said allegations, End-User Plaintiffs assert, on their own behalf and on behalf of a putative class, three Claims for Relief, specifically, the First Claim for Relief, asserting violations of antitrust statutes under the laws of Arizona, California, the District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin; the Second Claim for Relief, asserting violations of consumer protection statutes under the laws of Arkansas, California, the District of Columbia, Florida, Hawaii, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New York, North Carolina, North Dakota, Rhode Island, South Carolina, and Vermont; and the Third Claim for Relief, asserting claims for unjust enrichment under the laws of Arizona, Arkansas, the District of Columbia, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, defendants seek summary judgment "on all claims asserted by [IPPs]."  (See Defs.' Mot. at 3:13-14.)  Specifically, defendants argue, almost all of IPPs' claims are barred by the Foreign Trade Antitrust Improvements Act ("FTAIA), all of IPPs' claims are barred by the Commerce Clause, and some of IPPs' claims are beyond the scope of state antitrust statutes on which they rely.  The Court considers defendants' arguments in turn.

//

### A. FTAIA

Defendants argue that, with the exception of any claim based on "sales of [SAs] incorporated into bare or external HDDs sold by HDD manufacturers to direct purchase[r]s in the U.S." (see id. at 19:25-27),[3] IPPs' claims are barred by the FTAIA.

The FTAIA, in relevant part, provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless--
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>
>     (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
>     (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of [the Sherman Act].

See 15 U.S.C. § 6a.

As explained by the Supreme Court, the FTAIA "initially lays down a general rule placing all (nonimport) activity involving foreign commerce outside the Sherman Act's reach," see F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 162 (2004); "[i]t then brings such conduct back within the Sherman Act's reach provided that the conduct both (1) sufficiently affects American commerce, i.e., it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, and (2) has an effect of a kind that antitrust law considers harmful, i.e., the 'effect' must 'giv[e] rise to a [Sherman Act] claim,'" see id. (quoting 15 U.S.C. §§ 6a(1), 6a(2); alterations in original); see also United States v. Hsiung, 778 F.3d 738, 756 (9th Cir. 2015) (referring to statutory exception as "domestic effects exception"). The Ninth

---

[3] The only IPP assertedly making such a purchase is Jeffrey Greenfield, an End-User Plaintiff. (See 4AC ¶ 32 (alleging purchase of "Western Digital My Cloud 1TB external HDD from Westernditigal.com").)

Circuit has further clarified that the FTAIA's "gives rise to" language "requires a direct or proximate causal relationship."  See In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 988 (9th Cir. 2008).

Although, on its face, the FTAIA only sets forth limitations with respect to the Sherman Act, district courts to have considered the matter have found, and this Court agrees, that state law antitrust claims are "limited by the FTAIA to the same extent as any federal law claims."  See In re Optical Disk Drive Antitrust Litig., 2017 WL 11513316, at *2 (N.D. Cal. December 18, 2017) (citing cases); see also In re Capacitors Antitrust Litig., 2016 WL 5724960, at *8 (N.D. Cal. September 30, 2016) (holding reach of state antitrust laws do not extend "beyond the FTAIA"); In re Static Random Access Memory (SRAM) Antitrust Litig., 2010 WL 5477313, at *4 (N.D. Cal. December 31, 2010) (rejecting argument that "FTAIA does not apply to [plaintiffs'] state law claims"; explaining "foreign commerce is preeminently a matter of national concern on which the federal government has historically spoken with one voice") (internal quotation and citation omitted).

At the outset, defendants offer evidence to support a finding that defendants MPT, HTI, NHK Spring, NAT Peripheral (Dong Guan), NAT Peripheral (Hong Kong), and NHK Spring (Thailand) only sold the SAs they manufactured[4] to companies located outside the United States, namely, China, Hong Kong, Japan, Malaysia, the Philippines, Singapore, and Thailand,[5] in which locations the foreign purchasers incorporated the SAs into HDDs or components within HDDs.  (See Misuta Decl. ¶¶ 7, 18, 21-23; Okuma Decl. ¶¶ 8, 21, 42, 43.)  Class Plaintiffs offer no evidence to the contrary and, consequently, it is undisputed that defendants' sales of SAs, the allegedly price-fixed components, "involv[ed]" international commerce.  See 15 U.S.C. § 6a.

---

[4] The remaining defendants, specifically, TDK, MC, SAE, and NHKI, did not sell SAs.  (See Misuta Decl. ¶¶ 3, 5, 7, 18; Okuma Decl. ¶¶ 7(e), 8.)

[5] Defendants acknowledge they "delivered [SAs] directly to the United States" as "prototypes, samples or for testing purposes" (see Misuta Decl. ¶ 27; Okuma Decl. ¶ 22), but point out there is no allegation that any IPP purchased any such SAs.

