IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><u>Seagate Technology, LLC, et al. v. Headway Technologies, Inc., et al</u>., Case No. 3:20-cv-01217 MMC | Case No. 19-md-02918-MMC<br><br>**ORDER GRANTING, ON RECONSIDERATION, NHK DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING SEAGATE PLAINTIFFS' MOTION FOR LEAVE TO AMEND** |

Before the Court is Seagate Plaintiffs'[1] "Opening Brief," filed September 7, 2023, "on NHK's Oral Motion for Reconsideration,"[2] NHK Defendants'[3] "Supplemental Brief," filed September 28, 2023, "on Oral Motion for Reconsideration of May 15 FTAIA Order," and Seagate Plaintiffs' "Reply Brief," filed October 10, 2023, "on NHK's Oral Motion for Reconsideration." Also before the Court is Seagate Plaintiffs' Motion, filed August 31, 2023, "for Leave to Amend the Complaint," NHK Defendants' opposition thereto, and Seagate Plaintiffs' reply to the opposition. Having read and considered the parties'

---

[1] Seagate Plaintiffs are Seagate Technology LLC ("Seagate LLC"), Seagate Technology (Thailand) Ltd. ("Seagate Thailand"), Seagate Singapore International Headquarters Pte. Ltd. ("Seagate Singapore"), and Seagate Technology International ("Seagate International"),

[2] The motion for reconsideration was orally made at a hearing conducted on July 28, 2023.

[3] NHK Defendants are NHK Spring Co., Ltd., NHK International, NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (Hong Kong) Co., Ltd., and NHK Spring (Thailand) Co., Ltd.

respective written submissions, the Court rules as follows.[4]

**A.  Motion for Reconsideration of Order Granting in Part and Denying in Part NHK Defendants' Motion for Partial Summary Judgment Regarding Foreign Commerce**

In the operative complaint, the Second Amended Complaint ("SAC"), Seagate Plaintiffs allege that NHK Defendants were members of a conspiracy to "fix the prices and allocate market shares of suspension assemblies ['SAs']," a component used in the manufacture of hard disk drives, a product manufactured by Seagate.  (See SAC ¶¶ 1-2, 5.)

On August 2, 2022, NHK Defendants filed a Motion for Partial Summary Judgment Regarding Foreign Commerce, whereby NHK Defendants sought judgment in their favor on Seagate Plaintiffs' direct purchaser antitrust claims to the extent such claims are based on sales of SAs billed and shipped to Seagate Thailand and Seagate Singapore.[5] Specifically, NHK Defendants argued, those claims are barred by the Foreign Trade Antitrust Improvements Act ("FTAIA"), which Act, in relevant part, provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless--
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>
>> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>>
>> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

//

---

[4] By order filed October 23, 2023, the Court took NHK Defendants' motion for reconsideration under submission.  The motion for leave to amend has not been noticed for hearing, and the Court finds said matter likewise is suitable for determination on the parties' respective written submissions.

[5] NHK Defendants did not seek summary judgment on Seagate Plaintiffs' antitrust claims to the extent those claims are based on SAs shipped to Seagate LLC in the United States, nor did they seek summary judgment on Seagate Plaintiffs' claim that NHK Defendants breached the terms of non-disclosure agreements.

(2) such effect gives rise to a claim under the provisions of [the Sherman Act].

See 15 U.S.C. § 6a.

