1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   IN RE: HARD DISK DRIVE                    Case No.  19-md-02918-MMC
    SUSPENSION ASSEMBLIES
8   ANTITRUST LITIGATION                      **ORDER RE: RECONSIDERATION OF
                                              ORDER DENYING SUMMARY
9   _____       JUDGMENT; DENYING AS MOOT
                                              DEFENDANTS' MOTION TO CERTIFY
10  This Document Relates to:                 MAY 22, 2023, ORDER FOR
                                              INTERLOCUTORY APPEAL;
11  ALL CLASS ACTIONS                         DENYING SUMMARY JUDGMENT**

12  _____

13

14                      **BACKGROUND**

15          In the above-titled actions, plaintiffs allege defendants, from 2003 to 2016,

16  engaged in a conspiracy to fix the prices of suspension assemblies ("SAs"), a component

17  contained in hard disk drives ("HDDs"), which conspiracy, plaintiffs state, caused them to

18  pay prices for HDDs and/or products containing HDDs that were higher than they would

19  have paid in a competitive market.[1]

20          By order filed May 22, 2023, the Court denied defendants' "Motion for Partial

21  Summary Judgment Regarding Foreign Commerce" ("May 22 Order"), and, in so ruling,

22  found defendants had not established that the claims asserted by plaintiffs were barred

23

24          _____

25          [1] Plaintiffs consist of "Reseller Plaintiffs," who are three entities and two individuals who allege they purchased for resale HDDs or products containing HDDs, and "End-User Plaintiffs," who are fifty-two individuals who allege they purchased for personal use HDDs or products containing HDDs.  Defendants are TDK Corporation, Hutchinson Technology Inc., Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, and SAE Magnetics (H.K.) Ltd. (collectively, "TDK Defendants"), and NHK Spring Co., Ltd., NHK International, NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (Hong Kong) Co., Ltd., and NHK Spring (Thailand) Co., Ltd. (collectively, "NHK Defendants").

26

27

28

United States District Court
Northern District of California

1    by the Foreign Trade Antitrust Improvements Act ("FTAIA").  In particular, the Court

2    rejected defendants' argument that the "import trade or commerce exclusion" set forth in

3    the FTAIA, see 15 U.S.C. § 6a, is inapplicable in the absence of a showing that the

4    defendant is the importer, and, in light thereof, did not reach defendants' additional

5    argument that the domestic "effect[s]" exception set forth in the FTAIA, see id., on which

6    plaintiffs also relied, is inapplicable.

7         Thereafter, on June 21, 2023, defendants filed a "Motion for Certification of ECF

8    No. 955 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)," whereby defendants

9    seek leave to appeal the May 22 Order.  After the Motion for Certification had been fully

10   briefed, the Court, by order filed July 28, 2023, deferred ruling thereon, pending its

11   decision in a related case, Seagate Technology LLC v. Headway Technologies, Inc.,

12   Case No. 20-cv-01217 MMC ("Seagate"), as to whether to grant a motion by NHK

13   Defendants for reconsideration of the Court's finding as to the import trade/ commerce

14   exclusion, which finding was the same as that made in the instant actions.

15        Next, on November 17, 2023, the Court, in Seagate, granted NHK Defendants'

16   motion for reconsideration, finding the import trade/commerce exclusion does not apply

17   unless the defendant is the importer (see Seagate, Doc. No. 259, filed November 17,

18   2023 ("Seagate FTAIA Order"), and, in an order filed that same date in the instant

19   actions, afforded plaintiffs an opportunity to state their opposition to entry of a similar

20   order in the instant actions.  Plaintiffs subsequently filed a response to the Court's

21   November 17 Order, to which defendants replied.

22        The Court, having read and considered all of the above filings, now rules as

23   follows.

24   //

25   //

26   //

27   //

28   //

2

**DISCUSSION**

In seeking summary judgment, defendants argued plaintiffs' claims were barred by the FTAIA, which provides as follows:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>
> > (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> >
> > (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of [the Sherman Act].

See 15 U.S.C. § 6a.

As was set forth in detail in the May 22 Order, defendants offered undisputed evidence that, with respect to plaintiffs and the putative classes they seek to represent, defendants only sold SAs to companies located outside the United States and that such purchasers, in locations outside the United States, incorporated the SAs into HDDs or components within HDDs. In light thereof, there is no dispute that defendants' sales of SAs, the alleged price-fixed components, "involv[ed]" trade or commerce with "foreign nations." See 15 U.S.C. § 6a. Under such circumstances, plaintiffs' claims are barred by the FTAIA, unless either the import trade/commerce exclusion or the domestic effects exception applies. See United States v. Hsiung, 778 F.3d 738, 751 (9th Cir. 2015) (holding "import trade is excluded from the FTAIA" and "nonimport trade or commerce" is barred by FTAIA unless "domestic effects exception is met").

