IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL CLASS ACTIONS | Case No.  19-md-02918-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR CERTIFICATION OF DOCUMENT NO. 1136 FOR INTERLOCUTORY APPEAL** |

Before the Court is defendants'[1] "Motion for Certification of Dkt. No. 1136 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)," filed May 6, 2024.  Plaintiffs[2] have filed opposition, to which defendants have replied.  Having read and considered the parties' respective written submissions, the Court rules as follows.[3]

## BACKGROUND

In their respective operative complaints, Reseller Plaintiff's Third Consolidated Amended Complaint ("TAC") and End-User Plaintiff's Fourth Amended Consolidated Class Action Complaint" ("4AC"), plaintiffs assert state law antitrust and related claims based on their allegations that TDK Defendants and NHK Defendants engaged in a

---

[1] Defendants are (1) TDK Corporation, Hutchinson Technology Inc., Magnecomp Precision Technology Public Co., Ltd., Magnecomp Corporation, and SAE Magnetics (H.K.) Ltd. (collectively, "TDK Defendants"), and (2) NHK Spring Co., Ltd., NHK International, NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (Hong Kong) Co., Ltd., and NHK Spring (Thailand) Co., Ltd. (collectively, "NHK Defendants").

[2] Plaintiffs are (1) Reseller Plaintiffs, comprising three entities and two individuals who allege they purchased for resale HDDs or products containing HDDs, and (2) End-User Plaintiffs, who are fifty-two individuals who allege they purchased for personal use HDDs or products containing HDDs.

[3] By order filed June 21, 2024, the Court took the matter under submission.

conspiracy to fix the prices of suspension assemblies ("SAs"), a component contained in hard disk drives ("HDDs"). According to plaintiffs, HDD manufacturers, which purchased SAs from defendants, passed on the overcharge to their customers, which customers consist of (1) persons and entities who purchased HDDs for resale to other resellers or to end-users (see, e.g., TAC ¶ 52 (alleging HDD manufacturers sold HDDs to "distributors," which, in turn, sold them to "resellers"), 4AC ¶ 211 (alleging HDD manufacturers sold HDDs to "resellers," which, in turn, sold them to "end-users")), (2) persons and entities who purchased HDDs for their own use (see, e.g., 4AC ¶ 32 (alleging HDD manufacturer Western Digital sold HDD to end user Jeffrey Greenfield)), and (3) entities who manufactured products containing HDDs, such as computers, which products were then sold to resellers or to end-users (see, e.g., TAC ¶ 54 (alleging HDD manufacturers sold HDDs to computer manufacturers, who, in turn, sold computers to "distributors and resellers"); 4AC ¶ 47 (alleging computer manufacturer HP sold computer to end user Andrew Syverson)).[4]

On August 8, 2022, defendants moved for summary judgment, arguing the Foreign Trade Antitrust Improvements Act ("FTAIA") barred plaintiffs' claims, with the exception of any claims based on the purchase of an HDD directly from an HDD manufacturer, an exception that appeared to apply only to claims asserted on behalf of end user Jeffrey Greenfield. By order filed May 23, 2023, the Court denied the motion, finding a triable issue existed as to the applicability of the "import trade/import commerce exclusion" set forth in the FTAIA. (See Doc. No. 955 at 5:1-9:3.) Thereafter, by order filed March 29, 2024 ("March 29 Order"), the Court reconsidered its prior order, and, in particular, found the import trade/import commerce exclusion was, as a matter of law, inapplicable to plaintiffs' claims. (See March 29 Order [Doc. No. 1136] at 3:25-5:17.) The Court, however, again denied defendants' motion for summary judgment, finding a triable issue of fact existed as to the applicability of the "domestic effects exception" set forth in the

---

[4] No manufacturer is a party to the above-titled multi-district litigation.

2

FTAIA. (See id. at 5:19-11:26.)

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1292, a district court may certify for interlocutory appeal an order where (1) "such order involves a controlling question of law," (2) "there is substantial ground for difference of opinion" as to such question of law, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b).

## DISCUSSION

By the instant motion, defendants seek an order certifying for interlocutory appeal the Court's March 29 Order, specifically, the question of whether the domestic effects exception applies where an indirect purchaser paid "allegedly inflated prices" for products containing a price-fixed component and the "market" for those products is one in which the defendant "did not participate" (see Defs.' Mot. for Certification at 1:14-18), a question defendants would answer in the negative.

In addressing defendants' motion, the Court first sets forth the requirements in the FTAIA, next summarizes the Court's findings in the March 29 Order, and then considers whether said Order is appropriate for interlocutory appeal.