Accordingly, under the FTAIA, IPPs' claims are barred in the absence of a showing that either the import trade/import commerce exclusion or the domestic effects exception applies, a showing defendants argue IPPs cannot make. The Court next addresses the import trade/import commerce exclusion.

As noted, claims based on conduct "involving . . . import trade or import commerce" are exempt from the prohibition set forth in the FTAIA. See 15 U.S.C. § 6a.

Defendants do not dispute IPPs' allegations that they purchased in the United States products containing SAs, namely HDDs and/or products containing HDDs, and, consequently, it is readily apparent that the products IPPs purchased were imported into the United States. Rather, defendants offer evidence, undisputed by IPPs, that defendants did not ship any HDDs or products containing HDDs to the United States (see Misuta Decl. ¶¶ 33-38; Okuma Decl. ¶ 41-44), and, in light thereof, contend IPPs cannot establish the applicability of the import trade or commerce exclusion. Case authority, however, is to the contrary, in that district courts have found the import trade or commerce exclusion can be established without a showing that the defendants themselves shipped price-fixed goods into the United States.

For example, in In re Capacitors Antitrust Litig., 2018 WL 4558265 (N.D. Cal. September 20, 2018), the district court found a triable issue of fact existed as to the import trade or commerce exclusion, where the defendants sold price-fixed components to foreign purchasers, which in turn incorporated the components into products that were shipped to the United States. In so holding, the district court pointed to evidence that the defendants had negotiated in the United States the prices the foreign purchasers would pay for the components and that the defendants thereafter sold the components to foreign purchasers, "knowing [the components] would be incorporated into goods that were intended to be (and were) shipped to the U.S." for "specific U.S. customers" whose identities were known to defendants. See id. at *4-5.

//
//

7

Similarly, in Optical Disk Drive, the defendants sold price-fixed components to foreign purchasers and the components were incorporated into consumer products that the purchasers and their "affiliates" shipped to the United States; the district court found a triable issue of fact existed as to the import commerce exclusion, in light of evidence that the defendants negotiated in the United States the prices the foreign purchasers would pay and "knew that [the price-fixed components] they sold to [foreign direct purchasers] would be sold for the purpose of incorporation into [products] sold [in the United States]." See Optical Disk Drive, 2017 WL 11513316, at *4; see also In re Lithium Ion Batteries Antitrust Litig., 2017 WL 2021361, at *4 (May 12, 2017) (finding, at pleading stage, where plaintiff alleged its "affiliates" purchased price-fixed components for "purpose of manufacturing goods for their U.S. customers" and defendants "knew or should have known that a substantial portion of the products they sold to affiliates would be manufactured into goods sold to U.S. consumers," plaintiff "alleged a plausible basis for import trade or commerce") (internal quotation and citation omitted).

Here, similar to the evidence found sufficient in Capacitors and Optical Disk Drive, IPPs offer evidence that TDK Defendants and NHK Defendants, using employees based in the United States, negotiated in the United States with HDD manufacturers the prices that would be paid when purchase orders for SAs were placed for delivery to the manufacturers' foreign affiliates.  (See Reiss Decl. Ex. 12 at 21:18-26:1, 274:11-275:18; Ex. 17 at 18:2-20:22, 382:6-384:14; Ex. 22 at 178:8-181:24, Ex. 23 at 92:15-22, 95:25-96:23, 97:18-7; Ex. 25 at 67:19-69:23; Ex. 30 at 123:20-125:2, 126:1-127:7.)  Further, IPPs offer evidence that, during the negotiations, "[t]he suppliers[:] MPT, HTI, NHK," "required" Seagate Technology LLC to disclose the names of Seagate customers, which included large companies located in the United States (see id. Ex. 18 at 411:17-412:6, 413:15-415:7), that MPT knew the identity of two United States-based corporations that were customers of Toshiba, an HDD manufacturer (see id. Ex. 30 at 47:16-19, 156:11-161:23), and that TDK knew the identity of seven U.S. corporations that were customers of Toshiba (see id. Ex. 36 at 199:11-201:1).

Accordingly, as a triable issue of fact exists as to whether IPPs' claims "involv[e] . . . import trade or import commerce," see 15 U.S.C. § 6a, defendants have not shown they are entitled to summary judgment on the issue of the applicability of the FTAIA.[6]

**B.  Commerce Clause**

Defendants argue that IPPs' claims, which, as noted, arise under state law, are barred by the Commerce Clause.

The Commerce Clause, contained in Section 8 of Article I of the Constitution, provides that Congress has the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." See U.S. Const., Art. I, § 8, cl. 3. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." National Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (internal quotation and citation omitted). "This limitation on state power has come to be known as the dormant Commerce Clause." Id.