By order filed May 15, 2023, the Court issued its Order Granting in Part and Denying in Part NHK Defendants' Motion for Partial Summary Judgment ("May 15 Order").  Specifically, (1) as to "antitrust claims . . . predicated on direct purchases of SAs made by Seagate Thailand and Seagate Singapore, where products containing those SAs were then shipped to the United States" (see May 15 Order at 12:23-26), the Court found NHK Defendants were not entitled to summary judgment, Seagate Plaintiffs' having offered evidence sufficient to establish the applicability of the FTAIA's import trade/ commerce exemption, and (2) as to "antitrust claims . . . predicated on direct purchases of SAs by Seagate Thailand and Seagate Singapore, where products containing those SAs did not enter the United States" (see id. at 14:23-25), the Court found NHK Defendants were entitled to summary judgment, Seagate Plaintiffs' having failed to offer evidence to establish the FTAIA's domestic effect exception applied.[6]

NHK Defendants now seek reconsideration of the first of the above-referenced findings.  In particular, NHK Defendants, noting there is no dispute that the subject goods were sent to the United States by Seagate Singapore or by a customer downstream of Seagate Singapore, and not by any NHK Defendant or alleged co-conspirator, argue the import trade/commerce exemption does not, as a matter of law, apply.

Courts of Appeal have differed on whether, for the import trade/commerce exemption to apply, a defendant or co-conspirator must be the entity sending the goods into the United States.  Compare Motorola Mobility LLC v AU Optronics Corp., 775 F.3d 816, 818 (7th Cir. 2015) (holding import trade/commerce exemption does not apply where plaintiffs, rather than defendants, "import[ ] [price-fixed goods] into the United States"), with Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462, 470

---

[6] With respect to the above-described second group of claims, Seagate Plaintiffs did not argue that the import trade/import commerce exemption applied.

(3rd Cir. 2011) (rejecting argument that import trade/commerce exemption "requires that the defendants function as the physical importers of goods").  District courts likewise have reached differing conclusions on that issue.  Compare In TFT-LCD (Flat Panel) Antitrust Litig., 2010 WL 2610641, at *4-6 (N.D. Cal. June 28, 2010) (holding plaintiff failed to show import trade/commerce exemption applied, where "foreign-purchased products" were sent to United States "by [plaintiff's] affiliates"), with In re Optical Disk Drive Antitrust Litig., 2017 WL 11513316, at *4 (N.D. Cal. December 18, 2017) (finding import trade/commerce exemption applied where "[plaintiffs] and their subsidiaries, and not [d]efendants, imported [goods with price-fixed components] into the United States").

   Having considered the above-cited decisions, as well as the other cases cited by the parties in their respective written submissions, the Court, in retrospect, finds the authority on which NHK Defendants rely is, as discussed below, more persuasive.

   "Import trade and commerce are excluded at the outset from the coverage of the FTAIA in the same way that domestic interstate commerce is excluded," while "non-import, non-domestic commerce" is included within the FTAIA.  See Minn-Chem, Inc. v. Agrium, Inc., 683 F.3d 845, 854 (7th Cir. 2012).  The "pragmatic reason" for excluding import trade/commerce from the FTAIA is that "[t]he applicability of U.S. law to transactions in which a good or service is being sent directly into the United States, with no intermediate stops, is both fully predictable to foreign entities and necessary for the protection of U.S. consumers."  See id. (emphasis added) (noting "[f]oreigners who want to earn money from the sale of goods or services in American markets should expect to have to comply with U.S. law").

   Thus, when determining whether the import trade/commerce exemption applies, "[t]he relevant inquiry is whether the conduct of the defendants – not the plaintiffs – involves import trade or commerce," see Kruman v. Christie's Int'l, PLC, 284 F.3d 384, 395 (2nd Cir. 2002), and, here, as noted, it is undisputed that no defendant or co-conspirator sent the subject goods into the United States, see, e.g., United States v. Hsuing, 778 F.3d 738, 755 (9th Cir. 2015) (holding "transactions that are directly between

4

the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States") (internal quotation and citation omitted; alteration and emphasis in original).  Rather, the SAs, having been incorporated into consumer products made by a foreign Seagate entity or by a foreign customer of a foreign Seagate entity, were imported into the United States only after they made intermediate stops in Thailand, Singapore, and, in some cases, additional locations overseas.

Accordingly, on reconsideration, the Court finds the import trade/commerce exclusion does not apply to the direct purchaser claims asserted by Seagate Thailand and Seagate Singapore.