**A. Import Trade or Commerce Exclusion**

In seeking summary judgment, defendants offered undisputed evidence that each product purchased by a plaintiff had been imported into the United States by an entity other than one of the defendants, and, as noted, the Court, in its May 22 Order, found the

United States District Court
Northern District of California

1  defendant, for purposes of the import trade/commerce exclusion, need not be an

2  importer.  Consistent with the Court's subsequent ruling in Seagate, however, the Court

3  finds reconsideration of that aspect of the Court's May 22 Order is appropriate and, for

4  the reasons stated in the Seagate FTAIA Order, further finds the import trade/commerce

5  exclusion does not apply unless the defendant is the importer.  The Court reiterates

6  below its findings made in the Seagate FTAIA Order as to that issue.

7      Courts of Appeal have differed as to whether, for the import trade/commerce

8  exclusion to apply, a defendant or co-conspirator must be the entity sending the goods

9  into the United States.  Compare Motorola Mobility LLC v. AU Optronics Corp., 775 F.3d

10  816, 818 (7th Cir. 2015) (holding import trade/commerce exclusion does not apply where

11  plaintiffs, rather than defendants, "import[ ] [price-fixed goods] into the United States"),

12  with Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462, 470 (3rd Cir.

13  2011) (rejecting argument that import trade/commerce exclusion "requires that the

14  defendants function as the physical importers of goods").  District courts likewise have

15  reached differing conclusions on that issue.  Compare In TFT-LCD (Flat Panel) Antitrust

16  Litig., 2010 WL 2610641, at *4-6 (N.D. Cal. June 28, 2010) (holding plaintiff failed to

17  show import trade/commerce exclusion applied, where "foreign-purchased products"

18  were sent to United States "by [plaintiff's] affiliates"), with In re Optical Disk Drive Antitrust

19  Litig., 2017 WL 11513316, at *4 (N.D. Cal. December 18, 2017) (finding import trade/

20  commerce exclusion applied where "[plaintiffs] and their subsidiaries, and not

21  [d]efendants, imported [goods with price-fixed components] into the United States").

22      Having considered the above-referenced decisions, as well as the other cases

23  cited by the parties in their respective written submissions, the Court, in retrospect, finds

24  the authority on which defendants rely is, as discussed below, more persuasive.

25      "Import trade and commerce are excluded at the outset from the coverage of the

26  FTAIA in the same way that domestic interstate commerce is excluded," while "non-

27  import, non-domestic commerce" is included within the FTAIA.  See Minn-Chem, Inc. v.

28  Agrium, Inc., 683 F.3d 845, 854 (7th Cir. 2012).  The "pragmatic reason" for excluding

import trade or commerce from the FTAIA is that "[t]he applicability of U.S. law to transactions in which a good or service is being sent directly into the United States, <u>with no intermediate stops</u>, is both fully predictable to foreign entities and necessary for the protection of U.S. consumers." <u>See</u> <u>id.</u> (emphasis added) (noting "[f]oreigners who want to earn money from the sale of goods or services in American markets should expect to have to comply with U.S. law").

Consequently, when determining whether the import trade/commerce exclusion applies, "[t]he relevant inquiry is whether the conduct of the defendants – not the plaintiffs – involves import trade or commerce," <u>see</u> <u>Kruman v. Christie's Int'l, PLC</u>, 284 F.3d 384, 395 (2nd Cir. 2002), and, here, as noted, it is undisputed that no defendant or co-conspirator sent the subject goods into the United States.  Given such evidence, plaintiffs' reliance on the import trade/commerce exclusion is unavailing.  <u>See</u>, e.g., <u>Hsiung</u>, 778 F.3d at 755 (holding "transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members <u>are</u> the import commerce of the United States") (internal quotation and citation omitted; alteration and emphasis in original).

In sum, the Court, on reconsideration, finds, as a matter of law, the import trade/commerce exclusion does not apply to plaintiffs' claims, and, accordingly, defendants' motion to certify the May 22 Order for interlocutory appeal will be denied as moot.