The FTAIA provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>
> > (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> >
> > (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of [the Sherman Act].

See 15 U.S.C. § 6a.

As explained by the Supreme Court, the FTAIA "initially lays down a general rule placing all (nonimport) activity involving foreign commerce outside the Sherman Act's reach."  See F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 162 (2004). The exception to the general rule, referred to as the "domestic effects exception," see United States v. Hsiung, 778 F.3d 738, 756 (9th Cir. 2015), applies where the conduct on which the plaintiff's claim is based has a "'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce," see Empagran, 542 U.S. at 162 (quoting 15 U.S.C. § 6(a)(1)), and the effect gives rise to "the plaintiff's claim or the claim at issue," see id. at 173 (internal quotations omitted), which claims, in the above-titled actions, are state law antitrust claims.[5]

Here, plaintiffs' theory as to the domestic effects exception is that defendants' asserted "price-fixing cartel" had the effect of "increas[ing] prices for HDDs and the products that contain them."  (See Pls.' Opp. to Mot. for Summ. J. [Doc. 618-2] at 7:6-8:1; see also TAC ¶ 11-12 (alleging resellers "paid more" for products containing SAs "than they otherwise would have paid in a competitive market"), 4AC ¶ 216 (alleging end user plaintiffs "paid higher prices" for products containing SAs "than they would have in the absence of [d]efendants' conspiracy").)  In particular, plaintiffs assert, the foreign market in which defendants participated when they sold SAs to HDD manufacturers and the domestic market in which plaintiffs participated when they purchased HDDs or products containing HDDs are sufficiently intertwined because the domestic market is "the top market for HDDs, the demand for which correlates with the available market for [d]efendants' SAs."  (See Pls.' Opp. to Mot. for Summ. J. at 5:12-13; see also TAC ¶ 115 (alleging "markets for HDDs and [SAs] are inextricably linked and intertwined because the market for [SAs] exists to serve the HDD market"), 4AC ¶ 212 (same).)

//

---

[5] Although plaintiffs bring claims under state antitrust laws, the FTAIA, as was discussed in the Court's initial order addressing defendants' motion for summary judgment, applies to state law antitrust claims.

In seeking summary judgment, defendants first argued plaintiffs lacked evidence to prove the claimed effect had either a "direct" or a "substantial" effect on domestic commerce (see Defs.' Mot. for Summ. J. at 20:1, 22:4), which arguments the Court found unpersuasive (see March 29 Order at 6:23-10:16), and which findings defendants do not assert are appropriate for interlocutory appeal.[6]

Defendants next argued that the "effect" on which plaintiffs rely does not "give[ ] rise" to an antitrust claim. (See Defs.' Mot. for Summ. J. at 24:9-10.) Specifically, defendants argued, the "gives rise to a claim" provision in the FTAIA requires the effect to "constitute in relevant part a 'restraint of trade' that would violate [antitrust laws]," and that a "restraint of trade" occurs where there is "a restriction of competition in a relevant market." (See id. at 24:10-13, 16-17.) With respect to plaintiffs' claims, defendants asserted, "[w]hatever effects may have been felt on U.S. Commerce," those "effects were not a restraint of trade in domestic or import commerce," for the reason that the products plaintiffs purchased "were finished products, not [SAs]." (See id. at 24:17-20.) In other words, defendants contended, plaintiffs could make "no claim" that "the markets for those finished products . . . were restrained as a result of [d]efendants' alleged conduct." (See id. at 24:21-23.)

The Court found defendants' argument unpersuasive. Specifically, the Court noted, defendants cited no authority for their argument that indirect purchaser claims based on the effect asserted by plaintiffs would not violate the state antitrust laws on which plaintiffs rely. Rather, the Court observed, in cases where indirect purchasers bought from non-conspirators products in which a price-fixed component had been incorporated, district courts have found such claims cognizable under state law, at least where, as here, the plaintiffs offered evidence that the "the price-fixed component ha[d] no independent utility" and "the overcharge assertedly passed through to plaintiffs [could]

---

[6] In light thereof, the Court does not further address those findings herein.

be traced." (See March 29 Order at 11:1-15 (citing cases).)[7]

In seeking early review of such findings, defendants, as noted, must establish the March 29 Order involves a "controlling question of law" as to which a "substantial ground for difference of opinion" exists, and that allowing an interlocutory appeal would "materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b).