As set forth above, it is undisputed that defendants' sales of SAs to the direct purchasers of SAs occurred overseas and thus constituted international commerce. Consequently, defendants argue, if one were to apply to defendants' overseas sales the state laws on which IPPs rely, such application would, according to defendants, constitute a "direct[ ] regulat[ion]" of foreign commerce, and, as such, a violation of the Commerce Clause.  (See Defs.' Mot. at 14:27-28); Sam Francis Foundation v. Christies, Inc., 784 F.3d 1320, 1323 (9th Cir. 2015) (holding "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority" and "violates the dormant Commerce Clause") (internal quotation and citation omitted).

---

[6] In light of this finding, the Court does not address herein defendants' argument that IPPs cannot establish the applicability of the domestic effects exception.

9

As IPPs point out, however, all of their purchases occurred in states in which IPPs reside, i.e., that the purchase of HDDs or products containing HDDs by each IPP occurred in the state of his/her/its residency. (See, e.g., TAC ¶ 26 (alleging Reseller Plaintiff Stephen Arvay is "a resident of and does business in Rouses Point, New York" and purchased "products containing [SAs], during the Class Period, in New York"); 4AC ¶ 51 (alleging End-User Plaintiff Ashely Boswell is "a citizen of North Dakota" and purchased "laptop computer" from store in North Dakota).)

Defendants cite no authority holding a state law claim by an indirect purchaser who buys a price-fixed product in the state in which that indirect purchaser resides is barred by the Commerce Clause. Moreover, the Seventh Circuit has found such a claim is not barred by the Commerce Clause. Specifically, in In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599 (7th Cir. 1997), the Seventh Circuit considered a class action complaint based on indirect purchaser claims brought under Alabama law, where the plaintiff pharmacies alleged a price-fixing conspiracy by drug manufacturers and that they indirectly purchased the subject drugs from wholesalers. See id. at 604. Although the Seventh Circuit found that, "[i]nsofar as the Alabama suit challenge[d] sales from plants or offices in other states to pharmacies in other states, it exceed[ed] the constitutional scope of the Alabama antitrust law," see id. at 613 (explaining that, under the Commerce Clause, "State A cannot use its antitrust laws to make a seller in State B charge a lower price to a buyer in C"), it went on to hold that, "insofar as [the Alabama suit] challenge[d] sales from other states to pharmacies in Alabama, it [was] within the intended and permissible scope of the statute." Id.

Accordingly, as all of IPPs' state law claims are based on each IPP's purchases in the state in which such IPP resides, the claims are not barred by the Commerce Clause. See id.

**C. Scope of State Statutes**

Defendants argue that, to the extent IPPs' claims are asserted under the antitrust statutes enacted by Arizona, the District of Columbia, Hawaii, Kansas, Maine, Michigan,

Nebraska, New York, North Carolina, North Dakota, Utah, and West Virginia, the claims are barred.

In particular, defendants argue, the text of the above-referenced statutes limits their scope to agreements that restrain trade "in" or "within" the particular state. See, e.g., N.Y. Gen. Bus. Law § 330 ¶ 1 (providing "[e]very contract, agreement, arrangement or combination whereby . . . [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained . . . is hereby declared to be against public policy, illegal and void"); Neb. Rev. Stat. § 59-801 (providing "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this State, is hereby declared to be illegal").[7] Consequently, defendants contend, IPPs' claims asserted thereunder fail because IPPs allege the conspiracy was to fix the prices of SAs, and, according to defendants, "[i]t is [the] foreign sales of [SAs] – that foreign commerce – that . . . was restrained." (See Defs.' Mot. at 12:1-2.)

As IPPs point out, defendants cite no authority, either by a state court or a federal court applying state law, interpreting the state statutes in the manner proposed by defendants. In particular, defendants cite no authority holding or even suggesting that the location of the price-fixing defendant's sales is dispositive as to whether a claim may be pleaded under the subject state antitrust statutes, and, indeed, authority exists that suggests the state statutes would not be read in the manner proposed by defendants, at least where, as here, the indirect purchasers allege they paid the artificially high prices in their home states. See, e.g., In re Automotive Parts Antitrust Litig., 50 F. Supp. 3d 869, 888-90 (E.D. Mich. 2014) (holding, where indirect purchasers alleged they bought vehicles in which defendants' price-fixed components had been installed, plaintiffs' antitrust claims under laws of District of Columbia, New York, North Carolina, and West

---

[7] The text of each of the subject statutes is set forth in Appendix A to defendants' motion.

Virginia not subject to dismissal for failure to allege sufficient "nexus" between "[defendants'] conduct and intrastate commerce"; finding sufficient plaintiffs' allegations that they purchased vehicles in the states in which they resided and paid "artificially high prices").

Accordingly, the Court finds defendants have not shown the antitrust claims brought by IPPs under the laws of Arizona, the District of Columbia, Hawaii, Kansas, Maine, Michigan, Nebraska, New York, North Carolina, North Dakota, Utah, and West Virginia are not cognizable.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: May 22, 2023

MAXINE M. CHESNEY
United States District Judge