The Court next considers whether the domestic effect exception applies to Seagate Thailand and Seagate Singapore's claims, to the extent those claims are predicated on said entities' direct purchases of SAs that later entered the United States in products containing them.[7]

The domestic effect exception applies where the defendant's conduct has a "'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce," see F. Hoffmann-La Roche Ltd. v. Empagran, 542 U.S. 155, 162 (2004) (quoting 15 U.S.C. § 6(a)(1)), and "the 'effect'" gives rise to a Sherman Act claim, see id. (quoting 15 U.S.C. § 6(a)(2)).

In the SAC, Seagate Plaintiffs allege that the price-fixing conspiracy "produce[d] a direct, substantial, and reasonably foreseeable harmful effect on domestic and import commerce in the United States in the form of artificially high prices being paid for [SAs] by U.S. customers."  (See SAC ¶ 229.)  As NHK Defendants point out, however, any

---

[7] As noted, the Court, in its May 15 Order, found, as to claims predicated on direct purchases by Seagate Thailand and Seagate Singapore, where products containing SAs did not enter the United States, that NHK Defendants were entitled to summary judgment, Seagate Plaintiffs' having failed to show the domestic effect exception applied. In light of the Court's findings, set forth in the May 15 Order, with regard to the import trade/commerce exclusion, however, the Court did not at that time consider the applicability of the domestic effect exception to products containing SAs that did enter the United States.

5

such effect could not have given rise to Seagate Thailand or Seagate Singapore's claims, as said claims are based on those plaintiffs' purchases of SAs in, respectively, Thailand and Singapore, which purchases preceded the purchases by any customer in the United States.  See Lotes Co. v. Hon Hai Precision Industry Co., 753 F.3d 395, 402, 414 (2nd Cir. 2014) (holding domestic effect exception inapplicable where plaintiff foreign entity asserted it was injured in China by defendants' conduct; finding plaintiff's allegation that defendants' conduct "had the effect of driving up the prices of [goods]" in United States unavailing where plaintiff's alleged injury "precede[d]" any such effect).

In connection with the instant motion for reconsideration, Seagate Plaintiffs argue that the requisite effect is something in addition to that described above, specifically, defendants' "eliminating competition in domestic bids" (see Pls.' Opening Br. on NHK's Oral Mot. for Recons. at 7:14), a reference to defendants alleged entry into a global conspiracy to fix the prices of SAs (see SAC ¶¶ 73-76, 224-225) and alleged entry into agreements in the United States with Seagate LLC, whereby the prices for SAs to be charged to Seagate entities located outside the United States were set.[8]

In support of their argument that such conduct caused the requisite domestic effect for purposes of the FTAIA, Seagate Plaintiffs cite United States v. Socony-Vacuum Oil Co., 310 U.S. 150 (1940), in which the Supreme Court reaffirmed its prior holdings that "uniform price-fixing by those controlling in any substantial manner a trade or business in interstate commerce is prohibited by the Sherman [Act]" and that "[t]he aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition."  See id. at 212-213 (internal quotations and citations omitted).  In reliance of such authority, Seagate Plaintiffs argue that the existence of an agreement to fix prices, even one prior to any such fixed price being paid by a customer, itself causes a domestic effect in the form of an injury to competition, and that, in the instant case, such

---

[8] A summary of the evidence Seagate Plaintiffs offered in support of their allegation that the pricing negotiations occurred in the United States is set forth in the Court's May 15 Order.  (See May 15 Order at 7:4-12.)

6

a domestic effect preceded the purchases made by Seagate Thailand and Seagate Singapore.

Both the Ninth and Seventh Circuits, however, have rejected essentially the same arguments.