**B.  Domestic Effects Exception**

The Court next considers the question that was not addressed in its May 22 Order, namely, whether defendants have demonstrated plaintiffs' inability to establish the applicability of the domestic effects exception to plaintiffs' claims, a showing defendants must make.  <u>See</u> Fed. R. Civ. P. 56(a) (providing party moving for summary judgment must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

The domestic effects exception applies where the conduct on which the plaintiff's claim is based has a "'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce," <u>see</u> <u>F. Hoffman-La Roche Ltd. v.</u>

1  Empagran S.A., 542 U.S. 155, 162 (2004) (quoting 15 U.S.C. § 6(a)(1)) and "the 'effect'"

2  gives rise to a Sherman Act claim, see id. (quoting 15 U.S.C. § 6(a)(2)), or, in this

3  instance, to a state law antitrust claim.[2]

4         At the outset, the Court notes that defendants do not dispute, at least for purposes

5  of their motion for summary judgment, that the domestic effects exception applies to, and

6  consequently that the FTAIA does not bar, claims based on "sales of [SAs] incorporated

7  into bare or external HDDs sold by HDD manufacturers to direct purchase[r]s in the U.S."

8  (See Defs.' Mot. for Partial Summ. J. [Doc. No. 533] at 19:25-27.)  In accordance

9  therewith, defendants do not seek summary judgment as to any such claims, which

10 claims, as was explained in the May 22 Order, and based on the current record, appear

11 to be raised only by Jeffrey Greenfield ("Greenfield"), an End-User Plaintiff.  (See May 22

12 Order at 5:27-28 (citing End-User Pls.' Fourth Amended Complaint ¶ 32, wherein

13 plaintiffs allege Greenfield's purchase of external HDD from HDD manufacturer Western

14 Digital).)  With respect to claims based on other sales, namely, purchases of HDDs from

15 an entity in the chain of distribution other than an HDD manufacturer and purchases of

16 products containing HDDs, such as computers, defendants argue there is no evidence

17 that the asserted conspiracy to fix the prices of SAs had a direct and substantial effect on

18 domestic commerce or that, if such effect can be shown, it gave rise to those claims.

19         **a.  Direct Effect**

20         The effect plaintiffs assert was caused by the price-fixing conspiracy was the

21 overcharge paid by direct purchasers of SAs and allegedly passed through the chain of

22 distribution to plaintiffs.

23         Defendants argue the alleged price-fixing conspiracy did not cause a direct effect

24 on domestic commerce, for the asserted reason that there were a number of steps in the

25 chain of distribution between the sales of SAs by defendants and the sales of the

26 ─────────────────

27  [2] Although plaintiffs bring their claims under state antitrust laws rather than the Sherman Act, the FTAIA, as was discussed in the Court's May 22 Order, applies to state

28 law antitrust claims.  (See May 22 Order at 6:4-14.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  products purchased by plaintiffs.  In that regard, defendants offer evidence that, after they

2  sold SAs to HDD manufacturers, those customers manufactured HDDs (see Lee Decl.

3  [Doc. No. 534-2] Ex. 3 at 95:6-96:21, 103:2-104:16; id. Ex. 6; Misuta Decl. [Doc. No. 533-

4  3] ¶¶ 33-35; Okuma Decl. [Doc. No. 533-2] ¶¶ 42-43), after which the HDD

5  manufacturers either shipped the HDDs to the United States and other countries for sale

6  or, alternatively, sold them to original equipment manufacturers ("OEMs") located abroad,

7  such as Dell and Apple, which OEMS, in turn, manufactured products containing HDDs,

8  which products were then shipped to the United States or other countries (see Lee Decl.

9  Ex. 14; Misuta Decl. ¶¶ 36-38).[3]  Additionally, defendants, citing Reseller Plaintiffs'

10  allegation that they purchased from "other resellers, including distributors" and/or from

11  "retailers" (see Defs.' Mot. for Partial Summ. J. at 8:16-17), argue that, after products

12  containing SAs were shipped to the United States, further steps in the chain of

13  distribution occurred before Reseller Plaintiffs purchased those products, and that End-

14  User Plaintiffs' purchases "could have come from any of the resellers that sell finished

15  products" (see id. at 9:8).

16       An argument similar to the argument raised by defendants herein was considered

17  and rejected in In re TFT-LCD (Flat Panel) Antitrust Litig., 822 F. Supp. 2d 953 (N.D. Cal.

18  2011).  There, the plaintiffs alleged they purchased in the United States consumer

19  products that contained "TFT-LCD panels," an allegedly price-fixed component, see id. at

20  955, and the defendants sought summary judgment, arguing the plaintiffs could not show

21  the asserted conspiracy caused a direct effect on domestic commerce, in that "the panels

22  were almost always sold multiple times before they entered the United States," see id. at

23  961.  In particular, the defendants relied on evidence that they sold the panels to OEMs

24  overseas, which in turn manufactured the finished products that the plaintiffs purchased

25

26       ───────────────────
         [3] According to defendants, another potential step occurs with respect to at least
27  some OEMs, because OEMs "often contract with independent intermediaries" that
    "handle final product fabrication."  (See Defs.' Mot. for Partial Summ. J. at 8:4-7, 20-22
28  (citing Apple, Inc., Annual Report (Form 10-5) at 6 (October 28, 2021).)

later in the chain of distribution.  See id. at 960-62.