Although the Court agrees with defendants that the question they raise qualifies as "controlling," given that the claims of all Reseller Plaintiffs and the claims of all but one End-User Plaintiff would be summarily resolved in their favor if the answer they propose is accepted, see In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1981) (holding question is "controlling," for purposes of § 1292(b), where its resolution "could materially affect the outcome of the litigation in the district court"), the Court, as set forth below, finds defendants have failed to show a substantial ground for difference of opinion exists as to such question.[8]

In the instant motion, defendants, as in their motion for summary judgment, cite no authority holding indirect purchaser claims based on effects of the type asserted here are not cognizable under state law. The case cited by defendants, Kruman v. Christie's Int'l PLC, 284 F.3d 384 (2nd Cir. 2002), does not address indirect purchaser claims, but, rather, the cognizability of a Sherman Act claim by plaintiffs who, outside the United States, directly purchased services from allegedly price-fixing defendants, and, in that

---

[7] As was explained in one such case, in which the defendants allegedly sold price-fixed parts to automobile manufacturers, who, in turn, incorporated said parts into automobiles purchased by the plaintiffs, see In re Automobile Parts Antitrust Litig., 29 F. Supp. 3d 982, 992, 994 (E.D. Mich. 2014), such price fixing "harm[ed]" the "market" in which plaintiffs participated, i.e., the market for vehicles, because the market for the parts and the market for vehicles were "inextricably linked and intertwined," see id. at 1002. As the district court explained, the following allegations sufficed to state a cognizable claim: "that the demand for cars creates the demand for [the price-fixed parts], that [the parts] must be inserted into vehicles to serve a function, that [the parts] remain identifiable, discrete physical products, unchanged by the manufacturing process or incorporation into vehicles, that [the parts] follow a traceable physical chain, and that [the parts] can be traced through the chain of distribution." See id.

[8] In light of such finding, the Court has not determined herein whether allowing an interlocutory appeal would materially advance the ultimate termination of the litigation.

context, the Second Circuit made the unremarkable statement that the foreign plaintiffs were required to "demonstrate that the agreement to fix prices in foreign [services] markets had an 'effect' on domestic commerce." See id. at 399.  Nothing in Kruman is contrary to the Court's findings in the March 29 Order.  Indeed, the Second Circuit's observation that "anticompetitive conduct directed at foreign markets can also directly affect the competitiveness of our domestic markets," see id. at 393, is wholly consistent with the Court's finding that, in the above-titled actions, there exists a triable issue as to the requisite effect on domestic commerce, given plaintiffs' evidence that SAs have no independent utility and that defendants' allegedly fixed prices, although initially charged in a foreign market, can be traced through the chain of distribution to the domestic market for finished products in which plaintiffs participated.  See In re Cathode Ray Tube (CRT) Antitrust Litig., 2013 WL 4505701, at *10 (N.D. Cal. August 21, 2013) (rejecting, in case where plaintiffs purchased products containing price-fixed component, argument that plaintiffs were "not participants" in "same allegedly restrained market" as market in which defendants sold components; finding sufficient, at pleading stage, plaintiffs' allegations that price-fixed component was "virtually valueless on its own" and "overcharges [were] passed on to [plaintiffs] in a traceable way").

      Similarly unavailing is defendants' reliance on legislative history, specifically, a House Report in which the Committee on the Judiciary, in addressing the "type of domestic impact" the FTAIA would require, stated "the domestic 'effect' that may serve as the predicate for antitrust jurisdiction under the bill must be of the type that the antitrust laws prohibit."  See H.R. 97-686, at 11, 1982 WL 25066.  Nothing in the cited legislative history, however, contradicts the findings made in the March 29 Order.  As discussed above, the "effect" at issue is defendants' alleged overcharge in a foreign market being passed through the chain of distribution to a domestic market that a trier of fact reasonably could find was inextricably linked and intertwined with the foreign market.

      In sum, defendants have failed to cite authority supporting the proposition they seek to advance on interlocutory appeal, and, consequently, the Court finds defendants

have not shown a substantial ground for difference of opinion exists.

As the Ninth Circuit has explained, "[c]ourts traditionally will find that a substantial ground for difference of opinion exists [1] where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, [2] if complicated questions arise under foreign law, or [3] if novel and difficult questions of first impression are presented."  See Couch v. Telescope, Inc., 611 F.3d 629, 633 (9th Cir.2010) (internal quotation and citation omitted).  Here, none of those alternatives pertains.

## CONCLUSION

For the reasons stated, defendants' motion for certification of the March 29 Order is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 12, 2024

MAXINE M. CHESNEY
United States District Judge