First, in In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981 (9th Cir. 2008), wherein a foreign purchaser alleged "the defendants engaged in a global conspiracy to fix DRAM prices," the Ninth Circuit found that "the domestic effect of the defendants' conspiracy did not give rise to [the plaintiff's] alleged foreign injury," concluding the fact "that the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad." See id. at 988-89 (noting foreign purchaser "has recourse under its own country's antitrust laws").[9]

Second, in Motorola, wherein a domestic plaintiff negotiated in the United States the prices its foreign subsidiaries paid abroad for defendants' price-fixed products, the Seventh Circuit found the domestic effect exception did not apply where the plaintiff sought to recover overcharges the subsidiaries paid abroad. See Motorola, 775 F.3d at 822-825. Rather, after "assum[ing] that the requirement of a direct, substantial, and reasonably foreseeable effect on domestic commerce ha[d] been satisfied," see id. at 819, the Seventh Circuit found the claim on behalf of the subsidiaries did not arise from any such effect, noting "U.S. antitrust laws are not to be used for injury to foreign customers," see id. at 820 (internal quotation and citation omitted); they must instead "seek relief for restraints of trade under the laws either of the countries in which they are incorporated or do business or the countries in which their victimizers are incorporated or do business," see id.

//

---

[9] The Ninth Circuit did not address the nature of the domestic effect exception, the issue not having been raised on appeal. See id. at 986.

Here, the Court likewise finds the domestic effect exception does not apply to the direct purchaser claims raised by Seagate Thailand and Seagate Singapore.

Accordingly, as neither the import trade/commerce exemption nor the domestic effect exception applies to the direct purchaser claims asserted by Seagate Thailand and Seagate Singapore, NHK Defendants' motion for partial summary judgment will be granted.

**B.  Motion for Leave to Amend**

In the SAC, the sole references to purchases are allegations that Seagate Plaintiffs purchased SAs from defendants (see SAC ¶¶ 2, 5, 22-23, 27, 32, 93, 95, 98, 153-157, 159-163, 166-167, 171, 177, 179, 181, 209, 216, 221, 229-232, 237, 249-255, 263, 272, 281, 285-286, 290-291, 302), which purchases are described as having been made "directly" from defendants (see SAC ¶¶ 32, 251).  The SAC includes no factual allegations that any Seagate Plaintiff indirectly purchased an SA or a product containing an SA.

Seagate Plaintiffs now seek leave to file a proposed Third Amended Complaint ("Proposed TAC"), for purposes of "clarify[ing] that NHK's conspiracy harmed Seagate indirectly," specifically, an amendment to allege Seagate LLC and Seagate Singapore seek damages based on their having indirectly purchased SAs, and to add other "clarifications and updates on the case." (See Pls.' Mot. for Leave to Amend at 2:2-3, 28.)

"As a general rule, leave to amend should be 'freely given when justice so requires.'" Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (quoting Fed. R. Civ. P. 15(a)).  In considering whether to afford leave to amend, courts consider the following four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." See id.

//
//

Here, the Court does not find Seagate Plaintiffs, in seeking leave to amend, are acting in bad faith or that all of the proposed amendments would be futile.[10] As set forth below, however, the Court finds Seagate Plaintiffs have unduly delayed in seeking leave to amend and that the proposed amendments would prejudice NHK Defendants.

"[I]n evaluating undue delay, [a court] inquire[s] whether the moving party knew or should have known the facts and theories raised by the amendment" at the time it filed "the original pleading."  See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006) (internal quotation and citation omitted).  Here, the facts and theories now asserted on behalf of Seagate LLC and Seagate Singapore in support of the proposed indirect purchaser claim, and the facts and theories pertaining to the role Seagate International, a Cayman Island company, played in connection with purchases by other Seagate entities, a role Seagate Plaintiffs allege has a connection to the proposed indirect purchaser claim,[11] were known by Seagate Plaintiffs at the time the instant action was filed in February 2020, more than two years ago, as all of those facts and theories are based on internal transactions conducted among the Seagate Plaintiffs themselves.  (See Proposed TAC ¶¶ 36, 44, 47, 74-77.)  Under such circumstances, their delay in bringing claims predicated on those facts and theories is unreasonable.  See