The district court found a triable issue of fact existed as to "whether defendants' alleged conduct had a direct effect on United States commerce," citing evidence that defendants "used their American employees in furtherance of the conspiracy," namely, by engaging in price negotiations in the United States, see id. at 962-63, 967, and that "many companies and executives involved in the price-fixing conspiracy" made "admissions" in criminal cases that the conspiracy was "targeted at the United States," see id. at 963.  The district court also cited expert evidence that "[t]he increased price of the components caused the prices of the finished products in the United States to increase."  See id. at 963, 966.  In sum, the district court found that, "because the effect of defendants' anticompetitive conduct did not change significantly between the beginning of the process (overcharges for LCD panels) and the end (overcharges for [products containing panels]), the effect proceeded without deviation or interruption from the LCD manufacturer to the American retail store" and "[n]o intervening events interrupted its journey."  See id. (internal quotation and citation omitted).

Here, similar to the evidence found sufficient in TFT-LCD, plaintiffs offer evidence that defendants engaged in price negotiations with HDD manufacturers in the United States.  (See Reiss Decl. Ex. 12 [Doc. No. 829-8] at 274:7-280:5, 282:18-283:22 (price negotiations between Magnecomp Corporation and Seagate in United States); Ex. 22 [Doc. No. 829-14] at 176:16-25, 177:11-24, 178:8-181:24 (price negotiations between Hutchinson Technology Inc. and Seagate in United States); Ex. 23 [Doc. No. 618-6] at 89:3-92:22; 95:25-97:17 (price negotiations between NHK and Seagate, as well as between NHK and Western Digital, in United States).)

Additionally, plaintiffs rely on a plea agreement, filed September 23, 2019, in the Eastern District of Michigan, wherein NHK Spring Co., Ltd. pleaded guilty to engaging in a conspiracy to fix the prices of SAs, in violation of the Sherman Act, and, in so pleading, admitted that it and its co-conspirators "sold foreign-manufactured [SAs] outside the United States for incorporation into products – namely, hard disk drives – that were sold

1   in, or for delivery to, the United States" and that "the conspiracy involved and had a

2   direct, substantial, and reasonably foreseeable effect on interstate and import trade and

3   commerce, including in [SAs] and certain hard disk drives incorporating affected [SAs]."

4   (See Lee Decl. Ex. 9 ¶ 4(d).)

5          Lastly, plaintiffs cite to the opinions of plaintiffs' experts, both of whom opine that

6   the overcharges were passed through the chain of distribution to plaintiffs.  (See Netz

7   Decl. [Doc. 601-6] at 98-102) (calculating 100% pass-through rate to End-User Plaintiffs);

8   see also Sims Decl. (Williams Report) [Doc. Nos. 606-4] Ex. 1 at 79-80) (calculating

9   portion of overcharge passed through to, and paid by, Reseller Plaintiffs).[4]

10          In light of the above-discussed evidence, the Court finds a triable issue of fact

11   exists as to whether defendants' conduct had a direct effect on domestic commerce.

12                **b.  Substantial Effect**

13          Defendants argue that, even if the alleged conspiracy had a direct effect on

14   domestic commerce, any such direct effect was not substantial "due to the small cost of

15   [SAs] relative to the prices of the finished goods sold in the United States."  (See Defs.'

16   Mot. at 22:21-23.)  As an example, defendants offer evidence that the "average amount"

17   one manufacturer paid for SAs equated to "approximately 4%" of the "average cost" it

18   incurred to manufacture one of its products (see Lee Decl. Ex. 13),[5] and argue that, at

19   each sequential transaction in the chain of distribution for any product, "the [SAs] will

20   have become progressively more infinitesimal in both size and cost in proportion to the

21   finished [product] that is ultimately purchased by [plaintiffs]" (see Defs.' Mot. for Partial

22   Summ. J. at 23:24-24:2).

23          As set forth above, plaintiffs have submitted expert opinions that all or part of the

25          [4] The Court has granted Reseller Plaintiffs' motions to seal the above-cited pages
26   of the Williams Report, and, consequently, does not set forth herein the details of the
     opinion stated therein.