---

[10] Although the issue was not raised by NHK Defendants, the Court notes that, to the extent Seagate Plaintiffs seek leave to allege that, under the laws of California and Minnesota, Seagate Singapore is entitled to recover any overcharges it indirectly paid, those claims are futile.  Specifically, such state law claims would be subject to dismissal for lack of standing, there being no allegation that the subject indirect purchases were made in California and/or Minnesota.  See In re Capacitors Antitrust Litig., 154 F. Supp. 3d 918, 925-27 (N.D. Cal. 2015) (dismissing for lack of standing state antitrust claims, where plaintiff did not allege "an in-state purchase of a [price-fixed product] at a supra-competitive price"); In re Glumetza Antitrust Litig., 2020 WL 1066934, at *10 (N.D. Cal. March 5, 2020) (holding, where "injury alleged is the overcharge at each purchase . . ., the scope of standing is limited to the locations of the purchases").

[11] Contrary to Seagate Plaintiffs' assertion that the Court "asked" Seagate Plaintiffs to add facts "clarify[ing]" Seagate International's role in the events giving rise to the instant case (see Pls.' Reply in Support of . . . Mot. for Leave to Amend at 8:22), the Court simply noted what was obvious from the record at the time, namely, that no party had set forth the basis for Seagate International's antitrust claims.  (See Transcription of Proceedings, July 28, 2023, 10:17-21 (noting, "they're just out there at the moment").)

AmerisourceBergen Corp., 465 F.3d at 953 (finding "eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable").

Further, "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." See Lockheed Martin Corp., 194 F.3d at 986; see also Solomon v. North American Life & Casualty Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (holding motion to amend properly denied where granting motion to amend "would have required re-opening discovery, thus delaying the proceedings"). Here, the deadline to conduct fact discovery elapsed over a year ago (see Amended Order Re Case Schedule, filed May 5, 2022 (setting deadline of October 21, 2022, for "close of fact discovery")), and, as shown by NHK Defendants, adding the proposed indirect purchaser claims would necessitate the reopening of fact discovery. In particular, discovery would need to be conducted as to the practices of and agreements among the various Seagate Plaintiffs with respect to pricing and transfers of products, as well as discovery as to the prices actually paid during the thirteen years of the alleged conspiracy.[12] Additionally, discovery would be necessary as to other types of damages Seagate Plaintiffs now seek to recover in addition to overcharges, namely, damages resulting from defendants' alleged "delay[ing] introduction of new designs" and "suppressing the quality of the [SAs] sold to Seagate" (see Proposed TAC ¶ 121),[13] which conduct, according to Seagate Plaintiffs, resulted in Seagate Plaintiffs' "receiving worse products" (see Proposed TAC ¶ 272) and causing

---

[12] Although Seagate Plaintiffs contend NHK Defendants have sought and received discovery as to "pass-on defenses" (see Pls.' Mot. for Leave to Amend at 12:1-4), NHK Defendants have explained that the discovery sought and obtained pertained to whether the alleged price-fixed amounts were passed on to customers downstream of Seagate (see Transcript of Proceedings, July 28, 2023, 84:22-85:13).

[13] In their reply, Seagate Plaintiffs contend their "allegations of technology suppression" are not new and were included in both the Amended Complaint and the SAC. (See Pls.' Reply in Support of [Their] Mot. for Leave to Amend at 5:13-16.) The paragraphs in those two pleadings to which Seagate Plaintiffs cite, however, include no reference to the suppression of technology, let alone any allegation that defendants engaged in such conduct.

"lost sales and profits" (see Proposed TAC ¶¶ 255, 276, 278).

Accordingly, the motion for further leave to amend will be denied.

## CONCLUSION

For the reasons stated above:

1. On reconsideration, NHK Defendants' motion for partial summary judgment is hereby GRANTED;

2. Seagate Plaintiffs' motion for leave to file their Proposed TAC is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 17, 2023

MAXINE M. CHESNEY
United States District Judge