27          [5] The Court has granted defendants' motion to seal Exhibit 13, and, consequently,
28   does not set forth herein the name of the manufacturer or product referenced therein.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   overcharge allegedly paid to defendants by HDD manufacturers was passed through to

2   plaintiffs.  Even assuming that passed-through amount constituted a small percentage of

3   the purchase price charged by retailers to any particular domestic consumer, defendants

4   have not offered evidence, from an expert or otherwise, that such passed-through

5   overcharges could not have a substantial effect, i.e., one that is more than "trivial," on

6   domestic trade or commerce, cf. City of Pomona v. SQM North America Corp., 866 F.3d

7   1060, 1068-69 (9th Cir. 2017) (defining "substantial," for purposes of causation, as "more

8   than . . .remote or trivial"), nor have defendants made a showing that plaintiffs cannot

9   produce evidence of a substantial effect, see Nissan Fire & Marine Ins. Co. v. Fritz Cos.,

10   210 F.3d 1099, 1104 (9th Cir. 2000) (explaining "two different methods by which a

11   moving party can carry its initial burden of production" when seeking summary judgment).

12   Moreover, as noted, NHK Spring Co. Ltd., when it pleaded guilty to engaging in price-

13   fixing in violation of the Sherman Act, admitted that the conspiracy had not only a "direct"

14   but also a "substantial" effect on interstate commerce.  (See Lee Decl. Ex. 9 ¶ 4(d).)

15       Accordingly, the Court finds a triable issue of fact exists as to whether the effect of

16   the alleged conspiracy on domestic trade or commerce was substantial.

17       **c. Effect Giving Rise to Claim**

18       Lastly, defendants argue, plaintiffs cannot establish the claimed "effect," i.e., the

19   passed-through overcharge, "gives rise" to viable antitrust claims, as required by § 6a(2).

20       The "gives rise to a claim" provision in the FTAIA "requires that the 'effect' on

21   domestic commerce violate the substantive provisions of the Sherman Act," see Kruman,

22   284 F.3d at 399, or, in this case, the substantive provisions of state antitrust laws.  Here,

23   in arguing said requirement has not been met, defendants assert that the market for SAs,

24   the allegedly price-fixed component, differs from the market for consumer products

25   containing SAs, and that "[t]here is no claim . . . that the markets for those finished

26   products . . . were restrained."  (See Defs.' Mot. at 24:19-23.)

27       Defendants, however, cite no authority holding or providing that, under any of the

28   state laws on which plaintiffs' claims are predicated, plaintiffs cannot base their claims on

purchases of finished products that contain a price-fixed component.  Indeed, at least where there is evidence that the price-fixed component has no independent utility (see Reiss Decl. Ex. 5 [Doc. No. 829-4] at 272:1-4 (testimony by TDK executive that SAs have "no use" other than as "incorporated into hard disk drives")), as well as evidence that the overcharge assertedly passed through to plaintiffs can be traced (see Sims Decl. (Williams Report) Ex. 1 at 77-80; Netz Decl. at 98-102), courts to have considered the issue have found such claims cognizable.  See, e.g., In re Automotive Parts Antitrust Litig., 29 F. Supp. 3d 982, 1002 (E.D. Mich. 2014) (finding plaintiffs had standing to bring antitrust claims under laws of twenty-five states, where plaintiffs alleged price-fixed automobile part served no "function" until "inserted into vehicles" and "overcharges [were] passed on to [plaintiffs] in a traceable way"); In re Cathode Ray Tube (CRT) Antitrust Litig., 2013 WL 4505701, at *10 (N.D. Cal. August 21, 2013) (finding plaintiffs "sufficiently pled an antitrust injury" under laws of five states, based on allegations price-fixed component was "virtually valueless on its own" and component "affect[ed] the market for the finished product in a traceable way") (citing cases)).

Having considered such authority and the evidence cited by plaintiffs, the Court finds a triable issue of fact exists as to whether the alleged effect gives rise to plaintiffs' state law antitrust claims.

**3.  Conclusion as to FTAIA**

In its May 22 Order, the Court denied defendants' motion for summary judgment, in light of its finding that a triable issue of fact existed as to the import trade/commerce exclusion.  As set forth above, the Court, on reconsideration, now finds the import trade/commerce exclusion does not apply to plaintiffs' claims.  The Court now further finds, however, that a triable issue exists as to whether the direct effects exception applies to plaintiffs' claims.

Accordingly, defendants' motion for summary judgment will again be denied.

//

//

**CONCLUSION**

For the reasons stated above, defendants' motion to certify the May 22 Order for interlocutory appeal is hereby DENIED as moot, and defendants' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2024

MAXINE M. CHESNEY
United States District Judge